IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HISPANIC FEDERATION, et al.,

    *Plaintiffs,*

v.                       Case No. 4:23-cv-218-MW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

    *Defendants.*

_____/

## INDEX TO APPENDIX

| Tab | Title | Vol No. |
|:---:|:---|:---:|
| A | Ch. 2023-120, Laws of Fla. (SB 7050) | 1 |
| B | Notice of Rule Development by the Department of State, Fla. Admin. Code R. 1S-2.042 (Third Party Voter Registration Organizations) | 1 |
| C | Draft Rule Language On-File with the Department of State, Fla. Admin. Code R. 1S-2.042 (Third Party Voter Registration Organizations) | 1 |
| D | Notice of Rule Development by the Department of State, Fla. Admin. Code R. 1S-2.055 (Vote-by-mail Requests) | 1 |

| E | Draft Rule Language On-File with the Department of State, Fla. Admin. Code R. 1S-2.055 (Vote-by-mail Requests) | 1 |
|---|---|---|
| F | Declaration of Andrew Darlington | 1 |
| G | Attachment to Declaration of Andrew Darlington – January 15, 2023 Florida Department of State Office of Election Crimes and Security Report | 1 |
| H | Attachment to Declaration of Andrew Darlington – 2016 to 2023 3PVRO Complaints Received, 3PVRO Fine Letters Issued, and 3PVRO Referrals Made by the Department of State | 1-3 |
| I | Attachment to Declaration of Andrew Darlington – Press Release, News Articles, and Letter | 3 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

TAB A

# CHAPTER 2023-120

## Committee Substitute for Senate Bill No. 7050

An act relating to elections; amending s. 97.012, F.S.; requiring the Secretary of State to provide mandatory formal signature matching training to specified persons; requiring the Department of State to adopt specified rules; amending s. 97.052, F.S.; conforming a provision to changes made by the act; amending s. 97.057, F.S.; conforming a cross-reference; amending s. 97.0575, F.S.; requiring that third-party voter registration organizations provide to the Division of Elections the general election cycle for which they are registering persons to vote, beginning on a certain date; requiring that third-party voter registration organizations provide to the division certain affirmations; providing that a third-party voter registration organization is liable for certain fines in certain circumstances; providing that the registration of such organizations expires at the conclusion of the organizations' lawful responsibilities following such election cycle, beginning on a certain date; requiring such organizations to provide applicants with a specified receipt; requiring the division to adopt by rule a uniform format for such receipt by a specified date; revising the timeframe within which such organizations must deliver applications to the division or a supervisor of elections; revising the fines for failure to submit applications to the division or the supervisor within the specified timeframe; prohibiting a person collecting applications on behalf of a third-party voter registration organization from copying specified information from the application for reasons other than complying with specified requirements; providing criminal penalties; prohibiting organizations from providing prefilled voter registration applications to applicants; providing civil penalties; providing for retroactive application; amending s. 97.071, F.S.; revising the contents of voter information cards; providing construction; providing applicability; amending s. 98.065, F.S.; revising the procedures a supervisor must incorporate as part of his or her list maintenance program; deleting a provision relating to the address to which certain voter registration mail must be addressed; revising requirements applicable to registration list maintenance programs; requiring a supervisor to conduct a certain review of voter registration records at least annually and take certain actions; amending s. 98.0655, F.S.; deleting a provision that requires an address confirmation request to include a certain statement; amending s. 98.075, F.S.; deleting the scheduled repeal of a public records exemption for certain voter registration information from another state or the District of Columbia; requiring the supervisor to remove the name of a registered voter from the statewide voter registration system within a specified timeframe if certain conditions exist; requiring the supervisor to coordinate with his or her respective clerk of the court to obtain information of those registered voters convicted of a felony who have not had their voting rights restored; requiring a supervisor to adhere to specified procedures before the removal of a registered voter from the statewide voter

1

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

registration system; providing construction; requiring the notice that the supervisor must provide to a potentially ineligible voter to include a specified statement; authorizing a supervisor to post a specified notice on the county's website or the supervisor's website; requiring the notice to contain specified statements; requiring the supervisor to make a final determination of the voter's eligibility within a specified timeframe and remove the name of a registered voter within a specified timeframe if the registered voter fails to respond or responds in a certain manner to certain notices; requiring the supervisor to review evidence and make a determination of eligibility within a specified timeframe in certain circumstances; requiring the supervisor to remove an ineligible voter within a specified timeframe and notify the voter that he or she has the right to appeal the determination of ineligibility; requiring the supervisor to schedule and issue notice of a hearing within a specified timeframe after receiving the voter's hearing request; requiring that the hearing be held within a specified timeframe; authorizing the voter to request an extension; conforming provisions to changes made by the act; amending s. 98.077, F.S.; deleting a reference to the department from a provision requiring correspondence to include certain information; requiring a supervisor to publish a specified notice in a newspaper, on the county's website, or on the supervisor's website; requiring that signature updates used to verify signatures on ballot certificates or petitions be received by the supervisor before the voter's ballot is received, his or her provisional ballot is cast, or the petition is submitted for signature verification; requiring the supervisor to use the signature on file at the time the vote-by-mail ballot is received, the provisional ballot is cast, or the petition is reviewed; providing an exception; amending s. 98.093, F.S.; requiring the Department of Health to weekly furnish a specified list to the Department of State; requiring clerks of the circuit court to weekly furnish specified information to the Department of State; requiring the clerks to provide certain information to the department for specified purposes; requiring the Department of Law Enforcement to identify and report specified persons to the Department of State at least weekly; requiring the Florida Commission on Offender Review to furnish data on clemency to the Department of State at least weekly; requiring the Department of Corrections to identify persons convicted of a felony and committed to its custody, and to provide such information to the Department of State, at least weekly; requiring the Department of Highway Safety and Motor Vehicles to weekly furnish specified information to the Department of State; revising construction; making technical changes; amending s. 98.0981, F.S.; requiring supervisors to submit specified reports to the department within a specified timeframe; requiring supervisors to prepare a reconciliation report and submit such report to the department; providing requirements for, and the required format of, the report; revising the requirement that supervisors transmit to the department, in a specified format, the completely updated voting history information for each qualified voter who voted; defining the term "unique precinct identifier"; requiring supervisors to submit a specified geographical information system map to the department; requiring the department

2

CODING: Words stricken are deletions; words underlined are additions. Appitions.

to submit an election summary report containing certain information to the Legislature following the certification by the Elections Canvassing Commission of specified elections; deleting certain file specifications; revising the timeframe for a supervisor to collect and submit to the department precinct-level election results after certification by the commission of specified elections; revising the procedures for compiling such results; requiring the supervisor to research and address questions or issues identified by the department in such results; requiring the supervisor to provide amended precinct-level election results to the department within a specified timeframe, if certain conditions exist; requiring the department to publish such results online within a specified timeframe; specifying requirements for the website; requiring certain files to be created in accordance with, and providing requirements for, a certain rule; defining the term "unique precinct identifier"; providing the timeframe within which the department must compile and make available certain precinct-level statistical data; requiring the department to adopt specified rules; amending s. 99.012, F.S.; defining the term "qualify" for purposes of restrictions on individuals qualifying for public office; revising applicability; providing construction; amending s. 99.021, F.S.; revising the form of the candidate oath to require that candidates acknowledge certain outstanding fines, fees, or penalties relating to ethics or campaign finance violations; creating s. 99.0215, F.S.; requiring a candidate to designate in the candidate's oath the name he or she wishes to have printed on the ballot, subject to specified conditions; requiring a candidate to file a specified affidavit simultaneously with the oath if the candidate wishes to use a nickname, which is subject to certain conditions; defining the term "political slogan"; prohibiting the use of a professional title or degree except in specified circumstances; amending s. 99.097, F.S.; requiring the person or organization that submits signatures for a local or statewide issue to pay the supervisor in advance for checking the signatures; making technical changes; amending s. 100.021, F.S.; providing alternative methods for providing notice of a general election; amending s. 100.141, F.S.; revising the methods by which a supervisor may publish notice of a special election; amending s. 100.342, F.S.; specifying that the notice for a special election or referendum may be published on the county's website, the municipality's website, or the supervisor's website, as applicable; amending s. 101.001, F.S.; revising requirements for specified maps maintained by supervisors of elections; authorizing supervisors of elections to coordinate with other governmental entities for a certain purpose; deleting a provision requiring supervisors to provide the department certain data on precincts in the county; deleting a provision requiring the department to maintain a certain database; requiring supervisors of elections to include changes in the name of a precinct in a certain document; amending s. 101.048, F.S.; providing that specified persons are entitled to vote a provisional ballot; amending s. 101.151, F.S.; requiring the word "incumbent" to appear next to a candidate's name on an election ballot under specified conditions; amending s. 101.5612, F.S.; revising the methods by which certain notice may be provided; amending s. 101.6103, F.S.; conforming a cross-

CODING: Words stricken are deletions; words underlined are additions.

reference; making technical changes; amending s. 101.62, F.S.; specifying that a supervisor must accept requests for vote-by-mail ballots only from specified persons; providing that a request may be made through a supervisor's website; requiring the department to adopt by rule a uniform statewide application for a written request for a vote-by-mail ballot by a specified date; requiring a supervisor to cancel a request for a vote-by-mail ballot if certain mail sent by the supervisor to the voter is returned to the supervisor as undeliverable; requiring a voter who subsequently requests a vote-by-mail ballot to provide or confirm his or her current residential address; requiring the supervisor to add certain information to the voter's registration record if such information is provided in the vote-by-mail request; revising the definition of the term "immediate family"; deleting a provision requiring vote-by-mail ballot requests to be received by a specified time before the supervisor mails a vote-by-mail ballot; revising the day after which a supervisor may not mail a vote-by-mail ballot; providing the deadline for submitting a vote-by-mail ballot request; revising the means by which and the period during which a supervisor must provide a vote-by-mail ballot to a voter; prohibiting a supervisor from personally delivering a vote-by-mail ballot to certain voters or delivering a vote-by-mail ballot to certain voters' designees during a certain period unless certain conditions exist; making technical changes; amending s. 101.67, F.S.; requiring the supervisor to segregate and treat certain ballots as provisional; amending s. 101.68, F.S.; prohibiting vote-by-mail ballots from being counted if two or more ballots arrive in one mailing envelope; making technical changes; amending s. 101.6923, F.S.; requiring that a specified statement be included in a vote-by-mail ballot provided to certain voters; making technical changes; amending s. 101.6925, F.S.; revising the deadline for a voter to make specified information available to the supervisor before a vote-by-mail ballot may be canvassed; amending s. 101.694, F.S.; conforming a cross-reference; amending s. 101.71, F.S.; revising the methods by which certain notice may be provided; requiring certain public, tax-supported buildings to be made available for use as early voting locations upon the request of the supervisor; amending s. 101.733, F.S.; revising the methods by which certain notice may be provided; amending s. 102.111, F.S.; revising the time at which the Elections Canvassing Commission shall meet to certify returns; amending s. 102.112, F.S.; revising the timeframe in which county returns must be filed with the department; amending s. 102.141, F.S.; requiring a certain number of alternate canvassing board members; revising the methods by which certain notice may be provided; requiring the supervisor to file a report with the Division of Elections within a specified timeframe; revising the requirements for the report; requiring the division to review the report and offer specified training to supervisors based on the report; requiring the department to submit an analysis of specified reports to the Governor and the Legislature by a specified date; amending s. 103.021, F.S.; revising the timeframe within which a political party executive committee must submit its presidential electors to the Governor for nomination; requiring the state executive committee of each party to submit specified information; requiring that electors be qualified registered voters and members of

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

the political party for which they are named as electors; specifying that a required oath be made in writing; revising the timeframe within which the Governor must certify the electors to the department; revising the timeframe within which a minor political party must submit its list of presidential electors to the department; requiring presidential electors to file with the Governor a certain written oath; providing that certain acts constitute a resignation of the position of presidential elector; amending s. 103.022, F.S.; requiring certain write-in candidates to submit specified information; amending s. 103.091, F.S.; authorizing a qualifying office to accept and hold qualifying papers for candidates for political party offices within a specified timeframe before the qualifying period; amending s. 104.16, F.S.; providing applicability; amending s. 104.18, F.S.; providing that a prosecution for voting more than one ballot may proceed in any jurisdiction in which a ballot was willfully cast; providing that it is not necessary to prove which ballot was cast first; defining the term "votes more than one ballot at any election"; amending s. 104.42, F.S.; authorizing a supervisor to report certain findings to the Office of Election Crimes and Security rather than the Florida Elections Commission; amending s. 105.031, F.S.; revising the form of the candidate's oath to require that candidates for judicial office acknowledge certain outstanding fines, fees, or penalties relating to ethics or campaign finance violations; amending s. 106.03, F.S.; requiring the division to adopt specified rules; amending s. 106.07, F.S.; revising reporting intervals for candidates and political committees from monthly to quarterly; preempting local governments from establishing reporting schedules that differ from certain requirements; conforming a cross-reference; amending s. 106.0702, F.S.; conforming a cross-reference; amending s. 106.0703, F.S.; revising reporting intervals for electioneering communications organizations from monthly to quarterly; conforming a cross-reference; amending s. 106.08, F.S.; adding text messages to the items that do not constitute contributions to be counted toward certain contribution limits; creating s. 106.1436, F.S.; defining the term "voter guide"; prohibiting a person from representing that a voter guide is an official publication of a political party; providing an exception; providing disclosure requirements for such voter guides; providing criminal penalties and fines; amending s. 106.265, F.S.; increasing the maximum civil fines that may be imposed for specified violations; providing that fines assessed against a political committee also attach jointly and severally to the chair of the political committee under specified conditions; amending s. 322.142, F.S.; authorizing the Department of Highway Safety and Motor Vehicles to provide certain reproductions to a supervisor of elections; providing effective dates.

Be It Enacted by the Legislature of the State of Florida:

Section 1.   Subsection (17) of section 97.012, Florida Statutes, is amended to read:

5

97.012   Secretary of State as chief election officer.—The Secretary of State is the chief election officer of the state, and it is his or her responsibility to:

(17)   Provide <u>mandatory</u> formal signature matching training to supervisors of elections and county canvassing board members. <u>Any person whose duties require verification of signatures must undergo signature matching training. The department shall adopt rules governing signature matching procedures and training.</u>

Section 2.   Paragraph (g) of subsection (3) of section 97.052, Florida Statutes, is amended to read:

97.052   Uniform statewide voter registration application.—

(3)   The uniform statewide voter registration application must also contain:

(g)   A statement informing the applicant that if the application is being collected by a third-party voter registration organization, the organization might not deliver the application to the division or the supervisor in the county in which the applicant resides in less than <u>10</u> <s>14</s> days or before registration closes for the next ensuing election, and that the applicant may instead elect to deliver the application in person or by mail or choose to register online. The statement must further inform the applicant how to determine whether the application has been delivered.

Section 3.   Subsection (13) of section 97.057, Florida Statutes, is amended to read:

97.057   Voter registration by the Department of Highway Safety and Motor Vehicles.—

(13)   The Department of Highway Safety and Motor Vehicles must assist the Department of State in regularly identifying changes in residence address on the driver license or identification card of a voter. The Department of State must report each such change to the appropriate supervisor of elections who must change the voter's registration records in accordance with <u>s. 98.065(4)</u> <s>s. 98.065(5)</s>.

Section 4.   Section 97.0575, Florida Statutes, is amended to read:

97.0575   Third-party voter <u>registration organizations</u> <s>registrations</s>.—

(1)   Before engaging in any voter registration activities, a third-party voter registration organization must register and provide to the division, in an electronic format, the following information:

(a)   The names of the officers of the organization and the name and permanent address of the organization.

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

(b)   The name and address of the organization's registered agent in the state.

(c)   The names, permanent addresses, and temporary addresses, if any, of each registration agent registering persons to vote in this state on behalf of the organization. This paragraph does not apply to persons who only solicit applications and do not collect or handle voter registration applications.

(d)   Beginning November 6, 2024, the specific general election cycle for which the third-party voter registration organization is registering persons to vote.

(e)   An affirmation that each person collecting or handling voter registration applications on behalf of the third-party voter registration organization has not been convicted of a felony violation of the Election Code, a felony violation of an offense specified in s. 825.103, a felony offense specified in s. 98.0751(2)(b) or (c), or a felony offense specified in chapter 817, chapter 831, or chapter 837. A third-party voter registration organization is liable for a fine in the amount of $50,000 for each such person who has been convicted of a felony violation of the Election Code, a felony violation of an offense specified in s. 825.103, a felony offense specified in s. 98.0751(2)(b) or (c), or a felony offense specified in chapter 817, chapter 831, or chapter 837 who is collecting or handling voter registration applications on behalf of the third-party voter registration organization.

(f)   An affirmation that each person collecting or handling voter registration applications on behalf of the third-party voter registration organization is a citizen of the United States of America. A third-party voter registration organization is liable for a fine in the amount of $50,000 for each such person who is not a citizen and is collecting or handling voter registration applications on behalf of the third-party voter registration organization.

(2)   Beginning November 6, 2024, the registration of a third-party voter registration organization automatically expires at the conclusion of the specific general election cycle for which the third-party voter registration organization is registered.

(3)(2)   The division or the supervisor of elections shall make voter registration forms available to third-party voter registration organizations. All such forms must contain information identifying the organization to which the forms are provided. The division shall maintain a database of all third-party voter registration organizations and the voter registration forms assigned to the third-party voter registration organization. Each supervisor of elections shall provide to the division information on voter registration forms assigned to and received from third-party voter registration organizations. The information must be provided in a format and at times as required by the division by rule. The division shall must update information on third-party voter registrations daily and make the information publicly available.

7

(4)   A third-party voter registration organization that collects voter registration applications shall provide a receipt to an applicant upon accepting possession of his or her application. The division shall adopt by rule a uniform format for the receipt by October 1, 2023. The format must include, but need not be limited to, the name of the applicant, the date the application is received, the name of the third-party voter registration organization, the name of the registration agent, the applicant's political party affiliation, and the county in which the applicant resides.

(5)(a)(3)(a)   A third-party voter registration organization that collects voter registration applications serves as a fiduciary to the applicant and shall ensure, ensuring that any voter registration application entrusted to the organization, irrespective of party affiliation, race, ethnicity, or gender, is must be promptly delivered to the division or the supervisor of elections in the county in which the applicant resides within 10 14 days after the application is was completed by the applicant, but not after registration closes for the next ensuing election. If a voter registration application collected by any third-party voter registration organization is not promptly delivered to the division or supervisor of elections in the county in which the applicant resides, the third-party voter registration organization is liable for the following fines:

1.   A fine in the amount of $50 per each day late, up to $2,500, for each application received by the division or the supervisor of elections in the county in which the applicant resides more than 10 14 days after the applicant delivered the completed voter registration application to the third-party voter registration organization or any person, entity, or agent acting on its behalf. A fine in the amount of $2,500 $250 for each application received if the third-party voter registration organization or person, entity, or agency acting on its behalf acted willfully.

2.   A fine in the amount of $100 per each day late, up to $5,000, for each application collected by a third-party voter registration organization or any person, entity, or agent acting on its behalf, before book closing for any given election for federal or state office and received by the division or the supervisor of elections in the county in which the applicant resides after the book-closing deadline for such election. A fine in the amount of $5,000 $500 for each application received if the third-party voter registration organization or any person, entity, or agency acting on its behalf acted willfully.

3.   A fine in the amount of $500 for each application collected by a third-party voter registration organization or any person, entity, or agent acting on its behalf, which is not submitted to the division or supervisor of elections in the county in which the applicant resides. A fine in the amount of $5,000 $1,000 for any application not submitted if the third-party voter registration organization or person, entity, or agency acting on its behalf acted willfully.

The aggregate fine which may be assessed pursuant to this paragraph which may be assessed against a third-party voter registration organization,

CODING: Words stricken are deletions; words underlined are additions.

including affiliate organizations, for violations committed in a calendar year is $250,000 $50,000.

(b)   A showing by the third-party voter registration organization that the failure to deliver the voter registration application within the required timeframe is based upon force majeure or impossibility of performance shall be an affirmative defense to a violation of this subsection. The secretary may waive the fines described in this subsection upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance.

(6)(4)   If a person collecting voter registration applications on behalf of a third-party voter registration organization alters the voter registration application of any other person, without the other person's knowledge and consent, in violation of s. 104.012(4) and is subsequently convicted of such offense, the applicable third-party voter registration organization is liable for a fine in the amount of $5,000 $1,000 for each application altered.

(7)   If a person collecting voter registration applications on behalf of a third-party voter registration organization copies a voter's application or retains a voter's personal information, such as the voter's Florida driver license number, Florida identification card number, social security number, or signature, for any reason other than to provide such application or information to the third-party voter registration organization in compliance with this section, the person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(8)(5)   If the Secretary of State reasonably believes that a person has committed a violation of this section, the secretary may refer the matter to the Attorney General for enforcement. The Attorney General may institute a civil action for a violation of this section or to prevent a violation of this section. An action for relief may include a permanent or temporary injunction, a restraining order, or any other appropriate order.

(9)(6)   The division shall adopt by rule a form to elicit specific information concerning the facts and circumstances from a person who claims to have been registered to vote by a third-party voter registration organization but who does not appear as an active voter on the voter registration rolls. The division shall also adopt rules to ensure the integrity of the registration process, including controls to ensure that all completed forms are promptly delivered to the division or a supervisor in the county in which the applicant resides.

(10)(7)   The date on which an applicant signs a voter registration application is presumed to be the date on which the third-party voter registration organization received or collected the voter registration application.

(11)   A third-party voter registration organization may not mail or otherwise provide a voter registration application upon which any

9

information about an applicant has been filled in before it is provided to the applicant. A third-party voter registration organization that violates this section is liable for a fine in the amount of $50 for each such application.

(12)(8)  The requirements of this section are retroactive for any third-party voter registration organization registered with the department as of July 1, 2023 on the effective date of this act, and must be complied with within 90 days after the department provides notice to the third-party voter registration organization of the requirements contained in this section. Failure of the third-party voter registration organization to comply with the requirements within 90 days after receipt of the notice shall automatically result in the cancellation of the third-party voter registration organization's registration.

Section 5.  Subsections (1) and (3) of section 97.071, Florida Statutes, are amended to read:

97.071  Voter information card.—

(1)  A voter information card must shall be furnished by the supervisor to all registered voters residing in the supervisor's county. The card must contain:

(a)  Voter's registration number.

(b)  Date of registration.

(c)  Full name.

(d)  Party affiliation.

(e)  Date of birth.

(f)  Address of legal residence.

(g)  Precinct number.

(h)  Polling place address and a link to the supervisor's website to provide the most current polling place locations.

(i)  Name of supervisor and contact information of supervisor.

(j)  The following statement: "This card is for information purposes only. This card is proof of registration but is not legal verification of eligibility to vote. It is the responsibility of a voter to keep his or her eligibility status current. A voter may confirm his or her eligibility to vote with the Department of State."

(k)(j)  Other information deemed necessary by the supervisor.

(3)  In the case of a change of name, address of legal residence, polling place address, or party affiliation, the supervisor shall issue the voter a new

CODING: Words stricken are deletions; words underlined are additions.

voter information card. <u>A temporary change made to a polling location pursuant to ss. 101.71 and 101.74 does not require the issuance of a new voter information card.</u>

Section 6.    <u>The amendments made to s. 97.071, Florida Statutes, by this act, only apply to new and replacement voter information cards issued on or after July 1, 2023.</u>

Section 7.    Subsections (2), (3), and (4), paragraph (c) of subsection (5), and paragraph (a) of subsection (7) of section 98.065, Florida Statutes, are amended, and a new subsection (6) is added to that section, to read:

98.065    Registration list maintenance programs.—

(2)    A supervisor must incorporate one or more of the following procedures in the supervisor's annual registration list maintenance program under which the supervisor shall:

(a)    Use change-of-address information supplied by the United States Postal Service through its licensees to identify registered voters whose addresses might have changed. Additionally, in odd-numbered years, unless the supervisor is conducting the procedure specified in paragraph (b), the supervisor must identify change-of-address information from <u>address confirmation final notices</u> ~~returned nonforwardable return-if-undeliverable address confirmation requests~~ mailed to all registered voters who have not voted in the preceding two general elections or any intervening election and who have not made a request that their registration records be updated during that time; or

(b)    Identify change-of-address information from returned nonforwardable return-if-undeliverable <u>address confirmation requests</u> ~~mail~~ sent to all registered voters in the county.

~~(3)   Address confirmation requests sent pursuant to paragraph (2)(a) and mail sent pursuant to paragraph (b) must be addressed to the voter's address of legal residence, not including voters temporarily residing outside the county and registered in the precinct designated by the supervisor pursuant to s. 101.045(1). If a request is returned as undeliverable, any other notification sent to the voter pursuant to subsection (5) or s. 98.0655 must be addressed to the voter's mailing address on file, if any.~~

<u>(3)</u>~~(4)~~    A registration list maintenance program must be conducted by each supervisor, at a minimum, once each year<u>, beginning no later than April 1,</u> and must be completed <u>at least</u> ~~not later than~~ 90 days before the date of any federal election. All list maintenance actions associated with each voter must be entered, tracked, <u>recorded,</u> and maintained in the statewide voter registration system.

<u>(4)</u>~~(5)~~

11

(c)   If an address confirmation request required by paragraph (2)(b) (2)(a) is returned as undeliverable without indication of an address change, ~~or there is no response from the voter within 30 days,~~ or if any other nonforwardable return-if-undeliverable mail is returned as undeliverable with no indication of an address change, the supervisor must ~~shall~~ send an address confirmation final notice to ~~all addresses on file for~~ the voter.

(6)   The supervisor shall, at a minimum, conduct an annual review of voter registration records to identify registration records in which a voter is registered at an address that may not be an address of legal residence for the voter. For those registration records with such addresses that the supervisor has reasonable belief are not legal residential addresses, the supervisor shall initiate list maintenance activities pursuant to s. 98.075(6) and (7).

(7)(a)   No later than July 31 and January 31 of each year, the supervisor must certify to the department the address list maintenance activities conducted during the first 6 months and the second 6 months of the year, respectively, including the number of address confirmation requests sent, the number of voters designated as inactive, and the number of voters removed from the statewide voter registration system.

Section 8.   Paragraph (c) of subsection (1) of section 98.0655, Florida Statutes, is amended to read:

98.0655   Registration list maintenance forms.—The department shall prescribe registration list maintenance forms to be used by the supervisors which must include:

(1)   An address confirmation request that must contain:

~~(c)   If the address confirmation request is required by s. 98.065(2)(a), a statement that if the voter has not changed his or her legal residence or has changed his or her legal residence within the state, the voter should return the form within 30 days after the date on which the notice was sent to the voter;~~ and

Section 9.   Paragraph (c) of subsection (2) and subsections (3) through (8) of section 98.075, Florida Statutes, are amended to read:

98.075   Registration records maintenance activities; ineligibility determinations.—

(2)   DUPLICATE REGISTRATION.—

(c)   Information received by the department from another state or the District of Columbia upon the department becoming a member of a nongovernmental entity as provided in subparagraph (b)1., which is confidential or exempt pursuant to the laws of that state or the District of Columbia, is exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution. The department shall provide such information to the supervisors to conduct registration list maintenance activities. ~~This paragraph is~~

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

~~subject to the Open Government Sunset Review Act in accordance with s. 119.15 and shall stand repealed on October 2, 2023, unless reviewed and saved from repeal through reenactment by the Legislature.~~

(3)  DECEASED PERSONS.—

(a)1.  The department shall identify those registered voters who are deceased by comparing information received from:

a.  The Department of Health as provided in s. 98.093;

b.  The United States Social Security Administration, including, but not limited to, any master death file or index compiled by the United States Social Security Administration; and

c.  The Department of Highway Safety and Motor Vehicles.

2.  Within 7 days after receipt of such information through the statewide voter registration system, the supervisor shall remove the name of the registered voter.

(b)  The supervisor shall remove the name of a deceased registered voter from the statewide voter registration system within 7 days after ~~upon~~ receipt of a copy of a death certificate issued by a governmental agency authorized to issue death certificates.

(4)  ADJUDICATION OF MENTAL INCAPACITY.—The department shall identify those registered voters who have been adjudicated mentally incapacitated with respect to voting and who have not had their voting rights restored by comparing information received from the clerk of the circuit court as provided in s. 98.093. The department shall review such information and make an initial determination as to whether the information is credible and reliable. If the department determines that the information is credible and reliable, the department must ~~shall~~ notify the supervisor and provide a copy of the supporting documentation indicating the potential ineligibility of the voter to be registered. Upon receipt of the notice that the department has made a determination of initial credibility and reliability, the supervisor shall adhere to the procedures set forth in subsection (7) before ~~prior to~~ the removal of a registered voter from the statewide voter registration system.

(5)  FELONY CONVICTION.—

(a)  The department shall identify those registered voters who have been convicted of a felony and whose voting rights have not been restored by comparing information received from, but not limited to, a clerk of the circuit court, the Board of Executive Clemency, the Department of Corrections, the Department of Law Enforcement, or a United States Attorney's Office, as provided in s. 98.093. The department shall review such information and make an initial determination as to whether the information is credible and reliable. If the department determines that the information is credible and reliable, the department must ~~shall~~ notify the supervisor and provide a copy

of the supporting documentation indicating the potential ineligibility of the voter to be registered. Upon receipt of the notice that the department has made a determination of initial credibility and reliability, the supervisor shall adhere to the procedures set forth in subsection (7) before prior to the removal of a registered voter's name from the statewide voter registration system.

(b)   The supervisors shall coordinate with their respective clerks of the court to obtain information pursuant to s. 98.093 to identify registered voters within their respective jurisdictions who have been convicted of a felony during the preceding week and whose voting rights have not been restored. The supervisor shall adhere to the procedures set forth in subsection (7) before the removal of a registered voter's name from the statewide voter registration system. For purposes of this paragraph, a supervisor's duties under subsection (7) begin upon his or her determination that the information received from the clerk is credible and reliable.

(6)   OTHER BASES FOR INELIGIBILITY.—Subsections (2)-(5) do not limit or restrict the department or the supervisor in his or her duty to act upon direct receipt of, access to, or knowledge of information from any governmental entity that identifies a registered voter as potentially ineligible. If the department or supervisor receives information from any governmental entity sources other than those identified in subsections (2)-(5) that a registered voter is ineligible because the voter he or she is deceased, adjudicated a convicted felon without having had his or her voting rights restored, adjudicated mentally incapacitated without having had his or her voting rights restored, does not meet the age requirement pursuant to s. 97.041, is not a United States citizen, is a fictitious person, or has listed an address a residence that is not his or her address of legal residence, the supervisor must adhere to the procedures set forth in subsection (7) before prior to the removal of the name of a registered voter who is determined to be ineligible a registered voter's name from the statewide voter registration system.

(7)   PROCEDURES FOR REMOVAL.—

(a)   If the supervisor receives notice or information pursuant to subsections (4)-(6), the supervisor of the county in which the voter is registered must shall:

1.   Notify the registered voter of his or her potential ineligibility by mail within 7 days after receipt of notice or information. The notice must shall include:

a.   A statement of the basis for the registered voter's potential ineligibility and a copy of any documentation upon which the potential ineligibility is based. Such documentation must include any conviction from another jurisdiction determined to be a similar offense to murder or a felony sexual offense, as those terms are defined in s. 98.0751.

14

b.   A statement that failure to respond within 30 days after receipt of the notice may result in a determination of ineligibility and in removal of the registered voter's name from the statewide voter registration system.

c.   A return form that requires the registered voter to admit or deny the accuracy of the information underlying the potential ineligibility for purposes of a final determination by the supervisor.

d.   A statement that, if the voter is denying the accuracy of the information underlying the potential ineligibility, the voter has a right to request a hearing for the purpose of determining eligibility.

e.   Instructions for the registered voter to contact the supervisor of elections of the county in which the voter is registered if assistance is needed in resolving the matter.

f.   Instructions for seeking restoration of civil rights pursuant to s. 8, Art. IV of the State Constitution and information explaining voting rights restoration pursuant to s. 4, Art. VI of the State Constitution following a felony conviction, if applicable.

g.   The following statement: "If you attempt to vote at an early voting site or your normal election day polling place, you will be required to vote a provisional ballot. If you vote by mail, your ballot will be treated as a provisional ballot. In either case, your ballot may not be counted until a final determination of eligibility is made. If you wish for your ballot to be counted, you must contact the supervisor of elections office within 2 days after the election and present evidence that you are eligible to vote."

2.   If the mailed notice is returned as undeliverable, the supervisor must, within 14 days after receiving the returned notice, either publish shall publish notice once in a newspaper of general circulation in the county in which the voter was last registered or publish notice on the county's website as provided in s. 50.0311 or on the supervisor's website, as deemed appropriate by the supervisor. The notice must shall contain the following:

a.   The voter's name and address.

b.   A statement that the voter is potentially ineligible to be registered to vote.

c.   A statement that failure to respond within 30 days after the notice is published may result in a determination of ineligibility by the supervisor and removal of the registered voter's name from the statewide voter registration system.

d.   An instruction for the voter to contact the supervisor no later than 30 days after the date of the published notice to receive information regarding the basis for the potential ineligibility and the procedure to resolve the matter.

15

CODING: Words stricken are deletions; words underlined are additions.

e.   An instruction to the voter that, if further assistance is needed, the voter should contact the supervisor of elections of the county in which the voter is registered.

f.   A statement that, if the voter denies the accuracy of the information underlying the potential ineligibility, the voter has a right to request a hearing for the purpose of determining eligibility.

g.   The following statement: "If you attempt to vote at an early voting site or your normal election day polling place, you will be required to vote a provisional ballot. If you vote by mail, your ballot will be treated as a provisional ballot. In either case, your ballot may not be counted until a final determination of eligibility is made. If you wish for your ballot to be counted, you must contact the supervisor of elections office within 2 days after the election and present evidence that you are eligible to vote."

3.   If a registered voter fails to respond to a notice pursuant to subparagraph 1. or subparagraph 2., the supervisor must ~~shall~~ make a final determination of the voter's eligibility within 7 days after expiration of the voter's timeframe to respond. If the supervisor determines that the voter is ineligible, the supervisor must ~~shall~~ remove the name of the registered voter from the statewide voter registration system within 7 days. The supervisor shall notify the registered voter of the supervisor's determination and action.

4.   If a registered voter responds to the notice pursuant to subparagraph 1. or subparagraph 2. and admits the accuracy of the information underlying the potential ineligibility, the supervisor must, as soon as practicable, ~~shall~~ make a final determination of ineligibility and ~~shall~~ remove the voter's name from the statewide voter registration system. The supervisor shall notify the registered voter of the supervisor's determination and action.

5.   If a registered voter responds to the notice issued pursuant to subparagraph 1. or subparagraph 2. and denies the accuracy of the information underlying the potential ineligibility but does not request a hearing, the supervisor must ~~shall~~ review the evidence and make a ~~final~~ determination of eligibility no later than 30 days after receiving the response from the voter. If the supervisor determines that the registered voter is ineligible, the supervisor must remove the voter's name from the statewide voter registration system upon such determination and notify the registered voter of the supervisor's determination and action and that the removed voter has a right to appeal a determination of ineligibility pursuant to s. 98.0755. If such registered voter requests a hearing, the supervisor must ~~shall~~ send notice to the registered voter to attend a hearing at a time and place specified in the notice. The supervisor shall schedule and issue notice for the hearing within 7 days after receiving the voter's request for a hearing and shall hold the hearing no later than 30 days after issuing the notice of the hearing. A voter may request an extension upon showing good cause by submitting an affidavit to the supervisor as to why he or she is unable to attend the scheduled hearing. Upon hearing all evidence presented at the

16

hearing, the supervisor shall make a determination of eligibility <u>within 7 days</u>. If the supervisor determines that the registered voter is ineligible, the supervisor <u>must</u> <s>shall</s> remove the voter's name from the statewide voter registration system and notify the registered voter of the supervisor's determination and action <u>and that the removed voter has a right to appeal a determination of ineligibility pursuant to s. 98.0755</u>.

(b)  The following <s>shall</s> apply to this subsection:

1.  All determinations of eligibility <u>must</u> <s>shall</s> be based on a preponderance of the evidence.

2.  All proceedings are exempt from <s>the provisions of</s> chapter 120.

3.  Any notice <u>must</u> <s>shall</s> be sent to the registered voter by certified mail, return receipt requested, or other means that provides a verification of receipt or <u>must</u> <s>shall</s> be published in a newspaper of general circulation where the voter was last registered<u>, on the county's website as provided in s. 50.0311, or on the supervisor's website</u>, whichever is applicable.

4.  The supervisor shall remove the name of any registered voter from the statewide voter registration system only after the supervisor makes a final determination that the voter is ineligible to vote.

5.  Any voter whose name has been removed from the statewide voter registration system pursuant to a determination of ineligibility may appeal that determination under <s>the provisions of</s> s. 98.0755.

6.  Any voter whose name was removed from the statewide voter registration system on the basis of a determination of ineligibility who subsequently becomes eligible to vote must reregister in order to have his or her name restored to the statewide voter registration system.

(8)  CERTIFICATION.—

(a)  No later than July 31 and January 31 of each year, the supervisor shall certify to the department <u>that the supervisor has</u> <s>the activities</s> conducted <u>the activities required</u> pursuant to this section during the first 6 months and the second 6 months of the year, respectively. The certification <u>must</u> <s>shall</s> include the number of persons to whom notices were sent pursuant to subsection (7), the number of persons who responded to the notices, the number of notices returned as undeliverable, the number of notices published in the newspaper<u>, on the county's website, or on the supervisor's website</u>, the number of hearings conducted, and the number of persons removed from the statewide voter registration <u>system</u> <s>systems</s> and the reasons for such removals.

(b)  If, based on the certification provided pursuant to paragraph (a), the department determines that a supervisor has not satisfied the requirements of this section, the department shall satisfy the appropriate requirements for

that county. Failure to satisfy the requirements of this section constitutes shall constitute a violation of s. 104.051.

Section 10. Subsections (2), (3), and (4) of section 98.077, Florida Statutes, are amended to read:

98.077    Update of voter signature.—

(2)    The department and supervisors of elections shall include in any correspondence, other than postcard notifications and notices relating to eligibility, sent to a registered voter information regarding when, where, and how to update the voter's signature and shall provide the voter information on how to obtain a voter registration application from a voter registration official which can be returned to update the signature.

(3)    At least once during each general election year before the presidential preference primary or the primary election, whichever occurs first, the supervisor shall publish in a newspaper of general circulation or other newspaper in the county, on the county's website as provided in s. 50.0311, or on the supervisor's website, as deemed appropriate by the supervisor, a notice specifying when, where, or how a voter can update his or her signature that is on file and how a voter can obtain a voter registration application from a voter registration official.

(4)    Except as authorized in ss. 101.048 and 101.68:

(a)    All signature updates for use in verifying vote-by-mail voter certificates, and provisional ballot voter certificates, or petitions ballots must be received by the appropriate supervisor before the voter's elector's ballot is received by the supervisor or, in the case of provisional ballots, before the voter's elector's ballot is cast or, in the case of a petition, before the petition is submitted for signature verification.

(b)    The signature on file at the time the vote-by-mail ballot is received, or at the time the provisional ballot is cast, or at the time a petition is reviewed is the signature that must shall be used in verifying the signature on the vote-by-mail voter certificates, and provisional ballot voter certificates, or petitions, respectively. For signatures requiring secondary or tertiary review, older signatures from previous registration updates may be used.

Section 11.    Section 98.093, Florida Statutes, is amended to read:

98.093    Duty of officials to furnish information relating to deceased persons, persons adjudicated mentally incapacitated, persons convicted of a felony, and persons who are not United States citizens.—

(1)    DUTIES.—In order to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system pursuant to procedures in s. 98.065 or s. 98.075, it is necessary for the department and supervisors of elections to receive or

CODING: Words stricken are deletions; words underlined are additions.

access certain information from state and federal officials and entities in the format prescribed.

(2)   To the maximum extent feasible, state and local government agencies shall facilitate provision of information and access to data to the department, including, but not limited to, databases that contain reliable criminal records and records of deceased persons. State and local government agencies that provide such data must shall do so without charge if the direct cost incurred by those agencies is not significant.

(2)(a)   DEPARTMENT OF HEALTH.—The Department of Health shall furnish weekly monthly to the department a list containing the name, address, date of birth, date of death, social security number, race, and sex of each deceased person 17 years of age or older whose death was reported during the preceding week.

(3)(b)   CLERK OF THE CIRCUIT COURT.—Each clerk of the circuit court shall furnish weekly to the department and to the supervisors in their respective jurisdictions the following information monthly to the department:

(a)1.   Information identifying A list of those persons who have been adjudicated mentally incapacitated with respect to voting during the preceding week and calendar month, a list of those persons whose mental capacity with respect to voting has been restored during the preceding week. The information must include each person's name; address; date of birth; race; sex; and, if available, his or her Florida driver license number or Florida identification card number or the last four digits of his or her social security number. The clerk shall provide the information to the department to assist a supervisor in identifying registered voters in his or her county who are adjudicated mentally incapacitated outside of his or her county pursuant to s. 98.075(4).

(b)   Information identifying calendar month, and a list of those persons who have responded to returned signed jury notices during the preceding week from months to the clerk of the circuit court and whose response indicated indicating a change of address. The information must Each list shall include each person's the name;, address;, date of birth;, race;, sex;, and, if whichever is available, the Florida driver license number or, Florida identification card number, or the last four digits of his or her social security number of each such person.

(c)2.   Information on the terms of sentence for felony convictions, including any financial obligations for court costs, fees, and fines, of all persons listed in the clerk's records whose last known address is within this state and who have been convicted of a felony during the preceding week month. The information may be provided to the supervisor directly by the clerk individual clerks of the circuit court or may be provided on the clerk's their behalf through the Comprehensive Case Information System. The clerk shall provide the information to the

19

department to assist a supervisor in identifying registered voters in his or her county who are adjudicated of a felony outside of his or her county. For each felony conviction reported, the information must include:

1.a.  The full name;, last known address;, date of birth;, race;, sex;, and, if available, the Florida driver license number or Florida identification card number, as applicable;, and the last four digits of the social security number of the person convicted.

2.b.  The amounts of all financial obligations, including restitution and court costs, fees, and fines, and, if known, the amount of financial obligations not yet satisfied.

3.c.  The county in which the conviction occurred.

4.d.  The statute number violated, statute table text, date of conviction, and case number.

(4)(c)  UNITED STATES ATTORNEYS.—Upon receipt of information from the United States Attorney, listing persons convicted of a felony in federal court, the department shall use such information to identify registered voters or applicants for voter registration who may be potentially ineligible based on information provided in accordance with s. 98.075.

(5)(d)  DEPARTMENT OF LAW ENFORCEMENT.—The Department of Law Enforcement shall identify and report to the department at least weekly those persons who have been convicted of a felony during the preceding week who appear in the voter registration records supplied by the statewide voter registration system, in a time and manner that enables the department to meet its obligations under state and federal law.

(6)(e)  FLORIDA COMMISSION ON OFFENDER REVIEW.—The Florida Commission on Offender Review shall furnish at least weekly bimonthly to the department data, including the identity of those persons granted clemency in the preceding month or any updates to prior records which have occurred in the preceding month. The data must shall contain the commission's case number and the person's name, address, date of birth, race, gender, Florida driver license number, Florida identification card number, or the last four digits of the social security number, if available, and references to record identifiers assigned by the Department of Corrections and the Department of Law Enforcement, a unique identifier of each clemency case, and the effective date of clemency of each person.

(7)(f)  DEPARTMENT OF CORRECTIONS.—The Department of Corrections shall identify and report to the department at least weekly those persons who have been convicted of a felony and committed to its custody or placed on community supervision during the preceding week. The information must be provided to the department at a time and in a manner that enables the department to identify registered voters who are convicted felons and to meet its obligations under state and federal law.

CODING: Words stricken are deletions; words underlined are additions.

(8)(g)  DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHI-CLES.—The Department of Highway Safety and Motor Vehicles shall furnish weekly monthly to the department the following information:

(a)1.  Information identifying A list of those persons whose names have been removed from the Florida driver license or Florida identification card database during the preceding week because they have been licensed or been issued an identification card in another state. The information list must contain the person's name, last known Florida address, date of birth, sex, last four digits of his or her social security number, and Florida driver license number or Florida identification card number and, if available, the address and the state in which the person is now licensed of each such person.

(b)2.  Information identifying A list of those persons who during the preceding week presented evidence of non-United States citizenship upon being issued a new or renewed Florida driver license or Florida identification card. The information list must contain the person's name; address; date of birth; last four digits of the; social security number, if applicable; and Florida driver license number or Florida identification card number, as available applicable; and alien registration number or other legal status identifier, of each such person.

(c)  Information identifying those persons for which it has received official information during the preceding week that the person is deceased. The information must contain the name, address, date of birth, last four digits of the social security number, Florida driver license number or Florida identification card number, and date of death of each such person.

(9)(3)  CONSTRUCTION.—This section does not limit or restrict the supervisor in his or her duty to act upon direct receipt of, access to, or knowledge of official information from these and other governmental entities that identify a registered voter as potentially ineligible and to initiate removal of remove the name of the registered voter who is determined to be ineligible names of persons from the statewide voter registration system pursuant to s. 98.075(7) based upon information received from other sources.

Section 12.  Section 98.0981, Florida Statutes, is amended to read:

98.0981  Reports; voting history; statewide voter registration system information; precinct-level election results; book closing statistics; live turnout data.—

(1)  VOTING HISTORY AND STATEWIDE VOTER REGISTRATION SYSTEM INFORMATION.—Each supervisor shall submit the reports required by this subsection to the department no later than 10 business days after the Elections Canvassing Commission certifies the results of an election.

21

(a)  *Reconciliation.*—For each presidential preference primary election, special primary election, special election, primary election, and general election, the supervisor shall reconcile the aggregate total of ballots cast in each precinct to the aggregate number of voters with voter history pursuant to paragraph (b) and the precinct-level election results pursuant to subsection (3) and submit a reconciliation report. The report must be submitted to the department in an electronic format pursuant to file format and specifications set forth by rule. The report must include a written explanation if the reconciliation results in a discrepancy between the voter history and the election results.

(b)  *Voting history.*—For each ~~Within 30 days after certification by the Elections Canvassing Commission of a~~ presidential preference primary, special election, <u>special primary election,</u> primary election, or general election, <u>as applicable,</u> supervisors of elections shall transmit <u>completely updated voting history information for each qualified voter</u> to the department<u>. Such information must be provided</u>, in a uniform electronic format <u>pursuant to file specifications adopted by the department by rule. The voting history information must include:</u> ~~specified in paragraph (d), completely updated voting history information for each qualified voter who voted~~

1.  The unique identifier assigned to each qualified voter within the statewide voter registration system.

2.  Each qualified voter's unique precinct identifier, as designated by the county within the statewide voter registration system, at the time of voting. For purposes of this subparagraph, the term "unique precinct identifier" means an alphanumeric code representing the precinct name or number and containing no more than the maximum characters as specified by rule.

3.  Specifics as to each qualified voter's voting history, including whether the qualified voter voted a regular ballot during the early voting period, voted during the early voting period using a provisional ballot that was subsequently counted, voted a regular ballot at a precinct location, voted at a precinct location using a provisional ballot that was subsequently counted, voted by vote-by-mail ballot, attempted to vote by a timely received vote-by-mail ballot that was not counted, attempted to vote by a vote-by-mail ballot that was received untimely, attempted to vote by provisional ballot that was not counted, or did not vote.

(c)  *Precinct boundaries.*—For each presidential preference primary election, special primary election, special election, primary election, and general election, the supervisor shall submit to the department the geographical information system map of precinct boundaries created and maintained pursuant to s. 101.001 for the applicable election.

<u>(2)</u>~~(b)~~  LEGISLATIVE REPORT.—

(a)  *Specifications.*—~~After receipt of the information in paragraph (a),~~ The department shall prepare <u>an election summary compiled for a</u>

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

presidential preference primary election, special primary election, special election, primary election, or general election, as applicable, a report in an electronic format which contains the following information, separately compiled for the primary and general election for all voters qualified to vote in either election:

1.   The voting history information as transmitted under paragraph (1)(b) and the precinct boundaries as transmitted under paragraph (1)(c). unique identifier assigned to each qualified voter within the statewide voter registration system;

2.   All information provided by each qualified voter on his or her voter registration application pursuant to s. 97.052(2), except that which is confidential or exempt from public records requirements.;

3.   Each qualified voter's date of registration.;

4.   Each qualified voter's current state representative district, state senatorial district, and congressional district, county commission district, and school board district at the time of voting, assigned by the supervisor of elections;

5.   Each qualified voter's current precinct; and

6.   Voting history as transmitted under paragraph (a) to include whether the qualified voter voted at a precinct location, voted during the early voting period, voted by vote-by-mail ballot, attempted to vote by vote-by-mail ballot that was not counted, attempted to vote by provisional ballot that was not counted, or did not vote.

(b)(c)   *Submission.*—Within 60 45 days after certification by the Elections Canvassing Commission certifies of a presidential preference primary, special election, primary election, or general election, the department shall submit send to the President of the Senate, the Speaker of the House of Representatives, the Senate Minority Leader, and the House Minority Leader an election summary a report in electronic format that includes all information set forth in paragraph (a) (b).

(d)   File specifications are as follows:

1.   The file shall contain records designated by the categories below for all qualified voters who, regardless of the voter's county of residence or active or inactive registration status at the book closing for the corresponding election that the file is being created for:

a.   Voted a regular ballot at a precinct location.

b.   Voted at a precinct location using a provisional ballot that was subsequently counted.

c.   Voted a regular ballot during the early voting period.

d.  Voted during the early voting period using a provisional ballot that was subsequently counted.

e.  Voted by vote-by-mail ballot.

f.  Attempted to vote by vote-by-mail ballot, but the ballot was not counted.

g.  Attempted to vote by provisional ballot, but the ballot was not counted in that election.

2.  Each file shall be created or converted into a tab-delimited format.

3.  File names shall adhere to the following convention:

a.  Three-character county identifier as established by the department followed by an underscore.

b.  Followed by four-character file type identifier of "VHO3" followed by an underscore.

c.  Followed by FVRS election ID followed by an underscore.

d.  Followed by Date Created followed by an underscore.

e.  Date format is YYYYMMDD.

f.  Followed by Time Created - HHMMSS.

g.  Followed by ".txt".

4.  Each record shall contain the following columns: Record Identifier, FVRS Voter ID Number, FVRS Election ID Number, Vote Date, Vote History Code, Precinct, Congressional District, House District, Senate District, County Commission District, and School Board District.

(e)  Each supervisor of elections shall reconcile, before submission, the aggregate total of ballots cast in each precinct as reported in the precinct-level election results to the aggregate total number of voters with voter history for the election for each district.

(f)  Each supervisor of elections shall submit the results of the data reconciliation as described in paragraph (e) to the department in an electronic format and give a written explanation for any precincts where the reconciliation as described in paragraph (e) results in a discrepancy between the voter history and the election results.

(3)(2)  PRECINCT-LEVEL ELECTION RESULTS.—

(a)1.  Within 10 business 30 days after certification by the Elections Canvassing Commission certifies of a presidential preference primary election, special election, special primary election, primary election, or

24

general election, <u>as applicable,</u> the supervisors of elections shall collect and submit to the department precinct-level election results for the election in a uniform electronic format specified by paragraph (c). ~~The precinct-level election results shall be compiled separately for the primary or special primary election that preceded the general or special general election, respectively.~~ The results <u>must</u> ~~shall~~ specifically include for each precinct the total of all ballots cast for each candidate or nominee to fill a national, state, county, or district office or proposed constitutional amendment, with subtotals for each candidate and ballot type. <u>When one or more ballot types, also known as counting groups, in a race or an issue have fewer than 30 voters voting on the ballot, the ballot type must be reported as zero except for the total votes counting group for that precinct. Ballot types or counting groups include election day, early voting, vote-by-mail, provisional voting, and total votes</u> ~~However, ballot type or precinct subtotals in a race or question having fewer than 30 voters voting on the ballot type or in the precinct may not be reported in precinct results.~~ <u>For purposes of this paragraph, the term</u> "all ballots cast" means ballots cast by voters who cast a ballot<u>,</u> whether at a precinct location<u>;</u>, by vote-by-mail ballot<u>,</u> including overseas vote-by-mail ballots<u>;</u>, during the early voting period<u>;</u>, or by provisional ballot.

<u>2. Upon request from the department, a supervisor must research and address, as appropriate, any questions or issues identified by the department pertaining to the precinct-level election results. If the information as originally submitted is changed or corrected, the supervisor must provide an amended precinct-level election results file no later than 10 business days after the request from the department.</u>

(b) The department shall make such information available <u>online no later than 60 days after the Elections Canvassing Commission certifies the presidential preference primary election, special primary election, special election, primary election, or general election, as applicable. The website containing the information must include</u> ~~on a searchable, sortable, and downloadable database via its website that also includes~~ the file layout and codes. The <u>information must</u> ~~database shall~~ be searchable and sortable by county, precinct, and candidate<u>;</u>. ~~The~~ <u>must</u> ~~database shall~~ be downloadable in a tab-delimited format<u>; and must</u>. ~~The database shall~~ be available for download county-by-county ~~and also as a statewide file. Such report shall also be made available upon request~~.

(c) The files containing the precinct-level election results <u>must</u> ~~shall~~ be created in accordance with the applicable file specification <u>as set forth by rule. The rule must, at a minimum, provide that</u>:

~~1. The precinct-level results file shall be created or converted into a tab-delimited text file.~~

~~2. The row immediately before the first data record shall contain the column names of the data elements that make up the data records. There shall be one header record followed by multiple data records.~~

25

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

3.   the data records ~~shall~~ include the following columns: County Name, Election Number, Election Date, Unique Precinct Identifier, Precinct Polling Location, Total Registered Voters, Total Registered Republicans, Total Registered Democrats, Total Registered All Other Parties, Contest Name, Candidate/Retention/Issue Name, Candidate Florida Voter Registration System ID Number, Division of Elections Unique Candidate Identifying Number, Candidate Party, District, Undervote Total, Overvote Total, Write-in Total, and Vote Total. <u>For purposes of this paragraph, the term "unique precinct identifier" means an alphanumeric code representing the precinct name or number and containing no more than the maximum characters as specified by rule.</u>

<u>(4)</u>~~(3)~~   PRECINCT-LEVEL BOOK CLOSING STATISTICS.—<u>No later than 10 days</u> after the date of book closing <u>for</u> ~~but before the date of~~ an election as defined in s. 97.021 to fill a national, state, county, or district office, or to vote on a proposed constitutional amendment, the department shall compile <u>and make available</u> the following precinct-level statistical data for each county:

(a)   <u>Unique</u> precinct <u>identifier</u> ~~numbers~~. <u>For purposes of this subsection, the term "unique precinct identifier" means an alphanumeric code representing the precinct name or number and containing no more than the maximum characters as specified by rule.</u>

(b)   Total number of active registered voters by party for each precinct.

<u>(5)</u>~~(4)~~   LIVE TURNOUT DATA.—On election day, each supervisor of elections shall make live voter turnout data, updated at least once per hour, available on his or her website. Each supervisor shall transmit the live voter turnout data to the division, which must create and maintain a real-time statewide turnout dashboard that is available for viewing by the public on the division's website as the data becomes available.

<u>(6)</u>~~(5)~~   REPORTS PUBLICLY AVAILABLE.—The department shall also make publicly available the reports and results required in subsections <u>(1)-(4)</u> ~~(1)-(3)~~.

<u>(7)</u>~~(6)~~   RULEMAKING.—The department shall adopt rules and prescribe forms to carry out the purposes of this section.

Section 13.   Effective upon becoming a law, present paragraph (b) of subsection (1) of section 99.012, Florida Statutes, is redesignated as paragraph (c), a new paragraph (b) is added to that subsection, and paragraph (c) is added to subsection (7) of that section, to read:

99.012   Restrictions on individuals qualifying for public office.—

(1)   As used in this section:

<u>(b)   "Qualify" means to fulfill the requirements set forth in s. 99.061(7)(a) or s. 105.031(5)(a).</u>

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(7)   This section does not apply to:

(c)   Persons seeking the office of President or Vice President of the United States.

Section 14.   The amendments made to s. 99.012, Florida Statutes, by this act are intended to clarify existing law. Any person seeking the office of President or Vice President of the United States is not subject to the requirements of chapter 99, Florida Statutes, which govern candidate qualifying, specifically those which require the submission of certain documents, full and public disclosures of financial interests, petition signatures, or the payment of filing fees. This section shall take effect upon this act becoming a law.

Section 15.   Paragraph (d) of subsection (1) of section 99.021, Florida Statutes, is redesignated as paragraph (e), and a new paragraph (d) is added to that subsection, to read:

99.021   Form of candidate oath.—

(1)

(d)   In addition, each candidate, whether a party candidate, a candidate with no party affiliation, or a write-in candidate, shall, at the time of subscribing to the oath or affirmation, state in writing whether he or she owes any outstanding fines, fees, or penalties that cumulatively exceed $250 for any violations of s. 8, Art. II of the State Constitution, the Code of Ethics for Public Officers and Employees under part III of chapter 112, any local ethics ordinance governing standards of conduct and disclosure require-ments, or chapter 106. If the candidate owes any outstanding fines, fees, or penalties exceeding the threshold amount specified in this paragraph, he or she must also specify the amount owed and each entity that levied such fine, fee, or penalty. For purposes of this paragraph, any such fines, fees, or penalties that have been paid in full at the time of subscribing to the oath or affirmation are not deemed to be outstanding.

Section 16.   Section 99.0215, Florida Statutes, is created to read:

99.0215   Name of candidate.—

(1)   Each candidate shall designate in the oath or affirmation specified in s. 99.021 the name that he or she wishes to have printed on the ballot, or in the case of a write-in candidate, the name that he or she wishes to have voters write in on the ballot when voting for him or her. Such designation must include the candidate's legal given name or names, a shortened form of the candidate's legal given name or names, an initial or initials of the candidate's legal given name or names, or a bona fide nickname customarily related to the candidate and by which the candidate is commonly known, immediately followed by the candidate's legal surname. If applicable, a candidate may place one of the following designations after the legal surname: "Sr.," "Jr.," or a numerical designation such as "II."

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(2)  If a candidate wishes to designate a nickname, the candidate must file an affidavit that must be verified under oath or affirmation pursuant to s. 92.525(1)(a), attesting that the nickname complies with the requirements of this section. The affidavit must be filed simultaneously with the oath or affirmation specified in s. 99.021. Any nickname designated by a candidate may not be used to mislead voters. A candidate may not designate a nickname that implies the candidate is some other person, that constitutes a political slogan or otherwise associates the candidate with a cause or an issue, or that is obscene or profane. For purposes of this subsection, the term "political slogan" means any word or words expressing or connoting a position, an opinion, or a belief that the candidate may espouse, including, but not limited to, any word or words conveying any meaning other than that of the general identity of the candidate.

(3)  Unless a candidate has the same name as, or a name similar to, one or more candidates for the same office, an educational or professional title or degree may not be added to his or her name designation.

Section 17.  Subsections (4) and (5) of section 99.097, Florida Statutes, are amended to read:

99.097  Verification of signatures on petitions.—

(4)(a)  The supervisor must shall be paid in advance the sum of 10 cents for each signature checked or the actual cost of checking such signature, whichever is less, by the candidate or, in the case of a petition to have a local an issue placed on the ballot, by the person or organization submitting the petition. In the case of a petition to place a statewide issue on the ballot, the person or organization submitting the petition must pay the supervisor in advance the cost posted by the supervisor pursuant to s. 100.371(11) for the actual cost of checking signatures to place a statewide issue on the ballot.

(b)  However, if a candidate, a person, or an organization seeking to have an issue placed upon the ballot cannot pay such charges without imposing an undue burden on personal resources or upon the resources otherwise available to such candidate, person, or organization, such candidate, person, or organization shall, upon written certification of such inability given under oath to the supervisor, is be entitled to have the signatures verified at no charge.

(c)  In the event a candidate, person, or organization submitting a petition to have an issue placed upon the ballot is entitled to have the signatures verified at no charge, the supervisor of elections of each county in which the signatures are verified at no charge shall submit the total number of such signatures checked in the county to the Chief Financial Officer no later than December 1 of the general election year, and the Chief Financial Officer shall cause such supervisor of elections to be reimbursed from the General Revenue Fund in an amount equal to 10 cents or the actual cost for each name checked or the actual cost of checking such signatures, whichever is applicable as set forth in paragraph (a) less. In no event may shall such

CODING: Words stricken are deletions; words underlined are additions.
App. 0029

reimbursement of costs be deemed or applied as extra compensation for the supervisor.

(d) Petitions must ~~shall~~ be retained by the supervisors for a period of 1 year following the election for which the petitions were circulated.

(5) The results of a verification pursuant to subparagraph (1)(a)2. may be contested in the circuit court by the candidate; an announced opponent; a representative of a designated political committee; or a person, party, or other organization submitting the petition. The contestant must ~~shall~~ file a complaint, together with the fees prescribed in chapter 28, with the clerk of the circuit court in the county in which the petition is certified or in Leon County if the petition covers more than one county within 10 days after midnight of the date the petition is certified; and the complaint must ~~shall~~ set forth the grounds on which the contestant intends to establish his or her right to require a complete check of the petition pursuant to subparagraph (1)(a)1. In the event the court orders a complete check of the petition and the result is not changed as to the success or lack of success of the petitioner in obtaining the requisite number of valid signatures, then such candidate, unless the candidate has filed the oath stating that he or she is unable to pay such charges; announced opponent; representative of a designated political committee; or party, person, or organization submitting the petition, unless such person or organization has filed the oath stating inability to pay such charges, shall pay to the supervisor of elections of each affected county for the complete check an amount calculated at the rate of 10 cents for each additional signature checked or the actual cost of checking such additional signatures, as applicable ~~whichever is less~~.

Section 18.   Section 100.021, Florida Statutes, is amended to read:

100.021   Notice of general election.—The Department of State shall, in any year in which a general election is held, make out a notice stating what offices and vacancies are to be filled at the general election in the state, and in each county and district thereof. During the 30 days before ~~prior to~~ the beginning of qualifying, the department ~~of State~~ shall have the notice published two times in a newspaper of general circulation in each county; and, in counties in which there is no newspaper of general circulation, it shall send to the sheriff a notice of the offices and vacancies to be filled at such general election by the qualified voters of the sheriff's county or any district thereof, and the sheriff shall have at least five copies of the notice posted in conspicuous places in the county. Notice may be provided alternatively by publishing notice on the division's website, on the county's website as provided in s. 50.0311, or on the supervisor's website, as deemed appropriate by the supervisor.

Section 19.   Subsection (3) of section 100.141, Florida Statutes, is amended to read:

100.141   Notice of special election to fill any vacancy in office.—

CODING: Words ~~stricken~~ are deletions; words underlined are additions.
App. 0050

(3)   The department shall deliver a copy of such notice to the supervisor of elections of each county in which the special election is to be held. The supervisor shall have the notice published two times in a newspaper of general circulation in the county at least 10 days <u>before</u> ~~prior to~~ the first day set for qualifying for office <u>or, for at least 10 days before the first day set for qualifying for office, publish notice on the county's website as provided in s. 50.0311 or on the supervisor's website</u>. ~~If such a newspaper is not published within the period set forth, the supervisor shall post at least five copies of the notice in conspicuous places in the county not less than 10 days prior to the first date set for qualifying.~~

Section 20.   Section 100.342, Florida Statutes, is amended to read:

100.342   Notice of special election or referendum.—In any special election or referendum not otherwise provided for<u>,</u> there <u>must</u> ~~shall~~ be at least 30 days' notice of the election or referendum by publication in a newspaper of general circulation in the county, district, or municipality, <u>or publication on the county's website as provided in s. 50.0311, the municipality's website, or the supervisor's website, as applicable</u> ~~as the case may be~~. The publication <u>must</u> ~~shall~~ be made at least twice, once in the fifth week and once in the third week <u>before</u> ~~prior to~~ the week in which the election or referendum is to be held. If <u>the applicable website becomes unavailable or</u> there is no newspaper of general circulation in the county, district, or municipality, the notice <u>must</u> ~~shall~~ be posted in no less than five places within the territorial limits of the county, district, or municipality.

Section 21.   Subsection (3) and paragraph (a) of subsection (4) of section 101.001, Florida Statutes, are amended to read:

101.001   Precincts and polling places; boundaries.—

(3)(a)   Each supervisor of elections shall maintain a <u>geographical information system</u> ~~suitable~~ map ~~drawn to a scale no smaller than 3 miles to the inch and~~ clearly delineating all major observable features such as roads, streams, and railway lines and showing the current geographical boundaries of each precinct, representative district, and senatorial district, and other type of district in the county subject to the elections process in this code. <u>A supervisor may coordinate with other governmental entities to comply with this subsection.</u>

~~(b)   The supervisor shall provide to the department data on all precincts in the county associated with the most recent decennial census blocks within each precinct.~~

~~(c)   The department shall maintain a searchable database that contains the precincts and the corresponding most recent decennial census blocks within the precincts for each county, including a historical file that allows the census blocks to be traced through the prior decade.~~

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(b)(d)  The supervisor of elections shall notify the Secretary of State in writing within 10 days after any reorganization of precincts and shall furnish a copy of the geographical information system compatible map showing the current geographical boundaries and designation of each new precinct. However, if precincts are composed of whole census blocks, the supervisor may furnish, in lieu of a copy of the map, a list, in an electronic format prescribed by the Department of State, associating each census block in the county with its precinct.

(c)(e)  Any precinct established or altered under the provisions of this section must shall consist of areas bounded on all sides only by census block boundaries from the most recent United States Census. If the census block boundaries split or conflict with a municipal or other political subdivision another political boundary listed below, the boundary listed below may be used as a precinct boundary:

1.  Governmental unit boundaries reported in the most recent Boundary and Annexation Survey published by the United States Census Bureau; or

2.  Visible features that are readily distinguishable upon the ground, such as streets, railroads, tracks, streams, and lakes, and that are indicated upon current census maps, official Department of Transportation maps, official municipal maps, official county maps, or a combination of such maps;

3.  Boundaries of public parks, public school grounds, or churches; or

2.4.  Boundaries of counties, incorporated municipalities, or other political subdivisions that meet criteria established by the United States Census Bureau for block boundaries.

(4)(a)  Within 10 days after there is any change in the division, name, number, or boundaries of the precincts, or the location of the polling places, the supervisor of elections shall make in writing an accurate description of any new or altered precincts, setting forth the boundary lines and shall identify the location of each new or altered polling place. A copy of the document describing such changes must shall be posted at the supervisor's office.

Section 22.  Subsection (1) of section 101.048, Florida Statutes, is amended to read:

101.048  Provisional ballots.—

(1)  At all elections, a voter claiming to be properly registered in the state and eligible to vote at the precinct in the election but whose eligibility cannot be determined, a person whom an election official asserts is not eligible, including, but not limited to, a person to whom notice has been sent pursuant to s. 98.075(7), but for whom a final determination of eligibility has not been made, and other persons specified in the code shall be entitled to vote a provisional ballot. Once voted, the provisional ballot must shall be placed in a secrecy envelope and thereafter sealed in a provisional ballot

31

envelope. The provisional ballot <u>must</u> <s>shall</s> be deposited in a ballot box. All provisional ballots <u>must</u> <s>shall</s> remain sealed in their envelopes for return to the supervisor of elections. The department shall prescribe the form of the provisional ballot envelope. A person casting a provisional ballot <u>has</u> <s>shall have</s> the right to present written evidence supporting his or her eligibility to vote to the supervisor of elections by not later than 5 p.m. on the second day following the election.

Section 23.   Paragraph (b) of subsection (4) of section 101.151, Florida Statutes, is amended to read:

101.151   Specifications for ballots.—

(4)

(b)   When two or more candidates running for the same office on <u>an</u> <s>a primary</s> election ballot have the same or a similar surname, the word "incumbent" <u>must</u> <s>shall</s> appear next to the incumbent's name.

Section 24.   Subsection (2) of section 101.5612, Florida Statutes, is amended to read:

101.5612   Testing of tabulating equipment.—

(2)   On any day not more than 25 days before the commencement of early voting as provided in s. 101.657, the supervisor of elections shall have the automatic tabulating equipment publicly tested to ascertain that the equipment will correctly count the votes cast for all offices and on all measures. If the ballots to be used at the polling place on election day are not available at the time of the testing, the supervisor may conduct an additional test not more than 10 days before election day. Public notice of the time and place of the test shall be given at least 48 hours prior thereto by publication on the <u>county website as provided in s. 50.0311, on the</u> supervisor of elections' website<u>, or</u> <s>and</s> once in one or more newspapers of general circulation in the county. <u>If the applicable website becomes unavailable</u> or<s>,</s> if there is no newspaper of general circulation in the county, <s>by posting</s> the notice <u>must be posted</u> in at least four conspicuous places in the county. The supervisor or the municipal elections official may, at the time of qualifying, give written notice of the time and location of the public preelection test to each candidate qualifying with that office and obtain a signed receipt that the notice has been given. The Department of State shall give written notice to each statewide candidate at the time of qualifying, or immediately at the end of qualifying, that the voting equipment will be tested and advise each candidate to contact the county supervisor of elections as to the time and location of the public preelection test. The supervisor or the municipal elections official shall, at least 30 days before the commencement of early voting as provided in s. 101.657, send written notice by certified mail to the county party chair of each political party and to all candidates for other than statewide office whose names appear on the ballot in the county and who did not receive written notification from the supervisor or municipal elections

32

official at the time of qualifying, stating the time and location of the public preelection test of the automatic tabulating equipment. The canvassing board shall convene, and each member of the canvassing board shall certify to the accuracy of the test. For the test, the canvassing board may designate one member to represent it. The test shall be open to representatives of the political parties, the press, and the public. Each political party may designate one person with expertise in the computer field who shall be allowed in the central counting room when all tests are being conducted and when the official votes are being counted. The designee may shall not interfere with the normal operation of the canvassing board.

Section 25. Subsection (1) of section 101.6103, Florida Statutes, is amended to read:

101.6103   Mail ballot election procedure.—

(1)   Except as otherwise provided in subsection (7), the supervisor of elections shall mail all official ballots with a secrecy envelope, a return mailing envelope, and instructions sufficient to describe the voting process to each elector entitled to vote in the election within the timeframes specified in s. 101.62(3) s. 101.62(4). All such ballots must shall be mailed by first-class mail. Ballots must shall be addressed to each elector at the address appearing in the registration records and placed in an envelope which is prominently marked "Do Not Forward."

Section 26.   Section 101.62, Florida Statutes, is amended to read:

101.62   Request for vote-by-mail ballots.—

(1)   REQUEST.—

(a)   The supervisor shall accept a request for a vote-by-mail ballot only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian from an elector in person or in writing. A request may be made in person, in writing, by telephone, or through the supervisor's website. The department shall prescribe by rule by October 1, 2023, a uniform statewide application to make a written request for a vote-by-mail ballot which includes fields for all information required in this subsection. One request is deemed sufficient to receive a vote-by-mail ballot for all elections through the end of the calendar year of the next regularly scheduled general election, unless the voter elector or the voter's elector's designee indicates at the time the request is made the elections within such period for which the voter elector desires to receive a vote-by-mail ballot. The supervisor must cancel a request for a vote-by-mail ballot Such request may be considered canceled when any first-class mail or nonforwardable mail sent by the supervisor to the voter elector is returned as undeliverable. If the voter requests a vote-by-mail ballot thereafter, the voter must provide or confirm his or her current residential address.

33

(b)  The supervisor may accept a ~~written, an in-person, or a telephonic~~ request for a vote-by-mail ballot to be mailed to <u>a voter's</u> ~~an elector's~~ address on file in the Florida Voter Registration System from the <u>voter</u> ~~elector~~, or, if directly instructed by the <u>voter</u> ~~elector~~, a member of the <u>voter's</u> ~~elector's~~ immediate family~~,~~ or the <u>voter's</u> ~~elector's~~ legal guardian. If an in-person or a telephonic request is made, the <u>voter</u> ~~elector~~ must provide the <u>voter's</u> ~~elector's~~ Florida driver license number, the <u>voter's</u> ~~elector's~~ Florida identification card number, or the last four digits of the <u>voter's</u> ~~elector's~~ social security number, whichever may be verified in the supervisor's records. If the ballot is requested to be mailed to an address other than the <u>voter's</u> ~~elector's~~ address on file in the Florida Voter Registration System, the request must be made in writing. A written request must be signed by the <u>voter</u> ~~elector~~ and include the <u>voter's</u> ~~elector's~~ Florida driver license number, the <u>voter's</u> ~~elector's~~ Florida identification card number, or the last four digits of the <u>voter's</u> ~~elector's~~ social security number. However, an absent uniformed <u>services</u> ~~service~~ voter or an overseas voter seeking a vote-by-mail ballot is not required to submit a signed, written request for a vote-by-mail ballot that is being mailed to an address other than the <u>voter's</u> ~~elector's~~ address on file in the Florida Voter Registration System. ~~For purposes of this section, the term "immediate family" has the same meaning as specified in paragraph (4)(c).~~ The person making the request must disclose:

1.  The name of the <u>voter</u> ~~elector~~ for whom the ballot is requested.

2.  The <u>voter's</u> ~~elector's~~ address.

3.  The <u>voter's</u> ~~elector's~~ date of birth.

4.  The <u>voter's</u> ~~elector's~~ Florida driver license number, the <u>voter's</u> ~~elector's~~ Florida identification card number, or the last four digits of the <u>voter's</u> ~~elector's~~ social security number, whichever may be verified in the supervisor's records. <u>If the voter's registration record does not already include the voter's Florida driver license number or Florida identification card number or the last four digits of the voter's social security number, the number provided must be recorded in the voter's registration record.</u>

5.  The requester's name.

6.  The requester's address.

7.  The requester's driver license number, the requester's identification card number, or the last four digits of the requester's social security number, if available.

8.  The requester's relationship to the <u>voter</u> ~~elector~~.

9.  The requester's signature (written requests only).

(c)  Upon receiving a request for a vote-by-mail ballot from an absent voter, the supervisor of elections shall notify the voter of the free access

system that has been designated by the department for determining the status of his or her vote-by-mail ballot.

(d)   For purposes of this section, the term "immediate family" refers to the following, as applicable:

1.   The voter's spouse, parent, child, grandparent, grandchild, or sibling, or the parent, child, grandparent, grandchild, or sibling of the voter's spouse.

2.   The designee's spouse, parent, child, grandparent, grandchild, or sibling, or the parent, child, grandparent, grandchild, or sibling of the designee's spouse.

~~(2)   A request for a vote-by-mail ballot to be mailed to a voter must be received no later than 5 p.m. on the 10th day before the election by the supervisor. The supervisor shall mail vote-by-mail ballots to voters requesting ballots by such deadline no later than 8 days before the election.~~

(2)~~(3)~~   ACCESS TO VOTE-BY-MAIL REQUEST INFORMATION.—For each request for a vote-by-mail ballot received, the supervisor shall record the following information: the date the request was made; the identity of the voter's designee making the request, if any; the Florida driver license number, Florida identification card number, or last four digits of the social security number of the voter ~~elector~~ provided with a written request; the date the vote-by-mail ballot was delivered to the voter or the voter's designee or the date the vote-by-mail ballot was delivered to the post office or other carrier; the address to which the ballot was mailed or the identity of the voter's designee to whom the ballot was delivered; the date the ballot was received by the supervisor; the absence of the voter's signature on the voter's certificate, if applicable; whether the voter's certificate contains a signature that does not match the voter's ~~elector's~~ signature in the registration books or precinct register; and such other information he or she may deem necessary. This information must ~~shall~~ be provided in electronic format as provided by division rule. The information must ~~shall~~ be updated and made available no later than 8 a.m. of each day, including weekends, beginning 60 days before the primary until 15 days after the general election and shall be contemporaneously provided to the division. This information is ~~shall be~~ confidential and exempt from s. 119.07(1) and shall be made available to or reproduced only for the voter requesting the ballot, a canvassing board, an election official, a political party or official thereof, a candidate who has filed qualification papers and is opposed in an upcoming election, and registered political committees for political purposes only.

(3)~~(4)~~   DELIVERY OF VOTE-BY-MAIL BALLOTS.—

(a)   No later than 45 days before each presidential preference primary election, primary election, and general election, the supervisor of elections shall send a vote-by-mail ballot as provided in subparagraph (d)2. ~~(e)2.~~ to each absent uniformed services voter and to each overseas voter who has requested a vote-by-mail ballot.

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

(b)   The supervisor shall mail a vote-by-mail ballot to each absent qualified voter, other than those listed in paragraph (a), who has requested such a ballot, between the 40th and 33rd days before the presidential preference primary election, primary election, and general election.

(c)   Except as otherwise provided in paragraph (a) or paragraph (b) subsection (2) and after the period described in this paragraph, the supervisor shall mail vote-by-mail ballots within 2 business days after receiving a request for such a ballot, but no later than the 10th day before election day. The deadline to submit a request for a ballot to be mailed is 5 p.m. local time on the 12th day before an upcoming election.

(d)(e)   Upon a request for a vote-by-mail ballot, the supervisor shall provide a vote-by-mail ballot to each voter elector by whom a request for that ballot has been made, by one of the following means:

1.   By nonforwardable, return-if-undeliverable mail to the voter's elector's current mailing address on file with the supervisor or any other address the voter elector specifies in the request. The envelopes must be prominently marked "Do Not Forward."

2.   By forwardable mail, e-mail, or facsimile machine transmission to absent uniformed services voters and overseas voters. The absent uniformed services voter or overseas voter may designate in the vote-by-mail ballot request the preferred method of transmission. If the voter does not designate the method of transmission, the vote-by-mail ballot must shall be mailed.

3.   By personal delivery before 7 p.m. on election day to the voter after vote-by-mail ballots have been mailed and up to 7 p.m. on election day elector, upon presentation of the identification required in s. 101.043.

4.   By delivery to the voter's a designee after vote-by-mail ballots have been mailed and up to 7 p.m. on election day or up to 9 days before the day of an election. Any voter elector may designate in writing a person to pick up the ballot for the voter elector; however, the person designated may not pick up more than two vote-by-mail ballots per election, other than the designee's own ballot, except that additional ballots may be picked up for members of the designee's immediate family. For purposes of this section, "immediate family" means the designee's spouse or the parent, child, grandparent, grandchild, or sibling of the designee or of the designee's spouse. The designee shall provide to the supervisor the written authorization by the voter elector and a picture identification of the designee and must complete an affidavit. The designee shall state in the affidavit that the designee is authorized by the voter elector to pick up that ballot and shall indicate if the voter elector is a member of the designee's immediate family and, if so, the relationship. The department shall prescribe the form of the affidavit. If the supervisor is satisfied that the designee is authorized to pick up the ballot and that the signature of the voter elector on the written authorization matches the signature of the voter elector on file, the supervisor must shall give the ballot to that designee for delivery to the voter elector.

36

5.   Except as provided in s. 101.655, the supervisor may not deliver a vote-by-mail ballot to <u>a voter</u> <s>an elector</s> or <u>a voter's designee pursuant to subparagraph 3. or subparagraph 4., respectively, during the mandatory early voting period and up to 7 p.m. on election day,</u> <s>an elector's immediate family member on the day of the election</s> unless there is an emergency, to the extent that the <u>voter</u> <s>elector</s> will be unable to go to <u>a designated early voting site in his or her county or to</u> his or her assigned polling place <u>on election day</u>. If a vote-by-mail ballot is delivered, the <u>voter</u> <s>elector</s> or his or her designee <u>must</u> <s>shall</s> execute an affidavit affirming to the facts which allow for delivery of the vote-by-mail ballot. The department shall adopt a rule providing for the form of the affidavit.

(4)<s>(5)</s>   SPECIAL CIRCUMSTANCES.—If the department is unable to certify candidates for an election in time to comply with paragraph <u>(3)(a)</u> <s>(4)(a)</s>, the Department of State is authorized to prescribe rules for a ballot to be sent to absent uniformed services voters and overseas voters.

(5)<s>(6)</s>   MATERIALS.—Only the materials necessary to vote by mail may be mailed or delivered with any vote-by-mail ballot.

(6)<s>(7)</s>   PROHIBITION.—Except as expressly authorized for voters having a disability under s. 101.662, for overseas voters under s. 101.697, or for local referenda under ss. 101.6102 and 101.6103, a county, municipality, or state agency may not send a vote-by-mail ballot to a voter unless the voter has requested a vote-by-mail ballot in the manner authorized under this section.

Section 27.   Subsection (1) of section 101.67, Florida Statutes, is amended to read:

101.67   Safekeeping of mailed ballots; deadline for receiving vote-by-mail ballots.—

(1)<u>(a)</u>   The supervisor of elections shall safely keep in his or her office any envelopes received containing marked ballots of absent electors, and he or she shall, before the canvassing of the election returns, deliver the envelopes to the county canvassing board along with his or her file or list kept regarding said ballots.

<u>(b)   To the extent practicable, the supervisor of elections shall segregate any vote-by-mail ballots received from a person to whom notice has been sent pursuant to s. 98.075(7), but for whom a final determination of eligibility has not been made, and shall treat them as provisional ballots for individual review by the county canvassing board. The supervisor shall attempt to contact each voter whose ballot has been set aside under this paragraph in the same manner as if the voter had voted a provisional ballot under s. 101.048.</u>

Section 28.   Subsection (1) of section 101.68, Florida Statutes, is amended to read:

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

101.68   Canvassing of vote-by-mail ballot.—

(1)(a)   The supervisor of the county where the absent elector resides shall receive the voted ballot, at which time the supervisor shall compare the signature of the elector on the voter's certificate with the signature of the elector in the registration books or the precinct register to determine whether the elector is duly registered in the county and must record on the elector's registration record that the elector has voted. During the signature comparison process, the supervisor may not use any knowledge of the political affiliation of the <u>elector</u> <s>voter</s> whose signature is subject to verification.

<u>(b)</u>   An elector who dies after casting a vote-by-mail ballot but on or before election day shall remain listed in the registration books until the results have been certified for the election in which the ballot was cast. The supervisor shall safely keep the ballot unopened in his or her office until the county canvassing board canvasses the vote <u>pursuant to subsection (2)</u>.

<u>(c)   If two or more vote-by-mail ballots for the same election are returned in one mailing envelope, the ballots may not be counted.</u>

<u>(d)</u>   Except as provided in subsection (4), after a vote-by-mail ballot is received by the supervisor, the ballot is deemed to have been cast, and changes or additions may not be made to the voter's certificate.

Section 29.   Section 101.6923, Florida Statutes, is amended to read:

101.6923   Special vote-by-mail ballot instructions for certain first-time voters.—

(1)   <u>This section applies</u> <s>The provisions of this section apply</s> to voters who are subject to <s>the provisions of</s> s. 97.0535 and who have not provided the identification or information required by s. 97.0535 by the time the vote-by-mail ballot is mailed.

(2)   A voter covered by this section <u>must</u> <s>shall</s> be provided with printed instructions with his or her vote-by-mail ballot in substantially the following form:

READ THESE INSTRUCTIONS CAREFULLY BEFORE MARKING YOUR BALLOT. FAILURE TO FOLLOW THESE INSTRUCTIONS MAY CAUSE YOUR BALLOT NOT TO COUNT.

1.   In order to ensure that your vote-by-mail ballot will be counted, it should be completed and returned as soon as possible so that it can reach the supervisor of elections of the county in which your precinct is located no later than 7 p.m. on the date of the election. However, if you are an overseas voter casting a ballot in a presidential preference primary or general election, your vote-by-mail ballot must be postmarked or dated no later than the date of the election and received by the supervisor of elections of the county in which

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.
App. 0039

you are registered to vote no later than 10 days after the date of the election. Note that the later you return your ballot, the less time you will have to cure signature deficiencies, which is authorized until 5 p.m. local time on the 2nd day after the election.

2. Mark your ballot in secret as instructed on the ballot. You must mark your own ballot unless you are unable to do so because of blindness, disability, or inability to read or write.

3. Mark only the number of candidates or issue choices for a race as indicated on the ballot. If you are allowed to "Vote for One" candidate and you vote for more than one, your vote in that race will not be counted.

4. Place your marked ballot in the enclosed secrecy envelope and seal the envelope.

5. Insert the secrecy envelope into the enclosed envelope bearing the Voter's Certificate. Seal the envelope and completely fill out the Voter's Certificate on the back of the envelope.

a. You must sign your name on the line above (Voter's Signature).

b. If you are an overseas voter, you must include the date you signed the Voter's Certificate on the line above (Date) or your ballot may not be counted.

c. A vote-by-mail ballot will be considered illegal and will not be counted if the signature on the Voter's Certificate does not match the signature on record. The signature on file at the start of the canvass of the vote-by-mail ballots is the signature that will be used to verify your signature on the Voter's Certificate. If you need to update your signature for this election, send your signature update on a voter registration application to your supervisor of elections so that it is received before your vote-by-mail ballot is received.

6. Unless you meet one of the exemptions in Item 7., you must make a copy of one of the following forms of identification:

a. Identification which must include your name and photograph: United States passport; debit or credit card; military identification; student identification; retirement center identification; neighborhood association identification; public assistance identification; veteran health identification card issued by the United States Department of Veterans Affairs; a Florida license to carry a concealed weapon or firearm; or an employee identification card issued by any branch, department, agency, or entity of the Federal Government, the state, a county, or a municipality; or

b. Identification which shows your name and current residence address: current utility bill, bank statement, government check, paycheck, or government document (excluding voter information card).

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

7.  The identification requirements of Item 6. do not apply if you meet one of the following requirements:

a.  You are 65 years of age or older.

b.  You have a temporary or permanent physical disability.

c.  You are a member of a uniformed service on active duty who, by reason of such active duty, will be absent from the county on election day.

d.  You are a member of the Merchant Marine who, by reason of service in the Merchant Marine, will be absent from the county on election day.

e.  You are the spouse or dependent of a member referred to in paragraph c. or paragraph d. who, by reason of the active duty or service of the member, will be absent from the county on election day.

f.  You are currently residing outside the United States.

8.  Place the envelope bearing the Voter's Certificate into the mailing envelope addressed to the supervisor. Insert a copy of your identification in the mailing envelope. DO NOT PUT YOUR IDENTIFICATION INSIDE THE SECRECY ENVELOPE WITH THE BALLOT OR INSIDE THE ENVELOPE WHICH BEARS THE VOTER'S CERTIFICATE OR YOUR BALLOT WILL NOT COUNT.

9.  Mail, deliver, or have delivered the completed mailing envelope. Be sure there is sufficient postage if mailed.

10.  FELONY NOTICE. It is a felony under Florida law to accept any gift, payment, or gratuity in exchange for your vote for a candidate. It is also a felony under Florida law to vote in an election using a false identity or false address, or under any other circumstances making your ballot false or fraudulent.

Section 30.   Subsections (1) and (3) of section 101.6925, Florida Statutes, are amended to read:

101.6925   Canvassing special vote-by-mail ballots.—

(1)  The supervisor of the county where the voter absent elector resides shall receive the voted special vote-by-mail ballot, at which time the mailing envelope must shall be opened to determine if the voter has enclosed the identification required or has indicated on the Voter's Certificate that he or she is exempt from the identification requirements.

(3)  If the identification is not enclosed in the mailing envelope and the voter has not indicated that he or she is exempt from the identification requirements, the supervisor must shall check the voter registration records to determine if the voter's identification was previously received or the voter had previously notified the supervisor that he or she was exempt. The

envelope with the Voter's Certificate <u>may</u> <s>shall</s> not be opened unless the identification has been received or the voter has indicated that he or she is exempt. The ballot <u>must</u> <s>shall</s> be treated as a provisional ballot <u>and may</u> <s>until 7 p.m. on election day and shall</s> not be canvassed unless the supervisor has received the required identification or written indication of exemption by <u>5</u> <s>7</s> p.m. <u>local time on the 2nd day following the</u> <s>on</s> election <s>day</s>.

Section 31.   Subsection (1) of section 101.694, Florida Statutes, is amended to read:

101.694   Mailing of ballots upon receipt of federal postcard application.

(1)   Upon receipt of a federal postcard application for a vote-by-mail ballot executed by a person whose registration is in order or whose application is sufficient to register or update the registration of that person, the supervisor shall send the ballot in accordance with <u>s. 101.62(3)</u> <s>s. 101.62(4)</s>.

Section 32.   Subsections (2) and (5) of section 101.71, Florida Statutes, are amended to read:

101.71   Polling place.—

(2)   Notwithstanding <s>the provisions of</s> subsection (1), whenever the supervisor of elections of any county determines that the accommodations for holding any election at a polling place designated for any precinct in the county are unavailable, are inadequate for the expeditious and efficient housing and handling of voting and voting paraphernalia, or do not comply with the requirements of s. 101.715, the supervisor shall, not less than 30 days <u>before</u> <s>prior to</s> the holding of an election, provide for the voting place for such precinct to be moved to another site that is accessible to the public on election day in said precinct or, if such is not available, to another site that is accessible to the public on election day in a contiguous precinct. If such action of the supervisor results in the voting place for two or more precincts being located for the purposes of an election in one building, the supervisor of elections shall provide adequate supplies, equipment, and personnel are available to accommodate the voters for the precincts that are collocated. When any supervisor moves any polling place pursuant to this subsection, the supervisor shall, not more than 30 days or fewer than 7 days <u>before</u> <s>prior to</s> the holding of an election, give notice of the change of the polling place for the precinct involved, with clear description of the voting place to which changed, <u>by publication on the county's website as provided in s. 50.0311, on the supervisor's website, or</u> at least once in a newspaper of general circulation in the county <s>and on the supervisor of elections' website</s>. A notice of the change of the polling place involved shall be mailed<s>,</s> at least 14 days <u>before</u> <s>prior to</s> an election<s>,</s> to each registered elector or to each household in which there is a registered elector.

41

(5)  Public, tax-supported buildings must shall be made available for use as polling places, or early voting locations that meet the requirements specified in s. 101.657, upon the request of the supervisor of elections.

Section 33.  Subsection (2) of section 101.733, Florida Statutes, is amended to read:

101.733  Election emergency; purpose; elections emergency contingency plan.—Because of the existing and continuing possibility of an emergency or common disaster occurring before or during a regularly scheduled or special election, and in order to ensure maximum citizen participation in the electoral process and provide a safe and orderly procedure for persons seeking to exercise their right to vote, generally to minimize to whatever degree possible a person's exposure to danger during declared states of emergency, and to protect the integrity of the electoral process, it is hereby found and declared to be necessary to designate a procedure for the emergency suspension or delay and rescheduling of elections.

(2)  The Governor, upon consultation with the Secretary of State, shall reschedule any election suspended or delayed due to an emergency. The election shall be held within 10 days after the date of the suspended or delayed election or as soon thereafter as is practicable. Notice of the election must shall be published on the affected county's website as provided in s. 50.0311, on the affected supervisor's website, or at least once in a newspaper of general circulation in the affected area and, where practicable, broadcast as a public service announcement on radio and television stations at least 1 week before prior to the date the election is to be held.

Section 34.  Subsection (2) of section 102.111, Florida Statutes, is amended to read:

102.111  Elections Canvassing Commission.—

(2)  The Elections Canvassing Commission shall meet at 8 9 a.m. on the 9th day after a primary election and at 8 9 a.m. on the 14th day after a general election to certify the returns of the election for each federal, state, and multicounty office. If a member of a county canvassing board that was constituted pursuant to s. 102.141 determines, within 5 days after the certification by the Elections Canvassing Commission, that a typographical error occurred in the official returns of the county, the correction of which could result in a change in the outcome of an election, the county canvassing board must certify corrected returns to the Department of State within 24 hours, and the Elections Canvassing Commission must correct and recertify the election returns as soon as practicable.

Section 35.  Subsection (2) of section 102.112, Florida Statutes, is amended to read:

102.112  Deadline for submission of county returns to the Department of State.—

42

(2)   Returns must be filed <u>no later than noon</u> <s>by 5 p.m.</s> on the <u>8th</u> <s>7th</s> day following a primary election and <u>no later than</u> <s>by</s> noon on the <u>13th</u> <s>12th</s> day following the general election. However, the Department of State may correct typographical errors, including the transposition of numbers, in any returns submitted to the Department of State pursuant to s. 102.111(2).

Section 36.   Subsection (1), paragraph (b) of subsection (2), and subsection (10) of section 102.141, Florida Statutes, are amended to read:

102.141   County canvassing board; duties.—

(1)   The county canvassing board shall be composed of the supervisor of elections; a county court judge, who shall act as chair; and the chair of the board of county commissioners. The names of the canvassing board members must be published on the supervisor's website upon completion of the logic and accuracy test. <u>At least two</u> alternate canvassing board members must be appointed pursuant to paragraph (e). In the event any member of the county canvassing board is unable to serve, is a candidate who has opposition in the election being canvassed, or is an active participant in the campaign or candidacy of any candidate who has opposition in the election being canvassed, such member shall be replaced as follows:

(a)   If <u>a</u> <s>no</s> county court judge is <u>unable</u> <s>able</s> to serve or if all are disqualified, the chief judge of the judicial circuit in which the county is located <u>must</u> <s>shall</s> appoint as a substitute member a qualified elector of the county who is not a candidate with opposition in the election being canvassed and who is not an active participant in the campaign or candidacy of any candidate with opposition in the election being canvassed. In such event, the members of the county canvassing board shall meet and elect a chair.

(b)   If the supervisor of elections is unable to serve or is disqualified, the chair of the board of county commissioners <u>must</u> <s>shall</s> appoint as a substitute member a member of the board of county commissioners who is not a candidate with opposition in the election being canvassed and who is not an active participant in the campaign or candidacy of any candidate with opposition in the election being canvassed. The supervisor, however, shall act in an advisory capacity to the canvassing board.

(c)   If the chair of the board of county commissioners is unable to serve or is disqualified, the board of county commissioners <u>must</u> <s>shall</s> appoint as a substitute member one of its members who is not a candidate with opposition in the election being canvassed and who is not an active participant in the campaign or candidacy of any candidate with opposition in the election being canvassed.

(d)   If a substitute member or alternate member cannot be appointed as provided elsewhere in this subsection, or in the event of a vacancy in such office, the chief judge of the judicial circuit in which the county is located <u>must</u> <s>shall</s> appoint as a substitute member or alternate member a qualified elector of the county who is not a candidate with opposition in the election

App. 0040

being canvassed and who is not an active participant in the campaign or candidacy of any candidate with opposition in the election being canvassed.

(e)1.   The chief judge of the judicial circuit in which the county is located shall appoint a county court judge as an alternate member of the county canvassing board or, if each county court judge is unable to serve or is disqualified, shall appoint an alternate member who is qualified to serve as a substitute member under paragraph (a). Any alternate may serve in any seat.

2.   The chair of the board of county commissioners shall appoint a member of the board of county commissioners as an alternate member of the county canvassing board or, if each member of the board of county commissioners is unable to serve or is disqualified, shall appoint an alternate member who is qualified to serve as a substitute member under paragraph (d).

3.   If a member of the county canvassing board is unable to participate in a meeting of the board, the chair of the county canvassing board or his or her designee must shall designate which alternate member will serve as a member of the board in the place of the member who is unable to participate at that meeting.

4.   If not serving as one of the three members of the county canvassing board, an alternate member may be present, observe, and communicate with the three members constituting the county canvassing board, but may not vote in the board's decisions or determinations.

(2)

(b)   Public notice of the canvassing board members, alternates, time, and place at which the county canvassing board shall meet to canvass the absent electors' ballots and provisional ballots must be given at least 48 hours prior thereto by publication on the county's website as provided in s. 50.0311, on the supervisor's website, or and published in one or more newspapers of general circulation in the county. or, If the applicable website becomes unavailable or there is no newspaper of general circulation in the county, the notice must be posted by posting such notice in at least four conspicuous places in the county. The time given in the notice as to the convening of the meeting of the county canvassing board must be specific and may not be a time period during which the board may meet.

(10)(a)   The supervisor At the same time that the official results of an election are certified to the Department of State, the county canvassing board shall file a report with the Division of Elections on the conduct of the election no later than 20 business days after the Elections Canvassing Commission certifies the election. The report must, at a minimum, describe all of the following:

CODING: Words stricken are deletions; words underlined are additions.

1. All equipment or software malfunctions at the precinct level, at a counting location, or within computer and telecommunications networks supporting a county location, and the steps that were taken to address the malfunctions.;

2. All election definition errors that were discovered after the logic and accuracy test, and the steps that were taken to address the errors.;

3. All ballot printing errors, vote-by-mail ballot mailing errors, or ballot supply problems, and the steps that were taken to address the errors or problems.;

4. All staffing shortages or procedural violations by employees or precinct workers which were addressed by the supervisor of elections or the county canvassing board during the conduct of the election, and the steps that were taken to correct such issues.;

5. All instances where needs for staffing or equipment were insufficient to meet the needs of the voters.; and

6. Any additional information regarding material issues or problems associated with the conduct of the election.

(b) If a supervisor discovers new or additional information on any of the items required to be included in the report pursuant to paragraph (a) after the report is filed, the supervisor must shall notify the division that new information has been discovered no later than the next business day after the discovery, and the supervisor must shall file an amended report signed by the supervisor of elections on the conduct of the election within 10 days after the discovery.

(c) Such reports must shall be maintained on file in the Division of Elections and must shall be available for public inspection.

(d) The division shall review the conduct of election reports utilize the reports submitted by the canvassing boards to determine what problems may be likely to occur in other elections and disseminate such information, along with possible solutions and training, to the supervisors of elections.

(e) The department shall submit the analysis of these reports for the general election as part of the consolidated reports required under ss. 101.591 and 101.595 to the Governor, the President of the Senate, and the Speaker of the House of Representatives by February 15 of each year following a general election.

Section 37. Section 103.021, Florida Statutes, is amended to read:

103.021 Nomination for presidential electors.—Candidates for presidential electors shall be nominated in the following manner:

(1)(a)   The Governor shall nominate the presidential electors of each political party. The state executive committee of each political party shall by resolution recommend candidates for presidential electors and deliver a certified copy thereof to the Governor <u>no later than noon on August 24</u> <s>before September 1</s> of each presidential election year. The Governor shall nominate only the electors recommended by the state executive committee of the respective political party.

(b)   The state executive committee of each political party shall submit the Florida voter registration number and contact information of each presidential elector. Each such <u>presidential</u> elector <u>must</u> <s>shall</s> be a qualified <u>registered voter of this state and member</u> <s>elector</s> of the party he or she represents who has taken <u>a written</u> <s>an</s> oath that he or she will vote for the candidates of the party that he or she is nominated to represent.

(c)   The Governor shall certify to the Department of State <u>no later than 5 p.m.</u> on <u>August 24</u> <s>or before September 1</s>, in each presidential election year, the names of a number of electors for each political party equal to the number of senators and representatives which this state has in Congress.

(2)   The names of the presidential electors <u>may</u> <s>shall</s> not be printed on the general election ballot, but the names of the actual candidates for President and Vice President for whom the presidential electors will vote if elected <u>must</u> <s>shall</s> be printed on the ballot in the order in which the party of which the candidate is a nominee polled the highest number of votes for Governor in the last general election.

(3)   Candidates for President and Vice President with no party affiliation may have their names printed on the general election ballots if a petition is signed by 1 percent of the registered <u>voters</u> <s>electors</s> of this state, as shown by the compilation by the Department of State for the last preceding general election. A separate petition from each county for which signatures are solicited shall be submitted to the supervisor of elections of the respective county no later than <u>noon on</u> July 15 of each presidential election year. The supervisor shall check the names and, on or before the date of the primary election, shall certify the number shown as registered <u>voters</u> <s>electors</s> of the county. The supervisor shall be paid by the person requesting the certification the cost of checking the petitions as prescribed in s. 99.097. The supervisor shall then forward the certificate to the Department of State which shall determine whether or not the percentage factor required in this section has been met. When the percentage factor required in this section has been met, the Department of State shall order the names of the candidates for whom the petition was circulated to be included on the ballot and shall <u>allow</u> <s>permit</s> the required number of persons to be certified as <u>presidential</u> electors in the same manner as party candidates.

(4)(a)   A minor political party that is affiliated with a national party holding a national convention to nominate candidates for President and Vice President of the United States may have the names of its candidates for President and Vice President of the United States printed on the general

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

election ballot by filing with the Department of State a certificate naming the candidates for President and Vice President and listing the required number of persons to serve as <u>presidential</u> electors. Notification to the Department of State under this subsection <u>must</u> <s>shall</s> be made <u>no later than 5 p.m. on August 24</u> <s>by September 1</s> of the year in which the <u>general</u> election is held. When the Department of State has been so notified, it shall order the names of the candidates nominated by the minor political party to be included on the ballot and shall <u>allow</u> <s>permit</s> the required number of persons to be certified as <u>presidential</u> electors in the same manner as other party candidates. As used in this section, the term "national party" means a political party that is registered with and recognized as a qualified national committee of a political party by the Federal Election Commission.

(b)   A minor political party that is not affiliated with a national party holding a national convention to nominate candidates for President and Vice President of the United States may have the names of its candidates for President and Vice President printed on the general election ballot if a petition is signed by 1 percent of the registered <u>voters</u> <s>electors</s> of this state, as shown by the compilation by the Department of State for the preceding general election. A separate petition from each county for which signatures are solicited <u>must</u> <s>shall</s> be submitted to the supervisors of elections of the respective county no later than <u>noon on</u> July 15 of each presidential election year. The supervisor shall check the names and, on or before the date of the primary election, shall certify the number shown as registered <u>voters</u> <s>electors</s> of the county. The supervisor shall be paid by the person requesting the certification the cost of checking the petitions as prescribed in s. 99.097. The supervisor shall then forward the certificate to the Department of State, which shall determine whether or not the percentage factor required in this section has been met. When the percentage factor required in this section has been met, the Department of State shall order the names of the candidates for whom the petition was circulated to be included on the ballot and shall <u>allow</u> <s>permit</s> the required number of persons to be certified as <u>presidential</u> electors in the same manner as other party candidates.

(5)   When for any reason a person nominated or elected as a presidential elector is unable to serve because of death, incapacity, or otherwise, the Governor may appoint a person to fill such vacancy who possesses the qualifications required for the elector to have been nominated in the first instance. Such person shall file with the Governor <u>a written</u> <s>an</s> oath that he or she will support the same candidates for President and Vice President that the person who is unable to serve was committed to support.

<u>(6)   A presidential elector's refusal or failure to vote for the candidates for President and Vice President of the party the presidential elector was nominated to represent constitutes his or her resignation of the position. The vote he or she cast may not be recorded, and his or her position as a presidential elector must be filled as provided in subsection (5).</u>

Section 38.   Section 103.022, Florida Statutes, is amended to read:

47
CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

103.022   Write-in candidates for President and Vice President.—

(1)   Persons seeking to qualify for election as write-in candidates for President and Vice President of the United States may have a blank space provided on the general election ballot for their names to be written in by filing an oath with the Department of State at any time after the 57th day, but before noon of the 49th day, before prior to the date of the primary election in the year in which a presidential election is held.

(2)   The Department of State shall prescribe the form to be used in administering the oath.

(3)   The write-in candidates shall file with the department a certificate naming the required number of persons to serve as electors. The write-in candidates shall submit the Florida voter registration number and contact information for each presidential elector. Each presidential elector must be a qualified registered voter of this state. Such write-in candidates are shall not be entitled to have their names on the ballot.

Section 39.   Subsection (4) of section 103.091, Florida Statutes, is amended to read:

103.091   Political parties.—

(4)   Any political party other than a minor political party may by rule provide for the membership of its state or county executive committee to be elected for 4-year terms at the primary election in each year a presidential election is held. The terms shall commence on the first day of the month following each presidential general election; but the names of candidates for political party offices may shall not be placed on the ballot at any other election. The results of such election are shall be determined by a plurality of the votes cast. In such event, electors seeking to qualify for such office shall do so with the Department of State or supervisor of elections not earlier than noon of the 71st day, or later than noon of the 67th day, preceding the primary election. A qualifying office may accept and hold qualifying papers submitted not earlier than 14 days before the beginning of the qualifying period, to be processed and filed during the qualifying period. The outgoing chair of each county executive committee shall, within 30 days after the committee members take office, hold an organizational meeting of all newly elected members for the purpose of electing officers. The chair of each state executive committee shall, within 60 days after the committee members take office, hold an organizational meeting of all newly elected members for the purpose of electing officers.

Section 40.   Section 104.16, Florida Statutes, is amended to read:

104.16   Voting fraudulent ballot.—

(1)   Any elector who knowingly votes or attempts to vote a fraudulent ballot, or any person who knowingly solicits, or attempts, to vote a

CODING: Words stricken are deletions; words underlined are additions.

fraudulent ballot, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(2)   Subsection (1) does not apply to an elector to whom notice has been sent pursuant to s. 98.075(7) and who votes a provisional ballot or vote-by-mail ballot before a final determination of eligibility is made.

Section 41.   Section 104.18, Florida Statutes, is amended to read:

104.18   Casting more than one ballot at any election.—

(1)   Except as provided in s. 101.6952, whoever willfully votes more than one ballot at any election commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. In any prosecution under this section, the prosecution may proceed in any jurisdiction in which one of the ballots was willfully cast, and it is not necessary to prove which of the ballots was cast first.

(2)   For purposes of this section, the term "votes more than one ballot at any election" means an occurrence of any of the following:

(a)   Voting more than once in the same election within a county located within this state.

(b)   Voting more than once in the same election by voting in two or more counties located in this state.

(c)   Voting more than once in the same election by voting in this state and in one or more other states or territories of the United States.

Section 42.   Subsection (1) of section 104.42, Florida Statutes, is amended to read:

104.42   Fraudulent registration and illegal voting; investigation.—

(1)   The supervisor of elections is authorized to investigate fraudulent registrations and illegal voting and to report his or her findings to the local state attorney and the Office of Election Crimes and Security Florida Elections Commission.

Section 43.   Paragraph (c) is added to subsection (4) of section 105.031, Florida Statutes, to read:

105.031   Qualification; filing fee; candidate's oath; items required to be filed.—

(4)   CANDIDATE'S OATH.—

(c)   In addition, each candidate for judicial office shall, at the time of subscribing to the oath or affirmation, state in writing whether he or she owes any outstanding fines, fees, or penalties that cumulatively exceed $250 for any violations of s. 8, Art. II of the State Constitution, the Code of Ethics

CODING: Words stricken are deletions; words underlined are additions.
App. 0050

for Public Officers and Employees under part III of chapter 112, any local ethics ordinance governing standards of conduct and disclosure requirements, or chapter 106. If the candidate owes any outstanding fines, fees, or penalties exceeding the threshold amount specified in this paragraph, he or she must also specify the amount owed and each entity that levied such fine, fee, or penalty. For purposes of this paragraph, any such fines, fees, or penalties that have been paid in full at the time of subscribing to the oath or affirmation are not deemed to be outstanding.

Section 44.   Present paragraphs (a), (b), and (c) of subsection (7) of section 106.03, Florida Statutes, are redesignated as paragraphs (b), (c), and (d), respectively, and a new paragraph (a) is added to that subsection, to read:

106.03   Registration of political committees and electioneering communications organizations.—

(7)   The Division of Elections shall adopt rules to prescribe the manner in which committees and electioneering communications organizations may be dissolved and have their registration canceled. Such rules shall, at a minimum, provide for:

(a)   Payment of fines prior to registration cancelation or dissolution.

Section 45.   Subsection (1) and paragraph (c) of subsection (8) of section 106.07, Florida Statutes, are amended to read:

106.07   Reports; certification and filing.—

(1)   Each campaign treasurer designated by a candidate or political committee pursuant to s. 106.021 shall file regular reports of all contributions received, and all expenditures made, by or on behalf of such candidate or political committee. Except for the third calendar quarter immediately preceding a general election as provided in paragraphs (a) and (b), reports must shall be filed on the 10th day following the end of each calendar quarter month from the time the campaign treasurer is appointed, except that, if the 10th day following the end of a calendar quarter month occurs on a Saturday, Sunday, or legal holiday, the report must shall be filed on the next following day that is not a Saturday, Sunday, or legal holiday. Quarterly Monthly reports must shall include all contributions received and expenditures made during the calendar quarter month which have not otherwise been reported pursuant to this section.

(a)   A statewide candidate or a political committee required to file reports with the division must file reports:

1.   On the 60th day immediately preceding the primary election, and each week thereafter, with the last weekly report being filed on the 4th day immediately preceding the general election.

CODING: Words stricken are deletions; words underlined are additions.

2. On the 10th day immediately preceding the general election, and each day thereafter, with the last daily report being filed the 5th day immediately preceding the general election.

(b) Any other candidate or a political committee required to file reports with a filing officer other than the division must file reports on the 60th day immediately preceding the primary election, and biweekly on each Friday thereafter through and including the 4th day immediately preceding the general election, with additional reports due on the 25th and 11th days before the primary election and the general election.

(c) Following the last day of qualifying for office, any unopposed candidate need only file a report within 90 days after the date such candidate became unopposed. Such report shall contain all previously unreported contributions and expenditures as required by this section and shall reflect disposition of funds as required by s. 106.141.

(d)1. When a special election is called to fill a vacancy in office, all political committees making contributions or expenditures to influence the results of such special election or the preceding special primary election shall file campaign treasurers' reports with the filing officer on the dates set by the Department of State pursuant to s. 100.111.

2. When an election is called for an issue to appear on the ballot at a time when no candidates are scheduled to appear on the ballot, all political committees making contributions or expenditures in support of or in opposition to such issue shall file reports on the 18th and 4th days before such election.

(e) The filing officer shall provide each candidate with a schedule designating the beginning and end of reporting periods as well as the corresponding designated due dates.

(f) A county, a municipality, or any other local governmental entity is expressly preempted from enacting or adopting a reporting schedule that differs from the requirements established in this subsection.

(8)

(c) Any candidate or chair of a political committee may appeal or dispute the fine, based upon, but not limited to, unusual circumstances surrounding the failure to file on the designated due date, and may request and shall be entitled to a hearing before the Florida Elections Commission, which shall have the authority to waive the fine in whole or in part. The Florida Elections Commission must consider the mitigating and aggravating circumstances contained in s. 106.265(3) s. 106.265(2) when determining the amount of a fine, if any, to be waived. Any such request shall be made within 20 days after receipt of the notice of payment due. In such case, the candidate or chair of the political committee shall, within the 20-day period,

notify the filing officer in writing of his or her intention to bring the matter before the commission.

Section 46.   Paragraph (c) of subsection (7) of section 106.0702, Florida Statutes, is amended to read:

106.0702   Reporting; political party executive committee candidates.—

(7)

(c)   A reporting individual may appeal or dispute the fine, based upon, but not limited to, unusual circumstances surrounding the failure to file on the designated due date, and may request and is entitled to a hearing before the Florida Elections Commission, which has the authority to waive the fine in whole or in part. The Florida Elections Commission must consider the mitigating and aggravating circumstances contained in <u>s. 106.265(3)</u> <s>s. 106.265(2)</s> when determining the amount of a fine, if any, to be waived. Any such request shall be made within 20 days after receipt of the notice of payment due. In such case, the reporting individual must, within 20 days after receipt of the notice, notify the supervisor in writing of his or her intention to bring the matter before the commission.

Section 47.   Paragraph (a) of subsection (1) and paragraph (c) of subsection (7) of section 106.0703, Florida Statutes, are amended to read:

106.0703   Electioneering communications organizations; reporting requirements; certification and filing; penalties.—

(1)(a)   Each electioneering communications organization shall file regular reports of all contributions received and all expenditures made by or on behalf of the organization. Except <u>for the third calendar quarter immediately preceding a general election</u> <s>as provided in paragraphs (b) and (c)</s>, reports must be filed on the 10th day following the end of each calendar <u>quarter</u> <s>month</s> from the time the organization is registered. However, if the 10th day following the end of a calendar <u>quarter</u> <s>month</s> occurs on a Saturday, Sunday, or legal holiday, the report must be filed on the next following day that is not a Saturday, Sunday, or legal holiday. <u>Quarterly</u> <s>Monthly</s> reports must include all contributions received and expenditures made during the calendar <u>quarter</u> <s>month</s> that have not otherwise been reported pursuant to this section.

(7)

(c)   The treasurer of an electioneering communications organization may appeal or dispute the fine, based upon, but not limited to, unusual circumstances surrounding the failure to file on the designated due date, and may request and shall be entitled to a hearing before the Florida Elections Commission, which shall have the authority to waive the fine in whole or in part. The Florida Elections Commission must consider the mitigating and aggravating circumstances contained in <u>s. 106.265(3)</u> <s>s. 106.265(2)</s> when determining the amount of a fine, if any, to be waived. Any

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

such request shall be made within 20 days after receipt of the notice of payment due. In such case, the treasurer of the electioneering communications organization shall, within the 20-day period, notify the filing officer in writing of his or her intention to bring the matter before the commission.

Section 48.    Paragraph (b) of subsection (2) of section 106.08, Florida Statutes, is amended to read:

106.08    Contributions; limitations on.—

(2)

(b)    A candidate for statewide office may not accept contributions from national, state, or county executive committees of a political party, including any subordinate committee of the political party, or affiliated party committees, which contributions in the aggregate exceed $250,000. Polling services, research services, costs for campaign staff, professional consulting services, ~~and~~ telephone calls<u>, and text messages</u> are not contributions to be counted toward the contribution limits of paragraph (a) or this paragraph. Any item not expressly identified in this paragraph as nonallocable is a contribution in an amount equal to the fair market value of the item and must be counted as allocable toward the contribution limits of paragraph (a) or this paragraph. Nonallocable, in-kind contributions must be reported by the candidate under s. 106.07 and by the political party or affiliated party committee under s. 106.29.

Section 49.    Section 106.1436, Florida Statutes, is created to read:

<u>106.1436    Voter guide; disclaimers; violations.—</u>

<u>(1)    As used in this section, the term "voter guide" means direct mail that is either an electioneering communication or a political advertisement sent for the purpose of advocating for or endorsing particular issues or candidates by recommending specific electoral choices to the voter or by indicating issue or candidate selections on an unofficial ballot. The term does not apply to direct mail or publications made by governmental entities or government officials in their official capacity.</u>

<u>(2)    A person may not, directly or indirectly, represent that a voter guide is an official publication of a political party unless such person is given written permission pursuant to s. 103.081.</u>

<u>(3)    A voter guide circulated before, or on the day of, an election must, in bold font with a font size of at least 12 point, prominently:</u>

<u>(a)    Display the following disclaimer at the top of the first page of the voter guide:</u>

<u>1.    If the voter guide is an electioneering communication, the disclaimer required under s. 106.1439; or</u>

53
CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

2.   If the voter guide is a political advertisement, the disclaimer required under s. 106.143.

(b)   Be marked "Voter Guide" with such text appearing immediately below the disclaimer required in paragraph (a).

(4)(a)   In addition to any other penalties provided by law, a person who fails to comply with this section commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or by a fine of not less than $25 for each individual voter guide distributed.

(b)   Any fine imposed pursuant to paragraph (a) may not exceed $2,500 in the aggregate in any calendar month.

Section 50.   Present subsections (2) through (6) of section 106.265, Florida Statutes, are redesignated as subsections (3) through (7), respectively, subsection (1) of that section is amended, and a new subsection (2) is added to that section, to read:

106.265   Civil penalties.—

(1)(a)   The commission or, in cases referred to the Division of Administrative Hearings pursuant to s. 106.25(5), the administrative law judge is authorized upon the finding of a violation of this chapter or chapter 104 to impose civil penalties in the form of fines not to exceed $2,500 $1,000 per count. The fine may be multiplied by a factor of 3, not to exceed $7,500, for each subsequent count of the same category, beginning with the fourth offense., or,

(b)   If applicable, the commission or the administrative law judge may instead to impose a civil penalty as provided in s. 104.271 or s. 106.19.

(2)   A fine imposed against a political committee jointly and severally attaches to the chair of the political committee if the political committee does not pay the fine within 30 days.

Section 51.   Paragraph (e) of subsection (4) of section 322.142, Florida Statutes, is amended to read:

322.142   Color photographic or digital imaged licenses.—

(4)   The department may maintain a film negative or print file. The department shall maintain a record of the digital image and signature of the licensees, together with other data required by the department for identification and retrieval. Reproductions from the file or digital record are exempt from the provisions of s. 119.07(1) and may be made and issued only:

(e)   To the Department of State or a supervisor of elections pursuant to an interagency agreement to facilitate determinations of eligibility of voter

registration applicants and registered voters in accordance with ss. 98.045 and 98.075;

Section 52. Except as otherwise expressly provided in this act and except for this section, which shall take effect upon this act becoming a law, this act shall take effect July 1, 2023.

Approved by the Governor May 24, 2023.

Filed in Office Secretary of State May 24, 2023.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

App. 0050

TAB B

*Florida Administrative Register*                    *Volume 49, Number 122, June 23, 2023*

# Section I
# Notice of Development of Proposed Rules and Negotiated Rulemaking

**DEPARTMENT OF STATE**
**Division of Elections**
RULE NO.:          RULE TITLE:
1S-2.042          Third-Party Voter Registration Organizations
PURPOSE AND EFFECT: To conform to statutory changes in Ch. 2021-11, Ch. 2022-73, and Ch. 2023-120, Laws of Florida, including providing third-party voter registration organizations a mechanism to avoid fines regarding unauthorized persons collecting or handling voter registration applications.
SUBJECT AREA TO BE ADDRESSED: Third-party voter registration organizations.
RULEMAKING AUTHORITY: 20.10, 97.012(1), (2), (15), 97.0575(4), (6)
LAW IMPLEMENTED: 97.012(1), (2), (15), 97.0575
A RULE DEVELOPMENT WORKSHOP WILL BE HELD AT THE DATE, TIME AND PLACE SHOWN BELOW:
DATE AND TIME: July 10, 2023, at 11:00 a.m.
PLACE: Heritage Hall, R.A. Gray Bldg., 500 S. Bronough St., Tallahassee, FL 32399; or 1-888-585-9008, 201-297-717 (conference call room).
Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 3 hours before the workshop/meeting by contacting: Ashley E. Davis at ashley.davis@dos.myflorida.com. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).
THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE DEVELOPMENT AND A COPY OF THE PRELIMINARY DRAFT, IF AVAILABLE, IS: Ashley E. Davis at ashley.davis@dos.myflorida.com.
THE PRELIMINARY TEXT OF THE PROPOSED RULE DEVELOPMENT IS AVAILABLE AT NO CHARGE FROM THE CONTACT PERSON LISTED ABOVE.

**DEPARTMENT OF STATE**
**Division of Elections**
RULE NO.:          RULE TITLE:
1S-2.055          Vote-by-mail Requests
PURPOSE AND EFFECT: To conform to statutory changes in Ch. 2023-120, Laws of Florida, including providing a uniform statewide form for requesting a vote-by-mail ballot.
SUBJECT AREA TO BE ADDRESSED: Vote-by-mail requests.

RULEMAKING AUTHORITY: 20.10, 97.012(1), (2), (15), 101.62(1)(a)
LAW IMPLEMENTED: 97.012(1), (2), (15), 101.62(1)(a)
A RULE DEVELOPMENT WORKSHOP WILL BE HELD AT THE DATE, TIME AND PLACE SHOWN BELOW:
DATE AND TIME: July 10, 2023, at 12:00 p.m.
PLACE: Heritage Hall, R.A. Gray Bldg., 500 S. Bronough St., Tallahassee, FL 32399; or 1-888-585-9008, 201-297-717 (conference call room).
Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 3 hours before the workshop/meeting by contacting: Ashley E. Davis at ashley.davis@dos.myflorida.com If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).
THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE DEVELOPMENT AND A COPY OF THE PRELIMINARY DRAFT, IF AVAILABLE, IS: Ashley E. Davis at ashley.davis@dos.myflorida.com
THE PRELIMINARY TEXT OF THE PROPOSED RULE DEVELOPMENT IS AVAILABLE AT NO CHARGE FROM THE CONTACT PERSON LISTED ABOVE.

**PUBLIC SERVICE COMMISSION**
RULE NO.:          RULE TITLE:
25-14.004          Effect of Parent Debt on Federal Corporate Income Tax
PURPOSE AND EFFECT: To update and clarify the rule language.
Undocketed
SUBJECT AREA TO BE ADDRESSED: The assessment of tax expense in rate-making for electric, gas, water, and wastewater industries.
RULEMAKING AUTHORITY: 350.127(2), Florida Statutes
LAW IMPLEMENTED: 366.05(1), 367.121(1)(a), Florida Statutes
IF REQUESTED IN WRITING AND NOT DEEMED UNNECESSARY BY THE AGENCY HEAD, A RULE DEVELOPMENT WORKSHOP WILL BE NOTICED IN THE NEXT AVAILABLE ISSUE OF THE FLORIDA ADMINISTRATIVE REGISTER.
THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE DEVELOPMENT AND A COPY OF THE PRELIMINARY DRAFT, IF AVAILABLE, IS: Susan Sapoznikoff, Florida Public Service Commission, Office of the General Counsel, 2540 Shumard Oak Blvd., Tallahassee, FL 32399-0850, (850)413-6630, Susan.Sapoznikoff@psc.state.fl.us.

*Florida Administrative Register*                    *Volume 49, Number 122, June 23, 2023*

THE PRELIMINARY TEXT OF THE PROPOSED RULE DEVELOPMENT IS AVAILABLE AT NO CHARGE FROM THE CONTACT PERSON LISTED ABOVE.

# Section II
## Proposed Rules

**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**

**Board of Architecture and Interior Design**

RULE NO.:          RULE TITLE:
61G1-12.001      Grounds for Disciplinary Proceedings
PURPOSE AND EFFECT: The purpose of the amendment is to update the rule regarding the requirements for registered interior designers.
SUMMARY: The proposed amendment updates the rule text.
SUMMARY OF STATEMENT OF ESTIMATED REGULATORY COSTS AND LEGISLATIVE RATIFICATION:
The Agency has determined that this will not have an adverse impact on small business or likely increase directly or indirectly regulatory costs in excess of $200,000 in the aggregate within one year after the implementation of the rule. A SERC has not been prepared by the Agency.
The Agency has determined that the proposed rule is not expected to require legislative ratification based on the statement of estimated regulatory costs or if no SERC is required, the information expressly relied upon and described herein: During discussion of the economic impact of this rule at its Board meeting, the Board, based upon the expertise and experience of its members, determined that a Statement of Estimated Regulatory Costs (SERC) was not necessary and that the rule will not require ratification by the Legislature. No person or interested party submitted additional information regarding the economic impact at that time.
Any person who wishes to provide information regarding a statement of estimated regulatory costs, or provide a proposal for a lower cost regulatory alternative must do so in writing within 21 days of this notice.
RULEMAKING AUTHORITY: 481.2055 FS.
LAW IMPLEMENTED: 481.219, 481.225, 481.2251 FS.
IF REQUESTED WITHIN 21 DAYS OF THE DATE OF THIS NOTICE, A HEARING WILL BE SCHEDULED AND ANNOUNCED IN THE FAR.
THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE IS: Stacey Buccieri, Executive Director, Board of Architecture and Interior Design, 2601 Blair Stone Road, Tallahassee, FL 32399-0790, (850)717-1400 or by electronic mail – Stacey.Buccieri@myfloridalicense.com

THE FULL TEXT OF THE PROPOSED RULE IS:

**61G1-12.001 Grounds for Disciplinary Proceedings.**
(1) through (3) No change.
(4) An architect, registered interior designer, or qualified business organization may not be negligent in the practice of architecture. The term negligence is defined as the failure, by an architect or registered interior designer, to exercise due care to conform to acceptable standards of architectural or interior design practice in such a manner as to be detrimental to a client or to the public at large.
(a) through (b) No change.
(5) An architect or registered interior designer shall not be incompetent to practice architecture. Incompetence in the practice of architecture shall mean the physical or mental incapacity or inability of an architect to practice architecture.
(6) An architect, registered interior designer, or qualified business organization shall not commit misconduct in the practice of architecture. Misconduct in the practice of architecture or interior design shall include but not be limited to:
(a) through (b) No change.
(c) Knowingly becoming involved in a conflict of interest as to an employer or client without the permission of the client or employer. In the event such conflict is suspected or determined to exist an architect or registered interior designer immediately shall:
1. No change.
2. Assure in writing that such conflict will in no manner influence the architect's or registered interior designer's judgment or the quality of his services to his employer or client; and
3. Promptly inform his client or employer in writing of any business association, interest or circumstances which may be influencing his judgment or the quality of his services to his client or employer;
(d) No Change.
(e) Soliciting or accepting gratuities, directly or indirectly, from contractors, their agents, or other parties dealing with the architect's client or employer in connection with work for which the architect or registered interior designer is responsible without the knowledge of the architect's or registered interior designer's employer or client;
(f) Violation of any law of the State of Florida directly regulating the practice of architecture or registered interior designer;
(g) Use of architectural or registered interior designer expertise or status as an architect or registered interior designer in the commission of a felony;
(h) No Change.
(i) Undertaking any activity, having any undisclosed significant financial or other interests, or accepting any

contribution that either compromises professional judgment or prevents any architect or registered interior designer from serving in the best interest of his client or employer;

(j) through (k) No change.

Rulemaking Authority 481.2055 FS. Law Implemented 481.219, 481.225, 481.2251 FS. History–New 12-23-79, Amended 12-19-82, Formerly 21B-12.01, Amended 9-23-86, 11-8-88, Formerly 21B-12.001, Amended 2-25-98, 4-1-01, 12-7-08, 11-9-20,_____.

NAME OF PERSON ORIGINATING PROPOSED RULE: Board of Architecture and Interior Design
NAME OF AGENCY HEAD WHO APPROVED THE PROPOSED RULE: Board of Architecture and Interior Design
DATE PROPOSED RULE APPROVED BY AGENCY HEAD: May 12, 2023
DATE NOTICE OF PROPOSED RULE DEVELOPMENT PUBLISHED IN FAR: June 7, 2023

# Section III
# Notice of Changes, Corrections and Withdrawals

## DEPARTMENT OF FINANCIAL SERVICES
### Division of Risk Management
RULE NO.:        RULE TITLE:
69H-2.007        Loss Prevention Programs
NOTICE OF CHANGE

Notice is hereby given that the following changes have been made to the proposed rule in accordance with subparagraph 120.54(3)(d)1., F.S., published in Vol. 49 No. 63, March 31, 2023 issue of the Florida Administrative Register.

The bold language on the Form DFS-D0-1993 is amended to add "business" between "10" and "days" to now read as follows:

**The claim referenced above requires further explanation from the State Agency/University that reported the claim and to which the claim has been assigned. Please complete the information below and return it to the Division of Risk Management's Loss Prevention section within 10 business days of the date of receipt:**

# Section IV
# Emergency Rules

## DEPARTMENT OF HEALTH
### Board of Osteopathic Medicine
RULE NO.:        RULE TITLE:
64B15ER23-4        Sex-reassignment Prescriptions

SPECIFIC REASONS FOR FINDING AN IMMEDIATE DANGER TO THE PUBLIC HEALTH, SAFETY OR WELFARE: : On May 17, 2023, Florida Governor, Ronald DeSantis, signed CSSB 254 into law creating Ch. 2023-90, Laws of Florida and section 456.52, Florida Statutes. Pursuant to section 456.52(1), F.S., sex-reassignment prescriptions are prohibited for patients younger than 18 years of age upon the effective date of the act; however, pursuant to section 456.52(1)(a), F.S., the Board of Osteopathic Medicine shall within 60 days after the effective date of the act, adopt emergency rules pertaining to standards of practice by which minors may continue to be treated if such treatment was commenced before, and is still active on, the effective date of the act. Section 456.52(1)(b), F.S., also provides a minor patient meeting the criteria outlined in section 456.52(1)(a), F.S., may continue to be treated by a physician with such prescriptions according to rules adopted pursuant to paragraph (1)(a).

Further, pursuant to section 456.52(2), F.S., if sex reassignment prescriptions or procedures are prescribed for or administered to patients 18 years of age or older, consent must be voluntary, informed, and in writing on forms adopted in rule by the Board of Osteopathic Medicine. Pursuant to section 456.52(4), F.S., the consent required for sex-reassignment prescriptions does not apply to renewals of sex-reassignment prescriptions if a physician and his or her patient have met the requirements for consent for the initial prescription. Section 456.52(6)(a), F.S., states "[t]he Board of Medicine and the Board of Osteopathic Medicine shall adopt emergency rules to implement this section."

Accordingly, the Board of Osteopathic Medicine, by emergency rule, hereby allows a patient's prescribing physician to renew a prior lawfully issued sex-reassignment prescription that was initially prescribed prior to May 17, 2023, up and until six months from the effective date of the Board's emergency

rule that formally adopts the required consent forms pursuant to section 456.52(1) and (2), F.S.

*** This emergency rule does not apply to Susan Doe, Gavin Goe, or Lisa Loe, or their parents or healthcare providers (see Jane Doe et al., v. Joseph A. Ladapo, et al, Preliminary Injunction, Filed June 6, 2023, Case No. 4:23cv114-RH-MAF, United States District Court for the Northern District of Florida). ***

REASON FOR CONCLUDING THAT THE PROCEDURE IS FAIR UNDER THE CIRCUMSTANCES: The procedure used for the promulgation of this emergency rule is fair under the circumstances. CSSB 254 was signed into law on May 17, 2023. The Board of Medicine was contacted by multiple licensed physicians and physician groups seeking clarification regarding the exception contained in section 465.52(4), F.S., and a timeframe for the required emergency rules shortly thereafter. In response, the Board of Medicine and the Board of Osteopathic Medicine held a Joint Rules/Legislative Committee (Joint Committee) meeting on June 1, 2023, to discuss the emergency rule. On May 19, 2023, the Board of Osteopathic Medicine published notice of the Joint Committee meeting both on its website and in the Florida Administrative Register. On June 2, 2023, the Board of Medicine discussed the report of the Joint Committee and voted upon emergency rule language. Likewise, on June 20, 2023, the Board of Osteopathic Medicine discussed the Joint committee report and voted upon emergency rule language. The Board of Osteopathic Medicine published notice of its June 20, 2023, meeting in the Florida Administrative Register and on its website on June 6, 2023. Each meeting was held in a public forum and was able to be attended by any interested parties. Accordingly, all notice requirements contained in Rule 28-102.001, F.A.C., were properly complied with and interested parties were given ample opportunity to participate in this rulemaking process.

SUMMARY: The proposed emergency rule allows a patient's prescribing physician to renew a prior lawfully issued sex-reassignment prescription that was prescribed prior to the effective date of section 465.52, F.S., up and until six months from the effective date of the Board of Osteopathic Medicine's emergency rule formally adopting a consent form per sections 456.52(1) and (2), Florida Statutes.

THE PERSON TO BE CONTACTED REGARDING THE EMERGENCY RULE IS: Danielle Terrell, Executive Director, Board of Osteopathic Medicine/MQA, 4052 Bald Cypress Way, Bin #C06, Tallahassee, Florida 32399-3256, or by email at Danielle.Terrell@flhealth.gov.

THE FULL TEXT OF THE EMERGENCY RULE IS:

64B15ER23-4  Sex-reassignment Prescriptions.

A patient's prescribing physician may renew a prior lawfully issued sex-reassignment prescription as defined in section 456.001(9)(a), Florida Statutes, that was prescribed prior to May 17, 2023, up and until six months from the effective date of the Board's emergency rule formally adopting a consent form per sections 456.52(1) and (2), Florida Statutes. Rulemaking Authority 456.52(1)(a), (b), 456.52(6)(a) FS. Law Implemented 456.52(1), (2) FS., New 6-20-23.

THIS RULE TAKES EFFECT UPON BEING FILED WITH THE DEPARTMENT OF STATE UNLESS A LATER TIME AND DATE IS SPECIFIED IN THE RULE.
EFFECTIVE DATE: June 20, 2023

# Section V
## Petitions and Dispositions Regarding Rule Variance or Waiver

DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
Division of Hotels and Restaurants
RULE NO.:   RULE TITLE:
61C-5.001     Safety Standards
NOTICE IS HEREBY GIVEN that on June 19, 2023, the Department of Business and Professional Regulation, Division of Hotels and Restaurants, Bureau of Elevator Safety, received a petition for Reep-OFC Financial Center LLC at 3801 PGA Blvd, Palm Beach Gardens, FL. Petitioner seeks a variance of the requirements of ASME A17.1, 2016 edition, Sections 2.8.1 and 2.8.2.2, as adopted by 61C-5.001, Florida Administrative Code that requires an antenna not be placed in the elevator shaft which poses a significant hardship. Any interested person may file comments within 14 days of the publication of this notice with Division of Hotels and Restaurants, Bureau of Elevator Safety, 2601 Blair Stone Road, Tallahassee, Florida 32399-1013 (VW2023-062).

A copy of the Petition for Variance or Waiver may be obtained by contacting: Division of Hotels and Restaurants, Bureau of Elevator Safety, 2601 Blair Stone Road, Tallahassee, Florida 32399-1013. dhr.elevators@myfloridalicense.com

DEPARTMENT OF HEALTH
Board of Clinical Laboratory Personnel
RULE NO.:   RULE TITLE:
64B3-5.003   Technologist
The Board of Accountancy hereby gives notice:
that the Petition filed by Nidhi Kapoor, on April 24, 2023, seeking a variance or waiver of Rule 64B3-5.003, F.A.C., has been withdrawn. The Notice of Petition was published in Vol. 49 No. 83 of the April 28, 2023, issue of the Florida Administrative Register.

*Florida Administrative Register*                                    *Volume 49, Number 122, June 23, 2023*

A copy of the Order or additional information may be obtained by contacting:

Dayle Mooney, Executive Director, Board of Clinical Laboratory Personnel, 4052 Bald Cypress Way, Bin # C-07, Tallahassee, Florida 32399-3258, telephone: (850)488-0595, or email, Dayle.Mooney@flhealth.gov.

## DEPARTMENT OF HEALTH
Board of Clinical Laboratory Personnel
The Board of Clinical Laboratory Personnel hereby gives notice:
of the issuance of an Order Denying the Petition for Variance or Waiver, filed on February 27, 2023, by Leah Marshall. The Notice of Petition for Waiver or Variance was published in Vol. 49, No. 59, of the March 24, 2023, Florida Administrative Register. Petitioner did not state a specific rule citation for the request on waiver or variance. The Board considered the instant Petition at a duly-noticed public meeting held on April 28, 2023. The Board's Order, filed on May 17, 2023, denied the petition stating that Petitioner failed to identify a level of licensure and rule for which she seeks a waiver. Petitioner failed to establish that the Board's application of existing rules to her circumstances would violate principles of fairness or impose a substantial hardship on her.

A copy of the Order or additional information may be obtained by contacting:

Dayle Mooney, Executive Director, Board of Clinical Laboratory Personnel, 4052 Bald Cypress Way, Bin # C-07, Tallahassee, Florida 32399-3258, telephone: (850)488-0595, or email, Dayle.Mooney@flhealth.gov.

## DEPARTMENT OF HEALTH
Board of Physical Therapy Practice
NOTICE IS HEREBY GIVEN that on June 21, 2023, the Board of Physical Therapy Practice, received a petition for Variance or Waiver filed by Ashima Chohan. Petitioner is seeking a variance or waiver from Section 486.031(3)(b), Florida Statutes, which states that to be eligible for licensing as a physical therapist, and applicant must have received a diploma from a program in physical therapy in a foreign country and have educational credentials deemed equivalent to those required for the educational preparation of physical therapists in this country, as recognized by the appropriate agency as identified by the board, and have passed to the satisfaction of the board an examination to determine her or his fitness for practice as a physical therapist as hereinafter provided.
Comments on this petition should be filed with the Board of Physical Therapy Practice, 4052 Bald Cypress Way, Bin #C05, Tallahassee, Florida 32399-3253, within 14 days of publication of this notice.

A copy of the Petition for Variance or Waiver may be obtained by contacting: Allen Hall, Executive Director, Board of Physical Therapy Practice, 4052 Bald Cypress Way, Bin #C05, Tallahassee, Florida 32399-3253, or by electronic mail-Allen.Hall@flhealth.gov.

## FLORIDA HOUSING FINANCE CORPORATION
RULE NO.:   RULE TITLE:
67-48.0072   Credit Underwriting and Loan Procedures
NOTICE IS HEREBY GIVEN that on June 21, 2023, the Florida Housing Finance Corporation, received a petition for waiver from paragraph 67-48.0072(17)(h) (5/24/2017), Florida Administrative Code from WRDG T3A, LP, allowing the General Contractor to subcontract to two affiliates.
A copy of the Petition for Variance or Waiver may be obtained by contacting: Ana McGlamory, Corporation Clerk, Florida Housing Finance Corporation, 227 North Bronough Street, Suite 5000, Tallahassee, FL 32301-1329. The Petition has also been posted on Florida Housing's website at floridahousing.org. Florida Housing will accept comments concerning the Petition for 14 days from the date of publication of this notice. To be considered, comments must be received on or before 5:00 p.m., Eastern Time, on the 14th day after publication of this notice at Florida Housing Finance Corporation, 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329.

# Section VI
# Notice of Meetings, Workshops and Public Hearings

BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND
The Florida Department of Environmental Protection's Office of Resilience and Coastal Protection announces a public meeting to which all persons are invited.
DATE AND TIME: Monday, July 24, 2023, 1:00 p.m. – 4:00 p.m.
PLACE: 2796 Overseas Highway, Marathon, FL 33050 and online through TEAMS at
https://teams.microsoft.com/l/meetup-join/19%3ameeting_MjBjOGNiZTUtYjQ3NS00MmUyLWI3ZTMtNjkyNzE3NjBlNGU5%40thread.v2/0?context=%7b%22Tid%22%3a%22679d4c83-aea2-4635-b4f1-9f5012551b6a%22%2c%22Oid%22%3a%228a4d3c12-ab28-41cd-8d18-33487b7c82ba%22%7d
GENERAL SUBJECT MATTER TO BE CONSIDERED: The Advisory Committee for the Coupon Bight Aquatic Preserve Management Plan is meeting to review and discuss the draft

update to the Coupon Bight Aquatic Preserve Management Plan, previously approved in 1992. The management plan is available online at https://publicfiles.dep.state.fl.us/CAMA/Coupon-Bight-AP-Management-Plan-DRAFT.pdf. Members of the public are invited to attend and listen to comments. A separate public meeting will be held to present the management plan to the public for their comments.

A copy of the agenda may be obtained by contacting: Aquatic Preserve Manager, Dr. Nicholas Parr at Nicholas.Parr@FloridaDEP.gov.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 5 days before the workshop/meeting by contacting: Dr. Nicholas Parr at Nicholas.Parr@FloridaDEP.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

WATER MANAGEMENT DISTRICTS

Northwest Florida Water Management District

The Northwest Florida Water Management District announces a public meeting to which all persons are invited.

DATE AND TIME: July 18, 2023, 2:00 p.m., Eastern Time (ET).

PLACE: Northwest Florida Water Management District, 81 Water Management Drive, Havana, Florida 32333.

GENERAL SUBJECT MATTER TO BE CONSIDERED: In accordance with the timeframe set forth in section 120.525, Florida Statutes, the District announces the opening of bids received in response to ITB No. 23B-012 - 2023 GROUND SITE PREP HERBICIDE TREATMENT SERVICES.

A copy of the agenda may be obtained by contacting: Northwest Florida Water Management District's website (http://www.nwfwater.com); the State of Florida's Vendor Information Portal website at: MyFloridaMarket Place Vendor Information Portal; or may be obtained by calling (850)539-5999.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 72 hours before the workshop/meeting by contacting: Benjamin Faure at Office (850)722-9919 or Cell (850)510-0399, Benjamin.Faure@nwfwater.com. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: Benjamin Faure at Office (850)722-9919 or Cell (850)510-0399, Benjamin.Faure@nwfwater.com.

SPACE FLORIDA

The Space Florida announces a public meeting to which all persons are invited.

DATE AND TIME: June 30, 2023, 9:00 a.m., EDT

PLACE: Virtual Meeting via Zoom Meeting Link https://spaceflorida.zoom.us/j/6277636389?pwd=OUdidzM0ej U5aGhXZUtldU5hU2pvdz09

GENERAL SUBJECT MATTER TO BE CONSIDERED: Space Florida Transition Team Meeting

A copy of the agenda may be obtained by contacting: Terrie Ireland at tireland@spaceflorida.gov or (321)730-5301, ext. 241

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 2 days before the workshop/meeting by contacting: Terrie Ireland at tireland@spaceflorida.gov or (321)730-5301, ext. 241. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

If any person decides to appeal any decision made by the Board with respect to any matter considered at this meeting or hearing, he/she will need to ensure that a verbatim record of the proceeding is made, which record includes the testimony and evidence from which the appeal is to be issued.

For more information, you may contact: Terrie Ireland at tireland@spaceflorida.gov or (321)730-5301, ext. 241.

DEPARTMENT OF HEALTH

Board of Medicine

The Board of Medicine – Special Probable Cause Panel announces a public meeting to which all persons are invited.

DATE AND TIME: Thursday, June 29, 2023, 2:30 p.m., EST, or soon thereafter.

PLACE: You may join the meeting from your computer, tablet, or smartphone through the following link: https://global.gotomeeting.com/join/841195637. You may also join the meeting using your phone at the following number: (646)749-3122, access code: 841-195-637. To maximize your access to the meeting, the Department highly recommends that you download the GoToMeeting app on your computer, tablet, or smartphone prior to the meeting.

GENERAL SUBJECT MATTER TO BE CONSIDERED: The panel will conduct a meeting related to public disciplinary cases.

A copy of the agenda may be obtained by contacting: April Houston at (850)558-9858 or emailing her at April.Houston@flhealth.gov.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the

agency at least 7 days before the workshop/meeting by contacting: April Houston at (850)558-9858 or emailing her at April.Houston@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

If any person decides to appeal any decision made by the Board with respect to any matter considered at this meeting or hearing, he/she will need to ensure that a verbatim record of the proceeding is made, which record includes the testimony and evidence from which the appeal is to be issued.

For more information, you may contact: April Houston at (850)558-9858 or emailing her at April.Houston@flhealth.gov.

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: June 27, 2023, 1:30 p.m. - 1:40 p.m.

PLACE: Virtual Meeting

Dial in number (888)585-9008

Conference Room number- 409-164-623

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: carol.wegener-vitani@flhealth.gov

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: July 25, 2023, 1:30 p.m. - 1:40 p.m.

PLACE: Virtual meeting

Dial in number (888)585-9008

Conference Room number- 409-164-623

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and

discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: carol.wegener-vitani@flhealth.gov

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: August 29, 2023, 1:30 p.m. -1:40 p.m.

PLACE: Dial in number (888)585-9008

Conference Room number- 409-164-623

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: September 26, 2023, 1:30 p.m. - 1:40 p.m.

PLACE: Dial in number (888)585-9008

Conference Room number- 409-164-623

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

DEPARTMENT OF HEALTH
Division of Children's Medical Services
The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.
DATE AND TIME: October 31, 2023, 1:30 p.m. - 1:40 p.m.
PLACE: Dial in number (888)585-9008
Conference Room number- 409-164-623
GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: carol.wegener-vitani@flhealth.gov

DEPARTMENT OF HEALTH
Division of Children's Medical Services
The Child Abuse Death Review Circuit 13 Committee announces a public meeting to which all persons are invited.
DATE AND TIME: July 12, 2023, 1:00 p.m. - 1:15 p.m.

PLACE: Zoom Meeting:
https://us06web.zoom.us/meeting/register/tZMkcOCtpjkuH90
D-CrNiBVsL9rmiVUlPLsT
GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: Carry.Simons@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: Carry.Simons@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: Carry.Simons@flhealth.gov

DEPARTMENT OF CHILDREN AND FAMILIES
Refugee Services
The Jacksonville Area Refugee Task Force announces a public meeting to which all persons are invited.
DATE AND TIME: Wednesday, July 12, 2023; 1:30 p.m. - 3:30 p.m.
PLACE: Meeting will take place via the Microsoft Teams platform. Use the below link to connect to the meeting:
https://teams.microsoft.com/l/meetup-
join/19%3ameeting_NGU3Yjc4NjctNTRlZS00YjMzLWI1ZT
QtZTQ2N2QxZDg0ZDY5%40thread.v2/0?context=%7b%22
Tid%22%3a%22f70dba48-b283-4c57-8831-
cb411445a94c%22%2c%22Oid%22%3a%224c7ac74e-0835-
4242-a8cf-f26976fc1c32%22%7d

GENERAL SUBJECT MATTER TO BE CONSIDERED: The purpose of the Jacksonville Area Refugee Task Force meeting is to increase awareness of the refugee populations, share best practices, spot trends in refugee populations, build collaborations between agencies, help create good communication among service providers, get informed about upcoming community events, and discuss refugee program service needs and possible solutions to meeting those needs.

A copy of the agenda may be obtained by contacting: Lita Amin (904)524-1316 or David Draper at (407)317-7335.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the

*Florida Administrative Register*                    *Volume 49, Number 122, June 23, 2023*

agency at least 5 days before the workshop/meeting by contacting: Lita Amin (904)524-1316 or David Draper at (407)317-7335. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: Lita Amin (904)524-1316 or David Draper at (407)317-7335.

DEPARTMENT OF ECONOMIC OPPORTUNITY

Division of Community Development

The Division of Community Development announces the availability of the Draft Federal Fiscal Year (FFY) 2023 Annual Action Plan for public comment and also announces a hearing to which all persons are invited.

DATE AND TIME: Public Hearing - June 29, 2023, 10:00 a.m., Eastern Standard Time (EST).

Public Comment Period - June 23, 2023 through July 7, 2023.

PLACE: Public Hearing will be held via Microsoft Teams and in-person:

Join by Computer/Tablet/Smartphone at

https://teams.microsoft.com/l/meetup-join/19%3ameeting_ZDBlN2NhOTctYzMwZS00ZDQ5LWE0OTItZjM5YzljNDFhMjlj%40thread.v2/0?context=%7b%22Tid%22%3a%22931da019-f64e-4908-b0f6-92f46f78c512%22%2c%22Oid%22%3a%22b6e1445d-1082-4e7c-b08e-1559ee626f2f%22%7d

or

Dial-in at +1(850)988-5144 (Conference ID: 755 652 205#) or Attend In Person: Florida Department of Economic Opportunity, 107 E. Madison St., Caldwell Building, Room 114, Tallahassee, FL

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Florida Department of Economic Opportunity (DEO), in cooperation with other agencies, requests public comment on the FFY 2023 Annual Action Plan for Housing and Community Development (FFY 2023 Annual Action Plan) prior to submitting it to the U.S. Department of Housing and Urban Development (HUD).

The HUD-funded programs included in the FFY 2023 Annual Action Plan are the Florida Small Cities Community Development Block Grant (CDBG) program administered by DEO, the Emergency Solutions Grant (ESG) program administered by the Florida Department of Children and Families, the Housing Opportunities for Persons With AIDS (HOPWA) program administered by the Florida Department of Health, the Home Investment Partnership (HOME) program, and the Housing Trust Fund (HTF) administered by the Florida Housing Finance Corporation.

The Draft FFY Annual Action Plan is available for public review and comment prior to submitting the plan to HUD. The 15-day comment period will begin on June 23, 2023, and will end on July 7, 2023. The draft of the Action Plan will also be posted on DEO's website: www.FloridaJobs.org/AnnualActionPlan.

Written comments on the drafted Action Plan are encouraged and may be made at the public meeting, emailed to CDBG@DEO.MyFlorida.com, or mailed to: Florida Small Cities CDBG Program, 107 East Madison St., MSC-400, Tallahassee, FL 32399.

A copy of the agenda may be obtained by contacting: CDBG@DEO.MyFlorida.com.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 5 days before the workshop/meeting by contacting: CDBG@DEO.MyFlorida.com. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: Florida Small Cities CDBG, CDBG@DEO.MyFlorida.com.

# Section VII
## Notice of Petitions and Dispositions Regarding Declaratory Statements

### NONE

# Section VIII
## Notice of Petitions and Dispositions Regarding the Validity of Rules

Notice of Petition for Administrative Determination has been filed with the Division of Administrative Hearings on the following rules:

### NONE

Notice of Disposition of Petition for Administrative Determination has been filed with the Division of Administrative Hearings on the following rules:

### NONE

## Section IX
## Notice of Petitions and Dispositions Regarding Non-rule Policy Challenges

### NONE

## Section X
## Announcements and Objection Reports of the Joint Administrative Procedures Committee

### NONE

## Section XI
## Notices Regarding Bids, Proposals and Purchasing

DEPARTMENT OF EDUCATION
University of Florida
Notice of Bid
Request for Qualifications (Construction)
University of Florida Board of Trustees
UF Bid Number FY23-QFC-020
New Graduate Residence – Homestead, FL
SCOPE OF WORK:

The project consists of the construction of graduate student housing inclusive of all required sitework. This building will provide housing for graduate students involved with the Tropical Research and Education Center (TREC). It will be a single story, roughly 3,052 GSF facility with eight bedrooms and four bathrooms.

Applicants unfamiliar with work at the University of Florida (UF) are strongly urged to familiarize themselves with the UF General Terms and Conditions, construction inspection & closeout procedures and forms, and other documents and materials available on the UF Planning Design & Construction (PD&C) website at www.facilities.ufl.edu.
PROPOSAL:

The method of delivery is design-bid-build, with an enhanced pre-bid qualification process. The following criteria shall be used to qualify potential bidders:

- Past Performance on Similar Projects
- Personnel Assigned to the Project
- Financial Standing, Qualifications, and Licensure
- Safety Record
- Workload
- Completeness of Pre-Qualification Documents

RFQ inquiries are due June 30, 2023, at 6:00PM.
RFQ submittals are due July 11, 2023, at 3:00PM.
Only applicants deemed to be qualified will be permitted to bid.
Tentative Bid Schedule (subject to change):
Posting of Pre-qualified Contractors – July 19, 2023
Bid Documents available – July 19, 2023
Mandatory Pre-bid Conference (for Pre-qualified Contractors) – July 25, 2023
Pre-bid Inquiries Due – August 1, 2023
Bids Due – August 16, 2023
Additional information, including Basis of Design Package, can be obtained on University of Florida's Schedule of Bids webpage:
https://bids.sciquest.com/apps/Router/PublicEvent?Customer Org=Florida

HILLSBOROUGH COUNTY AVIATION AUTHORITY
Executive Search Services
Solicitation Advertisement Executive Search Services
HILLSBOROUGH COUNTY AVIATION AUTHORITY (AUTHORITY)
Sealed proposals for the above referenced solicitation will be received from firms by the Authority electronically at www.TampaAirport.com > Learn about TPA > Airport Business > Procurement > Solicitations and Contracts > Current, Planned and Archived Solicitations.
Solicitation documents and detailed requirements will be available on the Tampa International Airport website at www.tampaairport.com > Learn about TPA > Airport Business > Procurement > Solicitations and Contracts > Current, Planned and Archived Solicitations on or about June 22, 2023.

## Section XII
## Miscellaneous

**DEPARTMENT OF STATE**
Index of Administrative Rules Filed with the Secretary of State
Pursuant to subparagraph 120.55(1)(b)6. – 7., F.S., the below list of rules were filed in the Office of the Secretary of State between 3:00 p.m., Friday, June 16, 2023 and 3:00 p.m., Thursday, June 22, 2023.

| Rule No. | File Date | Effective Date |
|----------|-----------|----------------|
| 1A-39.001 | 6/16/2023 | 7/6/2023 |
| 64B5-12.013 | 6/20/2023 | 7/10/2023 |
| 64B15ER23-4 | 6/20/2023 | 6/20/2023 |
| 64B16-28.140 | 6/19/2023 | 7/9/2023 |
| 68A-20.005 | 6/16/2023 | 7/6/2023 |

| 68B-2.006 | 6/21/2023 | 7/11/2023 |
|---|---|---|

**LIST OF RULES AWAITING LEGISLATIVE APPROVAL SECTIONS 120.541(3), 373.139(7) AND/OR 373.1391(6), FLORIDA STATUTES**

| Rule No. | File Date | Effective Date |
|---|---|---|
| 40C-4.091 | 3/31/2023 | **/**/**** |
| 40C-41.043 | 3/31/2023 | **/**/**** |
| 60FF1-5.009 | 7/21/2016 | **/**/**** |
| 62-6.001 | 5/10/2022 | **/**/**** |
| 62-330.010 | 4/28/2023 | **/**/**** |
| 62-330.050 | 4/28/2023 | **/**/**** |
| 62-330.055 | 4/28/2023 | **/**/**** |
| 62-330.301 | 4/28/2023 | **/**/**** |
| 62-330.310 | 4/28/2023 | **/**/**** |
| 62-330.311 | 4/28/2023 | **/**/**** |
| 62-330.350 | 4/28/2023 | **/**/**** |
| 62-330.405 | 4/28/2023 | **/**/**** |
| 62-600.405 | 11/16/2021 | **/**/**** |
| 62-600.705 | 11/16/2021 | **/**/**** |
| 62-600.720 | 11/16/2021 | **/**/**** |
| 64B8-10.003 | 12/9/2015 | **/**/**** |
| 65C-9.004 | 3/31/2022 | **/**/**** |

DEPARTMENT OF TRANSPORTATION
Proposed Airport Site Approval Order for Orlando Health Lakeland Helipad
FLORIDA DEPARTMENT OF TRANSPORTATION
The Florida Department of Transportation intends to issue an "Airport Site Approval Order," in accordance with Chapter 330, Florida Statutes, "Regulation of Aircraft, Pilots, and Airports" and Chapter14-60, Florida Administrative Code, "Airport Licensing, Registration, and Airspace Protection" for the following site:
Orlando Health Lakeland Helipad, a private airport, in Polk County, at Latitude 27° 59' 40.00" and Longitude 81° 55' 04.00", to be owned and operated by Orlando Health Inc., 1900 Don Wickham Drive Attn: Kim McMurphy Clermont, FL 34711.

A copy of the Airport Site Approval Order, the Airport's application, the applicable rules, and other pertinent information may be obtained by contacting David A. Roberts, Interim State Aviation Manager, Florida Department of Transportation, Aviation Office, 605 Suwannee Street, Mail Station 46, Tallahassee, Florida 32399-0450; 850/414-4507; aviation.fdot@dot.state.fl.us. Website: http://www.fdot.gov/aviation.

ADMINISTRATIVE HEARING RIGHTS: Any person whose substantial interests will be determined or affected by this Airport Site Approval Order has the right, pursuant to Section 120.57, Florida Statutes, to petition for an administrative hearing. The petition for an administrative hearing must conform to the requirements of Rule Chapter 28-106, Florida Administrative Code, and must be filed, in writing, within twenty-one days of the publication of this notice, with the Clerk of Agency Proceedings, Office of General Counsel, Florida Department of Transportation, 605 Suwannee Street, Mail Station 58, Room 550, Tallahassee, Florida 32399-0450. Failure to file a petition within the allowed time constitutes a waiver of any right such person has to request a hearing under Chapter 120, Florida Statutes.

# Section XIII
# Index to Rules Filed During Preceding Week

NOTE: The above section will be published on Tuesday beginning October 2, 2012, unless Monday is a holiday, then it will be published on Wednesday of that week.

TAB C

**1S-2.042 Third-Party Voter Registration Organizations.**

(1) Applicability. This rule provides procedures for the regulation of 3PVROs and third-party voter registration activities.

(2) Forms. The following forms are hereby incorporated by reference and available from the Division of Elections, R.A. Gray Building, Room 316, 500 South Bronough Street, Tallahassee, Florida 32399-0250, by contact at (850)245-6200, or by download from the Division's webpage at: https://dos.myflorida.com/elections/forms-publications/forms/forms-incorporated-in-rule/: http://election.myflorida.com/forms/index.shtml:

(a) Form DS-DE 119 (eff. _ /23 09/2012), (http://www.flrules.org/Gateway/reference.asp?No=Ref-XXXXX01866), entitled "3PVRO Third-Party Voter Registration Organization Registration Form."

(b) Form DS-DE 121 (eff. _ /23 06/2011), (http://www.flrules.org/Gateway/reference.asp?No=Ref-XXXXX00430), entitled "Form for Complaint Against 3PVRO." Third-Party Voter Registration Organization."

(c) Form DS-DE 124 (eff. _ /23 06/2011) (http://www.flrules.org/Gateway/reference.asp?No=Ref-XXXXX00608), entitled "Supervisors Supervisor of Elections' Accounting of 3PVRO Third Party Voter Registration Organization's Voter Registration Applications."

(d) Form DS-DE 148 (eff. ___/23) (http://www.flrules.org/Gateway/reference.asp?No=Ref-XXXXX), entitled "Supervisors of Elections' Transmittal Form – 3PVRO Noncompliance."

(e) Form DS-DE 149 (eff. ___/23) (http://www.flrules.org/Gateway/reference.asp?No=Ref-XXXXX), entitled "Felon and Non-U.S. Citizen Affidavit."

(f) Form DS-DE 150 (eff. ___/23) (http://www.flrules.org/Gateway/reference.asp?No=Ref-XXXXX), entitled "3PVRO Voter Registration Application Receipt."

(3) (2) Definitions. For purposes of Section 97.0575, F.S., the following definitions apply:

(a) "3PVRO" means third-party voter registration organization.

(b) (a) "Affiliate organization" of a 3PVRO third party voter registration organization means any person, as defined in Section 1.01(3), F.S., that is associated with the 3PVRO third-party voter registration organization as a subordinate, subsidiary, member, branch, chapter, as a central or parent organization, or through direct or indirect ownership or control. Ownership or control means substantial and effective, though not necessarily predominant, ownership or control.

(c) "Collecting or handling," for purposes of section 97.0575(1)(e)-(f), F.S., means physically exercising custody over voter registration applications containing a voter's personal information. It does not include handing out blank voter registration applications, supervising the collecting or handling of voter registration applications, or facilitating the voter to register electronically through registertovoteflorida.gov.

(d) (b) "Engaging in any voter registration activities" means that the organization is collecting voter registration applications from Florida voter registration applicants.

(e) "File" means email to 3PVRO@dos.myflorida.com with the form attached in .pdf format.

(f) (c) "Force majeure" means any event or occurrence of societal significance beyond the reasonable control and without the fault of the 3PVRO third-party voter registration organization which could not have been prevented, avoided, or overcome by the exercise of reasonable care, diligence, or foresight of the 3PVRO third-party voter registration organization, including, but not limited to, civil disturbances or acts of war; extraordinarily severe weather, such as hurricanes, floods, or tornadoes; or shortages of food, electric power, or fuel.

(g) (d) "Impossibility of performance" means an actual impossibility or impracticability of compliance as the result of a condition or circumstance which the 3PVRO third-party voter registration organization did not create and could not reasonably have anticipated.

(h) (e) "Registration agent" means any individual who is employed by or volunteers for a 3PVRO third-party voter registration organization and who collects voter registration applications from Florida voter registration applicants on behalf of the 3PVRO. organization.

(i) "Voter's personal information," for purposes of section 97.0575(7), F.S., means a voter's private information that is not generally available to the public such as the voter's Florida driver license number, Florida identification card number, social security number, or signature. It does not include information contained in a voter registration application receipt.

(4) (3) Registration and Termination.

(a) Before engaging in any voter registration activities, a 3PVRO third-party voter registration organization (hereinafter "organization") shall complete and file Form DS-DE 119 with the Division. The organization must submit the form as an attachment in pdf format in an email to 3PVRO@dos.myflorida.com or transmit the form to the Division's facsimile machine at (850)245-6291.

An affiliate organization which itself independently engages in separate collection of voter registration applications from Florida voter registration applicants on behalf of the affiliate must file a Form DS-DE 119 even if its affiliated organization has filed a Form DS-DE 119. ~~An organization shall also use Form DS-DE 119 to update or terminate its registration.~~

(b) Upon receipt of a 3PVRO's complete and filed Form DS-DE 119, ~~an organization's initial and completed registration,~~ the Division shall assign the 3PVRO ~~organization~~ a unique ~~third party voter registration organization~~ identification number that begins with "3P." A 3PVRO ~~An organization~~ is not deemed registered ~~as a third party voter registration organization~~ until the Division issues the 3PVRO ~~organization~~ its identification number.

(c) A registration agent may be a registration agent for one or more 3PVROs ~~organizations~~.

(d) If any information in the Form DS-DE 119 filed with the Division changes, ~~An organization shall submit any change in information previously submitted to the Division,~~ including any addition to the list of its employee registration agents, any termination of an employee registration agent, ~~or~~ change in information about an employee registration agent, or the termination of the 3PVRO, the 3PVRO shall file within 10 days a Form DS-DE 119 reflecting the updated information. ~~within 10 days following the change. A change is not considered filed until the Division receives the change. Notice of termination of an employee registration agent shall be provided as set forth in paragraph (6)(b).~~

~~(e) Except as otherwise provided in paragraph (6)(b), any forms or amendments or additions to forms required under this subsection must be submitted in the same manner of transmission required for the Form DS-DE 119 used to initially register an organization.~~

(5) ~~(4)~~ Voter Registration Applications Provided to and Used by 3PVROs. ~~Third-Party Voter Registration Organizations.~~

(a) All blank voter registration applications provided by the Division and each Supervisor of Elections ~~supervisor of elections~~ to a 3PVRO ~~an organization~~ shall include the 3PVRO's ~~third party voter registration organization~~ identification number on the bottom portion of the front side ~~of the reverse side~~ of each voter registration application in a manner that does not obscure any other entry.

(b) Unless the applicant has already dated the application form, the ~~The~~ registration agent or the 3PVRO ~~organization~~ shall record ~~print~~ the date that the 3PVRO collected ~~applicant delivered~~ the application ~~to the registration agent~~ in a conspicuous space on the bottom portion of the front ~~reverse~~ side of the voter registration application in a manner that does not obscure any other entry. The applicant's date space should not be used. The date printed by the registration agent or the 3PVRO ~~organization~~ shall be in the following numerical format: MM/DD/YY. For example, if the voter registration applicant completed the application on May 15, 2024 ~~2014~~, the entry on the bottom portion of the front ~~reverse~~ side of the application shall be: 05/15/23 ~~5/15/14~~.

(c) Each 3PVRO ~~organization~~ shall ensure that its assigned 3PVRO ~~organization~~ identification number is recorded on the bottom portion of the front ~~reverse~~ side of any voter registration application it delivers to the ~~Division or~~ the Supervisor of Elections in the applicant's county of residence or the Division ~~a supervisor of elections~~ in a manner that does not obscure any other entry.

(d) 1. All collected ~~Delivery of the~~ voter registration applications, whether complete or incomplete, ~~application~~ must be delivered to the Supervisor of Elections in the applicant's county of residence or the Division ~~by mail or in person. by the organization to the Division or a supervisor of elections may be accomplished by in person delivery or mail. All applications must be delivered to the Division or a supervisor of elections or be postmarked~~ Delivery or postmark must be within 10 calendar days of collection by the 3PVRO ~~an organization~~ or any of its registration agents. If the 10th day falls on a weekend, holiday, or other day on which the Division or the Supervisor of Elections ~~supervisor of elections~~ office is closed, the voter registration application must be delivered ~~to the Division or the supervisor of elections~~ or be postmarked by the following business day. If, however, a book closing deadline for any given election for federal or state office falls within the 10-day period described above, all applications collected by a 3PVRO ~~an organization~~ or any of its registration agents before book closing must be actually delivered ~~to the Division or a supervisor of elections~~ on or before the book closing deadline.

2. The 3PVRO shall provide a cover letter indicating any applications that they believe were fraudulently completed or collected.

(e) A person collecting voter registration applications on behalf of a 3PVRO may make, and a 3PVRO may retain, a copy of a receipt provided to an applicant under section 97.0575(4), F.S.

(f) Section 97.0575(7), F. S., does not prohibit a person collecting voter registration applications on behalf of a 3PVRO from making, or a 3PVRO from retaining, a copy of a receipt provided to an applicant under section 97.0575(4), F.S.

(g) Each voter registration application contains a voter's personal information that is not generally available to the public. For purposes of section 97.0575(7), F.S., a person collecting a voter registration application on behalf of a 3PVRO for the reason of providing such application (including the voter's personal information contained therein) to the 3PVRO shall be deemed to be "in compliance with this section" with respect to providing such application to the 3PVRO if the person:

1. Provides such application to the 3PVRO and

2. Does not retain such application after providing it to the 3PVRO.

(h) A 3PVRO serves as a fiduciary to an applicant whose voter registration application it collects. A 3PVRO may not retain an applicant's voter registration application (or the voter's personal information contained therein) after promptly delivering it to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides, nor may a 3PVRO use such application (or the voter's personal information contained therein) for any purpose other than promptly delivering such application to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides.

(5) Referral to Attorney General for Enforcement; and Waiver of Fines. upon Showing of Force Majeure or Impossibility of Performance.

(a) In exercising the authority to refer violations of the third-party voter registration law to the Attorney General for enforcement, the Secretary of State's principal concern is the protection of applicants who have entrusted their voter registration applications to a 3PVRO. third-party voter registration organization. By law, the 3PVRO organization serves as a fiduciary to those applicants, who have a right to expect that their applications will be timely delivered to an elections official irrespective of party affiliation, race, ethnicity, or gender.

(b) Any 3PVRO organization claiming that its failure to deliver a voter registration application within the required timeframe was based upon force majeure or impossibility of performance may provide a statement to the Division explaining the circumstances constituting force majeure or impossibility of performance.

(c) If the information provided to the Division by the 3PVRO organization demonstrates that the failure to timely deliver a voter registration application was the result of force majeure or impossibility of performance, the Secretary of State will not refer the violation to the Attorney General for enforcement.

(d) The Secretary of State will not refer a violation to the Attorney General unless there is evidence that the applicant entrusted the voter registration application to the 3PVRO.

(e) A 3PVRO shall, pursuant to section 97.0575(1)(e)-(f), F.S., require each person collecting or handling voter registration applications on behalf of the 3PVRO to sign a written declaration using Form DS-DE 149 attesting that he or she has not been convicted of a felony enumerated in section 97.0575(1)(e), F.S., and attesting that he or she is a U.S. citizen. A 3PVRO shall not be subject to a fine pursuant to section 97.0575(1)(e)-(f), F.S., as applicable, for permitting a felon or non-U.S. citizen to handle or collect voter registration applications on behalf of the 3PVRO if, prior to collecting or handling voter registration applications on behalf of the 3PVRO, the person has signed a written declaration using Form DS-DE 149 attesting that he or she has not been convicted of a felony enumerated in section 97.0575(1)(e), F.S., and attesting that he or she is a U.S. citizen.

(6) Termination of Organization and Employee Registration Agent.

(a) If an organization terminates its status as a third-party voter registration organization, the organization shall submit within 10 days a Form DS-DE 119 reflecting its termination.

(b) If an employee registration agent's employment with an organization is terminated, the organization shall file notice of the terminated status of the employee registration agent by submitting an updated a Form DS-DE 119 or by sending a notification of the termination by email to 3PVRO@dos.myflorida.com or by transmitting the notification to the Division's facsimile machine at (850)245-6291 within 10 days of the termination. If Form DS-DE 119 is not used as the means of notification, the notification shall contain the organization's assigned identification number and the name of the employee registration agent being terminated.

(c) Forms DS-DE 119 required under this subsection must be submitted as an attachment in an pdf format in an email to 3PVRO@dos.myflorida.com or transmitted to the Division's facsimile machine at (850)245-6291.

(7) Processing of Voter Registration Applications from a 3PVRO an Organization by the Division and Supervisors of Elections and Accounting of Application Forms.

(a) For each non-blank registration application that a 3PVRO an organization delivers to the Division or supervisor of elections, A a voter registration official shall record the date of delivery on the bottom portion of the reverse side of the application in a manner that does not obscure any other entries. For purposes of this rule and not for voter registration purposes, An an application is considered delivered to the Division or a supervisor of elections at the time on the date the application is actually received delivered by the Supervisor of Elections in the applicant's county of residence or the Division, if delivered in person, organization by in-person delivery or, if mailed, the date of delivery shall be the date of a clear the postmark, if one is present on the mailing envelope. If a postmark is not present or unclear, the date of delivery to the Division or a supervisor of elections is the actual date of receipt by the Supervisor of Elections in the applicant's county of residence or the Division. For a determination of a fine based upon the application being received by mail after the book closing date, a clear postmark on or before the date of book closing will excuse the fine. If a 3PVRO an organization delivers more than one application at the same time, those applications shall bear the same date of delivery regardless of when the applications are processed.

(b) A 3PVRO's An organization's untimely delivery of a voter registration application does not affect the validity of the application. Every application must be processed regardless of the timeliness of its delivery.

(c) The Division and Supervisors of Elections supervisors of elections shall record the number of state or federal voter

registration applications they provide to, and receive from, each 3PVRO. ~~organization.~~ Each Supervisor of Elections ~~supervisor of elections~~ shall complete and file ~~report to the Division on~~ Form DS-DE 124 by noon of the following business day to report the number of voter registration applications provided to and received from each 3PVRO ~~organization~~ the previous business day. A Supervisor ~~Supervisors~~ of Elections is ~~are~~ not required to file ~~submit~~ Form DS-DE 124 when they did not provide any voter registration applications to, or receive any from, a 3PVRO ~~an organization~~ on the preceding business day.

~~(d) Form DS-DE 124 required under this subsection must be submitted as an attachment in pdf format in an email to 3PVRO@dos.myflorida.com or transmitted to the Division's facsimile machine at (850)245-6291.~~

(8) Complaints.

(a) Any person claiming to have provided a completed voter registration application to a 3PVRO ~~third-party voter registration organization~~ but whose name does not appear as an active voter on the voter registration rolls ~~shall~~ may complete and file ~~use~~ Form DS-DE 121 ~~to file the complaint with the Division.~~

(b) Any ~~Except as noted below, any other~~ person, organization, or entity (including a Supervisor of Elections) may report allegations of irregularities or fraud involving ~~an organization's~~ voter registration activities by filing an elections fraud complaint with the Division. See Rule 1S-2.025, F.A.C.

(c) Supervisors of Elections ~~elections or their staff~~ shall complete and file Form DS-DE 148 to ~~report any untimely filed voter registration application submitted by~~ a 3PVRO.  A Supervisor of Elections may alternatively deliver a completed Form DS-DE 148 ~~an organization by sending the Division an explanatory statement in an email and attaching documents which reflect the untimely submission in pdf format to 3PVRO@dos.myflorida.com, by transmitting the explanatory statement and documentation to the Division's facsimile machine at (850)245-6291, or by having them delivered~~ by express mail or expedited courier service. For any application containing a 3PVRO's ~~an organization's~~ identification number – but no other information indicating it was collected by a 3PVRO, ~~third-party voter registration organization,~~ such as a cover letter or a "date delivered" mark, ~~as required by paragraph (4)(b),~~ and that was received untimely or ~~after the book closing date~~ or more than 10 days after the date on which the applicant signed it – the explanatory statement should include a description of the Supervisor's ~~supervisor's~~ efforts to contact the applicant to confirm that the application was delivered to the 3PVRO. ~~organization.~~

~~(d) The Secretary of State will not refer a violation to the Attorney General unless there is evidence that the applicant entrusted the voter registration application to the third party voter registration organization.~~

*Rulemaking Authority 20.10(3), 97.012(1), (2), (15), 97.0575(1), (2), (5) FS. Law Implemented 97.012(1), (2), (15), 97.021(37), 97.053, 97.0575 FS. History–New 2-26-09, Amended 5-31-10, 11-2-11, 12-5-12,  -  -23.*

TAB D

*Florida Administrative Register*

*Volume 49, Number 122, June 23, 2023*

# Section I
# Notice of Development of Proposed Rules and Negotiated Rulemaking

## DEPARTMENT OF STATE
### Division of Elections

RULE NO.:        RULE TITLE:
1S-2.042        Third-Party Voter Registration Organizations

PURPOSE AND EFFECT: To conform to statutory changes in Ch. 2021-11, Ch. 2022-73, and Ch. 2023-120, Laws of Florida, including providing third-party voter registration organizations a mechanism to avoid fines regarding unauthorized persons collecting or handling voter registration applications.

SUBJECT AREA TO BE ADDRESSED: Third-party voter registration organizations.

RULEMAKING AUTHORITY: 20.10, 97.012(1), (2), (15), 97.0575(4), (6)

LAW IMPLEMENTED: 97.012(1), (2), (15), 97.0575

A RULE DEVELOPMENT WORKSHOP WILL BE HELD AT THE DATE, TIME AND PLACE SHOWN BELOW:

DATE AND TIME: July 10, 2023, at 11:00 a.m.

PLACE: Heritage Hall, R.A. Gray Bldg., 500 S. Bronough St., Tallahassee, FL 32399; or 1-888-585-9008, 201-297-717 (conference call room).

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 3 hours before the workshop/meeting by contacting: Ashley E. Davis at ashley.davis@dos.myflorida.com. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE DEVELOPMENT AND A COPY OF THE PRELIMINARY DRAFT, IF AVAILABLE, IS: Ashley E. Davis at ashley.davis@dos.myflorida.com.

THE PRELIMINARY TEXT OF THE PROPOSED RULE DEVELOPMENT IS AVAILABLE AT NO CHARGE FROM THE CONTACT PERSON LISTED ABOVE.

## DEPARTMENT OF STATE
### Division of Elections

RULE NO.:        RULE TITLE:
1S-2.055        Vote-by-mail Requests

PURPOSE AND EFFECT: To conform to statutory changes in Ch. 2023-120, Laws of Florida, including providing a uniform statewide form for requesting a vote-by-mail ballot.

SUBJECT AREA TO BE ADDRESSED: Vote-by-mail requests.

RULEMAKING AUTHORITY: 20.10, 97.012(1), (2), (15), 101.62(1)(a)

LAW IMPLEMENTED: 97.012(1), (2), (15), 101.62(1)(a)

A RULE DEVELOPMENT WORKSHOP WILL BE HELD AT THE DATE, TIME AND PLACE SHOWN BELOW:

DATE AND TIME: July 10, 2023, at 12:00 p.m.

PLACE: Heritage Hall, R.A. Gray Bldg., 500 S. Bronough St., Tallahassee, FL 32399; or 1-888-585-9008, 201-297-717 (conference call room).

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 3 hours before the workshop/meeting by contacting: Ashley E. Davis at ashley.davis@dos.myflorida.com If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE DEVELOPMENT AND A COPY OF THE PRELIMINARY DRAFT, IF AVAILABLE, IS: Ashley E. Davis at ashley.davis@dos.myflorida.com

THE PRELIMINARY TEXT OF THE PROPOSED RULE DEVELOPMENT IS AVAILABLE AT NO CHARGE FROM THE CONTACT PERSON LISTED ABOVE.

## PUBLIC SERVICE COMMISSION

RULE NO.:        RULE TITLE:
25-14.004        Effect of Parent Debt on Federal Corporate Income Tax

PURPOSE AND EFFECT: To update and clarify the rule language.

Undocketed

SUBJECT AREA TO BE ADDRESSED: The assessment of tax expense in rate-making for electric, gas, water, and wastewater industries.

RULEMAKING AUTHORITY: 350.127(2), Florida Statutes

LAW IMPLEMENTED: 366.05(1), 367.121(1)(a), Florida Statutes

IF REQUESTED IN WRITING AND NOT DEEMED UNNECESSARY BY THE AGENCY HEAD, A RULE DEVELOPMENT WORKSHOP WILL BE NOTICED IN THE NEXT AVAILABLE ISSUE OF THE FLORIDA ADMINISTRATIVE REGISTER.

THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE DEVELOPMENT AND A COPY OF THE PRELIMINARY DRAFT, IF AVAILABLE, IS: Susan Sapoznikoff, Florida Public Service Commission, Office of the General Counsel, 2540 Shumard Oak Blvd., Tallahassee, FL 32399-0850,                                  (850)413-6630, Susan.Sapoznikoff@psc.state.fl.us.

*Florida Administrative Register*                    *Volume 49, Number 122, June 23, 2023*

THE PRELIMINARY TEXT OF THE PROPOSED RULE DEVELOPMENT IS AVAILABLE AT NO CHARGE FROM THE CONTACT PERSON LISTED ABOVE.

# Section II
# Proposed Rules

**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**

**Board of Architecture and Interior Design**

RULE NO.:        RULE TITLE:

61G1-12.001        Grounds for Disciplinary Proceedings

PURPOSE AND EFFECT: The purpose of the amendment is to update the rule regarding the requirements for registered interior designers.

SUMMARY: The proposed amendment updates the rule text.

SUMMARY OF STATEMENT OF ESTIMATED REGULATORY COSTS AND LEGISLATIVE RATIFICATION:

The Agency has determined that this will not have an adverse impact on small business or likely increase directly or indirectly regulatory costs in excess of $200,000 in the aggregate within one year after the implementation of the rule. A SERC has not been prepared by the Agency.

The Agency has determined that the proposed rule is not expected to require legislative ratification based on the statement of estimated regulatory costs or if no SERC is required, the information expressly relied upon and described herein: During discussion of the economic impact of this rule at its Board meeting, the Board, based upon the expertise and experience of its members, determined that a Statement of Estimated Regulatory Costs (SERC) was not necessary and that the rule will not require ratification by the Legislature. No person or interested party submitted additional information regarding the economic impact at that time.

Any person who wishes to provide information regarding a statement of estimated regulatory costs, or provide a proposal for a lower cost regulatory alternative must do so in writing within 21 days of this notice.

RULEMAKING AUTHORITY: 481.2055 FS.

LAW IMPLEMENTED: 481.219, 481.225, 481.2251 FS.

IF REQUESTED WITHIN 21 DAYS OF THE DATE OF THIS NOTICE, A HEARING WILL BE SCHEDULED AND ANNOUNCED IN THE FAR.

THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE IS: Stacey Buccieri, Executive Director, Board of Architecture and Interior Design, 2601 Blair Stone Road, Tallahassee, FL 32399-0790, (850)717-1400 or by electronic mail – Stacey.Buccieri@myfloridalicense.com

THE FULL TEXT OF THE PROPOSED RULE IS:

**61G1-12.001 Grounds for Disciplinary Proceedings.**

(1) through (3) No change.

(4) An architect, registered interior designer, or qualified business organization may not be negligent in the practice of architecture. The term negligence is defined as the failure, by an architect or registered interior designer, to exercise due care to conform to acceptable standards of architectural or interior design practice in such a manner as to be detrimental to a client or to the public at large.

(a) through (b) No change.

(5) An architect or registered interior designer shall not be incompetent to practice architecture. Incompetence in the practice of architecture shall mean the physical or mental incapacity or inability of an architect to practice architecture.

(6) An architect, registered interior designer, or qualified business organization shall not commit misconduct in the practice of architecture. Misconduct in the practice of architecture or interior design shall include but not be limited to:

(a) through (b) No change.

(c) Knowingly becoming involved in a conflict of interest as to an employer or client without the permission of the client or employer. In the event such conflict is suspected or determined to exist an architect or registered interior designer immediately shall:

1. No change.

2. Assure in writing that such conflict will in no manner influence the architect's or registered interior designer's judgment or the quality of his services to his employer or client; and

3. Promptly inform his client or employer in writing of any business association, interest or circumstances which may be influencing his judgment or the quality of his services to his client or employer;

(d) No Change.

(e) Soliciting or accepting gratuities, directly or indirectly, from contractors, their agents, or other parties dealing with the architect's client or employer in connection with work for which the architect or registered interior designer is responsible without the knowledge of the architect's or registered interior designer's employer or client;

(f) Violation of any law of the State of Florida directly regulating the practice of architecture or registered interior designer;

(g) Use of architectural or registered interior designer expertise or status as an architect or registered interior designer in the commission of a felony;

(h) No Change.

(i) Undertaking any activity, having any undisclosed significant financial or other interests, or accepting any

contribution that either compromises professional judgment or prevents any architect <u>or registered interior designer</u> from serving in the best interest of his client or employer;

(j) through (k) No change.

Rulemaking Authority 481.2055 FS. Law Implemented 481.219, 481.225, 481.2251 FS. History–New 12-23-79, Amended 12-19-82, Formerly 21B-12.01, Amended 9-23-86, 11-8-88, Formerly 21B-12.001, Amended 2-25-98, 4-1-01, 12-7-08, 11-9-20,_____.


NAME OF PERSON ORIGINATING PROPOSED RULE: Board of Architecture and Interior Design
NAME OF AGENCY HEAD WHO APPROVED THE PROPOSED RULE: Board of Architecture and Interior Design
DATE PROPOSED RULE APPROVED BY AGENCY HEAD: May 12, 2023
DATE NOTICE OF PROPOSED RULE DEVELOPMENT PUBLISHED IN FAR: June 7, 2023

# Section III
# Notice of Changes, Corrections and Withdrawals

**DEPARTMENT OF FINANCIAL SERVICES**
**Division of Risk Management**
RULE NO.:            RULE TITLE:
69H-2.007            Loss Prevention Programs
                  NOTICE OF CHANGE
Notice is hereby given that the following changes have been made to the proposed rule in accordance with subparagraph 120.54(3)(d)1., F.S., published in Vol. 49 No. 63, March 31, 2023 issue of the Florida Administrative Register.

The bold language on the Form DFS-D0-1993 is amended to add "business" between "10" and "days" to now read as follows:
**The claim referenced above requires further explanation from the State Agency/University that reported the claim and to which the claim has been assigned.  Please complete the information below and return it to the Division of Risk Management's Loss Prevention section within 10 business days of the date of receipt:**

# Section IV
# Emergency Rules

**DEPARTMENT OF HEALTH**
**Board of Osteopathic Medicine**
RULE NO.:            RULE TITLE:
64B15ER23-4       Sex-reassignment Prescriptions
SPECIFIC REASONS FOR FINDING AN IMMEDIATE DANGER TO THE PUBLIC HEALTH, SAFETY OR WELFARE: : On May 17, 2023, Florida Governor, Ronald DeSantis, signed CSSB 254 into law creating Ch. 2023-90, Laws of Florida and section 456.52, Florida Statutes. Pursuant to section 456.52(1), F.S., sex-reassignment prescriptions are prohibited for patients younger than 18 years of age upon the effective date of the act; however, pursuant to section 456.52(1)(a), F.S., the Board of Osteopathic Medicine shall within 60 days after the effective date of the act, adopt emergency rules pertaining to standards of practice by which minors may continue to be treated if such treatment was commenced before, and is still active on, the effective date of the act. Section 456.52(1)(b), F.S., also provides a minor patient meeting the criteria outlined in section 456.52(1)(a), F.S., may continue to be treated by a physician with such prescriptions according to rules adopted pursuant to paragraph (1)(a).

Further, pursuant to section 456.52(2), F.S., if sex reassignment prescriptions or procedures are prescribed for or administered to patients 18 years of age or older, consent must be voluntary, informed, and in writing on forms adopted in rule by the Board of Osteopathic Medicine. Pursuant to section 456.52(4), F.S., the consent required for sex-reassignment prescriptions does not apply to renewals of sex-reassignment prescriptions if a physician and his or her patient have met the requirements for consent for the initial prescription. Section 456.52(6)(a), F.S., states "[t]he Board of Medicine and the Board of Osteopathic Medicine shall adopt emergency rules to implement this section."

Accordingly, the Board of Osteopathic Medicine, by emergency rule, hereby allows a patient's prescribing physician to renew a prior lawfully issued sex-reassignment prescription that was initially prescribed prior to May 17, 2023, up and until six months from the effective date of the Board's emergency

rule that formally adopts the required consent forms pursuant to section 456.52(1) and (2), F.S.

*** This emergency rule does not apply to Susan Doe, Gavin Goe, or Lisa Loe, or their parents or healthcare providers (see Jane Doe et al., v. Joseph A. Ladapo, et al, Preliminary Injunction, Filed June 6, 2023, Case No. 4:23cv114-RH-MAF, United States District Court for the Northern District of Florida). ***

REASON FOR CONCLUDING THAT THE PROCEDURE IS FAIR UNDER THE CIRCUMSTANCES: The procedure used for the promulgation of this emergency rule is fair under the circumstances. CSSB 254 was signed into law on May 17, 2023. The Board of Medicine was contacted by multiple licensed physicians and physician groups seeking clarification regarding the exception contained in section 465.52(4), F.S., and a timeframe for the required emergency rules shortly thereafter. In response, the Board of Medicine and the Board of Osteopathic Medicine held a Joint Rules/Legislative Committee (Joint Committee) meeting on June 1, 2023, to discuss the emergency rule. On May 19, 2023, the Board of Osteopathic Medicine published notice of the Joint Committee meeting both on its website and in the Florida Administrative Register. On June 2, 2023, the Board of Medicine discussed the report of the Joint Committee and voted upon emergency rule language. Likewise, on June 20, 2023, the Board of Osteopathic Medicine discussed the Joint committee report and voted upon emergency rule language. The Board of Osteopathic Medicine published notice of its June 20, 2023, meeting in the Florida Administrative Register and on its website on June 6, 2023. Each meeting was held in a public forum and was able to be attended by any interested parties. Accordingly, all notice requirements contained in Rule 28-102.001, F.A.C., were properly complied with and interested parties were given ample opportunity to participate in this rulemaking process.

SUMMARY: The proposed emergency rule allows a patient's prescribing physician to renew a prior lawfully issued sex-reassignment prescription that was prescribed prior to the effective date of section 465.52, F.S., up and until six months from the effective date of the Board of Osteopathic Medicine's emergency rule formally adopting a consent form per sections 456.52(1) and (2), Florida Statutes.

THE PERSON TO BE CONTACTED REGARDING THE EMERGENCY RULE IS: Danielle Terrell, Executive Director, Board of Osteopathic Medicine/MQA, 4052 Bald Cypress Way, Bin #C06, Tallahassee, Florida 32399-3256, or by email at Danielle.Terrell@flhealth.gov.

THE FULL TEXT OF THE EMERGENCY RULE IS:

64B15ER23-4  Sex-reassignment Prescriptions.

A patient's prescribing physician may renew a prior lawfully issued sex-reassignment prescription as defined in section 456.001(9)(a), Florida Statutes, that was prescribed prior to May 17, 2023, up and until six months from the effective date of the Board's emergency rule formally adopting a consent form per sections 456.52(1) and (2), Florida Statutes. Rulemaking Authority 456.52(1)(a), (b), 456.52(6)(a) FS. Law Implemented 456.52(1), (2) FS., New 6-20-23.

THIS RULE TAKES EFFECT UPON BEING FILED WITH THE DEPARTMENT OF STATE UNLESS A LATER TIME AND DATE IS SPECIFIED IN THE RULE.
EFFECTIVE DATE: June 20, 2023

# Section V
# Petitions and Dispositions Regarding Rule Variance or Waiver

DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
Division of Hotels and Restaurants
RULE NO.:   RULE TITLE:
61C-5.001     Safety Standards
NOTICE IS HEREBY GIVEN that on June 19, 2023, the Department of Business and Professional Regulation, Division of Hotels and Restaurants, Bureau of Elevator Safety, received a petition for Reep-OFC Financial Center LLC at 3801 PGA Blvd, Palm Beach Gardens, FL. Petitioner seeks a variance of the requirements of ASME A17.1, 2016 edition, Sections 2.8.1 and 2.8.2.2, as adopted by 61C-5.001, Florida Administrative Code that requires an antenna not be placed in the elevator shaft which poses a significant hardship. Any interested person may file comments within 14 days of the publication of this notice with Division of Hotels and Restaurants, Bureau of Elevator Safety, 2601 Blair Stone Road, Tallahassee, Florida 32399-1013 (VW2023-062).

A copy of the Petition for Variance or Waiver may be obtained by contacting: Division of Hotels and Restaurants, Bureau of Elevator Safety, 2601 Blair Stone Road, Tallahassee, Florida 32399-1013. dhr.elevators@myfloridalicense.com

DEPARTMENT OF HEALTH
Board of Clinical Laboratory Personnel
RULE NO.:   RULE TITLE:
64B3-5.003   Technologist
The Board of Accountancy hereby gives notice:
that the Petition filed by Nidhi Kapoor, on April 24, 2023, seeking a variance or waiver of Rule 64B3-5.003, F.A.C., has been withdrawn. The Notice of Petition was published in Vol. 49 No. 83 of the April 28, 2023, issue of the Florida Administrative Register.

*Florida Administrative Register*                                    *Volume 49, Number 122, June 23, 2023*

A copy of the Order or additional information may be obtained by contacting:

Dayle Mooney, Executive Director, Board of Clinical Laboratory Personnel, 4052 Bald Cypress Way, Bin # C-07, Tallahassee, Florida 32399-3258, telephone: (850)488-0595, or email, Dayle.Mooney@flhealth.gov.

DEPARTMENT OF HEALTH

Board of Clinical Laboratory Personnel

The Board of Clinical Laboratory Personnel hereby gives notice:

of the issuance of an Order Denying the Petition for Variance or Waiver, filed on February 27, 2023, by Leah Marshall. The Notice of Petition for Waiver or Variance was published in Vol. 49, No. 59, of the March 24, 2023, Florida Administrative Register. Petitioner did not state a specific rule citation for the request on waiver or variance. The Board considered the instant Petition at a duly-noticed public meeting held on April 28, 2023. The Board's Order, filed on May 17, 2023, denied the petition stating that Petitioner failed to identify a level of licensure and rule for which she seeks a waiver. Petitioner failed to establish that the Board's application of existing rules to her circumstances would violate principles of fairness or impose a substantial hardship on her.

A copy of the Order or additional information may be obtained by contacting:

Dayle Mooney, Executive Director, Board of Clinical Laboratory Personnel, 4052 Bald Cypress Way, Bin # C-07, Tallahassee, Florida 32399-3258, telephone: (850)488-0595, or email, Dayle.Mooney@flhealth.gov.

DEPARTMENT OF HEALTH

Board of Physical Therapy Practice

NOTICE IS HEREBY GIVEN that on June 21, 2023, the Board of Physical Therapy Practice, received a petition for Variance or Waiver filed by Ashima Chohan. Petitioner is seeking a variance or waiver from Section 486.031(3)(b), Florida Statutes, which states that to be eligible for licensing as a physical therapist, and applicant must have received a diploma from a program in physical therapy in a foreign country and have educational credentials deemed equivalent to those required for the educational preparation of physical therapists in this country, as recognized by the appropriate agency as identified by the board, and have passed to the satisfaction of the board an examination to determine her or his fitness for practice as a physical therapist as hereinafter provided.

Comments on this petition should be filed with the Board of Physical Therapy Practice, 4052 Bald Cypress Way, Bin #C05, Tallahassee, Florida 32399-3253, within 14 days of publication of this notice.

A copy of the Petition for Variance or Waiver may be obtained by contacting: Allen Hall, Executive Director, Board of Physical Therapy Practice, 4052 Bald Cypress Way, Bin #C05, Tallahassee, Florida 32399-3253, or by electronic mail-Allen.Hall@flhealth.gov.

FLORIDA HOUSING FINANCE CORPORATION

RULE NO.:   RULE TITLE:

67-48.0072   Credit Underwriting and Loan Procedures

NOTICE IS HEREBY GIVEN that on June 21, 2023, the Florida Housing Finance Corporation, received a petition for waiver from paragraph 67-48.0072(17)(h) (5/24/2017), Florida Administrative Code from WRDG T3A, LP, allowing the General Contractor to subcontract to two affiliates.

A copy of the Petition for Variance or Waiver may be obtained by contacting: Ana McGlamory, Corporation Clerk, Florida Housing Finance Corporation, 227 North Bronough Street, Suite 5000, Tallahassee, FL 32301-1329. The Petition has also been posted on Florida Housing's website at floridahousing.org. Florida Housing will accept comments concerning the Petition for 14 days from the date of publication of this notice. To be considered, comments must be received on or before 5:00 p.m., Eastern Time, on the 14th day after publication of this notice at Florida Housing Finance Corporation, 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329.

# Section VI
# Notice of Meetings, Workshops and Public Hearings

BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND

The Florida Department of Environmental Protection's Office of Resilience and Coastal Protection announces a public meeting to which all persons are invited.

DATE AND TIME: Monday, July 24, 2023, 1:00 p.m. – 4:00 p.m.

PLACE: 2796 Overseas Highway, Marathon, FL 33050 and online through TEAMS at

https://teams.microsoft.com/l/meetup-join/19%3ameeting_MjBjOGNiZTUtYjQ3NS00MmUyLWI3ZTMtNjkyNzE3NjBlNGU5%40thread.v2/0?context=%7b%22Tid%22%3a%22679d4c83-aea2-4635-b4f1-9f5012551b6a%22%2c%22Oid%22%3a%228a4d3c12-ab28-41cd-8d18-33487b7c82ba%22%7d

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Advisory Committee for the Coupon Bight Aquatic Preserve Management Plan is meeting to review and discuss the draft

update to the Coupon Bight Aquatic Preserve Management Plan, previously approved in 1992. The management plan is available online at https://publicfiles.dep.state.fl.us/CAMA/Coupon-Bight-AP-Management-Plan-DRAFT.pdf. Members of the public are invited to attend and listen to comments. A separate public meeting will be held to present the management plan to the public for their comments.

A copy of the agenda may be obtained by contacting: Aquatic Preserve Manager, Dr. Nicholas Parr at Nicholas.Parr@FloridaDEP.gov.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 5 days before the workshop/meeting by contacting: Dr. Nicholas Parr at Nicholas.Parr@FloridaDEP.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

## WATER MANAGEMENT DISTRICTS
Northwest Florida Water Management District
The Northwest Florida Water Management District announces a public meeting to which all persons are invited.
DATE AND TIME: July 18, 2023, 2:00 p.m., Eastern Time (ET).
PLACE: Northwest Florida Water Management District, 81 Water Management Drive, Havana, Florida 32333.
GENERAL SUBJECT MATTER TO BE CONSIDERED: In accordance with the timeframe set forth in section 120.525, Florida Statutes, the District announces the opening of bids received in response to ITB No. 23B-012 - 2023 GROUND SITE PREP HERBICIDE TREATMENT SERVICES.

A copy of the agenda may be obtained by contacting: Northwest Florida Water Management District's website (http://www.nwfwater.com); the State of Florida's Vendor Information Portal website at: MyFloridaMarket Place Vendor Information Portal; or may be obtained by calling (850)539-5999.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 72 hours before the workshop/meeting by contacting: Benjamin Faure at Office (850)722-9919 or Cell (850)510-0399, Benjamin.Faure@nwfwater.com. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: Benjamin Faure at Office (850)722-9919 or Cell (850)510-0399, Benjamin.Faure@nwfwater.com.

## SPACE FLORIDA
The Space Florida announces a public meeting to which all persons are invited.
DATE AND TIME: June 30, 2023, 9:00 a.m., EDT
PLACE: Virtual Meeting via Zoom Meeting Link
https://spaceflorida.zoom.us/j/6277636389?pwd=OUdidzM0ej U5aGhXZUtldU5hU2pvdz09
GENERAL SUBJECT MATTER TO BE CONSIDERED:
Space Florida Transition Team Meeting
A copy of the agenda may be obtained by contacting: Terrie Ireland at tireland@spaceflorida.gov or (321)730-5301, ext. 241

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 2 days before the workshop/meeting by contacting: Terrie Ireland at tireland@spaceflorida.gov or (321)730-5301, ext. 241. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

If any person decides to appeal any decision made by the Board with respect to any matter considered at this meeting or hearing, he/she will need to ensure that a verbatim record of the proceeding is made, which record includes the testimony and evidence from which the appeal is to be issued.

For more information, you may contact: Terrie Ireland at tireland@spaceflorida.gov or (321)730-5301, ext. 241.

## DEPARTMENT OF HEALTH
Board of Medicine
The Board of Medicine – Special Probable Cause Panel announces a public meeting to which all persons are invited.
DATE AND TIME: Thursday, June 29, 2023, 2:30 p.m., EST, or soon thereafter.
PLACE: You may join the meeting from your computer, tablet, or smartphone through the following link: https://global.gotomeeting.com/join/841195637. You may also join the meeting using your phone at the following number: (646)749-3122, access code: 841-195-637. To maximize your access to the meeting, the Department highly recommends that you download the GoToMeeting app on your computer, tablet, or smartphone prior to the meeting.
GENERAL SUBJECT MATTER TO BE CONSIDERED: The panel will conduct a meeting related to public disciplinary cases.

A copy of the agenda may be obtained by contacting: April Houston at (850)558-9858 or emailing her at April.Houston@flhealth.gov.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the

agency at least 7 days before the workshop/meeting by contacting: April Houston at (850)558-9858 or emailing her at April.Houston@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

If any person decides to appeal any decision made by the Board with respect to any matter considered at this meeting or hearing, he/she will need to ensure that a verbatim record of the proceeding is made, which record includes the testimony and evidence from which the appeal is to be issued.

For more information, you may contact: April Houston at (850)558-9858 or emailing her at April.Houston@flhealth.gov.

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: June 27, 2023, 1:30 p.m. - 1:40 p.m.

PLACE: Virtual Meeting

Dial in number (888)585-9008

Conference Room number- 409-164-623

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: carol.wegener-vitani@flhealth.gov

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: July 25, 2023, 1:30 p.m. - 1:40 p.m.

PLACE: Virtual meeting

Dial in number (888)585-9008

Conference Room number- 409-164-623

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and

discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: carol.wegener-vitani@flhealth.gov

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: August 29, 2023, 1:30 p.m. -1:40 p.m.

PLACE: Dial in number (888)585-9008

Conference Room number- 409-164-623

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: September 26, 2023, 1:30 p.m. - 1:40 p.m.

PLACE: Dial in number (888)585-9008

Conference Room number- 409-164-623

*Florida Administrative Register*                                    *Volume 49, Number 122, June 23, 2023*

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 19 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: October 31, 2023, 1:30 p.m. - 1:40 p.m.

PLACE: Dial in number (888)585-9008

Conference Room number- 409-164-623

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: carol.wegener-vitani@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: carol.wegener-vitani@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: carol.wegener-vitani@flhealth.gov

DEPARTMENT OF HEALTH

Division of Children's Medical Services

The Child Abuse Death Review Circuit 13 Committee announces a public meeting to which all persons are invited.

DATE AND TIME: July 12, 2023, 1:00 p.m. - 1:15 p.m.

PLACE: Zoom Meeting: https://us06web.zoom.us/meeting/register/tZMkcOCtpjkuH90D-CrNiBVsL9rmiVUlPLsT

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Committee will address administrative issues, review cases, and discuss the CADR Action Plan. A portion of the meeting is required by Section 383.412(3) (a), F.S. to be closed to the public to allow the Committee to discuss information that is confidential and exempt from public meetings and public records. This portion of the meeting will be announced at the meeting.

A copy of the agenda may be obtained by contacting: Carry.Simons@flhealth.gov

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 7 days before the workshop/meeting by contacting: Carry.Simons@flhealth.gov. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: Carry.Simons@flhealth.gov

DEPARTMENT OF CHILDREN AND FAMILIES

Refugee Services

The Jacksonville Area Refugee Task Force announces a public meeting to which all persons are invited.

DATE AND TIME: Wednesday, July 12, 2023; 1:30 p.m. - 3:30 p.m.

PLACE: Meeting will take place via the Microsoft Teams platform. Use the below link to connect to the meeting: https://teams.microsoft.com/l/meetup-join/19%3ameeting_NGU3Yjc4NjctNTRlZS00YjMzLWI1ZTQtZTQ2N2QxZDg0ZDY5%40thread.v2/0?context=%7b%22Tid%22%3a%22f70dba48-b283-4c57-8831-cb411445a94c%22%2c%22Oid%22%3a%224c7ac74e-0835-4242-a8cf-f26976fc1c32%22%7d

GENERAL SUBJECT MATTER TO BE CONSIDERED: The purpose of the Jacksonville Area Refugee Task Force meeting is to increase awareness of the refugee populations, share best practices, spot trends in refugee populations, build collaborations between agencies, help create good communication among service providers, get informed about upcoming community events, and discuss refugee program service needs and possible solutions to meeting those needs.

A copy of the agenda may be obtained by contacting: Lita Amin (904)524-1316 or David Draper at (407)317-7335.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the

*Florida Administrative Register*                    *Volume 49, Number 122, June 23, 2023*

agency at least 5 days before the workshop/meeting by contacting: Lita Amin (904)524-1316 or David Draper at (407)317-7335. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: Lita Amin (904)524-1316 or David Draper at (407)317-7335.

DEPARTMENT OF ECONOMIC OPPORTUNITY
Division of Community Development
The Division of Community Development announces the availability of the Draft Federal Fiscal Year (FFY) 2023 Annual Action Plan for public comment and also announces a hearing to which all persons are invited.

DATE AND TIME: Public Hearing - June 29, 2023, 10:00 a.m., Eastern Standard Time (EST).

Public Comment Period - June 23, 2023 through July 7, 2023.

PLACE: Public Hearing will be held via Microsoft Teams and in-person:

Join by Computer/Tablet/Smartphone at

https://teams.microsoft.com/l/meetup-join/19%3ameeting_ZDBlN2NhOTctYzMwZS00ZDQ5LWE0OTItZjM5YzljNDFhMjlj%40thread.v2/0?context=%7b%22Tid%22%3a%22931da019-f64e-4908-b0f6-92f46f78c512%22%2c%22Oid%22%3a%22b6e1445d-1082-4e7c-b08e-1559ee626f2f%22%7d

or

Dial-in at +1(850)988-5144 (Conference ID: 755 652 205#) or Attend In Person: Florida Department of Economic Opportunity, 107 E. Madison St., Caldwell Building, Room 114, Tallahassee, FL

GENERAL SUBJECT MATTER TO BE CONSIDERED: The Florida Department of Economic Opportunity (DEO), in cooperation with other agencies, requests public comment on the FFY 2023 Annual Action Plan for Housing and Community Development (FFY 2023 Annual Action Plan) prior to submitting it to the U.S. Department of Housing and Urban Development (HUD).

The HUD-funded programs included in the FFY 2023 Annual Action Plan are the Florida Small Cities Community Development Block Grant (CDBG) program administered by DEO, the Emergency Solutions Grant (ESG) program administered by the Florida Department of Children and Families, the Housing Opportunities for Persons With AIDS (HOPWA) program administered by the Florida Department of Health, the Home Investment Partnership (HOME) program, and the Housing Trust Fund (HTF) administered by the Florida Housing Finance Corporation.

The Draft FFY Annual Action Plan is available for public review and comment prior to submitting the plan to HUD. The 15-day comment period will begin on June 23, 2023, and will end on July 7, 2023. The draft of the Action Plan will also be posted on DEO's website: www.FloridaJobs.org/AnnualActionPlan.

Written comments on the drafted Action Plan are encouraged and may be made at the public meeting, emailed to CDBG@DEO.MyFlorida.com, or mailed to: Florida Small Cities CDBG Program, 107 East Madison St., MSC-400, Tallahassee, FL 32399.

A copy of the agenda may be obtained by contacting: CDBG@DEO.MyFlorida.com.

Pursuant to the provisions of the Americans with Disabilities Act, any person requiring special accommodations to participate in this workshop/meeting is asked to advise the agency at least 5 days before the workshop/meeting by contacting: CDBG@DEO.MyFlorida.com. If you are hearing or speech impaired, please contact the agency using the Florida Relay Service, 1(800)955-8771 (TDD) or 1(800)955-8770 (Voice).

For more information, you may contact: Florida Small Cities CDBG, CDBG@DEO.MyFlorida.com.

# Section VII
## Notice of Petitions and Dispositions Regarding Declaratory Statements

### NONE

# Section VIII
## Notice of Petitions and Dispositions Regarding the Validity of Rules

Notice of Petition for Administrative Determination has been filed with the Division of Administrative Hearings on the following rules:

### NONE

Notice of Disposition of Petition for Administrative Determination has been filed with the Division of Administrative Hearings on the following rules:

### NONE

# Section IX
## Notice of Petitions and Dispositions Regarding Non-rule Policy Challenges

## NONE

# Section X
## Announcements and Objection Reports of the Joint Administrative Procedures Committee

## NONE

# Section XI
## Notices Regarding Bids, Proposals and Purchasing

DEPARTMENT OF EDUCATION
University of Florida
Notice of Bid
Request for Qualifications (Construction)
University of Florida Board of Trustees
UF Bid Number FY23-QFC-020
New Graduate Residence – Homestead, FL
SCOPE OF WORK:
The project consists of the construction of graduate student housing inclusive of all required sitework. This building will provide housing for graduate students involved with the Tropical Research and Education Center (TREC). It will be a single story, roughly 3,052 GSF facility with eight bedrooms and four bathrooms.

Applicants unfamiliar with work at the University of Florida (UF) are strongly urged to familiarize themselves with the UF General Terms and Conditions, construction inspection & closeout procedures and forms, and other documents and materials available on the UF Planning Design & Construction (PD&C) website at www.facilities.ufl.edu.
PROPOSAL:
The method of delivery is design-bid-build, with an enhanced pre-bid qualification process. The following criteria shall be used to qualify potential bidders:

- Past Performance on Similar Projects
- Personnel Assigned to the Project
- Financial Standing, Qualifications, and Licensure
- Safety Record
- Workload
- Completeness of Pre-Qualification Documents

RFQ inquiries are due June 30, 2023, at 6:00PM.
RFQ submittals are due July 11, 2023, at 3:00PM.
Only applicants deemed to be qualified will be permitted to bid.
Tentative Bid Schedule (subject to change):
Posting of Pre-qualified Contractors – July 19, 2023
Bid Documents available – July 19, 2023
Mandatory Pre-bid Conference (for Pre-qualified Contractors) – July 25, 2023
Pre-bid Inquiries Due – August 1, 2023
Bids Due – August 16, 2023
Additional information, including Basis of Design Package, can be obtained on University of Florida's Schedule of Bids webpage:
https://bids.sciquest.com/apps/Router/PublicEvent?Customer Org=Florida

HILLSBOROUGH COUNTY AVIATION AUTHORITY
Executive Search Services
Solicitation Advertisement Executive Search Services
HILLSBOROUGH COUNTY AVIATION AUTHORITY (AUTHORITY)
Sealed proposals for the above referenced solicitation will be received from firms by the Authority electronically at www.TampaAirport.com > Learn about TPA > Airport Business > Procurement > Solicitations and Contracts > Current, Planned and Archived Solicitations.
Solicitation documents and detailed requirements will be available on the Tampa International Airport website at www.tampaairport.com > Learn about TPA > Airport Business > Procurement > Solicitations and Contracts > Current, Planned and Archived Solicitations on or about June 22, 2023.

# Section XII
## Miscellaneous

**DEPARTMENT OF STATE**
Index of Administrative Rules Filed with the Secretary of State
Pursuant to subparagraph 120.55(1)(b)6. – 7., F.S., the below list of rules were filed in the Office of the Secretary of State between 3:00 p.m., Friday, June 16, 2023 and 3:00 p.m., Thursday, June 22, 2023.

| Rule No. | File Date | Effective Date |
|---|---|---|
| 1A-39.001 | 6/16/2023 | 7/6/2023 |
| 64B5-12.013 | 6/20/2023 | 7/10/2023 |
| 64B15ER23-4 | 6/20/2023 | 6/20/2023 |
| 64B16-28.140 | 6/19/2023 | 7/9/2023 |
| 68A-20.005 | 6/16/2023 | 7/6/2023 |

| 68B-2.006 | 6/21/2023 | 7/11/2023 |

**LIST OF RULES AWAITING LEGISLATIVE APPROVAL SECTIONS 120.541(3), 373.139(7) AND/OR 373.1391(6), FLORIDA STATUTES**

| Rule No. | File Date | Effective Date |
|----------|-----------|----------------|
| 40C-4.091 | 3/31/2023 | **/**/**** |
| 40C-41.043 | 3/31/2023 | **/**/**** |
| 60FF1-5.009 | 7/21/2016 | **/**/**** |
| 62-6.001 | 5/10/2022 | **/**/**** |
| 62-330.010 | 4/28/2023 | **/**/**** |
| 62-330.050 | 4/28/2023 | **/**/**** |
| 62-330.055 | 4/28/2023 | **/**/**** |
| 62-330.301 | 4/28/2023 | **/**/**** |
| 62-330.310 | 4/28/2023 | **/**/**** |
| 62-330.311 | 4/28/2023 | **/**/**** |
| 62-330.350 | 4/28/2023 | **/**/**** |
| 62-330.405 | 4/28/2023 | **/**/**** |
| 62-600.405 | 11/16/2021 | **/**/**** |
| 62-600.705 | 11/16/2021 | **/**/**** |
| 62-600.720 | 11/16/2021 | **/**/**** |
| 64B8-10.003 | 12/9/2015 | **/**/**** |
| 65C-9.004 | 3/31/2022 | **/**/**** |

DEPARTMENT OF TRANSPORTATION
Proposed Airport Site Approval Order for Orlando Health Lakeland Helipad
FLORIDA DEPARTMENT OF TRANSPORTATION
The Florida Department of Transportation intends to issue an "Airport Site Approval Order," in accordance with Chapter 330, Florida Statutes, "Regulation of Aircraft, Pilots, and Airports" and Chapter14-60, Florida Administrative Code, "Airport Licensing, Registration, and Airspace Protection" for the following site:
Orlando Health Lakeland Helipad, a private airport, in Polk County, at Latitude 27° 59' 40.00" and Longitude 81° 55' 04.00", to be owned and operated by Orlando Health Inc., 1900 Don Wickham Drive Attn: Kim McMurphy Clermont, FL 34711.

A copy of the Airport Site Approval Order, the Airport's application, the applicable rules, and other pertinent information may be obtained by contacting David A. Roberts, Interim State Aviation Manager, Florida Department of Transportation, Aviation Office, 605 Suwannee Street, Mail Station 46, Tallahassee, Florida 32399-0450; 850/414-4507; aviation.fdot@dot.state.fl.us.                    Website: http://www.fdot.gov/aviation.
ADMINISTRATIVE HEARING RIGHTS: Any person whose substantial interests will be determined or affected by this Airport Site Approval Order has the right, pursuant to Section 120.57, Florida Statutes, to petition for an administrative hearing.   The petition for an administrative hearing must conform to the requirements of Rule Chapter 28-106, Florida Administrative Code, and must be filed, in writing, within twenty-one days of the publication of this notice, with the Clerk of Agency Proceedings, Office of General Counsel, Florida Department of Transportation, 605 Suwannee Street, Mail Station 58, Room 550, Tallahassee, Florida  32399-0450. Failure to file a petition within the allowed time constitutes a waiver of any right such person has to request a hearing under Chapter 120, Florida Statutes.

## Section XIII
## Index to Rules Filed During Preceding Week

NOTE: The above section will be published on Tuesday beginning October 2, 2012, unless Monday is a holiday, then it will be published on Wednesday of that week.

TAB E

**1S-2.055 Vote-by-mail Requests**

(1) Forms. The following forms are hereby incorporated by reference and available from the Division of Elections, R.A. Gray Building, Room 316, 500 South Bronough Street, Tallahassee, Florida 32399-0250, by contact at (850)245-6200, or by download from the Division's webpage at: https://dos.myflorida.com/elections/forms-publications/forms/forms-incorporated-in-rule/:

(a) Form DS-DE 151 (eff.      /23) (http://www.flrules.org/Gateway/reference.asp?No=Ref-XXXXX), entitled "Statewide Vote-by-mail Request."

(2) Definitions.  For purposes of section 101.62(1), F.S., the following definitions apply:

(a) "Immediate family" means a voter's spouse, parent, child, grandparent, grandchild, or sibling, or the parent, child, grandparent, grandchild, or sibling of the voter's spouse.

(3) Requests for Vote-by-mail Ballots

(a) Requests must be made by the voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian.

(b) Requests may be submitted in person, in writing, by telephone, or through a supervisor's website.

(c) Requests must be accepted if the voter or the voter's designee provides the following information pursuant to section 101.62(1)(b), F.S.:

1. The name of the voter for whom the ballot is requested.

2. The voter's address.

3. The voter's date of birth.

4. The voter's Florida driver license number, Florida identification card number, or the last four digits of the voter's social security number, whichever may be verified in the supervisor's records.

5. The requester's name.

6. The requester's address.

7. The requester's driver license number, Florida identification card number, or the last four digits of the requester's social security number.

8. The requester's relationship to the voter.

9. The requester's signature (written requests only).

(4) Vote-by-mail Requests for Voters Who Require Assistance

(a) A voter who is disabled or unable to read or write who requires assistance to register to vote-by-mail by reason of his or her disability or inability to read or write may directly instruct a person of the voter's choice (other than the voter's employer or agent of that employer or officer or agent of the voter's union) to request a vote-by-mail ballot for the voter.

(b) A supervisor of elections shall accept a request for a vote-by-mail ballot from a voter who is disabled or unable to read or write or, if directly instructed by the voter, a person of the voter's choice (other than the voter's employer or agent of that employer or officer or agent of the voter's union). A request may be made in person, in writing, by telephone, or through the supervisor's website.

(c) The uniform statewide application for making a written request for a vote-by-mail ballot shall be consistent with this rule.

(d) For purposes of this rule, the term "disability" includes blindness.

*Rulemaking Authority: § 97.012(1)-(2), (9), Fla. Stat.; § 101.62(1)(a), Fla. Stat.; § 101.62(6), Fla. Stat.; § 101.662, Fla. Stat. Law Implemented: § 97.061, Fla. Stat; § 101.62(1)(a), Fla. Stat.; § 101.62(6), Fla. Stat.; § 101.662, Fla. Stat. History—New  _-_-23.*

TAB F

**DECLARATION OF ANDREW DARLINGTON
IN SUPPORT OF RESPONSE IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

I, Andrew Darlington, consistent with 28 U.S.C. § 1746, hereby state:

**<u>Background</u>**

1.      I am over 18 years of age, am competent to testify, and declare the following facts based on my own personal knowledge.

2.      I have served as the Director of the Office of Election Crimes and Security since March 2023. As Director, my role includes, but is not limited to, overseeing the Office's: (a) receiving and reviewing of notices and reports generated by concerned citizens, government officials, or other Florida agency partners regarding alleged occurrences of election law violations by third-party voter registration organizations or their agents ("3PVROs"); (b) initiating independent inquiries and conducting preliminary investigations into allegations of election law violations by 3PVROs; (c) assessing fines for election law violations by 3PVROs; and (d) referring complaints regarding 3PVROs to other agencies for further criminal investigation or prosecution.

3.      Prior to becoming Director, I served as an Assistant General Counsel in the Florida Department of State where I handled election-related matters. Before that, I served as a prosecutor, worked in several federal and state agencies, served as a civil litigator in several law firms, and was an infantry officer in the United States Marine Corps where I served twice in Afghanistan.

4.      In my current role as Director, I am familiar with Florida's Election Code. I am also familiar with the claims brought by the Plaintiff in the three federal district court cases challenging various provisions of Senate Bill 7050 ("SB 7050"), Florida's most recent set of revisions to the Florida Election Code, which was codified as chapter 2023-120, Laws of Florida ("2023 Law").

1

5.      A 3PVRO that collects voter registration applications serves as a fiduciary to applicants under Florida law. § 97.0575(3)(a), Fla. Stat. I am providing this declaration to explain some of the ways and instances in which 3PVROs have failed to abide by their fiduciary duties in recent years, and the State's interests in the provisions that the Plaintiff groups are seeking to preliminarily enjoin.

### 3PVRO Complaints

6.      Our Office regularly receives complaints of 3PVROs violating Florida's election laws via a variety of sources, including election fraud complaints (Form DS-DE 34 – Fla. Admin. Code R. 1S-2.025), 3PVRO complaints (Form DS-DE 121 – Fla. Admin Code R. 1S-2.042), and complaints from supervisors of elections or their staff (which are submitted via the previous two forms). *See, e.g.*, Fla. Admin. Code. R. 1S-2.042(8). We investigate complaints and assess civil penalties, refer civil complaints to the Florida Attorney General's Office, or refer criminal complaints to law enforcement, as appropriate.

7.      Florida law requires the Office to submit an annual report to the President of the Senate, the Speaker of the House of Representatives, and the Governor detailing information on investigations of alleged election law violations or election irregularities conducted during the prior calendar year. § 97.022(7), Fla. Stat. The Office submitted its most recent report on January 15, 2023, for the 2022 calendar year—well before the proposed initial legislation for SB 7050 was submitted for consideration to the Florida Senate Committee on Ethics and Elections on March 30, 2023. The report is a statutory requirement and is incorporated by reference as an attachment to this declaration. As evidenced in the report, during 2022, the Office reviewed a large number of complaints involving 3PVROs. A number of these 3PVROs were reported by election officials for failing to timely comply with statutory obligations—most significantly, failing to timely turn in

voter registration applications. The Office reviewed approximately 3,077 voter registration applications that were collected and submitted untimely by 3PVROs, in violation of section 97.0575, Florida Statutes. The Office assessed statutory fines in the amount of $41,600.00 against those 3PVROs that did not comply with the statutory requirements. *See* § 97.0575(3)(a), Fla. Stat.

8. Incorporated by reference as an attachment to this declaration is a sampling of 3PVRO complaints received, 3PVRO fine letters issued, and 3PVRO referrals made by the Department of State between the years 2016 and 2021. Our Office is concerned with the quantity and types of violations of Florida's election laws by 3PVROs alleged in or evidenced by these documents (especially those that resulted in the assessment of fines, referrals to other agencies for further investigation, and criminal prosecution). The types of violations alleged in or evidenced by these documents include, among other things:

    a. 3PVROs failing to deliver voter registration applications to election officials before the book closing deadline for federal or state elections. (Whenever a new applicant's voter registration application is not delivered by a 3PVRO prior to the book closing deadline, that voter is deprived of the right to vote in the next election.)

    b. 3PVROs failing to deliver voter registration applications to the division or the supervisor of elections in the county in which the applicant resides within 14 days after applications are completed by applicants.

    c. 3PVROs failing to deliver voter registration applications to the correct supervisor of elections in the county in which the applicant resides.

    d. 3PVRO agents charged or alleged with violation of a criminal statute.

9. Also incorporated by reference as an attachment to this declaration are news articles, a press release, and a letter that discuss various 3PVRO-related issues.

3

**State Interests**

10.     The 2023 Law promotes the State's interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting uniformity, efficiency, and confidence in the election system as a whole. The 2023 Law reflects the State's continuing efforts to protect the right to vote by ensuring that 3PVROs are abiding by their fiduciary duties under Florida law. When 3PVROs conduct themselves in a criminal or fraudulent manner, or otherwise in disregard of their fiduciary duties, their actions may disenfranchise voters by delaying or preventing timely voter registration.

11.     In furtherance of those interests, the 2023 Law amended, among other things: (1) section 97.0575(1)(e), Florida Statutes ("**Felon Volunteer Restriction**"); (2) section 97.0575(1)(f), Florida Statutes ("**Non-U.S. Citizen Volunteer Restriction**"); (3) section 97.0575(4), Florida Statutes ("**Receipt Requirement**"); and (4) section 97.0575(7), Florida Statutes ("**Voter Information Retention Restriction**"). Each of these provisions furthers important State interests.[1]

### 1. Felon Volunteer Restriction

12.     Under the Felon Volunteer Restriction, 3PVROs must "affirm[] that each person collecting or handling voter registration applications on behalf of the [3PVRO] has not been convicted of a felony violation of the Election Code" or "a felony violation of an offense specified in" section "98.0751(2)(c)" (murder), section "98.0751(2)(b)" (sexual offenses), section "825.103" (exploitation of an elderly person or disabled adult), chapter "817" (fraudulent

---

[1] Other provisions the 2023 Law amended (but the Plaintiff groups do not seek to preliminarily enjoin) include: (1) section 97.0575(5)(a), Florida Statutes ("**Late/Incorrectly Returned Application Fines Provision**"); (2) section 101.62(1)(a), Florida Statutes ("**Mail-In Ballot Request Restriction**"); and (3) section 97.0575(1)(d), Florida Statutes ("**Re-Registration Requirement**").

4

practices), chapter "831" (forgery and counterfeiting), or chapter "837" (perjury). § 97.0575(1)(e), Fla. Stat.

13.     An individual who collects and handles a completed voter-registration application acts as a fiduciary for the applicant. § 97.0575(3)(a), Fla. Stat. This is a position of trust and the Florida Legislature has determined that that position of trust should only be occupied by those who have not committed Election-Code felonies or serious or trust-related felonies. *See* § 97.0575(1)(e), Fla. Stat.

14.     It is my understanding that keeping the above classes of convicted felons from collecting or handling completed voter-registration applications furthers the State's interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system as a whole.

### 2. Non-U.S. Citizen Volunteer Restriction

15.     Under the Non-U.S. Citizen Volunteer Restriction, 3PVROs must "affirm[] that each person collecting or handling voter registration applications on behalf of the [3PVRO] is a citizen of the United States of America." § 97.0575(1)(f), Fla. Stat.

16.     As stated above, an individual who collects and handles a completed voter-registration application acts as a fiduciary for the applicant. The Florida Legislature determined that only those individuals who are U.S. citizens can occupy that position of trust. *See* § 97.0575(1)(f), Fla. Stat.

17.     With non-citizens, there is an issue of whether collected and handled applications will be submitted to election officials on time. Non-citizens include illegal aliens, who are actively breaking the law and are subject to deportation at any time. Even those here on a temporary basis, such as those on student visas, pose similar risks; the temporary visitors might leave the country

(or the State) without first delivering the completed voter registration applications in their custody.. For resident aliens, the Florida Legislature made the determination that only U.S. citizens—those who can vote—can conduct the most critical aspect of the voter-registration process: ensuring that a completed application gets properly submitted on time. *See id.* In other words, citizens have the most direct stake in the results of elections, and the Florida Legislature determined that they should be entrusted with that position. *See id.*

18.     It is my understanding that keeping non-U.S. Citizens from collecting or handling completed voter-registration applications furthers the State's interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system as a whole.

### 3. Receipt Requirement

19.      Under the Receipt Requirement, 3PVROs that collect voter-registration applications must provide a receipt to an applicant upon accepting his or her application. § 97.0575(4), Fla. Stat. The receipt must include the name of the applicant, the date the application is received, the name of the 3PVRO, the name of the 3PVRO agent, the applicant's political party affiliation, and the county in which the applicant resides.

20.     The Division of Elections will provide a uniform receipt form by October 1, 2023.

21.     The Receipt Requirement ensures that, if the 3PVRO fails to perform its fiduciary duty to collect or submit applications, the applicants can contact the 3PVRO about any issues, even those concerning the specific 3PVRO agents responsible for interacting with applicants. It also provides applicants with the necessary information to report potential violations of Florida's election laws by 3PVROs, which will enable election officials to identify issues with specific 3PVRO volunteers. More documentation of crucial aspects of voter registration is better.

6

22.     The Receipt Requirement thus ensures 3PVRO accountability in upholding their fiduciary duty and the proper administration of the third-party voter registration process.

### 4. <u>Voter Information Retention Restriction</u>

23.     Under the Voter Information Retention Restriction, a 3PVRO agent is prohibited from collecting a voter's application (which includes a voter's personal information) for any reason other than to provide such application to the 3PVRO in compliance with this section. § 97.0575(7), Fla. Stat.

24.     A voter's personal information includes a voter's Florida driver license number, Florida identification card number, social security number, or signature.

25.     The Voter Information Retention Restriction protects the applicant: a 3PVRO agent should not be able to retain a voter's private information that is not generally available to the public.

26.     The Voter Information Retention Restriction thus ensures that a voter's application (including the voter's personal information contained therein) is protected from misuse by a 3PVRO agent.

I say nothing further.

On June 23, 2023, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct.

/s/ Andrew Darlington
_____
Andrew Darlington

7

TAB G



# Florida Department of State

# Office of Election Crimes and Security

# Report

## January 15, 2023

Prepared by the Department of State pursuant to section 97.022(7), *Fla. Stat.*

## Introduction

The last two presidential elections resulted in increased awareness and heightened scrutiny of election administration across the nation. When laws are not enforced, confidence in the rule of law is eroded; election laws are no exception. Therefore, Governor Ron DeSantis has partnered with the Florida Legislature to create the Office of Election Crimes and Security (OECS), with the stated purpose to improve election integrity in Florida.

Florida currently has more than 14 million registered voters.  As the Chief Elections Officer in Florida, the Secretary of State is charged, under Florida law, with conducting preliminary investigations into any irregularities or fraud involving voter registration, voting, and candidate petition or issue petition activities. Pursuant to section 97.012(15), Fla. Stat., evidence of violations are reported to the Office of the Statewide Prosecutor or local state attorney for the judicial circuit in which the alleged violation occurred for prosecution. Prior to the creation of the OECS, the Department of State did not have the resources to effectively fulfill the duties articulated in section 97.012(15), Fla. Stat. This situation was used by the opponents of election integrity to dismiss the concerns of the Governor and others that persons prohibited by law from voting were in fact registering and voting in Florida elections.

As this report highlights, the OECS plays a vital role in ensuring that Florida conducts elections with the highest degree of integrity, security, and efficiency. Investigations initiated by the OECS have led to the arrest of individuals who voted despite being ineligible. "Fraud in any degree and in any circumstance is subversive to the electoral process. The best way to maintain ballot integrity is to investigate all credible allegations of election fraud and otherwise prevent fraud before it can affect an election." "Building Confidence in U.S. Elections § 5.1 (Sept.2005), (Carter-Baker Report)."

Enforcing Florida election law has the primary effect of punishing violators, but also and equally as important, acts as a deterrent to those who may consider voting illegally or committing other election related crimes. This report, coupled with information compiled by the Florida Supervisors' of Elections during the 2022 election, demonstrates the effectiveness of the OECS in both finding those who have violated Florida election laws and deterring those who may contemplate doing so.

# Table of Contents

I.    Executive Summary ....................................................4

II.   Report Detailing Information on Investigations of Alleged Election Law Violations or Irregularities ....................................................6

III.  Conclusion ....................................................91

IV.  Appendices ....................................................92

    A.  Appendix A: Laws of Florida, s. 3, Chapter 2022-73, Laws of Florida

    B.  Appendix B: Governor Press Release – Announcement of Appointment of OECS Director (July 6, 2022)

    C.  Appendix C: Governor Press Release (August 18, 2022)

    D.  Appendix D: FDLE Press Release (August 18, 2022)

    E.  Appendix E: FDLE Press Release (October 20, 2022)

    F.  Appendix F: FDLE Press Release (November 4, 2022)

    G.  Appendix G: FDLE Press Release (December 9, 2022)

    H.  Appendix H: FDLE Press Release (December 28, 2022)

    I.  Appendix I: The Florida Times-Union News Article (November 29, 2022)

    J.  Appendix J: Pensacola News Journal News Article (November 29, 2022)

    K.  Appendix K: Tallahassee Democrat News Article (December 9, 2022)

    L.  Appendix L: Building Confidence in U.S. Elections, Report of the Commission on Federal Election Reform, September 2005 ("Carter Baker Report")

## I.      Executive Summary

On April 25, 2022, Governor Ron DeSantis signed into law Senate Bill 524, which among other things, created the OECS.  Section 97.022, Fla. Stat., outlines the duties and responsibilities of the OECS.

The legislation creating the OECS (Chapter 2022-73, *Laws of Florida*) requires the OECS to submit a report by January 15 of each year to the Governor, the President of the Senate, and the Speaker of the House of Representatives, detailing information on investigations of alleged election law violations or irregularities.  *See* 97.022(7)(a)-(e), Fla Stat.

On August 18, 2022, in partnership with the Florida Office of the Attorney General and the Florida Department of Law Enforcement (FDLE), the OECS announced the arrest of 20 individuals previously convicted of felony sex offenses or murder who unlawfully registered to vote and then voted in the 2020 General Election.  Since its inception, the OECS has reviewed and forwarded to law enforcement for criminal investigation approximately 1,094 individuals who allegedly voted unlawfully in the 2020 General Election, and 70 individuals who allegedly voted unlawfully in the 2022 General Election.[1]  During the final months of 2022, with the help of the local State Attorney Offices in Escambia and Duval County, law enforcement made 4 arrests based on additional OECS criminal referrals.

Some recent examples of the continuing contributions of the OECS include:

- In October 2022, FDLE announced the arrest in Broward County of an individual referred to law enforcement by the OECS.  The defendant is alleged to be an illegal alien and a ten-time convicted felon who voted under an alias in the Broward County, U.S. Congressional District 20 Special Election (Primary and General).  The individual is alleged to have registered to vote using a counterfeit birth certificate from New York City.

- In November 2022, FDLE announced the arrest in Palm Beach County of an individual referred to law enforcement by the OECS.  The defendant, is alleged to have voted in the 2020 Primary and General Elections in both Florida and Alaska.  The investigation revealed a pattern of double voting by this individual in both states in 2014, 2016 and 2018.

- In December 2022, FDLE announced the arrest in Jackson County of an individual for the misuse of voter information and fraudulent submissions related to constitutional initiative petitions.

Additionally, as the report highlights, during the final quarter of 2022, the OECS conducted hundreds of preliminary investigations, with many resulting in criminal referrals to law enforcement. Notably, a number of criminal convictions have been secured, and a large number of these referrals remain open and pending with law enforcement.

---

[1] General Election data from 2022 has yet to be fully analyzed by OECS.  It is anticipated that OECS will have a full data set for the 2022 General Election to analyze in late January 2023.

During 2022, the OECS also reviewed a large number of complaints involving Third Party Voter Registration Organizations (3PVROs).  A number of these organizations were reported by election officials for failing to timely comply with statutory obligations—most significantly, failure to timely turn in voter registration applications. The OECS reviewed approximately 3,077 voter registration applications that were collected and submitted untimely by 3PVROs, in violation of section 97.0575, Fla. Stat.  The OECS assessed statutory fines in the amount of $41,600.00 against those 3PVROs that did not comply with the statutory requirements.  *See* section 97.0575(3)(a)1-3, Fla. Stat.

The OECS has also made a number of criminal referrals related to 3PVROs; specifically, the referrals targeted voter registration agents employed by 3PVROs, who are alleged to have committed fraud, engaged in identity theft, changed a voter's party affiliation, registered deceased individuals, or registered fake individuals, among other violations.  Many of these criminal referrals are still pending and remain under active criminal investigation with law enforcement.

With Florida's enrollment in the Electronic Registration Information Center (ERIC), the OECS has used data provided by ERIC to identify approximately 1,177 voters who appear to have voted in Florida and in one of the other member states, in the same election.  A number of these cases are in the preliminary investigative stage with OECS, while a number of others have already been referred for criminal prosecution. The data provided by ERIC offers a way for states who participate to share voter information and to help find individuals who may have cast more than one ballot in a Primary or General Election.  The OECS has also analyzed data from non-ERIC states, and in partnership with the Florida Attorney General's Office has issued a number of subpoenas to those states to obtain records necessary to build cases for criminal prosecution.

Not to be overlooked, in addition to the examples listed here, throughout the 2022 calendar year the Department and the OECS received and reviewed 232 Election Fraud Complaints, handled hundreds of e-mails, as well as answered hundreds of phone calls made to the Voter Fraud Hotline.

Finally, we would like to thank our partners at the Florida Attorney General's Office, the FDLE, the Department of Corrections, the Department of Highway Safety and Motor Vehicles, and the 67 county Supervisors of Elections who each played important roles by assisting the OECS in identifying and investigating many of these election crime cases.

## II.     Report Detailing Information on Investigations of Alleged Election Law Violations or Irregularities

Pursuant to the requirements of section 97.022(7), Fla. Stat., the report must include the total number of complaints received and independent investigations initiated and the number of complaints referred to another agency for further investigation or prosecution, including the total number of those matters sent to a special officer pursuant to section 102.091. The following tables summarizes these complaints:

| | |
|---|---|
| **Complaints Received** | **2040** |
| **Independent Investigations Initiated** | **986** |
| **Cases Referred to Another Agency** | **1514** |
| **Cases Referred to Special Agents** | **234** |

For each alleged violation or irregularity investigated, the report must include the following details for each individual case:

(a) Source of alleged violation of irregularity;

(b) The law allegedly violated or the nature of the irregularity reported;

(c) The county in which the alleged violation or irregularity occurred;

(d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and if so, to which agency; and

(e) The current status of the investigation or resulting criminal case.

The following three tables (which precede the chart with case details) contain reference codes and descriptions and county codes in support of the Detail Individual Case Report Chart.

## Case Status Code

| Status Code | Status Description |
|---|---|
| Arrested | Alleged election violator has been arrested. |
| Closed by OECS[2] | Complaint closed by OECS due to either a) facially insufficient; or b) OECS conducted preliminary investigation and determined insufficient evidence exists for referral to law enforcement. |
| Closed/Declined by FDLE/SAO/SWP | The case was referred by OECS to law enforcement; however, law enforcement declined to pursue for any number of reasons including, but not limited to: insufficient evidence; unable to locate target; statute of limitations issue; target deceased. |
| Pending | OECS conducted preliminary investigation and referred the case to law enforcement for criminal investigation/prosecution. The case is in the criminal investigative stage. |
| Preliminary | OECS is in the process of conducting a preliminary investigation and will soon make a decision on whether to close the case or make a criminal referral. |

## Agency Abbreviation Code Table

| Agency Code | Agency |
|---|---|
| AG | Office of the Attorney General |
| DOE | Division of Elections |
| DSS | Diplomatic Security Service |
| FDLE | Florida Department of Law Enforcement |
| FLHSMV | Florida Highway Safety and Motor Vehicles |
| LSO | Local Sheriff's Office |
| OECS | Office of Election Crimes and Security |
| SAO | State Attorney's Office |
| SOE | Supervisor of Elections |
| SWP | Office of the Statewide Prosecutor |

---

[2] A number of cases with status "Closed by OECS," were referred to the local SOE for administrative purposes even though the allegations in the complaint were insufficient to warrant criminal referral.  As a non-exhaustive example, see entry numbers: 2587, 2594, 2657, 2669, 2671, 2713, 2737, 2766, 2767, 2768, 2773-2783.  Additionally, SOEs would have been made aware for list maintenance review of any allegations of voting in multiple states.

## Election Code Table

| Election Code | Election |
|---|---|
| GE | General Election |
| PE | Primary Election |
| SP | Special Election |

## County Codes Table

| County Code | County |
|---|---|
| ALA | Alachua |
| BAK | Baker |
| BAY | Bay |
| BRA | Bradford |
| BRE | Brevard |
| BRO | Broward |
| CAL | Calhoun |
| CHA | Charlotte |
| CIT | Citrus |
| CLA | Clay |
| CLL | Collier |
| CLM | Columbia |
| DAD | Miami-Dade |
| DES | DeSoto |
| DIX | Dixie |
| DUV | Duval |
| ESC | Escambia |
| FLA | Flagler |
| FRA | Franklin |
| GAD | Gadsden |
| GIL | Gilchrist |
| GLA | Glades |
| GUL | Gulf |
| HAM | Hamilton |
| HAR | Hardee |
| HEN | Hendry |
| HER | Hernando |
| HIG | Highlands |
| HIL | Hillsborough |
| HOL | Holmes |

| County Code | County |
|---|---|
| IND | Indian River |
| JAC | Jackson |
| JEF | Jefferson |
| LAF | Lafayette |
| LAK | Lake |
| LEE | Lee |
| LEO | Leon |
| LEV | Levy |
| LIB | Liberty |
| MAD | Madison |
| MAN | Manatee |
| MRN | Marion |
| MRT | Martin |
| MON | Monroe |
| NAS | Nassau |
| OKA | Okaloosa |
| OKE | Okeechobee |
| ORA | Orange |
| OSC | Osceola |
| PAL | Palm Beach |
| PAS | Pasco |
| PIN | Pinellas |
| POL | Polk |
| PUT | Putnam |
| SAN | Santa Rosa |
| SAR | Sarasota |
| SEM | Seminole |
| STJ | St. Johns |
| STL | St. Lucie |
| SUM | Sumter |
| SUW | Suwannee |
| TAY | Taylor |
| UNI | Union |
| VOL | Volusia |
| WAK | Wakulla |
| WAL | Walton |
| WAS | Washington |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 2 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 3 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Arrested |
| 4 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 5 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Arrested |
| 6 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Arrested |
| 7 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 8 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 9 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 10 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by SWP |
| 11 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Arrested |
| 12 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 13 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 14 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 15 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 16 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 17 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 18 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 19 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 20 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 21 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 22 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 23 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 24 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 25 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 26 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 27 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 28 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Arrested |
| 29 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by SWP |
| 30 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 31 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 32 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Arrested |
| 33 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 34 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 35 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 36 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 37 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 38 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 39 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 40 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 41 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 42 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 43 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 44 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 45 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 46 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Arrested |
| 47 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 48 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 49 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 50 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by SWP |
| 51 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 52 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 53 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 54 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Arrested |
| 55 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 56 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 57 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Arrested |
| 58 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Arrested |
| 59 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 60 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 61 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Arrested |
| 62 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 63 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Arrested |
| 64 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 65 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Arrested |
| 66 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 67 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 68 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Arrested |
| 69 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by SWP |
| 70 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 71 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Arrested |
| 72 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Arrested |
| 73 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 74 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 75 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 76 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 77 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 78 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 79 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 80 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 81 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 82 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Arrested |
| 83 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 84 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 85 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 86 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 87 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 88 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 89 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 90 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 91 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 92 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 93 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Closed/Declined by FDLE |
| 94 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Arrested |
| 95 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Closed/Declined by FDLE |
| 96 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 97 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 98 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Arrested |
| 99 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 100 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 101 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Arrested |
| 102 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 103 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 104 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 105 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLA | No | | Closed by OECS |
| 106 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Closed/Declined by FDLE |
| 107 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 108 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Closed by OECS |
| 109 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Closed by OECS |
| 110 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 111 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 112 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 113 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Closed by OECS |
| 114 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Closed/Declined by FDLE |
| 115 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 116 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Closed/Declined by FDLE |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 117 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | Closed by OECS |
| 118 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | Closed by OECS |
| 119 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | Preliminary |
| 120 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | NAS | Yes | FDLE, SAO-04 | Pending |
| 121 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | NAS | Yes | FDLE, SAO-04 | Pending |
| 122 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | NAS | No | Closed by OECS |
| 123 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLA | Yes | FDLE, SAO-04 | Pending |
| 124 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLA | Yes | FDLE, SAO-04 | Pending |
| 125 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLA | Yes | FDLE, SAO-04 | Pending |
| 126 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLA | Yes | FDLE, SAO-04 | Closed/Declined by FDLE |
| 127 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Closed/Declined by FDLE |
| 128 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 129 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | NAS | Yes | FDLE, SAO-04 | Pending |
| 130 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | No | Preliminary |
| 131 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | No | Preliminary |
| 132 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | Yes | FDLE | Pending |
| 133 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | Yes | FDLE | Pending |
| 134 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | No | Preliminary |
| 135 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | Yes | FDLE | Pending |
| 136 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | Yes | FDLE | Pending |
| 137 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 138 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 139 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 140 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 141 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | No | Preliminary |
| 142 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | No | Closed by OECS |
| 143 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | No | Preliminary |
| 144 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SUM | No | Preliminary |
| 145 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SUM | No | Preliminary |
| 146 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SUM | Yes | FDLE | Pending |
| 147 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SUM | Yes | FDLE | Pending |
| 148 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Preliminary |
| 149 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 150 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Preliminary |
| 151 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 152 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 153 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 154 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 155 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Closed by OECS |
| 156 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 157 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Closed by OECS |
| 158 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 159 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 160 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 161 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 162 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 163 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 164 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | | Preliminary |
| 165 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 166 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | | Preliminary |
| 167 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 168 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 169 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 170 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 171 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 172 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 173 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 174 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 175 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 176 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 177 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 178 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 179 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 180 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 181 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 182 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 183 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 184 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 185 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 186 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 187 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 188 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 189 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 190 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 191 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 192 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 193 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 194 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 195 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 196 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 197 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 198 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 199 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 200 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 201 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 202 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 203 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 204 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 205 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 206 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 207 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 208 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 209 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 210 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 211 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 212 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 213 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 214 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 215 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 216 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 217 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 218 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 219 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 220 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 221 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 222 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 223 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 224 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 225 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 226 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 227 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLA | Yes | FDLE, SAO-04 | Pending |
| 228 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 229 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 230 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 231 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 232 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 233 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 234 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 235 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 236 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 237 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 238 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 239 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 240 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 241 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 242 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 243 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 244 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 245 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 246 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 247 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 248 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 249 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 250 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 251 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 252 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 253 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 254 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 255 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 256 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 257 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 258 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 259 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 260 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 261 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 262 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 263 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 264 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 265 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 266 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 267 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 268 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 269 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 270 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 271 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 272 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 273 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 274 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 275 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Preliminary |
| 276 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 277 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 278 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 279 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 280 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 281 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 282 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 283 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 284 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 285 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 286 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Preliminary |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 287 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | Preliminary |
| 288 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | Preliminary |
| 289 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 290 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE, SAO-02 | Pending |
| 291 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 292 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 293 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Closed/Declined by FDLE |
| 294 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Closed/Declined by FDLE |
| 295 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 296 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 297 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 298 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 299 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 300 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 301 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 302 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 303 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 304 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 305 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Closed/Declined by FDLE |
| 306 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Closed/Declined by FDLE |
| 307 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 308 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 309 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Closed/Declined by FDLE |
| 310 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 311 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE, SAO-02 | Pending |
| 312 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | NAS | Yes | FDLE, SAO-04 | Pending |
| 313 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | NAS | Yes | FDLE, SAO-04 | Pending |
| 314 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 315 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Preliminary |
| 316 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 317 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 318 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Closed by OECS |
| 319 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 320 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Closed by OECS |
| 321 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Closed by OECS |
| 322 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 323 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 324 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Closed by OECS |
| 325 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Preliminary |
| 326 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 327 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | Preliminary |
| 328 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 329 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | | Preliminary |
| 330 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 331 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 332 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | Yes | FDLE | Pending |
| 333 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | No | | Preliminary |
| 334 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | Yes | FDLE | Pending |
| 335 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | No | | Preliminary |
| 336 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | Yes | FDLE | Pending |
| 337 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | Yes | FDLE | Closed/Declined by FDLE |
| 338 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | No | | Closed by OECS |
| 339 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLA | No | | Preliminary |
| 340 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLA | No | | Preliminary |
| 341 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 342 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 343 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 344 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 345 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 346 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 347 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 348 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 349 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 350 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 351 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 352 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 353 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Closed by OECS |
| 354 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 355 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 356 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 357 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 358 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 359 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 360 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 361 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 362 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 363 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 364 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 365 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 366 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 367 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Closed/Declined by FDLE |
| 368 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 369 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 370 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 371 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 372 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 373 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 374 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Closed by OECS |
| 375 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 376 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 377 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Arrested |
| 378 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 379 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 380 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 381 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 382 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 383 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 384 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 385 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 386 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 387 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 388 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 389 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 390 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 391 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 392 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 393 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DUV | Yes | FDLE, SAO-04 | Pending |
| 394 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE | Pending |
| 395 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE | Pending |
| 396 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE | Pending |
| 397 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE | Pending |
| 398 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | No | | Preliminary |
| 399 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | No | | Preliminary |
| 400 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | | Preliminary |
| 401 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | Yes | FDLE | Pending |
| 402 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | | Preliminary |
| 403 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | | Preliminary |
| 404 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | | Preliminary |
| 405 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | | Closed by OECS |
| 406 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | Yes | FDLE | Pending |
| 407 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | | Preliminary |
| 408 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | | Closed by OECS |
| 409 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | | Preliminary |
| 410 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | Yes | FDLE | Pending |
| 411 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 412 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 413 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 414 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 415 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 416 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 417 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 418 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 419 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 420 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 421 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 422 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 423 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 424 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 425 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 426 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 427 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 428 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 429 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 430 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 431 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 432 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 433 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 434 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 435 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 436 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 437 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 438 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 439 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 440 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 441 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 442 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | Yes | FDLE | Pending |
| 443 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 444 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 445 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | Yes | FDLE | Pending |
| 446 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | No | | Preliminary |
| 447 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | No | | Closed by OECS |
| 448 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | Yes | FDLE | Pending |
| 449 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | No | | Closed by OECS |
| 450 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | No | | Closed by OECS |
| 451 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | No | | Preliminary |
| 452 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | Yes | FDLE | Pending |
| 453 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 454 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | No | | Preliminary |
| 455 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | No | | Preliminary |
| 456 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 457 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 458 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 459 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 460 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 461 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | No | | Preliminary |
| 462 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | No | | Preliminary |
| 463 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 464 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 465 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | No | | Preliminary |
| 466 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 467 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 468 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 469 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 470 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 471 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 472 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 473 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 474 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 475 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 476 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 477 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 478 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 479 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 480 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 481 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 482 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 483 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 484 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 485 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 486 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 487 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 488 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 489 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 490 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 491 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 492 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 493 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 494 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 495 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 496 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 497 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 498 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 499 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 500 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 501 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 502 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 503 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 504 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 505 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 506 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 507 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 508 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Preliminary |
| 509 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 510 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 511 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Preliminary |
| 512 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 513 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Preliminary |
| 514 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 515 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Preliminary |
| 516 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Preliminary |
| 517 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 518 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 519 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 520 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 521 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 522 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 523 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 524 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 525 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Closed by OECS |
| 526 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 527 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 528 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | Yes | FDLE | Pending |
| 529 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 530 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 531 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 532 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 533 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 534 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 535 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 536 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 537 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 538 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 539 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 540 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 541 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 542 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 543 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 544 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 545 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 546 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 547 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 548 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 549 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 550 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 551 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 552 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 553 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 554 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 555 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 556 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 557 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 558 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 559 | 2020 GE | GC+Civilian Referral | 104.18—Casting more than one ballot at any election. | STJ | Yes | FDLE | Closed/Declined by SAO |
| 560 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 561 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 562 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE | Pending |
| 563 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 564 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 565 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 566 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 567 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 568 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 569 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 570 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 571 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 572 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ALA | Yes | FDLE | Pending |
| 573 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ALA | No | | Closed by OECS |
| 574 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAK | Yes | FDLE | Pending |
| 575 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAK | Yes | FDLE | Pending |
| 576 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAK | Yes | FDLE | Pending |
| 577 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | No | | Preliminary |
| 578 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAK | Yes | FDLE | Pending |
| 579 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Pending |
| 580 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Pending |
| 581 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Pending |
| 582 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Pending |
| 583 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Pending |
| 584 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Pending |
| 585 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Pending |
| 586 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Pending |
| 587 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRA | Yes | FDLE | Pending |
| 588 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRA | Yes | FDLE | Pending |
| 589 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRA | Yes | FDLE | Pending |
| 590 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 591 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 592 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 593 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 594 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 595 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 596 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 597 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 598 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 599 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 600 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | No | | Closed by OECS |
| 601 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 602 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 603 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 604 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 605 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 606 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 607 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 608 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | No | | Closed by OECS |
| 609 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 610 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | No | | Closed by OECS |
| 611 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 612 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 613 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | No | | Closed by OECS |
| 614 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 615 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 616 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CHA | Yes | FDLE | Pending |
| 617 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CHA | Yes | FDLE | Pending |
| 618 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CHA | Yes | FDLE | Pending |
| 619 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CHA | Yes | FDLE | Pending |
| 620 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CHA | Yes | FDLE | Pending |
| 621 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CHA | No | | Preliminary |
| 622 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 623 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 624 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLL | Yes | FDLE | Pending |
| 625 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLL | No | | Closed by OECS |
| 626 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLL | Yes | FDLE | Pending |
| 627 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLM | Yes | FDLE | Pending |
| 628 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | CLM | Yes | FDLE | Pending |
| 629 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DES | Yes | FDLE | Pending |
| 630 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DES | Yes | FDLE | Pending |
| 631 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DIX | Yes | FDLE | Pending |
| 632 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DIX | Yes | FDLE | Pending |
| 633 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DIX | No | | Preliminary |
| 634 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | DIX | Yes | FDLE | Pending |
| 635 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 636 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 637 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Closed by OECS |
| 638 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Closed by OECS |
| 639 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 640 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 641 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Closed by OECS |
| 642 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 643 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 644 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Arrested |
| 645 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 646 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 647 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Closed by OECS |
| 648 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 649 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 650 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Preliminary |
| 651 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 652 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 653 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 654 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 655 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | Yes | FDLE | Pending |
| 656 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Closed by OECS |
| 657 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | FLA | Yes | FDLE | Pending |
| 658 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | FRA | Yes | FDLE | Pending |
| 659 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | FRA | Yes | FDLE | Pending |
| 660 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GIL | Yes | FDLE | Pending |
| 661 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GLA | Yes | FDLE | Pending |
| 662 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | GUL | Yes | FDLE | Pending |
| 663 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 664 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PIN | No | | Preliminary |
| 665 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 666 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 667 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 668 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HEN | Yes | FDLE | Pending |
| 669 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIG | Yes | FDLE | Pending |
| 670 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIG | Yes | FDLE | Pending |
| 671 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HIG | Yes | FDLE | Pending |
| 672 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HOL | Yes | FDLE | Pending |
| 673 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | IND | Yes | FDLE | Pending |
| 674 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | IND | Yes | FDLE | Pending |
| 675 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | IND | No | | Closed by OECS |
| 676 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | JAC | Yes | FDLE | Pending |
| 677 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | JAC | Yes | FDLE | Pending |
| 678 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | JAC | Yes | FDLE | Pending |
| 679 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | JAC | Yes | FDLE | Pending |
| 680 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | JAC | Yes | FDLE | Pending |
| 681 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Closed/Declined by FDLE |
| 682 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 683 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 684 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 685 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 686 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 687 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 688 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | No | | Closed by OECS |
| 689 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 690 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 691 | 2022 PE | OECS | 104.15—Unqualified electors willfully voting. | LEE | No | | Preliminary |
| 692 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 693 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 694 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 695 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 696 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 697 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 698 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 699 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 700 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 701 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 702 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 703 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 704 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | No | | Preliminary |
| 705 | 2020 GE | SOE+OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 706 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 707 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | No | | Preliminary |
| 708 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 709 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | No | | Closed by OECS |
| 710 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | No | | Closed by OECS |
| 711 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | No | | Closed by OECS |
| 712 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 713 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 714 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 715 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 716 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEV | Yes | FDLE | Pending |
| 717 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEV | Yes | FDLE | Pending |
| 718 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEV | Yes | FDLE | Pending |
| 719 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEV | Yes | FDLE | Pending |
| 720 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEV | Yes | FDLE | Pending |
| 721 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LEV | Yes | FDLE | Pending |
| 722 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | LIB | Yes | FDLE | Pending |
| 723 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAD | Yes | FDLE | Pending |
| 724 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAD | Yes | FDLE | Pending |
| 725 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAD | No | | Closed by OECS |
| 726 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAD | Yes | FDLE | Pending |
| 727 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAN | Yes | FDLE | Pending |
| 728 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAN | No | | Closed by OECS |
| 729 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAN | Yes | FDLE | Pending |
| 730 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAN | Yes | FDLE | Pending |
| 731 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAN | Yes | FDLE | Pending |
| 732 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAN | No | | Closed by OECS |
| 733 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MAN | Yes | FDLE | Pending |
| 734 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MON | Yes | FDLE | Pending |
| 735 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MON | Yes | FDLE | Pending |
| 736 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MON | Yes | FDLE | Pending |
| 737 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRT | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 738 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 739 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 740 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 741 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 742 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 743 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 744 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | No | | Closed by OECS |
| 745 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 746 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 747 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | Yes | FDLE | Pending |
| 748 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | Yes | FDLE | Pending |
| 749 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | Yes | FDLE | Pending |
| 750 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | Yes | FDLE | Pending |
| 751 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | Yes | FDLE | Pending |
| 752 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | No | | Closed by OECS |
| 753 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | Yes | FDLE | Pending |
| 754 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | Yes | FDLE | Pending |
| 755 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | No | | Closed by OECS |
| 756 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | No | | Closed by OECS |
| 757 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | Yes | FDLE | Pending |
| 758 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | No | | Closed by OECS |
| 759 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | Yes | FDLE | Pending |
| 760 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | Yes | FDLE | Pending |
| 761 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | No | | Closed by OECS |
| 762 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | No | | Preliminary |
| 763 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | Yes | FDLE | Pending |
| 764 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | No | | Closed by OECS |
| 765 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | No | | Closed by OECS |
| 766 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | Yes | FDLE | Pending |
| 767 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 768 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 769 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 770 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 771 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 772 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 773 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 774 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 775 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 776 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | No | | Preliminary |
| 777 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 778 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | STL | No | | Closed by OECS |
| 779 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 780 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 781 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 782 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 783 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 784 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PUT | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 785 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PUT | Yes | FDLE | Pending |
| 786 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PUT | Yes | FDLE | Pending |
| 787 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | PUT | Yes | FDLE | Pending |
| 788 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAN | Yes | FDLE | Pending |
| 789 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAN | No | | Closed by OECS |
| 790 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAN | Yes | FDLE | Pending |
| 791 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAN | Yes | FDLE | Pending |
| 792 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAN | Yes | FDLE | Pending |
| 793 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAN | Yes | FDLE | Pending |
| 794 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAN | Yes | FDLE | Closed/Declined by FDLE |
| 795 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAN | Yes | FDLE | Pending |
| 796 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 797 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 798 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 799 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 800 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | No | | Closed by OECS |
| 801 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 802 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 803 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 804 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 805 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 806 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SAR | Yes | FDLE | Pending |
| 807 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SEM | Yes | FDLE | Pending |
| 808 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SEM | Yes | FDLE | Pending |
| 809 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SEM | Yes | FDLE | Pending |
| 810 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SEM | Yes | FDLE | Pending |
| 811 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SEM | Yes | FDLE | Pending |
| 812 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | SEM | No | | Closed by OECS |
| 813 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SEM | No | | Closed by OECS |
| 814 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | SEM | Yes | FDLE | Pending |
| 815 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | SEM | Yes | FDLE | Pending |
| 816 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | SEM | Yes | FDLE | Pending |
| 817 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STJ | Yes | FDLE | Pending |
| 818 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STJ | Yes | FDLE | Pending |
| 819 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STJ | Yes | FDLE | Pending |
| 820 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STJ | Yes | FDLE | Pending |
| 821 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 822 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 823 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 824 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 825 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 826 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 827 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 828 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 829 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SUW | Yes | FDLE | Pending |
| 830 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | SUW | Yes | FDLE | Pending |
| 831 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | TAY | Yes | FDLE | Pending |
| 832 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 833 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 834 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 835 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | No | | Preliminary |
| 836 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 837 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 838 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 839 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 840 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 841 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 842 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | No | | Closed by OECS |
| 843 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 844 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 845 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 846 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 847 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 848 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 849 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | WAK | Yes | FDLE | Pending |
| 850 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | WAK | Yes | FDLE | Pending |
| 851 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | WAK | Yes | FDLE | Pending |
| 852 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | WAK | Yes | FDLE | Pending |
| 853 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | WAS | Yes | FDLE | Pending |
| 854 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | WAS | No | | Closed by OECS |
| 855 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 856 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 857 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 858 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ALA | No | | Closed by OECS |
| 859 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | FDLE | Closed/Declined by FDLE |
| 860 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | FDLE | Pending |
| 861 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PUT | Yes | FDLE | Pending |
| 862 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | FDLE | Pending |
| 863 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | Yes | FDLE | Closed/Declined by SAO |
| 864 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | FDLE | Pending |
| 865 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | Yes | FDLE | Closed/Declined by FDLE |
| 866 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | FDLE | Pending |
| 867 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | Yes | FDLE | Pending |
| 868 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | FDLE | Pending |
| 869 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 870 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 871 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 872 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 873 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | Yes | FDLE | Closed/Declined by SAO |
| 874 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CLA | Yes | FDLE | Closed/Declined by FDLE |
| 875 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | FDLE | Arrested |
| 876 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 877 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 878 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | Yes | FDLE | Pending |
| 879 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | FDLE | Pending |
| 880 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | Yes | FDLE | Pending |
| 881 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | Yes | FDLE | Pending |
| 882 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 883 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | FDLE | Pending |
| 884 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | Yes | FDLE | Pending |
| 885 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | FDLE | Pending |
| 886 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | FDLE | Pending |
| 887 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | Yes | FDLE | Closed/Declined by FDLE |
| 888 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | Yes | FDLE | Closed/Declined by FDLE |
| 889 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 890 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 891 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 892 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | Yes | FDLE | Pending |
| 893 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 894 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STL | Yes | FDLE | Pending |
| 895 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 896 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PUT | Yes | FDLE | Pending |
| 897 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | FDLE | Closed/Declined by FDLE |
| 898 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | Yes | FDLE | Pending |
| 899 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | Yes | FDLE | Pending |
| 900 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | FDLE | Closed/Declined by FDLE |
| 901 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 902 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 903 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | FDLE | Pending |
| 904 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 905 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 906 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 907 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | Yes | FDLE | Pending |
| 908 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 909 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ESC | Yes | AG | Pending |
| 910 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 911 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 912 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | FDLE | Pending |
| 913 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | Yes | FDLE | Pending |
| 914 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 915 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 916 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ALA | Yes | AG | Pending |
| 917 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 918 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 919 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEV | Yes | AG | Pending |
| 920 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BAY | Yes | FDLE | Pending |
| 921 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | GUL | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 922 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 923 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | FDLE | Pending |
| 924 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 925 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | FDLE | Pending |
| 926 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 927 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | FDLE | Pending |
| 928 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 929 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 930 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLA | Yes | AG | Pending |
| 931 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEV | Yes | AG | Pending |
| 932 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 933 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FLA | Yes | AG | Pending |
| 934 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 935 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 936 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | Yes | FDLE | Pending |
| 937 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | Yes | FDLE | Pending |
| 938 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | FDLE | Pending |
| 939 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | Yes | FDLE | Pending |
| 940 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PUT | Yes | FDLE | Pending |
| 941 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | Yes | FDLE | Pending |
| 942 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BAY | Yes | FDLE | Arrested |
| 943 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 944 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 945 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | Yes | FDLE | Pending |
| 946 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 947 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | No | | Preliminary |
| 948 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Closed by OECS |
| 949 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 950 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | | Preliminary |
| 951 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | No | | Closed by OECS |
| 952 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | No | | Closed by OECS |
| 953 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PAS | Yes | FDLE | Pending |
| 954 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | Yes | FDLE | Pending |
| 955 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 956 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 957 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | OSC | Yes | FDLE | Pending |
| 958 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRA | Yes | FDLE | Pending |
| 959 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | STJ | Yes | FDLE | Pending |
| 960 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | Yes | FDLE | Pending |
| 961 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 962 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | CAL | Yes | FDLE | Pending |
| 963 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | | Closed by OECS |
| 964 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | LAK | Yes | FDLE | Pending |
| 965 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 966 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 967 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 968 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Preliminary |
| 969 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | No | | Closed by OECS |
| 970 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE | Pending |
| 971 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Closed by OECS |
| 972 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Pending |
| 973 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 974 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | DAD | No | | Preliminary |
| 975 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | CHA | No | | Closed by OECS |
| 976 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | No | | Closed by OECS |
| 977 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | No | | Closed by OECS |
| 978 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | | Closed by OECS |
| 979 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | No | | Closed by OECS |
| 980 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | FRA | Yes | FDLE | Pending |
| 981 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 982 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | MRN | No | | Closed by OECS |
| 983 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 984 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | No | | Preliminary |
| 985 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 986 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 987 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 988 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 989 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 990 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | VOL | Yes | FDLE | Pending |
| 991 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 992 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | MAN | Yes | FDLE | Pending |
| 993 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | OKA | No | | Preliminary |
| 994 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | POL | Yes | FDLE | Pending |
| 995 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 996 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 997 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | MON | Yes | FDLE | Pending |
| 998 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | STL | Yes | FDLE | Pending |
| 999 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | CIT | Yes | FDLE | Pending |
| 1000 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ORA | No | | Preliminary |
| 1001 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | FLA | No | | Closed by OECS |
| 1002 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | ESC | No | | Closed by OECS |
| 1003 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | LEO | No | | Closed by OECS |
| 1004 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | No | | Closed by OECS |
| 1005 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | LEE | No | | Closed by OECS |
| 1006 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PIN | No | | Closed by OECS |
| 1007 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |
| 1008 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 1009 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | PAL | No | Closed by OECS |
| 1010 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | Closed by OECS |
| 1011 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | BRE | No | Preliminary |
| 1012 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | HER | No | Closed by OECS |
| 1013 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | JEF | No | Closed by OECS |
| 1014 | 2022 GE | OECS | 104.15—Unqualified electors willfully voting. | HIL | No | Closed by OECS |
| 1015 | 2020 GE | OECS | 104.15—Unqualified electors willfully voting. | HOL | No | Closed by OECS |
| 1016 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1017 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1018 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SEM | Yes | FDLE | Pending |
| 1019 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | Yes | FDLE | Pending |
| 1020 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | Yes | FDLE | Pending |
| 1021 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | FDLE | Pending |
| 1022 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | FDLE | Pending |
| 1023 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | Yes | FDLE | Pending |
| 1024 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | FDLE | Pending |
| 1025 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | FDLE | Pending |
| 1026 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | FDLE | Pending |
| 1027 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | Yes | FDLE | Pending |
| 1028 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | FDLE | Pending |
| 1029 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | Yes | FDLE | Pending |
| 1030 | 2022 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1031 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | FDLE | Pending |
| 1032 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1033 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1034 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1035 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1036 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1037 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1038 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1039 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1040 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1041 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ESC | Yes | AG | Pending |
| 1042 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | GAD | Yes | AG | Pending |
| 1043 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CIT | Yes | AG | Pending |
| 1044 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 1045 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | Yes | AG | Pending |
| 1046 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1047 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1048 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1049 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | Yes | AG | Pending |
| 1050 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 1051 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1052 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1053 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1054 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1055 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1056 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1057 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | Yes | AG | Pending |
| 1058 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |

|  | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 1059 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1060 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1061 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1062 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1063 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1064 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1065 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1066 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1067 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | Yes | AG | Pending |
| 1068 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1069 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1070 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1071 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1072 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No |  | Closed by OECS |
| 1073 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1074 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1075 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | FDLE | Pending |
| 1076 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1077 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1078 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1079 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1080 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1081 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1082 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | Yes | FDLE | Pending |
| 1083 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1084 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1085 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STL | Yes | FDLE | Pending |
| 1086 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1087 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1088 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1089 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1090 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CHA | Yes | AG | Pending |
| 1091 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | Yes | AG | Pending |
| 1092 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | Yes | AG | Pending |
| 1093 | 2022 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No |  | Closed by OECS |
| 1094 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1095 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIG | Yes | AG | Pending |
| 1096 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1097 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | Yes | AG | Pending |
| 1098 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No |  | Closed by OECS |
| 1099 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SEM | Yes | AG | Pending |
| 1100 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1101 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | Yes | AG | Pending |
| 1102 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | Yes | FDLE | Pending |
| 1103 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 1104 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1105 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | Yes | FDLE | Pending |
| 1106 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 1107 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 1108 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 1109 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 1110 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 1111 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 1112 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1113 | 2020 GE | SOE | 104.15—Unqualified electors willfully voting. | LEO | No | | Closed by OECS |
| 1114 | 2020 GE | DSS | 104.24—Penalty for assuming name. | OSC | Yes | FDLE | Pending |
| 1115 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1116 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1117 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1118 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1119 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1120 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1121 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1122 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | Yes | AG | Pending |
| 1123 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1124 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 1125 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 1126 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1127 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | TAY | Yes | AG | Pending |
| 1128 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | Yes | AG | Pending |
| 1129 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1130 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1131 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1132 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1133 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1134 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1135 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1136 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAR | Yes | AG | Pending |
| 1137 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1138 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1139 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1140 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1141 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1142 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1143 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1144 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | Yes | AG | Pending |
| 1145 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | JEF | Yes | AG | Pending |
| 1146 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1147 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1148 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1149 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1150 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1151 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CHA | Yes | AG | Pending |
| 1152 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STL | Yes | AG | Pending |
| 1153 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | OSC | Yes | AG | Pending |
| 1154 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | Yes | AG | Pending |
| 1155 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1156 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1157 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SEM | Yes | AG | Pending |
| 1158 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | MRT | Yes | AG | Pending |
| 1159 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1160 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STL | Yes | AG | Pending |
| 1161 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | OSC | Yes | AG | Pending |
| 1162 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 1163 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | OSC | Yes | AG | Pending |
| 1164 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1165 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1166 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1167 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 1168 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1169 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1170 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1171 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | Yes | AG | Pending |
| 1172 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1173 | 2020 GE | Other State+OECS | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1174 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 1175 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1176 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1177 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ALA | Yes | AG | Pending |
| 1178 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1179 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CIT | Yes | AG | Pending |
| 1180 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1181 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1182 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1183 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1184 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1185 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1186 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1187 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1188 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1189 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1190 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1191 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1192 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HER | Yes | AG | Pending |
| 1193 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1194 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1195 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1196 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1197 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1198 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1199 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1200 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MON | Yes | AG | Pending |
| 1201 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | Yes | AG | Pending |
| 1202 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1203 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1204 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1205 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | Yes | AG | Pending |
| 1206 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1207 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1208 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1209 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1210 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1211 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1212 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1213 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DIX | Yes | AG | Pending |
| 1214 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1215 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1216 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | Yes | AG | Pending |
| 1217 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1218 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1219 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MON | Yes | AG | Pending |
| 1220 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STL | Yes | AG | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1221 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1222 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MON | Yes | AG | Pending |
| 1223 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SEM | Yes | AG | Pending |
| 1224 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1225 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1226 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1227 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | MRT | Yes | AG | Pending |
| 1228 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HEN | Yes | AG | Closed/Declined by AG/SWP |
| 1229 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1230 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Closed/Declined by AG/SWP |
| 1231 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Closed/Declined by AG/SWP |
| 1232 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Closed/Declined by AG/SWP |
| 1233 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | Yes | AG | Closed/Declined by AG/SWP |
| 1234 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1235 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Closed/Declined by AG/SWP |
| 1236 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1237 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Closed/Declined by AG/SWP |
| 1238 | 2020 GE | Civilian Referrals (2) | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1239 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Closed/Declined by AG/SWP |
| 1240 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1241 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1242 | 2020 GE | Civilian Referrals (2) | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Closed/Declined by AG/SWP |
| 1243 | 2020 GE | Civilian Referrals (2) | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1244 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CHA | Yes | AG | Closed/Declined by AG/SWP |
| 1245 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1246 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HER | Yes | AG | Closed/Declined by AG/SWP |
| 1247 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | Yes | AG | Closed/Declined by AG/SWP |
| 1248 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SEM | Yes | AG | Pending |
| 1249 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Closed/Declined by AG/SWP |
| 1250 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Closed/Declined by AG/SWP |
| 1251 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Closed/Declined by AG/SWP |
| 1252 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STJ | Yes | AG | Closed/Declined by AG/SWP |
| 1253 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 1254 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | Yes | AG | Pending |
| 1255 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1256 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STJ | Yes | AG | Pending |
| 1257 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1258 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1259 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1260 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1261 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1262 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1263 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1264 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1265 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1266 | 2020 GE | SOE+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1267 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1268 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1269 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | Yes | AG | Pending |
| 1270 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1271 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1272 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1273 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 1274 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1275 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1276 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1277 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1278 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | STJ | Yes | AG | Pending |
| 1279 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | GIL | Yes | AG | Pending |
| 1280 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1281 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1282 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1283 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1284 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1285 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1286 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | Yes | AG | Pending |
| 1287 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1288 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1289 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1290 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1291 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1292 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1293 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1294 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1295 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1296 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1297 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1298 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1299 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1300 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | NAS | Yes | AG | Pending |
| 1301 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | Yes | AG | Pending |
| 1302 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | IND | Yes | AG | Pending |
| 1303 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1304 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1305 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1306 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1307 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1308 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1309 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1310 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | FLA | Yes | AG | Pending |
| 1311 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1312 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STL | Yes | AG | Pending |
| 1313 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1314 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | Yes | AG | Pending |
| 1315 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1316 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1317 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1318 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 1319 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1320 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1321 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1322 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1323 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1324 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1325 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1326 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1327 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1328 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1329 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1330 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | CHA | Yes | AG | Pending |
| 1331 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | CHA | Yes | AG | Pending |
| 1332 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1333 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1334 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1335 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SEM | Yes | AG | Pending |
| 1336 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1337 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1338 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1339 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1340 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1341 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MAN | Yes | AG | Pending |
| 1342 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1343 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | Yes | AG | Pending |
| 1344 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1345 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1346 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1347 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1348 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1349 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1350 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1351 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1352 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1353 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1354 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1355 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1356 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1357 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 1358 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1359 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1360 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1361 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1362 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | Yes | AG | Pending |
| 1363 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1364 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1365 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1366 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1367 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SEM | Yes | AG | Pending |
| 1368 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | Yes | AG | Pending |
| 1369 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | Yes | AG | Pending |
| 1370 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | Yes | AG | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1371 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 1372 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1373 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1374 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | Yes | AG | Pending |
| 1375 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 1376 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | JEF | Yes | AG | Pending |
| 1377 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 1378 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |
| 1379 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BAY | Yes | AG | Pending |
| 1380 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1381 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1382 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 1383 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STJ | Yes | AG | Pending |
| 1384 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | Yes | AG | Pending |
| 1385 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 1386 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | Yes | AG | Pending |
| 1387 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1388 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | GIL | Yes | AG | Pending |
| 1389 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 1390 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | Yes | AG | Pending |
| 1391 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 1392 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | Yes | AG | Pending |
| 1393 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 1394 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | Yes | AG | Pending |
| 1395 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1396 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 1397 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 1398 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1399 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1400 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1401 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1402 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1403 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 1404 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 1405 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1406 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1407 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRT | No | | Closed by OECS |
| 1408 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 1409 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1410 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1411 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1412 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 1413 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1414 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1415 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1416 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1417 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1418 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1419 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1420 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1421 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 1422 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1423 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 1424 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1425 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1426 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1427 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 1428 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1429 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1430 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1431 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1432 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | TAY | No | | Closed by OECS |
| 1433 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 1434 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1435 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1436 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1437 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 1438 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1439 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1440 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1441 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1442 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1443 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1444 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1445 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1446 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1447 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1448 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1449 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1450 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1451 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1452 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1453 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1454 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1455 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1456 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | | Closed by OECS |
| 1457 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1458 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1459 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 1460 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1461 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1462 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1463 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1464 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HEN | No | | Closed by OECS |
| 1465 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1466 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ALA | No | | Closed by OECS |
| 1467 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FRA | No | | Closed by OECS |
| 1468 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1469 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 1470 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLA | No | | Closed by OECS |
| 1471 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1472 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1473 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1474 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1475 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 1476 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1477 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1478 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1479 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1480 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 1481 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1482 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1483 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1484 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1485 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1486 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1487 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1488 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 1489 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1490 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1491 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | Closed by OECS |
| 1492 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1493 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | Closed by OECS |
| 1494 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1495 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | Closed by OECS |
| 1496 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | Closed by OECS |
| 1497 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | Closed by OECS |
| 1498 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1499 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1500 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1501 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | GIL | No | Closed by OECS |
| 1502 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEV | No | Closed by OECS |
| 1503 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | Closed by OECS |
| 1504 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1505 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | Closed by OECS |
| 1506 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1507 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1508 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | Closed by OECS |
| 1509 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | Closed by OECS |
| 1510 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1511 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1512 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | Closed by OECS |
| 1513 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1514 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | Closed by OECS |
| 1515 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | Closed by OECS |
| 1516 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1517 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1518 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1519 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1520 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1521 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | Closed by OECS |
| 1522 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | Closed by OECS |
| 1523 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | Closed by OECS |
| 1524 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1525 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1526 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1527 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1528 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CIT | No | | Closed by OECS |
| 1529 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1530 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1531 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 1532 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1533 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1534 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1535 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1536 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1537 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1538 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1539 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1540 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1541 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1542 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1543 | 2020 GE | Other State+Civilian Referrals (2) | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1544 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1545 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1546 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1547 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1548 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 1549 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1550 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1551 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1552 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1553 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CIT | No | | Closed by OECS |
| 1554 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1555 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 1556 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CIT | No | | Closed by OECS |
| 1557 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 1558 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1559 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1560 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1561 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1562 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1563 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 1564 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Preliminary |
| 1565 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Preliminary |
| 1566 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1567 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 1568 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1569 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1570 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1571 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1572 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1573 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1574 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 1575 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 1576 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1577 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1578 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1579 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | | Closed by OECS |
| 1580 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1581 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1582 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1583 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1584 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | | Closed by OECS |
| 1585 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1586 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1587 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIG | No | | Closed by OECS |
| 1588 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 1589 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1590 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1591 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1592 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 1593 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 1594 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1595 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1596 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1597 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | No | | Closed by OECS |
| 1598 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1599 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1600 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 1601 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1602 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1603 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 1604 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 1605 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1606 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1607 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | FRA | No | | Closed by OECS |
| 1608 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 1609 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1610 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1611 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1612 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 1613 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 1614 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 1615 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1616 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 1617 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | No | | Closed by OECS |
| 1618 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 1619 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 1620 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1621 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1622 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | No | | Closed by OECS |
| 1623 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 1624 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 1625 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FRA | No | | Closed by OECS |
| 1626 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1627 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 1628 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1629 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1630 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1631 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1632 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 1633 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | Closed by OECS |
| 1634 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1635 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | Closed by OECS |
| 1636 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1637 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1638 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | Closed by OECS |
| 1639 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1640 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1641 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | Closed by OECS |
| 1642 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1643 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1644 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1645 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | Closed by OECS |
| 1646 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1647 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1648 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1649 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1650 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | GIL | No | Closed by OECS |
| 1651 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | Closed by OECS |
| 1652 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1653 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | Closed by OECS |
| 1654 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | Closed by OECS |
| 1655 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRA | No | Closed by OECS |
| 1656 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | Closed by OECS |
| 1657 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | No | Closed by OECS |
| 1658 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | Closed by OECS |
| 1659 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1660 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1661 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1662 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | No | Closed by OECS |
| 1663 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1664 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HER | No | Closed by OECS |
| 1665 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1666 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1667 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIG | No | Closed by OECS |
| 1668 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1669 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1670 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 1671 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 1672 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1673 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1674 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1675 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1676 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1677 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1678 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 1679 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1680 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1681 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1682 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1683 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1684 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1685 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1686 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1687 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1688 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1689 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLA | No | | Closed by OECS |
| 1690 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1691 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1692 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | Yes | FDLE | Closed/Declined by FDLE |
| 1693 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 1694 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1695 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1696 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1697 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1698 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1699 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1700 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1701 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1702 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 1703 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1704 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1705 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | Closed by OECS |
| 1706 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | Closed by OECS |
| 1707 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | Closed by OECS |
| 1708 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1709 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1710 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | Closed by OECS |
| 1711 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1712 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1713 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | Closed by OECS |
| 1714 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | Closed by OECS |
| 1715 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1716 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1717 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | Closed by OECS |
| 1718 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1719 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | Closed by OECS |
| 1720 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | Closed by OECS |
| 1721 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | Closed by OECS |
| 1722 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | Closed by OECS |
| 1723 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1724 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FLA | No | Closed by OECS |
| 1725 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1726 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1727 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1728 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1729 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STL | No | Closed by OECS |
| 1730 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1731 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | Closed by OECS |
| 1732 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1733 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | Closed by OECS |
| 1734 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MRT | No | Closed by OECS |
| 1735 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | No | Closed by OECS |
| 1736 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1737 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | STJ | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1738 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 1739 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 1740 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 1741 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 1742 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | UNI | No | | Closed by OECS |
| 1743 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 1744 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1745 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1746 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1747 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1748 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1749 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1750 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1751 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1752 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 1753 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1754 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 1755 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1756 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STL | No | | Closed by OECS |
| 1757 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FRA | No | | Closed by OECS |
| 1758 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1759 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ALA | No | | Closed by OECS |
| 1760 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1761 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1762 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1763 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | FRA | No | | Closed by OECS |
| 1764 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 1765 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 1766 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 1767 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1768 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1769 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1770 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1771 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1772 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 1773 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1774 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1775 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 1776 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1777 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1778 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 1779 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CIT | No | | Closed by OECS |
| 1780 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLA | No | | Closed by OECS |
| 1781 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1782 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HER | No | | Closed by OECS |
| 1783 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | GUL | No | | Closed by OECS |
| 1784 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1785 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 1786 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1787 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 1788 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 1789 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1790 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1791 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1792 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1793 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1794 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1795 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1796 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 1797 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1798 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1799 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1800 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1801 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 1802 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 1803 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1804 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1805 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HER | No | | Closed by OECS |
| 1806 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 1807 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1808 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 1809 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 1810 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1811 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1812 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1813 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | Closed by OECS |
| 1814 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FLA | No | Closed by OECS |
| 1815 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1816 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | Closed by OECS |
| 1817 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1818 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1819 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HER | No | Closed by OECS |
| 1820 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | Closed by OECS |
| 1821 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1822 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1823 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1824 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1825 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1826 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1827 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1828 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1829 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1830 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1831 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | Closed by OECS |
| 1832 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | Closed by OECS |
| 1833 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | Closed by OECS |
| 1834 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | Closed by OECS |
| 1835 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 1836 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | Closed by OECS |
| 1837 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | Closed by OECS |
| 1838 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 1839 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | Closed by OECS |
| 1840 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | Closed by OECS |
| 1841 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1842 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1843 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | Closed by OECS |
| 1844 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1845 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 1846 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | Closed by OECS |
| 1847 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | Closed by OECS |
| 1848 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | Closed by OECS |
| 1849 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1850 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | Closed by OECS |
| 1851 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRT | No | Closed by OECS |
| 1852 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRT | No | Closed by OECS |
| 1853 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | Closed by OECS |
| 1854 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STL | No | Closed by OECS |
| 1855 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | Closed by OECS |
| 1856 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRT | No | Closed by OECS |
| 1857 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | Closed by OECS |
| 1858 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1859 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | Closed by OECS |
| 1860 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 1861 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | Closed by OECS |
| 1862 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1863 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1864 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1865 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 1866 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | Closed by OECS |
| 1867 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STL | No | Closed by OECS |
| 1868 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | Closed by OECS |
| 1869 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1870 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | Closed by OECS |
| 1871 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1872 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | Closed by OECS |
| 1873 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | Closed by OECS |
| 1874 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 1875 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | Closed by OECS |
| 1876 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | Closed by OECS |
| 1877 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1878 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1879 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 1880 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 1881 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1882 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 1883 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1884 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1885 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1886 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1887 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 1888 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1889 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1890 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1891 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1892 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 1893 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1894 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1895 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1896 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1897 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1898 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1899 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1900 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1901 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1902 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1903 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 1904 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 1905 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1906 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 1907 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1908 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 1909 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 1910 | 2020 GE | Other State+Civilian Referrals (2) | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 1911 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1912 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1913 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1914 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1915 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1916 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1917 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HER | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1918 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 1919 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1920 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 1921 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1922 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1923 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1924 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 1925 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1926 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1927 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1928 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1929 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STL | No | | Closed by OECS |
| 1930 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1931 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Preliminary |
| 1932 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Preliminary |
| 1933 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1934 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Preliminary |
| 1935 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1936 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1937 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1938 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 1939 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | JAC | No | | Preliminary |
| 1940 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1941 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Preliminary |
| 1942 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1943 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1944 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Preliminary |
| 1945 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1946 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Preliminary |
| 1947 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1948 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1949 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Preliminary |
| 1950 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1951 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HER | No | | Closed by OECS |
| 1952 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1953 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1954 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1955 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CIT | No | | Closed by OECS |
| 1956 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1957 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1958 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 1959 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1960 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 1961 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1962 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1963 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1964 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1965 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | No | | Closed by OECS |
| 1966 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1967 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1968 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 1969 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 1970 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 1971 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1972 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1973 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 1974 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1975 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1976 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 1977 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 1978 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 1979 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 1980 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1981 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | No | | Closed by OECS |
| 1982 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1983 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 1984 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 1985 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | WAL | No | | Closed by OECS |
| 1986 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Preliminary |
| 1987 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1988 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 1989 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 1990 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 1991 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 1992 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | STJ | Yes | FDLE | Closed/Declined by SAO |
| 1993 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIG | No | | Closed by OECS |
| 1994 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 1995 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 1996 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIG | No | | Closed by OECS |
| 1997 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1998 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 1999 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2000 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2001 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 2002 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2003 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 2004 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2005 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2006 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 2007 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2008 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2009 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2010 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 2011 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PUT | No | | Closed by OECS |
| 2012 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2013 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 2014 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2015 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2016 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2017 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2018 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2019 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2020 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2021 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2022 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2023 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2024 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2025 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 2026 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PUT | No | | Closed by OECS |
| 2027 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 2028 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2029 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2030 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 2031 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | | Closed by OECS |
| 2032 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2033 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2034 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | No | | Closed by OECS |
| 2035 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2036 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2037 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2038 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2039 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2040 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2041 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2042 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2043 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2044 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2045 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2046 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2047 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2048 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2049 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2050 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CIT | No | | Closed by OECS |
| 2051 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2052 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2053 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 2054 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2055 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2056 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 2057 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2058 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 2059 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 2060 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 2061 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | Closed by OECS |
| 2062 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MRT | No | Closed by OECS |
| 2063 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 2064 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | Closed by OECS |
| 2065 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CLA | No | Closed by OECS |
| 2066 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | Closed by OECS |
| 2067 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 2068 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 2069 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 2070 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 2071 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 2072 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | Closed by OECS |
| 2073 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 2074 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLA | No | Closed by OECS |
| 2075 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STL | No | Closed by OECS |
| 2076 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 2077 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 2078 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 2079 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 2080 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 2081 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FLA | No | Closed by OECS |
| 2082 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | Closed by OECS |
| 2083 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 2084 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 2085 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 2086 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 2087 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | Closed by OECS |
| 2088 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 2089 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 2090 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | Closed by OECS |
| 2091 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | Closed by OECS |
| 2092 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 2093 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 2094 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2095 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2096 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2097 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2098 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2099 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2100 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 2101 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 2102 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2103 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2104 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2105 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 2106 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2107 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2108 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 2109 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIG | No | | Closed by OECS |
| 2110 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2111 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 2112 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2113 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2114 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2115 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2116 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2117 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 2118 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2119 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2120 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2121 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2122 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 2123 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2124 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2125 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2126 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2127 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2128 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2129 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | | Closed by OECS |
| 2130 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2131 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2132 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2133 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2134 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2135 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2136 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 2137 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2138 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2139 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2140 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2141 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 2142 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 2143 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2144 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2145 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OSC | No | | Closed by OECS |
| 2146 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2147 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 2148 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2149 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 2150 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | TAY | No | | Closed by OECS |
| 2151 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2152 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2153 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 2154 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2155 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | No | | Closed by OECS |
| 2156 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | WAK | No | | Closed by OECS |
| 2157 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FLA | No | | Closed by OECS |
| 2158 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2159 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 2160 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2161 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2162 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2163 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2164 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2165 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2166 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2167 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2168 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2169 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 2170 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2171 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2172 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2173 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2174 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2175 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2176 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2177 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2178 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2179 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2180 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2181 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2182 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CIT | No | | Closed by OECS |
| 2183 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2184 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2185 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2186 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2187 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2188 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2189 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HER | No | | Closed by OECS |
| 2190 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2191 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 2192 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 2193 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2194 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2195 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2196 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2197 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEO | No | | Closed by OECS |
| 2198 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 2199 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2200 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2201 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2202 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 2203 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 2204 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | Closed by OECS |
| 2205 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 2206 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 2207 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 2208 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | Closed by OECS |
| 2209 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | Closed by OECS |
| 2210 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |
| 2211 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 2212 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | No | Closed by OECS |
| 2213 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 2214 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 2215 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FLA | No | Closed by OECS |
| 2216 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 2217 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 2218 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | Closed by OECS |
| 2219 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 2220 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | Closed by OECS |
| 2221 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 2222 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | Closed by OECS |
| 2223 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 2224 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | Closed by OECS |
| 2225 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | Closed by OECS |
| 2226 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | IND | No | Closed by OECS |
| 2227 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | Closed by OECS |
| 2228 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BAY | No | Closed by OECS |
| 2229 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | No | Closed by OECS |
| 2230 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 2231 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | No | Closed by OECS |
| 2232 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 2233 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | Closed by OECS |
| 2234 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CIT | No | Closed by OECS |
| 2235 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | Closed by OECS |
| 2236 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | Closed by OECS |
| 2237 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIG | No | Closed by OECS |
| 2238 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2239 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2240 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2241 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SUW | No | | Closed by OECS |
| 2242 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 2243 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 2244 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2245 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2246 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2247 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2248 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2249 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 2250 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 2251 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 2252 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2253 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2254 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2255 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PUT | No | | Closed by OECS |
| 2256 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 2257 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | MRT | No | | Closed by OECS |
| 2258 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2259 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2260 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2261 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2262 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 2263 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2264 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2265 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2266 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2267 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2268 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2269 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 2270 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2271 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2272 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2273 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2274 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | WAK | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2275 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2276 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 2277 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HER | No | | Closed by OECS |
| 2278 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 2279 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2280 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2281 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2282 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLA | No | | Closed by OECS |
| 2283 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 2284 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FLA | No | | Closed by OECS |
| 2285 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2286 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2287 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2288 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2289 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | FLA | No | | Closed by OECS |
| 2290 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2291 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2292 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2293 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CLL | No | | Closed by OECS |
| 2294 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2295 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 2296 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 2297 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 2298 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2299 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2300 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2301 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2302 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2303 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2304 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2305 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2306 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2307 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2308 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 2309 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2310 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2311 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2312 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | GLA | No | | Closed by OECS |
| 2313 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MAN | No | | Closed by OECS |
| 2314 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 2315 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2316 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2317 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2318 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2319 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2320 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2321 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2322 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2323 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2324 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2325 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 2326 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 2327 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | NAS | No | | Closed by OECS |
| 2328 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2329 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 2330 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | FLA | No | | Closed by OECS |
| 2331 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 2332 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2333 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2334 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 2335 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2336 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2337 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2338 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2339 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2340 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2341 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BAY | No | | Closed by OECS |
| 2342 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 2343 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | OKA | No | | Closed by OECS |
| 2344 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 2345 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 2346 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2347 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2348 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 2349 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 2350 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 2351 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2352 | 2020 GE | Other State+Civilian Referral | 104.18—Casting more than one ballot at any election. | ESC | No | | Closed by OECS |
| 2353 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 2354 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | POL | No | | Closed by OECS |
| 2355 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2356 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DAD | No | | Closed by OECS |
| 2357 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2358 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRO | No | | Closed by OECS |
| 2359 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PIN | No | | Closed by OECS |
| 2360 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ORA | No | | Closed by OECS |
| 2361 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | STJ | No | | Closed by OECS |
| 2362 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAS | No | | Closed by OECS |
| 2363 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2364 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | PAL | No | | Closed by OECS |
| 2365 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | CHA | No | | Closed by OECS |
| 2366 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | BRE | No | | Closed by OECS |
| 2367 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | SEM | No | | Closed by OECS |
| 2368 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | DUV | No | | Closed by OECS |
| 2369 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MON | No | | Closed by OECS |
| 2370 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | IND | No | | Closed by OECS |
| 2371 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2372 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2373 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | MRN | No | | Closed by OECS |
| 2374 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | LEE | No | | Closed by OECS |
| 2375 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2376 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | ALA | No | | Closed by OECS |
| 2377 | 2020 GE | Other State | 104.18—Casting more than one ballot at any election. | VOL | No | | Closed by OECS |
| 2378 | 2020 GE | DSS | 104.15—Unqualified electors willfully voting. | LEE | Yes | FDLE | Pending |
| 2379 | 2020 GE | DSS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | No | | Closed by OECS |
| 2380 | 2020 GE | DSS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAS | No | | Closed by OECS |
| 2381 | 2022 SP | FLHSMV | 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Arrested |
| 2382 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | ALA | No | | Preliminary |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2383 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | SEM | No | | Pending |
| 2384 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | SEM | No | | Closed by OECS |
| 2385 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 2386 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 2387 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 2388 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 2389 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 2390 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 2391 | 2020 GE | Civilian Referral | 104.15—Unqualified electors willfully voting. | DUV | No | | Preliminary |
| 2392 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ALA | Yes | AG | Pending |
| 2393 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ALA | Yes | AG | Pending |
| 2394 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | Yes | AG | Pending |
| 2395 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | MRN | Yes | AG | Pending |
| 2396 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | Yes | AG | Pending |
| 2397 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 2398 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BAY | Yes | AG | Pending |
| 2399 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BAY | Yes | AG | Pending |
| 2400 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2401 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2402 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2403 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2404 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2405 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2406 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | SEM | Yes | AG | Pending |
| 2407 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2408 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ALA | Yes | AG | Pending |
| 2409 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BAY | Yes | AG | Pending |
| 2410 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2411 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | AG | Pending |
| 2412 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | LAK | Yes | AG | Pending |
| 2413 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2414 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2415 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2416 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2417 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | AG | Pending |
| 2418 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | LEO | Yes | AG | Pending |
| 2419 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | AG | Pending |
| 2420 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2421 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | AG | Pending |
| 2422 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2423 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | AG | Pending |
| 2424 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2425 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2426 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2427 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2428 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | MON | Yes | AG | Pending |
| 2429 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | NAS | Yes | AG | Pending |
| 2430 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | AG | Pending |
| 2431 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | AG | Pending |
| 2432 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | AG | Pending |
| 2433 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRE | Yes | AG | Pending |
| 2434 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2435 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2436 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | AG | Pending |
| 2437 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | AG | Pending |
| 2438 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HER | Yes | AG | Pending |
| 2439 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | AG | Pending |
| 2440 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | AG | Pending |
| 2441 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | AG | Pending |
| 2442 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | AG | Pending |
| 2443 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | AG | Pending |
| 2444 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | SAR | Yes | AG | Pending |
| 2445 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | POL | Yes | AG | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2446 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ALA | Yes | AG | Pending |
| 2447 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2448 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2449 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2450 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | AG | Pending |
| 2451 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | MRN | Yes | AG | Pending |
| 2452 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | AG | Pending |
| 2453 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | CLL | Yes | AG | Pending |
| 2454 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | AG | Pending |
| 2455 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2456 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2457 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2458 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2459 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | AG | Pending |
| 2460 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | IND | Yes | AG | Pending |
| 2461 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | LEO | Yes | AG | Pending |
| 2462 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | AG | Pending |
| 2463 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | AG | Pending |
| 2464 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | AG | Pending |
| 2465 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | AG | Pending |
| 2466 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | AG | Pending |
| 2467 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | AG | Pending |
| 2468 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | POL | Yes | AG | Pending |
| 2469 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | VOL | Yes | AG | Pending |
| 2470 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 2471 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 2472 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STL | Yes | AG | Pending |
| 2473 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | Yes | AG | Pending |
| 2474 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 2475 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 2476 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 2477 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 2478 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 2479 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | LEO | Yes | AG | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 2480 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 2481 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | IND | Yes | AG | Pending |
| 2482 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 2483 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 2484 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 2485 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 2486 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DAD | Yes | AG | Pending |
| 2487 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | ALA | Yes | AG | Pending |
| 2488 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 2489 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Closed by OECS |
| 2490 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | AG | Pending |
| 2491 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | Yes | AG | Pending |
| 2492 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | AG | Pending |
| 2493 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | AG | Pending |
| 2494 | 2020 GE | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRE | Yes | AG | Pending |
| 2495 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAS | Yes | AG | Pending |
| 2496 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | VOL | Yes | AG | Pending |
| 2497 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRO | Yes | AG | Pending |
| 2498 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 2499 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 2500 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 2501 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 2502 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | OKA | Yes | FDLE | Closed/Declined by FDLE |
| 2503 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 2504 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2505 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | STL | Yes | FDLE | Closed/Declined by FDLE |
| 2506 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAS | Yes | FDLE | Closed/Declined by FDLE |
| 2507 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | OKA | Yes | FDLE | Closed/Declined by FDLE |
| 2508 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | FDLE | Closed/Declined by FDLE |
| 2509 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | FDLE | Pending |
| 2510 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2511 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | MAN | Yes | FDLE | Closed/Declined by FDLE |
| 2512 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2513 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2514 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2515 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2516 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 2517 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | POL | Yes | FDLE | Closed/Declined by FDLE |
| 2518 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | FDLE | Pending |
| 2519 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 2520 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | FDLE | Pending |
| 2521 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | SEM | Yes | FDLE | Closed/Declined by FDLE |
| 2522 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 2523 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Pending |
| 2524 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | STJ | Yes | FDLE | Pending |
| 2525 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2526 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | IND | Yes | FDLE | Closed/Declined by FDLE |
| 2527 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2528 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | POL | Yes | FDLE | Closed/Declined by FDLE |
| 2529 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | LEE | Yes | FDLE | Pending |
| 2530 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DUV | Yes | FDLE | Closed/Declined by FDLE |
| 2531 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | SEM | Yes | FDLE | Closed/Declined by FDLE |
| 2532 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | CLM | Yes | FDLE | Closed/Declined by FDLE |
| 2533 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | FDLE | Closed/Declined by FDLE |
| 2534 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | ORA | Yes | FDLE | Closed/Declined by FDLE |
| 2535 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2536 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | VOL | Yes | FDLE | Pending |
| 2537 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2538 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | STJ | Yes | FDLE | Pending |
| 2539 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 2540 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | FDLE | Closed/Declined by FDLE |
| 2541 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | FDLE | Pending |
| 2542 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | FDLE | Closed/Declined by FDLE |
| 2543 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | FDLE | Pending |
| 2544 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | FLA | Yes | FDLE | Closed/Declined by FDLE |
| 2545 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DUV | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2546 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 2547 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Pending |
| 2548 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PIN | Yes | FDLE | Closed/Declined by FDLE |
| 2549 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DUV | Yes | FDLE | Pending |
| 2550 | 2022 GE | GC+Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | FDLE | Closed/Declined by SAO |
| 2551 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | Yes | FDLE | Pending |
| 2552 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | PIN | Yes | FDLE | Closed/Declined by FDLE |
| 2553 | 2020 GE | OECS | 104.20—Ballot not to be seen, and other offenses. | POL | Yes | FDLE | Pending |
| 2554 | 2020 GE | OECS | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | FDLE | Pending |
| 2555 | 2020 GE | OECS | 104.0616(2)—Vote-by-mail ballots and voting; violations. | HIL | Yes | FDLE | Pending |
| 2556 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | SAR & CLL | Yes | FDLE | Closed/Declined by FDLE |
| 2557 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | CLL | Yes | FDLE | Pending |
| 2558 | 2020 GE | OECS | 104.0616(2)—Vote-by-mail ballots and voting; violations. | BRO | Yes | FDLE | Pending |
| 2559 | 2020 GE | OECS | 104.18—Casting more than one ballot at any election. | SAN | No | | Closed by OECS |
| 2560 | 2022 PE | Civilian Referral | Alleges multiple open WiFi connections existed in proximity to the voting hardware at the SOE office. | TAY | Yes | FDLE | Pending |
| 2561 | 2022 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | PAL | Yes | AG | Pending |
| 2562 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | Yes | AG | Pending |
| 2563 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SAR | Yes | AG | Pending |
| 2564 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | DUV | Yes | AG | Pending |
| 2565 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | STJ | Yes | AG | Pending |
| 2566 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | BRE | Yes | AG | Pending |
| 2567 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | SUM | Yes | AG | Pending |
| 2568 | 2020 GE | Civilian Referral | 104.18—Casting more than one ballot at any election. | IND | Yes | AG | Pending |
| 2569 | 2022 | Civilian Referral | 97.041(1)(a)(4)—Qualifications to register to vote. 104.011—False swearing; submission of false voter registration information; prosecution prohibited. Alleges candidate is not qualified to hold office because candidate is not a qualified elector. | DAD | Yes | SAO-11 | Pending |
| 2570 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | PAL | Yes | FDLE | Pending |
| 2571 | 2021 | Civilian Referral | Allegations against a Political Action Committee for failing to present a petition to the Board of County Commissioners within the applicable time frames. | WAS | No | | Closed by OECS |
| 2572 | 2021 | Civilian Referral | Allegations against a Political Action Committee for failing to present a petition to the Board of County Commissioners within the applicable time frames. | WAS | No | | Closed by OECS |
| 2573 | 2021 | Civilian Referral | Allegations against Board of County Commissioners pertaining to ballot question. | WAS | No | | Closed by OECS |
| 2574 | 2021 | Civilian Referral | Allegations against a Political Action Committee for failing to present a petition to the Board of County Commissioners within the applicable time frames. | WAS | No | | Closed by OECS |
| 2575 | 2021 | SOE | Petition Initiative Fraud—104.011—False swearing; submission of false voter registration information; prosecution prohibited. 837.012 (1)—Perjury when not in an official proceeding. | STJ | Yes | FDLE | Pending |
| 2576 | 2021 | SOE | Petition Initiative Fraud—104.011—False swearing; submission of false voter registration information; prosecution prohibited. 837.012 (1)—Perjury when not in an official proceeding. | STJ | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2577 | 2022 | Civilian Referral | 104.041—Fraud in connection with casting vote. 104.15—Unqualified electors willfully voting. | BRO | Yes | FDLE | Pending |
| 2578 | 2021 | Civilian Referral | Ineligible residency; 97.041(1)(a)(4)—Qualifications to register to vote. 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.041—Fraud in connection with casting vote. 104.16—Voting fraudulent ballot—Any elector who knowingly votes or attempts to vote a fraudulent ballot, or any person who knowingly solicits, or attempts, to vote a fraudulent ballot. | JEF | Yes | FDLE | Pending |
| 2579 | 2022 | Civilian Referral | Alleges Political Action Committee failed to submit financial reports in a timely manner. | WAS | No | | Closed by OECS |
| 2580 | 2022 | Civilian Referral | Voter alleges she couldn't vote because of her party affiliation. | BRO | No | | Closed by OECS |
| 2581 | 2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | OKE | Yes | FDLE | Closed/Declined by FDLE |
| 2582 | 2021 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | OKE | Yes | FDLE | Pending |
| 2583 | 2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | OKE | Yes | FDLE | Pending |
| 2584 | 2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | OKE | Yes | FDLE | Pending |
| 2585 | 2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | OKE | Yes | FDLE | Pending |
| 2586 | 2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | OKE | Yes | FDLE | Pending |
| 2587 | 2020 | Civilian Referral | Alleges poll workers were not properly trained. | BRO | No | | Closed by OECS |
| 2588 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.041—Fraud in connection with casting vote. 104.15—Unqualified electors willfully voting. | LEO | Yes | FDLE | Pending |
| 2589 | 2021 | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—initiative petitions; violations. | WAL | Yes | FDLE | Pending |
| 2590 | 2022 | Civilian Referral | Alleges individual fraudulently used complainant's address for voter registration. | ORA | Yes | FDLE | Pending |
| 2591 | 2021 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | LIB | Yes | FDLE | Pending |
| 2592 | 2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | HOL | Yes | FDLE | Pending |
| 2593 | 2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | HOL | Yes | FDLE | Pending |
| 2594 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.041—Fraud in connection with casting vote. | DAD | No | | Closed by OECS |
| 2595 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.041—Fraud in connection with casting vote. | DAD | No | | Closed by OECS |
| 2596 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.041—Fraud in connection with casting vote. | DAD | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 2597 | 2020 | Civilian Referral | Allegations against Board of County commissioners pertaining access to voters, fabricating false accusations, and coercing candidate. | CHA | No | Closed by OECS |
| 2598 | 2022 | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—initiative petitions; violations. | OKE | Yes | FDLE | Pending |
| 2599 | 2021 | Civilian Referral | Allegations against PAC unlawfully financing and endorsing federal congressional candidates without proper registration. | DAD | Yes | FDLE | Pending |
| 2600 | 2021 | Civilian Referral | Alleges violation of resign-to-run law. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2601 | 2019 | Civilian Referral | Alleges fraudulent voter registration by 3PVRO. | BRE | Yes | FDLE | Pending |
| 2602 | 2021 | Civilian Referral | 99.021—Form of candidate oath. | PAL | Yes | FDLE | Pending |
| 2603 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.041—Fraud in connection with casting vote. | GAD | Yes | FDLE | Pending |
| 2604 | 2022 | Civilian Referral | Alleges member of recall committee is misleading electors. | GAD | Yes | FDLE | Pending |
| 2605 | 2022 | Civilian Referral | Alleges member of recall committee is assisting another in "voter fraud effort." | GAD | Yes | FDLE | Pending |
| 2606 | 2022 | Civilian Referral | Alleges member of recall committee is misleading electors. | GAD | Yes | FDLE | Pending |
| 2607 | 2022 | Civilian Referral | Alleges member of recall committee is misleading electors. | GAD | Yes | FDLE | Pending |
| 2608 | 2022 | Civilian Referral | Alleges member of recall committee is misleading electors. | GAD | No | | Closed by OECS |
| 2609 | 2022 GE | SOE | Fraudulent petitions - 6 circulators; 7 petitions all for same deceased voter. | WAL | Yes | FDLE | Pending |
| 2610 | 2020 GE | SOE | 10 instances of: 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified Electors willfully voting. | LEO | Yes | FDLE | Pending |
| 2611 | 2022 | Civilian Referral | Allegations pertaining to improperly administering HOA voting. | IND | No | | Closed by OECS |
| 2612 | 2022 | Civilian Referral | Allegations pertaining to property management improperly administering HOA voting. | FLA | No | | Closed by OECS |
| 2613 | 2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | ORA | Yes | FDLE | Pending |
| 2614 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 2615 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | ORA | Yes | FDLE | Pending |
| 2616 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | ORA | No | | Preliminary |
| 2617 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | ORA | Yes | FDLE | Pending |
| 2618 | 2019 | Civilian Referral | Allegations made against a retail company. | MRN | No | | Closed by OECS |
| 2619 | 2022 | Civilian Referral | SOE office received Voter Registration Application for deceased voter. | POL | Yes | FDLE | Pending |
| 2620 | 2022 | Civilian Referral | Ineligible residency; 97.041(1)(a)(4)—Qualifications to register to vote. 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.041—Fraud in connection with casting vote. 104.16—Voting fraudulent ballot—Any elector who knowingly votes or attempts to vote a fraudulent ballot, or any person who knowingly solicits, or attempts, to vote a fraudulent ballot. | SAR | Yes | SAO-12 & LSO | Closed/Declined by SAO |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2621 | 2022 | Civilian Referral | Ineligible residency; 97.041(1)(a)(4)—Qualifications to register to vote. 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.16—Fraud in connection with casting vote. 104.16—Voting fraudulent ballot—Any elector who knowingly votes or attempts to vote a fraudulent ballot, or any person who knowingly solicits, or attempts, to vote a fraudulent ballot. | POL | No | | Closed by OECS |
| 2622 | 2020 | Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | No | | Closed by OECS |
| 2623 | 2020 | Civilian Referral | Alleges individual registered and cast absentee ballots for individuals in her group home. 104.041—Fraud in connection with casting vote. 104.16—Voting fraudulent ballot—Any elector who knowingly votes or attempts to vote a fraudulent ballot, or any person who knowingly solicits, or attempts, to vote a fraudulent ballot. | MAN | Yes | FDLE | Pending |
| 2624 | 2020 | Civilian Referral | Alleges individual is voting by mail on behalf of family members. 104.041—Fraud in connection with casting vote. 104.16—Voting fraudulent ballot—Any elector who knowingly votes or attempts to vote a fraudulent ballot, or any person who knowingly solicits, or attempts, to vote a fraudulent ballot. | OSC | Yes | FDLE | Pending |
| 2625 | 2020 | Civilian Referral | 104.041—Fraud in connection with casting vote. 104.16—Voting fraudulent ballot—Any elector who knowingly votes or attempts to vote a fraudulent ballot, or any person who knowingly solicits, or attempts, to vote a fraudulent ballot. | GAD | Yes | FDLE | Closed/Declined by FDLE |
| 2626 | 2022 | Civilian Referral | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | MRN | Yes | FDLE | Pending |
| 2627 | 2022 | Civilian Referral | Alleges council member discarded spoiled ballots in trash and stole a tally sheet. | HOL | No | | Closed by OECS |
| 2628 | 2022 GE | SOE | 104.041—Fraud in connection with casting vote. | LEO | Yes | SAO-02 | Pending |
| 2629 | 2022 | Civilian Referral | Complainant received voter registration card from SOE but claims that she never registered to vote. | DAD | No | | Closed by OECS |
| 2630 | 2020 | Civilian Referral | 97.041(1)(a)(4)—Qualifications to register to vote. 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | FDLE | Closed/Declined by FDLE |
| 2631 | 2020 | Civilian Referral | Ineligible residency; 97.041(1)(a)(4)—Qualifications to register to vote. 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | No | | Closed by OECS |
| 2632 | 2022 | Civilian Referral | Ineligible residency; 97.041(1)(a)(4)—Qualifications to register to vote. 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | LEO | Yes | FDLE | Pending |
| 2633 | 2022 | Civilian Referral | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | GAD | Yes | FDLE | Pending |
| 2634 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE | Pending |
| 2635 | 2022 | Civilian Referral | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | GAD | Yes | FDLE | Pending |
| 2636 | 2022 | Civilian Referral | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | GAD | Yes | FDLE | Pending |
| 2637 | 2022 | Civilian Referral | Complainant received duplicate voter registrations with different registration numbers. | HEN | No | | Closed by OECS |
| 2638 | 2020 | Civilian Referral | Alleges Commissioner filled out a constituent's ballot. | DAD | No | | Closed by OECS |
| 2639 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | SUM | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2640 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | SUM | Yes | FDLE | Pending |
| 2641 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | SUM | Yes | FDLE | Pending |
| 2642 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | SUM | Yes | FDLE | Pending |
| 2643 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | SUM | No | | Closed by OECS |
| 2644 | 2020 GE | SOE | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | SUM | Yes | FDLE | Pending |
| 2645 | 2022 | Civilian Referral | Irregularities involving mismatched serial numbers on ballot boxes. | PAL | No | | Closed by OECS |
| 2646 | 2022 | Civilian Referral | 104.091—Aiding, abetting, advising, or conspiring in violation of the code. | GAD | Yes | FDLE | Pending |
| 2647 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | STL | Yes | SAO-19 | Closed/Declined by SAO |
| 2648 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | GAD | Yes | FDLE | Closed/Declined by FDLE |
| 2649 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited—Ineligible residency. | SEM | Yes | LSO | Closed/Declined by LSO |
| 2650 | 2022 | Civilian Referral | 99.012—Restrictions on individuals qualifying for public office. | ALA | Yes | SAO-08 & LSO | Pending |
| 2651 | 2022 | Civilian Referral | Alleges deceased voters were not removed from voter rolls in a timely manner. | ALA | No | | Closed by OECS |
| 2652 | 2022 | Civilian Referral | 99.012—Restrictions on individuals qualifying for public office. | BRO | Yes | FDLE | Closed/Declined by FDLE |
| 2653 | 2022 | Civilian Referral | Alleged Violation of Florida Amendment 9. | BRO | No | | Closed by OECS |
| 2654 | 2022 | Civilian Referral | Allegations against voter under same name without consent. | BRO | Yes | FDLE | Pending |
| 2655 | 2020 | Civilian Referral | Alleges another person signed their name. | HER | Yes | FDLE | Pending |
| 2656 | 2020 | Civilian Referral | City Commissioner allegedly helped an elector complete a ballot. | DAD | Yes | FDLE | Pending |
| 2657 | 2022 | Civilian Referral | 97.041(1)(a)(4)—Qualifications to register to vote; alleged voter is registered in two states. | DAD | No | | Closed by OECS |
| 2658 | 2022 | Civilian Referral | Fraudulent voter registration of deceased person using wrong address. | BRO | No | | Closed by OECS |
| 2659 | 2022 | Civilian Referral | Using grant money to fund campaign. | ORA | No | | Closed by OECS |
| 2660 | 2021 | Civilian Referral | 99.012—Restrictions on individuals qualifying for public office. | ORA | Yes | LSO | Closed by LSO |
| 2661 | 2022 | Civilian Referral | Received voter registration card from SOE but claims that she never registered to vote. | SEM | Yes | FDLE | Closed/Declined by FDLE |
| 2662 | 2022 | Civilian Referral | Received different applications from 3PVROs with wrong information. | OSC | No | | Closed by OECS |
| 2663 | 2020 | Civilian Referral | Alleged voter has someone voting with their address in another state. | HIL | Yes | FDLE | Pending |
| 2664 | 2022 | Civilian Referral | Alleges SOE changed their name without their permission. | SAN | No | | Closed by OECS |
| 2665 | 2022 | Civilian Referral | 104.0616—Vote-by-mail ballots and voting violations. | DUV | No | | Closed by OECS |
| 2666 | 2022 | Civilian Referral | 582.19—Failed to file affirmation documents. | BRO | Yes | SAO-17 | Pending |
| 2667 | 2022 | Civilian Referral | Complainant alleges absentee ballots are being sent without having been requested from the voters. | HIL | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 2668 | 2020 | Civilian Referral | City Commissioner allegedly helped an elector complete a ballot. | DAD | Yes | FDLE | Pending |
| 2669 | 2022 | Civilian Referral | Complainant has been receiving voting documents from an unknown person since 2021. | STL | No | | Closed by OECS |
| 2670 | 2020 GE | SOE | 104.18—Casting more than one ballot at any election. | LEO | Yes | FDLE | Pending |
| 2671 | 2022 | Civilian Referral | Voter received undelivered/returned ballot from USPS. | DUV | No | | Closed by OECS |
| 2672 | 2022 | Civilian Referral | Alleges DoE accepted late qualifying fee with paperwork 67 days prior to election date. | SUW | Yes | FDLE | Closed/Declined by FDLE |
| 2673 | 2022 | Civilian Referral | Alleges SOE permitted 2 candidates running for county commission to pay fees after deadline. | SUW | Yes | FDLE | Closed/Declined by FDLE |
| 2674 | 2022 | Civilian Referral | Alleges a candidate is misrepresenting his educational background. | BRO | Yes | FDLE & SAO-17 | Pending |
| 2675 | 2022 | Civilian Referral | 106.143—Candidate has signage that doesn't follow FL Statute Chapter 106 campaign Financing. | BRE | No | | Closed by OECS |
| 2676 | 2022 | Civilian Referral | 104.012—Consideration for registration; interference with registration; soliciting registrations for compensation; alteration of registration application. 104.061—Corruptly influencing voting. 104.091—Aiding, abetting, advising, or conspiring in violation of the code (3PVRO). | PAL | Yes | FDLE & SAO-15 | Pending |
| 2677 | 2022 | Civilian Referral | 104.012—Consideration for registration; interference with registration; soliciting registrations for compensation; alteration of registration application. 104.061—Corruptly influencing voting. 104.091—Aiding, abetting, advising, or conspiring in violation of the code (3PVRO). | ORA | Yes | FDLE & SAO-09 | Pending |
| 2678 | 2022 | Civilian Referral | 104.012—Consideration for registration; interference with registration; soliciting registrations for compensation; alteration of registration application. 104.061—Corruptly influencing voting. 104.091—Aiding, abetting, advising, or conspiring in violation of the code (3PVRO). | ORA | Yes | FDLE & SAO-09 | Pending |
| 2679 | 2020 | Civilian Referral | Complainant received an unsolicited mail-in-ballot. | PAS | No | | Closed by OECS |
| 2680 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | SAR | No | | Closed by OECS |
| 2681 | 2022 | Civilian Referral | Complainant was told to write cancel and then not write cancel on mail in ballots. | ORA | No | | Closed by OECS |
| 2682 | 2022 | Civilian Referral | Alleges campaign workers were helping voters vote by grabbing ballots out of hands. | BRO | No | | Closed by OECS |
| 2683 | 2022 | GC+Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | BRO | Yes | FDLE | Closed/Declined by SAO |
| 2684 | 2022 | Civilian Referral | Voter registration sent to wrong address. | DUV | Yes | FDLE | Closed/Declined by FDLE |
| 2685 | 2022 | Civilian Referral | 7 ballots dropped off by one person at polling place. | PIN | Yes | FDLE | Closed/Declined by FDLE |
| 2686 | 2022 | Civilian Referral | 7 ballots dropped off by one person at polling place. | PIN | Yes | FDLE | Closed/Declined by FDLE |
| 2687 | 2022 | Civilian Referral | Poll worker allegedly created a duplicate ballot for the purpose of "ballot stuffing." | HIL | No | | Closed by OECS |
| 2688 | 2022 | Civilian Referral | Complainant writes about ballot processing and lack of integrity | VOL | Yes | FDLE | Pending |
| 2689 | 2020 | Civilian Referral | 104.18—Casting more than one ballot at any election. | LAK | Yes | FDLE | Pending |
| 2690 | 2022 | Civilian Referral | Alleges that a convicted felon helped City Council seats for 7+ years, has not asked for her to disqualify. | LEE | Yes | FDLE & LSO | Closed/Declined by FDLE |
| 2691 | 2022 | Civilian Referral | Alleges SOE approved the disqualified candidate to run for city office. | LEE | Yes | FDLE | Pending |
| 2692 | 2022 | Civilian Referral | Alleges SOE approved the disqualified candidate to run for city office. | LEE | Yes | FDLE | Pending |
| 2693 | 2022 | Civilian Referral | Unauthorized solicitation inside voting center, unlawful advertisement. | SEM | No | | Closed by OECS |
| 2694 | 2022 | Civilian Referral | Complainant writes about manipulation and fraud. | SEM | No | | Closed by OECS |
| 2695 | 2022 | Civilian Referral | Complainant writes about voter registration fraud. | BRO | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2696 | 2022 | Civilian Referral | Complainant writes about campaign financials being fraudulent. | PAL | No | | Closed by OECS |
| 2697 | 2022 | Civilian Referral | Complainant is concerned about receiving an extra ballot so easily after name change. | IND | No | | Closed by OECS |
| 2698 | 2022 | Civilian Referral | Voter ballot mailed was not marked cancel on the actual ballot, just the envelope. | BRE | No | | Closed by OECS |
| 2699 | 2022 | Civilian Referral | Someone requested an absentee ballot and changed the middle initial of the voter. | POL | No | | Closed by OECS |
| 2700 | 2022 | Civilian Referral | Alleges a mailing service is not delivering ballots. | PAL | No | | Closed by OECS |
| 2701 | 2022 | Civilian Referral | Alleges local library wouldn't let them turn in their ballot on due date. | DAD | No | | Closed by OECS |
| 2702 | 2022 | Civilian Referral | Complainant is receiving someone else's voter cards and alleges SOE is not performing list maintenance. | BRO | No | | Closed by OECS |
| 2703 | 2016 | Civilian Referral | 104.15—Unqualified electors willfully voting. | POL | No | | Closed by OECS |
| 2704 | 2022 | Civilian Referral | Ballot harvesting and voter intimidation. | LEE | Yes | LSO | Pending |
| 2705 | 2022 | Civilian Referral | Alleges mail going back and forth between permanent address and temporary address; SOE didn't count vote. | PIN | No | | Closed by OECS |
| 2706 | 2022 | Civilian Referral | Complainant is concerned about an arbitrary number on top of ballot. | ALA | No | | Closed by OECS |
| 2707 | 2022 | Civilian Referral | Alleges 2 candidates stole an election. | SUM | No | | Closed by OECS |
| 2708 | 2022 | Civilian Referral | 99.061—Method of qualifying for nomination or election to federal, state, county, or district office. | ORA | No | | Closed by OECS |
| 2709 | 2022 | Civilian Referral | Alleges votes were manipulated. | ORA | No | | Closed by OECS |
| 2710 | 2022 | Civilian Referral | Form 6, liabilities- sworn saying "none." | CLL | Yes | LSO | Pending |
| 2711 | 2022 | Civilian Referral | Potential fraudulent irregular activities. | PAL | No | | Closed by OECS |
| 2712 | 2022 | Civilian Referral | Alleges a candidate used an external email list for her personal campaign. | ORA | Yes | FDLE | Pending |
| 2713 | 2022 | Civilian Referral | Complainant keeps receiving Florida voter cards but lives in another state. | PIN | No | | Closed by OECS |
| 2714 | 2022 | Civilian Referral | Alleges their party affiliation changed without their consent. | LEO | No | | Closed by OECS |
| 2715 | 2022 | Civilian Referral | Concerns regarding two write in candidates. | PAS | Yes | FDLE | Pending |
| 2716 | 2022 | Civilian Referral | Received an unsolicited voter card in mail for a different county they have never lived in. | PIN | No | | Closed by OECS |
| 2717 | 2022 | SOE | 104.012—Consideration for registration; interference with registration; soliciting registrations for compensation; alteration of registration application. 104.061—Corruptly influencing voting. 104.091—Aiding, abetting, advising, or conspiring in violation of the code (3PVRO). | BRO | Yes | SWP | Pending |
| 2718 | 2022 | Civilian Referral | Alleges redrawn districts prevented complainant from running for office. | STL | No | | Closed by OECS |
| 2719 | 2022 | Civilian Referral | Alleges voter addresses were temporarily changed to fictitious addresses for an election in a neighborhood. | LAK | No | | Preliminary |
| 2720 | 2022 | Civilian Referral | Alleges someone is ghost candidate. | ORA | Yes | FDLE | Pending |
| 2721 | 2020 | Civilian Referral | Illegal use of funds for personal use/gain. | ORA | Yes | FDLE | Pending |
| 2722 | 2022 | Civilian Referral | Complainant concerned about individuals and groups trying to manipulate elections. | CIT | Yes | FDLE | Closed/Declined by FDLE |
| 2723 | 2020 | Civilian Referral | 104.15—Unqualified electors willfully voting. | BRO | No | | Closed by OECS |
| 2724 | 2022 | Civilian Referral | Alleges they were fraudulently taken off the voter rolls. | BRO | No | | Closed by OECS |
| 2725 | 2020 | Civilian Referral | Alleges they were fraudulently taken off the voter rolls. | BRO | No | | Closed by OECS |
| 2726 | 2020 GE | SOE | 104.15—Unqualified electors willfully voting. | SUM | No | | Closed by OECS |
| 2727 | 2022 | Civilian Referral | Misuse of public school emails for personal campaign. | ORA | No | | Closed by OECS |
| 2728 | 2021 | Civilian Referral | Alleges illegal use of address. | MON | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2729 | 2022 | Civilian Referral | Alleges illegal use of address. | STL | Yes | FDLE | Closed/Declined by FDLE |
| 2730 | 2022 | Civilian Referral | Alleges a candidate submitted false address information. | BRO | Yes | SAO-17 | Pending |
| 2731 | 2022 | Civilian Referral | Alleges their voter registration was changed without consent. | BRO | No | | Closed by OECS |
| 2732 | 2022 | Civilian Referral | Alleges a large amount of assisted voting took place at their polling location. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2733 | 2022 | Civilian Referral | Wrongfully putting up campaign signs too early. | DAD | No | | Closed by OECS |
| 2734 | 2022 | Civilian Referral | Alleges an elected official targeted for him for his religion and beliefs. | LEO | No | | Closed by OECS |
| 2735 | 2022 | Civilian Referral | Four complaints against a city candidate. | MON | Yes | FEC, FCE | Pending |
| 2736 | 2020 | Civilian Referral | Illegal voting by non-resident. | BRO | Yes | FDLE | Pending |
| 2737 | 2022 | Civilian Referral | Alleges disabled person was barred from accessing a polling place. | PAL | No | | Closed by OECS |
| 2738 | 2022 | Civilian Referral | Poll worker neglected to cancel/cure ballot, insisting to give it to her in the envelope. | PAL | No | | Closed by OECS |
| 2739 | 2022 | Civilian Referral | Alleges someone engaged in fraudulent activities. | SEM | Yes | FEC, FCE | Pending |
| 2740 | 2022 | Civilian Referral | Alleges candidate lying about their profession. | BRO | Yes | SAO-17 | Pending |
| 2741 | 2022 | Civilian Referral | 104.012—Consideration for registration; interference with registration; soliciting registrations for compensation; alteration of registration application. 104.061—Corruptly influencing voting. 104.091—Aiding, abetting, advising, or conspiring in violation of the code (3PVRO). | ORA | Yes | AG, FDLE | Pending |
| 2742 | 2022 | Civilian Referral | Alleges school board representative's place of residence is in another district. | ESC | No | | Closed by OECS |
| 2743 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | CLL | Yes | FDLE | Pending |
| 2744 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | CLL | Yes | FDLE | Pending |
| 2745 | 2022 | Civilian Referral | Alleges illegal use of address. | MRN | No | | Closed by OECS |
| 2746 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | DAD | Yes | FDLE | Closed/Declined by FDLE |
| 2747 | 2022 | Civilian Referral | 97.041(1)—Qualifications to register to vote. | ORA | No | | Closed by OECS |
| 2748 | 2022 | Civilian Referral | Complainant received an absentee ballot but did not request one. | BRO | No | | Closed by OECS |
| 2749 | 2022 | Civilian Referral | Alleges SOE promoted voter fraud as a result of voters requesting absentee ballots then subsequently voting in person. | SAR | Yes | LSO | Closed/Declined by LSO |
| 2750 | 2022 | Civilian Referral | Alleges person registered to vote with complainant's address. | DAD | No | | Closed by OECS |
| 2751 | 2022 | Civilian Referral | Complainant didn't receive their sample ballot until 5 days after early voting had started. | VOL | No | | Closed by OECS |
| 2752 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Preliminary |
| 2753 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2754 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2755 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2756 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2757 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2758 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Preliminary |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2759 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2760 | 2020 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Preliminary |
| 2761 | 2022 | SOE | 104.17—Voting in person after casting vote-by-mail ballot. 104.18—Casting more than one ballot at any election. | SUM | No | | Closed by OECS |
| 2762 | 2022 | Civilian Referral | 3PVRO collected 243 voter registration applications and upon processing app SOE found 1 application submitted for a deceased voter. | ORA | Yes | SWP | Pending |
| 2763 | 2022 | LSO | Alleges a registered candidate had a website made in her name without her approval. | CLL | No | | Closed by OECS |
| 2764 | 2022 | Civilian Referral | Complainant received a call stating her vote wasn't counted. | BRO | No | | Closed by OECS |
| 2765 | 2022 | Civilian Referral | Alleges SOE hired other people to serve as poll workers over her. | ORA | No | | Closed by OECS |
| 2766 | 2022 | Civilian Referral | Alleges SOE never sent the requested absentee ballot even after several phone calls. | BRO | No | | Closed by OECS |
| 2767 | 2022 | Civilian Referral | Voter was told he already voted at another precinct. | PAS | No | | Closed by OECS |
| 2768 | 2022 | Civilian Referral | Alleges possible ballot tampering. | ORA | No | | Closed by OECS |
| 2769 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. 104.15—Unqualified electors willfully voting. | BRE | Yes | FDLE | Pending |
| 2770 | 2022 | Civilian Referral | Complainant did not like individuals recommending to vote for her opponent. | LEE | No | | Closed by OECS |
| 2771 | 2022 | Civilian Referral | Candidate's name was not placed on a flyer. | LEE | No | | Closed by OECS |
| 2772 | 2022 | Civilian Referral | Unknown person at SOE was greeting people and telling them to vote for her opponent. | LEE | No | | Closed by OECS |
| 2773 | 2022 | Civilian Referral | Voter ballot mailed was not marked cancel on the actual ballot, just the envelope. | BRE | No | | Closed by OECS |
| 2774 | 2022 | Civilian Referral | Complainant prohibited from observing certain areas of the precinct. | BRE | No | | Closed by OECS |
| 2775 | 2022 | Civilian Referral | Voter ballot mailed was not marked cancel on the actual ballot, just the envelope. | BRE | No | | Closed by OECS |
| 2776 | 2022 | Civilian Referral | Complainant prohibited from observing certain areas of the precinct. | BRE | No | | Closed by OECS |
| 2777 | 2022 | Civilian Referral | Complainant prohibited from observing certain areas of the precinct. | BRE | No | | Closed by OECS |
| 2778 | 2022 | Civilian Referral | Complainant prohibited from observing certain areas of the precinct. | BRE | No | | Closed by OECS |
| 2779 | 2022 | Civilian Referral | Complainant prohibited from observing certain areas of the precinct. | BRE | No | | Closed by OECS |
| 2780 | 2022 | Civilian Referral | Complainant prohibited from observing certain areas of the precinct. | BRE | No | | Closed by OECS |
| 2781 | 2022 | Civilian Referral | Complainant prohibited from observing certain areas of the precinct. | BRE | No | | Closed by OECS |
| 2782 | 2022 | Civilian Referral | Voter ballot mailed was not marked cancel on the actual ballot, just the envelope. | BRE | No | | Closed by OECS |
| 2783 | 2022 | Civilian Referral | Voter ballot mailed was not marked cancel on the actual ballot, just the envelope. | BRE | No | | Closed by OECS |
| 2784 | 2022 | Civilian Referral | Complainant received a voting flyer in the mail. | LEE | No | | Closed by OECS |
| 2785 | 2022 | Civilian Referral | Complaint against an elected official. | DAD | No | | Closed by OECS |
| 2786 | 2022 | Civilian Referral | Alleges vote-by-mail requests are being processed after the 10th day before election. | ORA | No | | Closed by OECS |
| 2787 | 2022 | Civilian Referral | Alleges SOE requires poll workers to work 14-hour days. | PAL | No | | Closed by OECS |
| 2788 | 2022 | Civilian Referral | 97.041(1)—Qualifications to register to vote. 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2789 | 2022 | Civilian Referral | Complainant concerned about manipulation of numbers concerning registered voters vs. votes cast. | POL | No | | Closed by OECS |
| 2790 | 2022 | Civilian Referral | Alleges campaign finances and expenses have not been paid nor reported. | MON | No | | Closed by OECS |
| 2791 | 2022 | Civilian Referral | Complainant is concerned about the jump in numbers of absentee ballots. | BRO | No | | Closed by OECS |
| 2792 | 2019 | DSS | Alleges a voter is an imposter and not a US citizen. | VOL | No | | Closed by OECS |
| 2793 | 2020 | Civilian Referral | 104.18—Casting more than one ballot at any election. | CLL | No | | Preliminary |
| 2794 | 2022 | Civilian Referral | Alleges ballots were being transported indirectly and insecurely to the SOE office. | LEE | No | | Closed by OECS |
| 2795 | 2022 | Civilian Referral | Irregularities in the tabulation process at SOE. | PAL | No | | Closed by OECS |
| 2796 | 2022 | Civilian Referral | Alleges volunteers distributed photocopied voter ballots with fake endorsements of the incumbent. | VOL | No | | Closed by OECS |
| 2797 | 2022 | Civilian Referral | Alleges agency collected their signature on false pretenses. Petition was falsely advertised. | LEO | No | | Closed by OECS |
| 2798 | 2022 | Civilian Referral | False or malicious charges against, or false statements about, opposing candidates. | VOL | No | | Closed by OECS |
| 2799 | 2022 | Civilian Referral | Complainant and wife received duplicate absentee ballots. | PAL | No | | Preliminary |
| 2800 | 2022 | Civilian Referral | Homeowners are receiving mail for a registered voter at their address who does not live there. | OKA | No | | Preliminary |
| 2801 | 2021-2022 | SOE | 3PVRO violated: 97.0575(3)(a)(1) - Voter Registration Applications to be delivered within (14) days of collection from registration applicant. (15) were late. 97.0575(3)(a)(2) - Voter Registration Applications collected prior to book closing for upcoming election (primary or general) and received by Department of county supervisor of elections after book closing. (9) were collected prior to book closing but received after the deadline. 97.0575(3)(a)(3) - applications must only be submitted to either the county of the voter's residence or the Division. (5) were submitted to the wrong county. 97.0573 - all voter registration applications collected must be completed with statutorily required information. (3) forms were incomplete as per statute. | DAD | No | | Pending |
| 2802 | 2021-2022 | SOE | 3PVRO violated: 97.0575(3)(a)(1) - Voter Registration Applications to be delivered within (14) days of collection from registration applicant. (19) were late. FAC 1S-2.042(4)(c) - Place the 3PVRO ID on back page in manner that doesn't obscure anything else. (4) did not meet this requirement. | DAD | No | | Pending |
| 2803 | 2022 | SOE | 3PVRO violated: 97.0575(3)(a)(2) - 3PVRO is required to submit collected applications to the county in which applicant resides, or to the Division. (2) applications were sent to the wrong county. 97.0575(3)(a)(1) - Collected applications must be submitted to the proper recipient within 14 days of collection. (45) applications were tardy. FAC 1S-2.042(4)(c) requires the voter registration ID on the back page in a manner that doesn't obscure other text. (10) did not comply with this regulation. | DAD | No | | Pending |
| 2804 | 2022 | SOE | 3PVRO violated: 97.0575(3)(a)(2) - 3PVRO is required to submit collected applications to the county in which applicant resides, or to the Division. (12) applications were sent to the wrong county. 97.0575(3)(a)(1) - Collected applications must be submitted to the proper recipient within 14 days of collection. (19) applications were tardy. FAC 1S-2.042(4)(c) requires the voter registration ID on the back page in a manner that doesn't obscure other text. (21) did not comply with this regulation. 97.053(5) - Applications are required to contain applicant's driver's license number, last four of social security number, or sworn affirmation that applicant has neither. (1) application did not meet this requirement. | DAD | No | | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 2805 | 2022 | SOE (2) | 3PVRO violated: 97.0575(3)(a)(1) - Voter Registration Applications to be delivered within (14) days of collection from registration applicant. (5) were late. FAC 1S-2.042(4)(c) requires the voter registration ID on the back page in a manner that doesn't obscure other text. (6) did not comply with this regulation. | DAD & ALA | No | Pending |
| 2806 | 2022 | SOE | 3PVRO violated: 97.0575(3)(a)(1) - Collected applications must be submitted to the proper recipient within 14 days of collection. (2) applications were tardy. | CLA | No | Pending |
| 2807 | 2021-2022 | SOE (2) & DoE | 3PVRO violated: 97.0575(3)(a)(3) - applications must only be submitted to either the county of the voter's residence or the Division. (1) was submitted to the wrong county. 97.0575(3)(a)(1) - Collected applications must be submitted to the proper recipient within 14 days of collection. (29) applications were tardy. FAC 1S2.042(4)(c) requires the voter registration ID on the back page in a manner that doesn't obscure other text. (12) did not comply with this regulation. | DAD, ALA, & LEO | No | Pending |
| 2808 | 2022 | SOE - Citrus, Lake, Osceola, Pinellas, & Seminole | 3PVRO violated: 97.0575(3)(a)(1) - Collected applications must be submitted to the proper recipient within 14 days of collection. (5) applications were tardy. | SEM, PIN, LAK, CIT, & OSC | No | Pending |
| 2809 | 2022 | Civilian Referral | Complainant didn't receive absentee ballot. | Unknown | No | Closed by OECS |
| 2810 | 2022 | Civilian Referral | New voter registration and sample ballots for the wrong address. | Unknown | No | Closed by OECS |
| 2811 | 2022 | Civilian Referral | Voter registration came in the mail that is not hers. | Unknown | No | Closed by OECS |
| 2812 | 2022 | Civilian Referral | Complainant wants to report fraud on a political party. | Unknown | No | Closed by OECS |
| 2813 | 2022 | Civilian Referral | Complainant received suspicious text that said for he could be paid $250 to tell his friends to vote for a candidate. | Unknown | No | Closed by OECS |
| 2814 | 2022 | Civilian Referral | Caller wanted to report suspicious fraud. | Unknown | No | Closed by OECS |
| 2815 | 2022 | Civilian Referral | Complainant alleges a candidate gave out his personal information on live TV. | CLL | No | Closed by OECS |
| 2816 | 2022 | Civilian Referral | Alleges someone took older peoples' ballots and X'ed them out. | Unknown | No | Closed by OECS |
| 2817 | 2022 | Civilian Referral | Alleges a ballot was cast using his wife's name and address, but his wife didn't cast a ballot in the primary election. | Unknown | No | Closed by OECS |
| 2818 | 2022 | Civilian Referral | Alleges someone stole her DOB on a report about her security. | Unknown | No | Closed by OECS |
| 2819 | 2022 | Civilian Referral | Receiving texts on her cell phone addressed to someone else. Complainant believes another person is using her phone number. | Unknown | No | Closed by OECS |
| 2820 | 2022 | Civilian Referral | Caller wanted to know his eligibility to vote. | Unknown | No | Closed by OECS |
| 2821 | 2022 | Civilian Referral | Caller wanted to report suspicious fraud. | Unknown | No | Closed by OECS |
| 2822 | 2022 | Civilian Referral | Complainant is getting mail that is not his at his vacation home. | Unknown | No | Closed by OECS |
| 2823 | 2022 | Civilian Referral | Alleges someone voted in the primaries while living in another state. | Unknown | No | Closed by OECS |
| 2824 | 2022 | Civilian Referral | Alleges SOE never called the complainant back. | BRO | No | Closed by OECS |
| 2825 | 2022 | Civilian Referral | Alleges someone changed his party affiliation. | Unknown | No | Closed by OECS |
| 2826 | 2022 | Civilian Referral | Caller is reporting a suspicious video found on social media. | Unknown | No | Closed by OECS |
| 2827 | 2022 | Civilian Referral | Caller wanted to report suspicious fraud. | ORA | No | Closed by OECS |
| 2828 | 2022 | Civilian Referral | Alleges the SOE office asked for their address, said it was incorrect, then subsequently allowed complainant to vote. | Unknown | No | Closed by OECS |
| 2829 | 2022 | Civilian Referral | Caller wants to file complaint against candidate. | Unknown | No | Closed by OECS |
| 2830 | 2022 | Civilian Referral | Alleges an elected official's spouse keeps calling their phone and wants her to stop calling. | Unknown | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|
| 2831 | 2022 | Civilian Referral | Complainant received a call about a voting organization. | Unknown | No | Closed by OECS |
| 2832 | 2022 | Civilian Referral | Alleges ballot fraud for voting in person. | CHA | No | Closed by OECS |
| 2833 | 2022 | Civilian Referral | Complainant has not received their ballot yet. | Unknown | No | Closed by OECS |
| 2834 | 2022 | Civilian Referral | Alleges people are knocking on her door to discuss a candidate. | Unknown | No | Closed by OECS |
| 2835 | 2022 | Civilian Referral | Alleges a candidate was soliciting money from local district. | ORA | No | Closed by OECS |
| 2836 | 2022 | Civilian Referral | Complainant received a phone call asking if he was going to vote. | ORA | No | Closed by OECS |
| 2837 | 2022 | Civilian Referral | Complainant lives in another state but is receiving pre-recorded messages from an elected official's wife. | Unknown | No | Closed by OECS |
| 2838 | 2022 | Civilian Referral | Complainant received a call about a voting organization. | Unknown | No | Closed by OECS |
| 2839 | 2022 | Civilian Referral | Alleges ballot fraud for voting in person. | CHA | No | Closed by OECS |
| 2840 | 2022 | Civilian Referral | Complainant has not received their ballot yet. | Unknown | No | Closed by OECS |
| 2841 | 2022 | Civilian Referral | Alleges a candidate is promoting himself on social media without stating his party affiliation. | Unknown | No | Closed by OECS |
| 2842 | 2022 | Civilian Referral | Alleges a candidate went inside the library and recorded it on a live video feed. | BRO | No | Closed by OECS |
| 2843 | 2022 | Civilian Referral | Complainant's wife didn't receive a ballot in the mail. | BRE | No | Closed by OECS |
| 2844 | 2022 | Civilian Referral | The polling place didn't accept her military ID. The complainant further alleges that the poll workers asked for her credit card information. | WAK | No | Closed by OECS |
| 2845 | 2022 | Civilian Referral | Complainant received emails from a candidate who is not in the complainant's county. | OSC | No | Closed by OECS |
| 2846 | 2022 | Civilian Referral | Complainant received an absentee voter email from another state. | Unknown | No | Closed by OECS |
| 2847 | 2022 | Civilian Referral | Caller wanted to report suspicious fraud. | Unknown | No | Closed by OECS |
| 2848 | 2022 | Civilian Referral | Alleges a political party is sending a voter guide or judicial candidate information for the election. | SEM | No | Closed by OECS |
| 2849 | 2022 | Civilian Referral | Alleges a poll worker pushed him and his wife. Complainant contacted the local Sheriff's office. | Unknown | No | Closed by OECS |
| 2850 | 2022 | Civilian Referral | Alleges their identity was stolen and is being used to vote in Florida. Complainant has never lived in Florida. | Unknown | No | Closed by OECS |
| 2851 | 2022 | Civilian Referral | Alleges an individual is repeatedly dropping off ballots throughout the day. | Unknown | No | Closed by OECS |
| 2852 | 2022 | Civilian Referral | Complainant has not received their ballot yet. | BRO | No | Closed by OECS |
| 2853 | 2022 | Civilian Referral | Complainant has not received their ballot yet and believes it has been stolen. | Unknown | No | Closed by OECS |
| 2854 | 2022 | Civilian Referral | Caller wanted to report voter suppression. | Unknown | No | Closed by OECS |
| 2855 | 2022 | Civilian Referral | Caller wanted to report suspicious fraud. | Unknown | No | Closed by OECS |
| 2856 | 2022 | Civilian Referral | Complainant received two absentee ballots in the mail. | POL | No | Closed by OECS |
| 2857 | 2022 | Civilian Referral | Complainant was asked for their driver's license for the absentee ballot. | ORA | No | Closed by OECS |
| 2858 | 2022 | Civilian Referral | Caller wanted to report suspicious fraud. | Unknown | No | Closed by OECS |
| 2859 | 2022 | Civilian Referral | Complainant received a suspicious letter in the mail. | Unknown | No | Closed by OECS |
| 2860 | 2022 | Civilian Referral | Complainant is reporting a rude phone call. Complainant sent in an Elections Fraud Complaint form with details. | Unknown | No | Closed by OECS |
| 2861 | 2022 | Civilian Referral | Alleges certain discrepancies at local precinct. | PAL | No | Closed by OECS |
| 2862 | 2022 | Civilian Referral | Alleges individuals are voting absentee ballots and in-person for the same election. | Unknown | No | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2863 | 2022 | Civilian Referral | Complainant is concerned about receiving two absentee ballots in the mail. | Unknown | No | | Closed by OECS |
| 2864 | 2022 | Civilian Referral | Caller is uncertain why another county has her voter information after moving there from her previous county. | HIL | No | | Closed by OECS |
| 2865 | 2022 | Civilian Referral | Complainant received a text stating they can pay $250 a week to promote a political party. | Unknown | No | | Closed by OECS |
| 2866 | 2022 | Civilian Referral | Complainant is not sure their ballot was counted. | Unknown | No | | Closed by OECS |
| 2867 | 2022 | Civilian Referral | Caller wanted to report voter suppression. | PAL | No | | Closed by OECS |
| 2868 | 2022 | Civilian Referral | Complainant wasn't able to vote at the polls. | Unknown | No | | Closed by OECS |
| 2869 | 2022 | Civilian Referral | Alleges their ballot was for the wrong district. | DAD | No | | Closed by OECS |
| 2870 | 2022 | Civilian Referral | Alleges four individuals received incomplete absentee ballots and that the envelopes were "stuffed" incorrectly. | Unknown | No | | Closed by OECS |
| 2871 | 2022 | Civilian Referral | Caller wanted to report voter suppression and request legal opinion. | Unknown | No | | Closed by OECS |
| 2872 | 2022 | Civilian Referral | Alleges voting machines are down and that individuals are stuffing ballots into a silver box in their precinct. | ORA | No | | Closed by OECS |
| 2873 | 2022 | Civilian Referral | Alleges a mail service was making multiple copies of ballots and putting them into an orange bag. | BRO | No | | Closed by OECS |
| 2874 | 2022 | Civilian Referral | Complainant was told he had already voted when he arrived at the polling place, even though he had not yet voted. He was told he can fill out a supplemental pink slip to be allowed to vote. | Unknown | No | | Closed by OECS |
| 2875 | 2022 | Civilian Referral | Alleges that mental health hospital patients are being denied their voting rights. | LEE | No | | Closed by OECS |
| 2876 | 2022 | Civilian Referral | Alleges his absentee ballot is being held unfairly at a local mail distribution center. | PAL | No | | Closed by OECS |
| 2877 | 2022 | Investigator | Caller is seeking residency and voter information for two individuals as a part of their welfare fraud case. | Unknown | No | | Closed by OECS |
| 2878 | 2022 | Civilian Referral | Alleges SOE office wouldn't let her witness the counting of the ballots and says that it is mathematically impossible for the SOE to have received that many absentee ballots. | PAL | No | | Closed by OECS |
| 2879 | 2022 | Civilian Referral | Caller is following up on an previously submitted Elections Fraud Complaint form. | Unknown | No | | Closed by OECS |
| 2880 | 2022 | Civilian Referral | Alleges a lady was escorting voters into booths. | Unknown | No | | Closed by OECS |
| 2881 | 2022 | Civilian Referral | Alleges a felon filled out a ballot. | Unknown | No | | Closed by OECS |
| 2882 | 2022 | Civilian Referral | Caller is following up on an previously submitted Elections Fraud Complaint form. | Unknown | No | | Closed by OECS |
| 2883 | 2022 | Civilian Referral | Complainant received a suspicious letter in the mail after submitting their voter registration. | Unknown | No | | Closed by OECS |
| 2884 | 2022 | Civilian Referral | Complainant was told he had already voted when he arrived at the polling place, even though he had not yet voted. | VOL | No | | Closed by OECS |
| 2885 | 2022 | Civilian Referral | Caller is trying to receive help regarding welfare. | Unknown | No | | Closed by OECS |
| 2886 | 2022 | Civilian Referral | Caller wants to know if they were accidentally registered to vote. | Unknown | No | | Closed by OECS |
| 2887 | 2022 | Civilian Referral | Alleges they know two people on parole who are voting. | Unknown | No | | Closed by OECS |
| 2888 | 2022 | Civilian Referral | 104.051—Violations; neglect of duty; corrupt practices. | DAD | No | | Closed by OECS |
| 2889 | 2022 | Civilian Referral | Duplicate ballot requests. | LEE | Yes | LSO | Pending |
| 2890 | 2022 | Civilian Referral | 98.065—Registration list maintenance programs. | LEO | Yes | FDLE | Pending |
| 2891 | 2022 | Civilian Referral | 101.6103—Mail ballot election procedure. | PAS | Yes | FDLE | Pending |
| 2892 | 2022 | Civilian Referral | 104.42—Fraudulent registration and illegal voting; investigation. | ORA | No | | Closed by OECS |
| 2893 | 2022 | FDLE | 104.0515—Voting rights; deprivation of, or interference with, prohibited; penalty. | STJ | Yes | FDLE | Pending |
| 2894 | 2022 | FDLE | 104.041—Fraud in connection with casting vote. | Unknown | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2895 | 2022 | Civilian Referral | 101.6952—Vote-by-mail ballots for absent uniformed services and overseas voters. | PAL | No | | Closed by OECS |
| 2896 | 2022 | Civilian Referral | 104.21—Changing electors' ballots. | DAD | No | | Closed by OECS |
| 2897 | 2022 | SOE | 104.20—Ballot not to be seen, and other offenses. | POL | Yes | FDLE | Pending |
| 2898 | 2022 | Civilian Referral | 97.071—Voter information card. | Unknown | No | | Closed by OECS |
| 2899 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | DAD | No | | Closed by OECS |
| 2900 | 2022 | Civilian Referral | 104.26—Penalty for destroying ballot or booth, etc. | DAD | No | | Closed by OECS |
| 2901 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | PAL | No | | Closed by OECS |
| 2902 | 2022 | Civilian Referral | 104.041—Fraud in connection with casting vote. | PAL | Yes | LSO | Pending |
| 2903 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | LAK | No | | Closed by OECS |
| 2904 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | TAY | Yes | FDLE | Pending |
| 2905 | 2022 | Lee County District 2 | 104.39—Witnesses as to violations. | LEE | No | | Closed by OECS |
| 2906 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | DUV | No | | Closed by OECS |
| 2907 | 2022 | Civilian Referral | 97.0575—Third-party voter registrations. | Unknown | No | | Closed by OECS |
| 2908 | 2022 | Civilian Referral | 104.051—Violations; neglect of duty; corrupt practices. | Unknown | No | | Closed by OECS |
| 2909 | 2022 | Civilian Referral | 104.051—Violations; neglect of duty; corrupt practices. | ORA | Yes | FDLE | Pending |
| 2910 | 2022 | Civilian Referral | 104.051—Violations; neglect of duty; corrupt practices. | Unknown | No | | Closed by OECS |
| 2911 | 2022 | Civilian Referral | 104.041—Violations not otherwise provided for. | Unknown | No | | Closed by OECS |
| 2912 | 2022 | Civilian Referral | 101.6103—Mail ballot election procedure. | PAL | No | | Closed by OECS |
| 2913 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | PIN | No | | Closed by OECS |
| 2914 | 2022 | Civilian Referral | 104.061—Corruptly influencing voting. | Unknown | No | | Closed by OECS |
| 2915 | 2022 | Civilian Referral | 101.111—Voter challenges. | HER | No | | Closed by OECS |
| 2916 | 2022 | DoE | 104.16—Voting fraudulent ballot. | BRO | Yes | FDLE | Pending |
| 2917 | 2022 | SOE | 104.20—Ballot not to be seen, and other offenses. | POL | Yes | FDLE | Pending |
| 2918 | 2022 | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | FDLE | Pending |
| 2919 | 2022 | Civilian Referral | 104.18—Casting more than one ballot at any election. | PIN | Yes | FDLE | Pending |
| 2920 | 2022 | Executive Office of the Governor | 98.075—Registration records maintenance activities; ineligibility determinations. | CIT | No | | Closed by OECS |
| 2921 | 2022 | Civilian Referral | Unsolicited political mail from an unmarked out-of-state organization. | WAK | No | | Closed by OECS |
| 2922 | 2022 | Civilian Referral | 104.30—Voting system; unlawful possession; tampering. | Unknown | No | | Closed by OECS |
| 2923 | 2022 | Civilian Referral | 104.24—Penalty for assuming name. | Unknown | No | | Closed by OECS |
| 2924 | 2022 | Civilian Referral | 104.21—Changing electors' ballots. | SUM | No | | Closed by OECS |
| 2925 | 2022 | Civilian Referral | 104.42—Fraudulent registration and illegal voting; investigation. | SUM | No | | Closed by OECS |
| 2926 | 2022 | Civilian Referral | 104.012—Consideration for registration; interference with registration; soliciting registrations for compensation; alteration of registration application. | Unknown | No | | Closed by OECS |
| 2927 | 2022 | Civilian Referral | 104.15—Unqualified electors willfully voting. | Unknown | No | | Closed by OECS |
| 2928 | 2022 | Civilian Referral | 101.662—Accessibility of vote-by-mail ballots. | Unknown | No | | Closed by OECS |
| 2929 | 2022 | Civilian Referral | 104.22—Stealing and destroying records, etc., of election. | VOL | No | | Closed by OECS |
| 2930 | 2022 | Civilian Referral | 104.0616—Vote-by-mail ballots and voting; violations. | DAD | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2931 | 2022 | Civilian Referral | 97.041—Qualifications to register or vote. | SUM | No | | Closed by OECS |
| 2932 | 2022 | Civilian Referral | 101.20—Publication of ballot form; sample ballots. | STJ | No | | Closed by OECS |
| 2933 | 2022 | Civilian Referral | 97.058—Voter registration agencies. | Unknown | No | | Closed by OECS |
| 2934 | 2022 | Civilian Referral | 104.16—Voting fraudulent ballot. | Unknown | No | | Closed by OECS |
| 2935 | 2022 | Civilian Referral | 104.0515—Voting rights; deprivation of, or interference with, prohibited; penalty. | PAL | No | | Closed by OECS |
| 2936 | 2022 | Civilian Referral | 104.0615—Voter intimidation or suppression prohibited; criminal penalties. | BRO | No | | Closed by OECS |
| 2937 | 2022 | Civilian Referral | 106.07—Reports; certification and filing. | ALA | No | | Closed by OECS |
| 2938 | 2022 | Civilian Referral | 104.0515—Voting rights; deprivation of, or interference with, prohibited; penalty. | Unknown | No | | Preliminary |
| 2939 | 2022 | Civilian Referral | 104.24—Penalty for assuming name. | OKA | No | | Closed by OECS |
| 2940 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | Unknown | No | | Closed by OECS |
| 2941 | 2022 | Civilian Referral | 104.0616(2)—Vote-by-mail ballots and voting; violations. | ORA | No | | Closed by OECS |
| 2942 | 2022 | Civilian Referral | 104.041—Fraud in connection with casting vote. | Unknown | No | | Closed by OECS |
| 2943 | 2022 | Civilian Referral | 104.18—Casting more than one ballot at any election. | HIL | No | | Preliminary |
| 2944 | 2022 | Civilian Referral | Complainant received an alert for voting on social media. | Unknown | No | | Closed by OECS |
| 2945 | 2022 | Civilian Referral | 104.18—Casting more than one ballot at any election. | Unknown | No | | Closed by OECS |
| 2946 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | HIL | Yes | FDLE | Pending |
| 2947 | 2022 | Civilian Referral | 104.011—False swearing; submission of false voter registration information; prosecution prohibited. | CLL | No | | Closed by OECS |
| 2948 | 2022 | Civilian Referral | 104.16—Voting fraudulent ballot. | PAL | Yes | FDLE | Pending |
| 2949 | 2022 | Civilian Referral | 104.30—Voting system; unlawful possession; tampering. | VOL | No | | Closed by OECS |
| 2950 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | LAK | No | | Preliminary |
| 2951 | 2022 | Civilian Referral | Alleges SOE received millions of dollars in financing from a social media company. | PAL | No | | Closed by OECS |
| 2952 | 2022 | Civilian Referral | 104.0616(2)—Vote-by-mail ballots and voting; violations. | Unknown | No | | Closed by OECS |
| 2953 | 2022 | Civilian Referral | 104.0616(2)—Vote-by-mail ballots and voting; violations. | Unknown | No | | Closed by OECS |
| 2954 | 2022 | Civilian Referral | 101.6103—Mail ballot election procedure. | DAD | No | | Closed by OECS |
| 2955 | 2022 | Civilian Referral | 104.16—Voting fraudulent ballot. | POL | No | | Closed by OECS |
| 2956 | 2022 | SOE - Flagler | 104.29—Inspectors refusing to allow watchers while ballots are counted. | LAK | Yes | FDLE | Pending |
| 2957 | 2022 | Civilian Referral | Complainant is being harassed by a fellow poll worker. | PAL | No | | Closed by OECS |
| 2958 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | BRE | No | | Closed by OECS |
| 2959 | 2022 | Civilian Referral | 102.014—Poll worker recruitment and training. | BRO | No | | Closed by OECS |
| 2960 | 2022 | Civilian Referral | 98.065—Registration list maintenance programs. | STL | No | | Preliminary |
| 2961 | 2022 | Civilian Referral | 104.30—Voting system; unlawful possession; tampering. | MAN | No | | Closed by OECS |
| 2962 | 2022 | Civilian Referral | 104.013—Unauthorized use, possession, or destruction of voter information card. | Unknown | No | | Closed by OECS |
| 2963 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | LAK | No | | Preliminary |
| 2964 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | BRE | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2965 | 2022 | Civilian Referral | 104.0615—Voter intimidation or suppression prohibited; criminal penalties. | PAS | No | | Preliminary |
| 2966 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | BAY | No | | Preliminary |
| 2967 | 2022 | Civilian Referral | No fraud reported. | ORA | No | | Closed by OECS |
| 2968 | 2022 | Civilian Referral | 101.045—Electors must be registered in precinct; provisions for change of residence or name. | POL | No | | Closed by OECS |
| 2969 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | HIL | No | | Closed by OECS |
| 2970 | 2022 | Civilian Referral | Complainant and wife received duplicate absentee ballots. | PAL | No | | Closed by OECS |
| 2971 | 2022 | Civilian Referral | 106.11—Expenses of and expenditures by candidates and political committees. | ALA | No | | Closed by OECS |
| 2972 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | ORA | No | | Closed by OECS |
| 2973 | 2022 | Civilian Referral | 106.1435—Usage and removal of political campaign advertisements. | HER | Yes | LSO | Pending |
| 2974 | 2022 | Civilian Referral | 101.5605—Examination and approval of equipment. | Unknown | No | | Closed by OECS |
| 2975 | 2022 | Civilian Referral | 101.69—Voting in person. | LEE | No | | Closed by OECS |
| 2976 | 2022 | Civilian Referral | 101.6952—Vote-by-mail ballots for absent uniformed services and overseas voters. | WAS | No | | Closed by OECS |
| 2977 | 2022 | Civilian Referral | 104.22—Stealing and destroying records, etc., of election. | BRO | No | | Closed by OECS |
| 2978 | 2022 | Civilian Referral | 101.6952—Vote-by-mail ballots for absent uniformed services and overseas voters. | MRT | No | | Closed by OECS |
| 2979 | 2022 | Civilian Referral | 104.3—Voting system; unlawful possession; tampering. | Unknown | No | | Preliminary |
| 2980 | 2022 | SOE - Orange | 104.15—Voter intimidation or suppression prohibited; criminal penalties. | ORA | No | | Closed by OECS |
| 2981 | 2022 | Civilian Referral | 101.111—Voter challenges. | Unknown | No | | Closed by OECS |
| 2982 | 2022 | DoE | 104.42—Fraudulent registration and illegal voting; investigation. | BRO | Yes | FDLE | Pending |
| 2983 | 2022 | Civilian Referral | 102.031—Maintenance of good order at polls; authorities; persons allowed in polling rooms and early voting areas; unlawful solicitation of voters. | DAD | No | | Preliminary |
| 2984 | 2022 | Civilian Referral | 104.0515—Voting rights; deprivation of, or interference with, prohibited; penalty. | FLA | No | | Preliminary |
| 2985 | 2022 | Civilian Referral | 104.18—Casting more than one ballot at any election. | Unknown | No | | Preliminary |
| 2986 | 2022 | Civilian Referral | 104.42—Fraudulent registration and illegal voting. | PIN | No | | Closed by OECS |
| 2987 | 2022 | Civilian Referral | No fraud reported. | Unknown | No | | Closed by OECS |
| 2988 | 2022 | Civilian Referral | 104.21—Changing electors' ballots. | PAL | No | | Closed by OECS |
| 2989 | 2022 | Civilian Referral | 104.0616(2)—Vote-by-mail ballots and voting; violations. | Unknown | No | | Closed by OECS |
| 2990 | 2022 | Civilian Referral | 104.0616—Vote-by-mail ballots and voting; violations. | BRO | Yes | FDLE | Pending |
| 2991 | 2022 | Civilian Referral | 101.657—Early voting. | POL | No | | Closed by OECS |
| 2992 | 2022 | Civilian Referral | 106.35—Distribution of funds. | BRO | Yes | Broward Office of the Inspector General | Pending |
| 2993 | 2022 | Civilian Referral | Complaint against an elected official. | PIN | No | | Preliminary |
| 2994 | 2022 | Civilian Referral | 104.30—Voting system; unlawful possession; tampering. | PAL | No | | Preliminary |
| 2995 | 2022 | Civilian Referral | 104.051—Violations; neglect of duty; corrupt practices. | BRE | Yes | FDLE | Pending |
| 2996 | 2022 | Civilian Referral | 104.42—Fraudulent registration and illegal voting; investigation. | BRO | No | | Preliminary |
| 2997 | 2022 | Civilian Referral | 101.6952—Vote-by-mail ballots for absent uniformed services and overseas voters. | BRE | No | | Closed by OECS |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 2998 | 2022 | Civilian Referral | Alleges a miscount of votes cast. | Unknown | No | | Preliminary |
| 2999 | 2022 | Civilian Referral | 101.5603—Electronic Voting systems act. | BRO | No | | Preliminary |
| 3000 | 2022 | Civilian Referral | 104.041—Fraud in connection with casting vote. | MRN | No | | Preliminary |
| 3001 | 2022 | Civilian Referral | 101.045—Electors must be registered in precinct; provisions for change of residence or name. | SEM | No | | Preliminary |
| 3002 | 2022 | Civilian Referral | 104.0615—Voter intimidation or suppression prohibited; criminal penalties. | HER | No | | Preliminary |
| 3003 | 2022 | Civilian Referral | 760.51—Violations of constitutional rights. | Unknown | No | | Closed by OECS |
| 3004 | 2022 | Civilian Referral | 101.111—Voter challenges. | Unknown | No | | Preliminary |
| 3005 | 2022 | Civilian Referral | 104.42—Fraudulent registration and illegal voting; investigation. | PUT | No | | Preliminary |
| 3006 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | LAK | Yes | FDLE | Pending |
| 3007 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Closed/Declined by FDLE |
| 3008 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Pending |
| 3009 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Pending |
| 3010 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | LIB | Yes | FDLE | Pending |
| 3011 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | CIT | Yes | FDLE | Pending |
| 3012 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | JAC | Yes | FDLE | Arrested |
| 3013 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | FLA | Yes | FDLE | Pending |
| 3014 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Pending |
| 3015 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | HEN | Yes | FDLE | Pending |
| 3016 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | ORA | Yes | FDLE | Pending |
| 3017 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Pending |
| 3018 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | FLA | Yes | FDLE | Pending |
| 3019 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Pending |
| 3020 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Pending |
| 3021 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Pending |

| | Election and/or year of the alleged violation | (a) The source of the alleged violation or irregularity | (b) The law allegedly violated or the nature of the irregularity reported | (c) The county in which the alleged violation or irregularity occurred | (d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency | | (e) The current status of the investigation or resulting criminal case |
|---|---|---|---|---|---|---|---|
| 3022 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | BAY | Yes | FDLE | Pending |
| 3023 | 2021-2022 | SOE | 104.185—Petitions; knowingly signing more than once; signing another person's name or a fictitious name. 104.186—Initiative petitions; violations. | JAC | Yes | FDLE | Pending |
| 3024 | 2020-ongoing | Internal | Social media election interference. | All counties | No | | Preliminary |
| 3025 | 2022 | Civilian Referral | Ghost candidate/dark money. | SAN | Yes | SAO-01 | Pending |
| 3026 | 2022 | Civilian Referral | Various campaign finance issues/voter fraud. | All counties | No | | Preliminary |

### III.   Conclusion

The Office of Election Crimes and Security continues to be vigilant in its efforts to proactively identify and thwart those who would violate Florida election laws by illegally registering to vote or illegally casting a ballot in a Florida election. The OECS remains committed to employing trained investigators and analysts to assist in reviewing inquiries and allegations of Florida election law violations. The Department of State regularly receives investigative leads in the form of lists and information from groups that purport to identify issues with voter rolls or election practices in Florida. The Department has always put forward its best effort to review this information and make referrals as appropriate, but with the creation and additional resources of the OECS, we are confident that we will be able to do an even better job. Having the trained personnel of the OECS will allow us to efficiently review any alleged irregularities, promptly respond, and either put allegations to rest or, if appropriate, investigate further and, when necessary, refer these matters to law enforcement. Crucially, this will support voter confidence in our elections and provide a single point of referral where the public and our elections officials can send information for quick review.

It bears repeating that while building our office staff, the OECS will continue to rely heavily on our state and federal law enforcement partners to fight against threats to our cyber and physical elections infrastructure. The OECS is working hand-in-hand with our local and federal law enforcement officials to ensure we are doing everything we can to face any evolving threats, and to keep both our voters and our elections secure.

As we move toward the next election cycle in 2024, the OECS continues to take significant – and first of its kind – steps to proactively identify and thwart those who would seek to illegally register to vote, illegally cast a ballot, or otherwise violate Florida election law. Because of the hard work and the enforcement mechanisms undertaken by the OECS and our law enforcement partners, we can confidently declare that those who would seek to violate Florida election law are now thinking twice before doing so.

The Governor has made election integrity a priority and has made significant investments to ensure Florida has the technology, infrastructure, and resources to conduct efficient and secure elections. The Florida Department of State and the OECS will work hard to ensure we protect those investments and use these resources so that we continue to be a national leader in election integrity.

**IV.   Appendices**

# Appendix A

Laws of Florida, s. 3, Chapter 2022-73, Laws of Florida

CHAPTER 2022-73

Committee Substitute for
Committee Substitute for Senate Bill No. 524

An act relating to election administration; amending s. 15.21, F.S.; requiring the Secretary of State to notify the Attorney General if signatures required for an initiative petition are no longer valid; authorizing the Secretary of State to resubmit the initiative petition to the Attorney General if certain conditions are met; amending s. 16.061, F.S.; requiring the Attorney General to withdraw his or her petition for an advisory opinion by the Supreme Court if notified by the Secretary of State that the initiative petition no longer meets the criteria for review; requiring the Attorney General to file a new petition for an advisory opinion if the initiative petition subsequently qualifies for review; creating s. 97.022, F.S.; creating the Office of Election Crimes and Security within the Department of State; specifying the duties and structure of the office; providing for construction; requiring the department to annually report to the Governor and Legislature regarding the office's activities; specifying requirements for such report; amending s. 97.0291, F.S.; clarifying provisions governing the prohibition on the solicitation, acceptance, use, and disposal of private funds for certain election-related expenses; amending s. 97.052, F.S.; adding requirements to the uniform statewide voter registration application; amending s. 97.057, F.S.; conforming a cross-reference; amending s. 97.0575, F.S.; deleting a requirement that a third-party voter registration organization provide a certain notification to an applicant; revising a limitation on the amount of aggregate fines which may be assessed against a third-party voter registration organization in a calendar year; specifying that a third-party voter registration organization is liable for a certain fine if a person collecting voter registration applications on its behalf is convicted of unlawfully altering any application; amending s. 98.065, F.S.; revising the frequency with which supervisors of elections must conduct a registration list maintenance program; modifying required components of registration list maintenance programs; conforming provisions to changes made by the act; amending s. 98.0655, F.S.; revising requirements for certain registration list maintenance forms to be prescribed by the Department of State; amending s. 98.075, F.S.; requiring the Department of State to identify deceased registered voters using information received by specified agencies; amending s. 98.093, F.S.; requiring clerks of the circuit court and the Department of Highway Safety and Motor Vehicles to furnish additional information to the Department of State on a monthly basis; amending s. 100.041, F.S.; providing an exception to certain county commissioner election requirements for certain districts; amending s. 100.371, F.S.; revising duties of the supervisor with respect to the processing and retention of initiative petition forms; requiring the supervisor to post additional information regarding petition forms on his or her website; requiring the Secretary of State to notify the Financial Impact Estimating Conference if the signatures for an initiative petition

1

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

are no longer valid; specifying conditions under which the Financial Impact Estimating Conference does not need to complete an analysis and financial impact statement for an initiative petition; creating s. 101.019, F.S.; prohibiting the use of ranked-choice voting to determine election or nomination to elective office; voiding existing or future local ordinances authorizing the use of ranked-choice voting; amending s. 101.043, F.S.; deleting a provision that prohibits using an address appearing on identification presented by an elector as a basis to confirm an elector's legal residence; deleting a provision that prohibits a clerk or an inspector from asking an elector to provide additional identification information under specified circumstances; amending s. 101.051, F.S.; replacing references to "secure drop boxes" with "secure ballot intake stations"; conforming terminology to changes made by the act; amending s. 101.151, F.S.; revising requirements for Department of State rules regarding certified voting systems and ballot specifications; amending s. 101.5614, F.S.; requiring specified individuals observing the ballot duplication process to sign a specified affidavit acknowledging certain criminal penalties; prohibiting persons authorized to observe, review, or inspect ballot materials or observe canvassing from releasing certain information about an election before the closing of the polls; providing criminal penalties; amending s. 101.6103, F.S.; conforming certain provisions governing the Mail Ballot Election Act to provisions applicable to the mailing and canvassing of vote-by-mail ballots; amending s. 101.65, F.S.; conforming terminology to changes made by the act; amending s. 101.655, F.S.; revising the date by which requests for supervised voting must be submitted to the supervisor; amending s. 101.69, F.S.; revising require-ments for permanent branch offices of the supervisor which may be used as secure ballot intake station locations; conforming terminology to changes made by the act; amending s. 102.031, F.S.; conforming terminology to changes made by the act; amending s. 102.091, F.S.; requiring the Governor, in consultation with the executive director of the Department of Law Enforcement, to appoint special officers to investigate election law violations; specifying requirements for such special officers; providing construction; amending s. 102.101, F.S.; prohibiting a special officer from entering a polling place; providing exceptions; amending s. 104.0616, F.S.; increasing criminal penalties for certain unlawful acts involving vote-by-mail ballots; amending s. 104.185, F.S.; increasing criminal penalties for a person who signs another person's name or a fictitious name on specified petitions; amending s. 104.186, F.S.; increas-ing criminal penalties for a person who unlawfully compensates a petition circulator based on the number of petition forms gathered; amending s. 124.011, F.S.; providing that certain county commissioners must be elected at the general election immediately following redistricting; requiring such commissioners' terms to commence on a certain date; providing applicability; amending s. 921.0022, F.S.; ranking a specified offense involving vote-by-mail ballots on the severity ranking chart of the Criminal Punishment Code; providing legislative findings and intent; requiring the Department of State to submit a report to the Legislature by a specified date; providing report requirements; providing effective dates.

CODING: Words stricken are deletions; words underlined are additions.
App. 0151

Be It Enacted by the Legislature of the State of Florida:

Section 1.   Section 15.21, Florida Statutes, is amended to read:

15.21   Initiative petitions; s. 3, Art. XI, State Constitution.—

(1)   The Secretary of State shall immediately submit an initiative petition to the Attorney General if the sponsor has:

(a)(1)   Registered as a political committee pursuant to s. 106.03;

(b)(2)   Submitted the ballot title, substance, and text of the proposed revision or amendment to the Secretary of State pursuant to ss. 100.371 and 101.161; and

(c)(3)   Obtained a letter from the Division of Elections confirming that the sponsor has submitted to the appropriate supervisors for verification, and the supervisors have verified, forms signed and dated equal to 25 percent of the number of electors statewide required by s. 3, Art. XI of the State Constitution in one-half of the congressional districts of the state.

(2)   If the Secretary of State has submitted an initiative petition to the Attorney General pursuant to subsection (1) but the validity of the signatures for such initiative petition have expired pursuant to s. 100.371(11)(a) before securing ballot placement, the Secretary of State must promptly notify the Attorney General. The Secretary of State may resubmit the initiative petition to the Attorney General if the initiative petition is later circulated for placement on the ballot of a subsequent general election and the criteria under subsection (1) are satisfied.

Section 2.   Subsection (4) is added to section 16.061, Florida Statutes, to read:

16.061   Initiative petitions.—

(4)   If the Attorney General is notified by the Secretary of State pursuant to s. 15.21(2) that an initiative petition no longer qualifies for ballot placement for the ensuing general election, the Attorney General must withdraw his or her request for an advisory opinion if the Supreme Court has not yet fulfilled that request. If the Secretary of State subsequently resubmits the initiative petition if the criteria in s. 15.21(1) are again satisfied and the court has not issued its advisory opinion, the Attorney General must file a new petition seeking such advisory opinion.

Section 3.   Section 97.022, Florida Statutes, is created to read:

97.022   Office of Election Crimes and Security; creation; purpose and duties.—

CODING: Words stricken are deletions; words underlined are additions.
App. 0172

(1)   The Office of Election Crimes and Security is created within the Department of State. The purpose of the office is to aid the Secretary of State in completion of his or her duties under s. 97.012(12) and (15) by:

(a)   Receiving and reviewing notices and reports generated by government officials or any other person regarding alleged occurrences of election law violations or election irregularities in this state.

(b)   Initiating independent inquiries and conducting preliminary investigations into allegations of election law violations or election irregularities in this state.

(2)   The office may review complaints and conduct preliminary investigations into alleged violations of the Florida Election Code or any rule adopted pursuant thereto and any election irregularities.

(3)   The secretary shall appoint a director of the office.

(4)   The office shall be based in Tallahassee and shall employ nonsworn investigators to conduct any investigations. The positions and resources necessary for the office to accomplish its duties shall be established through and subject to the legislative appropriations process.

(5)   The office shall oversee the department's voter fraud hotline.

(6)   This section does not limit the jurisdiction of any other office or agency of the state empowered by law to investigate, act upon, or dispose of alleged election law violations.

(7)   By January 15 of each year, the department shall submit a report to the Governor, the President of the Senate, and the Speaker of the House of Representatives detailing information on investigations of alleged election law violations or election irregularities conducted during the prior calendar year. The report must include the total number of complaints received and independent investigations initiated and the number of complaints referred to another agency for further investigation or prosecution, including the total number of those matters sent to a special officer pursuant to s. 102.091. For each alleged violation or irregularity investigated, the report must include:

(a)   The source of the alleged violation or irregularity;

(b)   The law allegedly violated or the nature of the irregularity reported;

(c)   The county in which the alleged violation or irregularity occurred;

(d)   Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution, and if so, to which agency; and

(e)   The current status of the investigation or resulting criminal case.

CODING: Words stricken are deletions; words underlined are additions.

Section 4.    Section 97.0291, Florida Statutes, is amended to read:

97.0291    Prohibition on use of private funds for election-related expenses. No agency or state or local official responsible for conducting elections, including, but not limited to, a supervisor of elections, may solicit, accept, use, or dispose of any donation in the form of money, grants, property, or personal services from an individual or a nongovernmental entity for the purpose of funding <u>any type of</u> <s>election-related</s> expenses <u>related to election administration, including, but not limited to,</u> <s>or</s> voter education, voter outreach, <u>voter</u> <s>or</s> registration programs<u>, or the cost of any litigation related to election administration</u>. This section does not prohibit the donation and acceptance of space to be used for a polling room or an early voting site.

Section 5.    Paragraph (g) is added to subsection (3) of section 97.052, Florida Statutes, to read:

97.052    Uniform statewide voter registration application.—

(3)    The uniform statewide voter registration application must also contain:

<u>(g)    A statement informing the applicant that if the application is being collected by a third-party voter registration organization, the organization might not deliver the application to the division or the supervisor in the county in which the applicant resides in less than 14 days or before registration closes for the next ensuing election, and that the applicant may instead elect to deliver the application in person or by mail or choose to register online. The statement must further inform the applicant how to determine whether the application has been delivered.</u>

Section 6.    Effective January 1, 2023, subsection (13) of section 97.057, Florida Statutes, is amended to read:

97.057    Voter registration by the Department of Highway Safety and Motor Vehicles.—

(13)    The Department of Highway Safety and Motor Vehicles must assist the Department of State in regularly identifying changes in residence address on the driver license or identification card of a voter. The Department of State must report each such change to the appropriate supervisor of elections who must change the voter's registration records in accordance with <u>s. 98.065(5)</u> <s>s. 98.065(4)</s>.

Section 7.    Present subsections (4) through (7) of section 97.0575, Florida Statutes, are redesignated as subsections (5) through (8), respectively, a new subsection (4) is added to that section, and paragraph (a) of subsection (3) of that section is amended, to read:

97.0575    Third-party voter registrations.—

5

(3)(a)   A third-party voter registration organization that collects voter registration applications serves as a fiduciary to the applicant, ensuring that any voter registration application entrusted to the organization, irrespective of party affiliation, race, ethnicity, or gender, must be promptly delivered to the division or the supervisor of elections in the county in which the applicant resides within 14 days after the application was completed by the applicant, but not after registration closes for the next ensuing election. ~~A third-party voter registration organization must notify the applicant at the time the application is collected that the organization might not deliver the application to the division or the supervisor of elections in the county in which the applicant resides in less than 14 days or before registration closes for the next ensuing election and must advise the applicant that he or she may deliver the application in person or by mail. The third-party voter registration organization must also inform the applicant how to register online with the division and how to determine whether the application has been delivered.~~ If a voter registration application collected by any third-party voter registration organization is not promptly delivered to the division or supervisor of elections in the county in which the applicant resides, the third-party voter registration organization is liable for the following fines:

1.   A fine in the amount of $50 for each application received by the division or the supervisor of elections in the county in which the applicant resides more than 14 days after the applicant delivered the completed voter registration application to the third-party voter registration organization or any person, entity, or agent acting on its behalf. A fine in the amount of $250 for each application received if the third-party voter registration organization or person, entity, or agency acting on its behalf acted willfully.

2.   A fine in the amount of $100 for each application collected by a third-party voter registration organization or any person, entity, or agent acting on its behalf, before book closing for any given election for federal or state office and received by the division or the supervisor of elections in the county in which the applicant resides after the book-closing deadline for such election. A fine in the amount of $500 for each application received if the third-party registration organization or person, entity, or agency acting on its behalf acted willfully.

3.   A fine in the amount of $500 for each application collected by a third-party voter registration organization or any person, entity, or agent acting on its behalf, which is not submitted to the division or supervisor of elections in the county in which the applicant resides. A fine in the amount of $1,000 for any application not submitted if the third-party voter registration organization or person, entity, or agency acting on its behalf acted willfully.

The aggregate fine pursuant to this paragraph which may be assessed against a third-party voter registration organization, including affiliate organizations, for violations committed in a calendar year is <u>$50,000</u> ~~$1,000~~.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(4)  If a person collecting voter registration applications on behalf of a third-party voter registration organization alters the voter registration application of any other person, without the other person's knowledge and consent, in violation of s. 104.012(4) and is subsequently convicted of such offense, the applicable third-party voter registration organization is liable for a fine in the amount of $1,000 for each application altered.

Section 8.   Effective January 1, 2023, present subsections (3) through (6) of section 98.065, Florida Statutes, are redesignated as subsections (4) through (7), respectively, a new subsection (3) is added to that section, and subsection (2) and present subsections (3), (4), and (5) of that section are amended, to read:

98.065   Registration list maintenance programs.—

(2)  A supervisor must incorporate one or more of the following procedures in the supervisor's underlined annual biennial registration list maintenance program under which the supervisor shall:

(a)  Use change-of-address information supplied by the United States Postal Service through its licensees is used to identify registered voters whose addresses might have changed. Additionally, in odd-numbered years, unless the supervisor is conducting the procedure specified in paragraph (b), the supervisor must identify change-of-address information from returned nonforwardable return-if-undeliverable address confirmation requests mailed to all registered voters who have not voted in the preceding two general elections or any intervening election and who have not made a request that their registration records be updated during that time; or

(b)  Identify change-of-address information is identified from returned nonforwardable return-if-undeliverable mail sent to all registered voters in the county; or

(c)  Change-of-address information is identified from returned nonforwardable return-if-undeliverable address confirmation requests mailed to all registered voters who have not voted in the last 2 years and who did not make a written request that their registration records be updated during that time.

(3)  Address confirmation requests sent pursuant to paragraph (2)(a) and mail sent pursuant to paragraph (b) must be addressed to the voter's address of legal residence, not including voters temporarily residing outside the county and registered in the precinct designated by the supervisor pursuant to s. 101.045(1). If a request is returned as undeliverable, any other notification sent to the voter pursuant to subsection (5) or s. 98.0655 must be addressed to the voter's mailing address on file, if any.

(4)  A registration list maintenance program must be conducted by each supervisor, at a minimum, once in each odd-numbered year and must be completed not later than 90 days before prior to the date of any federal

7

election. All list maintenance actions associated with each voter must be entered, tracked, and maintained in the statewide voter registration system.

(5)(a)(4)(a)  If the supervisor receives change-of-address information pursuant to the activities conducted in subsection (2), from jury notices signed by the voter and returned to the courts, from the Department of Highway Safety and Motor Vehicles, or from other sources which indicates that a registered voter's legal residence might have changed to another location within the state, the supervisor must change the registration records to reflect the new address and must send the voter an address change notice as provided in s. 98.0655(2).

(b)  If the supervisor of elections receives change-of-address information pursuant to the activities conducted in subsection (2), from jury notices signed by the voter and returned to the courts, or from other sources which indicates that a registered voter's legal residence might have changed to a location outside the state, the supervisor of elections shall send an address confirmation final notice to the voter as provided in s. 98.0655(3).

(c)  If an address confirmation request required by paragraph (2)(a) is returned as undeliverable without indication of an address change, or there is no response from the voter within 30 days, or if any other nonforwardable return-if-undeliverable mail is returned as undeliverable with no indication of an address change, the supervisor shall send an address confirmation final notice to all addresses on file for the voter.

(d)  The supervisor must designate as inactive all voters who have been sent an address confirmation final notice and who have not returned the postage prepaid, preaddressed return form within 30 days or for which the final notice has been returned as undeliverable. Names on the inactive list may not be used to calculate the number of signatures needed on any petition. A voter on the inactive list may be restored to the active list of voters upon the voter updating his or her registration and confirming his or her current address of legal residence, requesting a vote-by-mail ballot and confirming his or her current address of legal residence, or appearing to vote and confirming his or her current address of legal residence. However, if the voter does not update his or her voter registration information, request a vote-by-mail ballot, or vote by the second general election after being placed on the inactive list, the voter's name shall be removed from the statewide voter registration system and the voter shall be required to reregister to have his or her name restored to the statewide voter registration system.

(6)(5)  A notice may not be issued pursuant to this section and a voter's name may not be removed from the statewide voter registration system later than 90 days prior to the date of a federal election. However, this section does not preclude the correction of registration records based on information submitted by the voter or removal of the name of a voter from the statewide voter registration system at any time upon the voter's written request, by reason of the voter's death, or upon a determination of the voter's ineligibility as provided in s. 98.075(7).

CODING: Words stricken are deletions; words underlined are additions.

Section 9.  Effective January 1, 2023, subsections (1) and (3) of section 98.0655, Florida Statutes, are amended to read:

98.0655  Registration list maintenance forms.—The department shall prescribe registration list maintenance forms to be used by the supervisors which must include:

(1)  An address confirmation request that must contain:

(a)  The voter's name and address of legal residence as shown on the voter registration record; and

(b)  A request that the voter notify the supervisor if either the voter's name or address of legal residence is incorrect;

(c)  If the address confirmation request is required by s. 98.065(2)(a), a statement that if the voter has not changed his or her legal residence or has changed his or her legal residence within the state, the voter should return the form within 30 days after the date on which the notice was sent to the voter; and

(d)  Information about updating voter information through the online voter registration system.

(3)  An address confirmation final notice that must be sent to the newly recorded address of legal residence, or to all addresses on file for the voter if no indication of new address has been received, by forwardable mail and must contain a postage prepaid, preaddressed return form and a statement that:

(a)  If the voter has not changed his or her legal residence or has changed his or her legal residence within the state, the voter should return the form within 30 days after the date on which the notice was sent to the voter.

(b)  If the voter has changed his or her legal residence to a location outside the state:

1.  The voter shall return the form, which serves as a request to be removed from the registration books; and

2.  The voter shall be provided with information on how to register in the new jurisdiction in order to be eligible to vote.

(c)  If the return form is not returned, the voter's name shall be designated as inactive in the statewide voter registration system, and confirmation of the voter's address of legal residence may be required before the voter is authorized to vote in an election.

Section 10.  Paragraph (a) of subsection (3) of section 98.075, Florida Statutes, is amended to read:

9

CODING: Words stricken are deletions; words underlined are additions.

98.075  Registration records maintenance activities; ineligibility determinations.—

(3)  DECEASED PERSONS.—

(a)1.  The department shall identify those registered voters who are deceased by comparing information received from ~~either~~:

a.  The Department of Health as provided in s. 98.093; ~~or~~

b.  The United States Social Security Administration, including, but not limited to, any master death file or index compiled by the United States Social Security Administration; and

c.  The Department of Highway Safety and Motor Vehicles.

2.  Within 7 days after receipt of such information through the statewide voter registration system, the supervisor shall remove the name of the registered voter.

Section 11.  Section 98.093, Florida Statutes, is amended to read:

98.093  Duty of officials to furnish information relating to deceased persons, persons adjudicated mentally incapacitated, ~~and~~ persons convicted of a felony, and persons who are not United States citizens.—

(1)  In order to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system pursuant to procedures in s. 98.065 or s. 98.075, it is necessary for the department and supervisors of elections to receive or access certain information from state and federal officials and entities in the format prescribed.

(2)  To the maximum extent feasible, state and local government agencies shall facilitate provision of information and access to data to the department, including, but not limited to, databases that contain reliable criminal records and records of deceased persons. State and local government agencies that provide such data shall do so without charge if the direct cost incurred by those agencies is not significant.

(a)  The Department of Health shall furnish monthly to the department a list containing the name, address, date of birth, date of death, social security number, race, and sex of each deceased person 17 years of age or older.

(b)  Each clerk of the circuit court shall furnish monthly to the department:

1.  A list of those persons who have been adjudicated mentally incapacitated with respect to voting during the preceding calendar month, a list of those persons whose mental capacity with respect to voting has been restored during the preceding calendar month, and a list of those persons

10

who have returned signed jury notices during the preceding months to the clerk of the circuit court indicating a change of address. Each list shall include the name, address, date of birth, race, sex, and, whichever is available, the Florida driver license number, Florida identification card number, or social security number of each such person.

2.   Information on the terms of sentence for felony convictions, including any financial obligations for court costs, fees, and fines, of all persons listed in the clerk's records whose last known address in the clerk's records is within this state and who have been convicted of a felony during the preceding month. The information may be provided directly by individual clerks of the circuit court or may be provided on their behalf through the Comprehensive Case Information System. For each felony conviction reported, the information must include:

a.   The full name, last known address, date of birth, race, sex, and, if available, the Florida driver license number or Florida identification card number, as applicable, and the social security number of the person convicted.

b.   The amounts of all financial obligations, including restitution and court costs, fees, and fines, and, if known, the amount of financial obligations not yet satisfied.

c.   The county in which the conviction occurred.

d.   The statute number violated, statute table text, date of conviction, and case number.

(c)   Upon receipt of information from the United States Attorney, listing persons convicted of a felony in federal court, the department shall use such information to identify registered voters or applicants for voter registration who may be potentially ineligible based on information provided in accordance with s. 98.075.

(d)   The Department of Law Enforcement shall identify those persons who have been convicted of a felony who appear in the voter registration records supplied by the statewide voter registration system, in a time and manner that enables the department to meet its obligations under state and federal law.

(e)   The Florida Commission on Offender Review shall furnish at least bimonthly to the department data, including the identity of those persons granted clemency in the preceding month or any updates to prior records which have occurred in the preceding month. The data shall contain the commission's case number and the person's name, address, date of birth, race, gender, Florida driver license number, Florida identification card number, or the last four digits of the social security number, if available, and references to record identifiers assigned by the Department of Corrections

11

CODING: Words stricken are deletions; words underlined are additions.

and the Department of Law Enforcement, a unique identifier of each clemency case, and the effective date of clemency of each person.

(f)  The Department of Corrections shall identify those persons who have been convicted of a felony and committed to its custody or placed on community supervision. The information must be provided to the department at a time and in a manner that enables the department to identify registered voters who are convicted felons and to meet its obligations under state and federal law.

(g)  The Department of Highway Safety and Motor Vehicles shall furnish monthly to the department:

1.  A list of those persons whose names have been removed from the driver license database because they have been licensed in another state. The list must shall contain the name, address, date of birth, sex, social security number, and driver license number of each such person.

2.  A list of those persons who presented evidence of non-United States citizenship upon being issued a new or renewed Florida driver license or Florida identification card. The list must contain the name; address; date of birth; social security number, if applicable; and Florida driver license number or Florida identification card number, as applicable, of each such person.

(3)  This section does not limit or restrict the supervisor in his or her duty to remove the names of persons from the statewide voter registration system pursuant to s. 98.075(7) based upon information received from other sources.

Section 12.  Paragraph (a) of subsection (2) of section 100.041, Florida Statutes, is amended to read:

100.041  Officers chosen at general election.—

(2)(a)  Except as provided in s. 124.011 relating to single member districts after decennial redistricting, each county commissioner from an odd-numbered district shall be elected at the general election in each year the number of which is a multiple of 4, for a 4-year term commencing on the second Tuesday following such election, and each county commissioner from an even-numbered district shall be elected at the general election in each even-numbered year the number of which is not a multiple of 4, for a 4-year term commencing on the second Tuesday following such election. A county commissioner is "elected" for purposes of this paragraph on the date that the county canvassing board certifies the results of the election pursuant to s. 102.151.

Section 13.  Paragraphs (a) and (c) of subsection (11) and paragraph (a) of subsection (13) of section 100.371, Florida Statutes, are amended to read:

100.371  Initiatives; procedure for placement on ballot.—

CODING: Words stricken are deletions; words underlined are additions.

(11)(a)   An initiative petition form circulated for signature may not be bundled with or attached to any other petition. Each signature shall be dated when made and shall be valid until the next February 1 occurring in an even-numbered year for the purpose of the amendment appearing on the ballot for the general election occurring in that same year, provided all other requirements of law are met. The sponsor shall submit signed and dated forms to the supervisor of elections for the county of residence listed by the person signing the form for verification of the number of valid signatures obtained. If a signature on a petition is from a registered voter in another county, the supervisor shall notify the petition sponsor of the misfiled petition. The supervisor shall promptly verify the signatures within 60 days after receipt of the petition forms and payment of a fee for the actual cost of signature verification incurred by the supervisor. However, for petition forms submitted less than 60 days before February 1 of an even-numbered year, the supervisor shall promptly verify the signatures within 30 days after receipt of the form and payment of the fee for signature verification. The supervisor shall promptly record, in the manner prescribed by the Secretary of State, the date each form is received by the supervisor, and the date the signature on the form is verified as valid. The supervisor may verify that the signature on a form is valid only if:

1.   The form contains the original signature of the purported elector.

2.   The purported elector has accurately recorded on the form the date on which he or she signed the form.

3.   The form sets forth the purported elector's name, address, city, county, and voter registration number or date of birth.

4.   The purported elector is, at the time he or she signs the form and at the time the form is verified, a duly qualified and registered elector in the state.

5.   The signature was obtained legally, including that if a paid petition circulator was used, the circulator was validly registered under subsection (3) when the signature was obtained.

The supervisor shall retain all ~~the~~ signature forms, separating forms verified as valid from those deemed invalid, for at least 1 year following the election for ~~in~~ which the petition was circulated ~~issue appeared on the ballot or until the division notifies the supervisors of elections that the committee that circulated the petition is no longer seeking to obtain ballot position~~.

(c)   On the last day of each month, or on the last day of each week from December 1 of an odd-numbered year through February 1 of the following year, each supervisor shall post on his or her website the total number of signatures submitted, the total number of invalid signatures, the total number of signatures processed, and the aggregate number of verified valid signatures and the distribution of such signatures by congressional district for each proposed amendment proposed by initiative, along with the

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

following information specific to the reporting period: the total number of signed petition forms received, the total number of signatures verified, the distribution of verified valid signatures by congressional district, and the total number of verified petition forms forwarded to the Secretary of State.

(13)(a)  At the same time the Secretary of State submits an initiative petition to the Attorney General pursuant to s. 15.21, the secretary shall submit a copy of the initiative petition to the Financial Impact Estimating Conference. Within 75 days after receipt of a proposed revision or amendment to the State Constitution by initiative petition from the Secretary of State, the Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments and the overall impact to the state budget resulting from the proposed initiative. The 75-day time limit is tolled when the Legislature is in session. The Financial Impact Estimating Conference shall submit the financial impact statement to the Attorney General and Secretary of State. If the initiative petition has been submitted to the Financial Impact Estimating Conference but the validity of signatures has expired and the initiative petition no longer qualifies for ballot placement at the ensuing general election, the Secretary of State must notify the Financial Impact Estimating Conference. The Financial Impact Estimating Conference is not required to complete an analysis and financial impact statement for an initiative petition that fails to meet the requirements of subsection (1) for placement on the ballot before the 75-day time limit, including any tolling period, expires. The initiative petition may be resubmitted to the Financial Impact Estimating Conference if the initiative petition meets the requisite criteria for a subsequent general election cycle. A new Financial Impact Estimating Conference shall be established at such time as the initiative petition again satisfies the criteria in s. 15.21(1).

Section 14.  Section 101.019, Florida Statutes, is created to read:

101.019  Ranked-choice voting prohibited.—

(1)  A ranked-choice voting method that allows voters to rank candidates for an office in order of preference and has ballots cast be tabulated in multiple rounds following the elimination of a candidate until a single candidate attains a majority may not be used in determining the election or nomination of any candidate to any local, state, or federal elective office in this state.

(2)  Any existing or future ordinance enacted or adopted by a county, a municipality, or any other local governmental entity which is in conflict with this section is void.

Section 15.  Paragraphs (b) and (c) of subsection (1) of section 101.043, Florida Statutes, are amended to read:

101.043  Identification required at polls.—

CODING: Words stricken are deletions; words underlined are additions.
App. 0205.

(1)

(b)  If the picture identification does not contain the signature of the elector, an additional identification that provides the elector's signature shall be required. The address appearing on the identification presented by the elector may not be used as the basis to ~~confirm an elector's legal residence or otherwise~~ challenge an elector's legal residence. The elector shall sign his or her name in the space provided on the precinct register or on an electronic device provided for recording the elector's signature. The clerk or inspector shall compare the signature with that on the identification provided by the elector and enter his or her initials in the space provided on the precinct register or on an electronic device provided for that purpose and allow the elector to vote if the clerk or inspector is satisfied as to the identity of the elector.

~~(c)  When an elector presents his or her picture identification to the clerk or inspector and the elector's address on the picture identification matches the elector's address in the supervisor's records, the elector may not be asked to provide additional information or to recite his or her home address.~~

Section 16.   Subsections (2) and (5) of section 101.051, Florida Statutes, are amended to read:

101.051  Electors seeking assistance in casting ballots; oath to be executed; forms to be furnished.—

(2)  It is unlawful for any person to be in the voting booth with any elector except as provided in subsection (1). A person at a polling place, a <u>secure ballot intake station</u> ~~drop box~~ location, or an early voting site, or within 150 feet of a <u>secure ballot intake station</u> ~~drop box~~ location or the entrance of a polling place or an early voting site, may not solicit any elector in an effort to provide assistance to vote pursuant to subsection (1). Any person who violates this subsection commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

(5)  If an elector needing assistance requests that a person other than an election official provide him or her with assistance in voting, the clerk or one of the inspectors shall require the person providing assistance to take the following oath:

DECLARATION TO PROVIDE ASSISTANCE

State of Florida

County of ......

Date ......

Precinct ......

15

I, …(Print name)…, have been requested by …(print name of elector needing assistance)… to provide him or her with assistance to vote. I swear or affirm that I am not the employer, an agent of the employer, or an officer or agent of the union of the voter and that I have not solicited this voter at the polling place, <u>secure ballot intake station</u> <s>drop box</s> location, or early voting site or within 150 feet of such locations in an effort to provide assistance.

…(Signature of assistor)…

Sworn and subscribed to before me this ...... day of ......, …(year)….

…(Signature of Official Administering Oath)…

Section 17.   Subsection (9) of section 101.151, Florida Statutes, is amended to read:

101.151   Specifications for ballots.—

(9)(a)   The Department of State shall adopt rules prescribing a uniform primary and general election ballot for each certified voting system. The rules shall incorporate the requirements set forth in this section and shall prescribe additional matters and forms that include, without limitation:

1.   The ballot title followed by clear and unambiguous ballot instructions and directions limited to a single location on the ballot, either:

a.   Centered across the top of the ballot; or

b.   In the leftmost column, with no individual races in that column unless it is the only column on the ballot;

2.   Individual race layout; <u>and</u>

3.   Overall ballot layout<s>; and</s>

<s>4.   Oval vote targets as the only permissible type of vote target, except as provided in s. 101.56075</s>.

(b)   The rules must graphically depict a sample uniform primary and general election ballot form for each certified voting system.

Section 18.   Paragraph (a) of subsection (4) and subsection (8) of section 101.5614, Florida Statutes, are amended to read:

101.5614   Canvass of returns.—

(4)(a)   If any vote-by-mail ballot is physically damaged so that it cannot properly be counted by the voting system's automatic tabulating equipment,

a true duplicate copy shall be made of the damaged ballot in an open and accessible room in the presence of witnesses and substituted for the damaged ballot. Likewise, a duplicate ballot shall be made of a vote-by-mail ballot containing an overvoted race if there is a clear indication on the ballot that the voter has made a definite choice in the overvoted race or ballot measure. A duplicate shall include all valid votes as determined by the canvassing board based on rules adopted by the division pursuant to s. 102.166(4). A duplicate may be made of a ballot containing an undervoted race or ballot measure if there is a clear indication on the ballot that the voter has made a definite choice in the undervoted race or ballot measure. A duplicate may not include a vote if the voter's intent in such race or on such measure is not clear. Upon request, a physically present candidate, a political party official, a political committee official, or an authorized designee thereof, must be allowed to observe the duplication of ballots <u>upon signing an affidavit affirming his or her acknowledgment that disclosure of election results discerned from observing the ballot duplication process while the election is ongoing is a felony, as provided under subsection (8)</u>. The observer must be allowed to observe the duplication of ballots in such a way that the observer is able to see the markings on each ballot and the duplication taking place. All duplicate ballots must be clearly labeled "duplicate," bear a serial number which shall be recorded on the defective ballot, and be counted in lieu of the defective ballot. The duplication of ballots must happen in the presence of at least one canvassing board member. After a ballot has been duplicated, the defective ballot shall be placed in an envelope provided for that purpose, and the duplicate ballot shall be tallied with the other ballots for that precinct. If any observer makes a reasonable objection to a duplicate of a ballot, the ballot must be presented to the canvassing board for a determination of the validity of the duplicate. The canvassing board must document the serial number of the ballot in the canvassing board's minutes. The canvassing board must decide whether the duplication is valid. If the duplicate ballot is determined to be valid, the duplicate ballot must be counted. If the duplicate ballot is determined to be invalid, the duplicate ballot must be rejected and a proper duplicate ballot must be made and counted in lieu of the original.

(8)  Any supervisor of elections, deputy supervisor of elections, canvassing board member, election board member, or election employee<u>, or other person authorized to observe, review, or inspect ballot materials or observe canvassing</u> who releases <u>any information about votes cast for or against any candidate or ballot measure or any</u> the results of any election <u>before</u> prior to the closing of the polls in that county on election day commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Section 19.   Subsections (1) and (6) of section 101.6103, Florida Statutes, are amended to read:

101.6103   Mail ballot election procedure.—

(1)  Except as otherwise provided in subsection (7), the supervisor of elections shall mail all official ballots with a secrecy envelope, a return

CODING: Words stricken are deletions; words <u>underlined</u> are additions.

mailing envelope, and instructions sufficient to describe the voting process to each elector entitled to vote in the election <u>within the timeframes specified in s. 101.62(4)</u> ~~not sooner than the 20th day before the election and not later than the 10th day before the date of the election~~. All such ballots shall be mailed by first-class mail. Ballots shall be addressed to each elector at the address appearing in the registration records and placed in an envelope which is prominently marked "Do Not Forward."

(6)   The canvassing board may begin the canvassing of mail ballots <u>as provided by s. 101.68(2)(a). The criminal penalty specified in that paragraph for the release of results before 7 p.m. on election day is also applicable to canvassing conducted under this act</u> ~~at 7 a.m. on the sixth day before the election, including processing the ballots through the tabulating equipment. However, results may not be released until after 7 p.m. on election day. Any canvassing board member or election employee who releases any result before 7 p.m. on election day commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.~~

Section 20.   Section 101.65, Florida Statutes, is amended to read:

101.65   Instructions to absent electors.—The supervisor shall enclose with each vote-by-mail ballot separate printed instructions in substantially the following form; however, where the instructions appear in capitalized text, the text of the printed instructions must be in bold font:

READ THESE INSTRUCTIONS CAREFULLY
BEFORE MARKING BALLOT.

1.   VERY IMPORTANT. In order to ensure that your vote-by-mail ballot will be counted, it should be completed and returned as soon as possible so that it can reach the supervisor of elections of the county in which your precinct is located no later than 7 p.m. on the day of the election. However, if you are an overseas voter casting a ballot in a presidential preference primary or general election, your vote-by-mail ballot must be postmarked or dated no later than the date of the election and received by the supervisor of elections of the county in which you are registered to vote no later than 10 days after the date of the election. Note that the later you return your ballot, the less time you will have to cure any signature deficiencies, which is authorized until 5 p.m. on the 2nd day after the election.

2.   Mark your ballot in secret as instructed on the ballot. You must mark your own ballot unless you are unable to do so because of blindness, disability, or inability to read or write.

3.   Mark only the number of candidates or issue choices for a race as indicated on the ballot. If you are allowed to "Vote for One" candidate and you vote for more than one candidate, your vote in that race will not be counted.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

4.   Place your marked ballot in the enclosed secrecy envelope.

5.   Insert the secrecy envelope into the enclosed mailing envelope which is addressed to the supervisor.

6.   Seal the mailing envelope and completely fill out the Voter's Certificate on the back of the mailing envelope.

7.   VERY IMPORTANT. In order for your vote-by-mail ballot to be counted, you must sign your name on the line above (Voter's Signature). A vote-by-mail ballot will be considered illegal and not be counted if the signature on the voter's certificate does not match the signature on record. The signature on file at the time the supervisor of elections in the county in which your precinct is located receives your vote-by-mail ballot is the signature that will be used to verify your signature on the voter's certificate. If you need to update your signature for this election, send your signature update on a voter registration application to your supervisor of elections so that it is received before your vote-by-mail ballot is received.

8.   VERY IMPORTANT. If you are an overseas voter, you must include the date you signed the Voter's Certificate on the line above (Date) or your ballot may not be counted.

9.   Mail, deliver, or have delivered the completed mailing envelope. Be sure there is sufficient postage if mailed. THE COMPLETED MAILING ENVELOPE CAN BE DELIVERED TO THE OFFICE OF THE SUPER-VISOR OF ELECTIONS OF THE COUNTY IN WHICH YOUR PRECINCT IS LOCATED OR DROPPED OFF AT AN AUTHORIZED SECURE BALLOT INTAKE STATION <s>DROP BOX</s>, AVAILABLE AT EACH EARLY VOTING LOCATION.

10.   FELONY NOTICE. It is a felony under Florida law to accept any gift, payment, or gratuity in exchange for your vote for a candidate. It is also a felony under Florida law to vote in an election using a false identity or false address, or under any other circumstances making your ballot false or fraudulent.

Section 21.   Subsection (1) of section 101.655, Florida Statutes, is amended to read:

101.655   Supervised voting by absent electors in certain facilities.—

(1)   The supervisor of elections of a county shall provide supervised voting for absent electors residing in any assisted living facility, as defined in s. 429.02, or nursing home facility, as defined in s. 400.021, within that county at the request of any administrator of such a facility. Such request for supervised voting in the facility shall be made by submitting a written request to the supervisor of elections no later than 28 <s>21</s> days prior to the election for which that request is submitted. The request shall specify the name and address of the facility and the name of the electors who wish to vote by mail in that election. If the request contains the names of fewer than

19

five voters, the supervisor of elections is not required to provide supervised voting.

Section 22.   Subsections (2) and (3) of section 101.69, Florida Statutes, are amended to read:

101.69   Voting in person; return of vote-by-mail ballot.—

(2)(a)   The supervisor shall allow an elector who has received a vote-by-mail ballot to physically return a voted vote-by-mail ballot to the supervisor by placing the return mail envelope containing his or her marked ballot in a secure ballot intake station drop box. Secure ballot intake stations drop boxes shall be placed at the main office of the supervisor, at each permanent branch office of the supervisor which meets the criteria set forth in s. 101.657(1)(a) for branch offices used for early voting and is open for at least the minimum amount of hours prescribed by s. 98.015(4), and at each early voting site. Secure ballot intake stations drop boxes may also be placed at any other site that would otherwise qualify as an early voting site under s. 101.657(1). Secure ballot intake stations Drop boxes must be geographically located so as to provide all voters in the county with an equal opportunity to cast a ballot, insofar as is practicable. Except for secure ballot intake stations drop boxes at an office of the supervisor, a secure ballot intake station drop box may only be used during the county's early voting hours of operation and must be monitored in person by an employee of the supervisor's office. A secure ballot intake station drop box at an office of the supervisor must be continuously monitored in person by an employee of the supervisor's office when the secure ballot intake station drop box is accessible for deposit of ballots.

(b)   A supervisor shall designate each secure ballot intake station location drop box site at least 30 days before an election. The supervisor shall provide the address of each secure ballot intake station drop box location to the division at least 30 days before an election. After a secure ballot intake station drop box location has been designated, it may not be moved or changed except as approved by the division to correct a violation of this subsection.

(c)1.   On each day of early voting, all secure ballot intake stations drop boxes must be emptied at the end of early voting hours and all ballots retrieved from the secure ballot intake stations drop boxes must be returned to the supervisor's office.

2.   For secure ballot intake stations drop boxes located at an office of the supervisor, all ballots must be retrieved before the secure ballot intake station drop box is no longer monitored by an employee of the supervisor.

3.   Employees of the supervisor must comply with procedures for the chain of custody of ballots as required by s. 101.015(4).

20
CODING: Words stricken are deletions; words underlined are additions.

(3)   If any <u>secure ballot intake station</u> <s>drop box</s> is left accessible for ballot receipt other than as authorized by this section, the supervisor is subject to a civil penalty of $25,000. The division is authorized to enforce this provision.

Section 23.   Paragraph (a) of subsection (4) of section 102.031, Florida Statutes, is amended to read:

102.031   Maintenance of good order at polls; authorities; persons allowed in polling rooms and early voting areas; unlawful solicitation of voters.—

(4)(a)   No person, political committee, or other group or organization may solicit voters inside the polling place or within 150 feet of a <u>secure ballot intake station</u> <s>drop box</s> or the entrance to any polling place, a polling room where the polling place is also a polling room, an early voting site, or an office of the supervisor where vote-by-mail ballots are requested and printed on demand for the convenience of electors who appear in person to request them. Before the opening of a <u>secure ballot intake station</u> <s>drop box</s> location, a polling place, or an early voting site, the clerk or supervisor shall designate the no-solicitation zone and mark the boundaries.

Section 24.   Section 102.091, Florida Statutes, is amended to read:

102.091   Duty of sheriff to watch for violations; appointment of special officers.—

<u>(1)</u>   The sheriff shall exercise strict vigilance in the detection of any violations of the election laws and in apprehending the violators.

<u>(2)</u>   The Governor<u>, in consultation with the executive director of the Department of Law Enforcement, shall</u> <s>may</s> appoint special officers to investigate alleged violations of the election laws<u>,</u> <s>when it is deemed necessary</s> to see that violators of the election laws are apprehended and punished. <u>A special officer must be a sworn special agent employed by the Department of Law Enforcement. At least one special officer must be designated in each operational region of the Department of Law Enforcement to serve as a dedicated investigator of alleged violations of the election laws. Appointment as a special officer does not preclude a sworn special agent from conducting other investigations of alleged violations of law, provided that such other investigations do not hinder or interfere with the individual's ability to investigate alleged violations of the election laws.</u>

Section 25.   Section 102.101, Florida Statutes, is amended to read:

102.101   Sheriff and other officers not allowed in polling place.—<u>A</u> <s>No</s> sheriff, <u>a</u> deputy sheriff, <u>a</u> police officer, <u>a special officer appointed pursuant to s. 102.091,</u> or <u>any</u> other officer of the law <u>is not</u> <s>shall be</s> allowed within <u>a</u> <s>the</s> polling place without permission from the clerk or a majority of the inspectors, except to cast his or her ballot. Upon the failure of any <u>such officer</u> <s>of said officers</s> to comply with this <u>section</u> <s>provision</s>, the clerk or the inspectors <u>must</u> <s>or any one of them shall</s> make an affidavit against <u>the</u> <s>such</s> officer for his or her arrest.

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

Section 26.   Subsection (2) of section 104.0616, Florida Statutes, is amended to read:

104.0616   Vote-by-mail ballots and voting; violations.—

(2)   Any person who distributes, orders, requests, collects, delivers, or otherwise physically possesses more than two vote-by-mail ballots per election in addition to his or her own ballot or a ballot belonging to an immediate family member, except as provided in ss. 101.6105-101.694, including supervised voting at assisted living facilities and nursing home facilities as authorized under s. 101.655, commits a <u>felony</u> misdemeanor of the <u>third</u> first degree, punishable as provided in s. 775.082, or s. 775.083<u>, or s. 775.084</u>.

Section 27.   Subsection (2) of section 104.185, Florida Statutes, is amended to read:

104.185   Petitions; knowingly signing more than once; signing another person's name or a fictitious name.—

(2)   A person who signs another person's name or a fictitious name to any petition to secure ballot position for a candidate, a minor political party, or an issue commits a <u>felony</u> misdemeanor of the <u>third</u> first degree, punishable as provided in s. 775.082, or s. 775.083<u>, or s. 775.084</u>.

Section 28.   Section 104.186, Florida Statutes, is amended to read:

104.186   Initiative petitions; violations.—A person who compensates a petition circulator as defined in s. 97.021 based on the number of petition forms gathered commits a <u>felony</u> misdemeanor of the <u>third</u> first degree, punishable as provided in s. 775.082, or s. 775.083<u>, or s. 775.084</u>. This section does not prohibit employment relationships that do not base payment on the number of signatures collected.

Section 29.   Subsection (2) of section 124.011, Florida Statutes, is amended to read:

124.011   Alternate procedure for the election of county commissioners to provide for single-member representation<u>; applicability</u>.—

(2)(a)   All commissioners shall be elected for 4-year terms which shall be staggered so that, alternately, one more or one less than half of the commissioners elected from residence areas and, if applicable, one of the commissioners elected at large from the entire county are elected every 2 years, except that any commissioner may be elected to an initial term of less than 4 years if necessary to achieve or maintain such system of staggered terms. <u>Notwithstanding any law to the contrary, at the general election immediately following redistricting directed by s. 1(e), Art. VIII of the State Constitution, each commissioner elected only by electors who reside in the district must be elected and terms thereafter shall be staggered as provided in s. 100.041.</u>

22

(b)  The term of a commissioner elected under paragraph (a) commences on the second Tuesday after such election.

(c)  This subsection does not apply to:

1.  Miami-Dade County.

2.  Any noncharter county.

3.  Any county the charter of which limits the number of terms a commissioner may serve.

4.  Any county in which voters have never approved a charter amendment limiting the number of terms a commissioner may serve regardless of subsequent judicial nullification.

Section 30.  Paragraph (a) of subsection (3) of section 921.0022, Florida Statutes, is amended to read:

921.0022  Criminal Punishment Code; offense severity ranking chart.—

(3)  OFFENSE SEVERITY RANKING CHART

(a)  LEVEL 1

| Florida Statute | Felony Degree | Description |
|---|---|---|
| 24.118(3)(a) | 3rd | Counterfeit or altered state lottery ticket. |
| 104.0616(2) | 3rd | Unlawfully distributing, ordering, requesting, collecting, delivering, or possessing vote-by-mail ballots. |
| 212.054(2)(b) | 3rd | Discretionary sales surtax; limitations, administration, and collection. |
| 212.15(2)(b) | 3rd | Failure to remit sales taxes, amount $1,000 or more but less than $20,000. |
| 316.1935(1) | 3rd | Fleeing or attempting to elude law enforcement officer. |
| 319.30(5) | 3rd | Sell, exchange, give away certificate of title or identification number plate. |
| 319.35(1)(a) | 3rd | Tamper, adjust, change, etc., an odometer. |
| 320.26(1)(a) | 3rd | Counterfeit, manufacture, or sell registration license plates or validation stickers. |
| 322.212 (1)(a)-(c) | 3rd | Possession of forged, stolen, counterfeit, or unlawfully issued driver license; possession of simulated identification. |

23

CODING: Words stricken are deletions; words underlined are additions.

| Florida Statute | Felony Degree | Description |
|---|---|---|
| 322.212(4) | 3rd | Supply or aid in supplying unauthorized driver license or identification card. |
| 322.212(5)(a) | 3rd | False application for driver license or identification card. |
| 414.39(3)(a) | 3rd | Fraudulent misappropriation of public assistance funds by employee/official, value more than $200. |
| 443.071(1) | 3rd | False statement or representation to obtain or increase reemployment assistance benefits. |
| 509.151(1) | 3rd | Defraud an innkeeper, food or lodging value $1,000 or more. |
| 517.302(1) | 3rd | Violation of the Florida Securities and Investor Protection Act. |
| 713.69 | 3rd | Tenant removes property upon which lien has accrued, value $1,000 or more. |
| 812.014(3)(c) | 3rd | Petit theft (3rd conviction); theft of any property not specified in subsection (2). |
| 815.04(5)(a) | 3rd | Offense against intellectual property (i.e., computer programs, data). |
| 817.52(2) | 3rd | Hiring with intent to defraud, motor vehicle services. |
| 817.569(2) | 3rd | Use of public record or public records information or providing false information to facilitate commission of a felony. |
| 826.01 | 3rd | Bigamy. |
| 828.122(3) | 3rd | Fighting or baiting animals. |
| 831.04(1) | 3rd | Any erasure, alteration, etc., of any replacement deed, map, plat, or other document listed in s. 92.28. |
| 831.31(1)(a) | 3rd | Sell, deliver, or possess counterfeit controlled substances, all but s. 893.03(5) drugs. |
| 832.041(1) | 3rd | Stopping payment with intent to defraud $150 or more. |

24

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

| Florida Statute | Felony Degree | Description |
|---|---|---|
| 832.05(2)(b) & (4)(c) | 3rd | Knowing, making, issuing worthless checks $150 or more or obtaining property in return for worthless check $150 or more. |
| 838.15(2) | 3rd | Commercial bribe receiving. |
| 838.16 | 3rd | Commercial bribery. |
| 843.18 | 3rd | Fleeing by boat to elude a law enforcement officer. |
| 847.011(1)(a) | 3rd | Sell, distribute, etc., obscene, lewd, etc., material (2nd conviction). |
| 849.09(1)(a)-(d) | 3rd | Lottery; set up, promote, etc., or assist therein, conduct or advertise drawing for prizes, or dispose of property or money by means of lottery. |
| 849.23 | 3rd | Gambling-related machines; "common offender" as to property rights. |
| 849.25(2) | 3rd | Engaging in bookmaking. |
| 860.08 | 3rd | Interfere with a railroad signal. |
| 860.13(1)(a) | 3rd | Operate aircraft while under the influence. |
| 893.13(2)(a)2. | 3rd | Purchase of cannabis. |
| 893.13(6)(a) | 3rd | Possession of cannabis (more than 20 grams). |
| 934.03(1)(a) | 3rd | Intercepts, or procures any other person to intercept, any wire or oral communication. |

Section 31.  (1)  It is the intent of the Legislature to balance the security of vote-by-mail balloting with voter privacy and election transparency. The Legislature finds that further modifications to procedures governing vote-by-mail balloting would help to further ensure election integrity while also protecting voters from identity theft and preserving the public's right to participate in election processes. To achieve this purpose, the Legislature directs the Department of State to provide a plan to prescribe the use of a Florida driver license number, Florida identification card number, social security number, or any part thereof to confirm the identity of each elector returning a vote-by-mail ballot.

(2)  The Department of State shall review issues involving the feasibility, development, and implementation of such a plan, including issues related to:

(a)  In coordination with other agencies such as the Department of Highway Safety and Motor Vehicles, obtaining a Florida driver license

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

number or Florida identification card number and the last four digits of a social security number for each registered voter who does not have such numbers on file in the Florida Voter Registration System.

(b)   Populating such numbers in the Florida Voter Registration System.

(c)   Protecting identifying numbers submitted with a vote-by-mail ballot, including, but not limited to, prescribing the form of the return mailing envelope.

(d)   Any necessary modifications to canvassing procedures for vote-by-mail ballots.

(e)   Costs associated with development and implementation of the plan.

(f)   A proposal for a program to educate electors on changes to the vote-by-mail process.

(g)   A proposal for including a declaration of an elector's current address of legal residence with each written request for a vote-by-mail ballot.

(3)   In the course of reviewing the required issues, the Department of State must, at a minimum:

(a)   Review relevant processes of other states.

(b)   Review relevant federal law.

(c)   Seek input from supervisors of elections, which must include representation from supervisors of counties with large, medium, and small populations.

(4)   By February 1, 2023, the Department of State shall submit to the President of the Senate and the Speaker of the House of Representatives a report on the plan and draft legislation for any statutory changes needed to implement the plan, including any necessary public records exemptions.

Section 32.   Except as otherwise expressly provided in this act, this act shall take effect upon becoming a law.

Approved by the Governor April 25, 2022.

Filed in Office Secretary of State April 25, 2022.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

App. 0215.

# Appendix B

Governor Press Release – Announcement of Appointment of OECS Director (July 6, 2022)



# Governor Ron DeSantis Announces the Appointment of Peter Antonacci as Director of the Office of Election Crimes and Security

*On July 6, 2022, in [News Releases](#), [Recent Appointments](#), by Staff*

**TALLAHASSEE, Fla. —**Today, Governor Ron DeSantis announced the appointment of Peter Antonacci as Director of the Office of Election Crimes and Security, housed within the Florida Department of State. The Office of Election Crimes and Security is charged with investigating all election crimes in Florida and overseeing the implementation of measures that will ensure Florida's elections remain secure. Antonacci has had an extensive career in public service, including experience in election security as a Deputy Attorney General, Statewide Prosecutor, and Broward County Supervisor of Elections.

"Peter Antonacci has dedicated his career to serving the state of Florida," said **Governor Ron DeSantis**. "I am confident he will lead the Office of Election Crimes and Security with integrity and ensure that Florida's elections are the most secure in the nation."

"I applaud Governor Ron DeSantis for appointing Peter Antonacci as the first Director of the Office of Election Crimes and Security," said **Florida Secretary of State and Chief Election Officer Cord Byrd**. "In Florida, our freedoms and rights are protected by the rule of law and our elections are no different. Judge Antonacci's formidable knowledge of Florida election law and his experience as a Supervisor of Elections will ensure that our laws are enforced and that voters have confidence in our elections."

"Free and fair elections are vital to our democracy, and I applaud Governor DeSantis for selecting such a respected, experienced attorney to lead this important mission and provide assurance to voters that anyone who commits elections fraud will face justice," said **Attorney General Ashley Moody**.

"I applaud the Florida Legislature and Governor Ron DeSantis for creating the Florida Office of Election Crimes and Security to help ensure the integrity of our elections," said **Polk County Sheriff Grady Judd**. "Having confidence that when we cast our vote, it is counted fairly, is critical to our representative democracy. I've known Peter Antonacci for many years and he is ethical, hardworking, and committed to acting with integrity. He will call balls and strikes. I trust him to make decisions that will strengthen our right to vote. Peter is the right person at the right time for this very important position."

"Election crimes have deep impacts on the security of our state and our nation and investigating them is a very complex matter that sheriffs in our state have a responsibility to address," said **Steve Casey, Executive Director, Florida Sheriffs Association**. "Peter Antonacci is an experienced and skilled choice to lead Florida's efforts to investigate election crimes and ensure the security of Florida's elections. The sheriffs look forward to working in partnership with the new agency in carrying out their responsibilities under law."

"I have had the opportunity to work with Peter as a fellow Supervisor of Elections," said **Mark Earley, Leon County Supervisor of Elections**. "I trust he will serve the people of Florida with an even hand to ensure the continued fairness and sanctity of our elections process. Peter understands the complexities of election law, and the need for a reserved and judicious application of the power this new office wields."

Antonacci's long career in public service began as a trial prosecutor in the Second Judicial Court and has included many other roles, most recently serving as Director and Chief Judge of the Division of Administrative Hearings, following his appointment as Broward County Elections Supervisor in 2018. Previous to that role, Antonacci has served as Deputy Attorney General of Florida under former Attorney General Bob Butterworth, CEO of Enterprise Florida, General Counsel to former Governor Rick Scott, Palm Beach County State Attorney, and Executive Director of the South Florida Water Management District. Antonacci graduated from Florida State University School of Law.

Following Antonacci's appointment, Brian Newman will begin immediately serving as acting Director and Chief Judge of the Division of Administrative Hearings.

###

# Appendix C

Governor Press Release (August 18, 2022)



# Governor DeSantis Announces the Arrest of 20 Elections Criminals

*On August 18, 2022, in* [News Releases](News Releases)*, by Staff*

*In Florida, if you commit an Elections Crime, you will do the time*

**FORT LAUDERDALE, Fla. —** Today, Governor Ron DeSantis announced that following investigations by the Florida Office of Election Crimes and Security and the Florida Department of Law Enforcement (FDLE), 20 individuals are being arrested by FDLE for breaking Florida's elections laws. All 20 of these individuals were disqualified from voting after they were convicted of murder or a felony sexual offense, but they chose to vote anyway, and now they have all been charged with voter fraud — a third-degree felony punishable by up to a $5,000 fine and up to 5 years in prison.

Additionally, Governor DeSantis directed the Department of State to communicate to county Supervisors of Elections with instructions on records they must preserve until additional reviews and investigations are complete.

"In 2020, Florida ran an efficient, transparent election that avoided the major problems we saw in other states. At the same time, the election was not perfect, which is why we continue our efforts to ensure the integrity of our elections," said **Governor Ron DeSantis**. "Our new election crimes office has sprung into action to hold individuals accountable for voter fraud. Today's actions send a clear signal to those who are thinking about ballot harvesting or fraudulently voting. If you commit an elections crime, you will be prosecuted to the fullest extent of the law."

"As elected leaders, it is incumbent on us to ensure free and fair elections and instill confidence in the voting process," said **Attorney General Ashley Moody**. "No voting system can stand without the backing and confidence of the people it serves, and thanks to Governor DeSantis, we are reinforcing that trust, and Florida's elections system will serve as the standard-bearer for the rest of the nation."

"I am grateful to Governor DeSantis for establishing the Office of Election Crimes and Security, and we are off to a great start at eliminating election fraud in our elections," said **Secretary of State and Chief Election Officer Cord Byrd**. "These arrests put those who have no regard for the integrity our elections on notice and will ensure integrity in the voting process."

"Today is about our honest, hardworking and law-abiding Floridians," said **FDLE Acting Commissioner Mark Glass**. "In Florida, your vote matters.  To that end, we will do everything in our power to ensure those who cannot legally vote never cast a ballot."

"I'm glad to be a part of a team that is working hard to secure our elections," said **Director of the Office of Election Crimes and Security Peter Antonacci**. "Our team of highly skilled investigators will conduct a thorough investigation, and if any evidence of election crime is found, there will be criminal sanctions."

###

# Appendix D

FDLE Press Release (August 18, 2022)



# Florida Department of Law Enforcement

Mark Glass, Commissioner

## News

In case you missed it: FDLE arrests convicted murders, sex offenders for voting illegally



**For Immediate Release**
August 18, 2022

FORT LAUDERDALE, Fla. – Today, Governor Ron DeSantis, Attorney General Ashley Moody, FDLE Acting Commissioner Mark Glass, Secretary of State Cord Byrd and Elections Crimes and Security Office Director Peter Antonacci announce the first election integrity operation and arrest of convicted murderers and sex offenders breaking Florida's elections laws.

FDLE agents today arrested 17 individuals who voted illegally in the 2020 election. These individuals were either convicted murderers or were convicted for committing felony sexual offenses.

"In 2020, Florida ran an efficient, transparent election that avoided the major problems we saw in other states. At the same time, the election was not perfect, which is why we continue our efforts to ensure the integrity of our elections," said **Governor Ron DeSantis**. "Our new election crimes office has sprung into action to hold individuals accountable for voter fraud. Today's actions send a clear signal to those who are thinking about ballot harvesting or fraudulently voting. If you commit an elections crime, you will be prosecuted to the fullest extent of the law."

"As elected leaders, it is incumbent on us to ensure free and fair elections and instill confidence in the voting process," said **Attorney General Ashley Moody**. "No voting system can stand without the backing and confidence of the people it serves, and thanks to Governor DeSantis, we are reinforcing that trust, and Florida's elections system will serve as the standard-bearer for the rest of the nation."

"Today is about our honest, hardworking and law-abiding Floridians," said **FDLE Acting Commissioner Mark Glass**. "In Florida, your vote matters.  To that end, we will do everything in our power to ensure those who cannot legally vote never cast a ballot."

"I am grateful to Governor DeSantis for establishing the Office of Election Crimes and Security, and we are off to a great start at eliminating election fraud in our elections," said **Secretary of State and Chief Election Officer Cord Byrd**. "These arrests put those who have no regard for the integrity our elections on notice and will ensure integrity in the voting process."

App. 0222

"I'm glad to be a part of a team that is working hard to secure our elections," said **Director of the Office of Election Crimes and Security Peter Antonacci**. "Our team of highly skilled investigators will conduct a thorough investigation, and if any evidence of election crime is found, there will be criminal sanctions."

The multi-county investigation was initiated in conjunction with the Florida Department of State and Office of Statewide Prosecution. FDLE agents and analysts reviewed dozens of allegations of voter fraud from five circuits. The following individuals were arrested today. Three additional individuals from this operation have outstanding arrest warrants for voting illegally in the 2020 election.

All face one count each of false affirmation – voting or elections (F.S. 104.011(1)) and voting as an unqualified elector (F.S. 104.15). Both charges are third-degree felonies.

Hillsborough County

- Romona Brown, 55, of Tampa, was booked into Hillsborough County Jail.
- Douglas Oliver, 59, of Tampa, was booked into Hillsborough County Jail.
- Tony Patterson, 43, of Tampa, was booked into Hillsborough County Jail.
- Nathan Hart, 49, of Gibsonton, was booked into Hillsborough County Jail.
- Hubert Jack, 65, of Tampa, was booked into Hillsborough County Jail.
- Byron Leonard Smith, 65, of Tampa, was booked into Hillsborough County.

Orange County

- Peter Washington, 59, of Orlando, was booked into Orange County Jail.
- Michelle Stribling, 52, of Eatonville, was booked into Orange County Jail.
- Jerry Foster, 72, of Orlando, was booked into Orange County Jail.

Palm Beach County

- Leo Grant Jr, 55, of South Bay, was booked into West Palm Beach County Jail.
- Luis Villaran, 63, of Delray Beach, was booked into West Palm Beach County Jail.
- Robert Simpson, 64, of Pahokee, was booked into West Palm Beach County Jail.

Broward County

- Terry Hubbard, 63, of Pompano Beach, was issued notice to appear.
- Nathaniel Singleton, 71, of Ft. Lauderdale, was booked into Broward County Jail.
- Eugene Suggs, 65, of Miami, was booked into Broward County Jail.

Miami-Dade County

- Robert Lee Wood, 56, of Opa Locka, was booked into Turner Guilford Knight Correctional Center.
- Ronald Lee Miller, 57, of Miami, was booked into Turner Guilford Knight Correctional Center.

**For Further Information Contact:**
FDLE Office of Public Information
(850) 410-7001

# Appendix E

FDLE Press Release (October 20, 2022)



# Florida Department of Law Enforcement

Mark Glass, Commissioner

## News

---

### FDLE arrests Jamaican citizen for voting in U.S. elections



**For Immediate Release**
October 20, 2022
LAUDERHILL, Fla. – FDLE's Election Crime Unit arrested Alford Nelson (also known as Alfred Samuels), 57, Lauderhill, for two counts of voting as an unqualified elector. FDLE, in conjunction with Florida Department of State, investigated the case.

Alfred Samuels, an illegal alien living in Ft Lauderdale, unlawfully voted by mail under the alias Alford Nelson in two Broward County special elections, once on January 11, 2022, and again on March 8, 2022. He became a registered Broward County voter in March 2021 using a counterfeit birth certificate from New York City.

As listed on the Department of Corrections website, Mr. Samuels has gone by at least seven different aliases and has previously been convicted of, and served time in prison for, 11 felonies including: cocaine possession, selling/purchasing drugs within 1,000 feet of a school, resisting arrest with violence, and trafficking cocaine.

By casting a vote under a false name, Samuels violated Florida law, specifically Florida Statutes 104.24, which states "A person may not, in connection with any part of the election process, fraudulently call himself or herself, or fraudulently pass by, any other name than the name by which the person is registered or fraudulently use the name of another in voting. Any person who violates this section is guilty of a felony of the third degree." Mr. Samuels will now be charged under the law and will face 5 years in prison and a $5,000 fine.

Samuels was admitted into the United States in 1977 as a lawful permanent resident, but never applied for naturalization and overstayed his original entry documents. He was arrested yesterday and booked into the Broward County Jail.  Attorney General Ashley Moody's Office of Statewide Prosecution is prosecuting this case.

**For Further Information Contact:**
FDLE Office of Public Information
(850) 410-7001

# Appendix F

FDLE Press Release (November 4, 2022)



# Florida Department of Law Enforcement

Mark Glass, Commissioner

## News

## FDLE arrests woman for voting in multiple states



**For Immediate Release**
November 4, 2022

LOXAHATCHEE, Fla. – Inspectors with FDLE's Election Crime Unit today arrested Cheryl Ann Leslie, 55, of Loxahatchee, on two counts of casting more than one ballot in an election. Both are third-degree felonies. The Florida Secretary of State's Office of Election Crimes and Security assisted with the investigation.

Leslie, a physician assistant, voted in both the 2020 federal and state primary elections in Florida and Alaska. Leslie's Alaska votes were submitted by absentee ballot, and her Florida votes were submitted early and in person in Palm Beach County.

Leslie told investigators that her work as a physician assistant required extensive travel between multiple states. Leslie works with a senior care facility in Loxahatchee.

The investigation revealed a pattern of double voting as Leslie also voted in both states in 2014, 2016 and 2018.

Information on Leslie's multi-state voting originated from the Secretary of State's Office of Election Crimes and Security and was forwarded to FDLE's Election Crime Unit for further investigation.

Leslie was booked into the Palm Beach County Jail.

**For Further Information Contact**:
FDLE Office of Public Information
(850) 410-7001

# Appendix G

FDLE Press Release (December 9, 2022)



# Florida Department of Law Enforcement

Mark Glass, Commissioner

## News

---

FDLE arrests Marianna woman for constitutional amendment petition fraud crimes



**For Immediate Release**
December 9, 2022

MARIANNA, Fla. – FDLE agents arrested Kattie McCalister, 60, of Marianna, on five felony counts of false swearing, submission of false voter information, and five misdemeanor counts of perjury when not in an official proceeding. McCalister unlawfully used the personal identification information of five victims to submit fraudulent constitutional amendment petitions to the Jackson County Supervisor of Elections Office.

The case began on December 27, 2021, after the 14th Judicial Circuit Jackson County Office of the State Attorney request FDLE to investigate suspected fraudulent constitutional amendment forms that had been submitted to the Jackson County Supervisor of Elections Office by McCalister.

Agents interviewed five victims who had filed complaints against McCalister after they were notified that their personal voter information may have been compromised. Each of the victims attested that they had never met McCalister, had never seen the petition, nor had they signed or permitted another person to sign for them, the constitutional amendment petition forms.

McCalister was employed as a paid petition circulator when she committed the offenses. Further investigation revealed that she received approximately $7,193.36 from the petition circulation company between November 2021 and January 7, 2022.

She was booked into the Jackson County Jail on December 8. The case will be prosecuted by the State Attorney's Office, 14th Judicial Circuit.

**For Further Information Contact:**
FDLE Office of Public Information
(850) 410-7001

# Appendix H

FDLE Press Release (December 28, 2022)



# Florida Department of Law Enforcement

Mark Glass, Commissioner

## News

FDLE highlights 2022 accomplishments



**For Immediate Release**
December 28, 2022

TALLAHASSEE, Fla.– As we approach the end of the year, the Florida Department of Law Enforcement (FDLE) is highlighting some of its members' most significant accomplishments in 2022.

**FDLE Commissioner Mark Glass** said, "It's an exciting time to be part of the FDLE team as we continue to evolve into a modern and pioneering law enforcement agency.  Our members have worked hard this year to advance public safety throughout Florida, and we have a lot to be proud of.  I can't wait to see what we do in 2023."

**Combating Crime from the Southern Border**
Starting in June, FDLE, along with FHP and local law enforcement agencies, began criminal interdictions across Florida focusing on identifying and stopping illegal activity, including drug trafficking, human smuggling and organized crime.  These interdictions continued into the fall and have resulted in 38 human-smuggling charges, 62 drug charges and the seizure of more than $642,000 worth of illegal drugs.

**Combating Drug Trafficking**
FDLE arrested 25 suspects in Operation 13 Tiers following a two-year investigation into the SUR-13 gang that was operating a large drug-trafficking operation in Southwest Florida and statewide. The investigation was led by FDLE's Fort Myers Region.  The suspects were arrested for conspiracy to commit murder, trafficking in fentanyl, trafficking in methamphetamine, racketeering and numerous other drug-related charges.  The highest-ranking members were inmates in Florida prisons, but they were able to run the gang from their prison cells.  These gang members had direct contact with suspected drug cartel members in Mexico and California. Over the course of the investigation, FDLE agents, Hendry County sheriff's deputies, HIS agents and FBI agents seized large shipments of

drugs and weapons, including more than 380 pounds of methamphetamine, 48 pounds of fentanyl, 15,000 fentanyl pills, 1 pound of heroin and 45 guns.

**Community Drug Awareness**
Drug trend data from FDLE crime labs and the Office of Statewide Intelligence improved public safety with information intelligence reports facilitating the emergency scheduling of the nitazene class of drugs and increased fentanyl derivative awareness.

**Securing Florida Elections**
FDLE established its Election Crime Unit with inspectors working statewide investigating possible elections crimes.  Working closely with the Florida Secretary of State's Office of Election Crimes and Security, inspectors arrested more than 20 convicted sex offenders and murderers for voting illegally, and further investigations are ongoing.  In addition, inspectors arrested a Jamaican citizen for voting illegally in Florida and a former physician, working as a physician's assistant, who voted in both Florida and Alaska.  Prior to the November 2022 election, FDLE developed information educating Florida law enforcement and citizens about potential threats to election security.  This information was distributed statewide to our criminal justice partners, on social media and on the FDLE website.

**Tracking and Monitoring Sexual Offenders**
In October, 40 sex offenders were arrested in a joint Halloween operation spearheaded by FDLE's Enforcement and Investigative Support inspectors, Tampa Bay Regional Operations Center agents, FDLE's Offender Enforcement and Apprehension Unit analysts, Hillsborough County Sheriff's Office and Florida Department of Corrections. Inspectors, agents and deputies contacted 123 registered sex offenders residing in Hillsborough County. Of those arrested, 37 were charged with violating probation, and 21 were charged with committing new felony offenses.  Many of the new charges were based on investigative work conducted by FDLE inspectors, agents and analysts.

**Protecting Our Children**
Earlier this month, FDLE hosted the 2022 Florida Crimes Against Children conference in Orlando.  More than 800 attendees from throughout the world attended to learn best investigative practices and emerging crime trends on human trafficking, online exploitation and computer forensics techniques.

**Training Florida's Law Enforcement Community**
*Sworn Training Unit*
This year, FDLE's Specialized Training Unit trained more than 1,000 law enforcement officers from more than 100 local, state and federal law enforcement agencies on Officer Ambush and Active Shooter Training.  Classes, developed by the unit, are offered at no cost to law enforcement agencies across Florida.  The Officer Ambush course was developed after the nationwide rise in ambushes on officers sitting in their vehicles. The Active Shooter course is a training program for single-officer response and is a train-the-trainer program.  Courses consist of classroom work, firearms training and staged but realistic scenarios each officer must complete.  Several participants have contacted instructors to say they credit the training for saving their lives.

*Autism Awareness Training for Dispatchers*
FDLE's Missing Endangered Persons Information Clearinghouse (MEPIC) launched a new

course in January for Florida's 911 telecommunicators to assist in the safe recovery of children with autism who go missing.  This training outlines the steps telecommunicators should use, including what questions to ask, when determining whether a reported missing child may have the signs of autism spectrum disorder.

*Criminal Justice Standards and Training Commission (CJSTC)*
FDLE members working in Criminal Justice Professionalism assisted the CJSTC in developing several new courses for Florida law enforcement officers.  The new courses include training officers on response to sexual offenses and best practices when working with victims of sexual offenses.  The training, developed in consultation with the Florida Council Against Sexual Violence, was launched in May.  FDLE members also developed trainings on Behavioral Threat Assessment and Management (BTAM), one advanced 40-hour course and an overview about BTAM for frontline officers.

*Forensic Laboratory Outreach and Training*
Forensic Lab members continue their outreach to law enforcement and state attorney offices, offering over 200 hours of training in 2022 through forensic service seminars, meetings and virtual trainings reaching over 1,300 attendees.  Trainings are designed to educate our partners on the forensic services FDLE provides and how those services can impact their investigations.

**Issuing Florida Purple Alerts**
FDLE began issuing Purple Alerts in Florida on July 1.  The Purple Alert is used to assist in locating missing adults suffering from mental or cognitive disabilities, intellectual or developmental disabilities.  Since July, nearly 150 alerts have been issued.

**Improving Transparency**
*Crime Statistics*
As Florida's law enforcement agencies continue to transition from summary-based crime reporting to the more-detailed incident-based reporting, FDLE's Criminal Justice Information Services Division provided subject matter expertise to individual agencies and held informational sessions throughout Florida in 2022 including a round of fall meetings reaching over 800 attendees.  Because agency transition efforts are specific to the agency and dependent upon many factors (IT support, software product, vendor support, software age capability, etc.), transition time varies.  Thirty Florida agencies completed the transition to incident-based reporting in 2022, and more than 150 are in the process of transitioning.

*Florida Officer Discipline Database*
In June, FDLE's Criminal Justice Professionalism section launched a new searchable database of officer discipline. The database improves access to the public and contains the same information published in the CJSTC Quarterly Update. Users can search specific timeframes, agencies, respondent names, certification types, disciplinary actions or offenses.

*FDLE Website Upgrade*
FDLE overhauled its website, making information easier to find for our law enforcement partners and citizens.  The update includes an upgraded search engine, easy access to the most-visited pages and integration with our Facebook social media feed.

**Crime Labs Leading the Nation**
The FDLE Biology discipline implemented a multi-year effort to convert from a manual and paper-driven casework strategy to a paperless and enhanced digital strategy to improve efficiency and increase the speed of completing tasks between regions. Friction Ridge is implementing an advanced latent print searching tool that is already improving efficiency and quality in casework strategy.

*FBI Grants Authority to Operate Rapid DNA at Booking Stations*
This month, Florida became the second state approved by the FBI to perform Rapid DNA analysis at booking stations.  This was the culmination of many years of work and development between FDLE and the FBI.

*Familial Search and Genetic Genealogy Programs Solve Cold Cases*
The Familial Search Program completed eight familial DNA searches with two leads being generated – a 25 percent success rate! The Genetic Genealogy Program accepted seven new cases in 2022 and currently has 32 active cases including three unidentified homicide victims. There were seven cases solved including four homicides, a sexual assault and two unidentified homicide victims.

**2022 by the Numbers as of December 20, 2022**

- Number of investigations opened: 2,177
- Number of officer-involved shooting/use-of-force investigations opened: 80
- Number of AMBER Alerts issued: 12
- Number of Missing Child Alerts issued: 51
- Number of Blue Alerts: 1
- Number of Silver Alerts: 267
- Number of lab cases submitted to FDLE labs: 54,793
- Number of hours of lab analyst expert testimony: 997
- Number of samples added to the DNA Database: 63,165
- Number of hits from the DNA Database: 4,376
- Number of Firearms Purchase Program background checks completed: 1.3 million
- Number of court-ordered expunge requests processed: 12,000+
- Number of FCIC transactions processed: 1.2+ billion
- Number of arrest records maintained: 28+ million
- Capitol Police calls for service: 4,768
- Capitol Police crime prevention and safety training courses: 118 with 4,000+ trained

**For Further Information Contact:**
FDLE Office of Public Information
(850) 410-7001

# Appendix I

The Florida Times-Union News Article (November 29, 2022)

# jacksonville.com | The Florida Times-Union

COURTS

# Jacksonville sex offender pleads guilty to voter fraud in 2020 primary, general elections

**Katherine Lewin and Scott Butler** Jacksonville Florida Times-Union USA TODAY NETWORK

Published 5:49 p.m. ET Nov. 14, 2022 | Updated 12:20 p.m. ET Nov. 29, 2022

A 54-year-old Jacksonville felon pleaded guilty Monday to one count each of voter fraud and false registration as part of a broader investigation into whether several other sex offenders illegally voted.

Marc Anton Crump must serve 10 months in jail as part of his plea agreement and when he will be officially sentenced in January. He had faced up to five years in prison for each count.

While felons in Florida can vote if they have paid off all fees and restitution, sex offenders and those convicted of homicide are prohibited from voting unless they are granted clemency.

In Alachua County, Crump has felony convictions in 1993 for manslaughter, a 2004 conviction for molestation of a child and in 2019 for failing to comply with sexual offender requirements in Duval County.

**Florida elections:** T.K. Waters to become Jacksonville's next sheriff

**Election laws:** Change in state law means about 33,000 Duval County voters must update records to request mail ballots

Crump was arrested by the Jacksonville Sherriff's Office in April. According to an arrest report, Crump said he did not realize he was ineligible to vote.

Crump was able to register and voted in the August 2020 primary and November 2020 general election in Duval, according to previous reporting from the Times-Union.

"Election fraud undermines one of the fundamental tenets of our democracy," State Attorney Melissa Nelson said. "We will continue to hold accountable those who knowingly seek to

manipulate our election process,"

Advocates for voting rights say there is confusion around who can now vote since Florida voters approved a constitutional amendment in 2018 restoring voter rights to residents with felony records.

Felons can only vote after they serve their prison or jail time, complete parole or probation and pay all fines and restitution. But the amendment excluded restoration of voting rights to those, like Crump, with a sexual offense. Anyone with a felony record for murder and sexual offenses still must go through the state's clemency process to regain the right to vote.

## Rare court cases but a handful recently

Crump's arrest is part of a larger Duval County investigation into whether 22 sex offenders illegally voted in the 2020 election.

Supervisor of Elections Mike Hogan started examining the cases filed by database researcher Mark Glaeser. The Gainesville man has lodged 100 complaints in 11 counties contending sex offenders violated state law by casting ballots in 2020.

The State Attorney's Office said it was referred to Crump's case in March by the Duval elections office.

Hogan said he has not heard from law enforcement about any additional arrests in the investigation.

Arrests and convictions in voter fraud cases are somewhat rare, although a number of have been prosecuted in the last two months in Duval County.

On Oct. 27 a husband and wife pleaded guilty to criminal use of personal identification information after submitting thousands of constitutional amendment initiative petition forms in favor of a gambling proposal to the Duval County Supervisor of Elections Office, according to the State Attorney's Office. The forms contained personal information, including signatures of the registered voters who supposedly signed them in summer 2021.

**National politics:** Florida elections officials harassed, threatened amid 'false accusations of fraud,' US House panel says

Elections workers were unable to match many of the signatures with the voters' files and law enforcement was contacted. Investigators examined the petitions and contacted voters, who said they didn't recognize or sign them. That led them to Corri Aurthell Moore, 46, and Michelle Patrice Moore, 42.

Hogan told Action News Jax that he's never seen this level of suspected fraud before with at least 1,100 petitions in question. He said his staff became suspicious when they received a stack of crisp petitions all filled out with similar ink and handwriting. Normally petitions appeared lightly weathered because canvassers are out with clipboards and such seeking signatures.

The couple had been hired by Umunna Legal Group in Jacksonville, according to warrants obtained by Action News Jax. The firm said it fired the Moores after a couple of months because the number of petitions they were submitting "seemed impossible.

The judge sentenced the husband to a year in jail and the wife to a year of community control, according to the State Attorney's Office.

## Another pair arrested

In a separate case, two Jacksonville men were arrested last November following the discovery of at least 60 voter registration applications for people who were dead or didn't authorize them, the State Attorney's Office said. Jordan Rayeshaun Daniels, 32, and Devin Deangelo King, 34, were charged with criminal use of personal identification information.

The investigation began in July 2020 after elections staff identified inconsistencies on voter registration applications submitted by a third party. Signatures didn't match and personal information was incorrect, and each batch of applications had the initials of the two men, the State Attorney's Office said. They had been hired to secure voter registration applications from people, the investigation showed.

**Voter fraud:** Jacksonville men charged with falsifying voter registration forms

Both Hogan and the State Attorney's Office said the motive doesn't appear to be political but for financial gain. "This was a group working with what we call a third-party organization," Hogan said. "... We did not see anything political about it. It was, I think, people who were greedy. There's an incentive there to get as many as you can in."

Investigators interviewed people whose names and information were used and discovered

State Attorney's Office said.

Daniels pleaded guilty on Nov. 3 and was sentenced to 10 months in jail followed by two years of probation and 100 hours of community service, court records show. King pleaded guilty on Nov. 22 and was sentenced to a year in jail.

# Appendix J

Pensacola News Journal News Article (November 29, 2022)

# pensacola news journal

CRIME

# FDLE: Pensacola sex offender unlawfully cast 2020 ballot, filled out 4 voting applications

 **Benjamin Johnson**
Pensacola News Journal

Published 4:00 a.m. CT Nov. 29, 2022

Florida Department of Law Enforcement special agents arrested a Pensacola sex offender Nov. 22 for illegally voting in the 2020 presidential election and filling out multiple voter registration applications between 2020 and 2022.

On Nov. 1, 2022, the Escambia County Supervisor of Elections provided documents to FDLE that showed 41-year-old Michael DeWayne Collins completed and signed a Florida voter registration application on Aug. 27, 2020; Sept. 8, 2021; July 14, 2022; and Oct. 4 2022, and a voting history report showed Collins voted on Nov. 3, 2020, in the 2020 general election.

He was charged with four counts of false swearing of voter registration information and one count of unqualified electors willfully voting, according to an FDLE arrest affidavit.

**Voter fraud charges:** DeSantis announces 20 felons charged with voter fraud across Florida

**Local change:** 'Go time!' Mayor-elect D.C. Reeves has lofty goals, starting with showing value of living in Pensacola

Collins, who is a registered sex offender, was convicted for lewd and lascivious battery of a person between 12 and 16 years old in 2001, leading to his civil right to vote being stripped, but Collins told authorities that he "received a letter from an unknown group/organization" in 2019 that said he was eligible to vote.

The letter was not from the State of Florida, according to the affidavit, and he was unable to produce the letter. He also acknowledged he never petitioned Florida to have his rights restored.

During an interview with FDLE, Collins said he completed the two voter registration applications in 2020 and 2021, but said he thought his right to vote was restored. Even though he believed he could vote, Collins told FDLE in the same interview he received a letter from the Supervisor of Elections in February 2022 "that said something about his voting rights being messed up and he needed to contact them."

"During the second interview, Collins acknowledged he completed and signed the voter registration application dated July 14, 2022," the arrest affidavit stated. "Collins did not remember completing and signing the voter registration application dated Oct. 10, 2022, however, Collins acknowledged that the handwriting and signature on the application was his."

Collins said he filled out a voter application because he forgot he received letters from the Supervisor of Elections on Feb. 2, 2022 and May 2, 2022, stating he was ineligible to vote, according to the affidavit.

Collins is one of many in Florida who have been charged with election-fraud-related crimes since Gov. Ron DeSantis launched the Office of Election Crimes and Security on July 1.

On Aug. 11, DeSantis held a press conference in Broward County and announced the arrest of 20 convicted felons from Palm Beach, Broward, Miami-Dade, Hillsborough and Orange counties who allegedly voted illegally in the 2020 General Election.

"They did not go through the process, they did not get their rights restored, and yet they went ahead and voted anyway," DeSantis said.

Some Democrats have derided the governor's announcement as political theater and "voter intimidation." The 20 alleged illegal voters represent a tiny fraction of the 11 million Floridians who voted in the 2020 election.

In the 2018 General Election, Floridians voted to for State Amendment 4, which allows those convicted of felony murder or sex offenses to apply for reinstated voting rights to the State Clemency Board as long as all of the following have been completed:

prison or jail time
parole, probation or other forms of supervision
payment of total amount of all fines, fees, costs and restitution

The State Clemency Board told FDLE that there was no record of Collins having his civil rights restored, and even though he was last released in March 2018, Collins still owed

$5,300 in court fines and other obligations, according to the arrest affidavit.

According to court records, the State Attorney's Office has not filed a case for Collins' most recent fraud charges. The News Journal reached out to the State Attorney's Office, but did not receive a response Monday.

Collins was released from Escambia County Jail Nov. 24 on $12,500 bond.

*Benjamin Johnson can be reached at bjohnson@pnj.com or 850-435-8578*

# Appendix K

Tallahassee Democrat News Article (December 9, 2022)

# Tallahassee Democrat.

NEWS

# Marianna woman charged with submitting fraudulent petition signatures

 **Douglas Soule**
Tallahassee Democrat
Published 5:12 p.m. ET Dec. 9, 2022

A Marianna woman has been arrested for allegedly using personal identification information of five unknowing people for a constitutional petition.

Florida Department of Law Enforcement agents arrested Kattie McCalister, 60, on Thursday on five felony counts of false swearing, submission of false voter information and five misdemeanor counts of perjury when not in an official proceeding, according to a Friday FDLE press release.

She was booked into the Jackson County Jail.

**Pre-Election Day voting concerns:** Partisan poll-watchers in Florida on guard to thwart voter suppression, 'Stop the Steal'

**2022 amendments:** Voting in Florida: What you need to know about the 2022 amendments

The petition was for "limited authorization of casino gambling," according to her arrest affidavit.

That petition was to allow businesses with active cardroom licenses to offer casino gaming if they're within 130 miles of a Seminole tribal casino or they spent $250 million on development and construction costs, according to Ballotpedia.

It did not get enough signatures to appear on Florida's 2022 ballot.

Agents interviewed five people who had filed complaints against McCalister following notification from the Jackson County Supervisor of Elections Office that their personal voter

information "may have been compromised," according to the press release. They said they had never met McCalister, had never seen the petition and had not signed the petition.

McCalister was employed as a petition circulator for a company called Victory Labs Inc., according to the affidavit. She had been paid approximately $7,193 between November 2021 and January 2022.

*USA Today Network-Florida government accountability reporter Douglas Soule is based in Tallahassee, Fla. He can be reached at DSoule@gannett.com. Twitter: @DouglasSoule*

# Appendix L

Building Confidence in U.S. Elections, Report of the
Commission on Federal Election Reform, September 2005
("Carter Baker Report")



# Building Confidence in U.S. Elections

## REPORT OF THE COMMISSION ON FEDERAL ELECTION REFORM

   

### SEPTEMBER 2005

**ORGANIZED BY**
Center for Democracy and Election Management
American University

**SUPPORTED BY**
Carnegie Corporation of New York
The Ford Foundation
John S. and James L. Knight Foundation
Omidyar Network

**RESEARCH BY**
Electionline.org/The Pew Charitable Trusts

App. 0248





# Building Confidence in U.S. Elections

## REPORT OF THE COMMISSION ON FEDERAL ELECTION REFORM

### SEPTEMBER 2005

**ORGANIZED BY**
Center for Democracy and Election Management
American University

**SUPPORTED BY**
Carnegie Corporation of New York
The Ford Foundation
John S. and James L. Knight Foundation
Omidyar Network

**RESEARCH BY**
Electionline.org/The Pew Charitable Trusts

App. 0249

# Building Confidence in U.S. Elections
REPORT OF THE COMMISSION ON FEDERAL ELECTION REFORM

## Table of Contents

Letter from the Co-Chairs ............................ ii

Preface by the Executive Director ............................ iii

Executive Summary ............................ iv

1: Goals and Challenges of Election Reform ............................ 1
   1.1 Help America Vote Act: Strengths and Limitations ............................ 2
   1.2 Learning from the World ............................ 5
   1.3 Transforming the Electoral System – Five Pillars ............................ 6
   1.4 Urgency of Reform ............................ 7

2: Voter Registration and Identification ............................ 9
   2.1 Uniformity Within States – Top-Down Registration Systems ............................ 10
   2.2 Interoperability Among States ............................ 12
   2.3 Provisional Ballots ............................ 15
   2.4 Communicating Registration Information ............................ 16
   2.5 Voter Identification ............................ 18
   2.6 Quality in Voter Registration Lists ............................ 22

3: Voting Technology ............................ 25
   3.1 Voting Machines ............................ 25
   3.2 Audits ............................ 28
   3.3 Security for Voting Systems ............................ 28
   3.4 Internet Voting ............................ 32

4: Expanding Access to Elections ............................ 33
   4.1 Assured Access to Elections ............................ 33
   4.2 Vote by Mail ............................ 35
   4.3 Vote Centers ............................ 36
   4.4 Military and Overseas Voting ............................ 37
   4.5 Access for Voters with Disabilities ............................ 39
   4.6 Re-Enfranchisement of Ex-Felons ............................ 40
   4.7 Voter and Civic Education ............................ 41

5: Improving Ballot Integrity ............................ 45
   5.1 Investigation and Prosecution of Election Fraud ............................ 45
   5.2 Absentee Ballot and Voter Registration Fraud ............................ 46

6: Election Administration ............................ 49
   6.1 Institutions ............................ 49
   6.2 Poll Worker Recruitment ............................ 54
   6.3 Polling Station Operations ............................ 56
   6.4 Research on Election Management ............................ 57
   6.5 Cost of Elections ............................ 59

7: Responsible Media Coverage ............................ 61
   7.1 Media Access for Candidates ............................ 61
   7.2 Media Projections of Election Results ............................ 62

8: Election Observation ............................ 65

9: Presidential Primary and Post-Election Schedules ............................ 67
   9.1 Presidential Primary Schedule ............................ 67
   9.2 Post-Election Timeline ............................ 68

Conclusion ............................ 69

Appendix ............................ 71
   Estimated Costs of Recommended Improvements

Endnotes ............................ 72

Summary of Recommendations ............................ 79

Additional Statements ............................ 88

About the Commission on Federal Election Reform ............................ 92

# LETTER FROM THE CO-CHAIRS

Elections are the heart of democracy. They are the instrument for the people to choose leaders and hold them accountable. At the same time, elections are a core public function upon which all other government responsibilities depend. If elections are defective, the entire democratic system is at risk.

Americans are losing confidence in the fairness of elections, and while we do not face a crisis today, we need to address the problems of our electoral system.

Our Commission on Federal Election Reform was formed to recommend ways to raise confidence in the electoral system. Many Americans thought that one report — the Carter-Ford Commission — and one law — the Help America Vote Act of 2002 (HAVA) — would be enough to fix the system. It isn't. In this report, we seek to build on the historic achievement of HAVA and put forward a bold set of proposals to modernize our electoral system.

Some Americans will prefer some of our proposals to others. Indeed, while all of the Commission members endorse the judgments and general policy thrust of the report in its entirety, they do not necessarily support every word and recommendation. Benefiting from Commission members with diverse perspectives, we have proposed, for example, a formula for transcending the sterile debate between integrity and access. Twenty-four states now require identification for voters, with some systems likely to restrict registration. We are recommending a photo ID system for voters designed to increase registration with a more affirmative and aggressive role for states in finding new voters and providing free IDs for those without driver's licenses. The formula we recommend will result in both more integrity and more access. A few of our members have expressed an alternative view of this issue.

Still, our entire Commission is united in the view that electoral reform is essential and that our recommended package of proposals represents the best way to modernize our electoral system. We urge all Americans, including the legislative and executive branches of government at all levels, to recognize the urgency of election reform and to seriously consider the comprehensive approach outlined herein.

We present this report because we believe the time for acting to improve our election system is now.

Jimmy Carter                    James A. Baker, III

*Co-Chairs of the Commission on Federal Election Reform*

# PREFACE BY THE EXECUTIVE DIRECTOR

Polls indicate that many Americans lack confidence in the electoral system, but the political parties are so divided that serious electoral reform is unlikely without a strong bipartisan voice. Our country therefore owes a great debt to former President Jimmy Carter and former Secretary of State James A. Baker, III for leading this Commission and forging a plan for election reform.

To build confidence, the Commission recommends a modern electoral system built on five pillars: (1) a universal and up-to-date registration list, accessible to the public; (2) a uniform voter identification system that is implemented in a way that increases, not impedes, participation; (3) measures to enhance ballot integrity and voter access; (4) a voter-verifiable paper trail and improved security of voting systems; and (5) electoral institutions that are impartial, professional, and independent. Democrats, Republicans, and Independents tend to prefer different elements of this package, but President Carter and Secretary Baker drew strength rather than stalemate from the diverse perspectives in fashioning an approach that is greater than the sum of these parts.

Our Commission was fortunate to have an outstanding staff and academic advisors, and we have benefited from advice by Members of Congress and staff, election officials, and representatives of a wide range of non-governmental organizations devoted to improving our democracy. See our website for a list of advisors and the studies and testimony: www.american.edu/Carter-Baker.

We acknowledge the support of many at the end of this report, but let me identify here a few people whose work was crucial to the Commission: Daniel Calingaert, the Associate Director of American University's Center for Democracy and Election Management, Doug Chapin of Electionline.org, John Williams, Senior Advisor to Secretary Baker, Kay Stimson, Media Liaison, and Murray Gormly, Administrative Coordinator. The Commission was organized by American University's Center for Democracy and Election Management. We are also grateful to the James A. Baker III Institute for Public Policy of Rice University and The Carter Center for hosting the other two meetings.

Finally, the Commission could not have accomplished its goal without the generosity of its funders and the advice and support of the following individuals: Geri Mannion of the Carnegie Corporation; Thomasina Williams of the Ford Foundation; Julie Kohler of the John S. and James L. Knight Foundation; Dena Jones of Omidyar Network, and The Pew Charitable Trusts.

At AU's Center for Democracy and Election Management, we view this Commission as a major step toward developing the educational foundation for students, professionals, and the public to deepen our understanding of democracy and elections in the United States and the world.

Robert A. Pastor,
*Executive Director*

# EXECUTIVE SUMMARY

Building confidence in U.S. elections is central to our nation's democracy. At a time when there is growing skepticism with our electoral system, the Commission believes that a bold new approach is essential. The Commission envisions a system that makes Americans proud of themselves as citizens and of democracy in the United States. We should have an electoral system where registering to vote is convenient, voting is efficient and pleasant, voting machines work properly, fraud is deterred, and disputes are handled fairly and expeditiously.

This report represents a comprehensive proposal for modernizing our electoral system. We propose to construct the new edifice for elections on five pillars:

First, we propose a universal voter registration system in which the states, not local jurisdictions, are responsible for the accuracy and quality of the voter lists. Additionally, we propose that the U.S. Election Assistance Commission (EAC) develop a mechanism to connect all states' list. These top-down and interoperable registration lists will, if implemented successfully, eliminate the vast majority of complaints currently leveled against the election system. States will retain control over their registration list, but a distributed database can remove interstate duplicates and help states to maintain an up-to-date, fully accurate registration list. This would mean people would need to register only once in their lifetime, and it would be easy to update their registration information when they move. We also propose that all states establish uniform procedures for counting provisional ballots, and many members recommend that the ballots should be counted if the citizen has voted in the correct jurisdiction.

Second, to make sure that a person arriving at a polling site is the same one who is named on the list, we propose a uniform system of voter identification based on the "REAL ID card" or an equivalent for people without a drivers license. To prevent the ID from being a barrier to voting, we recommend that states use the registration and ID process to enfranchise more voters than ever. States should play an affirmative role in reaching out to non-drivers by providing more offices, including mobile ones, to register voters and provide photo IDs free of charge. There is likely to be less discrimination against minorities if there is a single, uniform ID, than if poll workers can apply multiple standards. In addition, we suggest procedural and institutional safeguards to make sure that the rights of citizens are not abused and that voters will not be disenfranchised because of an ID requirement. We also propose that voters who do not have a photo ID during a transitional period receive a provisional ballot that would be counted if their signature is verified.

Third, we propose measures that will increase voting participation by having the states assume greater responsibility to register citizens, make voting more convenient, and offer more information on registration lists and voting. States should allow experimentation with voting centers. We propose ways to facilitate voting by overseas military and civilians and ways to make sure that people with disabilities have full access to voting. In addition, we ask the states to allow for restoration of voting rights for ex-felons (other than individuals convicted of capital crimes or registered sex offenders) when they have fully served their sentence. We also identify several voter and civic education programs that could increase participation and inform voters, for example, by providing information on candidates and the voting process to citizens before the election. States and local jurisdictions should use Web sites, toll-free numbers, and other means to inform citizens about their registration status and the location of their precinct.

To improve ballot integrity, we propose that federal, state, and local prosecutors issue public reports on their investigations of election fraud, and we recommend federal legislation to deter or prosecute systemic efforts to deceive or intimidate voters. States should not discourage legal voter registration or get-out-the-vote activities, but they need to do more to prevent voter registration and absentee ballot fraud.

Fourth, we propose ways to give confidence to voters using electronic voting machines that their votes will be counted accurately. We call for an auditable backup on paper at this time, but we recognize the possibility of alternative technologies to audit those machines in the future. We encourage independent testing of voting systems (to include voting machines and software source code) under EAC supervision.

Finally, we recommend strengthening and restructuring the system by which elections have been administered in our country. We propose that the EAC and state election management bodies be reconstituted on a nonpartisan basis to become more independent and effective. We cannot build confidence in elections if secretaries of state responsible for certifying votes are simultaneously chairing political campaigns, and the EAC cannot undertake the additional responsibilities recommended by this report, including critical research, without gaining additional funds and support. Polling stations should be organized to reduce the chances of long lines; they should maintain "log-books" on Election Day to record complaints; and they need electronic poll-books to help voters find their correct precinct. HAVA should be fully funded and implemented by 2006.

The Commission puts forward 87 specific recommendations. Here are a few of the others:

- We propose that the media improve coverage of elections by providing at least five minutes of candidate discourse every night in the month preceding the election.

- We ask news organizations to voluntarily refrain from projecting presidential election results until polls close in the 48 contiguous states.

- We request that all of the states provide unrestricted access to all legitimate domestic and international election observers, as we insist of other countries, but only one state currently permits; and

- We propose changing the presidential primary schedule by creating four regional primaries.

Election reform is neither easy nor inexpensive. Nor can we succeed if we think of providing funds on a one-time basis. We need to view the administration of elections as a continuing challenge, which requires the highest priority of our citizens and our government.



(American University Photo/Jeff Watts)

# 1. Goals and Challenges of Election Reform

The vigor of American democracy rests on the vote of each citizen. Only when citizens can freely and privately exercise their right to vote and have their vote recorded correctly can they hold their leaders accountable. Democracy is endangered when people believe that their votes do not matter or are not counted correctly.

Much has happened since November 2000, when many Americans first recognized that their electoral system had serious problems with flawed voter registration lists, obsolete voting machines, poorly designed ballots, and inadequate procedures for interpreting disputed votes. Congress and the President, Democrats and Republicans, responded with a truly historic initiative – the Help America Vote Act of 2002 (HAVA), the first comprehensive federal law in our nation's history on electoral administration. The law represents a significant step forward, but it falls short of fully modernizing our electoral system.

On the eve of the November 2004 election, a *New York Times* poll reported that only one-third of the American people said that they had a lot of confidence that their votes would be counted properly, and 29 percent said they were very or somewhat concerned that they would encounter problems at the polls. Aware of this unease, the U.S. Department of Justice deployed 1,090 election observers — more than three times the number sent in 2000.[1] After the election, a minority of Americans — only 48 percent — said they were very confident that the votes cast across the country were accurately counted, according to a Pew Research Center survey. Thirty-seven percent had doubts (somewhat confident), and 14 percent were not confident that the votes were accurately counted.[2]



Former President Jimmy Carter and former Secretary of State James A. Baker, III (AP Photo/Charles Dharapak)

With a strong desire to contribute to building confidence in our electoral process, this Commission came together to analyze the state of the electoral system, to assess HAVA's implementation, and to offer recommendations for further improvement. Public confidence in the electoral system is critical for our nation's democracy. Little can undermine democracy more than a widespread belief among the people that elections are neither fair nor legitimate. We believe that further important improvements are necessary to remove any doubts about the electoral process and to help Americans look upon the process of casting their ballot as an inspiring experience — not an ordeal.

We address this report to the American people and to the President, Congress, U.S. Election Assistance Commission, states, election administrators, and the media. Our recommendations aim both to increase voter participation and to assure the integrity of the electoral system. To achieve those goals, we need an accurate list of registered voters, adequate voter identification, voting technology that precisely records and tabulates votes and is subject to verification, and capable, fair, and nonpartisan election administration.

While each state will retain fundamental control over its electoral system, the federal government should seek to ensure that all qualified voters have an equal opportunity to exercise their right to vote. This will require greater uniformity of some voting requirements and registration lists that are accurate and compatible among states. Greater uniformity is also needed within states on some voting rules and procedures. The federal government should fund research and development of voting technology that will make the counting of votes more transparent, accurate, and verifiable.

## 1.1   HELP AMERICA VOTE ACT: STRENGTHS AND LIMITATIONS

The Help America Vote Act of 2002 (HAVA) established numerous federal requirements for state and local election administration in exchange for a promise of $3.97 billion in federal funding, of which approximately $3.1 billion has been appropriated to date. These



Commissioners Susan Molinari and Tom Daschle
(American University Photo/Wilford Harewood)

requirements reflected a national consensus on the general outline of reform, best represented by the 2001 report of the National Commission on Federal Election Reform, co-chaired by former Presidents Jimmy Carter and Gerald Ford. HAVA's mandates were adopted as part of a compromise between the parties on the divisive issue of access to the ballot (largely championed by Democrats and their allies) versus protecting the integrity of the electoral process (generally favored by Republicans and their supporters).

Under this compromise, described by its sponsors as making it "easier to vote and harder to cheat," HAVA sought to lower barriers to voting while establishing somewhat tighter controls on registration and voter identification. Consequently, HAVA's mandates focused on four major requirements: (1) statewide computerized voter lists; (2) voter ID for individuals who register by mail but do not provide it when registering; (3) provisional ballots for voters whose names are missing from the registration rolls on Election Day; and (4) measures to make voting more accessible for voters with disabilities. The main provisions of HAVA are as follows:

- Voter registration lists, which were typically maintained at the local level, are now being consolidated into statewide voter databases.

- All states are required to provide provisional ballots on Election Day to citizens who believe they are registered but whose names do not appear on the registration lists.

- HAVA provides federal funding — for the first time — to create statewide voter databases and to replace old voting machines.

- All voting systems used in federal elections are required to meet minimum standards for voter verification of ballots, accessibility for voters with disabilities and language minorities, notification of over-votes, and auditing procedures.



(Getty Images Photo/Mike Simons)

- HAVA calls for the testing and certification of voting systems as a way to make sure they operate properly on Election Day.

- The U.S. Election Assistance Commission (EAC) was created to disburse federal funds, develop guidelines for voting systems, serve as a clearinghouse of information to improve election administration throughout the country, and study and report on how to make elections more accessible and accurate.

Under HAVA, states are required to complete their statewide voter databases by January 1, 2006, and some expenditures of HAVA funds will extend well beyond that date. Our Commission therefore calls for full implementation and full funding of HAVA.

The first presidential election after HAVA became law — on November 2, 2004 — brought to light as many problems as in 2000, if not more. HAVA, which will take years to be fully implemented, was not responsible for most of the complaints. Instead, voters were discouraged or prevented from voting by the failure of election offices to process voter registration applications or to mail absentee ballots in time, and by the poor service and long lines at polling stations in a number of states. There were also reports of improper requests for voter ID and of voter intimidation and suppression tactics. Concerns were raised about partisan purges of voter registration lists and about deliberate failures to deliver voter registration applications to election authorities. Moreover, computer malfunctions impugned election results for at least one race, and different procedures for counting provisional ballots within and between states led to legal challenges and political protests. Had the margin of victory for the presidential contest been narrower, the lengthy dispute that followed the 2000 election could have been repeated.

App. 0258

The November 2004 elections also showed that irregularities and fraud still occur. In Washington, for example, where Christine Gregoire was elected governor by a 129-vote margin, the elections superintendent of King County testified during a subsequent unsuccessful election challenge that ineligible ex-felons had voted and that votes had been cast in the names of the dead. However, the judge accepted Gregoire's victory because with the exception of four ex-felons who admitted to voting for Dino Rossi, the authorities could not determine for whom the other illegal votes were cast. In Milwaukee, Wisconsin, investigators said they found clear evidence of fraud, including more than 200 cases of



Commissioners Bob Michel and Shirley Malcom
(American University Photo/Wilford Harewood)

felons voting illegally and more than 100 people who voted twice, used fake names or false addresses, or voted in the name of a dead person. Moreover, there were 4,500 more votes cast than voters listed.[3] One potential source of election fraud arises from inactive or ineligible voters left on voter registration lists. By one estimate, for example, there were over 181,000 dead people listed on the voter rolls in six swing states in the November 2004 elections, including almost 65,000 dead people listed on the voter rolls in Florida.[4]

Some of these problems may be addressed by the full implementation of HAVA, but it is clear that others will not. Due to vague mandates on provisional voting and identification cards, counties and states applied different standards. This led to a significant proliferation of legal challenges. A closer presidential election likely would have brought an avalanche of litigation. HAVA does not address interoperable registration lists among states, and it is also vague as to whether states should create a top-down, state-controlled registration list or a bottom-up list controlled by local election administrators. The weak structure of the U.S. Election Assistance Commission, a product of a HAVA compromise, has stymied its ability to be clear or authoritative on almost any subject, even on whether to verify electronic machine votes with paper ballots. Thus, there is a compelling need for further election reform that builds on HAVA.

One of the most important laws on the right of Americans to vote is the Voting Rights Act of 1965. Key provisions of the Act are due to expire in 2007. These include the language provision (Section 203), which requires jurisdictions to provide voting materials in minority languages in areas where language minority groups make up a significant portion of the population, and the pre-clearance provision (Section 5), which requires federal pre-clearance for all changes to voting rules or procedures made by specified jurisdictions with a history of voter discrimination. Our Commission believes this Act is of the utmost importance.

### Recommendations on the Help America Vote Act and the Voting Rights Act

**1.1.1** The Help America Vote Act should be fully implemented by 2006, as mandated by the law, and fully funded.

**1.1.2** The Commission urges that the Voting Rights Act be vigorously enforced and that Congress and the President seriously consider reauthorizing those provisions of the Act that are due to expire in 2007.

App. 0259

## 1.2 LEARNING FROM THE WORLD

In its deliberations, our Commission considered the best practices of election systems around the world. Many other democracies achieve significantly higher levels of voter participation due, in part, to more effective voter registration. Election authorities take the initiative to contact and register voters and conduct audits of voter registration lists to assure that they are accurate. In addition, voter registration in many countries is often tied directly to a voter ID, so that voter identification can enhance ballot integrity without raising barriers to voting. Voters in nearly 100 democracies use a photo identification card without fear of infringement on their rights.[5]

Nonpartisan election administration has also proved effective abroad. Over the past three decades, election management institutions have evolved in many other democracies. Governments had previously conducted elections, but as concern was raised that they might give advantage to incumbents, independent election commissions were formed. Initially, election commissioners in other countries frequently represented political parties, but they often stalemated or reached agreement with each other at the public's expense. This explains why the trend in the world is toward independent election commissions composed of nonpartisan officials, who serve like judges, independently of the executive or legislative branches (see Table 5 on page 52). Political party representatives can observe deliberations on these commissions but not vote on decisions. Nonpartisan election officials are generally regarded as fair arbiters of the electoral process who make their best efforts to administer elections impartially and effectively.



Mexico's Federal Electoral Institute (IFE)
(AP Photo/Marco Ugarte)

### 1.3   TRANSFORMING THE ELECTORAL SYSTEM — FIVE PILLARS

The recommendations of our Commission on Federal Election Reform aim both to increase voter participation and to assure the integrity of the electoral system. To accomplish these goals, the electoral system we envision should be constructed on the following five sturdy pillars:



Voter registration that is convenient for voters to complete and even simpler to renew and that produces complete, accurate, and valid lists of citizens who are eligible to vote;

Voter identification, tied directly to voter registration, that enhances ballot integrity without introducing new barriers to voting, including the casting and counting of ballots;

Measures to encourage and achieve the greatest possible participation in elections by enabling all eligible voters to have an equal opportunity to vote and have their votes counted;

Voting machines that tabulate voter preferences accurately and transparently, minimize under- and over-votes, and allow for verifiability and full recounts; and

Fair, impartial and effective election administration.

An electoral system built on these pillars will give confidence to all citizens and will contribute to high voter participation. The electoral system should also be designed to reduce the possibility or opportunity for litigation before, and especially after, an election. Citizens should be confident that the results of the election reflect their decision, not a litigated outcome determined by lawyers and judges. This is achieved by clear and unambiguous rules for the conduct of the election established well in advance of Election Day.



Common Cause President Chellie Pingree (American University Photo/Jeff Watts)

The ultimate test of an election system is its ability to withstand intense public scrutiny during a very close election. Several close elections have taken place in recent years, and our election system has not always passed that test. We need a better election system.

App. 0261

## 1.4   URGENCY OF REFORM

Although the public continues to call for election reform, and several election bills have been introduced, the issue is low on the Congress's agenda at this time. Some congressional leaders believe that further reform should wait until HAVA is fully implemented. We believe that the need for additional electoral reform is abundantly clear, and our recommendations will bolster HAVA to further strengthen public confidence in the electoral process. If we wait until late 2006, we will lose the opportunity to put new reforms in place for the 2008 elections, and as a result, the next presidential election could be fraught with problems. Electoral reform may stay out of public view until the 2006 elections begin to approach, but by that time, it may be too late. We need Congress to press ahead with election reform now. Indeed, election reform is best accomplished when it is undertaken before the passions of a specific election cycle begin.

We are Republicans, Democrats, and Independents. But we have deliberately attempted to address electoral issues without asking the question as to whether a particular political party would benefit from a particular reform. We have done so because our country needs a clear unified voice calling for serious election reform. Congress has been reluctant to undertake reform, in part because members fear it could affect their chances of re-election and, when finally pressed by the public, Democrats and Republicans have addressed each reform by first asking whether it would help or harm each party's political prospects. This has proven to be not only a shortsighted but also a mistaken approach. Despite widespread belief that two recent reforms — the National Voter Registration Act of 1993 and the Bipartisan Campaign Finance Reform of 2002 — would advantage Democrats at the expense of Republicans, evidence suggests such beliefs were wrong. Having a fair electoral process in which all eligible citizens have an opportunity to participate freely is a goal that transcends any individual partisan interest. This assures the winning candidates the authority to legitimately assume office. For the losing candidate it assures that the decision can be accepted as the will of the voters.



League of Women Voters President Kay Maxwell at the April 18 hearing (American University Photo/Jeff Watts)

Our recommendations are aimed at several timeframes and audiences. Some require immediate action, and others can be considered later. We propose some for the federal government and some for the states. But we have offered all the recommendations based on our views as to how they can best help our country — not our political parties. Together, these reforms should catalyze a shift in the way that elections are administered. We hope they will not only restore American confidence in our elections, but also strengthen the respect from those in the world who look to our democracy as a model.



(AP Photo/Ric Francis)

## 2.  Voter Registration and Identification

Effective voter registration and voter identification are bedrocks of a modern election system. By assuring uniformity to both voter registration and voter identification, and by having states play an active role in registering as many qualified citizens as possible, access to elections and ballot integrity will both be enhanced. These steps could help bring to an end the sterile debate between Democrats and Republicans on access versus integrity.

The most common problems on Election Day concern voter registration (see Table 1 on page 17). Voter registration lists often are riddled with inaccuracies because Americans are highly mobile, and local authorities, who have maintained most lists, are poorly positioned to add and delete names of voters who move within or between states. To comprehend the magnitude of this challenge, consider the following. During the last decade, on average, about 41.5 million Americans moved each year. Of those, about 31.2 million moved within the same state, and 8.9 million moved to a different state or abroad. Young Americans (aged 20 to 29), representing 14 percent of the U.S. population, moved to a different state at almost three times the rate of the rest of the population.[6] The process of registering voters should be made easier, and renewal due to a change of address should be made still easier.

In response to the challenge of building and maintaining better registration lists, HAVA requires states to establish statewide, computer-based registration lists that are interactive within each state by January 1, 2006. HAVA also requires provisional ballots for eligible voters who seek to vote within their jurisdiction but who are denied a ballot because their name is not found on the voter roll or because they are otherwise challenged by an election official as being ineligible to vote.

Although few states have completed their new statewide voter databases, the limitations of the existing efforts are already clear. Several states have left the primary responsibility for voter lists in the hands of counties and municipalities. There is little if any effort to assure quality in statewide voter databases. The U.S. Election Assistance Commission (EAC) has not assessed the quality of statewide voter databases and is unlikely to do so in the future. Moreover, it has provided only vague guidance to states on how to organize their voter registration lists — on even the most basic question as to whether states or counties should be in charge.



Commissioner Robert Mosbacher
(American University Photo/Wilford Harewood)

In addition to statewide registration systems and provisional ballots, HAVA requires that states insist on voter identification only when a person has registered by mail for the first time in a federal election. This provision, like the others, was implemented very differently across the country, with some areas not even applying the minimum requirement. Since HAVA, an increasing number of states have insisted on stringent, though very different, ID requirements for all voters. This, in turn, has caused concern that such requirements could erect a new barrier to voting for people who do not have the requisite identification card. Georgia, for example, introduced a new law in July 2005 that requires all voters to show a government-issued photo ID at the polls.

Although there are 159 counties, only 56 locations in the entire state issue such IDs, and citizens must either pay a fee for the ID or declare indigence.

While states will retain principal responsibility for the conduct of elections, greater uniformity in procedures for voter registration and identification is essential to guarantee the free exercise of the vote by all U.S. citizens. The EAC should facilitate greater uniformity in voter registration and identification procedures and should be empowered to do so by granting and withholding federal funds to the states. If Congress does not appropriate the funds, then we recommend that it amend the law to require uniformity of standards.

## 2.1 UNIFORMITY WITHIN STATES — TOP-DOWN REGISTRATION SYSTEMS

A complete, accurate, and current voter roll is essential to ensure that every eligible citizen who wants to vote can do so, that individuals who are ineligible cannot vote, and that citizens cannot vote more than once in the same election. A voter registration list must contain all eligible voters (including new registrants) and must contain correct information concerning the voter's identity and residence.

Incomplete or inaccurate registration lists lie at the root of most problems encountered in U.S. elections. When a voter list omits the names of citizens who believe they properly registered or contains incorrect or out-of-date information on registered voters, eligible citizens often are denied the right to vote. Invalid voter files, which contain ineligible, duplicate, fictional, or deceased voters, are an invitation to fraud.



Commissioner Benjamin Ladner
(American University Photo/Jeff Watts)

One reason for flawed lists is decentralized management. Local authorities often fail to delete the names of voters who move from one jurisdiction to another, and thus the lists are often inflated. For this reason, the Carter-Ford National Commission on Federal Election Reform recommended the creation of statewide voter registration systems, and this recommendation was codified into law in HAVA.

HAVA requires each state to create a "single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the state level." But states have not carried out this requirement in a consistent manner. Some are creating a "top-down" voter registration system, in which local election authorities supply information to a unified database maintained by the state. Others rely on a "bottom-up" system, whereby counties and municipalities retain their own registration lists and submit information to a state compilation of local databases at regular intervals. Top-down databases typically deliver information in real time — counties can see changes from other localities as these changes are made to the voter list. Bottom-up systems may continue

the problems that gave rise to flawed registration lists — i.e., counties retain control of the lists. Counties might not delete the names of voters who move or might not add the names of voters who register at motor vehicle bureaus or other state agencies under the National Voter Registration Act (NVRA or "Motor Voter"). Thus, the statewide lists might be different from the controlling county lists. Having two inconsistent voter lists is like a person with two watches who never knows what time it is. It is essential to have a single, accurate, current voter list.



Commissioners Kay Coles James and Raul Yzaguirre
(American University Photo/Wilford Harewood)

As of June 2005, 38 states were establishing top-down voter registration systems. The remaining states were either (a) building bottom-up systems; or (b) creating systems with both top-down and bottom-up elements. Three states had not finalized plans.[7] The EAC, in its interpretation of the HAVA requirement on statewide voter databases, expressed a preference for top-down systems for voter registration but did not insist on it and did not rule out bottom-up systems.

In the judgment of our Commission, bottom-up systems are not capable of providing a complete, accurate, current, and valid voter registration list. They are ineffective in removing duplicate registrations of individuals who move from one county to another and in coordinating with databases of other state agencies. Even in the best of circumstances, with excellent cooperation and interaction between states and counties — an unlikely scenario with the bottom-up system — there will be a time lag in updating voter files in a bottom-up system. This time lag could be particularly harmful in the period approaching the deadline for voters to register.

### Recommendation on Uniformity Within States

**2.1.1** The Commission recommends that states be required to establish unified, top-down voter registration systems, whereby the state election office has clear authority to register voters and maintain the registration list. Counties and municipalities should assist the state with voter registration, rather than have the state assist the localities. Moreover, Congress should appropriate funds for disbursement by the U.S. Election Assistance Commission (EAC) to states to complete top-down voter registration systems.

App: 0266

## 2.2   INTEROPERABILITY AMONG STATES

Interoperable state voter databases are needed to facilitate updates in the registration of voters who move to another state and to eliminate duplicate registrations, which are a source of potential fraud. Approximately 9 million people move to another state or abroad each year, or about one in eight Americans between each presidential election. Such interoperability is possible because state voter databases that are centralized can be made to communicate with each other.

The limited information available on duplicate registrations indicates that a substantial number of Americans are registered to vote in two different states. According to news reports, Florida has more than 140,000 voters who apparently are registered in four other states (in Georgia, Ohio, New York, and North Carolina).[8] This includes almost 46,000 voters from New York City alone who are registered to vote in Florida as well. Voting records of the 2000 elections appear to indicate that more than 2,000 people voted in two states. Duplicate registrations are also seen elsewhere. As many as 60,000 voters are reportedly registered in both North Carolina and South Carolina.[9]

Current procedures for updating the registration of voters who move to another state are weak or nonexistent. When people register to vote, they are usually asked to provide their prior address, so that the jurisdiction where they lived can be notified to delete their names from the voter list. Such notification, however, often does not occur. When a voter moves from Virginia to Illinois, for example, a four-step process is required to update voter registration: (1) election authorities in Illinois must ask for prior address; (2) the voter must provide prior address; (3) Illinois election authorities must notify the correct election authorities in Virginia; and (4) Virginia election authorities must remove the voter from its list. Unless all four steps are taken, this voter will remain on the voter list in Virginia. In fact, states often fail to share data or notify each other of voters who move. As a result, a substantial number of Americans are registered to vote in more than one state.



From left to right, Ken Smukler, Michael Alvarez, Paula Hawthorn, and Robert Stein at the June 30 hearing (Rice University Photo/Jeff Fitlow)

Duplicate registrations have accumulated over the years not just because there are no systems to remove them other than the one described above, but also because people who own homes in two states can register to vote in both places. In fact, when 1,700 voters who were registered in both New York and Florida requested absentee ballots to be mailed to their home in the other state, no one ever bothered to investigate.[10]

Interoperability among state voter databases is needed to identify and remove duplicate registrations of citizens who are registered to vote in more than one state. To make the state voter databases interoperable, the Commission recommends the introduction of a uniform template, shared voter data, and a system to transfer voter data across states.[11]

The template will define a common set of voter data that all states will collect in their voter databases and will share with each other. This set of data will consist of each person's full legal name, date and place of birth, signature captured as a digital image, and Social Security number. The signature is needed to confirm the identity of voters who vote by mail.

Under HAVA, voter databases need a "unique identifier," which is a number used to distinguish each individual, particularly those with the same or similar names. Some states use the driver's license number as the unique identifier for voter registration. In other states, the unique identifier is the Social Security number. Efforts to match voter registrations in states that use different identifiers are complicated and may fail. Take, for example, the problem of figuring out whether Paul Smith in Michigan is the same person as Paul Smith in Kentucky. Since the unique identifier for voter registration is the driver's license number in Michigan but the Social Security number in Kentucky, an accurate match of the two registered Paul Smiths is not likely. Any match will need to rely on Paul Smith's date of birth to estimate, based on some level of probability, whether the Paul Smith in each state is the same person or not.

To make different state voter databases interoperable, therefore, they must use the same unique identifier, and this identifier must distinguish each American from every other voter in the country. The state voter databases will need to use a nationwide identifier. Since the same driver's license number might be used in different states, the Social Security number provides the most feasible option for a federal unique identifier.

While the use of Social Security numbers for voter registration raises concerns about privacy, these concerns can be adequately addressed by the measures the Commission recommends to ensure the security of voter databases. The Commission stresses the importance for states to allow only authorized election officials to use the Social Security numbers. States should not provide Social Security numbers in the voter lists they release to candidates, political parties, or anyone else. This should not be hard to do. Forty-nine states collect Social Security numbers for driver's licenses,[12] and they have protected the privacy of the Social Security numbers.



Commissioners Jack Nelson, Ralph Munro, and Spencer Overton (American University Photo/Wilford Harewood)

Congress should direct that all states use the same unique identifier — i.e., the voter's Social Security number — and template, but a new system will also be needed to share data on voters among states. Such a system should maintain a uniform state voter list while allowing systematic updating of lists to take into account moves between states. The Commission proposes using a model similar to the one supervised by the U.S. Department of Transportation (DOT) to make sure that commercial drivers have only one license. The Commercial Driver's License Information System (CDLIS) shares data among states on commercial driver's licenses, using a "distributed database" — a collection of 51 databases (the 50 states and Washington, D.C.) that are linked to each other. When state officials want to check a particular driver's record, they go to the central site, which then connects them to the database of the state that issued a commercial license to that particular driver. Since all of the state databases are inter-connected, an update in one state database is immediately available to all other states. CDLIS is operated by the American Association of Motor Vehicle Administrators under the supervision of the U.S. Department of Transportation.

Similarly, our Commission recommends a "distributed database" that will connect all states' registration lists. The creation of a computerized system to transfer voter data between states is entirely feasible. This system could be managed either by the EAC or by an interstate compact or association of state officials under EAC supervision.

Implementation of the Commission's recommendation on cross-state interoperability of voter databases will require state election authorities to collect Social Security numbers and  digital images of signatures for all registered voters. While many states use the driver's license number as their unique identifier, they can collect Social Security numbers from their state's department of motor vehicles (a Social Security number is required by 49 states to issue a driver's license).[13]


Commissioner Nelson Lund with Commission Co-Chair James A. Baker, III (American University Photo/Wilford Harewood)

We recommend that the EAC oversee the adoption of the template for voter data and for assisting states in the creation of a new system to share voter data among states, including for setting up a distributed database.

Congress should appropriate federal funds to complete top-down state voter databases, cover the costs of adding Social Security numbers and digital images of signatures to the databases, and create and maintain the federal distributed database system for sharing voter data among states. Congress should provide these funds to the EAC for distribution to states that adopt the uniform template for voter data and join the system for data sharing. Federal funds would be withheld from states that do not make their voter files interoperable with the voter databases of other states.

As states make their voter databases interoperable, they will retain full control over their registration lists. They will only need to add to their current databases the voter data required to complete the uniform template.

Two additional innovations might help to eliminate registration problems that voters have encountered. First, voters should have an opportunity during the registration process and before Election Day to review the registration online list to see whether their name is correctly inscribed and to check their proper precinct for voting.[14] Whenever an error is discovered, voters should notify the statewide registration office to correct it, and every statewide registration office should have procedures in place to correct such an error in a timely manner. Second, precincts should have an "electronic poll-book" that connects them to the statewide registration list and allows them to locate the correct polling site for each voter. For those precincts that are small, lack the resources for such an instrument, or do not have online access, precinct officials should telephone to a neighboring jurisdiction to obtain the correct information. Poll workers should also have a dedicated phone number to contact local election officials in case assistance is needed. This phone number should be different from the number provided to the public. Too often, poll workers cannot connect with election officials when assistance is needed because public phone lines are overwhelmed.

The entire system should permit state-of-the-art, computer-based registration lists that will be accurate and up-to-date for the entire nation.

## Recommendations on Interoperability Among States

**2.2.1**   In order to assure that lists take account of citizens moving from one state to another, voter databases should be made interoperable between states. This would serve to eliminate duplicate registrations, which are a source of potential fraud.

**2.2.2**   In order to assist the states in creating voter databases that are interoperable across states, the EAC should introduce a template for shared data and a format for cross-state data transfers. This template should include a person's full legal name, date and place of birth, signature (captured as a digital image), and Social Security number.

**2.2.3**   With assistance and supervision by the EAC, a distributed database system should be established to make sure that the state lists remain current and accurate to take into account citizens moving between states. Congress should also pass a law mandating that states cooperate with this system to ensure that citizens do not vote in two states.

**2.2.4**   Congress should amend HAVA to mandate the interoperability of statewide registration lists. Federal funds should be appropriated for distribution by the EAC to states that make their voter databases interoperable, and the EAC should withhold federal funds from states that fail to do so. The law should also provide for enforcement of this requirement.

**2.2.5**   With proper safeguards for personal security, states should allow citizens to verify and correct the registration lists' information on themselves up to 30 days before the election. States should also provide "electronic poll-books" to allow precinct officials to identify the correct polling site for voters.

**2.2.6**   With interoperability, citizens should need to register only once in their lifetime and updating their registration will be facilitated when they move.

## 2.3   PROVISIONAL BALLOTS

Because of flaws in registration lists and other election administration procedures, HAVA mandated that any eligible voter who appears at the polls must be given a provisional ballot if his or her name does not appear on the voter registration list or an election official asserts that the individual is not eligible to vote. November 2, 2004, marked the first time that all states were supposed to offer provisional ballots in a general election. Out of 1.6 million provisional ballots cast, more than one million were counted.[15] The 1.6 million provisional ballots do not include an unknown number of voters who were encouraged by poll workers to go to other polling sites where they might be registered.



Provisional ballots cast during the 2004 presidential election (AP Photo/Tony Dejak)

Practices for offering and counting provisional ballots in the 2004 presidential election varied widely by state and by county. Around the country, the percentage of provisional ballots counted ranged from a national high in Alaska of 97 percent to a low of 6 percent in Delaware.[16]

This was due in part to whether a state accepted a provisional ballot cast outside of a voter's home precinct. In other situations, provisional ballots were counted without first having been verified as eligible ballots.

If the recommendations for strengthening the registration lists are approved, the need for provisional ballots will be reduced. In 2004, provisional ballots were needed half as often in states with unified databases as in states without.[17] Nonetheless, in the absence of the reforms recommended by this Commission, or in the period before they come fully into effect, provisional balloting will continue to be a crucial safety net. During the interim, in order to reduce the chances that elections are litigated, we need consistent procedures for handling provisional ballots and full training for poll workers who carry out these procedures.

---

### Recommendations on Provisional Ballots

**2.3.1**  Voters should be informed of their right to cast a provisional ballot if their name does not appear on the voter roll, or if an election official asserts that the individual is not eligible to vote, but States should take additional and effective steps to inform voters as to the location of their precinct.

**2.3.2**  States, not counties or municipalities, should establish uniform procedures for the verification and counting of provisional ballots, and that procedure should be applied uniformly throughout the State. Many members of the Commission recommend that a provisional ballot cast in the incorrect precinct but in the correct jurisdiction should be counted.

**2.3.3**  Poll workers should be fully trained on the use of provisional ballots, and provisional ballots should be distinctly marked and segregated so they are not counted until the eligibility of the voter is determined.

---

## 2.4  COMMUNICATING REGISTRATION INFORMATION

The hotlines set up by nonprofit organizations to assist voters on Election Day received hundreds of thousands of calls (see Table 1 on page 17). Most of the callers had two simple questions: Am I registered to vote? And where do I go to vote? Answers to these questions, however, too often were difficult to obtain. Only nine state election Web sites were able to provide voters with their registration information or with the address of their polling site. Information was equally difficult to obtain from election offices by telephone. One Election Day hotline transferred callers to their county board of elections, but barely half of these calls were answered, and of the other half, few provided the information that was requested.[18]

Failure to provide voters with such basic information as their registration status and their polling site location raises a barrier to voting as significant as inconsistent procedures on provisional ballots or voter ID requirements. As states gain responsibility for voter registration, they will be well positioned to inform voters if they are listed in the voter files. The Web sites of local jurisdictions should allow voters to check whether they are registered and the location of their precinct. This precinct-locator feature should be added to state elections Web sites. In addition, information on how to register and where to vote should be disseminated in local media, on posted lists, and in other government offices, including welfare and social services agencies.

Since election officials may have difficulty responding to telephone calls on Election Day as they are conducting the election, states and local jurisdictions should encourage voters to inquire about their registration status and the location of their polling place considerably before Election Day.

| TABLE 1 : Voter Calls to the MYVOTE1 Hotline on Election Day 2004 | |
|---|---|
| Topic of Question or Complaint on Election Day 2004 | Percent of Total |
| Registration Issues/Poll Access | 43.9% |
| Absentee Voting | 24.2% |
| Coercion/Intimidation | 4.9% |
| Mechanical | 4.5% |
| Identification | 2.5% |
| Provisional Ballots | 1.9% |
| Ballot/Screen | 1.3% |
| Other | 16.8% |
| TOTAL | 100.0% |

NOTES: Totals are based upon an analysis of 55,000 phone calls to the MYVOTE1 hotline on November 2, 2004. Two major, nonpartisan hotlines and the U.S. Election Assistance Commission received a total of approximately 255,000 voter calls on Election Day 2004.

SOURCES: Testimony before the Commission on Federal Election Reform by Ken Snukler, President of Info Voter Technologies, on June 30, 2005; Testimony before the U.S. House of Representatives Administration Committee by the U.S. Election Assistance Commission, on February 9, 2005.

### Recommendation on Communicating Registration Information

2.4.1 States and local jurisdictions should use Web sites, toll-free numbers, and other means to answer questions from citizens as to whether they are registered and, if so, what is the location of their precinct, and if they are not registered, how they can do so before the deadline.

## 2.5  VOTER IDENTIFICATION

A good registration list will ensure that citizens are only registered in one place, but election officials still need to make sure that the person arriving at a polling site is the same one that is named on the registration list. In the old days and in small towns where everyone knows each other, voters did not need to identify themselves. But in the United States, where 40 million people move each year, and in urban areas where some people do not even know the people living in their own apartment building let alone their precinct, some form of identification is needed.

There is no evidence of extensive fraud in U.S. elections or of multiple voting, but both occur, and it could affect the outcome of a close election.[19] The electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters. Photo IDs currently are needed to board a plane, enter federal buildings, and cash a check. Voting is equally important.



Commissioner Lee Hamilton
(American University Photo/Wilford Harewood)

The voter identification requirements introduced by HAVA are modest. HAVA requires only first-time voters who register by mail to show an ID, and they can choose from a number of different types of identification. States are encouraged to allow an expansive list of acceptable IDs, including those without a photograph, such as utility bills or government checks. These requirements were not implemented in a uniform manner and, in some cases, not at all. After HAVA was enacted, efforts grew in the states to strengthen voter identification requirements. While 11 states required voter ID in 2001, 24 states now require voters to present an ID at the polls.[20] In addition, bills to introduce or strengthen voter ID requirements are under consideration in 12 other states.[21]

Our Commission is concerned that the different approaches to identification cards might prove to be a serious impediment to voting. There are two broad alternatives to this decentralized and unequal approach to identification cards. First, we could recommend eliminating any requirements for an ID because the evidence of multiple voting is thin, and ID requirements, as some have argued, are "a solution in search of a problem." Alternatively, we could recommend a single national voting identification card. We considered but rejected both alternatives.

We rejected the first option — eliminating any requirements — because we believe that citizens should identify themselves as the correct person on the registration list when they vote. While the Commission is divided on the magnitude of voter fraud — with some believing the problem is widespread and others believing that it is minor — there is no doubt that it occurs. The problem, however, is not the magnitude of the fraud. In close or disputed elections, and there are many, a small amount of fraud could make the margin of difference. And second, the perception of possible fraud contributes to low confidence in the system. A good ID system could deter, detect, or eliminate several potential avenues of fraud— such as multiple voting or voting by individuals using the identities of others or

App. 0273

those who are deceased — and thus it can enhance confidence. We view the other concerns about IDs — that they could disenfranchise eligible voters, have an adverse effect on minorities, or be used to monitor behavior — as serious and legitimate, and our proposal below aims to address each concern.

We rejected the second option of a national voting identification card because of the expense and our judgment that if these cards were only used for each election, voters would forget or lose them.

We therefore propose an alternative path. Instead of creating a new card, the Commission recommends that states use "REAL ID" cards for voting purposes. The REAL ID Act, signed into law in May 2005, requires states to verify each individual's full legal name, date of birth, address, Social Security number, and U.S. citizenship before the individual is issued a driver's license or personal ID card. The REAL ID is a logical vehicle because the National Voter Registration Act established a connection between obtaining a driver's license and registering to vote. The REAL ID card adds two critical elements for voting — proof of citizenship and verification by using the full Social Security number.



Former Atlanta Mayor Andrew Young addresses the Commission on August 30 at The Carter Center (American University Photo/Wilford Harewood)

The REAL ID Act does not require that the card indicates citizenship, but that would need to be done if the card is to be used for voting purposes. In addition, state bureaus of motor vehicles should automatically send the information to the state's bureau of elections. (With the National Voter Registration Act, state bureaus of motor vehicles ask drivers if they want to register to vote and send the information only if the answer is affirmative.)

Reliance on REAL ID, however, is not enough. Voters who do not drive,[22] including older citizens, should have the opportunity to register to vote and receive a voter ID. Where they will need identification for voting, IDs should be easily available and issued free of charge. States would make their own decision whether to use REAL ID for voting purposes or instead to rely on a template form of voter ID. Each state would also decide whether to require voters to present an ID at the polls, but our Commission recommends that states use the REAL ID and/or an EAC template for voting, which would be a REAL ID card without reference to a driver's license.

For the next two federal elections, until January 1, 2010, in states that require voters to present ID at the polls, voters who fail to do so should nonetheless be allowed to cast a provisional ballot, and their ballot would count if their signature is verified. After the REAL ID is phased in, i.e., after January 1, 2010, voters without a valid photo ID, meaning a REAL ID or an EAC-template ID, could cast a provisional ballot, but they would have to return personally to the appropriate election office within 48 hours with a valid photo ID for their vote to be counted.

App. 0274

To verify the identity of voters who cast absentee ballots, the voter's signature on the absentee ballot can be matched with a digitized version of the signature that the election administrator maintains. While such signature matches are usually done, they should be done consistently in all cases, so that election officials can verify the identity of every new registrant who casts an absentee ballot.

The introduction of voter ID requirements has raised concerns that they may present a barrier to voting, particularly by traditionally marginalized groups, such as the poor and minorities, some of whom lack a government-issued photo ID. They may also create obstacles for highly mobile groups of citizens. Part of these concerns are addressed by assuring that government-issued photo identification is available without expense to any citizen and, second, by government efforts to ensure that all voters are provided convenient opportunities to obtain a REAL ID or EAC-template ID card. As explained in Section 4.1, the Commission recommends that states play an affirmative role in reaching out with mobile offices to individuals who do not have a driver's license or other government-issued photo ID to help them register to vote and obtain an ID card.



Commissioners David Leebron, Betty Castor, and Tom Phillips (American University Photo/Wilford Harewood)

There are also longstanding concerns voiced by some Americans that national identification cards might be a step toward a police state. On that note, it is worth recalling that most advanced democracies have fraud-proof voting or national ID cards, and their democracies remain strong. Still, these concerns about the privacy and security of the card require additional steps to protect against potential abuse. We propose two approaches. First, new institutional and procedural safeguards should be established to assure people that their privacy, security, and identity will not be compromised by ID cards. The cards should not become instruments for monitoring behavior. Second, certain groups may see the ID cards as an obstacle to voting, so the government needs to take additional measures to register voters and provide ID cards.

The needed measures would consist of legal protections, strict procedures for managing voter data, and creation of ombudsman institutions. The legal protections would prohibit any commercial use of voter data and impose penalties for abuse. The data-management procedures would include background checks on all officials with access to voter data and requirements to notify individuals who are removed from the voter registration list. The establishment of ombudsman institutions at the state level would assist individuals to redress any cases of abuse. The ombudsman would be charged with assisting voters to overcome bureaucratic mistakes and hurdles and respond to citizen complaints about the misuse of data.

The Commission's recommended approach to voter ID may need to adapt to changes in national policy in the future. Since the attacks of September 11, 2001, concerns about homeland security have led to new policies on personal identification. Under a presidential directive, about 40 million Americans who work for or contract with the federal government are being issued ID cards with biometrics, and the REAL ID card may very well become the principal identification card in the country. Driven by security concerns, our country may already be headed toward a national identity card. In the event that a national identity card is introduced, our Commission recommends that it be used for voting purposes as well.

## Recommendations on Voter Identification

**2.5.1**  To ensure that persons presenting themselves at the polling place are the ones on the registration list, the Commission recommends that states require voters to use the REAL ID card, which was mandated in a law signed by the President in May 2005. The card includes a person's full legal name, date of birth, a signature (captured as a digital image), a photograph, and the person's Social Security number. This card should be modestly adapted for voting purposes to indicate on the front or back whether the individual is a U.S. citizen. States should provide an EAC-template ID with a photo to non-drivers free of charge.

**2.5.2**  The right to vote is a vital component of U.S. citizenship, and all states should use their best efforts to obtain proof of citizenship before registering voters.

**2.5.3**  We recommend that until January 1, 2010, states allow voters without a valid photo ID card (Real or EAC-template ID) to vote, using a provisional ballot by signing an affidavit under penalty of perjury. The signature would then be matched with the digital image of the voter's signature on file in the voter registration database, and if the match is positive, the provisional ballot should be counted. Such a signature match would in effect be the same procedure used to verify the identity of voters who cast absentee ballots. After January 1, 2010, voters who do not have their valid photo ID could vote, but their ballot would only count if they returned to the appropriate election office within 48 hours with a valid photo ID.

**2.5.4**  To address concerns about the abuse of ID cards, or the fear that it could be an obstacle to voting, states should establish legal protections to prohibit any commercial use of voter data and ombudsman institutions to respond expeditiously to any citizen complaints about the misuse of data or about mistaken purges of registration lists based on interstate matching or statewide updating.

**2.5.5**  In the event that Congress mandates a national identification card, it should include information related to voting and be connected to voter registration.

## 2.6   QUALITY IN VOTER REGISTRATION LISTS

Voter registration lists provide the basis for determining who is qualified to vote. Yet only a few states, notably Oregon and North Carolina, have assessed the quality of their lists, or have developed plans to do so. This is also true as states rush to complete statewide voter databases before the January 1, 2006, deadline. Moreover, the EAC does not assess the quality of voter files.

The little information available on the quality of voter files is not reassuring. The creation of statewide voter databases allows for the elimination of duplicate registrations within states, but attempts to match voter files with records of other state agencies are often ineffective. Death records, for example, sometimes are not provided to election officials for three or four months, and information on felons is usually incomplete.[23] Comparison with U.S. Census Bureau statistics also points to extensive "deadwood" on the voter registration lists. Some states have a large portion of inactive voters on their voter registration lists. One in four registered voters in Oregon is inactive, as is one in every three registered voters in California.[24] There also are numerous jurisdictions, such as Alaska, where the number of registered voters is greater than the number of voting-aged citizens.[25] These jurisdictions clearly have not updated their voter registration lists by removing the names of voters who have died or have moved away.



An elections clerk in Detroit gives a voter an absentee ballot after verifying her registration status (AP Photo/Carlos Osorio)

Voter registration lists are often inflated by the inclusion of citizens who have moved out of state but remain on the lists. Moreover, under the National Voter Registration Act, names are often added to the list, but counties and municipalities often do not delete the names of those who moved. Inflated voter lists are also caused by phony registrations and efforts to register individuals who are ineligible. Registration forms in the names of comic figures, for example, were submitted in Ohio in 2004. At the same time, inaccurate purges of voter lists have removed citizens who are eligible and are properly registered.

From what little is known, the quality of voter registration lists probably varies widely by state. Without quality assurance, however, cross-state transfers of voter data may suffer from the problem of "garbage in, garbage out." They may pass on inaccurate data from certain states to the rest of the country. The overall quality of a system to share voter data among states will only be a strong as the quality of the worst state voter database.

Each state needs to audit its voter registration files to determine the extent to which they are accurate (with correct and current information on individuals), complete (including all eligible voters), valid (excluding ineligible voters), and secure (with protections against unauthorized use). This can be done by matching voter files with records in other state agency databases in a regular and timely manner, contacting individuals when the matches are inconclusive, and conducting survey research to estimate the number of voters who believe they are registered but who are not in fact listed in the voter files. Other countries regularly conduct such audits.[26]

App. 0277

Effective audits assess not only the quality of voter files but also the procedures used to update, maintain, and verify data and to ensure security of voter databases. To assure continual quality of voter databases, effective procedures are needed to maintain up-to-date lists of eligible voters, verify the accuracy of those lists, and remove voters who have become ineligible. These should include procedures to delete those who have moved out of state and to effectively match voter files with records of driver's licenses, deaths, and felons. Given the controversial "purges" that have occurred, special care must be taken to update the lists in a fair and transparent manner. States should adopt uniform procedures and strong safeguards against incorrect removal of eligible voters. Every removal should be double-checked before it is executed, and a record should be kept of every action. The process of updating the lists should be continuous, and before each statewide election the voter rolls should be audited for accuracy.

In addition, states need to assure the privacy and security of voter files. There is no justification for states to release voter files for commercial purposes. However, components of voter files should remain public documents subject to public scrutiny. States must carefully balance the right to privacy of registered citizens with the need for transparency in elections when they decide what information on voter registration to make available to the public. Procedures are also needed to protect voter files against tampering or abuse. This might be done by setting up the voter database to make an automatic record of all changes to the voter files, including a record of who made the changes and when.

---

### Recommendations on Quality in Voter Registration Lists

**2.6.1** States need to effectively maintain and update their voter registration lists. The EAC should provide voluntary guidelines to the states for quality audits to test voter registration databases for accuracy (correct and up-to-date information on individuals), completeness (inclusion of all eligible voters), and security (protection against unauthorized access). When an eligible voter moves from one state to another, the state to which the voter is moving should be required to notify the state which the voter is leaving to eliminate that voter from its registration list.

**2.6.2** All states should have procedures for maintaining accurate lists such as electronic matching of death records, drivers licenses, local tax rolls, and felon records.

**2.6.3** Federal and state courts should provide state election offices with the lists of individuals who declare they are non-citizens when they are summoned for jury duty.

**2.6.4** In a manner that is consistent with the National Voter Registration Act, states should make their best efforts to remove inactive voters from the voter registration lists. States should follow uniform and strict procedures for removal of names from voter registration lists and should adopt strong safeguards against incorrect removal of eligible voters. All removals of names from voter registration lists should be double-checked.

**2.6.5** Local jurisdictions should track and document all changes to their computer databases, including the names of those who make the changes.



(AP Photo/Rich Pedroncelli)

## 3.  Voting Technology

The Help America Vote Act of 2002 authorized up to $650 million in federal funds to replace antiquated voting machines throughout the country. States are using these funds and their own resources to upgrade voting technology, generally to replace punch card and lever voting machines with new optical scan and electronic voting systems. As a result, voting technology is improving,[27] but new concerns related to electronic voting systems have arisen. These concerns need to be addressed, because it is vital to the electoral process that citizens have confidence that voting technologies are registering and tabulating votes accurately.

### 3.1  VOTING MACHINES

The purpose of voting technology is to record and tally all votes accurately and to provide sufficient evidence to assure all participants — especially the losing candidates and their supporters — that the election result accurately reflects the will of the voters.

Voting machines must be both accessible and transparent. As required by HAVA, the machines must be accessible to language minorities and citizens with disabilities, including the blind and visually impaired citizens, in a manner that allows for privacy and independence. Voting machines must also be transparent. They must allow for recounts and for audits, and thereby give voters confidence in the accuracy of the vote tallies.

Two current technology systems are optical scan and direct recording electronic (DRE) systems. Optical scan systems rely on preprinted paper ballots that are marked by the voter, like the ovals students fill in with a No. 2 pencil on a standardized exam, and then are run through an optical scan machine that determines and tallies the votes. Such systems provide transparency because the paper ballots can be recounted and audited by hand. Under HAVA, all aspects of the voting system, including the production of audit trail information, must be accessible to voters with disabilities.

DRE machines present voters with their choices on a computer screen, and voters choose by touching the screen or turning a dial. The vote is then recorded electronically, usually without ballot paper. DREs make up a growing share of voting equipment. Nearly 30 percent of voters live in jurisdictions that use DREs, compared to 17 percent in the 2000 election (see Table 2 on page 27).[28] DREs allow voters with disabilities to use audio prompts to cast ballots privately and independently, and they facilitate voting by non-English speakers by offering displays of the ballot in different languages. DREs also provide greater accuracy in recording votes, in part by preventing over-votes, whereby people mistakenly vote for more than one candidate, and by discouraging accidental under-votes by reminding voters when they overlooked one or more races.

The accessibility and accuracy of DREs, however, are offset by a lack of transparency, which has raised concerns about security and verifiability. In most of the DREs used in 2004, voters could not check that their ballot was recorded correctly. Some DREs had no capacity for an independent recount. And, of course, DREs are computers, and computers malfunction. A malfunction of DREs in Carteret County, North Carolina, in the November 2004 elections caused the loss of more than 4,400 votes. There was no backup record of the votes that were cast. As a result, Carteret County had no choice but to rerun

App. 0280

the election, after which it abandoned its DREs. Other jurisdictions have lost votes because election officials did not properly set up voting machines.[29]

To provide backup records of votes cast on DREs, HAVA requires that all voting machines produce a "permanent paper record with a manual audit capacity." This requirement is generally interpreted to mean that each machine must record individual ballot images, so that they can be printed out and examined in the event of a disputed result or of a recount. This will make DREs somewhat more transparent, but it is still insufficient to fully restore confidence.

One way to instill greater confidence that DREs are properly recording votes is to require a paper record of the ballot that the voter can verify before the ballot is cast. Such a paper record, known as a voter-verifiable paper audit trail (VVPAT), allows the voter to check that his or her vote was recorded as it was intended.

Because voter-verifiable paper audit trails can permit recounts, audits, and a backup in case of a malfunction, there is a growing demand for such paper trails. As of early August 2005, 25 states required voter-verifiable paper ballots, and another 14 states had proposed legislation with such a requirement.[30]

Since very few of the DREs in use today are equipped to print voter-verifiable paper audit trails, certain bills before Congress would require election authorities to "retrofit" DREs with such printers. In 2004, DREs with voter-verifiable paper audit trails were used only in Nevada. They appear to have worked well.[31] When Nevadans went to the polls and made their selection, a paper record of their vote was printed behind a glass cover on a paper roll, like the roll of paper in a cash register. Voters were able to view the paper record and thereby check that their vote was recorded accurately before they cast their ballot. The paper record was saved in the machine and thus was available for later use in recounts or audits. After the 2004 elections, Nevada election officials conducted an internal audit, which confirmed the accuracy of the votes recorded by the DREs. While less than one in three Nevada voters reportedly looked at the paper record of their ballot, these voters had the opportunity to confirm their vote, and the paper allowed a chance to verify the computer tallies after the election.

While HAVA already requires that all precincts be equipped with at least one piece of voting equipment that is fully accessible to voters with disabilities for use in federal elections by January 1, 2006, must be accessible to voters with disabilities, the Commission believes that transparency in voting machines should also be assured in time for the 2008 presidential election. With regard to current technology, states will need to use either DREs with a voter-verifiable paper audit trail and an audio prompt for blind voters or optical scan voting systems with at least one computer-assisted marking device for voters with disabilities to mark their ballot. To ensure implementation of this requirement, Congress will need to appropriate sufficient funds to cover the costs of either retrofitting DREs with voter-verifiable paper audit trails or purchasing a computer-assisted marking device for each polling place that uses optical scan voting systems.

Concerns have been raised that the printers could malfunction just as computers do. Of course, the previous ballot papers will be available, and the operators will know when the printers fail. Still, precincts should have backup printers for that contingency. A second concern is that the length of the ballot in some areas — such as California, which frequently

has referenda — would require paper trails that would be several feet long. In the case of non-federal races, state law would determine whether the non-federal portion of the ballot would similarly be required to provide a voter-verified paper audit trail. That is not a perfect solution, but it is still better than having no paper backup at all.

The standards for voting systems, set by the EAC, should assure both accessibility and transparency in all voting machines. Because these standards usually guide the decisions of voting machine manufacturers, the manufacturers should be encouraged to build machines in the future that are both accessible and transparent and are fully capable of meeting the needs of Americans with disabilities, of allowing voters to verify their ballots, and of providing for independent audits of election results.

| TABLE 2: Types of Voting Equipment Used in Recent Presidential Elections | | |
|---|---|---|
| Type of Voting Equipment | Registered Voters in 2000 (by percentage) | Registered Voters in 2004 (by percentage) |
| Punch Card | 27.9% | 12.4% |
| Lever | 17.0% | 14.0% |
| Paper Ballots | 1.3% | 0.7% |
| DataVote | 2.8% | 1.3% |
| Optical Scan | 29.5% | 34.9% |
| Electronic | 12.6% | 29.4% |
| Mixed | 8.9% | 7.4% |
| TOTAL | 100.0% | 100.0% |

SOURCE: Election Data Services, Voting Equipment Summary by Type, 2004. Election Data Services, New Study Shows 50 Million Voters Will Use Electronic Voting Systems, 32 with Punch Cards in 2004.

## Recommendations on Voting Machines

**3.1.1** Congress should pass a law requiring that all voting machines be equipped with a voter-verifiable paper audit trail and, consistent with HAVA, be fully accessible to voters with disabilities. This is especially important for direct recording electronic (DRE) machines for four reasons: (a) to increase citizens' confidence that their vote will be counted accurately, (b) to allow for a recount, (c) to provide a backup in cases of loss of votes due to computer malfunction, and (d) to test — through a random selection of machines — whether the paper result is the same as the electronic result. Federal funds should be appropriated to the EAC to transfer to the states to implement this law. While paper trails and ballots currently provide the only means to meet the Commission's recommended standards for transparency, new technologies may do so more effectively in the future. The Commission therefore urges research and development of new technologies to enhance transparency, security, and auditability of voting systems.

**3.1.2** States should adopt unambiguous procedures to reconcile any disparity between the electronic ballot tally and the paper ballot tally. The Commission strongly recommends that states determine well in advance of elections which will be the ballot of record.

App: 0282

## 3.2   AUDITS

While voter-verifiable paper ballots will contribute to strengthening public confidence in DREs, regular audits of voting machines are also needed to double-check the accuracy of the machines' vote tallies. Such audits were required by law in 10 states as of mid-August 2005.[32] To carry out such audits, election officials would randomly select a sample of voting machines and compare the vote total recorded by the machines with the vote total on the paper ballots. The audits would test the reliability of voting machines and identify problems, often before a close or disputed election takes place. This, in turn, would encourage both suppliers and election officials to effectively maintain voting machines.

Some concern has been expressed about the possibility of manipulation of paper audit trails.[33] If DREs can be manipulated to alter the vote tallies, the same can be done with paper audit trails. Such manipulation can be detected and deterred by regular audits of voting machines. Regular audits should be done of all voting machines, including DREs and optical scan systems.

---

**Recommendation on Audits**

3.2.1   State and local election authorities should publicly test all types of voting machines before, during, and after Election Day and allow public observation of zero machine counts at the start of Election Day and the machine certification process.

---

## 3.3   SECURITY FOR VOTING SYSTEMS

DREs run on software that can be compromised. DRE software may get attacked or hacked by outsiders, perhaps through the Internet. As experience in computer security shows, it is often difficult to defend against such attacks. Hackers often are creative and determined, and voting systems provide a tempting target. However, while some DREs send their results to election headquarters over the Internet, they are not connected to the Internet during voting.

The greater threat to most systems comes not from external hackers, but from insiders who have direct access to the machines. Software can be modified maliciously before being installed into individual voting machines. There is no reason to trust insiders in the election industry any more than in other industries, such as gambling, where sophisticated insider fraud has occurred despite extraordinary measures to prevent it. Software can also be programmed incorrectly. This poses a likely threat when local programmers who lack the necessary skills nonetheless modify the ballot for local offices, and many might not have the sophistication required for the new machines.

In addition to the output of DREs, which can be verified through a paper audit trail, the inside process of programming DREs should be open to scrutiny by candidates, their supporters, independent experts, and other interested citizens, so that problems can be detected, deterred, or corrected, and so that the public will have confidence in the machines.

At the same time, manufacturers of voting machines have legitimate reason to keep their voting machine software and its source code proprietary. The public interest in transparency and the proprietary interests of manufacturers can be reconciled by placing the source code in escrow with the National Institute of Standards and Technology (NIST), and by making the source code available for inspection on a restricted basis to qualified individuals. NIST might make the source code available to recognized computer security experts at accredited universities and to experts acting on behalf of candidates or political parties under a nondisclosure agreement, which would bar them from making information about the source code public, though they could disclose security flaws or vulnerabilities in the voting system software.



Stanford University Professor David Dill at the April 18 hearing (American University Photo/Jeff Watts)

Doubt has been raised that some manufacturers of voting machines provide enough security in their systems to reduce the risk of being hacked. Such concerns were highlighted after a group of computer security experts examined a voting system source code that was accidentally left on the Internet.[34] Independent inspection of source codes would strengthen the security of voting systems software by encouraging manufacturers to improve voting system security. Expert reviews may also detect software design flaws or vulnerabilities. This, in turn, could bolster public confidence in the reliability of DREs to accurately record and tally the vote in elections.

In addition to the source codes, the software and the voting machines themselves are potentially vulnerable to manipulation. Security for voting systems should guard against attempts to tamper with software or individual voting machines. When voting machines are tested for certification, a digital fingerprint, also known as a "hash," of their software is often sent to NIST. Following the delivery of new voting machines, a local jurisdiction can compare the software on these machines to the digital fingerprint at NIST. This comparison either will identify changes made to the software before delivery or, if the software is unaltered, will confirm that the software on the individual machines meets the certified standards.

Once voting machines arrive at the local jurisdiction, election officials must take precautions to ensure security by restricting access to authorized personnel and by documenting access to the machines.

The process of testing and certifying voting machines is designed mainly to ensure their reliability. Testing and certification is conducted under EAC supervision, although some states require additional testing and certification. The state testing can make the process more rigorous, particularly when voting machines are field tested. When California conducted a mock election with new voting machines in July 2005, it found unacceptable rates of malfunctions that were not apparent in lab tests.[35]

No matter how secure voting machines are or how carefully they are used, they are liable to malfunction. To avoid a situation where a machine malfunction will cause a major disruption, local jurisdictions need to prepare for Election Day with a backup plan, including how the vendor will respond to a machine malfunction and what alternatives, including paper ballots, should be made available.

---

### Recommendations on Security for Voting Systems

**3.3.1**  The Independent Testing Authorities, under EAC supervision, should have responsibility for certifying the security of the source codes to protect against accidental or deliberate manipulation of vote results. In addition, a copy of the source codes should be put in escrow for future review by qualified experts. Manufacturers who are unwilling to submit their source codes for EAC-supervised testing and for review by independent experts should be prohibited from selling their voting machines.

**3.3.2**  States and local jurisdictions should verify upon delivery of a voting machine that the system matches the system that was certified.

**3.3.3**  Local jurisdictions should restrict access to voting equipment and document all access, as well as all changes to computer hardware or software.

**3.3.4**  Local jurisdictions should have backup plans in case of equipment failure on Election Day.

---

## 3.4  INTERNET VOTING

The Internet has become such a pervasive influence on modern life that it is natural for the public and election officials to begin considering ways to use it to facilitate voting. The first binding Internet election for political office took place in 2000, when the Arizona Democratic Party used it during its primary. In 2004, the Michigan Democratic Party allowed voting by Internet during its caucuses. Meanwhile, Missouri announced that any member of the U.S. military serving in combat areas overseas could complete an absentee ballot for the general election and email a scanned copy to the Department of Defense, which then would forward it to the appropriate local election offices.

Despite these much-publicized trials, serious concerns have been raised about the push for a "digital democracy." In 2004, the Department of Defense cancelled its $22 million Secure Electronic and Voting Registration Experiment (SERVE) program designed to offer Internet voting during the presidential election to members of the U.S. military and other overseas citizens. The cancellation came after a group of top computer scientists who reviewed the system reported that without improved security, Internet voting is highly susceptible to fraud.

First, there are the issues of privacy and authentication. When using the Internet, one cannot assure voters that their ballot will remain secret. Second, the current system is not fully secure. Although data sent via the Internet can be encrypted and then decoded by local election administrators, hackers can compromise the system. This was the conclusion of the computer scientists who reviewed the SERVE program for the Pentagon. Due to security threats, some state and local election offices do not allow vote totals to be transmitted via the Internet. Third, no government or industry standards specifically apply to Internet voting technology. The EAC may begin developing such standards, but that work has not begun. Finally, Internet voting from homes and offices may not provide the same level of privacy as the voting booth.

To date, the most comprehensive study of Internet voting is contained in a 2001 report sponsored by the National Science Foundation.[36] This report urges further research and experimentation to deal with the problems posed by this form of voting. Its authors suggest that it will take at least a decade to examine the various security and authentication issues. Our Commission agrees that such experimentation is necessary, and that the time for Internet voting has not yet arrived.



Harris County (TX) election official Elsa Garcia, far right, demonstrates an electronic voting machine for Commissioners (l-r) Susan Molinari, Tom Daschle, and Betty Castor (Rice University Photo/Jeff Fitlow)

App. 0286



(AP Photo/Julia Cumes)

## 4.  Expanding Access to Elections

The Commission believes that the vitality of America's democracy depends on the active participation of our citizens. Yet, even in the presidential election in 2004, when voter interest was higher than normal, more than one in three eligible voters did not participate. We need to do more to increase voter participation, and we have considered numerous methods. None of them will solve the problem, but we encourage states to experiment with alternatives to raise the level of voter participation.

Recent elections have seen a substantial increase in early voting and in voting by mail. While only 8 percent of ballots were cast before Election Day in 1994, by 2004 the percentage of ballots cast before Election Day had risen to 22 percent. This increase in early and convenience voting has had little impact on voter turnout, because citizens who vote early or vote by mail tend to vote anyway.[37] Early and convenience voting are popular, but there is little evidence that they will significantly expand participation in elections.[38]



Commissioner Rita DiMartino
(American University Photo/Wilford Harewood)

There are other measures that can be taken to expand participation, particularly for military and overseas voters and for citizens with disabilities. There is also much to do with regard to civic and voter education that could have a long-term and lasting effect, particularly on young people. However, we first need to reach out to all eligible voters and remove any impediments to their participation created by the registration process or by identification requirements.

All citizens, including citizens with disabilities, need to have access to polling places. Polling places should be located in public buildings and other semipublic venues such as churches and community centers that comply with the Americans with Disability Act (ADA). Additionally, polling places should be located and protected so that voters can participate free of intimidation and harassment. Polling places should not be located in a candidate's headquarters or in homes or business establishments that are not appropriately accessible to voters with disabilities.

### 4.1  ASSURED ACCESS TO ELECTIONS

The Commission's proposals for a new electoral system contain elements to assure the quality of the list and the integrity of the ballot. But to move beyond the debate between integrity and access, specific and important steps need to be taken to assure and improve access to voting.

States have a responsibility to make voter registration accessible by taking the initiative to reach out to citizens who are not registered, for instance by implementing provisions of the National Voter Registration Act that allow voter registration at social-service agencies or by conducting voter registration and REAL ID card drives with mobile offices. Michigan, for



A woman in St. Louis goes door-to-door soliciting new voter registrants for the 2004 election (AP Photo/Ron Edmonds)

example, uses a mobile office to provide a range of services, including driver's licenses and voter registration. This model should be extended to all the states.

Political party and nonpartisan voter registration drives generally contribute to the electoral process by generating interest in upcoming elections and expanding participation. However, they are occasionally abused. There were reports in 2004 that some party activists failed to deliver voter registration forms of citizens who expressed a preference for the opposing party. During the U.S. House Administration Committee hearings in Ohio, election officials reported being deluged with voter registration forms at the last minute before the registration deadline, making it difficult to process these registrations in a timely manner. Many of the registration forms delivered in October to election officials were actually collected in the spring.

Each state should therefore oversee political party and nonpartisan voter registration drives to ensure that they operate effectively, that registration forms are delivered promptly to election officials, that all completed registration forms are delivered to the election officials, and that none are "culled" and omitted according to the registrant's partisan affiliation. Measures should also be adopted to track and hold accountable those who are engaged in submitting fraudulent voter registrations. Such oversight might consist of training activists who conduct voter registration drives and tracking voter registration forms to make sure they are all accounted for. The tracking of voter registration forms will require better cooperation between the federal and state governments, perhaps through the EAC, as the federal government puts some registration forms online. In addition, states should apply a criminal penalty to any activist who deliberately fails to deliver a completed voter registration form.

## Recommendations on Assured Access to Elections

**4.1.1** States should undertake their best efforts to make voter registration and ID accessible and available to all eligible citizens, including Americans with disabilities. States should also remove all unfair impediments to voter registration by citizens who are eligible to vote.

**4.1.2** States should improve procedures for voter registration efforts that are not conducted by election officials, such as requiring state or local registration and training of any "voter registration drives."

**4.1.3** Because there have been reports that some people allegedly did not deliver registration forms of those who expressed a preference for another party, states need to take special precautions to assure that all voter registration forms are fully accounted for. A unique number should be printed on the registration form and also on a detachable receipt so that the voter and the state election office can track the status of the form." In addition, voter registration forms should be returned within 14 days after they are signed.

## 4.2 VOTE BY MAIL

A growing number of Americans vote by mail. Oregon moved entirely to a vote-by-mail system in 1998, and the practice of casting ballots by mail has continued to expand nationwide as voters and election officials seek alternatives to the traditional system of voting at polling stations. The state legislatures of California and of Washington state have considered legislation to expand the use of vote by mail, and in 24 states no excuse is required to vote absentee.

The impact of vote by mail is mixed. Proponents argue that vote by mail facilitates participation among groups that experience low voter turnout, such as elderly Americans and Native Americans.

While vote by mail appears to increase turnout for local elections, there is no evidence that it significantly expands participation in federal elections.[40] Moreover, it raises concerns about privacy, as citizens voting at home may come under pressure to vote for certain candidates, and it increases the risk of fraud. Oregon appears to have avoided significant fraud in its vote-by-mail elections by introducing safeguards to protect ballot integrity, including signature verification. Vote by mail is, however, likely to increase the risks of fraud and of contested elections in other states, where the population is more mobile, where there is some history of troubled elections, or where the safeguards for ballot integrity are weaker.



An Oregon voter drops off his mail ballot (AP Photo/Rick Bowmer)

The case of King County, Washington, is instructive. In the 2004 gubernatorial elections, when two in three ballots there were cast by mail, authorities lacked an effective system to track the number of ballots sent or returned. As a result, King County election officials were unable to account for all absentee ballots. Moreover, a number of provisional ballots were accepted without signature verification.[41] The failures to account for all absentee ballots and to verify signatures on provisional ballots became issues in the protracted litigation that followed Washington state's 2004 gubernatorial election.

Vote by mail is popular but not a panacea for declining participation. While there is little evidence of fraud in Oregon, where the entire state votes by mail, absentee balloting in other states has been one of the major sources of fraud. Even in Oregon, better precautions are needed to ensure that the return of ballots is not intercepted.

The evidence on "early" voting is similar to that of vote by mail. People like it, but it does not appear to increase voter participation, and there are some drawbacks. It allows a significant portion of voters to cast their ballot before they have all of the information that will become available to the rest of the electorate. Crucial information about candidates may emerge in the final weeks or even days of an election campaign. Early and convenience voting also detracts from the collective expression of citizenship that takes place on Election

Day. Moreover, the cost of administering elections and of running campaigns tends to increase when early and mail-in voting is conducted in addition to balloting on Election Day. Early voting should commence no earlier than 15 days prior to the election, so that all voters will cast their ballots on the basis of largely comparable information about the candidates and the issues.

---

**Recommendation on Vote by Mail**

**4.2.1**  The Commission encourages further research on the pros and cons of vote by mail and of early voting.

---

## 4.3  VOTE CENTERS

Another alternative to voting at polling stations is the innovation of "vote centers," pioneered by Larimer County, Colorado. Vote centers are larger in size than precincts but fewer in number. They are dispersed throughout the jurisdiction, but close to heavy traffic routes, larger residential areas, and major employers. These vote centers allow citizens to vote anywhere in the county rather than just at a designated precinct. Because these vote centers employ economies of scale, fewer poll workers are required, and they tend to be more professional. Also, the vote centers are reported to use more sophisticated technology that is more accessible to voters with disabilities. Vote centers eliminate the incidence of out-of-precinct provisional ballots, but they need to have a unified voter database that can communicate with all of the other centers in the county to ensure that eligible citizens vote only once.

While vote centers appear to have operated effectively in Larimer County, further research is needed to determine if the costs of establishing vote centers are offset by the savings of eliminating traditional polling sites. Moreover, because vote centers replace traditional voting at precincts, which are generally closer to a voter's home, it is not clear that citizens actually view them as more convenient.

---

**Recommendations on Vote Centers**

**4.3.1**  States should modify current election law to allow experimentation with voting centers. More research, however, is needed to assess whether voting centers expand voter participation and are cost effective.

**4.3.2**  Voting centers need a higher quality, computer-based registration list to assure that citizens can vote at any center without being able to vote more than once.

---

App. 0291

## 4.4  MILITARY AND OVERSEAS VOTING

Military and overseas voting present substantial logistical challenges, yet we cannot overstate the imperative of facilitating participation in elections by military and overseas voters, particularly by service men and women who put their lives on the line for their country. The Commission calls on every state, with federal government assistance, to make every effort to provide all military and overseas voters with ample opportunity to vote in federal elections.

More than six million eligible voters serve in the Armed Forces or live overseas. These voters include 2.7 million military and their dependents and 3.4 million diplomats, Peace Corps volunteers, and other civilian government and other citizens overseas.[42]



Voter turnout among members of the armed forces is high. So is the level of frustration they experience when their votes cannot be counted. This happens largely because of the time required by the three-step process of applying for an absentee ballot, receiving one, and then returning a completed ballot. The process is complicated by the differences among states and among localities in the registration deadline, ballot format, and requirements for ballot return, and it is exacerbated because of the mobility of service men and women during a time of conflict. Since September 11, 2001, more than 500,000 National Guard and Reserve personnel have been mobilized, and many were relocated before they received their absentee ballots.

A U.S. Army officer stationed in Bosnia fills in his 2004 voting forms (AP Photo/Amel Emric)

Congress passed the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) in 1986 to help eligible members of the armed services and their families, and other citizens overseas, to vote. UOCAVA required each state to have a single office to provide information on voter registration and absentee ballot procedures for military voters. The Help America Vote Act of 2002 (HAVA) recommended — but did not require — that this state office should coordinate voting by military personnel by receiving absentee ballot applications and collecting voted ballots. The introduction of statewide voter registration databases under HAVA provides an opportunity to put this recommendation into practice. But aside from Alaska, which already had a single state office, no state has centralized the processing of absentee ballots. This is another example as to why recommending, rather than requiring, a course of action is insufficient.

The Commission recommends that when registering members of the armed forces and other overseas voters, states should inquire whether to send an absentee ballot to them automatically, thus saving a step in the process.

In the 2004 presidential election, approximately one in four military voters did not vote for a variety of reasons: The absentee ballots were not returned or arrived too late; they were rejected for procedural deficiencies, such as a signature not properly witnessed on the back of the return envelope; blank ballots were returned as undeliverable; or Federal Post Card Applications were rejected.[43]

The U.S. Department of Defense's Federal Voting Assistance Program, which assists military and overseas voters, tried to reduce the time lag for absentee voting by launching an electronic voting experiment. However, this experiment was ended because of fundamental security problems (see above on "Internet voting").[44] In the meantime, the Federal Voting Assistance Program encouraged states to send blank ballots out electronically and to accept voted ballots by fax. There now are 32 states that permit fax delivery of a blank ballot to military voters and 25 states that allow military voters to return their voted ballot by fax. In addition, some jurisdictions allow the delivery of blank ballots by email.[45] The return of voted ballots by fax or email, however, is a violation of the key principle of a secret ballot, and it is vulnerable to abuse or fraud.

Although the Uniformed and Overseas Citizens Absentee Voting Act applies to both military and nonmilitary voters overseas, procedures to facilitate overseas voting serve military voters better than civilians. To provide civilian overseas voters with equal opportunities to participate in federal elections, new approaches are needed at both the federal and state levels.

## Recommendations on Military and Overseas Voting

**4.4.1**  The law calling for state offices to process absentee ballots for military and overseas government and civilian voters should be implemented fully, and these offices should be under the supervision of the state election offices.

**4.4.2**  New approaches should be adopted at the federal and state levels to facilitate voting by civilian voters overseas.

**4.4.3**  U.S. Department of Defense (DOD) should supply to all military posted outside the United States a Federal Postcard Application for voter registration and a Federal Write-in Absentee Ballot for calendar years in which there are federal elections. With adequate security protections, it would be preferable for the application forms for absentee ballots to be filed by Internet.

**4.4.4**  The states, in coordination with the U.S. Department of Defense's Federal Voting Assistance Program, should develop a system to expedite the delivery of ballots to military and overseas civilian voters by fax, email, or overnight delivery service, but voted ballots should be returned by regular mail, and by overnight mail whenever possible. The Defense Department should give higher priority to using military aircraft returning from bases overseas to carry ballots. Voted ballots should not be returned by email or by fax as this violates the secrecy of the ballot and is vulnerable to fraud.

**4.4.5**  All ballots subject to the Uniform and Overseas Civilians Absentee Voting Act must be mailed out at least 45 days before the election (if request is received by then) or within two days of receipt after that. If the ballot is not yet set, due to litigation, a late vacancy, etc., a temporary ballot listing all settled offices and ballot issues must be mailed.

App. 0293

**4.4.6**   States should count the ballots of military and overseas voters up to 10 days after an election if the ballots are postmarked by Election Day.

**4.4.7**   As the technology advances and the costs decline, tracking systems should be added to absentee ballots so that military and overseas voters may verify the delivery of their voted absentee ballots.

**4.4.8**   The Federal Voting Assistance Program should receive a copy of the report that states are required under HAVA to provide the EAC on the number of absentee ballots sent to and received from military and overseas voters.

## 4.5   ACCESS FOR VOTERS WITH DISABILITIES

There are almost 30 million voting-aged Americans with some kind of disability—about 15 percent of the population (see Table 3 on page 40). Less than half of them vote. There are federal laws to facilitate voting and registration by eligible Americans with disabilities, but these laws have not been implemented with any vigor. As a result, voters with disabilities still face serious barriers to voting.[46] Congress passed the Voting Accessibility for the Elderly and Handicapped Act in 1984 and the Americans with Disabilities Act of 1990, which required local authorities to make polling places physically accessible to people with disabilities for federal elections. Yet a Government Accountability Office survey of the nation's polling places in 2000 found that 84 percent of polling places were not accessible on Election Day. By 2004, accessibility for voters with disabilities had improved only marginally. Missouri, for example, surveyed every polling place in the state and found that 71 percent were not accessible. Most other states have not even conducted surveys.[47]



A voter tries out a disability-accessible voting machine (AP Photo/Mike Derer)

There is similarly weak implementation of laws designed to facilitate voter registration by citizens with disabilities. Section 7 of the National Voter Registration Act (NVRA) requires state-funded agencies which provide services to citizens with disabilities to offer the opportunity to register citizens to vote. Implementation of this requirement, according to advocates for voters with disabilities, is rare or poor.[48]

HAVA provided additional support to Section 7 of NVRA by including social-service agencies as places to register voters, but only one state, Kentucky, has complied with Section 7, according to advocates for voters with disabilities. Moreover, at the current time, there is not a single case where the new statewide voter databases comply with Section 7.[49] Thus, 12 years after the National Voter Registration Act was passed, voters with disabilities still cannot apply for voter registration at all social service offices.

**TABLE 3: Estimates of U.S. Voting Population with Disabilities by Type**

| Disability Type | Population Age 16 and Older (in millions) | Percent of Total Voting Age Population |
|---|---|---|
| Sensory, Physical, Mental or Self-Care Disability | 29.5 | 15% |
| Self-Care Disability | 6.4 | 3% |
| Physical Disability | 12.5 | 6% |
| Mental Disability | 4.0 | 2% |
| Sensory Disability | 3.9 | 2% |
| Sensory and Physical Disability | 2.5 | 1% |
| Sensory, Physical, and Mental Disability | 2.0 | 1% |
| Total Voting Age Population in the U.S. (18 and older) | 203.0 | 100% |

**NOTES:** Respondents were able to report more than one type of disability.

**SOURCES:** U.S. Census Bureau, Selected Types of Disability for the Civilian Noninstitutionalized Population 5 Years and Over by Age: 2000; U.S. Census Bureau, Voting and Registration in the Election of November 2000.

### Recommendations on Access for Voters With Disabilities

**4.5.1**  To improve accessibility of polling places for voters with disabilities, the U.S. Department of Justice should improve its enforcement of the Americans with Disabilities Act and the accessibility requirements set by the Help America Vote Act.

**4.5.2**  States should make their voter registration databases interoperable with social-service agency databases and facilitate voter registration at social-service offices by citizens with disabilities.

**4.5.3**  States and local jurisdictions should allow voters with disabilities to request an absentee ballot when they register and to receive an absentee ballot automatically for every subsequent election. Local election officials should determine which voters with disabilities would qualify.

## 4.6   RE-ENFRANCHISEMENT OF EX-FELONS

Only Maine and Vermont allow incarcerated citizens to vote. In all other states, citizens who are convicted of a felony lose their right to vote, either temporarily or permanently. An estimated 4.65 million Americans have currently or permanently lost their right to vote as a result of a felony conviction. Most states reinstate that right upon completion of the full sentence, including of parole, but three states — Florida, Kentucky, and Virginia — permanently ban all ex-felons from voting, and another 10 states have a permanent ban on

App. 0295

voting by certain categories of ex-felons.[50] These laws have a disproportionate impact on minorities.

Some states impose a waiting period after felons complete their sentence before they can vote. Few states take the initiative to inform ex-felons when their voting rights are restored. As a result, only a small portion of the ex-felons who have regained their voting rights are registered to vote.

Proponents of re-enfranchisement argue that ex-felons have paid their debt to society when they have completed their full sentence. Restoring their right to vote would encourage them to reintegrate into society. Each state therefore should automatically restore the voting rights of ex-felons who have completed their full sentence, including any terms of parole and compensation to victims. Opponents of re-enfranchisement, however, see this as a "punishment" issue rather than a "voting rights" issue. They believe that each state should be free to decide whether to restore the voting rights of ex-felons. States set punishment for state crimes, and this often extends beyond the completion of a felon's sentence. Ex-felons are, for instance, usually barred from purchasing firearms or from getting a job as a public-school teacher. Nonetheless, weighing both sides of the debate, the Commission believes that voting rights should be restored to certain categories of felons after they served the debt to society.

---

### Recommendations on Re-Enfranchisement of Ex-Felons

**4.6.1** States should allow for restoration of voting rights to otherwise eligible citizens who have been convicted of a felony (other than for a capital crime or one which requires enrollment with an offender registry for sex crimes) once they have fully served their sentence, including any term of probation or parole.

**4.6.2** States should provide information on voter registration to ex-felons who have become eligible to vote. In addition, each state's department of corrections should automatically notify the state election office when a felon has regained eligibility to vote.

---

## 4.7 VOTER AND CIVIC EDUCATION

Among the simplest ways to promote greater and more informed participation in elections is to provide citizens with basic information on voting and the choices that voters will face in the polling booth. HAVA requires only that basic voter information, including a sample ballot and instructions on how to vote, be posted at each polling site on Election Day. However, additional voter information is needed.

States or local jurisdictions should provide information by mail and on their Web sites to educate voters on the upcoming ballot — on the issues and the candidates, who will provide the information about themselves. Local election officials should set limits on the amount — but not the content — of information to be provided by the candidates. In Washington state, for example, every household is mailed a pamphlet with information on how to register, where to vote, and texts of election laws and proposed ballot initiatives and



A college student in New Mexico registers to vote as part of a campaign to reach new voters (AP Photo/*Las Cruces Sun-News*, Norm Dettlaff)

referendums. This voter's pamphlet also has a picture of each candidate for statewide office and a statement of the candidate's goals for the office they seek. In addition, there should be greater use of the radio and television to communicate these messages.

Efforts to provide voter information and education to young Americans merit particular attention. Voter turnout among youth declined steadily from the 1970s to 2000, when it was 24 percent lower than turnout of the entire electorate. In 2004, however, there was a surge of 11 percent in voter turnout among Americans aged 18 to 24, and the gap between youth turnout and overall turnout dropped to 17 percent (see Table 4).[51]

While participation by youth increased significantly in the last election, it continues to lag far behind the rest of the population. It can and should be increased by instructing high school students on their voting rights and civic responsibilities. Just one course in civics or American government can have a strong influence on youth participation in elections. According to a 2003 survey, about twice as many young Americans who have taken a civics course are registered to vote and have voted in all or most elections than young Americans who have never taken such a course.[52]

Moreover, Americans want public schools to prepare their children for citizenship and to provide better civic education. While most Americans believe that the most important goal of public schools is to develop basic skills, seven in 10 respondents to a 2004 survey agreed that preparing students to become responsible citizens is a "central purpose of public schools." When asked to grade the civic education programs of public schools, 54 percent of respondents give these programs a "C" and 22 percent give them a "D."[53]

It is difficult to assess the current efforts of state and local voting and civic education programs because only one state, Florida, publishes a report on its activities and spending in this area. We recommend that more states and local jurisdictions follow Florida's example in order to generate more information on the most effective methods for voter and civic education.

---

**TABLE 4:**
**Voter Turnout in Presidential Elections by Age, 1972-2004**

| Age Range | 1972 | 1976 | 1980 | 1984 | 1988 | 1992 | 1996 | 2000 | 2004 |
|---|---|---|---|---|---|---|---|---|---|
| 18 to 24 years | 49.6 | 42.2 | 39.9 | 40.8 | 36.2 | 42.8 | 32.4 | 32.3 | 41.9 |
| 25 to 44 years | 62.7 | 58.7 | 58.7 | 58.4 | 54.0 | 58.3 | 49.2 | 49.8 | 52.2 |
| 45 to 64 years | 70.8 | 68.7 | 69.3 | 69.8 | 67.9 | 70.0 | 64.4 | 64.1 | 66.6 |
| 65 years+ | 63.5 | 62.2 | 65.1 | 67.7 | 68.8 | 70.1 | 67.0 | 67.6 | 68.9 |

SOURCE: U.S. Census Bureau (2004).

App. 0297

**Recommendations on Voter and Civic Education**

**4.7.1**  Each state should publish a report on its voter education spending and activities.

**4.7.2**  States should engage in appropriate voter education efforts in coordination with local election authorities to assure that all citizens in their state have the information necessary to participate in the election process.

**4.7.3**  Each state should use its best efforts to instruct all high school students on voting rights and how to register to vote. In addition, civic education programs should be encouraged in the senior year of high school, as these have been demonstrated to increase voter participation by youth.

**4.7.4**  Local election authorities should mail written notices to voters in advance of an election advising the voter of the date and time of the election and the polling place where the voter can cast a ballot and encouraging the citizens to vote. The notice should also provide a phone number for the voter to contact the election authorities with any questions.

**4.7.5**  States should mail pamphlets to voters, and post the pamphlet material on their Web sites, to provide information about the candidates for statewide office and about ballot initiatives and referenda.

**4.7.6**  The federal government should provide matching funds for the states to encourage civic and voter education and advertisements aimed to encourage people to vote.



(AP Photo/Julia Cumes)

App. 0298

(AP Photo/Rogelio Solis)

# 5. Improving Ballot Integrity

Because the integrity of the ballot is a hallmark of democracy, it is imperative that election officials guarantee eligible voters the opportunity to vote, but only once, and tabulate ballots in an accurate and fair manner.

## 5.1 INVESTIGATION AND PROSECUTION OF ELECTION FRAUD

While election fraud is difficult to measure, it occurs. The U.S. Department of Justice has launched more than 180 investigations into election fraud since October 2002. These investigations have resulted in charges for multiple voting, providing false information on their felon status, and other offenses against 89 individuals and in convictions of 52 individuals. The convictions related to a variety of election fraud offenses, from vote buying to submitting false voter registration information and voting-related offenses by non-citizens.[54]

In addition to the federal investigations, state attorneys general and local prosecutors handle cases of election fraud. Other cases are never pursued because of the difficulty in obtaining sufficient evidence for prosecution or because of the low priority given to election fraud cases. One district attorney, for example, explained that he did not pursue allegations of fraudulent voter registration because that is a victimless and nonviolent crime.[55]

Election fraud usually attracts public attention and comes under investigation only in close elections. Courts may only overturn an election result if there is proof that the number of irregular or fraudulent votes exceeded the margin of victory. When there is a wide margin, the losing candidate rarely presses for an investigation. Fraud in any degree and in any circumstance is subversive to the electoral process. The best way to maintain ballot integrity is to investigate all credible allegations of election fraud and otherwise prevent fraud before it can affect an election.

Investigation and prosecution of election fraud should include those acts committed by individuals, including election officials, poll workers, volunteers, challengers or other nonvoters associated with the administration of elections, and not just fraud by voters.

---

### Recommendations on Investigation and Prosecution of Election Fraud

**5.1.1**  In July of even-numbered years, the U.S. Department of Justice should issue a public report on its investigations of election fraud. This report should specify the numbers of allegations made, matters investigated, cases prosecuted, and individuals convicted for various crimes. Each state's attorney general and each local prosecutor should issue a similar report.

**5.1.2**  The U.S. Department of Justice's Office of Public Integrity should increase its staff to investigate and prosecute election-related fraud.

---

App. 0300

**5.1.3** In addition to the penalties set by the Voting Rights Act, it should be a federal felony for any individual, group of individuals, or organization to engage in any act of violence, property destruction (of more than $500 value), or threatened act of violence that is intended to deny any individual his or her lawful right to vote or to participate in a federal election.

**5.1.4** To deter systemic efforts to deceive or intimidate voters, the Commission recommends federal legislation to prohibit any individual or group from deliberately providing the public with incorrect information about election procedures for the purpose of preventing voters from going to the polls.

## 5.2   ABSENTEE BALLOT AND VOTER REGISTRATION FRAUD

Fraud occurs in several ways. Absentee ballots remain the largest source of potential voter fraud.[56] A notorious recent case of absentee ballot fraud was Miami's mayoral election of 1998, and in that case, the judge declared the election fraudulent and called for a new election. Absentee balloting is vulnerable to abuse in several ways: Blank ballots mailed to the wrong address or to large residential buildings might get intercepted. Citizens who vote at home, at nursing homes, at the workplace, or in church are more susceptible to pressure, overt and subtle, or to intimidation. Vote buying schemes are far more difficult to detect when citizens vote by mail. States therefore should reduce the risks of fraud and abuse in absentee voting by prohibiting "third-party" organizations, candidates, and political party activists from handling absentee ballots. States also should make sure that absentee ballots received by election officials before Election Day are kept secure until they are opened and counted.

Non-citizens have registered to vote in several recent elections. Following a disputed 1996 congressional election in California, the Committee on House Oversight found 784 invalid votes from individuals who had registered illegally. In 2000, random checks by the Honolulu city clerk's office found about 200 registered voters who had admitted they were not U.S. citizens.[57] In 2004, at least 35 foreign citizens applied for or received voter cards in Harris County, Texas, and non-citizens were found on the voter registration lists in Maryland as well.[58]

The growth of "third-party" (unofficial) voter registration drives in recent elections has led to a rise in reports of voter registration fraud. While media attention focused on reports of fraudulent voter registrations with the names of cartoon characters and dead people, officials in 10 states investigated accusations of voter registration fraud stemming from elections in 2004, and between October 2002 and July 2005, the U.S. prosecuted 19 people charged with voter registration fraud.[59] Many of these were submitted by third-party organizations, often by individuals who were paid by the piece to register voters.

States should consider new legislation to minimize fraud in voter registration, particularly to prevent abuse by third-party organizations that pay for voter registration by the piece. Such legislation might direct election offices to check the identity of individuals registered through third-party voter registration drives and to track the voter registration forms.

HAVA requires citizens who register by mail to vote in a state for the first time to provide

App. 0301

an ID when they register or when they vote. Some states have interpreted this requirement to apply only to voter registration forms sent to election offices by mail, not to forms delivered by third-party organizations. As a result, neither the identity nor the actual existence of applicants is verified. All citizens who register to vote with a mail-in form, whether that form is actually sent by mail or is instead hand-delivered, should comply with HAVA's requirements or with stricter state requirements on voter ID, by providing proof of identity either with their registration application or when they appear at the polling station on Election Day. In this way, election offices will be obliged to verify the identity of every citizen who registers to vote, whether or not the registration occurs in person.



John Fund and Colleen McAndrews at the April 18 hearing (American University Photo/Jeff Watts)

In addition, states should introduce measures to track voter registration forms that are handled by third-party organizations. By assigning a serial number to all forms, election officials will be able to track the forms. This, in turn, will help in any investigations and prosecutions and thus will serve to deter voter registration fraud.

Many states allow the representatives of candidates or political parties to challenge a person's eligibility to register or vote or to challenge an inaccurate name on a voter roll. This practice of challenges may contribute to ballot integrity, but it can have the effect of intimidating eligible voters, preventing them from casting their ballot, or otherwise disrupting the voting process. New procedures are needed to protect voters from intimidating tactics while also offering opportunities to keep the registration rolls accurate, and to provide observers with meaningful opportunities to monitor the conduct of the election. States should define clear procedures for challenges, which should mainly be raised and resolved before the deadline for voter registration. After that, challengers will need to defend their late actions. On Election Day, they should direct their concerns to poll workers, not to voters directly, and should in no way interfere with the smooth operation of the polling station.

---

### Recommendations on Absentee Ballot and Voter Registration Fraud

**5.2.1** State and local jurisdictions should prohibit a person from handling absentee ballots other than the voter, an acknowledged family member, the U.S. Postal Service or other legitimate shipper, or election officials. The practice in some states of allowing candidates or party workers to pick up and deliver absentee ballots should be eliminated.

**5.2.2** All states should consider passing legislation that attempts to minimize the fraud that has resulted from "payment by the piece" to anyone in exchange for their efforts in voter registration, absentee ballot, or signature collection.

**5.2.3** States should not take actions that discourage legal voter registration or get-out-the-vote activities or assistance, including assistance to voters who are not required to vote in person under federal law.



(AP Photo/J. Pat Carter)

## 6. Election Administration

To build confidence in the electoral process, it is important that elections be administered in a neutral and professional manner. Election officials, from county clerks and election board members to secretaries of state and U.S. Election Assistance Commission members, generally have shown great skill and dedication in administering elections in a fair and impartial manner. The institutions of election administration, however, are in need of improvement, so that they may instill greater public confidence in the election process and allow election officials to carry out their responsibilities more effectively (see Table 5 on page 52).

Elections are contests for power and, as such, it is natural that politics will influence every part of the contest, including the administration of elections. In recent years, some partisan election officials have played roles that have weakened public confidence in the electoral process. Many other partisan election officials have tried to execute their responsibilities in a neutral manner, but the fact that they are partisan sometimes raises suspicions that they might favor their own party. Most other democratic countries have found ways to insulate electoral administration from politics and partisanship by establishing truly autonomous, professional, and nonpartisan independent national election commissions that function almost like a fourth branch of government. The United States, too, must take steps to conduct its elections impartially both in practice and in appearance.

Impartial election administration, however, is not enough. Elections must also be administered effectively if they are to inspire public confidence. Long lines at polling stations, inadequately trained poll workers, and inconsistent or incorrect application of electoral procedures may have the effect of discouraging voter participation and may, on occasion, raise questions about bias in the way elections are conducted. While problems at polling stations usually reflect a shortage of trained poll workers or poor management of polling station operations, rather than an attempt to seek partisan advantage, the result is much the same. Such problems raise public suspicions or may provide grounds for the losing candidate to contest the result in a close election.

### 6.1 INSTITUTIONS

The intense partisanship and the close division of the American electorate, coupled with the Electoral College system, raise the possibility of another presidential election decided by a razor-thin margin in one or more battleground states. Although voting technology is improving, presidential elections are held in a decentralized system with a patchwork of inconsistent rules. In addition, in recent years, election challenges in the courts have proliferated.

Close elections, especially under these conditions, put a strain on any system of election administration, and public opinion demonstrates this. Significant segments of the American public have expressed concern about voter fraud, voter suppression, and the fairness of the election process in general.[60] While substantially more Democrats than Republicans surveyed in national polls considered the 2004 presidential election unfair, 41 percent more Republicans than Democrats said the electoral process was unfair in Washington state's 2004 gubernatorial election, which the Democratic candidate won by a very narrow margin.[61] The losing side, not surprisingly, is unhappy with the election result, but what is new and dangerous in the United States is that the supporters of the losing side are beginning to believe that the process is unfair. And this is true of both parties.

At its base, the problem is a combustible mixture of partisan suspicion and irregularities born in part from a decentralized system of election administration with differing state laws determining voter registration and eligibility and whether a ballot is actually counted. The irregularities, by and large, stem from a lack of resources and inadequate training for election workers, particularly those who work just on Election Day. In other countries, such irregularities sometimes lead to street protests or violence. In the United States, up until now, we have been relatively fortunate that irregularities are addressed in court. The dramatic increase in election-related litigation in recent years, however, does not enhance the public's perception of elections and may in fact weaken public confidence. The average number of election challenges per year has increased from 96 in the period of 1996 to 1999 to 254 in 2001 to 2004.[62]



Elections manager Lori Augino, left, Pierce County Auditor Pat McCarthy, U.S. EAC Commissioners Ray Martinez, III, and Paul DeGregorio, right, observe the 2004 manual gubernatorial recount in Washington (AP Photo/*The News Tribune*, Janet Jensen)

Another major source of public mistrust of the election process is the perception of partisanship in actions taken by partisan election officials. In a majority of states, election administration comes under the authority of the secretary of state. In 2000 and 2004, both Republican and Democratic secretaries of state were accused of bias because of their discretionary decisions — such as how to interpret unclear provisions of HAVA. The issue is not one of personality or a particular political party because allegations and irregularities dogged officials from both parties. The issue is the institution and the perception of partiality that is unavoidable if the chief election officer is a statewide politician and the election is close, has irregularities, or is disputed. The perception of partiality is as important, if not more so, than the reality.

Bipartisan election administration has the advantage of allowing both parties to participate, but the flaws of such a system are evident in the experience of the Federal Election Commission (FEC). The FEC has often become deadlocked on key issues. In the cases when the FEC commissioners agree, they sometimes protect the two parties from enforcement rather than represent the public's interest in regulating campaign finance.

**NONPARTISAN ELECTION ADMINISTRATION.** To minimize the chance of election meltdown and to build public trust in the electoral process, nonpartisan structures of election administration are very important, and election administrators should be neutral, professional, and impartial. At the federal level, the U.S. Election Assistance Commission should be reconstituted on a nonpartisan basis to exercise whatever powers are granted by law, and the EAC chairperson should serve as a national spokesperson, as the chief elections officer in Canada does, for improving the electoral process. States should consider transferring the authority for conducting elections from the secretary of state to a chief election officer, who would serve as a nonpartisan official.

States could select a nonpartisan chief elections officer by having the individual subject to approval by a super-majority of two-thirds of one or both chambers of the state legislature. The nominee should receive clear bipartisan support. This selection process is likely to yield a respected consensus candidate or, at least, a nonpartisan candidate.

App. 0305

The EAC, in its 18 months of operation, has managed to make its decisions by consensus. While this is a significant accomplishment for a bipartisan, four-member commission, it has come at a cost. The EAC has been slow to issue key guidance, and the guidance it has issued has often been vague. The process of forging consensus among the EAC's commissioners appears to have slowed and watered down key decisions, particularly as they have come under pressure from their respective political parties. If the EAC were reconstituted as a nonpartisan commission, it would be better able to resist partisan political pressure and operate more efficiently and effectively.

To avoid the dangers of bipartisan stalemate, the EAC should be reconstituted as a five-member commission, with a strong chairperson and nonpartisan members. This would be done initially by adding a fifth position to the EAC and making that position the chairperson, when the current chairperson's term ends. The new EAC chairperson would be nonpartisan, nominated by the President, and confirmed by the U.S. Senate. Later, as the terms of other EAC commissioners expired, they would be replaced by nonpartisan commissioners, subject to Senate confirmation as well.



Kansas Secretary of State Ron Thornburgh at the April 18 hearing (American University Photo/Jeff Watts)

**INDEPENDENCE AND AUTHORITY.** For the positions of EAC commissioners and state chief elections officers to remain both nonpartisan and effective, they must be insulated from political pressure. This can be done by the terms of appointment and the lines of responsibility. The EAC commissioners and state chief elections officers should receive a long-term appointment, perhaps 10 years. The grounds for dismissal should be limited, similar to the rules for removal of a federal or state judge. The EAC should have the autonomy to oversee federal election laws that Congress directs it to implement and advise Congress and the President on needed improvements in election systems. State chief elections officers should have similar autonomy.

Under HAVA, the EAC distributes federal funds to the states, issues voluntary guidance on HAVA's mandates, and serves as a clearinghouse for information on elections. In addition, it develops standards for voting equipment and undertakes research on elections.

The flaws identified in the electoral system described in this report were due in large part to a very decentralized system with voting standards implemented in different ways throughout the country. If HAVA is fully and effectively implemented, states should be able to retrieve authority to conduct elections from counties and impose a certain degree of uniformity.

In this report, we have proposed the kinds of reforms needed to improve significantly our electoral process. To implement those reforms, a new or invigorated institution like the EAC is needed to undertake the following tasks:

- Statewide registration lists need to be organized top-down with states in charge and counties assisting states rather than the other way around;

- A template and a system is needed for sharing voter data across states;

• The "REAL ID" needs to be adapted for voting purposes and linked to the registration list;

• To ensure that the new requirements — ID and registration list — do not impede access to voting, an expanded effort is needed to reach out and register new voters;

• Quality audits of voter databases and certification of voting machine source codes is essential;

• Voting machines need a voter-verifiable audit trail; and

• Extensive research on the operations and technology of elections is needed.

---

**TABLE 5: Types of Electoral Administration**

| Type of Institution | WORLD REGION | | | | Total Number of Cases (percent of total) |
| --- | --- | --- | --- | --- | --- |
| | The Americas | Asia & the Pacific | East & Central Europe | Sub-Saharan Africa | |
| Government | 5* | 9 | 0 | 3 | 17 (14%) |
| Government supervised by judges or others | 6 | 2 | 6 | 14 | 28 (23%) |
| Independent electoral commission | 25 | 19 | 12 | 19 | 75 (63%) |

\* The U.S. is included in this category.

**SOURCE:** Rafael López-Pintor. *Electoral Management Bodies as Institutions of Governance* (NY: United Nations Development Programme, Bureau for Development Policy, 2000).

---

These reforms, but particularly those that require connecting states, will not occur on their own. The EAC needs to have sufficient authority to assure effective and consistent implementation of these reforms, and to avoid repeating past problems, its guidance must be clear and compelling. A stronger EAC does not mean that the states will lose power in conducting elections. To the contrary, the authority of state election officials will grow with the creation of statewide voter databases, and their credibility will be enhanced by the new nonpartisan structure and professionalism.

**CONFLICT-OF-INTEREST RULES.** No matter what institutions are responsible for conducting elections, conflict-of-interest standards should be introduced for all federal, state, and local election officials, including some of the provisions in Colorado's new election law and of the Code of Conduct prepared by the International Institute for Democracy and Electoral Assistance (IDEA).[63] This Code of Conduct requires election administrators to avoid any activity, public or private, that might indicate support or even sympathy for a particular candidate, political party, or political tendency.

Election officials should be prohibited by federal and/or state laws from serving on any political campaign committee, making any public comments in support of a candidate, taking a public position on any ballot measure, soliciting campaign funds, or otherwise campaigning for or against a candidate for public office. A decision by a secretary of state to serve as co-chair of his or her party's presidential election committee would clearly violate these standards.

## Recommendations on Institutions

**6.1.1**  To undertake the new responsibilities recommended by this report and to build confidence in the administration of elections, Congress and the states should reconstitute election management institutions on a nonpartisan basis to make them more independent and effective. U.S. Election Assistance Commission members and each state's chief elections officer should be selected and be expected to act in a nonpartisan manner, and the institutions should have sufficient funding for research and training and to conduct the best elections possible. We believe the time has come to take politics as much as possible out of the institutions of election administration and to make these institutions nonpartisan.

**6.1.2**  Congress should approve legislation that would add a fifth member to the U.S. Election Assistance Commission, who would serve as the EAC's chairperson and who would be nominated by the President based on capability, integrity, and nonpartisanship. This would permit the EAC to be viewed more as nonpartisan than bipartisan and would improve its ability to make decisions. That person would be subject to Senate confirmation and would serve a single term of ten years. Each subsequent vacancy to the EAC should be filled with a person judged to be nonpartisan so that after a suitable period, all the members, and thus the institution, might be viewed as above politics.

**6.1.3**  States should prohibit senior election officials from serving or assisting political campaigns in a partisan way, other than their own campaigns in states where they are elected.

**6.1.4**  States should take additional actions to build confidence in the administration of elections by making existing election bodies as nonpartisan as possible within the constraints of each state's constitution. Among the ways this might be accomplished would be if the individuals who serve as the state's chief elections officer were chosen based on their capability, integrity, and nonpartisanship. The state legislatures would need to confirm these individuals by a two-thirds majority of one or both houses. The nominee should receive clear bipartisan support.

**6.1.5**  Each state's chief elections officer should, to the extent reasonably possible, ensure uniformity of voting procedures throughout the state, as with provisional ballots. Doing so will reduce the likelihood that elections are challenged in court.

## 6.2  POLL WORKER RECRUITMENT

For generations, civic-minded citizens, particularly seniors, have served as poll workers. The average age of poll workers is 72.[64] Poll workers generally are paid minimum wages for a 15-hour day. Not surprisingly, recruitment has proven more and more difficult. For the 2004 election, the United States needed 2 million poll workers, but it fell short by 500,000.

Effective administration of elections requires that poll workers have the capability and training needed to carry out complex procedures correctly, the skills to handle increasingly sophisticated voting technology, the personality and skills to interact with a diversity of people in a calm and friendly manner, and the energy to complete a very long and hard day of work on Election Day. Poll workers must administer complex voting procedures, which are often changed with each election. These procedures include issuing provisional ballots, checking voter identification in accordance with state law, and correctly counting the votes after the polling station closes. Poll workers must also set up voting machines, instruct voters to use these machines, and provide helpful service to voters, including to voters with disabilities and non-English speakers.



Commissioner Sharon Priest, Daniel Calingaert, Michael Alvarez, and Election Center Executive Director Doug Lewis (Rice University Photo/Jeff Fitlow)

A broad pool of potential recruits, drawn from all age groups, is needed to meet the demands made on today's poll workers. To adequately staff polling stations, states and local jurisdictions must offer better pay, training, and recognition for poll workers and recruit more citizens who have full-time jobs or are students. Recruitment of teachers would serve to spread knowledge of the electoral process, while recruitment of students would educate future voters and attract individuals who may serve as poll workers for decades to come.

Local election authorities should also consider providing incentives for more rigorous training. Guilford County, North Carolina, for example, initiated a "Precinct Officials Certification" program in cooperation with the local community college. The program requires 18 hours of class and a final exam. While voluntary, more than 80 percent of Guilford County's 636 permanent precinct officials completed the course. Certified officials receive an additional $35 per election in pay. Retention of officials has risen from roughly 75 percent to near 95 percent.

In addition, poll workers deserve greater recognition for their public service. States might establish a Poll Worker Appreciation Week and issue certificates to thank poll workers for their contribution to the democratic process.

Several states have passed laws to provide paid leave for state and local government workers who serve as poll workers on Election Day. A pilot program titled "Making Voting Popular" was implemented in 1998 in six counties surrounding the Kansas City metropolitan area to encourage employers to provide a paid "civic leave" day for employees who work as poll workers. Many states have introduced laws to encourage the recruitment of student poll workers. Partnered with experienced poll workers, student poll workers can learn about elections while contributing their technological skills.

It will be easier to recruit skilled poll workers if they are given flexibility in the terms of their service by working part of the day. Since a large proportion of voters arrive either at the beginning or at the end of the day, it would make sense to hire more poll workers for those periods, although this is not now the case. Bringing poll workers in from other jurisdictions might also serve to provide partisan balance in jurisdictions where one party is dominant. Flexibility in the terms of service by poll workers is often restricted by state laws. Where this is the case, states should amend their laws to allow part-day shifts for poll workers on Election Day and to permit state residents to staff polling stations in a different jurisdiction.

In addition, states might consider a new practice of recruiting poll workers in the same way that citizens are selected for jury duty. This practice is used in Mexico, where citizens are selected randomly to perform what they consider a civic obligation. About five times as many poll workers as needed are trained in Mexico, so that only the most skilled and committed are selected to serve as poll workers on Election Day. The process of training so many citizens serves the additional purpose of educating the public in voting procedures. This practice both reflects and contributes to a broad civic commitment to democracy.

## Recommendations on Poll Worker Recruitment

**6.2.1**  States and local jurisdictions should allocate sufficient funds to pay poll workers at a level that would attract more technologically sophisticated and competent workers. Part-time workers should also be recruited for the beginning and the end of Election Day. States should amend their laws to allow shifts for part of the day for poll workers on Election Day.

**6.2.2**  States and local jurisdictions should implement supplemental training and recognition programs for poll workers.

**6.2.3**  To increase the number and quality of poll workers, the government and nonprofit and private employers should encourage their workers to serve as poll workers on Election Day without any loss of compensation, vacation time or personal time off. Special efforts should be made to enlist teachers and students as poll workers.

**6.2.4**  Because some jurisdictions have large majorities of one party, which makes it hard to attract poll workers from other parties, local jurisdictions should allow poll workers from outside the jurisdiction.

**6.2.5**  States should consider legislation to allow the recruitment of citizens as poll workers as is done for jury duty.



A long line of Ohio voters on Election Day 2004
(AP Photo/Mark Duncan)

### 6.3 POLLING STATION OPERATIONS

A visible problem on Election Day 2004 was long lines. This should have been anticipated because there was a surge in new registrations and people expected a close election, particularly in "battleground states." Still, too many polling stations were unprepared. While waiting until 4 a.m. to vote was an extreme case, too many polling stations experienced long lines at the beginning of the day when people went to work or at the day's end when they returned. Fast-food chains hire extra workers at lunchtime, but it apparently did not occur to election officials to hire more workers at the times when most people vote. Long lines were hardly the only problem; many polling stations had shortages of provisional ballots, machines malfunctioned, and there were too many inadequately trained workers on duty. Although most states ban campaigning within a certain distance of a polling station, other states or counties permit it, though many voters find it distasteful if not intimidating.

Problems with polling station operations, such as long lines, were more pronounced in some places than in others.[65] This at times gave rise to suspicions that the problems were due to discrimination or to partisan manipulation, when in fact the likely cause was a poor decision by election administrators. The U.S. Department of Justice's investigation into the allocation of voting machines in Ohio, for example, found that problems were due to administrative miscalculations, not to discrimination.[66]

The 2004 elections highlighted the importance of providing enough voting machines to each polling place. While voter turnout can be difficult to predict, the ratio of voters per machine can be estimated. Texas, for example, has issued an administrative rule to estimate the number of machines needed per precinct at different rates of voter turnout.[67]

The impression many voters get of the electoral process is partially shaped by their

App. 0311

experience at the polling station, and yet, not enough attention has been given to trying to make them "user-friendly." Elementary questions, which most businesses study to become more efficient and responsive to their customers, are rarely asked, let alone answered by election officials. Questions like: How long does it normally take for a citizen to vote? Would citizens prefer to go to a neighborhood precinct, or to a larger, more service-oriented but more distant "voting center"? How many and what kinds of complaints and problems do polling stations hear in an average day? How do they respond, and are voters satisfied with the response? How many citizens find electronic machines useful, and how many find them formidable? By answering these fundamental questions, we might determine ways to provide efficient and courteous service at polling locations

A simple way to compile useful information about problems voters face on Election Day would be to require that every voting station maintain a "log book" on Election Day to record all complaints from voters or observers. The log book would be signed by election observers at the end of the day to make sure that it has recorded all the complaints or problems. An analysis of the log books would help identify common problems and help design more efficient and responsive polling sites.

---

### Recommendations on Polling Station Operations

**6.3.1**  Polling stations should be made user-friendly. One way to do so would be to forbid any campaigning within a certain distance of a polling station.

**6.3.2**  Polling stations should be required to maintain a "log-book" on Election Day to record all complaints. The books should be signed by election officials and observers and analyzed for ways to improve the voting process.

**6.3.3**  Polling stations should be organized in a way that citizens would not have to wait long before voting, and officials should be informed and helpful.

---

## 6.4   RESEARCH ON ELECTION MANAGEMENT

Despite the wealth of expertise and literature on U.S. elections and voting behavior, little research focuses on the administration or conduct of elections. Until the 2000 election stirred interest in the subject, we had no information on how often votes went uncounted. Today, we still do not know how many people are unable to vote because their name is missing from the registration list or their identification was rejected at the polls. We also have no idea about the level of fraud or the accuracy and completeness of voter registration lists.

To effectively address the challenges facing our election systems, we need to understand better how elections are administered. The log books and public reports on investigations on election fraud, described above, can provide some good raw material. But we need more systematic research to expand knowledge and stimulate needed improvements in U.S. election systems. Moreover, beyond the reforms needed today, U.S. election systems will need to adapt in the future to new technology and to social changes.



A North Dakota election judge on Election Day 2004 (AP Photo/Will Kincaid)

The Center for Election Systems at Kennesaw State University in Georgia is the first university center established to study election systems and to assist election administration. With funding from the state government, this Center develops standards for voting technology used in Georgia and provides an array of other services, such as testing all election equipment, providing training, building databases, and designing ballots for many counties. The Center thus provides critical services to state election authorities and supports constant improvements in election systems. Since election laws and procedures vary significantly, each state should consider supporting university centers for the study of elections.

In addition to research on technology, university election centers could assist state governments on issues of election law, management, and civic and voter education. They could assemble experts from different disciplines to assist state governments in reviewing election laws, improving administrative procedures, strengthening election management, and developing programs and materials to train poll workers.

Comparative research is also needed on electoral systems in different states, and national studies should be conducted on different elements of election administration and causes of voter participation. These studies might address such questions as: What factors stimulate or depress participation in elections? How do voters adapt to the introduction of new voting technologies? And what are the costs of conducting elections? Research on these and a host of other questions is needed at the national, state, and local levels, with findings shared and efforts coordinated. Moreover, federal, state, and private foundation funds are needed to generate the research our election systems require to effectively inform decision-making, to monitor and advance best practices, and to measure implementation and enforcement.[68]

> ## Recommendation on Research on Election Management
>
> **6.4.1**  The Commission calls for continuing research on voting technology and election management so as to encourage continuous improvements in the electoral process.

## 6.5  COST OF ELECTIONS

Based on the limited available information, the cost of elections appears to vary significantly by state. Wyoming, for example, spent $2.15 per voter for the 2004 elections, while California spent $3.99 per voter.[69] Information on the cost of elections is difficult to obtain, because both state and local authorities are involved in running elections, and local authorities often neglect to track what they spend on elections. At the county level, elections typically are run by the county clerk and recorder, who rarely keeps track of the staff time and office resources allocated to elections as opposed to other office responsibilities.

Election administration expenditures in the United States are on the low end of the range of what advanced democracies spend on elections. Among advanced democracies, expenditures on election administration range from lows of $2.62 in the United Kingdom and $3.07 in France for national legislative elections, through a midrange of $4.08 in Spain and $5.68 in Italy, to a high of $9.30 in Australia and $9.51 in Canada.[70] While larger expenditures provide no guarantee of greater quality in election administration, they tend to reflect the priority given to election administration. The election systems of Australia and Canada are the most expensive but are also considered among the most effective and modern election systems in the world. Both local and state governments should track and report the cost of elections per registered voter. This data would be very important in offering comparisons on alternative and convenience voting.

---

### Recommendations on Cost of Elections

**6.5.1**  As elections are a bedrock of our nation's democracy, they should receive high priority in the allocation of government resources at all levels. Local jurisdictions, states, and the Congress should treat elections as a high priority in their budgets.

**6.5.2**  Both local and state governments should track and report the cost of elections per registered voter.

App. 0314



(AP Photo/Hidajet Delic)

# 7. Responsible Media Coverage

The media's role in elections is of great consequence. Effective media coverage contributes substantially to the electoral process by informing citizens about the choices they face in the elections and about the election results. In contrast, irresponsible media coverage weakens the quality of election campaigns and the public's confidence in the electoral process.

## 7.1 MEDIA ACCESS FOR CANDIDATES

More than $1.6 billion was spent on television ads in 2004 by candidates, parties, and independent groups.[71] This was a record for any campaign year and double the amount spent in the 2000 presidential election.

The pressure to raise money to pay for TV ads has tilted the competitive playing field in favor of well-financed candidates and has created a barrier to entry in politics. Moreover, TV ads tend to reduce political discourse to its least attractive elements—campaign spots are often superficial and negative. This has a significant impact on the quality of campaigns, as television is the primary source of campaign information for about half of all Americans.[72]

Broadcasters receive free licenses to operate on our publicly owned airwaves in exchange for a pledge to serve the public interest. At the heart of this public interest obligation is the need to inform the public about the critical issues that will be decided in elections.

In 1998, a White House advisory panel recommended that broadcasters voluntarily air at least five minutes of candidate discourse every night in the month preceding elections. The goal of this "5/30 standard" was to give television viewers a chance to see candidates in nightly forums that are more substantive than the political ads that flood the airwaves in the final weeks of election campaigns. National networks were encouraged to broadcast a nightly mix of interviews, mini-debates, and issue statements by presidential candidates, and local stations were asked to do the same for candidates in federal, state, and local races. Complete editorial control over the forums for candidate discourse was, of course, left to the national networks and local stations, which would decide what campaigns to cover, what formats to use, and when to broadcast the forums.

In 2000, about 103 television stations pledged to provide at least five minutes of campaign coverage every night in the final month of the election campaign, yet they often fell short of the 5/30 standard. Local news broadcasts of these 5/30 stations provided coverage, on average, of only two minutes and 17 seconds per night of candidate discourse.[73] On the thousand-plus stations that did not pledge to meet the 5/30 standard, coverage of candidate discourse was minimal.

During the 2004 campaign, substantive coverage of candidate discourse was still modest:[74]

- Little attention was given to state and local campaigns. About 92 percent of the election coverage by the national television networks was devoted to the presidential race. Less than 2 percent was devoted to U.S. House or U.S. Senate races.

- The presidential campaign also dominated local news coverage, but the news focuses on the horse race between candidates rather than on important

App. 0316

issues facing Americans. While 55 percent of local news broadcasts contained a story about the presidential election, only 8 percent had one about a local race. About 44 percent of the campaign coverage focused on campaign strategy, while less than one-third addressed the issues.

- Local campaign coverage was dwarfed by other news. Eight times more local broadcast coverage went to stories about accidental injuries, and 12 times more coverage went to sports and weather than to all local races combined.

- Only 24 percent of the local TV industry pledged to meet the "5/30" standard.

Notwithstanding the dramatic expansion of news available on cable television, broadcasters can and should do more to improve their coverage of campaign issues. Some propose to require broadcasters to provide free air time to candidates, but others are concerned that it might lead toward public financing of campaigns or violate the First Amendment.

---

**Recommendations on Media Access for Candidates**

**7.1.1**  The Commission encourages national networks and local TV stations to provide at least five minutes of candidate discourse every night in the month leading up to elections.

**7.1.2**  The Commission encourages broadcasters to continue to offer candidates short segments of air time to make issue statements, answer questions, or engage in mini-debates.

**7.1.3**  Many members of the Commission support the idea that legislation should be passed to require broadcasters to give a reasonable amount of free air time to political candidates, along the lines of the provisions of the Our Democracy, Our Airwaves Act of 2003 (which was introduced as S.1497 in the 108th Congress).

---

## 7.2  MEDIA PROJECTIONS OF ELECTION RESULTS

For decades, early projections of presidential election results have diminished participation in the electoral process. Projections of Lyndon Johnson's victory in 1964 came well before the polls closed in the West. The same occurred in 1972 and in 1980. In all of these cases, candidates further down the ballot felt the effect. In 1980, the estimated voter turnout was about 12 percent lower among those who had heard the projections and not yet voted as compared with those who had not heard the projections.[75]

On Election Night in 2000, the major television news organizations — ABC, CBS, NBC, CNN, and Fox — made a series of dramatic journalistic mistakes. While polls were still open in Florida's panhandle, they projected that Vice President Gore had won the state. They later reversed their projection and predicted that Governor Bush would win Florida and, with it, the presidency. Gore moved to concede the election, beginning with a call to Bush. Gore later withdrew his concession, and the news organizations had to retract their projection of Bush's victory. The first set of mistakes may have influenced voters in Florida and in other states where the polls were still open. The second set of mistakes irretrievably influenced public perceptions of the apparent victor in the election, which then affected the subsequent controversy over the outcome in Florida.

Having made these mistakes in 2000, most television news organizations were cautious about projecting presidential election results in 2004. This caution is worth repeating in future elections and should become a standard media practice.

The Carter-Ford Commission was highly critical of the practice of declaring a projected winner in a presidential election before all polls close in the contiguous 48 states of the United States. In the Commission's view, this practice discourages voters by signaling that the election is over even before some people vote.

Voluntary restraint by major media organizations is a realistic option. National news networks in the last several presidential elections have voluntarily refrained from calling the projected presidential winner in the Eastern Standard Time zone until after 7:00 p.m. (EST). In addition, as a result of the mistakes they made in 2000, the networks have now agreed to refrain from calling the projected presidential winner in states with two time zones until all of the polls across the state have closed.

Media organizations should exercise similar restraint in their release of exit poll data. The Carter-Ford Commission noted the mounting body of evidence that documents the unreliability of exit polls. In 2000, exit polls conflicted with the actual election results in many states — and in five specific instances by as much as 7 percent to 16 percent. Network news organization officials acknowledged that exit polls have become more fallible over the years as more and more voters have refused to take part. In 2000, only about half of the voters asked to participate in exit polls agreed to do so, and only 20 percent of absentee and early voters agreed to participate in telephone "exit" poll interviews. That response rate is too low to assure reliability in exit polls.

Despite the effort made to improve exit polls for the 2004 presidential election, they were well off the mark and misled some Americans about the election's outcome. By now it should be abundantly clear that exit polls do not reliably predict election results. While exit polls can serve a useful purpose after Election Day in providing data on the composition and preferences of the electorate, they lack credibility in projecting election results, and they reflect poorly on the news organizations that release them prematurely. This ought to give news organizations sufficient reason to abandon the practice of releasing exit poll data before elections have been decided.

Government cannot prohibit news organizations from irresponsible political reporting, and efforts to legislate a delay in the announcement of projected election results are problematic. Voluntary restraint on the part of news organizations offers the best recourse. By exercising voluntary restraint, news organizations will enhance their credibility and better serve the American people by encouraging participation and public confidence in elections.

---

### Recommendations on Media Projections of Election Results

**7.2.1** News organizations should voluntarily refrain from projecting any presidential election results in any state until all of the polls have closed in the 48 contiguous states.

**7.2.2** News organizations should voluntarily agree to delay the release of any exit poll data until the election has been decided.



(Carter Center Photo/Mario Tapia)

# 8. Election Observation

In too many states, election laws and practices do not allow independent observers to be present during crucial parts of the process, such as the testing of voting equipment or the transmission of results. In others, only certified representatives of candidates or political parties may observe. This limits transparency and public confidence in the election process. Above all, elections take place for the American people, rather than for candidates and political parties. Interested citizens, including those not affiliated with any candidate or party, should be able to observe the entire election process, although limits might be needed depending on the size of the group.

Although the United States insists on full access by its election observers to the elections of other countries, foreign observers are denied or granted only selective access to U.S. elections. Observers from the Organization for Security and Cooperation in Europe (OSCE), who were invited to the United States in 2004, were not granted access to polling stations in some states, and in other states, their access was limited to a few designated polling stations. Only one of our 50 states (Missouri) allows unfettered access to polling stations by international observers. The election laws of the other 49 states either lack any reference to international observers or fail to include international observers in the statutory categories of persons permitted to enter polling places.

To fulfill U.S. commitments to the OSCE "Copenhagen Declaration" on International Standards of Elections, accredited international observers should be given unrestricted access to U.S. elections. Such accreditation should be provided to reputable organizations which have experience in election observation and which operate in accordance with a recognized code of conduct. The National Association of Secretaries of State has encouraged state legislatures to make any necessary changes to state law to allow for international observers.[76]

---

**Recommendation on Election Observation**

**8.1.1** All legitimate domestic and international election observers should be granted unrestricted access to the election process, provided that they accept election rules, do not interfere with the electoral process, and respect the secrecy of the ballot. Such observers should apply for accreditation, which should allow them to visit any polling station in any state and to view all parts of the election process, including the testing of voting equipment, the processing of absentee ballots, and the vote count. States that limit election observation only to representatives of candidates and political parties should amend their election laws to explicitly permit accreditation of independent and international election observers.

---



A presidential elector casts a ballot (AP Photo/Seth Perlman)

# 9. Presidential Primary and Post-Election Schedules

## 9.1 PRESIDENTIAL PRIMARY SCHEDULE

The presidential primary system is organized in a way that encourages candidates to start their campaigns too early, spend too much money, and allow as few as eight percent of the voters to choose the nominees. The Commission believes that the scheduling of the presidential primary needs to be changed to allow a wider and more deliberate national debate.

In 2000, the presidential primaries were effectively over by March 9, when John McCain ended his bid for the Republican nomination and Bill Bradley left the race for the Democratic nomination. This was less than seven weeks after the Iowa caucus. In 2004, the presidential primary process was equally compressed. Less than 8 percent of the eligible electorate in 2004 cast ballots before the presidential nomination process was effectively over.

The presidential primary schedule has become increasingly front-loaded. While 8 states held presidential primaries by the end of March in 1984, 28 states held their primaries by March in 2004. The schedule continues to tighten, as six states have moved up the date of their presidential primary to February or early March while eight states have decided to cancel their presidential primary.[77]

Because the races for the presidential nominations in recent elections have generally concluded by March, most Americans have no say in the selection of presidential nominees, and intense media and public scrutiny of candidates is limited to about 10 weeks. Moreover, candidates must launch their presidential bids many months before the official campaign begins, so that they can raise the $25 to $50 million needed to compete.

The presidential primary schedule therefore is in need of a comprehensive overhaul. A new system should aim to expand participation in the process of choosing the party nominees for president and to give voters the chance to closely evaluate the presidential candidates over a three- to four-month period. Improvements in the process of selecting presidential nominees might also aim to provide opportunities for late entrants to the presidential race and to shift some emphasis from Iowa and New Hampshire to states that more fully reflect the diversity of America.

Most members of the Commission accept that the first two states should remain Iowa and New Hampshire because they test the candidates by genuine "retail," door-to-door campaigning. A few other members of the Commission would replace those states with others that are more representative of America's diversity, and would especially recommend a change from Iowa because it chooses the candidate by a public caucus rather than a secret ballot, the prerequisite of a democratic election.

While the presidential primary schedule is best left to the political parties to decide, efforts in recent years by political parties have failed to overhaul the presidential primary schedule. If political parties do not make these changes by 2008, Congress should legislate the change.

> **Recommendation on Presidential Primary Schedule**
>
> **9.1.1** We recommend that the Chairs and National Committees of the political parties and Congress make the presidential primary schedule more orderly and rational and allow more people to participate. We endorse the proposal of the National Association of Secretaries of State to create four regional primaries, after the Iowa caucus and the New Hampshire primary, held at one-month intervals from March to June. The regions would rotate their position on the calendar every four years.

## 9.2 POST-ELECTION TIMELINE

As the nation saw in 2000, a great deal of bitterness can arise when the outcome of a close presidential election turns on the interpretation of ambiguous laws. Had the U.S. Supreme Court not resolved the principal controversy in 2000, the dispute would have moved to Congress pursuant to Article II and the Twelfth Amendment. Unfortunately, the relevant provisions of the Constitution are vague or ambiguous in important respects, and the implementing legislation adopted by Congress over a century ago is not a model of clarity and consistency. If Congress is called upon to resolve a close election in the future, as could well happen, the uncertain meaning of these legal provisions is likely to lead to a venomous partisan spectacle that may make the 2000 election look tame by comparison.

After the debacle following the election of 1876, Congress spent more than a decade fashioning rules and procedures that it hoped would allow future disputes to be settled by preexisting rules. Those rules and procedures have remained on the books essentially unchanged since that time. The core provision (3 U.S.C. § 5) invites the states to establish appropriate dispute-resolution mechanisms by promising that Congress will give conclusive effect to the states' own resolution of controversies if the mechanism was established before the election and if the disputes are resolved at least six days before the electoral college meets. This "safe-harbor" provision appropriately seeks to prevent Congress itself from having to resolve election disputes involving the presidency, and every state should take steps to ensure that its election statutes qualify the state for favorable treatment under the safe-harbor provision.

Unfortunately, even if all the states take this step, disputes requiring Congress to ascertain the meaning of unclear federal rules could still arise. Although it may not be possible to eliminate all possible sources of dispute, significant steps could be taken to improve the clarity and consistency of the relevant body of federal rules, and Congress should undertake to do so before the next presidential election.

> **Recommendations on Post-Election Timeline**
>
> **9.2.1** Congress should clarify and modernize the rules and procedures applicable to carrying out its constitutional responsibilities in counting presidential electoral votes, and should specifically examine the deadlines.
>
> **9.2.2** States should certify their presidential election results before the "safe harbor" date. Also, every state should take steps, including the enactment of new statutes if necessary, to ensure that its resolution of election disputes will be given conclusive effect by Congress under 3 U.S.C. § 5.

App. 0323

# Conclusion

Building confidence in U.S. elections is central to our nation's democracy. The vigor of our democracy depends on an active and engaged citizenry who believe that their votes matter and are counted accurately. The reforms needed to keep our electoral system healthy are an inexpensive investment in the stability and progress of our country.

As a nation, we need to pursue the vision of a society where most Americans see their votes as both a right and a privilege, where they cast their votes in a way that leaves them proud of themselves as citizens and of democracy in the United States. Ours should be a society where registering to vote is convenient, voting is efficient and pleasant, voting machines work properly, fraud is minimized, and disputes are handled fairly and expeditiously.



This report represents a comprehensive proposal for accomplishing those goals and modernizing our electoral system. We have sought to transcend partisan divides with recommendations that will both assure the integrity of the system and widen access. No doubt, there will be some who prefer some recommendations and others who prefer other proposals, but we hope that all will recognize, as we do, that the best way to improve our electoral system is to accept the validity of both sets of concerns.

The five pillars of our proposal represent an innovative and comprehensive approach. They break new ground in the following ways:

Commission Co-Chair Jimmy Carter and Executive Director Robert Pastor (American University Photo/Wilford Harewood)

First, we propose a universal, state-based, top-down, interactive, and interoperable registration list that will, if implemented successfully, eliminate the vast majority of complaints currently leveled against the election system. States will retain control over their registration lists, but a distributed database offers a way to remove interstate duplicates and maintain an up-to-date, fully accurate registration list for the nation.

Second, we propose that all states require a valid photo ID card, which would be a slightly modified REAL ID or a photo ID that is based on an EAC-template (which is equivalent to the REAL ID without the drivers license). However, instead of allowing the ID to be a new barrier to voting, we propose using it to enfranchise new and more voters than ever before. The states would play a much more affirmative role of reaching out to the underserved communities by providing them more offices, including mobile ones, to register them and provide photo IDs free of charge. In addition, we offer procedural and institutional safeguards to make sure that the card is not abused and that voters will not be disenfranchised because of the need for an ID.

Third, we propose measures that will increase voting participation by connecting registration and the ID process, making voting more convenient, diminishing irregularities, and offering more information on voting.

Fourth, we propose ways to give confidence to voters that use the new electronic voting machines to ensure that their vote will be recorded accurately and there will be an auditable backup on paper (with the understanding that alternative technologies may be available in the future). Our proposals also aim to make sure that people with disabilities have full access to voting and the opportunity to do so privately and independently like other voters.

Finally, we recommend a restructuring of the system by which elections have been administered in our country. We propose that the Election Assistance Commission and state election management bodies be reconstituted on a nonpartisan basis to become more professional, independent, and effective.

Election reform is neither easy nor inexpensive. Nor can we succeed if we think of providing funds on a one-time basis. We need to view the administration of elections as a continuing challenge for the entire government, and one that requires the highest priority of our citizens and our government.

For more than two centuries, our country has taught the world about the significance of democracy, but more recently, we have evinced a reluctance to learn from others. Typical of this gap is that we insist other countries open their elections to international observers, but our states close their doors or set unfair restrictions on election observing. We recommend changing that provision and also building on the innovations of the new democracies by establishing new election management bodies that are independent, nonpartisan, and effective with a set of procedures that would make American democracy, once again, the model for the world.

The new electoral edifice that we recommend is built on the five pillars of reforms. Democrats, Republicans, and Independents may differ on which of these pillars are the most important, but we have come to understand that all are needed to improve our electoral system. Indeed, we believe that the structure is greater than the sum of its pillars. Substantively, the system's integrity is strengthened by the increased access of its citizens, and voter confidence is raised by accuracy and security of new technology and enforcement of election laws. And the political support necessary to implement these reforms is more likely to materialize if all the pillars are viewed as part of an entire approach. If adequately funded and implemented, this new approach will move America down the path of transforming the vision of a model democracy into reality.

# A P P E N D I X

## Estimated Costs of Recommended Improvements

The Commission's recommendations are estimated to cost $1.35 billion to implement. This estimate is the sum of the cost of making state voter databases interoperable and upgrading voting machines to make them both accessible and transparent.

The total cost for making voter databases interoperable is estimated at $287 million. This cost breaks down as follows:

- The 11 states without top-down voter registration systems will need to spend a total of $74 million to build such systems.[78]

- The system to share voter data among states is estimated to cost $77 million.[79]

- The cost for all states to adopt the recommended template for shared voter data is estimated at $21 million. Since every state except Vermont requires a Social Security number to issue a driver's license, states will need to collect Social Security numbers from only a small portion of the adult population.[80]

- Since all states currently collect digital images of signatures when they issue driver's licenses, there will be no significant cost for collecting signature images for voter registration.

- For voter identification, states that use REAL ID for voting purposes will need additional funds only to provide a template form of ID to non-drivers. The template form of ID will be issued to an estimated 23 million U.S. citizen non-drivers at a cost of $115 million.[81]

The total cost for upgrading voting machines, to make them both accessible and transparent, is estimated at $1.06 billion. This is the amount needed, in addition to the HAVA funds already obligated, to replace remaining punch card and lever machines with direct recording electronic (DRE) systems or with optical scan systems with a computer-assisted marking device for blind and visually impaired voters, to retrofit DREs with a voter-verifiable paper audit trail, and to add a ballot marking device for blind voters to existing optical scan systems. The estimates are based on current distributions of various voting machines and on current costs for DREs, voter-verifiable paper audit trails, and ballot-marking devices for optical scan systems.

The Commission recommends that Congress provide $1.35 billion in funding over a two-year period, so that voter databases will be made interoperable and voting machine upgrades will be completed before the 2008 elections.

## ENDNOTES

[1]   Adam Nagourney and Janet Elder, "Late Poll Still Shows Sharp Split in U.S. Vote," *International Herald Tribune,* November 1, 2004; and Dan Eggen, "Justice Department Triples Election Monitors: More than 1,000 Head to Polls," *The Washington Post,* October 29, 2004, p. A6.

[2]   The Pew Research Center for the People and the Press, "Voters Liked Campaign 2004, But Too Much 'Mud-Slinging'," November 11, 2004, available at <http://people-press.org/reports/display.php3?ReportID=233>.

[3]   Milwaukee Police Department, Milwaukee County District Attorney's Office, Federal Bureau of Investigation, and United States Attorney's Office Task Force, *Preliminary Findings of Joint Task Force Investigating Possible Election Fraud.* May 10, 2005. Available at <http://www.wispolitics.com/1006/electionfraud.pdf>.

[4]   "Dead voters on rolls," *Chicago Tribune*, December 4, 2004.

[5]   The following democracies constitute some of the nearly 100 countries that utilize a national ID system: Belgium, Cost Rica, Germany, India, Italy, the Netherlands, Portugal, South Africa, and Spain. See Privacy.org, "Identity Cards: FAQ," August 24, 1996, available at <http://www.privacy.org/pi/activities/idcard/idcard_faq.html>

[6]   Jason P. Schacter, "Geographical Mobility: 2002 to 2003." *Current Population Reports.* US Census Bureau (March 2004). Available at: http://www.census.gov/prod/2004pubs/p20-549.pdf.

[7]   In addition to the 38 states with top-down voter registration systems, 6 states are developing bottom-up systems, 2 will use systems with both top-down and bottom-up elements, and 3 have yet to finalize their plans. North Dakota does not require voter registration. See Electionline.org, *Assorted Rolls: Statewide Voter Registration Databases Under HAVA,* June 2005, p. 3, available at <www.electionline.org/Portals/1/Assorted percent20Rolls.pdf>.

[8]   "Exposed: Scandal of double voters," *New York Daily News,* August 21, 2004 and "Double votes taint Florida, records show," *Orlando Sentinel,* October 23, 2004.

[9]   "Report: As many as 60,000 people file to vote in both Carolinas," Associated Press, October 24, 2004.

[10]   "Exposed: Scandal of Double Voters," *New York Daily News,* August 21, 2004.

[11]   The introduction of electronic transaction standards would also facilitate cross-state exchanges of voter data, see R. Michael Alvarez and Thad E. Hall, "The Next Big Election Challenge: Developing Electronic Data Transaction Standards for Election Administration," Caltech/MIT Voting Technology Project, July 2005, pp. 19-21.

[12]   "Overview of States Driver's License Requirements", National Immigration Law Center, July 12, 2005, available at <www.nilc.org/immspbs/DLs/state_dl_rqrmts_ovrvw_071205.pdf>. Alabama also collects Social Security numbers for driver's licenses, according to Commission staff conversation with Alabama's Motor Vehicle Division in August 2005.

[13]   Except for Vermont, all states require a Social Security Number for a driver's license, at least from people who were assigned a Social Security Number or are eligible for one.

[14]    Voters should also have the opportunity to check their registration over the phone, via a toll-free number, or in person at the elections office.

[15]    Electionline.org, *Solution or Problem? Provisional Ballots in 2004*, April 2005, p. 2, available at <http://electiononline.org/Portals/1/Publications/ERIP10Apr05.pdf>.

[16]    Ibid, p.5.

[17]    In states with unified databases, provisional ballots constituted .85 percent of the total ballots cast whereas in the states without unified databases, provisional ballots constituted 1.76 percent of the total. See Electionline.org, *Solution or Problem? Provisional Ballots in 2004,* Washington, D.C., April 2005.

[18]    Testimony before the Commission by Ken Smukler, President of Info Voter Technologies, on June 30, 2005.

[19]    Details were provided in Section 1.1.

[20]    ID is required of all voters in 22 states and of all first-time voters in another two states, according to Electionline.org, <http://electionline.org/Default.aspx?tabid=364>.

[21]    Provided by Electionline.org, <www.electionline.org/Default.aspx?tabid=473>.

[22]    A comparison of driver's license records and census data for 2003 suggests that about 88 percent of Americans aged 18 and over have a driver's license, see U.S. Department of Transportation, Federal Highway Administration, *Licensed Total Drivers, By Age, 2003,* Table DL-22, Oct. 2004, at <www.fhwa.dot.gov/policy/ohim/hs03/htm/dl22.htm>, and U.S. Census Bureau, *Annual Estimates of the Population by Selected Age Groups and Sex for the United States: April 1, 2000 to July 1, 2004,* (June 2005), available at <www.census.gov/popest/national/asrh/NC-EST2004-sa.html>.

[23]    U.S. Government Accountability Office, *Elections: Additional Data Could Help State and Local Elections Officials Maintain Accurate Voter Registration Lists,* GAO-05-478, June 2005, pp. 13-29.

[24]    U.S. Election Assistance Commission, *The Impact of the National Voter Registration Act, 2003–2004,* June 30, 2005, pp. 16 and 20.

[25]    Data on voter registration in Alaska is contained in U.S. Election Assistance Commission, "The Impact of the National Voter Registration Act of 1993 on the Administration of Elections for Federal Office: 2003-2004," Table 1: Registration History. Other examples include 34 of the 82 counties in Mississippi and the City of East St. Louis, see Emily W. Pettus, "Secretary of state seeks proposals on statewide voter roll," *Associated Press,* September 1, 2004, and Mike Fitzgerald, "Dual registration: a recipe for fraud?" *Belleview News-Democrat,* November 28, 2004.

[26]    For example, see Australian National Audit Office, *Integrity of the Electoral Roll,* April 2002: <www.anao.gov.au/WebSite.nsf/Publications/4A256AE90015F69BCA256B9E007B5F52>. This audit estimated that Australia's electoral rolls were 96 percent accurate, 95 percent complete, and 99 percent valid.

[27]    The residual vote rates fell by 0.79 percent in counties where lever machines were replaced by direct recording electronic (DRE) machines and by 1.46 percent in counties where punch cards were replaced by DREs, according to Charles Stewart, *Residual Vote in the 2004 Election,* Caltech/MIT Voting Technology Project Working Paper, February 2005, Table 2.

[28] Election Data Services, <www.electiondataservices.com/VotingSummary2004_20040805.pdf>.

[29] Dan Keating, "Lost Votes in N.M. a Cautionary Tale," *Washington Post*, August 22, 2004, and "Nearly 40 votes may have been lost in Palm Beach County," *Associated Press*, November 2, 2004.

[30] Electionline.org, <http://www.electionline.org/Default.aspx?tabid=290>.

[31] Ted Selker, "Processes Can Improve Electronic Voting," Caltech/MIT Voting Technology Project, October 2004, available at <http://www.vote.caltech.edu/media/documents/vtp_wp17.pdf>.

[32] Manual audits of voting machines are required in Colorado, Connecticut, Hawaii, Illinois, Minnesota, New Mexico, New York, North Carolina, Washington, and West Virginia, according to Verified Voting Foundation, "Manual Audit Requirement," August 18, 2005, available at <www.verifiedvoting.org/downloads/Manual_Audit_Provisions.pdf>.

[33] Ted Selker and Jon Goler, "Security Vulnerabilities and Problems with VVPT," Caltech/MIT Voting Technology Project, April 2004, available at <http://vote.caltech.edu/media/documents/wps/vtp_wp16.pdf>.

[34] "Voting Machine Fails Inspection," *CNETNews.com*, July 23, 2003 and "New Security Woes for E-Vote Firm," *WiredNews.com*, August 7, 2003.

[35] In California's field test, about one in ten machines malfunctioned, see "Voting Machines Touch and Go," *Associated Press*, July 30, 2005.

[36] Internet Policy Institute, *Report of the National Workshop on Internet Voting: Issues and Research Agenda*, March 2001. Available at <http://news.findlaw.com/hdocs/docs/election2000/nsfe-voterprt.pdf>.

[37] Curtis Gans, "Making it Easier Doesn't Work: No Excuse Absentee and Early Voting Hurt Voter Turnout," Center for the Study of the American Electorate, September 13, 2004, available at <http://www.american.edu/ia/cfer/research/csae_09132004.pdf >.

[38] Testimony before the Commission by Robert Stein, Dean of Social Sciences at Rice University, on June 30, 2005.

[39] *Balancing Access and Integrity: The Report of the Century Foundation working Group on State Implementation of Election Reform* (N.Y. the Century Foundation Press, 2005), pp. 25-26.

[40] Curtis Gans, "Making it Easier Doesn't Work: No Excuse Absentee and Early Voting Hurt Voter Turnout," Center for the Study of the American Electorate, September 13, 2004, available at <http://www.american.edu/ia/cfer/research/csae_09132004.pdf >.

[41] Superior Court of the State of Washington for Chelan County, Final Judgment Dismissing Election Contest with Prejudice and Confirming Certification of Election of Christine Gregoire, Court Decision No. 05-2-00027-3, June 6, 2005.

[42] United States General Accounting Office. "Elections: Issues Affecting Military and Overseas Absentee Voters," May 2001, available at: <http://www.gao.gov/new.items/d01704t.pdf>, p.1.

[43] National Defense Committee, *Military and Overseas Absentee Voting in the 2004 Presidential Election*, March 30, 2005, available at <www.nationaldefensecommittee.org/media/pdf/NDCmavexecsumfinal-33005.pdf>.

44  David Jefferson, Aviel D. Rubin, Barbara Simons, and David Wagner, *A Security Analysis of the Secure Electronic Registration and Voting Experiment*, January 20, 2004, <www.servesecurityreport.org/>.

45  Information provided to the Commission by the Federal Voting Assistance Program.

46  Testimony before the Commission by James Dickson, Vice President at the American Association of People with Disabilities, on April 18, 2005.

47  Ibid.

48  Ibid.

49  Ibid.

50  Alabama, Arizona, Delaware, Maryland, Mississippi, Nebraska, Nevada, Tennessee, Washington, and Wyoming have a permanent ban on voting by certain categories of ex-felons, according to the Sentencing Project, <www.sentencingproject.org/pdfs/1046.pdf>.

51  Census data provided by the Center for Information and Research on Civic Learning and Engagement (CIRCLE), available at <www.civicyouth.org/PopUps/ReleaseCPS04_Youth.pdf>.

52  Karl T. Kurtz, Alan Rosenthal, and Cliff Zukin, *Citizenship: A Challenge for All Generations*, National Conference of State Legislatures, September 2003, available at <www.ncsl.org/public/trust/citizenship.pdf>.

53  Campaign for the Civic Mission of Schools and Alliance for Representative Democracy, "From Classroom to Citizen: American Attitudes on Civic Education," December 2004, available at <www.representativedemocracy.org/CivicEdSurveyReport.pdf>.

54  U.S. Department of Justice press release, "Department of Justice to Hold Ballot Access and Voting Integrity Symposium," August 2, 2005.

55  U.S. Government Accountability Office, *Elections: Additional Data Could Help State and Local Elections Officials Maintain Accurate Voter Registration Lists*, GAO-05-478, June 2005, pp. 59-60.

56  *Balancing Access and Integrity: The Report of the Century Foundation working Group on State Implementation of Election Reform* (N.Y. the Century Foundation Press, 2005), pp. 67-69.

57  John Fund, *Stealing Elections: How Voter Fraud Threatens Our Democracy* (San Francisco: Encounter Books, 2004), p. 103.

58  Joe Stinebaker, "Loophole lets foreigners illegally vote," *Houston Chronicle*, January 16, 2005, and Robert Redding, "Purging illegal aliens from voter rolls not easy: Maryland thwarted in tries so far," *Washington Times*, August 23, 2004.

59  Susan Greene and Karen E. Crummy, "Vote Fraud Probed In State," *Denver Post*, March 24, 2005; Brendan Farrington, "Fla. Officials Asked To Probe Vote Fraud," *Associated Press*, October 7, 2004; Dawson Bell, "Campaign Workers Suspected Of Fraud," *Detroit Free Press*, September 23, 2004; "Man Pleads Guilty In Voter Registration Scam," *Associated Press*, December 7, 2004; Robert Patrick, "Jury Finds Montgomery Guilty In Vote Fraud Case," *St. Louis Post-Dispatch*, February 11, 2005; Nevada Secretary Of State, "Alleged Vote Fraud Investigations Ongoing," Press Release, October 28, 2004; Dan McKay, "Election 'Mischief' Under Scrutiny," *Albuquerque Journal*, September 10, 2004; "Voter Registration Investigation One Of Largest In Recent Years," *Associated Press*, September 23, 2004; Greg

J. Borowski, "Inquiry Finds Evidence Of Fraud In Election," *Milwaukee Journal Sentinel*, May 11, 2005; U.S. Department of Justice, Criminal Division, Public Integrity Section, *Election Fraud Prosecutions and Convictions: Ballot Access & Voting Integrity Initiative*, October 2002 - July, 2005.

[60]   A Rasmussen Reports poll just before the November 2004 elections showed that 58 percent of American voters believed there was "a lot" or "some" fraud in U.S. elections, and in a post-election NBC News/*Wall Street Journal* poll, more than a quarter of Americans worried that the vote count for president in 2004 was unfair, quoted in Rick Hasen, "Beyond the Margin of Litigation: Reforming Election Administration to Avoid Electoral Meltdown," Paper prepared for American Political Science Association meeting, September 1, 2005, pp. 7-8, available at <http://convention2.allacademic.com/getfile.php?file=apsa05_proceeding/2005-07-29/41404/apsa05_proceeding_41404.pdf&PHPSESSID=c47830ae1716d461356f998599faea17 >.

[61]   Ibid, p. 9.

[62]   Ibid, p. 29.

[63]   International IDEA, Code of Conduct for the Ethical and Professional Administration of Elections, 1997, <www.idea.int/publications/conduct_admin/upload/adm_english.pdf>.

[64]   United States Election Assistance Commission, *Background on the Help America Vote College Poll Worker Program.* <http://www.eac.gov/coll_poll_background.asp>; Associated Press, "US short of poll workers" November 1, 2004, *Fox News.* Available at: <http://www.foxnews.com/story/0,2933,137242,00.html>

[65]   The Voting Rights Institute, *Democracy at Risk: the 2004 Election in Ohio* (Washington, D.C.: Democratic National Committee, 2005).

[66]   U.S. Department of Justice's investigations in Franklin County and in Knox County, Ohio found no evidence that the allocation of voting machines was conducted in a discriminatory manner, see <www.usdoj.gov/crt/voting/misc/franklin_oh.htm> and <www.usdoj.gov/crt/voting/misc/knox.htm>. In fact, the distribution of voting machines was determined by each county's Board of Elections, and half the members of each Board of Elections are Democrats.

[67]   Rule §81.125 of Texas Administrative Code, available at <http://info.sos.state.tx.us/pls/pub/readtac$ext.TacPage?sl=R&app=9&p_dir=&p_rloc=&p_tloc=&p_ploc=&pg=1&p_tac=&ti=1&pt=4&ch=81&rl=125>.

[68]   A strong example of funding for elections research is the $7.5 million awarded by the National Science Foundation on August 15, 2005 for a collaborative project of six institutions to study the reliability, security, transparency, and auditability of voting systems.

[69]   California Secretary of State *Historical Close Of Registration Statistics: Presidential General Elections*, May 2004, available at <www.ss.ca.gov/elections/ror/reg_stats_10_18_04.pdf>; Wyoming Secretary of State, *Profile of Wyoming's Voters: Voter Registration and Voter Turnout, Associated Press*, 2004. Available at <soswy.state.wy.us/election/profile.htm>. *Election cost — $4 billion and climbing: most money went for ads, but other expenses not chicken feed.* Available at <www.msnbc.msn.com/id/6388580/>.

70  IFES, Cost of Registration and Elections (CORE) for election costs in Australia and Spain; Elections Canada, <www.elections.ca/>; Electionguide.org, <www.electionguide.org/resultsum/canada_par04.htm>; UK Electoral Commission, 2002, *Funding Democracy: Providing Cost-Effective Electoral Services*, available at <www.electoralcommission.org.uk/files/dms/funding_csltppr_6642-6213__E__N__S__W__.pdf>; Electionguide.org, EPIC Project, available at <epicproject.org/ace/compepic/en/getAnswer$ALL+EM10>.

71  Alliance for Better Campaigns, <www.bettercampaigns.org/standard/display.php?StoryID=322>.

72  Fox New/Opinion Dynamics poll, March 25, 2004, <www.foxnews.com/story/0,2933,115208,00.html>.

73  Analysis by the Norman Lear Center at the Annenberg School for Communication of the University of Southern California, <www.bettercampaigns.org/standard/display.php?StoryID=328>.

74  Alliance for Better Campaigns, <www.bettercampaigns.org/standard/display.php?StoryID=326>, and Lear Center, "Local News Coverage of the 2004 Campaigns."

75  National Commission on Federal Election Reform, *To Assure Pride and Confidence in the Electoral Process*, August 2001, p. 63.

76  National Association of Secretaries of State, "International Election Protocol Resolution," and supporting language, July 24, 2005, available at <www.nass.org/International Election Protocol Resolution.pdf> and <www.nass.org/International Elections Protocol Language.pdf>.

77  Six states passed measures to move forward the date of their presidential primaries and eight states passed measures to cancel their presidential primary for 2004, see <www.ncsl.org/programs/legman/elect/taskfc/Changing-EliminatingPP.htm>.

78  Estimate is based on the average amounts other states are currently spending to build top-down voter registration systems and excludes HAVA funds that have already been disbursed for this purpose see Electiononline.org, *Assorted Rolls: Statewide Voter Registration Databases Under HAVA*, <http://electiononline.org/Portals/1/Assorted Rolls.pdf>.

79  Figure includes both the cost to upgrade existing state databases to make them interoperable in real time and the cost to build a voter registration distributed database linked to the individual state servers. The former ($48 million) is based on the average cost to make existing state driver's license databases interoperable with each other as determined by the Congressional Budget Office, see "H.R. 418: REAL ID Act of 2005," Congressional Budget Office, <http://www.cbo.gov/showdoc.cfm?index=6072&sequence=0>. The latter ($29 million) is based on the market cost to purchase, secure, maintain, and link to the states through leased lines a central database that benchmarks 57,346 transactions per minute.

80  The cost to collect Social Security numbers is tantamount to registering voters. The Office of the Chief Electoral Officer of Canada calculates the cost to registering 19.6 million voters in the 1997 national elections at approximately $18 million. This produces a statistic of $0.92 to register each person, see *Voter Turnout*, electionguide.org, <http://www.electionguide.org/turnout.htm> and *Voting for Democracy: Notes on the Canadian Experience*, Office of the Chief Electoral Officer of Canada, March 1998, <http://www.aceproject.org/main/samples/vr/vrx_w005.pdf>. For data on the distribution of driver's licenses, see "Highway Statistics 2003," U.S. Department of Transportation, <http://www.fhwa.dot.gov/policy/ohim/hs03/htm/dl22.htm>.

81  The cost per card is estimated at $5. This figure includes approximate administrative, infrastructure, and issuance costs, see Stephen Moore, "Congressional testimony before the U.S. House of Representatives Subcommittee on Immigration and Claims, Judiciary Committee," May 13, 1997, available at <http://www.cato.org/testimony/ct-sm051397.html> and "The debate over a national identification card," The Century Foundation, Homeland Security Project, available at <http://www.tcf.org/Publications/HomelandSecurity/National_ID_Card.pdf>.

82  The estimated costs for the various voting machines are as follows: Direct Recording Electronic with a Voter-Verified Paper Audit Trail (DRE/VVPAT)—$4,000; retrofitting a DRE machine with a VVPAT—$1,000; optical scanner (OS)—$5,000; and ballot marking device for an optical scan system—$4,500. Machine cost data is collected from many sources, including: Verifiedvoting.org, "Appendix 4: Cost Comparison of Alternative Solutions," <http://www.verifiedvoting.org/downloads/CT SOTS1appendix_43.pdf>; Caleb Kleppner, *State of the Industry: Compatibility of Voting Equipment with Ranked Ballots*, Center for Voting and Democracy, 2001, <http://www.fairvote.org/administration/industry.rtf>; Bo Lipari, "Analysis of Acquisition Costs of DRE and Precinct Based Optical Scan Voting Equipment for New York State," New Yorkers for Verified Voting, 2005, <http://www.nyvv.org/doc/AcquisitionCostDREvOptScanNYS.pdf>. For details on the distribution of machine technology, see Election Data Services, *Voting Equipment Summary by Type*, 2004, <http://www.electiondataservices.com/VotingSummary2004_20040805.pdf>.

# Summary of Recommendations

## 1: GOALS AND CHALLENGES OF ELECTION REFORM

### 1.1 HELP AMERICA VOTE ACT: STRENGTHS AND LIMITATIONS

1.1.1 The Help America Vote Act should be fully implemented by 2006, as mandated by the law, and fully funded.

1.1.2 The Commission urges that the Voting Rights Act be vigorously enforced and that Congress and the President seriously consider reauthorizing those provisions of the Act that are due to expire in 2007.

## 2: VOTER REGISTRATION AND IDENTIFICATION

### 2.1 UNIFORMITY WITHIN STATES — TOP-DOWN REGISTRATION SYSTEMS

2.1.1 The Commission recommends that states be required to establish unified, top-down voter registration systems, whereby the state election office has clear authority to register voters and maintain the registration list. Counties and municipalities should assist the state with voter registration, rather than have the state assist the localities. Moreover, Congress should appropriate funds for disbursement by the U.S. Election Assistance Commission (EAC) to states to complete top-down voter registration systems.

### 2.2 INTEROPERABILITY AMONG STATES

2.2.1 In order to assure that lists take account of citizens moving from one state to another, voter databases should be made interoperable between states. This would serve to eliminate duplicate registrations, which are a source of potential fraud.

2.2.2 In order to assist the states in creating voter databases that are interoperable across states, the EAC should introduce a template for shared data and a format for cross-state data transfers. This template should include a person's full legal name, date and place of birth, signature (captured as a digital image), and Social Security number.

2.2.3 With assistance and supervision by the EAC, a distributed database system should be established to make sure that the state lists remain current and accurate to take into account citizens moving between states. Congress should also pass a law mandating that states cooperate with this system to ensure that citizens do not vote in two states.

2.2.4 Congress should amend HAVA to mandate the interoperability of statewide registration lists. Federal funds should be appropriated for distribution by the EAC to states that make their voter databases interoperable, and the EAC should withhold federal funds from states that fail to do so. The law should also provide for enforcement of this requirement.

2.2.5 With proper safeguards for personal security, states should allow citizens to verify and correct the registration lists information on themselves up to 30 days before the election. States should also provide "electronic poll-books" to allow precinct officials to identify the correct polling site for voters.

2.2.6 With interoperability, citizens should need to register only once in their lifetime, and updating their registration will be facilitated when they move.

## 2.3 PROVISIONAL BALLOTS

**2.3.1** Voters should be informed of their right to cast a provisional ballot if their name does not appear on the voter roll, or if an election official asserts that the individual is not eligible to vote, but States should take additional and effective steps to inform voters as to the location of their precinct.

**2.3.2** States, not counties or municipalities, should establish uniform procedures for the verification and counting of provisional ballots, and that procedure should be applied uniformly throughout the State. Many members of the Commission recommend that a provisional ballot cast in the incorrect precinct but in the correct jurisdiction should be counted.

**2.3.3** Poll workers should be fully trained on the use of provisional ballots, and provisional ballots should be distinctly marked and segregated so they are not counted until the eligibility of the voter is determined.

## 2.4 COMMUNICATING REGISTRATION INFORMATION

**2.4.1** States and local jurisdictions should use Web sites, toll-free numbers, and other means to answer questions from citizens as to whether they are registered and, if so, what is the location of their precinct, and if they are not registered, how they can do so before the deadline.

## 2.5 VOTER IDENTIFICATION

**2.5.1** To ensure that persons presenting themselves at the polling place are the ones on the registration list, the Commission recommends that states require voters to use the REAL ID card, which was mandated in a law signed by the President in May 2005. The card includes a person's full legal name, date of birth, a signature (captured as a digital image), a photograph, and the person's Social Security number. This card should be modestly adapted for voting purposes to indicate on the front or back whether the individual is a U.S. citizen. States should provide an EAC-template ID with a photo to non-drivers free of charge.

**2.5.2** The right to vote is a vital component of U.S. citizenship, and all states should use their best efforts to obtain proof of citizenship before registering voters.

**2.5.3** We recommend that until January 1, 2010, states allow voters without a valid photo ID card (Real or EAC-template ID) to vote, using a provisional ballot by signing an affidavit under penalty of perjury. The signature would then be matched with the digital image of the voter's signature on file in the voter registration database, and if the match is positive, the provisional ballot should be counted. Such a signature match would in effect be the same procedure used to verify the identity of voters who cast absentee ballots. After January 1, 2010, voters who do not have their valid photo ID could vote, but their ballot would count only if they returned to the appropriate election office within 48 hours with a valid photo ID.

**2.5.4** To address concerns about the abuse of ID cards, or the fear that it could be an obstacle to voting, states should establish legal protections to prohibit any commercial use of voter data and ombudsman institutions to respond expeditiously to any citizen complaints about the misuse of data or about mistaken purges of registration lists based on interstate matching or statewide updating.

**2.5.5** In the event that Congress mandates a national identification card, it should include information related to voting and be connected to voter registration.

## 2.6 QUALITY IN VOTER REGISTRATION LISTS

2.6.1 States need to effectively maintain and update their voter registration lists. The EAC should provide voluntary guidelines to the states for quality audits to test voter registration databases for accuracy (correct and up-to-date information on individuals), completeness (inclusion of all eligible voters), and security (protection of unauthorized access). When an eligible voter moves from one state to another, the state to which the voter is moving should be required to notify the state which the voter is leaving to eliminate that voter from its registration list.

2.6.2 All states should have procedures for maintaining accurate lists such as electronic matching of death records, drivers licenses, local tax rolls, and felon records.

2.6.3 Federal and state courts should provide state election offices with the lists of individuals who declare they are non-citizens when they are summoned for jury duty.

2.6.4 In a manner that is consistent with the National Voter Registration Act, states should make their best efforts to remove inactive voters from the voter registration lists. States should follow uniform and strict procedures for removal of names from voter registration lists and should adopt strong safeguards against incorrect removal of eligible voters. All removals of names from voter registration lists should be double-checked.

2.6.5 Local jurisdictions should track and document all changes to their computer databases, including the names of those who make the changes.

# 3: VOTING TECHNOLOGY

## 3.1 VOTING MACHINES

3.1.1 Congress should pass a law requiring that all voting machines be equipped with a voter-verifiable paper audit trail and, consistent with HAVA, be fully accessible to voters with disabilities. This is especially important for direct recording electronic (DRE) machines for four reasons: (a) to increase citizens' confidence that their vote will be counted accurately, (b) to allow for a recount, (c) to provide a backup in cases of loss of votes due to computer malfunction, and (d) to test — through a random selection of machines — whether the paper result is the same as the electronic result. Federal funds should be appropriated to the EAC to transfer to the states to implement this law. While paper trails and ballots currently provide the only means to meet the Commission's recommended standards for transparency, new technologies may do so more effectively in the future. The Commission therefore urges research and development of new technologies to enhance transparency, security, and auditability of voting systems.

3.1.2 States should adopt unambiguous procedures to reconcile any disparity between the electronic ballot tally and the paper ballot tally. The Commission strongly recommends that states determine well in advance of elections which will be the ballot of record.

## 3.2 AUDITS

3.2.1 State and local election authorities should publicly test all types of voting machines before, during, and after Election Day and allow public observation of zero machine counts at the start of Election Day and the machine-certification process.

## 3.3 SECURITY FOR VOTING SYSTEMS

3.3.1 The Independent Testing Authorities, under EAC supervision, should have responsibility for certifying the security of the source codes to protect against accidental or deliberate manipulation of vote results. In addition, a copy of the source codes should be put in escrow for future review by qualified experts. Manufacturers who are unwilling to submit their source codes for EAC-supervised testing and for review by independent experts should be prohibited from selling their voting machines.

3.3.2 States and local jurisdictions should verify upon delivery of a voting machine that the system matches the system that was certified.

3.3.3 Local jurisdictions should restrict access to voting equipment and document all access, as well as all changes to computer hardware or software.

3.3.4 Local jurisdictions should have backup plans in case of equipment failure on Election Day.

# 4: EXPANDING ACCESS TO ELECTIONS

## 4.1 ASSURED ACCESS TO ELECTIONS

4.1.1 States should undertake their best efforts to make voter registration and ID accessible and available to all eligible citizens, including Americans with disabilities. States should also remove all unfair impediments to voter registration by citizens who are eligible to vote.

4.1.2 States should improve procedures for voter registration efforts that are not conducted by election officials, such as requiring state or local registration and training of any "voter registration drives."

4.1.3 Because there have been reports that some people allegedly did not deliver registration forms of those who expressed a preference for another party, states need to take special precautions to assure that all voter registration forms are fully accounted for. A unique number should be printed on the registration form and also on a detachable receipt so that the voter and the state election office can track the status of the form. In addition, voter registration forms should be returned within 14 days after they are signed.

## 4.2 VOTE BY MAIL

4.2.1 The Commission encourages further research on the pros and cons of vote by mail and of early voting.

## 4.3 VOTE CENTERS

4.3.1 States should modify current election law to allow experimentation with voting centers. More research, however, is needed to assess whether voting centers expand voter participation and are cost effective.

4.3.2 Voting centers need a higher-quality, computer-based registration list to assure that citizens can vote at any center without being able to vote more than once.

## 4.4 MILITARY AND OVERSEAS VOTING

4.4.1 The law calling for state offices to process absentee ballots for military and overseas government and civilian voters should be implemented fully, and these offices should be under the supervision of the state election offices.

4.4.2 New approaches should be adopted at the federal and state levels to facilitate voting by civilian voters overseas.

4.4.3 The U.S. Department of Defense (DOD) should supply to all military posted outside the United States a Federal Postcard Application for voter registration and a Federal Write-in Absentee Ballot for calendar years in which there are federal elections. With adequate security protections, it would be preferable for the application forms for absentee ballots to be filed by Internet.

4.4.4 The states, in coordination with the U.S. Department of Defense's Federal Voting Assistance Program, should develop a system to expedite the delivery of ballots to military and overseas civilian voters by fax, email, or overnight delivery service, but voted ballots should be returned by regular mail, and by overnight mail whenever possible. The Defense Department should give higher priority to using military aircraft returning from bases overseas to carry ballots. Voted ballots should not be returned by email or by fax as this violates the secrecy of the ballot and is vulnerable to fraud.

4.4.5 All ballots subject to the Uniform and Overseas Civilians Absentee Voting Act must be mailed out at least 45 days before the election (if request is received by then) or within two days of receipt after that. If the ballot is not yet set, due to litigation, a late vacancy, etc., a temporary ballot listing all settled offices and ballot issues must be mailed.

4.4.6 States should count the ballots of military and overseas voters up to 10 days after an election if the ballots are postmarked by Election Day.

4.4.7 As the technology advances and the costs decline, tracking systems should be added to absentee ballots so that military and overseas voters may verify the delivery of their voted absentee ballots.

4.4.8 The Federal Voting Assistance Program should receive a copy of the report that states are required under HAVA to provide the EAC on the number of absentee ballots sent to and received from military and overseas voters.

## 4.5 ACCESS FOR VOTERS WITH DISABILITIES

4.5.1 To improve accessibility of polling places for voters with disabilities, the U.S. Department of Justice should improve its enforcement of the Americans with Disabilities Act and the accessibility requirements set by the Help America Vote Act.

4.5.2 States should make their voter registration databases interoperable with social-service agency databases and facilitate voter registration at social-service offices by citizens with disabilities.

4.5.3 States and local jurisdictions should allow voters with disabilities to request an absentee ballot when they register and to receive an absentee ballot automatically for every subsequent election. Local election officials should determine which voters with disabilities would qualify.

## 4.6 RE-ENFRANCHISEMENT OF EX-FELONS

4.6.1 States should allow for restoration of voting rights to otherwise eligible citizens who have been convicted of a felony (other than for a capital crime or one

which requires enrollment with an offender registry for sex crimes) once they have fully served their sentence, including any term of probation or parole.

4.6.2 States should provide information on voter registration to ex-felons who have become eligible to vote. In addition, each state's department of corrections should automatically notify the state election office when a felon has regained eligibility to vote.

## 4.7 VOTER AND CIVIC EDUCATION

4.7.1 Each state should publish a report on its voter education spending and activities.

4.7.2 States should engage in appropriate voter education efforts in coordination with local election authorities to assure that all citizens in their state have the information necessary to participate in the election process.

4.7.3 Each state should use its best efforts to instruct all high school students on voting rights and how to register to vote. In addition, civic education programs should be encouraged in the senior year of high school, as these have been demonstrated to increase voter participation by youth.

4.7.4 Local election authorities should mail written notices to voters in advance of an election advising the voter of the date and time of the election and the polling place where the voter can cast a ballot and encouraging the citizens to vote. The notice should also provide a phone number for the voter to contact the election authorities with any questions.

4.7.5 States should mail pamphlets to voters, and post the pamphlet material on their Web sites, to provide information about the candidates for statewide office and about ballot initiatives and referenda.

4.7.6 The federal government should provide matching funds for the states to encourage civic and voter education and advertisements aimed to encourage people to vote.

## 5: IMPROVING BALLOT INTEGRITY

### 5.1 INVESTIGATION AND PROSECUTION OF ELECTION FRAUD

5.1.1 In July of even-numbered years, the U.S. Department of Justice should issue a public report on its investigations of election fraud. This report should specify the numbers of allegations made, matters investigated, cases prosecuted, and individuals convicted for various crimes. Each state's attorney general and each local prosecutor should issue a similar report.

5.1.2 The U.S. Department of Justice's Office of Public Integrity should increase its staff to investigate and prosecute election-related fraud.

5.1.3 In addition to the penalties set by the Voting Rights Act, it should be a federal felony for any individual, group of individuals, or organization to engage in any act of violence, property destruction (of more than $500 value), or threatened act of violence that is intended to deny any individual his or her lawful right to vote or to participate in a federal election.

5.1.4 To deter systemic efforts to deceive or intimidate voters, the Commission recommends federal legislation to prohibit any individual or group from deliberately providing the public with incorrect information about election procedures for the purpose of preventing voters from going to the polls.

## 5.2 ABSENTEE BALLOT AND VOTER REGISTRATION FRAUD

**5.2.1** State and local jurisdictions should prohibit a person from handling absentee ballots other than the voter, an acknowledged family member, the U.S. Postal Service or other legitimate shipper, or election officials. The practice in some states of allowing candidates or party workers to pick up and deliver absentee ballots should be eliminated.

**5.2.2** All states should consider passing legislation that attempts to minimize the fraud that has resulted from "payment by the piece" to anyone in exchange for their efforts in voter registration, absentee ballot, or signature collection.

**5.2.3** States should not take actions that discourage legal voter registration or get-out-the-vote activities or assistance, including assistance to voters who are not required to vote in person under federal law.

## 6: ELECTION ADMINISTRATION

### 6.1 INSTITUTIONS

**6.1.1** To undertake the new responsibilities recommended by this report and to build confidence in the administration of elections, Congress and the states should reconstitute election management institutions on a nonpartisan basis to make them more independent and effective. U.S. Election Assistance Commission members and each state's chief elections officer should be selected and be expected to act in a nonpartisan manner, and the institutions should have sufficient funding for research and training and to conduct the best elections possible. We believe the time has come to take politics as much as possible out of the institutions of election administration and to make these institutions nonpartisan.

**6.1.2** Congress should approve legislation that would add a fifth member to the U.S. Election Assistance Commission, who would serve as the EAC's chairperson and who would be nominated by the President based on capability, integrity, and nonpartisanship. This would permit the EAC to be viewed more as nonpartisan than bipartisan and would improve its ability to make decisions. That person would be subject to Senate confirmation and would serve a single term of ten years. Each subsequent vacancy to the EAC should be filled with a person judged to be nonpartisan so that after a suitable period, all the members, and thus the institution, might be viewed as above politics.

**6.1.3** States should prohibit senior election officials from serving or assisting political campaigns in a partisan way, other than their own campaigns in states where they are elected.

**6.1.4** States should take additional actions to build confidence in the administration of elections by making existing election bodies as nonpartisan as possible within the constraints of each state's constitution. Among the ways this might be accomplished would be if the individuals who serve as the state's chief elections officer were chosen based on their capability, integrity, and nonpartisanship. The state legislatures would need to confirm these individuals by a two-thirds majority of one or both houses. The nominee should receive clear bipartisan support.

**6.1.5** Each state's chief elections officer should, to the extent reasonably possible, ensure uniformity of voting procedures throughout the state, as with provisional ballots. Doing so will reduce the likelihood that elections are challenged in court.

## 6.2 POLL WORKER RECRUITMENT

**6.2.1** States and local jurisdictions should allocate sufficient funds to pay poll workers at a level that would attract more technologically sophisticated and competent workers. Part-time workers should also be recruited for the beginning and the end of Election Day. States should amend their laws to allow shifts for part of the day for poll workers on Election Day.

**6.2.2** States and local jurisdictions should implement supplemental training and recognition programs for poll workers.

**6.2.3** To increase the number and quality of poll workers, the government and nonprofit and private employers should encourage their workers to serve as poll workers on Election Day without any loss of compensation, vacation time or personal time off. Special efforts should be made to enlist teachers and students as poll workers.

**6.2.4** Because some jurisdictions have large majorities of one party, which makes it hard to attract poll workers from other parties, local jurisdictions should allow poll workers from outside the jurisdiction.

**6.2.5** States should consider legislation to allow the recruitment of citizens as poll workers as is done for jury duty.

## 6.3 POLLING STATION OPERATIONS

**6.3.1** Polling stations should be made user-friendly. One way to do so would be to forbid any campaigning within a certain distance of a polling station.

**6.3.2** Polling stations should be required to maintain a "log-book" on Election Day to record all complaints. The books should be signed by election officials and observers and analyzed for ways to improve the voting process.

**6.3.3** Polling stations should be organized in a way that citizens would not have to wait long before voting, and officials should be informed and helpful.

## 6.4 RESEARCH ON ELECTION MANAGEMENT

**6.4.1** The Commission calls for continuing research on voting technology and election management so as to encourage continuous improvements in the electoral process.

## 6.5 COST OF ELECTIONS

**6.5.1** As elections are a bedrock of our nation's democracy, they should receive high priority in the allocation of government resources at all levels. Local jurisdictions, states, and the Congress should treat elections as a high priority in their budgets.

**6.5.2** Both local and state governments should track and report the cost of elections per registered voter.

# 7: RESPONSIBLE MEDIA COVERAGE

## 7.1 MEDIA ACCESS FOR CANDIDATES

**7.1.1** The Commission encourages national networks and local TV stations to provide at least five minutes of candidate discourse every night in the month leading up to elections.

**7.1.2** The Commission encourages broadcasters to continue to offer candidates short segments of air time to make issue statements, answer questions, or engage in mini-debates.

7.1.3  Many members of the Commission support the idea that legislation should be passed to require broadcasters to give a reasonable amount of free air time to political candidates, along the lines of the provisions of the Our Democracy, Our Airwaves Act of 2003 (which was introduced as S.1497 in the 108th Congress).

## 7.2 MEDIA PROJECTIONS OF ELECTION RESULTS

7.2.1  News organizations should voluntarily refrain from projecting any presidential election results in any state until all of the polls have closed in the 48 contiguous states.

7.2.2  News organizations should voluntarily agree to delay the release of any exit poll data until the election has been decided.

## 8: ELECTION OBSERVATION

8.1.1  All legitimate domestic and international election observers should be granted unrestricted access to the election process, provided that they accept election rules, do not interfere with the electoral process, and respect the secrecy of the ballot. Such observers should apply for accreditation, which should allow them to visit any polling station in any state and to view all parts of the election process, including the testing of voting equipment, the processing of absentee ballots, and the vote count. States that limit election observation only to representatives of candidates and political parties should amend their election laws to explicitly permit accreditation of independent and international election observers.

## 9: PRESIDENTIAL PRIMARY AND POST-ELECTION SCHEDULES

### 9.1 PRESIDENTIAL PRIMARY SCHEDULE

9.1.1  We recommend that the Chairs and National Committees of the political parties and Congress make the presidential primary schedule more orderly and rational and allow more people to participate. We endorse the proposal of the National Association of Secretaries of State to create four regional primaries, after the Iowa caucus and the New Hampshire primary, held at one-month intervals from March to June. The regions would rotate their position on the calendar every four years.

### 9.2 POST-ELECTION TIMELINE

9.2.1  Congress should clarify and modernize the rules and procedures applicable to carrying out its constitutional responsibilities in counting presidential electoral votes, and should specifically examine the deadlines.

9.2.2  States should certify their presidential election results before the "safe harbor" date. Also, every state should take steps, including the enactment of new statutes if necessary, to ensure that its resolution of election disputes will be given conclusive effect by Congress under 3 U.S.C. § 5.

# Additional Statements

All of the Commission Members are signatories of the report. Some have submitted additional or dissenting statements, which they were asked to limit to 250 words.

For alternative views and additional comments on the Commission's report, see our Web page at www.american.edu/ia/cfer/comments.

## 2.3   PROVISIONAL BALLOTS

### Kay Coles James

I strongly support the recommendation that states adopt uniform procedures for determining the validity of provisional ballots, and I join a majority of members who support counting provisional ballots when they are cast in the wrong precinct where multiple precincts vote at a single polling place.

However, out-of-precinct voting, in which a voter uses a provisional ballot to cast a ballot in the incorrect precinct, raises four substantial problems: (1) The voter is denied opportunity to vote for all candidates and issues or else casts a vote in a race in which the voter is not qualified to vote. (2) Election officials will not be able to anticipate the proper number of voters appearing at any given polling place and will not be able to allocate resources properly among the various polling places with the result that voters will face long lines and shortage of voting supplies. (3) The post-election evaluation of provisional ballots cast in the wrong polling place is time-consuming, error prone, subject to manipulation, undermines the secrecy of the ballot and will delay the outcome of the election. (4) It is settled law that HAVA does not mandate out-of-precinct voting.

The fact that many members of the Commission support limited out-of-precinct voting should not be understood as this Commission is recommending out-of-precinct voting because a substantial number of Commission members oppose it.

*See Daschle, et. al. below for an alternative view of this recommendation.*

## 2.5   VOTER IDENTIFICATION

### Tom Daschle joined by Spencer Overton and Raul Yzaguirre

The goals of ballot access and integrity are not mutually exclusive, and the ultimate test of the Commission's success will be whether voters from diverse backgrounds view its recommendations in their totality as providing them with a fair opportunity to participate in their democracy. Most of the recommendations in this report, such as the recommendation for a voter verified paper audit trail, meet that standard, but others do not. For voters who have traditionally faced barriers to voting – racial and ethnic minorities, Native Americans, the disabled and language minorities, the indigent and the elderly – these recommendations appear to be more about ballot security than access to the ballot.

The call for States to use the new REAL ID driver's license for voter identification at the polls is the most troublesome recommendation in the Report. While this statement identifies some of its problems, unfortunately the space allotted for dissent is inadequate to fully discuss all of the shortcomings of the Commission's ID proposal.

HAVA addresses the potential for fraudulent registration by individuals claiming to be someone they are not, and the Report contains no evidence that this reform is not working or that the potential for fraud in voter registration or multiple voting will not be addressed once the States fully implement the HAVA requirement for computerized, statewide registration lists. In fact, it offers scant evidence that this problem is widespread or that such a burdensome reform is required to solve it.

REAL ID is a driver's license, not a citizenship or a voting card. The Report notes that 12% of the voting age population lack a driver's license. While it recommends that States provide an alternative photo voting card to non-drivers free of charge, States are likely to require the same documentation that is required of drivers.

The documents required by REAL ID to secure a driver's license, and consequently a photo ID to vote under this recommendation, include a birth certificate, passport or naturalization papers, a photo identity document, and proof of Social Security number. Obtaining such documents can be difficult, even for those not displaced by the devastation of Hurricane Katrina. For some, the Commission's ID proposal constitutes nothing short of a modern day poll tax.

Important omissions raise doubts about the completeness of this Report. The lack of a recommendation on counting provisional ballots in Federal and statewide races is unfortunate. Our goal should be to ensure that the maximum number of eligible ballots are counted. Eligibility to vote for President is not dependent upon the precinct in which the voter resides. Similarly, reforms that expand access to the ballot box for working people, the disabled, elderly and minorities, such as early voting and vote-by-mail, are inadequately addressed by this Report.

Election reform must be about empowerment, not disenfranchisement. Raising needless impediments to voting or creating artificial requirements to have one's vote counted are steps backward. The mere fear of voter fraud should never be used to justify denying eligible citizens their fundamental right to vote.

### *Spencer Overton*

I am a professor who specializes in election law, and I am writing separately to express my dissenting views to the Carter-Baker Commission's photo ID proposal. Unfortunately, the Commission rejected my 597-word dissent and allowed me only 250 words (this limitation on dissent was first announced at our final meeting). I believe that the issues before the Commission are of great consequence to our democracy and deserve more discussion. Thus, my concerns with the Commission's ID proposal and the shortcomings of the Commission's deliberative process are examined in greater detail at www.carterbakerdissent.com.

*Susan Molinari*

Opponents of a voter photo ID argue that requiring one is unnecessary and discriminatory.

Numerous examples of fraud counter the first argument. In 2004, elections in Washington state and Wisconsin were decided by illegal votes. In Washington, this fact was established by a lengthy trial and decision of the court. In Wisconsin, this fact was established by a joint report written by the U.S. Attorney, FBI, Chief of Police and senior local election official – both Republicans and Democrats. In other states, most notably the states of Ohio and New York, voter rolls are filled with fictional voters like Elmer Fudd and Mary Poppins.

Addressing the second concern, the Commission recommendation is for states to adopt safeguards that guarantee all Americans equal opportunity to obtain an ID required for voting. The safeguards include initiatives to locate those voters without IDs and to provide them one without cost. Under the recommendation, eligible voters can cast a provisional ballot that will be counted if they present their photo ID within 48 hours. Far from discriminatory, a mandatory voter ID provides means by which more Americans may obtain the identification already required for daily functions -- such as cashing a check, entering a federal building, or boarding an airplane.

We present this recommendation on a nationwide basis so that states can avoid some of the problems previously highlighted.

## 3.1 VOTING MACHINES

*Ralph Munro*

I have given the majority of my career to the fair and impartial oversight and conduct of elections, serving 20 years as an elected Secretary of State. It has been an honor to serve on the Carter-Baker Commission and I believe this report is timely, accurate and will provide our country with new ideas to continually reform and improve our elections.

My only exceptions to this report are found in Section 3.1 and Section 4.2. Numerous countries are moving ahead of America in the field of election technology. On voting machines and electronic voting devices, limiting voter verified audit trails only to paper is a mistake. New technology has far greater potential than paper in this arena.

## 4.2 VOTE BY MAIL

*Ralph Munro*

It is my strong belief that the expansion of voting by mail, under strict guidelines to prevent fraud, will ensure that our voting participation will increase dramatically, especially in local and off-year elections.

## 4.6  RE-ENFRANCHISEMENT OF EX-FELONS

*Nelson Lund*

I support the Commission's major recommendations, especially those dealing with improved registration systems and the prevention of election fraud. I have reservations about several other proposals, among which the following require specific comment: Recommendations 4.6.1 and 4.6.2. Substantive decisions about criminal penalties are outside the scope of this Commission's mission, which deals with election administration. Uniformity should not be imposed on the states, some of which may have very sound policy reasons for denying the franchise to all felons or to a larger class of felons than this Commission prefers.

## 6.1  INSTITUTIONS

*Nelson Lund*

Recommendations 6.1.1, 6.1.2, and 6.1.4. The Commission mistakenly assumes that putatively nonpartisan election administration is necessarily preferable to other approaches. Moreover, the Commission's proposal to add to the EAC a fifth, putatively nonpartisan member (who would serve as the chair) is profoundly misguided. All the functions that the EAC has, or could sensibly be given, can be carried out under the current bipartisan, four-member structure. If the EAC were reconstituted in the way proposed by this Commission, it would naturally become a magnet for additional functions, and would probably come eventually to serve as a national election administrator, thus displacing the states from their proper role in our decentralized system of governance. I believe this would be a terrible mistake.

## 7.1  MEDIA ACCESS FOR CANDIDATES

*Nelson Lund*

Recommendation 7.1.3. This proposal calls for an inappropriate and constitutionally dubious interference with the freedom of the press.

## 9.1  PRESIDENTIAL PRIMARY SCHEDULE

*Shirley Malcom*

With regard to Recommendation 9.1.1, I agree on the need for regional presidential primaries, but I disagree that Iowa and New Hampshire should come first. At present the barriers to candidates unaffiliated with the major political parties gaining a place on the presidential ballot are substantial. Thus, the primary system is the major way for the American people to participate in the process of selecting candidates for president. But it gives disproportionate influence to those states that go first. One problem with Iowa is that the state decides by a caucus rather than a secret ballot, but the bigger problem with Iowa and New Hampshire is that these states have demographic profiles that make them very different from the rest of the country. Iowa and New Hampshire, according to the 2003 census, have populations that are around 94-95 percent White, while nationally Whites are 76 percent of the population. Hence, the debates are shaped in ways that do not necessarily reflect the interests of minority populations or of our diverse nation.

# About the Commission



**TOP ROW (L-R):** Ralph Munro, Kay Coles James, Raul Yzaguirre, Tom Phillips, Spencer Overton, Lee Hamilton, Sharon Priest, Rita DiMartino, Robert Mosbacher, and Jack Nelson
**BOTTOM ROW (L-R):** Betty Castor, Shirley Malcom, Bob Michel, Robert Pastor, Jimmy Carter, James A. Baker, III, Benjamin Ladner, Tom Daschle, Susan Molinari, and David Leebron

## Commission Members

### CO-CHAIRS:



**FORMER PRESIDENT JIMMY CARTER** served as the 39th President of the United States. Among his administration's accomplishments were the Panama Canal treaties, the Camp David Accords, and the SALT II treaty with the Soviet Union. He began his political career in the Georgia Senate and was elected governor of Georgia in 1970.

In 1982 after leaving the White House, he founded The Carter Center, which he dedicated to resolving conflict, fighting disease, strengthening democracy, and advancing human rights. He received the Nobel Peace Prize in 2002 for his efforts.



**FORMER SECRETARY OF STATE JAMES A. BAKER, III** has served in senior government positions in three presidential administrations. In 1989, President George H.W. Bush appointed him to serve as the nation's 61st Secretary of State. During his tenure at the U.S. Department of State, he traveled to 90 foreign countries as the U.S. confronted the challenges and opportunities of the post-Cold War era.

Mr. Baker led presidential campaigns for Presidents Ford, Reagan, and Bush over the course of five consecutive presidential elections from 1976 to 1992. He is presently a senior partner in the law firm of Baker Botts and serves as honorary chairman of the James A. Baker III Institute for Public Policy at Rice University.

## EXECUTIVE DIRECTOR:

 **ROBERT PASTOR** is Director of the Center for Democracy and Election Management, Professor of International Relations, and Vice President of International Affairs at American University. From 1985 until coming to AU in 2002, Dr. Pastor was Fellow and Founding Director of The Carter Center's Latin American Program and its Election Monitoring Initiatives. He served as President Carter's representative on the Carter-Ford Commission on Election Reform. He has taught at Harvard University, where he received his Ph.D. in Government, and is the author of 16 books.

## OTHER COMMISSION MEMBERS:

 **BETTY CASTOR** was the 2004 Democratic candidate for U.S. Senate in Florida. She has held prominent leadership positions in education, most recently as president and CEO of the National Board for Professional Teaching Standards in Arlington, Virginia. Before joining the National Board, Ms. Castor served as president of the University of South Florida and as Florida Commissioner of Education. She is the founder and president of a political action committee called Campaign for Florida's Future, dedicated to increasing citizen participation in public life.

 **TOM DASCHLE** served as a U.S. Senator from South Dakota for 18 years and held a number of Democratic leadership positions, including Senate Majority Leader and Senate Minority Leader. Before entering the Senate, Mr. Daschle served four terms in the U.S. House of Representatives and quickly became part of the Democratic leadership. His support for the Help America Vote Act of 2002 helped bring the landmark election reform law to passage in the U.S. Senate. In 2005, Senator Daschle joined the Legislative and Public Policy Group of the law firm Alston & Bird, LLP.

 **RITA DIMARTINO** is the former vice president of congressional relations for AT&T. As AT&T's in-house resource on Hispanic affairs, she provided guidance to senior management about this growing segment of the population and offered leadership on multicultural issues. In 2002, Ms. DiMartino was appointed principal U.S. delegate to the Inter-American Commission of Women and also principal representative to the Inter-American Children's Institute. Active at all levels of Republican politics, she was elected executive vice chair of the New York State Republican Committee in 1988.

 **LEE HAMILTON** is president and director of the Woodrow Wilson International Center for Scholars. Prior to becoming director of the Wilson Center in 1999, he represented Indiana's Ninth District in the U.S. House of Representatives for 34 years. During his tenure, Mr. Hamilton served as chairman and ranking member of the House Committee on Foreign Affairs, chairing the Subcommittee on Europe and the Middle East and the Permanent Select Committee on Intelligence. He is currently serving as co-chair of the National Commission on Terrorist Attacks in the U.S.

 **KAY COLES JAMES** was director of the U.S. Office of Personnel Management from 2001 to 2005. She was a senior fellow and director of The Citizenship Project at the Heritage Foundation, leading efforts to restore a strong ethic of citizenship and civic responsibility nationwide. Ms. James is also the former dean of the school of government at Regent University and has served under President George H. W. Bush as associate director of the White House Office of National Drug Control Policy and as assistant secretary for public affairs at the Department of Health and Human Services.

 **BENJAMIN LADNER** has been President and Professor of Philosophy and Religion at American University since 1994. He chairs the Board of Trustees of the Consortium of Universities of the Washington Metropolitan Area, comprised of fourteen colleges and universities, with 130,000 students. Before coming to American University, Dr. Ladner was president of the National Faculty, a national association of university professors founded by Phi Beta Kappa.

 **DAVID LEEBRON** is President of Rice University in Houston, Texas. He is the former dean of the Columbia University School of Law, where he worked from 1989 to 2004. From 1983 to 1989, he was a professor of law at New York University and director of NYU's International Legal Studies Program. He is a member of the American Bar Association's Standards Review Committee and the American Law Deans Association's Board of Directors. Mr. Leebron has taught and published in areas of corporate finance, international economic law, human rights, privacy, and torts.

 **NELSON LUND** is the Patrick Henry Professor of Constitutional Law and the Second Amendment at George Mason University in Virginia, where he teaches on topics that include federal election law. Mr. Lund served as a law clerk to the Honorable Patrick Higginbotham of the United States Court of Appeals for the Fifth Circuit and to the Honorable Sandra Day O'Connor of the United States Supreme Court. Following his clerkship with Justice O'Connor, Mr. Lund served in the White House as associate counsel to the president from 1989 to 1992.

 **SHIRLEY MALCOM** is head of the Directorate for Education and Human Resources Programs of the American Association for the Advancement of Science (AAAS). The Directorate includes AAAS programs in education, activities for underrepresented groups, and public understanding of science and technology. Dr. Malcom serves on several boards -- including the Howard Heinz Endowment and the H. John Heinz III Center for Science, Economics and the Environment -- and is an honorary trustee of the American Museum of Natural History. She is a trustee of the California Institute of Technology and a regent of Morgan State University.

 **BOB MICHEL** served as a member of the U.S. House of Representatives from Illinois from 1957 to 1993. During that time he held a number of leadership roles, including those of Minority Whip and Minority Leader. Mr. Michel was a delegate to the Republican National Convention from 1964-1992 and permanent chairman of the Republican National Conventions of 1984, 1988, and 1992. He served with the Thirty-Ninth Infantry Regiment as a combat infantryman in England, France, Belgium, and Germany from 1943 to 1946.

 **SUSAN MOLINARI** is the President and CEO of the Washington Group, a government relations and lobbying firm. She was a member of Congress from New York from 1990 to 1997. In 1994, she was elected to the Republican Majority Leadership, making her the highest-ranking woman in Congress. In 1996, she was selected by Robert Dole to be the Keynote Speaker at the Republican National Convention in San Diego, California. Prior to Congress, Molinari was twice elected to the New York City Council, where she was Minority Leader.

 **ROBERT MOSBACHER** is Chairman of Mosbacher Energy Company. He is the past chairman of the Republican National Committee and served as national finance chairman for the election campaigns of Presidents Ford and George H. W. Bush. Mr. Mosbacher served as Secretary of Commerce under President Bush from 1989 to 1992, and was awarded the Aztec Eagle Award from Mexico President Ernesto Zedillo for his role in developing the North American Free Trade Agreement (NAFTA). He is a trustee emeritus for the Aspen Institute for Humanistic Studies and past chairman of the Americas Society/Council on the Americas.

 **RALPH MUNRO** served as Washington Secretary of State from 1980 to 2001. His achievements include implementing a presidential primary allowing independent voters to participate in the nomination process; transitioning election equipment from lever machines to optical scan systems; designing a "Motor Voter" registration system; and supporting a program that allowed Desert Storm troops to vote in Washington elections via fax from the Persian Gulf. Mr. Munro currently serves on the Board of Directors of numerous technology companies, including Dategrity, a provider of secure Internet technology systems.

 **JACK NELSON** is a Pulitzer Prize-winning journalist and former Washington bureau chief for the Los Angeles Times. He covered the past six presidents and every presidential campaign from 1968 through 1996. Since retiring in December 2001, he has taught at the University of Southern California's School of Journalism. In 2002, Mr. Nelson was a Shorenstein Fellow at Harvard University's Kennedy School of Government. He was presented the Drew Pearson Award for Investigative Reporting and the Robert F. Kennedy Award for Lifetime Achievement in Journalism.

 **SPENCER OVERTON** is a professor at The George Washington University Law School who specializes in voting rights and campaign finance law. His academic articles on election law have appeared in several leading law journals, and his book "Stealing Democracy: The New Politics of Voter Suppression," will be published and released by W.W. Norton in June 2006. Professor Overton formerly taught at the University of California, Davis, and served as the Charles Hamilton Houston Fellow at Harvard Law School. He currently serves on the boards of Common Cause, the National Voting Rights Institute, and the Center for Responsive Politics.

App. 0351



**TOM PHILLIPS** is a partner in the law firm of Baker Botts LLP. From 1988 to 2004, he was Chief Justice of the Supreme Court of Texas, and was elected and re-elected four times. During his tenure, he served as president of the National Conference of Chief Justices (1997-98), a member of the Committee on Federal-State Relations of the Judicial Conference of the United States, and an advisor to the Federal Judicial Code Project of the American Law Institute.



**SHARON PRIEST** is the former Arkansas Secretary of State and the first woman to hold that position. Prior to her election to statewide office in 1994, she has served as mayor of Little Rock. She is also the former president of the National Association of Secretaries of State. Currently, Ms. Priest chairs the Arkansas State Election Improvement Study Commission, the State Board of Election Commissioners, and the Capitol Arts and Grounds Commission. She has also received the TIME/NASBE Award for Outstanding Leadership in Voter Education.



**RAUL YZAGUIRRE** is presidential professor of practice in community development and civil rights at Arizona State University. He has devoted his career to advocacy issues facing the Hispanic community. He is the founder of Interstate Research Associates, a Mexican-American research association and nonprofit consulting firm. From 1974 to 2004, Mr. Yzaguirre was president of the National Council of La Raza. In addition to his work with La Raza, he helped establish the National Hispanic Leadership Agenda and the New American Alliance, among other organizations.

## COMMISSION STAFF

**DANIEL CALINGAERT** is the Associate Director of the Center for Democracy and Election Management at American University and Associate Director of the Commission. He has served as Program Director for Asia and Deputy Director for Eastern Europe at the International Republican Institute, where he designed and managed a wide range of programs to promote democracy. Dr. Calingaert previously directed programs to reform social science education at universities across Eastern Europe and Eurasia.

**DOUG CHAPIN** is Director of electionline.org and Research Director for the Commission. He has worked on election issues for more than 15 years, with extensive experience that includes positions with the Federal Election Commission, the U.S. Senate Rules Committee, and Election Data Services, Inc. Before becoming electionline.org's first director, he worked at Skadden, Arps, Slate, Meagher & Flom LLP.

**KAY STIMSON** is the Associate Director of Media and Public Affairs to the Commission. She has served as Director of Communications at both the U.S. Election Assistance Commission and the National Association of Secretaries of State, where she served as the association's spokesperson and managed its voter outreach efforts. Prior to joining NASS, Ms. Stimson spent more than five years in the field of television journalism as a news anchor and political reporter.

**MARGARET MURRAY GORMLY** is the Administrative Coordinator for Dr. Robert A. Pastor, Executive Director of the Commission, and as such, she has handled the senior-level administrative affairs of the Commission. She serves as the manager of the Office of International Affairs and has provided senior-level administrative support for the Commission. Before joining the AU staff, she was the executive assistant to the CEO and COO of GW Solutions.

**MEEGAN MCVAY** is the Grants and Proposals Manager for the Commission. Since 2003, she has served as the primary fundraiser in the Office of International Affairs, working with the Center for North American Studies and the Center for Democracy and Election Management. Ms. McVay is a Certified Fund Raising Executive with more than eight years of development experience, including positions with the Brookings Institution and ACCION International.

**PAULINA PUIG** is the Web Master for the Commission, managing Web operations for the Office of International Affairs, Center for Democracy and Election Management, and Center for North American Studies. She is also responsible for the Web sites of the AU Abroad and Abroad at AU programs, as well as the ABTI-American University of Nigeria. Ms. Puig previously worked as a technology consultant for a government agency and was a senior Web developer for Discovery.com.



Back row, left to right: Leslie Wong, Kay Stimson, Paulina Puig, Jimmy Carter, James A. Baker, III, Daniel Calingaert, Doug Chapin, Benjamin Ladner, Vassia Gueorguieva, Katherine Kirlin, and Robert Pastor

Front row, left to right: Nicole Byrd, Kimberly Carusone, Meegan McVay, Murray Gormly, and Lisa Arakaki

**VASSIA GUEORGUIEVA** is a Ph.D. candidate in public administration at the AU School of Public Affairs and a Graduate Research Assistant for the Commission. She has worked for the Bulgarian Parliament and the Organization for Security and Cooperation in Europe.

**NICOLE BYRD** is a M.A. candidate in International Peace and Conflict Resolution/Foreign Policy at the AU School of International Service and a Graduate Research Assistant for the Commission. She is also vice-president of the Graduate Student Council.

**JOHN HENDERSON** is a Junior Fellow at the Center for Democracy and Election Management and a Graduate Research Assistant for the Commission. As a Rhodes Scholar, he completed a graduate degree in Comparative Politics at the University of Oxford.

**KIMBERLY CARUSONE** is a M.A. candidate in International Education at American University and the Assistant Web Master for the Commission. She previously worked in publishing and marketing and is a graduate of Pennsylvania State University.

**ZACHARY PFISTER** is a B.A. candidate in Conflict Studies at DePauw University in Indiana, where he is also the student body president. He was a Summer Research Assistant to the Commission.

## ORGANIZING AND SUPPORTING INSTITUTIONS

The Commission on Federal Election Reform is organized by American University's Center for Democracy and Election Management.



Robert Pastor, James A. Baker, III, and Jimmy Carter  (American University Photo/Jeff Watts)

The Center for Democracy and Election Management, established in September 2002, is dedicated to educating students and professionals about best practices in democracy and conducting public policy-oriented research on the management of elections. In addition, the Center seeks to serve as a venue for public policy discussion on these topics and to provide an institutional base for international scholars to study and teach about democratic processes. Dr. Robert A. Pastor serves as its Director. The Center is part of American University in Washington, DC.

**IN ASSOCIATION WITH THE FOLLOWING ORGANIZATIONS:**

Rice University's James A. Baker III Institute for Public Policy
The Carter Center

**SUPPORTED BY:**

Carnegie Corporation of New York
The Ford Foundation
John S. and James L. Knight Foundation
Omidyar Network

**RESEARCH BY:**

Electionline.org/The Pew Charitable Trusts

## CONTRIBUTORS TO THE COMMISSION'S WORK: HEARINGS

# Hearing: How Good Are U.S. Elections?

April 18, 2005
American University (Washington, DC)

### Panel I: Elections and HAVA: Current Status

Gracia Hillman, Chair, U.S. Election Assistance Commission

Chellie Pingree, President, Common Cause

Kay J. Maxwell, President, League of Women Voters of the U.S.

Henry Brady, Professor of Political Science and Public Policy,
University of California

### Panel II: Access and Integrity

Barbara Arnwine, Executive Director, Lawyers' Committee for Civil Rights Under Law

John Fund, Wall Street Journal Editorial Board

Colleen McAndrews, Partner, Bell, McAndrews & Hiltachk, LLP

Arturo Vargas, Executive Director, National Association of Latino
Elected and Appointed Officials

### Panel III: Voting Technology and Election Administration

Jim Dickson, Vice President for Governmental Affairs, American
Association of People with Disabilities

David Dill, Professor of Computer Science, Stanford University

Hon. Ron Thornburgh, Secretary of State, State of Kansas

Richard L. Hasen, Professor of Law, Loyola Law School



U.S. Election Assistance Commission Chair Gracia Hillman testifies at the April 18 hearing. Professor
Jamin Raskin is to her left, and Hon. John Anderson is to her right. (American University Photo/Jeff Watts)

# Hearing: How Can We Improve U.S. Elections?

June 30, 2005
Rice University (Houston, TX)

*Panel I: Voter Registration, Identification, and Participation*

Ken Smukler, President, InfoVoter Technologies

Michael Alvarez, Professor of Political Science, California Institute of Technology

Paula Hawthorn, Former Manager of Operating Systems Research,
Hewlett-Packard Laboratories

Robert Stein, Dean of Social Sciences and Professor of Political Science,
Rice University

*Panel II: Voting Technology*

Dan Wallach, Associate Professor of Computer Science, Rice University

Beverly Kaufman, Clerk, Harris County, Texas

Special thanks to Harris County, Texas, and the Nevada Secretary of State's Elections
Division for providing electronic voting machines that were demonstrated for the
Commission during this session.

*Panel III: Election Management and Election Reform*

Donald J. Simon, Partner, Sonosky, Chambers, Sachse, Endreson, & Perry, LLP

Louis Massicotte, Professor of Political Science, University of Montreal

Norman Ornstein, Resident Scholar, American Enterprise Institute



(L-R)Donald Simon, Louis Massicotte, and Norman Ornstein at the
June 30 hearing (Rice University Photo/Jeff Fitlow)

**MEETINGS AND PRESENTATIONS**

## Congressional Meeting

July 15, 2005
Woodrow Wilson International Center for Scholars
Washington, DC

Special thanks to the following Members of Congress for their comments and participation, including related committee staff participation: Rep. Robert Ney (R-OH), Rep. Steny Hoyer (D-MD), Rep. Juanita Millender-McDonald (D-CA), Rep. Rush Holt (D-NJ), and Rep. John Conyers (D-MI).

## Common Cause Meeting with Advocates for Election Reform

July 16, 2005
Common Cause Headquarters
Washington, DC

Special thanks to Ed Davis and Barbara Burt of Common Cause for organizing this meeting.

## National Association of State Election Directors

August 13, 2005
Beverly Hilton Hotel
Los Angeles, CA

# Academic Advisors

Throughout the course of its research and deliberations, the Commission benefitted greatly from the substantial contributions of academic advisors and other experts, as well as opinions shared by citizens around the country. While we wish to acknowledge the distinguished individuals who aided our work, this does not imply that they agree with all of the report's recommendations. Nonetheless, their work was invaluable and we want to express our gratitude.

ALAN ABRAMOWITZ
Professor of Political Science
Emory University

MICHAEL ALVAREZ
Professor of Political Science
California Institute of Technology

CURTIS GANS
Director of the Center for the Study
of the American Electorate
American University

MARK GLAZE
Director of Public Affairs
The Campaign Legal Center

PAUL GRONKE
Associate Professor of Political Science
Reed College

RICHARD HASEN
Professor of Law, Loyola Law School
and Editor of *Election Law Journal*

PAULA HAWTHORN
Former Manager of Operating Systems Research
Hewlett-Packard Laboratories

MARK F. HEARNE II
Partner
Lathrop and Gage LC

STEVEN HOCHMAN
Research Director
The Carter Center

ROBIN LEEDS
Scholar-in-Residence, Women & Politics Institute
American University

R. DOUG LEWIS
Executive Director
The Election Center

DAVID LUBLIN
Associate Professor of Government
American University

JENNIFER MCCOY
Director of the Americas Program
The Carter Center

KAREN O'CONNOR
Professor of Government and Director of the
Women & Politics Institute
American University

NORMAN ORNSTEIN
Resident Scholar
American Enterprise Institute

CAMERON QUINN
U.S. Elections Advisor
International Foundation for Election Systems

JAMIN RASKIN
Professor of Law
American University Washington College of Law

ROB RICHIE
Executive Director
Center for Voting and Democracy

JOHN SAMPLES
Director of the Center for Representative Government
CATO Institute

LEONARD SHAMBON
Counsel
Wilmer Cutler Pickering Hale and Dorr LLP

RICHARD G. SMOLKA
Professor Emeritus of Political Science
American University

ROBERT STEIN
Dean of Social Sciences and Professor of
Political Science
Rice University

JAMES THURBER
Director of the Center for Congressional and
Presidential Studies
American University

DAN WALLACH
Associate Professor of Computer Science
Rice University

TRACY WARREN
Director
Pollworker Institute

EXPERTS CONSULTED BY THE COMMISSION

KIMBALL W. BRACE
President
Election Data Services

CRAIG S. BURKHARDT
Chief Counsel for Technology
U.S. Department of Commerce

STEPHEN E. FIENBERG
Professor of Statistics and Social Science
Carnegie Mellon University

JONATHAN FRENKEL
Director for Law Enforcement Policy
U.S. Department of Homeland Security

JOHN MARK HANSEN
Dean of the Social Sciences Division
University of Chicago

PAUL HERRNSON
Director of the Center for American
Politics and Citizenship
University of Maryland

THERESE LAANELA
Senior Program Officer
International Institute for Democracy
and Electoral Assistance

HERBERT LIN
Senior Scientist
National Research Council

THOMAS MANN
Senior Fellow
Brookings Institution

ROBERT MONTJOY
Professor of Public Administration
University of New Orleans

M. GLENN NEWKIRK
Principal
InfoSENTRY Services

JACQUELINE PESCHARD
Professor
Universidad Nacional Autónoma de México

JOHN PETTY
Chairman
TecSec

AVIEL RUBIN
Professor of Computer Science
Johns Hopkins University

ROBERT SAAR
Executive Director
DuPage County Election Commission, Illinois

FRITZ SCHEUREN
President
American Statistical Association

ARI SCHWARTZ
Associate Director
Center for Democracy and Technology

MICHAEL D. SIEGEL
Principal Research Scientist at the Sloan
School of Management
Massachusetts Institute of Technology

HANS A. VON SPAKOVSKY
Counsel to the Assistant Attorney General
for Civil Rights
U.S. Department of Justice

JOHN THOMPSON
Executive Vice President of the National
Opinion Research Center
University of Chicago

DAN TOKAJI
Assistant Professor of Law at Moritz
College of Law
Ohio State University

WAI L. TSANG
Principal Engineer
TecSec

TOVA WANG
Democracy Fellow
The Century Foundation

HON. ANDREW YOUNG
Professor of Policy Studies
Georgia State University

## ADDITIONAL ACKNOWLEDGEMENTS

AMERICAN UNIVERSITY STAFF: Lisa Arakaki, Keith Costas, Marilee Csellar, Clark Gregor, Katherine Kirlin, Todd Sedmak, David Taylor, Leslie Wong, and Julie Weber.

CARTER CENTER STAFF: Nancy Koningsmark, Faye Perdue, Jane Quillen, and Lisa Wiley.

JAMES A. BAKER III INSTITUTE FOR PUBLIC POLICY STAFF: B.J. Almond, Charlotte Cheadle (Baker Botts), Maggie Cryer, Sonja Dimitrijevich, Kathryn Hamilton, Molly Hipp, and Ryan Kirksey.

 

CENTER FOR DEMOCRACY AND ELECTION MANAGEMENT
American University
4400 Massachusetts Avenue, NW
Washington, DC 20016-8026

TAB H

## 3PVRO Fines

**I.  Fine Letters (2023-2022)**

    **A.  2023**

        a.  Hard Knocks Strategies, LLC (Broward) – 4/10/2023

        b.  Hard Knocks Strategies, LLC (Palm Beach) – 4/10/2023

        c.  FSU Votes – 5/15/2023

        d.  Engage Miami Civic Fund – 5/15/2023

        e.  Tides Advocacy-Poder Latinx – 5/15/2023

        f.  Democracy for All/Florida Conservation Voters Education Fund – 5/15/2023

        g.  Clay County Democratic Executive Committee – 5/15/2023

        h.  Republican Party of Duval County – 5/15/2023

        i.  Donahoe Partners – 5/15/2023

        j.  Gulf State Strategies, LLC – 5/15/2023

        k.  FieldWorks – 5/15/2023

        l.  Faith in Florida, Inc. – 5/15/2023

        m. Engage Miami Civic Fund – 5/15/2023

        n.  Hispanic Federation – 5/17/2023

        o.  Mi Familia Vota – 5/17/2023

        p.  Tides Advocacy-Dream Defenders – 5/17/2023

        q.  Alianza Center, Inc. – 5/17/2023

        r.  UnidosUS – 5/17/2023

        s.  Judith Seide – 5/17/2023

        t.  Harriet Tubman Freedom Fighters – 5/17/2023

        u.  Polk County Voters League – 5/17/2023

        v.  Restoration of Truth Ministries, Inc. – 5/17/2023

        w. People Power of Florida – 5/17/2023

    **B.  2022**

        a.  Hard Knock Strategies, LLC – 9/29/2022

        b.  Hard Knock Strategies, LLC – 11/29/2022

**II.  Referral of Elections Fraud Complaint against Royal Shepherd**

**III.  Referral of Fraudulent Voter Registration Applications**

**IV.  Elections Fraud Complaint against Veronica Herrera**

**V.  Elections Fraud Complaint against Yanidsi Velez**

**VI.  Elections Fraud Complaint against Tiffany Hanley**

**VII.  Elections Fraud Complaint against "Unknown" 3PVRO**

**VIII.  Information against Roderica Renee Cody**

**IX.  Letter of Payment by Hard Knocks Strategies, LLC**



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

April 10, 2023

Hard Knocks Strategies, LLC.
Eric Brakken, Registered Agent
4121 NW 5th St. Suite 207
Plantation, FL 33317

Wahid Vizcaino Geller LLP
ATTN: Mr. David Geller
Counsel of Record for Hard Knocks Strategies, LLC
2103 Coral Way, Suite 401
Miami, FL 33145

Re: Violations of The Third-Party Voter Registration Statute- Fl. Stat. §97.0575 (2022)

Dear Mr. Brakken and Mr. Geller:

The Department of State ("Department") has received information from the Broward County Supervisor of Elections indicating that Hard Knocks Strategies, LLC, which is registered as a third-party voter registration organization under ID number 3P-19-53, has violated Florida law.

This is the fourth of four total letters the Department has issued you in less than one year. Your wanton disregard for the rules and regulations must cease immediately. In the two letters last year, dated September 29, 2022, and November 29, 2022, you were fined a total of $33,400.00. That number could have been as high as $191,500.00 but for a statutory cap of fines. Your actions addressed in those two letters negatively affected approximately 2,779 voter applicants and/or registrants.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days, but not after book closing, or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla.

Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500, or $1000 for a willful violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  In 2021, fines were capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat. (2021).  Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year.  See Chapter 2022-73, Laws of Florida.

As discussed further below, records received from your organization indicate that on July 14, 2022, the Broward County Supervisor of Elections received **20** voter registration applications that were not delivered timely to the Division of Elections or to the supervisor of elections in the county in which the applicant resides in violation of Florida Law. (See attachments).

For the purposes of this letter, records received from your organization indicate that those 20 voter registration applications were delivered to the Broward County Supervisor of Elections more than 14 days after the applicant delivered the completed voter registration application to your organization, in violation of § 97.0575(3)(a)1., Fla. Stat. The statutory fine for each violation of this section is $50.  § 97.0575(3)(a)1., Fla. Stat. Therefore, for 2022, the Department is imposing the fine of **$1,000.00** pursuant to section 97.0575(3)(a)1., Florida Statutes.

Because delivery of these voter registration applications occurred after the law changed on April 25, 2022, increasing the fine cap from $1,000 to $50,000, the Department is imposing a total fine of **$1,000.00** pursuant to section 97.0575(3)(a)1., Florida Statutes. *See* Chapter 2022-73, Laws of Florida (increasing maximum fine from $1,000 to $50,000 in the aggregate per calendar year). This now brings your total fine amount for calendar year 2022 to $45,600.00. But for the statutory cap, your organization would have faced a total of $203,700.00.  To date, your actions have caused harm to 2,911 voter registrants and/or applicants.

You may either remit payment of this **$1,000** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance").  The check should be made out to the Florida Department of State and should reference this letter in the notes section. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.  Payment should be mailed to:

Florida Department of State
Office of Election Crimes and Security
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399


Sincerely,

*/Andrew Darlington/*

Andrew Darlington,
Director
Office of Election Crimes and Security


cc:
Joe Scott, Supervisor of Elections, Broward County, w/ Enclosures
Brad McVay, Florida Deputy Secretary of State
Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT of STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

April 10, 2023

Hard Knocks Strategies, LLC.
Eric Brakken, Registered Agent
4121 NW 5th St. Suite 207
Plantation, FL 33317

Wahid Vizcaino Geller LLP
ATTN: Mr. David Geller
Counsel of Record for Hard Knocks Strategies, LLC
2103 Coral Way, Suite 401
Miami, FL 33145

Re:  Violations of The Third-Party Voter Registration Statute- Fl. Stat. §97.0575 (2022)

Dear Mr. Brakken:

The Department of State ("Department") has received information from the Palm Beach County Supervisor of Elections indicating that Hard Knocks Strategies, LLC, which is registered as a third-party voter registration organization under ID number 3P-19-53, has violated Florida law.

This is the third of four total letters the Department has issued you in less than one year. Your wanton disregard for the rules and regulations must cease immediately.  In the two letters last year, dated September 29, 2022, and November 29, 2022, you were fined a total of $33,400.00. That number could have been as high as $191,500.00 but for a statutory cap of fines.  Your actions addressed in those two letters negatively affected approximately 2,779 voter applicants and/or registrants.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days, but not after book closing, or be liable for a fine.  *See* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing,

the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500, or $1000 for a willful violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  In 2021, fines were capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat. (2021).  Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

As discussed further below, records received from your organization indicate that on July 14, 2022, the Palm Beach County Supervisor of Elections received **112** voter registration applications that were collected before book closing but delivered after book closing to the supervisor of elections in the county in which the applicant resides in violation of Florida Law. (See attached CD).

For the purposes of this letter, records received from your organization indicate that those 112 voter registration applications were collected by you organization between July 22, 2022, and July 23, 2022, and were delivered to the Palm Beach County Supervisor of Elections on August 2, 2022, in violation of § 97.0575(3)(a)2., Fla. Stat.  The statutory fine for each violation of this section is $100. § 97.0575(3)(a)2., Fla. Stat. Therefore, for the above mentioned violations, the Department is imposing a fine of **$11,200.00** pursuant to section 97.0575(3)(a)2., Florida Statutes. This brings the total fines assessed to your organization $44,600.00 for calendar year 2022.

Because delivery of these voter registration applications occurred after the law changed on April 25, 2022, increasing the fine cap from $1,000 to $50,000, the Department is imposing a total fine of **$11,200.00** pursuant to section 97.0575(3)(a)2., Florida Statutes.  *See* Chapter 2022-73, Laws of Florida (increasing maximum fine from $1,000 to $50,000 in the aggregate per calendar year).

Finally, you are reminded that voter registrations must be *complete* in accordance with Florida law.  A voter registration application is complete *only* if the registrant writes their Florida driver's license or ID number, last four of their social security number, or check the affirmation box that they have neither, among other statutory requirements.  § 97.053(5)(a)(5).  Your organization submitted several voter registration applications to Palm Beach County that were incomplete and contained no information in line "5" of the Florida voter registration application. This is unacceptable.

You may either remit payment of this **$11,200** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why

a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. The check should also reference in the notes section that it is in response to this letter. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of Elections Crimes and Security
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Sincerely,

*/Andrew Darlington/*

Andrew Darlington
Director
Office of Election Crimes and Security

cc:
Wendy Link, Supervisor of Elections, Palm Beach County, w/ Enclosures
Brad McVay, Florida Deputy Secretary of State
Joseph Van de Bogart, General Counsel, Florida Department of State



**FLORIDA DEPARTMENT *of* STATE**

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

FSU Votes
c/o Eric Jones
100 South Woodward Ave.
Tallahassee, Florida 32306

Re:  Violations of Third-Party Voter Registration Law

Dear Mr. Jones:

The Florida Department of State has received information from the Palm Beach County Supervisor of Elections indicating that FSU Votes, which is registered as a third-party voter registration organization under ID number 3P21-40, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0369

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **1** voter registration application was collected prior to book closing, but delivered to the Palm Beach County Supervisor of Elections after book closing, in violation of section 97.0575(3)(a)2. The statutory fine for each violation of this section is $100. § 97.0575(3)(a)2., Fla. Stat. Accordingly, your violation would amount to a **$100.00** fine.

In addition to the violation outlined in the previous paragraph, the Department also notes that the application was not submitted in accordance with applicable regulations in that the third-party voter registration ID number and date of collection was not included on the back of the application.   It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). In the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date. However, the application your organization submitted did not include the applicant's signature date.

You may either remit payment of this **$100.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance").  The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.  Payment should be mailed to:

Florida Department of State
Office of the General Counsel
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0370

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Palm Beach County Supervisor of Elections (w/o enclosures)
    Brad McVay, Deputy Secretary of State
    Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Engage Miami Civic Fund
c/o Rebecca Pelham
7000 NW 2nd Ave., Unit 7060
Miami, Florida 33150

   Re: Violations of Third-Party Voter Registration Law

Dear Ms. Pelham:

  The Florida Department of State has received information from the Polk, Hillsborough, and Miami-Dade County Supervisors of Elections indicating that Engage Miami Civic Fund, which is registered as a third-party voter registration organization under ID number 3P16-274, has violated Florida law.

  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat. For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

  Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C. The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat. Otherwise, it is the

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0372

date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **1** voter registration application was delivered to the Polk County Supervisor of Elections more than fourteen days after it was collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violation would amount to a **$50.00** fine.

In addition to the violations outlined in the previous paragraphs, the Department also notes that 3 applications were not submitted in accordance with applicable regulations in that the third-party voter registration ID number was not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry").

You may either remit payment of this **$50.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

Florida Department of State
Office of the General Counsel
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:   Polk County Supervisor of Elections (w/o enclosures)
      Hillsborough County Supervisor of Elections (w/o enclosures)
      Miami-Dade County Supervisor of Elections (w/o enclosures)
      Brad McVay, Deputy Secretary of State
      Joseph Van de Bogart, General Counsel, Florida Department of State

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0374



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Tides Advocacy-Poder Latinx
c/o Nancy Batista
5449 South Semoran Blvd, Suite 232
Orlando, Florida 32822

Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Batista:

The Florida Department of State has received information from the Polk County Supervisor of Elections indicating that Tides Advocacy-Poder Latinx, which is registered as a third-party voter registration organization under ID number 3P19-96, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **52** voter registration applications were delivered to the Polk County Supervisor of Elections instead of the Division of Elections or the supervisor's office where the voter resides, in violation of section 97.0575(3)(a)3. The statutory fine for each violation of this section is $500. § 97.0575(3)(a)3., Fla. Stat. Accordingly, your violations would amount to a **$26,000.00** fine.

In addition to the violation outlined in the previous paragraph, the Department also notes that many of the applications were not submitted in accordance with applicable regulations in that the date of collection was not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom of the reverse side of the voter registration application in a manner that does not obscure any other entry"). In the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date.

You may either remit payment of this **$26,000.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Polk County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Democracy for All/Florida
Conservation Voters Education Fund
c/o Aliki Moncrief
1700 N. Monroe Street
Tallahassee, Florida 32303

   Re:  Violations of Third-Party Voter Registration Law

Dear Mr. Moncrief:

  The Florida Department of State has received information from the Broward County Supervisor of Elections indicating that Democracy for All/Florida Conservation Voters Education Fund, which is registered as a third-party voter registration organization under ID number 3P21-77, has violated Florida law.

  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine.  *See* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat.  For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

  Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application.  Rule 1S-2.042(4)(b), F.A.C.  In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0378

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from regarding your organization indicate that **2** voter registration applications were delivered to the Broward County Supervisor of Elections more than fourteen days after they were collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violations amount to a **$100.00 fine**.

You may either remit payment of this **$100.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Broward County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Clay County Democratic
Executive Committee
c/o Jacqueline Cetnar
P.O. Box 2367
Orange Park, Florida 32065

Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Cetnar:

The Florida Department of State has received information from the Clay County Supervisor of Elections indicating that Clay County Democratic Executive Committee, which is registered as a third-party voter registration organization under ID number 3P16-265, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0380

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **1** voter registration application was collected prior to book closing, but delivered to the Clay County Supervisor of Elections after book closing, in violation of section 97.0575(3)(a)2. The statutory fine for each violation of this section is $100. § 97.0575(3)(a)2., Fla. Stat. Accordingly, your violation amounts to a **$100.00** fine.

You may either remit payment of this **$100.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc: Clay County Supervisor of Elections (w/o enclosures)
    Brad McVay, Florida Deputy Secretary of State
    Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Republican Party of Duval County
c/o Jesse Christian
11250 Old St. Augustine Road, Ste. 15-328
Jacksonville, Florida 32257

      Re:  Violations of Third-Party Voter Registration Law

Dear Mr. Christian:

      The Florida Department of State has received information from the Duval County Supervisor of Elections indicating that the Republican Party of Duval County, which is registered as a third-party voter registration organization under ID number 3P17-62, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat. For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

      Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C. The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat. Otherwise, it is the date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate

Bill 524 was signed into law and became effective on April 25, 2022.  It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year.  See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **10** voter registration applications were collected prior to book closing, but delivered to the Duval County Supervisor of Elections after book closing, in violation of section 97.0575(3)(a)2.  The statutory fine for each violation of this section is $100.  § 97.0575(3)(a)2., Fla. Stat.  Accordingly, your violations would amount to a **$1,000.00** fine.

You may either remit payment of this **$1,000.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed.  *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance").  The check should be made out to the Florida Department of State.  If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement.  *See* § 97.0575(4), Fla. Stat.  Payment should be mailed to:

Florida Department of State
Office of the General Counsel
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Duval County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Donahoe Partners
c/o Mark Herron
2618 Centennial Place
Tallahassee, Florida 32308

   Re:  Violations of Third-Party Voter Registration Law

Dear Mr. Herron:

   The Florida Department of State has received information from the Duval and Polk County Supervisors of Elections indicating that Donahoe Partners, which is registered as a third-party voter registration organization under ID number 3P19-154, has violated Florida law.

   Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

   Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.*  In 2021, fines were capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat. (2021).  Senate

Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

Records received from your organization indicate that **1** voter registration application was delivered to the Duval County Supervisor of Elections more than fourteen days after it was collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violation amounts to a $50.00 fine.

Additionally, records received from your organization indicate that **1** voter registration application was delivered to the Polk County Supervisor of Elections instead of the Division of Elections or the supervisor's office where the voter resides, in violation of § 97.0575(3)(a)3., Fla. Stat. The statutory fine for each violation of this section is $500. § 97.0575(3)(a)3., Fla. Stat. Accordingly, your violation would amount to a $500.00 fine. Therefore, the Department is imposing a total fine of **$550.00** for the above referenced violations.

You may either remit payment of this **$550.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Duval County Supervisor of Elections (w/o enclosures)
     Polk County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



**FLORIDA DEPARTMENT *of* STATE**

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Gulf State Strategies, LLC
c/o Blaze Drinkwine
32631 Tulsa Lane
San Antonio, Florida 33576

Re:  Violations of Third-Party Voter Registration Law

Dear Mr. Drinkwine:

The Florida Department of State has received information from the Hillsborough County Supervisor of Elections indicating that Gulf State Strategies, LLC, which is registered as a third-party voter registration organization under ID number 3P21-32, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  In 2021, fines were capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat. (2021).  Senate

Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

Records received from your organization indicate that **2** voter registration applications were delivered to the Hillsborough County Supervisor of Elections more than fourteen days after they were collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violations amount to a **$100.00 fine.**

You may either remit payment of this **$100.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Hillsborough County Supervisor of Elections (w/o enclosures)
    Brad McVay, Deputy Secretary of State
    Joseph Van de Bogart, General Counsel, Florida Department of State



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

FieldWorks
c/o Dawn Waggoner
1151 N. Pine Avenue
Oviedo, Florida 32765

Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Waggoner:

The Florida Department of State has received information from the Division of Elections indicating that FieldWorks, which is registered as a third-party voter registration organization under ID number 3P12-266, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0388

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

Records received from the Division of Elections indicate that **8** voter registration applications were delivered to the Division more than fourteen days after they were collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violations amount to a **$400.00** fine.

In addition to the violations outlined in the previous paragraph, the Department also notes that many of the applications were not submitted in accordance with applicable regulations in that the third-party voter registration ID number and/or date of collection were not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). In the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date.

You may either remit payment of this **$400.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

Florida Department of State
Office of the General Counsel
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Division of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0390



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Faith in Florida, Inc.
c/o Wesley Lathrop
406 East Amelia St.
Orlando, Florida 32803

   Re: Violations of Third-Party Voter Registration Law

Dear Mr. Lathrop:

  The Florida Department of State has received information from the Hillsborough and Polk County Supervisors of Elections indicating that Faith in Florida, Inc., which is registered as a third-party voter registration organization under ID number 3P14-106, has violated Florida law.

  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat. For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

  Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C. The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat. Otherwise, it is the date printed by the organization on the back of the application. Rule 1S-2.042(4)(**b**), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0391

Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The Department notes that three applications submitted to the Hillsborough County Supervisor of Elections and seven applications submitted to the Polk County Supervisor of Elections were not submitted in accordance with applicable regulations in that the date of collection was not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. See Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). In the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date. Additionally, there are several applications undated by the registrant and not date marked by the organization as required on the back of the applications. While it is unclear whether these applications were submitted timely, they are not being included in the total of untimely applications, but rather being noted as noncompliant with the aforementioned rules. This letter serves as a reminder to please ensure that your organization follows the applicable third-party voter registration regulations in future collection efforts.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Hillsborough County Supervisor of Elections (w/o enclosures)
      Polk County Supervisor of Elections (w/o enclosures)
      Brad McVay, Deputy Secretary of State
      Joseph Van de Bogart, General Counsel, Florida Department of State



**FLORIDA DEPARTMENT *of* STATE**

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 15, 2023

Via Certified Mail

Engage Miami Civic Fund
c/o Rebecca Pelham
7000 NW 2nd Ave., Unit 7060
Miami, Florida 33150

Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Pelham:

The Florida Department of State has received information from the Polk, Hillsborough, and Miami-Dade County Supervisors of Elections indicating that Engage Miami Civic Fund, which is registered as a third-party voter registration organization under ID number 3P16-274, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0393

date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  In 2021, fines were capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat. (2021).  Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year.  See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **1** voter registration application was delivered to the Polk County Supervisor of Elections more than fourteen days after it was collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violation would amount to a **$50.00** fine.

In addition to the violations outlined in the previous paragraphs, the Department also notes that 3 applications were not submitted in accordance with applicable regulations in that the third-party voter registration ID number was not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry").

You may either remit payment of this **$50.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Polk County Supervisor of Elections (w/o enclosures)
     Hillsborough County Supervisor of Elections (w/o enclosures)
     Miami-Dade County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

Hispanic Federation
c/o Laudi Campo
3450 Bridgehampton Road
Orlando, Florida 32812

       Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Campo:

       The Florida Department of State has received information from the Polk and Miami-Dade County Supervisors of Elections indicating that Hispanic Federation, which is registered as a third-party voter registration organization under ID number 3P17-58, has violated Florida law.

       Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

       Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0396

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **15** voter registration application were delivered to the Polk County Supervisor of Elections instead of the Division of Elections or the supervisor's office where the voter resides, in violation of section 97.0575(3)(a)3. The statutory fine for each violation of this section is $500. § 97.0575(3)(a)3., Fla. Stat. Accordingly, your violations would amount to a **$7,500.00** fine.

In addition to the violations outlined in the previous paragraphs, the Department also notes that many of the applications were not submitted in accordance with applicable regulations in that the third-party voter registration ID number and/or the date of collection were not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry").

You may either remit payment of this **$7,500.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Polk County Supervisor of Elections (w/o enclosures)
     Miami-Dade Supervisory of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

Mi Familia Vota
c/o Soraya Marquez
5850 T G Lee Blvd, Ste 330
Orlando, Florida 32822

   Re: Violations of Third-Party Voter Registration Law

Dear Ms. Marquez:

   The Florida Department of State has received information from the Polk and Hillsborough County Supervisors of Elections indicating that Mi Familia Vota, which is registered as a third-party voter registration organization under ID number 3P19-142, has violated Florida law.

   Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat. For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

   Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C. The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat. Otherwise, it is the date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate

Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **13** voter registration applications were delivered to the Polk County Supervisor of Elections instead of the Division of Elections or the supervisor's office where the voter resides, in violation of section 97.0575(3)(a)3. The statutory fine for each violation of this section is $500. § 97.0575(3)(a)3., Fla. Stat. Your collection and delivery of 2 of these voter registration applications occurred before SB524 was signed into law on April 25, 2022, therefore the Department may only fine you a maximum of $1,000.00 for these 2 violations of section 97.0575(3) occurring before the statutory increase. See Chapter 2022-73, Laws of Florida. However, 11 of these voter applications were received by the Polk County Supervisor of Elections after the passage of SB 524, therefore the Department issues an additional fine of $5,500.00, resulting in a total fine of **$6,500.00**.

In addition to the violations outlined in the previous paragraphs, the Department also notes that the Hillsborough County Supervisor of Elections received 2 applications that were not submitted in accordance with applicable regulations in that the date of collection was not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. See Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). In the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date. However, the two applications your organization submitted did not include an applicant's signature date, therefore it is unclear whether they were submitted in a timely manner. Though they are not being included as untimely applications, they are being noted as noncompliant with the aforementioned Rules.

You may either remit payment of this **$6,500.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. See, e.g., § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. See § 97.0575(4), Fla. Stat. Payment should be mailed to:

Florida Department of State
Office of the General Counsel
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Polk County Supervisor of Elections (w/o enclosures)
     Hillsborough County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0401



**FLORIDA DEPARTMENT *of* STATE**

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

Tides Advocacy-Dream Defenders
c/o Jonel Edwards
6161 NW 9th Ave.
Miami, Florida 33127

      Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Edwards:

      The Florida Department of State has received information from the Broward, Flagler, and Hillsborough Supervisors of Elections indicating that Tides Advocacy-Dream Defenders, which is registered as a third-party voter registration organization under ID number 3P19-124, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

      Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0402

date printed by the organization on the back of the application.   Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.*  In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021).  Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year.  See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **1** voter registration application was collected prior to book closing, but delivered to the Broward County Supervisor of Elections after book closing, in violation of section 97.0575(3)(a)2.  The statutory fine for each violation of this section is $100. § 97.0575(3)(a)2., Fla. Stat. Accordingly, your violation would amount to a **$100.00** fine.

Additionally, records received from your organization indicate that **1** voter registration application was delivered to the Flagler County Supervisor of Elections more than fourteen days after it was collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violation would amount to a **$50.00** fine.

Finally, records received from your organization indicate that **3** voter registration applications were delivered to the Hillsborough County Supervisor of Elections more than fourteen days after they were collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violations would amount to a **$150.00** fine. Therefore, the Department imposes a total fine of **$300.00** for the above referenced violations.

In addition to the violations outlined in the previous paragraphs, the Department also notes that many of the applications were not submitted in accordance with applicable regulations in that the date of collection was not included on the back of the applications.   It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). In the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date.

You may either remit payment of this **$300.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance").  The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.  Payment should be mailed to:

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0403

Florida Department of State
Office of the General Counsel
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Broward County Supervisor of Elections (w/o enclosures)
     Flagler County Supervisor of Elections (w/o enclosures)
     Hillsborough County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



**FLORIDA DEPARTMENT of STATE**

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

Alianza Center, Inc.
c/o Johanna Lopez
9869 Bennington Dr.
Orlando, Florida 32839

     Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Lopez:

     The Florida Department of State has received information from the Hillsborough, Palm Beach, and Polk County Supervisors of Elections indicating that Alianza Center, Inc., which is registered as a third-party voter registration organization under ID number 3P21-53, has violated Florida law.

     Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat.  For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

     Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C.  In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0405

date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **3** voter registration applications were delivered to the Hillsborough County Supervisor of Elections more than fourteen days after they were collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violations would amount to a **$150.00 fine.**

Additionally, records received from your organization indicate that **2** voter registration applications were collected prior to book closing, but delivered to the Palm Beach County Supervisor of Elections after book closing, in violation of section 97.0575(3)(a)(2). The statutory fine for each violation of this section is $100. § 97.0575(3)(a)2., Fla. Stat. Accordingly, your violations would amount to a **$200.00 fine.**

Finally, records received from your organization indicate that **8** voter registration applications were delivered to the Polk County Supervisor of Elections instead of the Division of Elections or the supervisor's office where the voter resides, in violation of § 97.0575(3)(a)3., Fla. Stat. The statutory fine for each violation of this section is $500. § 97.0575(3)(a)3., Fla. Stat. Accordingly, your violations would amount to a **$4,000.00** fine. Therefore, the Department imposes a total fine of **$4,350.00** for the above referenced violations.

In addition to the violations outlined in the previous paragraphs, the Department also notes that several applications were not submitted in accordance with applicable regulations in that the date of collection was not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry").

You may either remit payment of this **$4,350.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0406

Florida Department of State
Office of the General Counsel
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc: Hillsborough County Supervisor of Elections (w/o enclosures)
    Palm Beach County Supervisor of Elections (w/o enclosures)
    Polk County Supervisor of Elections (w/o enclosures)
    Brad McVay, Deputy Secretary of State
    Joseph Van de Bogart, General Counsel, Florida Department of State



**FLORIDA DEPARTMENT *of* STATE**

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

UnidosUS
c/o Jared Nordlund
748 River Grass Lane
Winter Garden, Florida 34787

      Re:  Violations of Third-Party Voter Registration Law

Dear Mr. Nordlund:

      The Florida Department of State has received information from the Polk and Hillsborough County Supervisors of Elections indicating that UnidosUS, which is registered as a third-party voter registration organization under ID number 3P18-41, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

      Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **2** voter registration applications were delivered to the Polk County Supervisor of Elections instead of the Division of Elections or the supervisor's office where the voter resides, in violation of section 97.0575(3)(a)3. The statutory fine for each violation of this section is $500. § 97.0575(3)(a)3., Fla. Stat. Accordingly, your violations would amount to a **$1,000.00** fine.

In addition to the violation outlined in the previous paragraph, the Department also notes that one application was not submitted in accordance with applicable regulations in that the third-party voter registration ID number was not included on the back of the application.   It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry").

You may either remit payment of this **$1,000.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Polk County Supervisor of Elections (w/o enclosures)
     Hillsborough County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0410



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

Judith Seide
c/o Judith Seide
14109 Wellington Trace
Wellington, Florida 33414

Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Seide:

The Florida Department of State has received information from the Palm Beach County Supervisor of Elections indicating that Judith Seide, which is registered as a third-party voter registration organization under ID number 3P12-164, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **10** voter registration applications were collected prior to book closing, but delivered to the Palm Beach County Supervisor of Elections after book closing, in violation of section 97.0575(3)(a)2. The statutory fine for each violation of this section is $100. § 97.0575(3)(a)2., Fla. Stat. Accordingly, your violations would amount to a **$1,000.00** fine.

You may either remit payment of this **$1,000.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Palm Beach County Supervisor of Elections (w/o enclosures)
　　Brad McVay, Deputy Secretary of State
　　Joseph Van de Bogart, General Counsel, Florida Department of State



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

Harriet Tubman Freedom Fighters
c/o Rosemary McCoy
1418 Manotak Point Drive, Unit 105
Jacksonville, Florida 32210

      Re:  Violations of Third-Party Voter Registration Law

Dear Ms. McCoy:

      The Florida Department of State has received information from the Duval County Supervisor of Elections indicating that Harriet Tubman Freedom Fighters, which is registered as a third-party voter registration organization under ID number 3P21-31, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat. For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

      Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C. The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat. Otherwise, it is the date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0413

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **12** voter registration applications were delivered to the Duval County Supervisor of Elections more than fourteen days after they were collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violations would amount to a **$600.00** fine.

In addition to the violations outlined in the previous paragraphs, the Department also notes that some of the applications were not submitted in accordance with applicable regulations in that the date of collection were not included on the back of the application. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). As noted above, in the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date. However, a number of the applications your organization submitted also did not include an applicant's signature date.

You may either remit payment of this **$600.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0414

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:   Duval County Supervisor of Elections (w/o enclosures)
      Brad McVay, Deputy Secretary of State
      Joseph Van de Bogart, General Counsel, Florida Department of State



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

Polk County Voters League
c/o Randolph H. Barnes
906 Hammock Shade Drive
Lakeland, Florida 33809

Re:  Violations of Third-Party Voter Registration Law

Dear Mr. Barnes:

The Florida Department of State has received information from the Polk County Supervisor of Elections indicating that Polk County Voters League, which is registered as a third-party voter registration organization under ID number 3P20-123, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat. For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C. The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0416

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **1** voter registration application was delivered to the Polk County Supervisor of Elections instead of the Division of Elections or the supervisor's office where the voter resides, in violation of section 97.0575(3)(a)3. The statutory fine for each violation of this section is $500. § 97.0575(3)(a)3., Fla. Stat. Accordingly, your violation would amount to a **$500.00** fine.

In addition to the violation outlined in the previous paragraph, the Department also notes that many of the applications were not submitted in accordance with applicable regulations in that the date of collection were not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). As noted above, in the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date.

You may either remit payment of this **$500.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

Florida Department of State
Office of the General Counsel
Attn: Stephanie Buse
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Polk County Supervisor of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

Restoration of Truth Ministries, Inc
c/o Regina L. Jackson
P.O. Box 7924
Jacksonville, Florida 32238-7924

      Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Jackson:

      The Florida Department of State has received information from the Duval County Supervisor of Elections indicating that Restoration of Truth Ministries, Inc, which is registered as a third-party voter registration organization under ID number 3P20-149, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

      Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.

Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **1** voter registration application was delivered to the Duval County Supervisor of Elections more than fourteen days after it was collected, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violation would amount to a **$50.00** fine.

In addition to the violation outlined in the previous paragraphs, the Department also notes that the application was not submitted in accordance with applicable regulations in that the third-party voter registration ID number was not included on the back of the application. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry").

You may either remit payment of this **$50.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:   Duval County Supervisor of Elections (w/o enclosures)
      Brad McVay, Deputy Secretary of State
      Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

May 17, 2023

Via Certified Mail

People Power of Florida
c/o Shelby Green
1842 Ashley Hall Way
Tallahassee, Florida 32308

      Re:  Violations of Third-Party Voter Registration Law

Dear Ms. Green:

      The Florida Department of State has received information from the Division of Elections indicating that People Power of Florida, which is registered as a third-party voter registration organization under ID number 3P21-5, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat. For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500 per violation. § 97.0575(3)(a)3., Fla. Stat.

      Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)**(b)**, F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate

Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

The records received from your organization indicate that **3** voter registration applications were delivered to the Division of Elections more than fourteen days after they were collected in 2021, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violations amount to a **$150.00** fine.

Additionally, the records received from your organization indicate that **12** voter registration applications were delivered to the Division of Elections more than fourteen days after they were collected, between January 1, 2022, and April 25, 2022, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50, and the statutory cap is $1,000. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violations amount to a **$600.00** fine.

Furthermore, the records received from your organization indicate that **1** voter registration application was delivered to the Division of Elections more than fourteen days after it was collected, between June 1, 2022, and December 31, 2022, in violation of section 97.0575(3)(a)1. The statutory fine for each violation of this section is $50, and the statutory cap is $50,000. § 97.0575(3)(a)1., Fla. Stat. Accordingly, your violation amounts to a **$50.00** fine.

Finally, the records indicate that **11** voter registration applications were collected prior to book closing, but were not received by the Division of Elections until after book closing, between August 8, 2022 and August 30, 2022, in violation of section 97.0575(3)(a)2. The statutory fine for each violation of this section is $100. § 97.0575(3)(a)2., Fla. Stat. Accordingly, your violations amount to an additional **$1,100.00** fine.

Accordingly, the Departments finds that the total fine owed for violations of § 97.0575(3), in 2021 amounts to **$150.00**. The Department finds that the total fine owed for violations of § 97.0575(3), in 2022, is **$1,750.00**, resulting in a grand total of **$1,900.00** for the purposes of this letter.

In addition to the violations outlined in the previous paragraphs, the Department also notes that many of the applications were not submitted in accordance with applicable regulations in that the date of collection was not included on the back of the applications.  It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. See Rule 1S-2.042(4)(b), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). In the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date. However, a number of the applications your organization submitted did not include an applicant's signature date. As for the applications undated by the registrant and not date marked by the organization as required on the back of the applications, it is unclear whether they were submitted timely and therefore they are not being included in the total of untimely applications, but rather are being noted as noncompliant with the aforementioned Rules.

You may either remit payment of this **$1,900.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Office of the General Counsel
> Attn: Stephanie Buse
> 500 South Bronough Street, Suite 100
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Andrew Darlington, Director
Office of Election Crimes and Security

Enclosures

cc:  Division of Elections (w/o enclosures)
     Brad McVay, Deputy Secretary of State
     Joseph Van de Bogart, General Counsel, Florida Department of State



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

September 29, 2022

Hard Knocks Strategies, LLC.
Eric Brakken, Registered Agent
4121 NW 5th St. Suite 207
Plantation, FL 33317

Re:  Violations of The Third-Party Voter Registration Statute- Fl. Stat. §97.0575 (2021)

Dear Mr. Brakken:

The Department of State has received information from the Miami-Dade County Supervisor of Elections indicating that Hard Knocks Strategies, LLC, which is registered as a third-party voter registration organization under ID number 3P-19-53, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days or be liable for a fine. *See* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50. *See* § 97.0575(3)(a), Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the the supervisor of elections in the county in which the applicant resides, the fine is $500. § 97.0575(3)(a)3., Fla. Stat.

Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat. (2021).  Senate

**Office of Election Crimes & Security**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0425

Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. See Chapter 2022-73, Laws of Florida.

As discussed further below, records received from your organization indicate that between December 14, 2021 and January 19, 2022, the Miami-Dade Supervisor of Elections received **2,732** voter registration applications delivered more than fourteen days after they were collected, in violation of Florida Law.   (See enclosed CD)

For 2021, records received from your organization indicate that 1317 voter registration applications were delivered to the Miami-Dade Supervisor of Elections more than fourteen days after they were collected, in violation of § 97.0575(3)(a), Fla. Stat.  Therefore, for 2021, the Department is imposing the maximum possible fine of **$1,000.00** pursuant to section 97.0575(3), Florida Statutes.

Additionally, in 2021, records received from your organization indicated that 42 voter registration applications were not delivered to the Division of Elections or the county in which the applicant resides in violation of § 97.0575(3)a3., Fla. Stat.  The statutory fine for each violation of this section is $500.  Because your organization exceeded the statutory cap as outlined in the previous paragraph, the Department cannot impose any additional fine related to these 42 voter registrations.

For 2022, records received from your organization indicate that 1415 voter registration applications were delivered to the Miami-Dade Supervisor of Elections more than fourteen days after they were collected, in violation of § 97.0575(3)(a), Fla. Stat.  Because delivery of these voter registration applications occurred before the law changed on April 25, 2022, increasing the fine cap from $1,000 to $50,000, the Department is imposing a **$1,000.00** fine pursuant to section 97.0575(3), Florida Statutes. *See* Chapter 2022-73, Laws of Florida (increasing maximum fine from $1,000 to $50,000 in the aggregate per calendar year).

Additionally, in 2022, 3 voter registration applications were not delivered to the Division of Elections or the county in which the applicant resides in violation of § 97.0575(3)(a)3., Fla. Stat.  The statutory fine for each violation of this section is $500.

But for the statutory maximum fines per calendar year discussed above, the fines for all the violations would have been **$159,100**.  This is unacceptable.  Florida law makes your organization a fiduciary to the applicant.  The number of late applications show a complete disregard for the statutes and rules governing third-party registration organizations.

In addition to the violations outlined in the previous paragraphs, the Department also notes that many of the applications were not submitted in accordance with applicable regulations in that the third-party voter registration ID number and date of collection was not included on the back of the application.   It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the

voter registration application in a manner that does not obscure any other entry"). As noted above, in the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date.  Here again, a number of the applications your organization submitted did not include an applicant's signature date.  As for the applications undated by the registrant and not date marked by the organization as required on the back of the applications, it is unclear whether they were submitted timely and they not being included in the total of untimely applications, but rather are being noted as noncompliant with the aforementioned Rules.

You may either remit payment of this **$2,000** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed.  *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance").  The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.  Payment should be mailed to:

>Florida Department of State
>Division of Elections
>500 South Bronough Street, Suite 316
>Tallahassee, FL 32399

Sincerely,

Scott Strauss,
Interim Director
Office of Election Crimes and Security

cc:
Christina White, Supervisor of Elections, Miami-Dade, w/ Enclosures
Brad McVay, General Counsel, Florida Department of State



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

November 29, 2022

Hard Knocks Strategies, LLC.
Eric Brakken, Registered Agent
4121 NW 5th St. Suite 207
Plantation, FL 33317

Mr. David Geller
Counsel of Record for Hard Knocks Strategies, LLC
Wahid Vizcaino Geller LLP
2103 Coral Way, Suite 401
Miami, FL 33145

    Re:  Violations of The Third-Party Voter Registration Statute- Fl. Stat. §97.0575 (2022)

Dear Mr. Brakken and Mr. Geller:

    The Department of State has received information from the Leon County Supervisor of Elections indicating that Hard Knocks Strategies, LLC, which is registered as a third-party voter registration organization under ID number 3P-19-53, has violated Florida law.

    Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See*  § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or to the supervisor of elections in the county in which the applicant resides within fourteen days, but not after book closing, or be liable for a fine. *See* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50. § 97.0575(3)(a)1., Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.  For each application not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides, the fine is $500, or $1000 for a willful violation. § 97.0575(3)(a)3., Fla. Stat.

    Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the

organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* In 2021, fines were capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. (2021). Senate Bill 524 was signed into law and became effective on April 25, 2022. It increased the fine cap from $1,000 to $50,000 in the aggregate per calendar year. *See* Chapter 2022-73, Laws of Florida.

As discussed further below, records received from your organization indicate that on August 8, 2022, the Leon County Supervisor of Elections received 47 voter registration applications that were either: (1) collected before book closing and delivered after book closing; or (2) were not delivered to the Division of Elections or to the supervisor of elections in the county in which the applicant resides in violation of Florida Law.

The records received from your organization indicate that 22 voter registration applications were delivered to the Leon County Supervisor of Elections instead of the Division of Elections or the supervisor's office where the voter resides, in violation of § 97.0575(3)(a)3., Fla. Stat. The statutory fine for each violation of this section is $500. § 97.0575(3)(a)3., Fla. Stat. Therefore, for 2022, the Department is imposing the fine of **$11,000.00** pursuant to section 97.0575(3)(a)2.-3., Florida Statutes.

Additionally, the records received from your organization indicated that 4 voter registration applications were collected before book closing but delivered after book closing to the Leon County Supervisor of Elections in violation of section 97.0575(3)(a)2. The statutory fine for each violation of this section is $100. § 97.0575(3)(a)2., Fla. Stat. Therefore, the Department is imposing the fine of **$400.00** pursuant to section 97.0575(3)(a)2., Florida Statutes.

Finally, records received from your organization indicate that 21 voter registration applications were delivered to the Leon County Supervisor of Elections and each of those applications explicitly state that the individual registering to vote is a resident of **Texas**. Because the applications for all these individuals clearly and obviously show they are residents of another state, and thus ineligible to register or vote in Florida, the Division finds that you submitted these voter registration applications to the wrong entity **willfully** in violation of section 97.0575(3)(a)3. The statutory fine for each willful violation of this section is $1000. § 97.0575(3)(a)3., Fla. Stat. Therefore, for 2022, the Department is imposing the fine of **$21,000.00** pursuant to section 97.0575(3)(a)3., Florida Statutes.

Because delivery of these voter registration applications occurred *after* the law changed on April 25, 2022, increasing the fine cap from $1,000 to $50,000, the Department is imposing a total fine of **$32,400.00** pursuant to section 97.0575(3), Florida Statutes. *See* Chapter 2022-73, Laws of Florida (increasing maximum fine from $1,000 to $50,000 in the aggregate per calendar year). The records discussed above are attached to this letter as a composite exhibit.

In addition to the violations outlined in the previous paragraphs, the Department also notes that many of the applications were not submitted in accordance with applicable regulations in that the third-party voter registration ID number and date of collection was not included on the back of the application. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). As noted above, in the absence of the

date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date. Here again, a number of the applications your organization submitted did not include an applicant's signature date. As for the applications undated by the registrant and not date marked by the organization as required on the back of the applications, it is unclear whether they were submitted timely and they not being included in the total of untimely applications, but rather are being noted as noncompliant with the aforementioned Rules.

You may either remit payment of this **$32,400** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Division of Elections
> 500 South Bronough Street, Suite 316
> Tallahassee, FL 32399

Sincerely,

Bradley R. McVay, General Counsel
Florida Department of State

cc:
Mark Earley, Supervisor of Elections, Leon County, w/ Enclosures
Scott Strauss, Interim Director, Office of Election Crimes & Security

Enclosures



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

June 28, 2022

The Honorable Jack Campbell
State Attorney, 2nd Judicial Circuit
301 South Monroe Street, Suite #475
Tallahassee, Florida 32301

     *Re: Submission of Fraudulent Voter Registration Applications*

Dear State Attorney Campbell:

We are referring the enclosed Elections Fraud Complaint to you pursuant to section 97.012(15), Florida Statutes, which charges the Department of State with conducting preliminary investigations of elections fraud and reporting the findings to the appropriate state attorney's office.

The Leon County Supervisor of Elections office provided records (Composite Exhibit A) to the Department which reflect that fraudulent voter registration applications were collected and submitted by a third-party voter registration agent, Royal Shepherd, collecting on behalf of two third-party voter registration organizations: The Florida Democratic Party (3P 11-89) and Florida Rising Together (3P 21-9).

As described in the complaint, many of the over 1,400 Voter Registration Applications (VRA's) that Mr. Shepherd submitted to the Leon County Supervisor of Elections office this year were for fictitious people. Others were for existing voters, but the applications contained a significant amount of irregularities in signatures and personal information, leading the supervisor's office to believe many of the applications to be fraudulent.

Notably, the complaint indicates that Mr. Shepherd previously submitted VRAs with third-party voter registration organization 3P-65, New Florida Majority Education Fund (n/k/a Florida Rising Together (3P 21-9) after merging with Organize Florida Education Fund), which group was the subject of other Election Fraud Complaints submitted in 2019 and 2020. The supervisor's office prepared a chart in connection with the instant complaint summarizing the numerous issues with the suspected fraudulent VRA's. The chart reflects a significant overlap of the same voters who previously had forms submitted on their behalf by New Florida Majority Education Fund.

**Office of the General Counsel**
R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399
850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com

App. 0431

We understand your office to have declined warrants and/or prosecution of the earlier referral(s) from the supervisor's office regarding a large volume of fraudulent VRA's submitted by New Florida Majority Education Fund. Please see attached warrants, probable cause affidavits, and declination email for reference (Composite Exhibit C). We also attach again herein the prior complaints (Composite Exhibit B) themselves to the extent there is significant overlap with the new ongoing issues – both in terms of the registration agent (per the supervisor of elections office) and the particular voters affected.

The issue appears to have merit and warrant further investigation to determine whether Mr. Shepherd and/or anyone else operating on behalf of the three above-mentioned third-party voter registration organizations violated section 104.011(2), Florida Statutes as to the willful submission of false voter registration information. Other criminal statutes such as the criminal use of personal identification information under section 817.568, Florida Statutes, may be applicable as well.

Please find enclosed April 19, 2022, Elections Fraud Complaint[1] against Royal Shepherd from the Leon County Supervisor of Elections, as well as the prior complaints and investigatory materials against New Florida Majority in 2019 and 2020. Contact information for each third-party voter registration organization is available through the following link: https://tpvr.elections.myflorida.com/Default.aspx.

We appreciate your review of this matter and are happy to assist you in any further investigation.


Sincerely,

Bradley R. McVay
General Counsel, Florida Department of State


Enclosures

cc:
The Honorable Mark Earley
Leon County Supervisor of Elections (*via email*)

---

[1] These records include voter registration information that has not been redacted for this purpose. For example, certain voter registration information such as driver license and social security numbers are confidential and exempt from public records disclosure, and voter signatures may be inspected but not copied by members of the public. *See* § 97.0585, Fla. Stat. (2021).

App. 0432

# Composite Exhibit A

# ELECTIONS FRAUD COMPLAINT

*Voter Fraud Hotline Telephone number 1-877-868-3737*

Under section 97.012(15), Florida Statutes, the Department of State has authority to conduct preliminary investigations into any allegations of irregularities or fraud involving voter registration or voting, or candidate or issue petition activities. The Department may then report its findings to the Office of Statewide Prosecution or to the State Attorney for the judicial circuit in which the alleged violation occurred for prosecution, where warranted.

Please return the completed complaint form to:   *Florida Department of State, Office of the General Counsel*
*1st Floor, R.A. Gray Building*
*500 S. Bronough Street*
*Tallahassee, Florida 32399-0250*

You will receive a written response from the Department of State at the end of its investigation.

## PERSON BRINGING COMPLAINT

Name **Mark S. Earley**

Address **2990-1 Apalachee Pkwy**

County **Leon**

E-mail Address **vote@leonvotes.gov**

Day Phone **850-606-8683**

Evening Phone

City **Tallahassee**

State **FL**    Zip Code **32301**

## PERSON OR ENTITY AGAINST WHOM COMPLAINT IS BROUGHT (limit one person/entity per form)

Name **Royal Shepherd**

Work Phone

**11-89 (Florida Democratic Party); 21-9 (Florida Rising)**

*Person's title of office or position held or sought if applicable*

Address

County _____ State _____

*Name of Governmental Office or Private Entity/Office*

City

Zip Code

Have you filed this complaint with the (check all that apply):

| | Yes | No |
|---|---|---|
| State Attorney's Office | ✓ | |
| Office of Statewide Prosecution | | ✓ |
| Florida Department of Law Enforcement | ✓ | |
| Florida Elections Commission | | ✓ |
| Florida Commission on Ethics | | ✓ |

**VIOLATION:** If you believe any irregularities or fraud involving voter registration or voting, or candidate or issue petition activities have been committed, please state the specific acts committed by the person or entity named in this complaint:

Mr. Shepherd has submitted more than 1400 Florida Voter Registration Applications (FVRAs) to our office this calendar year. Some applications submitted were for fictitious people. Others were for existing voters containing information that differs significantly from the information previously provided by the voter in question. Signatures, identifying numbers, and addresses were the most common sources of inconsistencies.

**STATEMENT OF FACTS**

State in your own words exactly what happened. Please include details such as what happened, where the events or acts happened, when they happened (including dates and times), what you were told, who spoke to you and to whom you spoke, what you agreed or did not agree to, and who else saw or knows about what happened. Include the names, addresses and phone numbers of relevant persons. Also, give any reasons why you feel that the person or entity against whom you have brought this complaint knew that his or her actions were wrongful. The more specific information that you provide to us, the better we will be able to assist you.

This individual has submitted 1,460 forms to us between 01/18/2022 and 04/07/2022. These applications have been submitted under the third parties 21-9 and 11-89. The rate of incomplete applications and unverified applications is significantly higher than the normal registration rate. This individual has previously submitted forms with 16-65, which were the subject of another Election Fraud Complaint submitted by our office in 2020. Please see the attached documents for details and documentation.

The attached records are just a handful of the suspicious applications received. For more information, please contact our office.

☑ Check here if additional pages or documents are attached.

_____   4/19/22
Signature of complainant          Date Signed

**Mark S. Earley**
Print or type name of complainant

> It is a third-degree felony for any person to knowingly and willfully make any false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the Department of State. *See* § 817.155, Fla. Stat.

*THIS COMPLAINT IS NOT CONFIDENTIAL. ONCE IT IS FILED WITH THE DEPARTMENT OF STATE, IT BECOMES A PUBLIC RECORD.*

## SUSPECTED FRAUDULENT VOTER REGISTRATION APPLICATIONS SUBMITTED BY ROYAL SHEPHERD

| Ref # | Name | Voter ID | Date of Birth | 3VPRO Drop Off | Address | Issue Description |
|---|---|---|---|---|---|---|
| 001 | WRIGHT, BRITTNAY | 130509920 | Blank | 11-89 04/04/2022 12:55 PM | 1970 RAYMOND TUCKER RD, TALLAHASSEE, 32311 | Spoke with Aunt of Brinique. Brittnay Wright does not exist. Received very similar app in 2019 from a voter named "Brinique Wright", VID: 127427905 (turned in by 16-65). Name slightly off, new phone number, SSN is one digit off, street name is wrong. According to DAVID, BRINIQUE Wright exists with the SSN and DOB of the 16-65 record. Brinique's contact information: 850-766-1351. |
| 002 | CHERRY, FELECIA D | 130407481 | 10/07/1987 | 11-89 02/25/2022 10:25 AM | 1413 PULLEN RD APT A, TALLAHASSEE, 32303 | Looks like it's trying to replicate the same information as 121151908 Felcia D Cherry but ID#'s left blank, signature very different, but address and name the same, the DOB is same month but year is different. This app has 10/7/1987. Existing voter reg record has 10/8/1972. |
| 003 | BROWN, SHEILA L | 125816432 | 05/05/1961 | 21-9 03/11/2022 3:47 PM  AND  11-89 04/04/2022 12:54 PM | 5249 FAMILY TREE DR, TALLAHASSEE, 32303 | 21-9 application has incorrect SSN. 11-89 application from April has name spelled wrong and different phone number from application received in March. February 2022 application may or may not have been turned in by Mr. Shepherd, but SSN is also off there AND different phone number. Voter turned in an application on 03/12/2020 through 16-65. This form was also submitted to our office by Mr. Shepherd he information was similarly incorrect. |
| 004 | BROWN, CHRIS | 130448734 | 08/23/1986 | 21-9 03/11/2022 2:27 PM | 12344 DRAGON FLY CT, TALLAHASSEE, 32317 | Two FVRA's received 3/11/22 and 3/14/22 from 21-9 and 11-89 both by Royal Shepherd. |

| | | | | | |
|---|---|---|---|---|---|
| 005 | BEVIS, LAURA | 105184275 | 02/20/1986 | AND<br><br>11-89<br>03/14/2022<br>10:58 AM | | Handwriting and signature are different. Address is invalid. |
| | | | | 11-89<br>03/16/2022<br>11:10 AM | 2025 HOLLYWOOD DR, TALLAHASSEE, 32303 | ID# and race are incorrect on this form. Voter always signs "Sidney Bevis" but signed "Laura Bevis" here. |
| 006 | DAWSON, DEE | 130444623 | 05/09/1998 | 21-9<br>03/11/2022<br>2:27 PM | 277 TILLIS LN, TALLAHASSEE, 32305 | Address is in Crawfordville and no one by this name lives there. Voter cannot be verified and is possibly fictious. Signature matches other suspicious applications and does not match voter name. |
| 007 | EVANS, ASONI | 130055512 | 08/19/2005 | 11-89<br>03/04/2022<br>2:22 PM<br>Zach Slay<br><br>AND<br><br>11-89<br>03/28/2022<br>1:33 PM RS<br>3:03 PM ZSlay | 415 LUKEMAN LN, TALLAHASSEE, 32304 | Voter has signed 4 applications, all with 3P11-89, all in recent time frame. 1st signed 10/11/2021, recd 10/19/2021, 2nd is signed 11/10/2021, rec'd 11/18/2021, 3rd is signed 3/1/22, recd 3/4/2022, 4th is signed 3/18/22, recd 3/28/22. Voter has provided a different DOB on each of the past three applications: 1st is 2005, 2nd is 2004, 3rd is 2003. SS# changes from 0754 on 10/11/21 and 11/10/21 and changes to 6260 on 3/04/22 then back to 0754 on 3/28/22. Signatures and handwriting differences on all three applications. Political Party changes from DEM to REP and back to DEM Correct DOB is 08/19/2005 and Last Four of SS# is 0754. Both verified in DAVID. Other suspicious activity with FVRAs of the same last name and handwriting. |
| 008 | EVANS, JONIERA | 130489968 | 03/12/2007 | 11-89<br>03/28/2022 | 415 LUKEMAN LN, TALLAHASSEE, 32304 | This FVRA was brought in along with other suspicious FVRAs with the same last name and |

App. 0437

| | Name | Voter ID | DOB | Date/Time | Address | Notes |
|---|---|---|---|---|---|---|
| | | | | 1:33 PM RS 3:03 PM ZSlay | | handwriting. Signature is suspicious. Voter is 15 years old. |
| 009 | HALL, UNDRA | 123712761 | 11/13/1955 | 11-89 3/14/2022 10:58 AM | 1525 MCCASKILL AVE, TALLAHASSEE, 32310 | FVRA from 3/14/22 has incorrect SS# with Suspicious signature and handwriting. Previous FVRA from 2/14/20 (3P16-65) has suspicious signature and handwriting, inaccurate address. Gender is marked as M on previous FVRA but has been changed to F in VR by DMV. Birth certificate is M. Most likely a mistake by DMV. |
| 010 | HICKS, SHIRLEY | 130471053 | 02/20/1976 | 11-89 3/14/2022 10:58 PM | 244 ROBERTS AVE APT 902, TALLAHASSEE, 32310 | Based on information in DAVID, voters DOB is incorrect, SS# and address are one digit off. Signature is suspicious. Same person under VID 117088457. DL# ███████ in DAVID. FVRA in 2008 for Shirley Hicks was signed Spicy Hicks, her daughter. DOB on Shirley's FVRA from 2022 is the same as her daughter Spicy Hicks - VID# 117088233. |
| 011 | MILLEDGE, DANIELLE | 130470961 | 07/29/1991 | 11-89 03/16/2022 11:10 AM | Blank | Trying to replicate form from 3/2/22 #120551055. Incorrect SS, DOB is one digit off, signature is vastly different. Cannot find voter in DAVID. |
| 012 | WILSON, HEATHER | 130448772 | 01/26/1987 | 11-89 03/14/2022 10:58 AM | 2600 MICCOSUKEE RD APT 1101, TALLAHASSEE, 32308 | Two FVRA's recd 3/14/22 and 4/4/22 with different information and varying signatures. 3/14 has incorrect SS and incorrect apartment number. 4/4 has correct SS but with an address that does not exist and signature does not match but matches similar suspicious signatures. See Jones Williams VID - 130513013 |
| 013 | SMITH, ANTHONY | 130407492 & 122832734 | 07/04/1997 | 11-89 02/25/2022 10:25 AM | 2350 PHILLIPS RD APT 8108 TALLAHASSEE, 32308 | Voter seems to be same voter as 122832734, same name address, signature looks similar, however DOB and ID#s are different. Voter is incomplete because address is also one digit off from the existing voter's address which makes the address invalid. Existing 122832734 record |

| | Name | ID | DOB | Form/Date | Address | Notes |
|---|---|---|---|---|---|---|
| 014 | GIANTSTMAS, JUSTIN | 130513157 | 04/19/1989 | 11-89 04/04/2022 12:20 PM | 445 APPLEYARD DR, TALLAHASSEE, 32304 | has a 3P11-89 application signed 10/22/2021, recd 10/25/2021 also with incorrect SSN, and a 3P21-40 received 10/4/2021, and a 3P16-65 signed 11/6/2019, rec'd 11/15/2019 (wrong SSN) Voter has same DOB, SSN as voter 115579792 (JUSTIN GRANTSTEADMAN) but different last name and different signatures. |
| 015 | YOUNG, DEMETRIUS | 124033223 | 09/11/1980 | 21-9 3/11/2022 2:27 PM  AND  11-89 3/16/2022 11:10 AM | 4637 TALL OAK DR, TALLAHASSEE, 32305 | Voter match verified with David. Voter info on record 124033223 matches DAVID address, DL #, DOB, and Name on DAVID. The SSN on application does not match DAVID info. Voter has a 3P11-89 application signed 3/13/2022 recd 3/16/2022, and a 3P21-9 application signed 3/1/2022 and received 3/11/2022. |
| 016 | SEGURIA, NICOLE | 121584961 | 06/03/1985 | 11-89 3/14/2022 10:58 AM | 4500 DESLIN DR, TALLAHASSEE, 32305 | SSN # on file comes from DMV, voter has an SSN that is completely different on forms. Voter has prior forms with other organizations. Besides this app (signed 3/2/22, recd 3/14/22). Also: 3p16-65 signed 2/27/20, recd 3/4/2020 (wrong ssn), 3p16-65 signed 1/27/2020, recd 1/30/2020 (wrong ssn), 3p16-65 signed 11/26/2019, recd 12/6/2019 (wrong ssn). |
| 017 | DAVIS, CLARENCE | 127315174 | 06/22/1986 | 21-9 3/17/2022 2:06 PM | 7857 TALLEY ANN DR, TALLAHASSEE, 32311 | SSN on application was different from the one in sys and DAVID. Signature and handwriting are different. Previous application is a 3p16-65, signed 9/26/2019, recd 10/4/2019. |



**MARK S. EARLEY**
SUPERVISOR OF ELECTIONS
LEON COUNTY, FLORIDA

DUPLICATE

December 5, 2019

Starting in September 2019, my office received many Florida Voter Registration Applications (FVRA) from a Third Party Voter Registration Organization (3PVRO) 3P16-65, New Florida Majority Education Fund. Starting in November, this organization now makes weekly drops of hundreds of registration forms and at times over a thousand. This is many more registration forms than our office normally receives this time of year, between August and December of an "off" election year.

While processing these forms, my staff noticed several instances of FVRAs for voters who already registered, but with minor changes in critical voter information, such as dates of birth, driver's license, and addresses. We assumed that 3PVRO registration agents were assisting voters and transcribing information incorrectly, or that voters who do not trust the registration agents might be supplying incorrect information.

However, we have now found more serious and concerning issues. On November 19, 2019 we discovered at least one case of a new FVRA collected for a voter who was recently deceased. The new FVRA contained handwriting that did not match the handwriting on the voter's previous applications, and the voter's signature did not match the voter's previous signatures on file. The Department of State performs verification of social security number and driver's license numbers provided on FVRAs, and in this case the Department of State returned a message to our office that the person is deceased.

On November 19, 2019 as a pattern of potential problems became apparent, my staff began documenting concerns with specific FVRAs from 3P16-65. On November 19 and November 20, we attempted to contact the voters listed herein, and we found that in many cases the phone numbers provided on the FVRAs were disconnected or invalid phone numbers, which is odd for applications so recently collected. Normally, newly collected FVRAs would have data elements that are current and correct.

Seven examples are listed below and an explanation of the issues we discovered with each example. Collaborating documentation is attached on the following pages thereafter, with a note explaining which cases the documentation relates to and how.

Additionally, attached is a packet received by our office for this organization from September 12, 2019. The packet includes a letter from Victricia Chandler, the Chief of Staff for the Organization, stating that two canvassers had been removed from the organization because the organization had determined that the canvassers had forged registration applications. Copies of the supposedly forged applications are included as well. Her contact phone number is listed as (786)525-1540.

You will also find a copy of an "Elections Fraud Complaint" that we are filing with the Department of State regarding two specific voter registration applications, Tinika McNeil and her mother Foriest McNeil. Tinika McNeil was previously registered in Gadsden County (VID# 104261440). This registration was removed by theGadsden County Supervisor of Elections on 07/23/2019, following the death of Tinika McNeil. Our office received a new voter registration application on 11/08/2019 for Tinika McNeil, signed 11/05/2019, and collected by third party voter registration organization 3P16-65. All pertinent information on the new application matched the decedent's prior voter registration record, except the handwriting and the signature differed significantly.

We welcome the opportunity to discuss this situation and answer any questions that are bound to arise regarding the details of these voter registration applications. I am hopeful that one of the end results of this process is to reduce the amount of erroneous forms that we are receiving from this 3rd Party Voter Registration Organization. It is my obligation to report fraudulent attempts to register to vote. It is also my duty to maintain accurate voter rolls, and the large increase in unverifiable and incomplete forms we are receiving from this group only serves to undermine our efforts to serve the voters of Leon County, and to undermine the public trust in the integrity of our elections process.

12/4/19

Mark S. Earley, Supervisor of Elections

# ELECTIONS FRAUD COMPLAINT
*Voter Fraud Hotline Telephone number 1-877-868-3737*

Under section 97.012(15), Florida Statutes, the Department of State has authority to conduct preliminary investigations into any allegations of irregularities or fraud involving voter registration or voting, or candidate or issue petition activities. The Department may then report its findings to the Office of Statewide Prosecution or to the State Attorney for the judicial circuit in which the alleged violation occurred for prosecution, where warranted.

Please return the completed complaint form to:   Florida Department of State, Office of the General Counsel
1st Floor, R.A. Gray Building
500 S. Bronough Street
Tallahassee, Florida 32399-0250

You will receive a written response from the Department of State at the end of its investigation.

## PERSON BRINGING COMPLAINT

Name **Mark S. Earley**

Address **2990-1 Apalachee Pkwy**

County **Leon**

E-mail Address **vote@leoncountyfl.gov**

Day Phone **850-606-8683**   Evening Phone ____

City **Tallahassee**

State **FL**   Zip Code **32301**

## PERSON OR ENTITY AGAINST WHOM COMPLAINT IS BROUGHT (limit one person/entity per form)

Name **3PVRO 3P16-65**
**New Florida Majority Education Fund**

*Person's title of office or position held or sought if applicable*

Address **10800 Biscayne Blvd Ste 1050**

County **Miami-Dade**   State **FL**

Work Phone **305-754-0118**

*Name of Governmental Office or Private Entity/Office*

City **Miami**

Zip Code **33161**

Have you filed this complaint with the (check all that apply):

| | Yes | No |
|---|---|---|
| State Attorney's Office | ☑ Yes | ☐ No |
| Office of Statewide Prosecution | ☐ Yes | ☑ No |
| Florida Department of Law Enforcement | ☐ Yes | ☑ No |
| Florida Elections Commission | ☐ Yes | ☑ No |
| Florida Commission on Ethics | ☐ Yes | ☑ No |

**VIOLATION:** If you believe any irregularities or fraud involving voter registration or voting, or candidate or issue petition activities have been committed, please state the specific acts committed by the person or entity named in this complaint:

Our office received a Florida Voter Registration Application for Tinika McNeil, signed 11/05/2019, and an application for her mother, Foriest McNeil, signed 10/24/2019. However, Ms. Tinika McNeil is deceased, as of 07/06/2019 per her obituary published in the paper. In a telephone conversation between our staff and Ms. Foriest McNeil on 11/19/2019, Ms. Foriest McNeil only recalled filling out a registration application in 2018, and did not seem to understand that we called regarding an application apparently signed by Foriest McNeil on 10/24/2019. We believe that both applications are fraudulent, neither were completed by the voters themselves.

**STATEMENT OF FACTS**

State in your own words exactly what happened. Please include details such as what happened, where the events or acts happened, when they happened (including dates and times), what you were told, who spoke to you and to whom you spoke, what you agreed or did not agree to, and who else saw or knows about what happened. Include the names, addresses and phone numbers of relevant persons. Also, give any reasons why you feel that the person or entity against whom you have brought this complaint knew that his or her actions were wrongful. The more specific information that you provide to us, the better we will be able to assist you.

Tinika McNeil was previously registered in Gadsden County (VID# 104261440). This registration was removed by the Gadsden County Supervisor of Elections on 07/23/2019, following the death of Tinika McNeil. Our office received a new voter registration application on 11/08/2019 for Tinika McNeil, signed 11/05/2019, and collected by third party voter registration organization 3P16-65. All pertinent information on the new application matched the decedent's prior voter registration record, except the handwriting and signature differed significantly. Our office processed the application as a new registration record. We received a DLN/SSN verification report from the Department of State: "SY, SSA Response Single Match - Deceased, Unverified: SSN provided was not validated." Our office also discovered an obituary published in the newspaper stating that Ms. Tinika McNeil passed away 07/06/2019. At that point, our office removed the registration record created by the new application as deceased. Also on 11/08/2019, our office received a new registration application for Foriest McNeil, mother of Tinika McNeil, signed 10/24/2019, registered at the same address. Like Tinika McNeil, this new application matched Foriest McNeil's information, except that the signature and handwriting differed significantly from our existing records for Foriest McNeil. Our office contacted Foriest McNeil by phone. Foriest McNeil remembered completing an application the previous year in 2018, but not in October of 2019. She seemed unaware of the new application. Of note, the handwriting on the applications for both Foriest McNeil and Tinika McNeil appear similar to each other. Notably, the signature for Tinika McNeil's application received 11/08/2019 contains a suspicious revision accompanied by initials, indicating a mistake was made in signing. This sort of signature is irregular and a possible further indication of fraud. Supporting documentation attached.

☑ Check here if additional pages or documents are attached.

_Signature of complainant_      12/4/19   _Date Signed_

**Mark S. Earley**

_Print or type name of complainant_

> It is a third-degree felony for any person to knowingly and willfully make any false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the Department of State. *See* § 817.155, Fla. Stat.

*THIS COMPLAINT IS NOT CONFIDENTIAL. ONCE IT IS FILED WITH THE DEPARTMENT OF STATE, IT BECOMES A PUBLIC RECORD.*

| 2019 Month | Unverified Letters | Incomplete Notices | Voter Cards - New Registration | % UNV | % INC |
|---|---|---|---|---|---|
| January | 3 | 48 | 631 | 0.475% | 7.607% |
| February | 3 | 36 | 395 | 0.759% | 9.114% |
| March | 4 | 29 | 427 | 0.937% | 6.792% |
| April | 5 | 36 | 473 | 1.057% | 7.611% |
| May | 5 | 25 | 346 | 1.445% | 7.225% |
| June | 9 | 24 | 545 | 1.651% | 4.404% |
| July | 12 | 42 | 768 | 1.563% | 5.469% |
| August | 6 | 32 | 666 | 0.901% | 4.805% |
| September | 98 | 173 | 875 | 11.200% | 19.771% |
| October | 216 | 141 | 1470 | 14.694% | 9.592% |
| Nov. 1 - Nov. 19 | 78 | 60 | 526 | 14.829% | 11.407% |
| (Sch'd Nov. 22) | 61 | 42 | 273 | 22.344% | 15.385% |

App. 0444

| Issue # | Voter Name | Voter ID Number | Voter Date of Birth | Voter Address | Description of Issue |
|---|---|---|---|---|---|
| 001 | Tinika McNeil | 127421933 | 03/12/1984 | 725 Dunn St Tallahassee FL 32304 | Our office received a new application for Ms. McNeil on November 8, 2019, apparently signed by Ms. McNeil on November 5, 2019.  Ms. McNeil was previously registered in Gadsden County, #104261440, however her registration was cancelled July 23, 2019 because Ms. McNeil is now deceased.  All pertinent information between the two applications matched.  Our office processed the application as a new application, and after DLN/SSN verification by the department of state, received a report stating: "SY, SSA Response Single Match – Deceased, Unverified: SSN provided was not validated."  PDF versions of the new registration form, and her previous registrations are attached for comparison. |
| 002 | Foriest B McNeil | 104233875 | 04/21/1961 | 725 Dunn St Tallahassee FL 32304 | Our office received a FVRA on November 1, 2019 updating this voters record.  However, the handwriting and signature did not match the voter's previous applications.  Our office called the voter on November 19, 2019 to verify that she completed the application.  The voter remembered filling out an earlier application in 2018.  She did not mention filling out a more recent application in October 2019.  PDF versions of her new FVRA and previous FVRAs, as well as VBM return envelopes are attached for comparison. |

| 003 | Kennedi E Mercer & Kennedi Emelda Bernier | 126126283 & 127426275 | 02/20/2002 | 4768 Woodville Hwy Apt 1400 Tallahassee FL 32305 | Our office received a FVRA on November 8, 2019 for "Kennedi Emelda Bernier." There is an existing record for a "Kennedi E. Mercer," #126125283, however the handwriting and signature did not match, the name did not match, and there was no social security number to match. Our office opted to process the new form as a separate, new registration, and to wait for the Department of State to verify the new social security number to see if it is valid. PDF copies of applications for both voters are attached. |
| 004 | Hannah Pernell Tommy II & Tommy Pernell Hannah III | 123814475 & 127390975 | 02/03/1999 & 10/18/1997 | 2000 Meridian Rd Apt 265 Tallahassee FL 32303 | Our office received a FVRA on November 1, 2019 for "Hannah Pernell Tommy II." In processing his application, we found an existing record for "Tommy Pernell Hannah III," #123814475, registered at the same address. However, there were discrepancies between the Date of Birth, social security number, and name. The Department verified the second voter and our office mailed them a voter information card. Scans of both voter's applications are attached for comparison. |

| 005 | Latasha Yolanda McCray | 105114341 | 07/15/1977 | 5524 Mossy Top Ln Tallahassee FL 32303 | Our office received a FVRA on November 8, 2019 for Latasha McCray. However, the handwriting and signature on the new form did not match any of her previous applications. Scans of her applications are attached for comparison. |
| 006 | Kendasia Lamae Sharpe & Sharpe Kendasia | 126822886 & 127430623 | 06/10/2001 & 01/12/2000 | 3311 Sugar Berry Way Tallahassee FL 32303 & 2729 Graves Rd #7 Tallahassee FL 3233 | Our office received a FVRA on November 8, 2019 for "Sharpe Kendasia." We found a similar record for a Kendasia Sharpe, however the date of birth, social security, and address information was all different, as was the signature. The existing record came from the DMV, so there is only a signature clip provided, however the DMV's information comes to us pre-verified by DHSMV. Finally, 2729 Graves Rd is a Best Western Plus hotel. |
| 007 | Larry Merrit | 116392545 & 127430796 | 12/17/90 | 1700 Joe Louis St Apt 5 Tallahassee FL 32304 & 2314 Oxford Rd Tallahassee Fl 32304 | Our office received a FVRA on November 8, 2019. However, the social security number, handwriting on the form, and signature were completely different. Our office attempted to use the phone number provided on the form to contact the voter to verify their identity, but the phone number provided on the form was not in service. We processed as a new record and are awaiting DOS verification of the new SSN. |



**FLORIDA DEPARTMENT of STATE**

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

April 7, 2022

The Honorable Andrew H. Warren
State Attorney, 13th Judicial Circuit
419 N. Pierce Street
Tampa, Florida 33602

　　　*Re:  Submission of Fraudulent Voter Registration Applications*

Dear State Attorney Warren:

　　I am referring the enclosed voter registration applications to you pursuant to section 97.012(15), Florida Statutes, which charges the Department of State with conducting preliminary investigations of elections fraud and reporting the findings to the appropriate state attorney's office.

　　The Hillsborough County Supervisor of Elections office provided records to the Department which reflect that fraudulent voter registration applications were collected and submitted by a third-party voter registration organization, the Florida Democratic Party (3P 11-89). Six out of seven of the voters on whose behalf the applications were submitted are deceased. The other voter was said by a family member to have moved and not to have signed the application. Voter information from the Florida Voter Registration System for these former voters is also attached for your reference.[1] We consulted with Supervisor Latimer's office who advised that the applications at issue were hand-delivered to their office along with a number of other applications on March 9th and 18th, 2022. The intake forms from those dates with contact individuals listed are included herein. The third-party voter registration organization has been made aware by the Supervisor of Elections office that a referral to the Department of State was made.

　　The issue appears to have merit and warrant further investigation to determine whether one or more third-party voter registration agents violated section 104.011(2), Florida Statutes as to

---

[1] These records include voter registration information that has not been redacted for this purpose. For example, certain voter registration information such as driver license and social security numbers are confidential and exempt from public records disclosure, and voter signatures may be inspected but not copied by members of the public. *See* § 97.0585, Fla. Stat. (2021).

**Office of the General Counsel**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0448

the willful submission of false voter registration information. Other criminal statutes such as the criminal use of personal identification information under section 817.568, Florida Statutes, may be applicable as well.

Please find enclosed the April 5, 2022, transmittal email from the Hillsborough County Supervisor of Elections, along with the fraudulent voter registration applications, voter information, and the Supervisor of Elections intake forms from the days that the batches containing the applications at issue were delivered. Contact information for each third-party voter registration organization is available here: https://tpvr.elections.myflorida.com/Default.aspx.

Lastly, I would note that most of the applications at issue have initials on the back, presumably of the collecting third-party voter registration agent. Third-party voter registration organizations are required to submit to the Department of State, Form DS-DE 119, listing all employee voter registration agents who will be collecting applications. The Department maintains the forms and a spreadsheet of this voter registration agent data. We can share those records with you if it would assist in your efforts.

We appreciate your review of this matter and are happy to assist you in any further investigation.

Sincerely,

/s/ *Colleen E. O'Brien*

Colleen E. O'Brien
Assistant General Counsel

Enclosures

cc:
Bradley R. McVay
General Counsel, Florida Department of State

The Honorable Craig Latimer
Hillsborough County Supervisor of Elections (*via email*, without enclosures)

**O'Brien, Colleen E.**

| | |
|---|---|
| **From:** | Matthews, Maria I. |
| **Sent:** | Tuesday, April 5, 2022 12:16 PM |
| **To:** | Latimer, Craig |
| **Cc:** | General Counsel; McVay, Brad R.; O'Brien, Colleen E.; Marconnet, Amber; Brown, Toshia |
| **Subject:** | Hillsborough County/: Improper Voter Registration Application Referrals -  attachments contain confidential voter information -3PVRO 11-89 |
| **Attachments:** | Jefferson_Referred_to_DOE.pdf; Roberts_Referred_to_DOE.pdf; Ortiz_Referred_to_DOE.pdf; Waldo_Referred_to_DOE.pdf; Oyen_Referred_to_DOE.pdf; Best_Kneece_Referred_to_DOE.pdf; Resko_Referred_to_DOE.pdf |

*This email contains information that is confidential and/or exempt from public records disclosure at a minimum pursuant to section 97.0585, Fla. Stat.*

Dear Supervisor Latimer,

This email acknowledges receipt of your email regarding potential election fraud involving voter registration applications submitted by 3PVRO 11-89.

By copy, I am notifying the General Counsel's office relating to this matter. They will advise you if any further action is needed at this time. I am also copying Chief Brown and Asst. Director Marconnet in the event they are contacted to provide assistance in the preliminary investigation.

By the way, I take it from your email that this has not been referred to the local authorities.

Respectfully,

Maria Matthews, Esq.
Division of Elections, Director
Florida Department of State

---

**From:** Craig Latimer <clatimer@votehillsborough.gov>
**Sent:** Tuesday, April 5, 2022 12:01 PM
**To:** Matthews, Maria I. <Maria.Matthews@DOS.MyFlorida.com>
**Subject:** Improper Voter Registration Application Referrals - attachments contain confidential voter information

---

### EMAIL RECEIVED FROM EXTERNAL SOURCE

The attachments/links in this message have been scanned by Proofpoint.

---

Maria,

Attached please find 6 voter registration applications received by my office from the Florida Democratic Party (3PVRO 11-890).  (These applications include confidential voter information that has not been redacted.) I believe these 6 applications should be investigated for possible fraudulent activity.

Specifically, the persons for which we received voter registration applications are as follows (their FVRS number is included):

1

- Ortiz, Bengamin—deceased Feb 10, 2020 (114799463).  Application signed March 3, 2022
- Resko, Eleanor – deceased September 24, 2013 (110871923).  Application signed March 5, 2022
- Oyen, William – deceased February 25, 2013 (113436143).  Application signed March 10, 2022
- Roberts, Glenda – deceased April 21, 2019 (110675255).  Application signed March 9, 2022
- Best, Vivian – deceased October 2, 2021 (110422008).  Application signed March 18, 2022
- Waldo, Austin – no longer at residence and did not fill out registration application as per conversation with Austin Waldo's father (130449194).  Application signed March 5, 2022

Additionally, the state identified:
- Jefferson, Caleb – deceased January 16, 2022 (123857596/130478607).  Application signed March 19, 2022

Please confirm that you have received this email, and advise as to whether the Department of State needs additional information to conduct a preliminary investigation and/or if further action or assistance is required from my office.

Thank you.

Craig


# Craig Latimer, CERA

## Hillsborough County Supervisor of Elections

Governor's Sterling Award Recipient
***Our Vision: To be the best place in America to vote!***

County Center, 601 E. Kennedy Blvd., 16th Floor, Tampa, FL 33602
Direct (813) 276-2320   Email: clatimer@votehillsborough.gov
VoteHillsborough.gov

**Be an informed voter!**

*Follow us: Newsletter     Facebook     Twitter     Instagram     Vimeo*

---

Please note: Florida has a very broad public records law. Written communications to or from the Supervisor of Elections regarding business constitute public records and are available to the public and media upon request unless the information is subject to a specific statutory exemption. Therefore, your e-mail address and message may be subject to public disclosure.

App. 0451



*Craig Latimer*
**Supervisor** *of* **Elections**
Our Vision: To be the best place in America to vote

GOVERNOR'S
STERLING
AWARD
RECIPIENT

### 3ʳᵈ Party Organization Form

☑ ESC   ☐ CC   ☐ NW   ☐ SE

Date and Pickup Time: **03/09/2022**    ID #: 3P - **11-89**

Name of Organization: **The Florida Democratic Party**

Contact Person: **Tyler Barrett**    Phone #: **503-374-4405**

**Ordered**

Applications  English: **0**    Spanish: **0**

Vote by Mail  English: **0**    Spanish: **0**

**Received**

Total Non-Blank Applications: **282**    Total Blank Applications: **0**

Total Vote by Mail Forms Received: **0**

**Tyler Barrett**
PRINT

D. TyB—4
SIGN

SIGNATURE OF SOE STAFF & DATE: _Marisabel Gonzalez_

VoteHillsborough.gov  **(813) 744 - 5900**
**Fred B. Karl County Center** | **Robert L. Gilder Elections Service Center**
601 E. Kennedy Blvd., 16th Floor, Tampa, FL 33602 | 2514 N. Falkenburg Rd., Tampa, FL 33619
*See website for regional office locations.*

App. 0452



*Craig Latimer*
**Supervisor** *of* **Elections**
Our Vision: To be the best place in America to vote

GOVERNOR'S
STERLING
AWARD
RECIPIENT

### 3ᴿᴰ Party Organization Form

☐ ESC     ☑ CC     ☐ NW     ☐ SE

Date and Pickup Time: **03/18/2022**          ID #: 3P - **11-89**

Name of Organization: **THE FLORIDA DEMOCRATIC PARTY**

Contact Person: **ELLONI ELLICK**     Phone #: **954-5510525**

**Ordered**

Applications   English: _____      Spanish: _____

Vote by Mail   English: _____      Spanish: _____

**Received**

Total Non-Blank Applications: **281**      Total Blank Applications: _____

Total Vote by Mail Forms Received: _____

~Elloni Ellick~
PRINT

~Elloni Ellick~
SIGN

SIGNATURE OF SOE STAFF & DATE: ~Frances Meyer~      MAR 1 8 2022

---

VoteHillsborough.gov ★ **(813) 744 - 5900**
**Fred B. Karl County Center**     **Robert L. Gilder Elections Service Center**
601 E. Kennedy Blvd., 16th Floor, Tampa, FL 33602     2514 N. Falkenburg Rd., Tampa, FL 33619
*See website for regional office locations.*

App. 0453

# ELECTIONS FRAUD COMPLAINT

*Voter Fraud Hotline Telephone number 1-877-868-3737*

Under section 97.012(15), Florida Statutes, the Department of State has authority to conduct preliminary investigations into any allegations of irregularities or fraud involving voter registration or voting, or candidate or issue petition activities. The Department may then report its findings to the Office of Statewide Prosecution or to the State Attorney for the judicial circuit in which the alleged violation occurred for prosecution, where warranted.

Please return the completed complaint form to:   *Florida Department of State, Office of the General Counsel*
*1st Floor, R.A. Gray Building*
*500 S. Bronough Street*
*Tallahassee, Florida 32399-0250*

You will receive a written response from the Department of State at the end of its investigation.

## PERSON BRINGING COMPLAINT

Name **Annette Figueroa**

Day Phone **863-534-5888**   Evening Phone _____

Address **70 Florida Citrus Blvd**   City **Winter Haven**

County **Polk**   State **FL**   Zip Code **33880**

E-mail Address **annettefigueroa@polkelections.com**

## PERSON OR ENTITY AGAINST WHOM COMPLAINT IS BROUGHT (limit one person/entity per form)

Name **Veronica Herrera**

Work Phone **925-565-5305**

**Mi Vecino 3P21-1**

*Person's title of office or position held or sought if applicable*

*Name of Governmental Office or Private Entity/Office*

Address **22 W Monument Ave Ste 100**   City **Kissimmee**

County **Osceola**   State **FL**   Zip Code **34741**

Have you filed this complaint with the (check all that apply):

| | Yes | No |
|---|---|---|
| State Attorney's Office | ☐ | ☑ |
| Office of Statewide Prosecution | ☐ | ☑ |
| Florida Department of Law Enforcement | ☐ | ☑ |
| Florida Elections Commission | ☐ | ☑ |
| Florida Commission on Ethics | ☐ | ☑ |

# RECEIVED

## JUL 15 2022

**Office of the General Counsel**

458 of 650

**VIOLATION:** If you believe any irregularities or fraud involving voter registration or voting, or candidate or issue petition activities have been committed, please state the specific acts committed by the person or entity named in this complaint:

Received different applications from this 3rd party organization with wrong information.  Social security number, date of birth, driver license number and signature not matching.

**STATEMENT OF FACTS**

State in your own words exactly what happened. Please include details such as what happened, where the events or acts happened, when they happened (including dates and times), what you were told, who spoke to you and to whom you spoke, what you agreed or did not agree to, and who else saw or knows about what happened. Include the names, addresses and phone numbers of relevant persons. Also, give any reasons why you feel that the person or entity against whom you have brought this complaint knew that his or her actions were wrongful. The more specific information that you provide to us, the better we will be able to assist you.

We received these applications in the month of June.  Two people complaint that they didn't fill out a form with this 3rd party organization.  Jeannette Chico & Rosa Santiago.

☑ Check here if additional pages or documents are attached.

Signature of complainant: _A. Figueroa_       Date Signed: 7/6/2022

Annette Figueroa
Print or type name of complainant

It is a third-degree felony for any person to knowingly and willfully make any false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the Department of State. *See* § 817.155, Fla. Stat.

THIS COMPLAINT IS NOT CONFIDENTIAL. ONCE IT IS FILED WITH THE DEPARTMENT OF STATE, IT BECOMES A PUBLIC RECORD.

# ELECTIONS FRAUD COMPLAINT

*Voter Fraud Hotline Telephone number 1-877-868-3737*

Under section 97.012(15), Florida Statutes, the Department of State has authority to conduct preliminary investigations into any allegations of irregularities or fraud involving voter registration or voting, or candidate or issue petition activities. The Department may then report its findings to the Office of Statewide Prosecution or to the State Attorney for the judicial circuit in which the alleged violation occurred for prosecution, where warranted.

Please return the completed complaint form to:    *Florida Department of State, Office of the General Counsel*
*1st Floor, R.A. Gray Building*
*500 S. Bronough Street*
*Tallahassee, Florida 32399-0250*

You will receive a written response from the Department of State at the end of its investigation.

## PERSON BRINGING COMPLAINT

Name **Annette Figueroa**

Day Phone **863-534-5888**    Evening Phone

Address **70 Florida Citrus Blvd**    City **Winter Haven**

County **Polk**    State **FL**    Zip Code **33880**

E-mail Address **annettefigueroa@polkelections.com**

*RECEIVED 2022 AUG 16 AM 8:33 TALLAHASSEE FL*

## PERSON OR ENTITY AGAINST WHOM COMPLAINT IS BROUGHT (limit one person/entity per form)

Name **Yanidsi Velez**

Work Phone **407-270-0597**

**Hispanic Federation 3P17-58**

*Person's title of office or position held or sought if applicable*

*Name of Governmental Office or Private Entity/Office*

Address **1650 Sand Lake Rd, Ste 390**    City **Orlando**

County **Orange**    State **FL**    Zip Code **32809**

Have you filed this complaint with the (check all that apply):

|  | Yes | No |
|---|---|---|
| State Attorney's Office | ☐ | ☑ |
| Office of Statewide Prosecution | ☐ | ☑ |
| Florida Department of Law Enforcement | ☐ | ☑ |
| Florida Elections Commission | ☐ | ☑ |
| Florida Commission on Ethics | ☐ | ☑ |

**RECEIVED**

AUG 16 2022

Office of the General Counsel

**VIOLATION:** If you believe any irregularities or fraud involving voter registration or voting, or candidate or issue petition activities have been committed, please state the specific acts committed by the person or entity named in this complaint:

Received different applications from this 3rd party organization with wrong information.  Social security number, date of birth, driver license number and signature not matching.

**STATEMENT OF FACTS**

State in your own words exactly what happened. Please include details such as what happened, where the events or acts happened, when they happened (including dates and times), what you were told, who spoke to you and to whom you spoke, what you agreed or did not agree to, and who else saw or knows about what happened. Include the names, addresses and phone numbers of relevant persons. Also, give any reasons why you feel that the person or entity against whom you have brought this complaint knew that his or her actions were wrongful. The more specific information that you provide to us, the better we will be able to assist you.

We received these applications in Polk County Florida.

-Jason Parker - 130798757 - voter is deceased since 7/8/2022, submitted another application on 8/2/2022 after voter is deceased with same information that they submitted on 6/30/2022.

-Elaine M Jenkins - 122358375 - voter claimed that she didn't request a party change with this organization, we provide the voter a new application to change back.

-Garlynda Jones - 113695640 - voter claimed that she didn't request a party change with this organization, we provide her another application.  864-399-0632

-Sandra J Paul - 110712976 - 3rd party submitted an application for this voter with wrong date of birth, social security number and signature.  Voter submitted a new application with correct information.

-Brian S Williams - 113551330 & 130740147 - voter claimed that he never filled out a 3rd party application, on the application we have his ss #, dob, name, signature different, voter sent copy of his FL driver license.

-Jeinmys Alencio - 130740133 - homeowners of the house (Garry Fletcher of 1779 Via Lago Dr, Lakeland) claimed that there is nobody living in that house only him and his wife since 2016.

-Dalila Rodriguez - 130869093 & 113745761 - voter claimed that she didn't fill out a new form, she remember that she had issues like this in 2018 and I reviewed her record, she had an application submitted to us from the same 3rd party organization in 7/25/2018.

☑ Check here if additional pages or documents are attached.

Signature of complainant                    8/10/2022

Date Signed

Annette Figueroa

Print or type name of complainant

It is a third-degree felony for any person to knowingly and willfully make any false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the Department of State. *See* § 817.155, Fla. Stat.

*THIS COMPLAINT IS NOT CONFIDENTIAL. ONCE IT IS FILED WITH THE DEPARTMENT OF STATE, IT BECOMES A PUBLIC RECORD.*

# ELECTIONS FRAUD COMPLAINT

*Voter Fraud Hotline Telephone number 1-877-868-3737*

Under section 97.012(15), Florida Statutes, the Department of State has authority to conduct preliminary investigations into any allegations of irregularities or fraud involving voter registration or voting, or candidate or issue petition activities. The Department may then report its findings to the Office of Statewide Prosecution or to the State Attorney for the judicial circuit in which the alleged violation occurred for prosecution, where warranted.

Please return the completed complaint form to: *Florida Department of State, Office of the General Counsel*
*1st Floor, R.A. Gray Building*
*500 S. Bronough Street*
*Tallahassee, Florida 32399-0250*

You will receive a written response from the Department of State at the end of its investigation.

## PERSON BRINGING COMPLAINT

Name **Deborah Jacobs**

Day Phone 407-402-2146

Evening Phone 407-402-2146

Address **100 Eslinger Way**

City **Sanford**

County **Seminole**

State **FL**

Zip Code **32773**

E-mail Address **djacobs@seminolesheriff.org**

## PERSON OR ENTITY AGAINST WHOM COMPLAINT IS BROUGHT (limit one person/entity per form)

Name **Tiffany Hanley**

Work Phone **321-440-2611 Cell / 407-676-5295 OFC**

**Unknown**

**Equal Ground Action Fund**

*Person's title of office or position held or sought if applicable*

*Name of Governmental Office or Private Entity/Office*

Address **424 E Central Blvd., Unit 650**

City **Orlando**

County **Orange**

State **FL**

Zip Code **32801**

Have you filed this complaint with the (check all that apply):

State Attorney's Office — ☐ Yes  ☑ No

Office of Statewide Prosecution — ☐ Yes  ☑ No

Florida Department of Law Enforcement — ☐ Yes  ☑ No

Florida Elections Commission — ☐ Yes  ☑ No

Florida Commission on Ethics — ☐ Yes  ☑ No

**VIOLATION:** If you believe any irregularities or fraud involving voter registration or voting, or candidate or issue petition activities have been committed, please state the specific acts committed by the person or entity named in this complaint:

On 05/15/20222, the Seminole County Supervisor of Elections Office (SOE) received 243 voter registration applications that were collected by Equal Ground Action Fund Inc., 424 E Central Blvd., Unit 650, Orlando, FL 32801, which is a 3rd Party Voter Registration Organization. The applications were delivered by Justin Jones with their organization. Upon processing the applications, SEO found one application was submitted for a deceased voter, Henry Earl Bradshaw, DOB 03/23/1946, who died on 07/10/2021

**STATEMENT OF FACTS**

State in your own words exactly what happened. Please include details such as what happened, where the events or acts happened, when they happened (including dates and times), what you were told, who spoke to you and to whom you spoke, what you agreed or did not agree to, and who else saw or knows about what happened. Include the names, addresses and phone numbers of relevant persons. Also, give any reasons why you feel that the person or entity against whom you have brought this complaint knew that his or her actions were wrongful. The more specific information that you provide to us, the better we will be able to assist you.

On June 30, 2022, I, Detective Deborah Jacobs, with the Seminole County Sheriff's Office, Financial Crimes Task Force, received a phone call from Assistant State Attorney (ASA), Domenic Leo, requesting our agency look into a complaint their office received from Seminole Supervisor of Elections (SOE) Chris Anderson. ASA Leo followed up on his request in writing, which included the documents SOE Anderson submitted to his office. After reviewing SOE Anderson's complaint, it was determined the organization, Equal Ground Action Fund, which submitted the applications to SOE Anderson's office is located in Orlando, Orange County, Florida. The contact SEO Anderson's office has for the organization is Tiffany Hanley, who is also out of Orlando, Orange County, Florida. There was no other information provided, other than the name Justin Jones, for the person who delivered the applications to SOE Anderson's Office. Given the organization, and two persons listed for the organization who are potentially involved, are not in Seminole County, I contacted ASA Leo to request the complaint be sent to the State of Florida, Office of Election Crimes and Security Office. ASA Leo agreed to the transfer. Given this, the complaint SOE Anderson filed with the Seminole County Office of the State Attorney, 18th Circuit will be forwarded to the State of Florida, Elections Fraud Office, to review for further investigation into voter fraud by an individual or group.

☑ Check here if additional pages or documents are attached.

_____                    11·12·2022
Signature of complainant                          Date Signed

Deborah Jacobs, Detective with Seminole County Sheriff's Office
Print or type name of complainant

It is a third-degree felony for any person to knowingly and willfully make any false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the Department of State. *See* § 817.155, Fla. Stat.

*THIS COMPLAINT IS NOT CONFIDENTIAL. ONCE IT IS FILED WITH THE DEPARTMENT OF STATE, IT BECOMES A PUBLIC RECORD.*



**CHRIS ANDERSON**                    **SUPERVISOR OF ELECTIONS**

1500 EAST AIRPORT BLVD, SANFORD, FL 32773        MAIN OFFICE PHONE: **407-585-VOTE** (8683) | GENERAL FAX: 407-708-7705

## <u>MEMORANDUM</u>

**TO: Phil Archer, State Attorney, 18TH Judicial Circuit**

**FROM: Chris Anderson, Supervisor of Elections, Seminole County**

**DATE: June 23, 2022**

**SUBJECT: TOT investigation of FSS. 104.011 False swearing, FSS. 831.01 Forgery**

Please allow this memorandum to serve as the official transference of the following preliminary investigations conducted by my office. The investigation was initiated due to a 3rd Party Voter Registration Organization, Equal Ground Action Fund, who turned in a voter registration, they collected, for a voter who was listed as deceased 10 months prior to the date the application was turned into SCSOE.  The voter registration application was turned in by said group in an attempt to fraudulently register a deceased voter, thereby potentially placing the deceased voter on the Seminole County voter roll. However, my office, following agency policies and procedures, immediately intercepted the forged voter registration application and the deceased voter was not added to the voter roll.



**SUPERVISOR OF ELECTIONS**

1500 EAST AIRPORT BLVD, SANFORD, FL 32773    MAIN OFFICE PHONE: **407-585-VOTE** (8683) | GENERAL FAX: 407-708-7705

<u>Investigative findings</u>

On or about Wednesday May 18, 2022, The Seminole County Supervisor of Election's Office received 243 voter registration applications collected by Equal Ground Action Fund Inc. Said organization is registered as a 3rd Party Voter Registration Organization (3PVRO) with the Florida Department of State (FLDOS) with an address of 2778 S Westmoreland Drive Orlando FL. It should be noted 3rd Party Voter Registration Organization election code administration is maintained by the Florida Department of State where they are assigned a 3PVRO number (3P-21-56). Equal Ground Action Fund is listed as an active 3PVRO according to the FLDOS.

Upon processing of the applications turned in by Equal Ground Action Fund Inc, SCSOE learned the applicant listed on the application, Henry Earl Bradshaw (DOB 3/23/1946), was recorded as deceased per the Florida Voter Registration System (FVRS) as of July 10, 2021 (Death certificate #2021131577). FLDOS maintains FVRS. The FLDOS receives the death index from the Department of Health Vital Statistics regarding individuals who died in the state of Florida. A further records review of Florida Driver and Vehicle Information Database (DAVID), confirmed the FVRS information stating Bradshaw was deceased as July 10, 2021. SCSOE also located an obituary dated July 20, 2021, where the Sanford Herald reported Henry Earl Bradshaw age 75, had passed away.

VOTESEMINOLE.ORG | 🅵 + 🔲 @VoteSeminole                    **ENSURING YOUR CHOICE COUNTS**

 **CHRIS ANDERSON**                    **SUPERVISOR OF ELECTIONS**

1500 EAST AIRPORT BLVD, SANFORD, FL 32773        MAIN OFFICE PHONE: **407-585-VOTE** (8683) | GENERAL FAX: 407-708-7705

It should be noted, Henry was 75 years of age at the time of his death. As such, my office was able to confirm Bradshaw's death from multiple relevant sources.

I continued the investigation by reviewing the chain of custody of the 243 voter registration applications which included Bradshaw's voter registration application. According to SCSOE employee Lourdes Fiallos, said applications were delivered by Justin Jones on behalf of Equal Ground Action Fund. The contact person for Equal Ground Action Fund is Tiffany Hanley.

I continued my investigation by comparing the handwriting on the voter registration application submitted on Bradshaw's behalf, to SCSOE on May 18, 2022 (after Bradshaw's death) to the voter registration application submitted on Bradshaw's behalf, on March 11, 2020 (before Bradshaw's death), to the Orange County Supervisor of Election's Office. I found Bradshaw's March 11, 2020 voter registration application in Florida Voter Registration System (FVRS).

Upon my review, I immediately noticed the signatures on the two applications were vastly different and were not close to being consistent with each other. Moreover, I noticed the application turned in prior to Bradshaw's death, had noticeably smaller handwriting. Bradshaw's signature had a slant to the right which was consistent to all

VOTESEMINOLE.ORG | 🅕 ✦ 🅓 @VoteSeminole                    **ENSURING YOUR CHOICE COUNTS**



**CHRIS ANDERSON**                    **SUPERVISOR OF ELECTIONS**

1500 EAST AIRPORT BLVD, SANFORD, FL 32773        MAIN OFFICE PHONE: **407-585-VOTE** (8683) | GENERAL FAX: 407-708-7705

other voter registration applications found in Bradshaw's voter audit maintained in FVRS.

In contrast, the application turned in after Bradshaw's death (May 18, 2022), had noticeably larger handwriting which was consistent throughout that application and there were no right slants in the signature on the application turned in on May 18, 2022. It was clear, based on my training and experience the fraudulent activity of forgery had occurred on the voter application turned into my office on May 18, 2022.

Additionally, I reviewed the handwriting on the voter registration applications of Hanley and Jones which are located in their independent voter audit in FVRS. My investigative decision for comparison was made due to Jones and Hanley being chiefly responsible for the care, custody and control of said documents just prior to the submittal of the documents to my office.  According to FVRS, a March 14, 2022, voter registration application was turned in on Hanley's behalf by the Florida Democratic Party (FDP 3P-11-89) with presumably her signature, as required by law. I reviewed the signature images on file which are in FVRS for Hanley. I found all signatures to have consistently larger handwriting with a flare slant to the right of the "Y" in Tiffany and "Y," in Hanley. All voter registration application signatures on Hanley's voter audit were consistent.

VOTESEMINOLE.ORG | 🅕 🅕 🔲 @VoteSeminole        **ENSURING YOUR CHOICE COUNTS**

 **CHRIS ANDERSON**          **SUPERVISOR OF ELECTIONS**

1500 EAST AIRPORT BLVD, SANFORD, FL 32773      MAIN OFFICE PHONE: **407-585-VOTE** (8683) | GENERAL FAX: 407-708-7705

Lastly, I compared the handwriting on the voter registration application turned in March 14, 2022, by the FDP on Hanley's behalf, to the handwriting on Bradshaw's voter registration application turned in after his death, on May 18, 2022.

I found the following consistencies: the 2's, on the May 18, 2022 application were written with a loop over the initial line to complete the bottom of the 2. I found the same similarities in the written 2's, on Hanley's March 14, 2022 application.

Conversely, Bradshaw's March 11, 2020, application (application submitted prior to his death) had written 2's that were straight line finishes with no loops over the initial written line. Also, I observed the overall handwriting on May 18, 2022 application to be very large which was consistent to Hanley's March 14, 2022 registration application.

In conclusion, the most widely used method of forgery is simple forgery based on my training and experience. This is the process of committing forgery by the signing of another's name in one's own normal, natural writing. I am confident this is the method forgery used based on Bradshaw's confirmed death at the time of submittal, and my many years of law enforcement/elected official training and experience. Furthermore, I concluded the handwriting on Hanley's March 14, 2022 application is closely consistent to the handwriting on Bradshaw's voter registration application turned in on May 18, 2022 (after his death) based on my training and experience

VOTESEMINOLE.ORG | ⬛ + ⬛ @VoteSeminole         **ENSURING YOUR CHOICE COUNTS**

 **SUPERVISOR OF ELECTIONS**

1500 EAST AIRPORT BLVD, SANFORD, FL 32773        MAIN OFFICE PHONE: **407-585-VOTE** (8683) | GENERAL FAX: 407-708-7705

It should be noted, As Supervisor of Elections, I am required by law to review and evaluate hand writing in the course of my normal duties. I am also required to attend handwriting analysis training per Florida law to carry out said duties.

I am a former law enforcement professional with over a decade of experience to include major crimes investigations to include fraud, homicide, cold case homicides, criminal street gangs, truth verification examiner (computerized voice stress analysis) and all manner of person/property crimes with thousands of hours in law enforcement advanced specialized training. I have made countless arrest and I have testified in multiple cases brought before the court.

My office has provided your office with the following documents:

Page 1 is a written receipt of the delivery of the voter registration applications turned into the Seminole County Supervisor of Election's Office on May 18, 2022. This application is relevant to establish the chain of custody of the voter registration applications showing who turned the applications in and which SCSOE employee received the applications at the point of the transaction.

Page 2 is a copy of the voter registration application turned into SCSOE on behalf of deceased voter, Henry Earl Bradshaw on May 18, 2022.

VOTESEMINOLE.ORG | 🅵 + 🅧 @VoteSeminole                    **ENSURING YOUR CHOICE COUNTS**



**CHRIS ANDERSON**                    **SUPERVISOR OF ELECTIONS**

1500 EAST AIRPORT BLVD, SANFORD, FL 32773        MAIN OFFICE PHONE: **407-585-VOTE** (8683) | GENERAL FAX: 407-708-7705

Page 3 is Bradshaw's March 11, 2020 (prior to his death) voter registration application submitted to Orange County Supervisor of Election's office. Page 2 and Page 3 are relevant for comparison purposes.

Page 4 provides relevant information regarding DAVID which states Bradshaw was deceased as of July 10, 2021.

Page 5 is relevant to Bradshaw's death where his obituary was printed in the Sanford Herald as of July 20, 2021.

Page 6 is relevant as it shows the FVRS notes referenced in my investigation regarding Bradshaw's death. Bradshaw is listed as deceased as of July 10, 2021 which is consistent to page 4.

Page 7 is a continuation of page 6.

The additional document provided is Hanley's March 14, 2022 voter registration application to assist in handwriting analysis for criminal prosecution. Furthermore, SCSOE employee has provided a sworn written statement regarding chain of custody at the time of submittal.

**VOTESEMINOLE.ORG** | 🅕 ➕ 🅣 **@VoteSeminole**        **ENSURING YOUR CHOICE COUNTS**

 **CHRIS ANDERSON**

## SUPERVISOR OF ELECTIONS

1500 EAST AIRPORT BLVD, SANFORD, FL 32773          MAIN OFFICE PHONE: **407-585-VOTE** (8683) | GENERAL FAX: 407-708-7705

    All the accompanied documents are relevant to show there was an attempt to commit voter registration fraud by falsely registering a deceased person in addition to the forgery of Bradshaw's signature on an official government document. Page 4 and page 6 show Bradshaw was listed as deceased approximately 10 months after a voter registration application was turned into SCSOE, on Bradshaw's behalf by Jones, representing Equal Ground Action Fund on May 18, 2022.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*End of report\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VOTESEMINOLE.ORG | 🅕 🅥 🅧 @VoteSeminole

**ENSURING YOUR CHOICE COUNTS**

# ELECTIONS FRAUD COMPLAINT

*Voter Fraud Hotline Telephone number 1-877-868-3737*

Under section 97.012(15), Florida Statutes, the Department of State has authority to conduct preliminary investigations into any allegations of irregularities or fraud involving voter registration or voting, or candidate or issue petition activities. The Department may then report its findings to the Office of Statewide Prosecution or to the State Attorney for the judicial circuit in which the alleged violation occurred for prosecution, where warranted.

Please return the completed complaint form to:   *Florida Department of State, Office of the General Counsel*
*1st Floor, R.A. Gray Building*
*500 S. Bronough Street*
*Tallahassee, Florida 32399-0250*

You will receive a written response from the Department of State at the end of its investigation.

## PERSON BRINGING COMPLAINT

Name *Diana Peters*

Day Phone *321-917-3459*   Evening Phone *321-917-3459*

Address *1048 Tevis ST SE*   City *Palm Bay*

County *Brevard*   State *FL*   Zip Code *32909*

E-mail Address *dianapeters54@yahoo.com*

## PERSON OR ENTITY AGAINST WHOM COMPLAINT IS BROUGHT (limit one person/entity per form)

Name *"Unknown" 3rd Party Voter Registration Organization @ Local Nursing Home.*   Phone ~~Work~~ *Anchor Care & Rehab* ~~800~~ *-732-264-5800*

*Person's title of office or position held or sought if applicable*

*Name of Governmental Office or Private Entity/Office*

Address *1515 Port Malabar Blvd NE*   City *Palm Bay*

County *Brevard*   State *FL*   Zip Code *32905*

Have you filed this complaint with the (check all that apply):

**RECEIVED**

**FEB 28 2022**

Office of the General Counsel

| | Yes | No |
|---|---|---|
| State Attorney's Office | ☒ | ☐ |
| Office of Statewide Prosecution | ☐ | ☐ |
| Florida Department of Law Enforcement | ☐ | ☐ |
| Florida Elections Commission | ☒ | ☐ |
| Florida Commission on Ethics | ☐ | ☐ |

**VIOLATION:** If you believe any irregularities or fraud involving voter registration or voting, or candidate or issue petition activities have been committed, please state the specific acts committed by the person or entity named in this complaint.

Please See ATTACHED STATEMENT

## STATEMENT OF FACTS

State in your own words exactly what happened. Please include details such as what happened, where the events or acts happened, when they happened (including dates and times), what you were told, who spoke to you and to whom you spoke, what you agreed or did not agree to, and who else saw or knows about what happened. Include the names, addresses and phone numbers of relevant persons. Also, give any reasons why you feel that the person or entity against whom you have brought this complaint knew that his or her actions were wrongful. The more specific information that you provide to us, the better we will be able to assist you.

Please See ATTACHED STATEMENT

☒ Check here if additional pages or documents are attached.

Deena Peter On Behalf of Ralph E. Price    2/2/22
Signature of complainant    Date Signed

Ralph E Price
Print or type name of complainant

It is a third-degree felony for any person to knowingly and willfully make any false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the Department of State. *See* § 817.155, Fla. Stat.

*THIS COMPLAINT IS NOT CONFIDENTIAL. ONCE IT IS FILED WITH THE DEPARTMENT OF STATE, IT BECOMES A PUBLIC RECORD.*

**From: Diana Peters** dianapeters54@yahoo.com
**Subject: Complaint Against Third Party Registration Organizations**
**Date: Feb 20, 2022 at 2:47:10 PM**
**To: Diana Peters**
diana_peters2011@hotmail.com

I, Diana E Peters, on behalf of my Uncle Ralph E Price, am filing a complaint against an unknown 3PVRO who went into Anchor Care & Rehabilitation Nursing Center 1515 Port Malabar Blvd NE, Palm Bay, FL 32907 where Ralph E Price was a resident. On or about September 25th, 2019, my uncle was approached & assisted by a 3rd party vendor representative who was on the premises at Anchor Care to help register nursing home residents to vote in the upcoming 2020 general election. Of my knowledge, no family was consulted or made aware of this event. My uncle has never been registered to vote nor voted in any state, county, or city election since birth due to his mental incapacitation. He has been a welfare recipient all his life due to this handicap and has the cognitive function of a preschooler. He typically needs coaching or queuing to answer most questions of mild complexities. Due to the highly reported abuse of fraud/potential fraud in Nursing Homes among nursing home residents I decided to check the website of Lori Scott's Supervisor of Elections of Brevard County and found that indeed, my Uncle Ralph had been registered as a Democrat, Voter Registration #127241057 on Sept. 25, 2019, Precinct 303. My uncle could not tell you who the candidate was or what the political parties of this nation are. It is obvious to me as his family member who has known him most his life that he was either coached on the pollical party selection or the third-party representative chose for him, their own political party affiliation. I called the Supervisor of Elections Brevard County Fl and spoke with a lady named Ginger (who took my complaint of this voter irregularity at the very least and bordering upon voter fraud at best). Ginger, at the Supervisor of Election Offices assured me after taking down pertinent information that a ballot had not been cast in his name for the 2020 election however she did tell me that a "voter mail-in ballot' had been requested for the upcoming Special Election of city council seat #5 on Tuesday March 4th, 2022, here in Palm Bay Fl since Ralph is a resident. I talked with my uncle Ralph at the nursing home to ask if he has asked for this mail-n ballot, he looked at me as if I had 3 heads! He had no idea what I was asking. Please investigate my concerns. If this has happened to my loved one in a nursing home, think of the millions across this country it could happen to. This practice of going into nursing homes across this nation by 3PVRO's needs to be thoroughly investigated and halted as fraud & abuse against those seniors with cognitive disfunction is high. I would appreciate a reply once you have an investigative answer.

Thank You Sincerely for your time and attention to this grave concern. Our Election Integrity for the future is at stake.

Diana Peters
1048 Tevis St. Se
Palm Bay, Fl. 32909
cell: 321-917-3459

2/15/2023 10:58 AM Filed Lee County Clerk of Courts

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA                                      CRIMINAL ACTION

STATE OF FLORIDA                    CASE NO:   CF- - -()   23CF99
                                               (JDM)
vs.                                            DCM TRACK: Complex

RODERICA RENEE CODY

**Race:** Black    **Sex:** Female
**D.O.B.:**5/19/1988

---

**INFORMATION FOR:**

1) Fraud Submit False Voter Registration Or Information, F.S. 104.011 (2), Third Degree Felony
2) Criminal Use of Personal Identification Information, F.S. 817.568(2)(a), Third Degree Felony

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA:

AMIRA D. FOX, State Attorney of the Twentieth Judicial Circuit of the STATE OF FLORIDA, by and
through the undersigned Assistant State Attorney, prosecuting for the STATE OF FLORIDA, in the
County of Lee under oath information makes that Roderica Renee Cody,
Count(s):

1.   Between November 06, 2021 and November 18, 2021 in Lee County, Florida, did willfully
submit any false voter registration information in violation of Florida Statute 104.011
(2);777.011

2.   Between November 06, 2021 and November 18, 2021 in Lee County, Florida, did willfully
and without authorization fraudulently use or possess with intent to fraudulently use, personal
identification information concerning an individual to wit: Rhianna Bryn McMullen without first
obtaining that individual's consent in violation of Florida Statute 817.568(2)(a);777.011

against the peace and dignity of the STATE OF FLORIDA,

                                        AMIRA D. FOX
                                        STATE ATTORNEY

Page 1

App. 0471

BY: _____

James D. Miller
Assistant State Attorney
Florida Bar Number 0048425
2000 Main Street
Fort Myers, Florida 33901
(239) 533-1000
eService: eservice@sao20.org

STATE OF FLORIDA, COUNTY OF LEE

Personally appeared before me, James D. Miller, Assistant State Attorney of the Twentieth Judicial Circuit of the State of Florida, being personally known to me, who being duly sworn, says that this information is filed in good faith and certifies that testimony under oath from the material witness or witnesses for the offense has been received which if true, would constitute the offense therein charged.

_____

James D. Miller

Sworn to and Subscribed before me, by means of ☒ physical presence or ☐ online notarization, this 14th day of February , 2023, by James D. Miller, personally known to me.

_____     My commission expires: _____
Notary Public

BETTYANN CEFOLE
Commission # GG 957675
Expires March 10, 2024
Bonded Thru Troy Fain Insurance 800-385-7019

RE: Roderica Renee Cody, CF- -

Page 2

OFFICE OF THE STATE ATTORNEY
TWENTIETH JUDICIAL CIRCUIT OF FLORIDA
NOTICE TO THE CLERK

TO:   Clerk of the Courts, Lee County

RE:   Roderica Renee Cody, defendant        Court Case Number:   CF- -

Race: Black          Sex: Female          *23CF99*

D.O.B.: 5/19/1988

Date of Arrest:                          Agency Booking Report No.  22-000001SI

OBTS:                                    Agency Name: State Attorney's Office

BOOKING CHARGES

Count(s):

 Number of Counts: 1 - Fraud Submit False Voter Registration Or Information, F.S. 104.011 (2),
Third Degree Felony
 Number of Counts: 1 - Fraudulent Use of Personal Identification Information, F.S. 817.568(2), Third
Degree Felony

SAO DISPOSITION

Count(s):

 1. File as Charged/Capias:     104.011 (2)
          Fraud Submit False Voter Registration Or Information
          Third Degree Felony
 2. File as Charged/Capias:     817.568(2)(a)
          Criminal Use of Personal Identification Information
          Third Degree Felony

AMIRA D. FOX

Distribution:
 Clerk of Court
 Defendant / Defense Counsel -
 Sheriff's Department - Jail
 Arresting Agency - State Attorney's Office
 SAO File

STATE ATTORNEY

Date: 02/14/2022

BY:

James D. Miller
Assistant State Attorney
Florida Bar Number 0048425
2000 Main Street
Fort Myers, Florida 33901
(239) 533-1000
eService: eservice@sao20.org

Distribution:
   Clerk of Court
   Defendant / Defense Counsel -
   Sheriff's Department - Jail
   Arresting Agency - State Attorney's Office
   SAO File

Filing # 167545735 E-Filed 02/25/2023 06:03:36 AM

**ORIGINAL**

## ARREST / NOTICE TO APPEAR
**Lee County Sheriff**

1 Arrest
2 Notice To Appear — 1

Juvenile

OBTS NUMBER: S O O 5 O 9 3 4 7

| AGENCY ORI NUMBER | CASE NUMBERS | AGENCY REPORT NUMBER | AGENCY ARREST NUMBER |
|---|---|---|---|
| F L 0 3 6 0 0 0 0 | 23CF000099, 23CF000099 | 23-084480 | 23-084480 |

**ADMINISTRATIVE**

CHARGE TYPE
Check as many as apply
☐ 1 FELONY  ☐ 3 MISDEMEANOR  ☐ 5 ORDINANCE
☐ 2 TRAFFIC FELONY  ☐ 4 TRAFFIC  ☐ 6 OTHER

| WEAPON SEIZED / TYPE | DATE OF OFFENSE |
|---|---|
| 1 Yes 2 No ☑ 2 | 2/24/2023 |

LOCATION OF ARREST (Include Name of Business)

LOCATION OF OFFENSE (Business Name, Address)

| DATE OF ARREST | TIME OF ARREST | BOOKING DATE | BOOKING TIME | JAIL BOOK DATE | JAIL BOOK TIME | FINGERPRINTED | BY |
|---|---|---|---|---|---|---|---|
| 2/24/2023 | 1709 | 2/24/23 | 2231 | 2/24/23 | 1951 | ☐ Identification Only ☐ Criminal | ☐ AFIS |

| JAIL NUMBER | COUNTY ID NUMBER | OTHER LOCAL NUMBER | FDLE NUMBER | DOC NUMBER | FBI NUMBER |
|---|---|---|---|---|---|
| 964 469 | 247063 | 507892 | 06062690 | | 956839TC9 |

**DEFENDANT**

| NAME (Last, First, Middle) | ALIAS |
|---|---|
| CODY, RODERICA RENE | See Narrative |

| RACE | SEX | DATE OF BIRTH OR AGE | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR | COMPLEXION | BUILD |
|---|---|---|---|---|---|---|---|---|
| W - White B - Black  I - American Indian  O - Oriental / Asian  B | F | 5/19/1988 | 5'05" | 250 | BRO | BLK | BLK | HBULD |

SCARS, MARKS, TATTOOS, UNIQUE PERSONAL FEATURES (Location, Type, Description)
See Narrative

INDICATION OF Alcohol Influence Drug Influence  Y  N  UNK

| LOCAL ADDRESS (Street, Apt Number) | (City) | (State) | (Zip) | PHONE | RESIDENCE TYPE |
|---|---|---|---|---|---|
| TRANSIENT FORT MYERS, 33901 | | | | (239)204-7969 | ☐ 1 City ☐ 2 County ☐ 3 Florida ☐ 4 Out of State |

| PERMANENT ADDRESS (Street, Apt Number) | (City) | (State) | (Zip) | PHONE | ADDRESS SOURCE |
|---|---|---|---|---|---|

| BUSINESS ADDRESS (Name, Apt Number) | (City) | (State) | (Zip) | PHONE | OCCUPATION |
|---|---|---|---|---|---|

| DRIVER'S LICENSE STATE / NUMBER | SOCIAL SECURITY NUMBER | INS NUMBER | PLACE OF BIRTH | CITIZENSHIP |
|---|---|---|---|---|
| FL C300736886790 | | | FLORIDA, FL - FLORIDA | |

**CO-DEF**

| CO-DEFENDANT NAME (Last, First, Middle) | RACE | SEX | DATE OF BIRTH OR AGE | |
|---|---|---|---|---|
| | | | | ☐ 1 Arrested ☐ 2 At Large  ☐ 3 Felony ☐ 4 Misdemeanor ☐ 5 Juvenile |

| CO-DEFENDANT NAME (Last, First, Middle) | RACE | SEX | DATE OF BIRTH OR AGE | |
|---|---|---|---|---|
| | | | | ☐ 1 Arrested ☐ 2 At Large  ☐ 3 Felony ☐ 4 Misdemeanor ☐ 5 Juvenile |

**CODE**

ACTIVITY  N N/A  P Possess  S Sell  B Buy  T Traffic  R Smuggle  D Deliver  E Use  K Dispense / Distribute  M Manufacture / Produce / Cultivate  Z Other  TYPE  N N/A  A Amphetamine  B Barbiturate  C Cocaine  E Heroin  H Hallucinogen  M Marijuana  O Opium / Heroin  P Paraphernalia / Equipment  S Synthetic  U Unknown  Z Other

**CHARGE**

| CHARGE DESCRIPTION | *FRAUD - SUBMIT FALSE VOTER REGISTRATION OR INFORMATION - 23CF000099 | COUNTS 1 | ☑ F S ☐ Ord | STATUTE VIOLATION NUMBER 104.011(2) | BOND $ 5000.00 |
|---|---|---|---|---|---|

| ACTIVITY N | DRUG TYPE | AMOUNT / UNIT | GOC Not Applicable |
|---|---|---|---|

☐ PC#  ☐ CAPIAS  ☐ AC  ☐ BW  ☐ FW  ☐ PW  ☐ JUV PU  ☐ CITATION  DATE ISSUED _____  ☐ Wnt Att  ☐ Domestic Violence  ☐ Domestic Violence Injury  ☐ Order of Arrest

| CHARGE DESCRIPTION | FRAUD-IMPERSON - USE POSS ID OF ANOTHER PERSON WO CONSENT - 23CF000099 | COUNTS 1 | ☑ F S ☐ Ord | STATUTE VIOLATION NUMBER 817.568(2a) | BOND $ 5000.00 |
|---|---|---|---|---|---|

| ACTIVITY N | DRUG TYPE | AMOUNT / UNIT | GOC Not Applicable |
|---|---|---|---|

☐ PC#  ☐ CAPIAS  ☐ AC  ☐ BW  ☐ FW  ☐ PW  ☐ JUV PU  ☐ CITATION  DATE ISSUED _____  ☐ Wnt Att  ☐ Domestic Violence  ☐ Domestic Violence Injury  ☐ Order of Arrest

**NOTICE TO APPEAR**

☐ Mandatory Appearance in Court

☐ You need not appear in Court but must comply with instructions on Notice To Appear page

| LOCATION (Court, Room Number, Address) | | | | | |
|---|---|---|---|---|---|
| MONTH March | DAY 27 | YEAR 2023 | TIME 08:30 | ☑ AM  ☐ PM |

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED  I UNDERSTAND THAT SHOULD I WILLFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST SHALL BE ISSUED

SIGNATURE OF DEFENDANT / JUVENILE AND PARENT OR CUSTODIAN

**ADMINISTRATIVE**

☐ Miranda Warning

HOLD FOR OTHER AGENCY
NAME

VERIFIED BY

☐ ADULTS ONLY
Hold for First Appearance
Do Not Bond out    Reason

I SWEAR / AFFIRM THE ABOVE AND ATTACHED STATEMENTS ARE TRUE AND CORRECT

OFFICER'S / COMPLAINTANT'S SIGNATURE  #95115
JOSEPH TOLLEY  /1995115

NAME (Printed)  ID NO / TROOP

SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS 24 DAY OF FEB 2023

Name / Title of Person Authorized to Administer Oath

13-116

| DATE | | BOND CHARGE # | BOND CHARGE # |
|---|---|---|---|
| BOND TYPE  1 Surety  2 Cash  3 Surety  4 Bail /  Bond  5 Cert  6 Other | TYPE | TYPE |
| RETURNABLE COURT DATE | RETURNABLE COURT TIME  ☐ AM ☐ PM |
| RELEASE DATE | RELEASE TIME  ☐ AM ☐ PM |
| RELEASE OFFICER | |

REPORT ENTERED BY

NAME (Printed)  ID NO / TROOP

HSMV 60005 (Rev 7/97)

PAGE 1 OF 2

U230224059 / 621770

App. 0475

# PROBABLE CAUSE STATEMENT

| ADM | | | | | | | | | | | | 1 Offense | 1 | Juvenile | | 1 Original | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | 2 Arrest | | | | 2 Supplement | |

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| F L 0 3 6 0 0 0 | Lee County Sheriff | 2 3 - 0 8 4 4 8 0 |

| Original Date Reported | Case Reference | CLERK CASE NUMBERS |
|---|---|---|
| 0 2 2 4 2 3 | CODY, RODERICA RENE | 23CF000099, 23CF000099 |

**DEFENDANT ALIAS**
RODERICA R CODY
Roderica Cody
Shayla Cody

**DEFENDANT SMTI:**
TYPE:    LOCATION    DESC: Three Inter-Linked Hearts
TYPE.    LOCATION:    DESC: Tigger and "Detrick and Roderica"

On the listed date and time members of the Lee County Sheriffs Office, Fugitive Warrants Unit came into contact with the listed defendant at the stated location.

At this time a computer wants and warrants check was conducted and it was discovered that this subject had an outstanding Felony Warrant for their arrest.

Once the warrant was confirmed the defendant was placed under arrest and transported to the Lee County Sheriff's Office Jail for booking without incident.

*(left margin, vertical text: NARRATIVE / CONTINUATION)*

| Report Contains | | Related Report Number(s) | |
|---|---|---|---|

| Officer(s) Reporting | ID Number(s) | Troop | Date |
|---|---|---|---|
| TOLLEY, JOSEPH A | 1995115 | | |

| Officer Reviewing (if Applicable) | ID Number | Routed To | Referred To | Assigned To | By | Date |
|---|---|---|---|---|---|---|

| Case Status | | | | Date Cleared | Arrest Number | Number Arrested |
|---|---|---|---|---|---|---|
| | 1 Arrest   3 Unfounded   2 Exceptional | A - Adult   J - Juvenile | A | | 23-084480 | |

| Exception Type | | | | | |
|---|---|---|---|---|---|
| 1 Extradition Declined | 2 Arrest on Primary Offense Secondary Offense Without Prosecution | 3 Death of Offender 4 V/W Refused to Cooperate | 5 Prosecution Declined 6 Juvenile / No Custody | OBTS Number | Page 2 of Page 2 |

*(left margin, vertical text: HSMV 60611   ADMINISTRATIVE)*

App. 0476

2/15/2023 10:58 AM Filed Lee County Clerk of Courts

LEE COUNTY
SHERIFF'S OFFICE
WARRANTS UNIT
2/15/2023 11:11 AM

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA                                    CRIMINAL ACTION

STATE OF FLORIDA                    CASE NO: CF- - - ()  23CF99
                                                (JDM)
vs.

RODERICA RENEE CODY

---

Race: Black  Sex: Female                          **Division S**
D.O.B.: 5/19/1988  Height: 5-06  Weight: 240
Hair Color: Brown  Eye Color: Brown
Address: 2251 Barden Street, #B
          Fort Myers, FL 33916

---

CAPIAS FOR:

Count(s):

1) Fraud Submit False Voter Registration Or Information, F.S. 104.011 (2), Third Degree Felony
2) Criminal Use of Personal Identification Information, F.S. 817.568(2)(a), Third Degree Felony

In the name and by the authority of the STATE OF FLORIDA, County of Lee to all and singular the
Sheriff's and other arresting officers of the State:

Whereas James D. Miller, Assistant State Attorney of the Twentieth Judicial Circuit of the State
of Florida, prosecuting for the STATE OF FLORIDA, in the County of Lee under oath information
makes that

**RODERICA RENEE CODY**

late of the County and State aforesaid, in the County and State aforesaid,

Count(s):

1.   Between November 06, 2021 and November 18, 2021 in Lee County, Florida, did willfully
submit any false voter registration information in violation of Florida Statute 104.011
(2);777.011

2.   Between November 06, 2021 and November 18, 2021 in Lee County, Florida, did willfully
and without authorization fraudulently use or possess with intent to fraudulently use, personal
identification information concerning an individual to wit: ███████████████ without first
obtaining that individual's consent in violation of Florida Statute 817.568(2)(a);777.011

RE: RODERICA RENEE CODY

STATE OF FLORIDA VS. RODERICA RENEE CODY

contrary to the Statute in such case made and provided and against the peace and dignity of the
STATE OF FLORIDA.
YOU ARE COMMANDED to forthwith arrest and bring the above-named defendant before a Judge
of our Lee County Court to be dealt with according to law.

WITNESS, my hand and seal of the Circuit Court of Lee County, Florida, this
15ᵗʰ day of _____February_____, 2023.

_____ D.C.
KEVIN KARNES
CLERK OF THE CIRCUIT COURT

The above named defendant is required to appear before the Judge of our Circuit Court in Courtroom D,
Lee County Justice Center, 1700 Monroe Street, Fort Myers 33901 on ____/____/2023 at
_____ AM/PM to answer the charge set out above.

The defendant is to be admitted to bail in the sum of $_____

Returnable: First Monday after service at 8:30 AM in Felony Arraignment Court.

SHERIFF'S RETURN

Received this Capias the 24ᵗʰ day of _____Feb_____, 2023.

and executed the same by delivering a true copy to:

_____Roberica Cody_____

the within named witness, in Lee County, Florida, on the 24ᵗʰ day of
_____Feb_____, 2023.

CARMINE D. MARCENO, JR. SHERIFF,
LEE COUNTY, FLORIDA
By: _____ #9515
Deputy Sheriff

WITNESS(ES) FOR STATE:
State Attorney's Office
Arresting Agency CR#. 22-00000ISI                    SAO Warrant #: 2792706

App. 0478

OFFICE OF THE STATE ATTORNEY
TWENTIETH JUDICIAL CIRCUIT OF FLORIDA

# Memorandum

**To.**    Lee County Sheriff's Department, Records Division

**From:**    State Attorney's Office, Felony Intake Division

**Re:**    Preliminary Extradition Instruction on Warrant For:

**Name·**    Roderica Rence Cody

**Race:**    Black    **Sex:** Female  **DOB:** 5/19/1988

**Charge:** 1) Fraud Submit False Voter Registration Or Information, F.S 104.011 (2). Third

Degree Felony

2) Criminal Use of Personal Identification Information, F.S. 817.568(2)(a), Third

Degree Felony

**Date:**  02 / 14 / 2022    **Initials:**  JDM

FOR PURPOSES OF ENTRY OF THE ABOVE-DESCRIBED WARRANT INTO THE FCIC AND NCIC COMPUTER
SYSTEMS, OUR PRELIMINARY INSTRUCTIONS REGARDING THE LIMITS OF EXTRADITION FOR THIS
WARRANT ARE AS CHECKED BELOW:

- ☐    ENTIRE U S.
- ☐    CONTINENTAL U.S.
- ☐    EASTERN AND SOUTHWEST U.S.
- ☐    EASTERN U.S.
- ☐    SOUTHEAST U.S.
- ☐    ADJACENT STATES
- ☒    FLORIDA ONLY (FCIC ONLY)

THE ABOVE INSTRUCTIONS ARE VALID AT THE TIME OF ISSUANCE ONLY. PLEASE RECONFIRM
EXTRADITION WITH STATE ATTORNEY'S OFFICE PRIOR TO ACTUAL EXTRADITION.

THE STATE ATTORNEY'S OFFICE RESERVES ITS RIGHT NOT TO EXTRADITE ANY SUBJECT AT ANY TIME,
BASED UPON THE CASE SITUATION, FUGITIVE'S LOCATION, OR OTHER FACTORS EXISTING AT THE TIME THE
FUGITIVE IS LOCATED.

**THIS MEMO SHOULD BE ATTACHED TO THE RECORDS COPY OF WARRANT**

JDM:MJD

App. 0479

# IN THE CIRCUIT COURT
# IN AND FOR LEE COUNTY, FLORIDA

## AFFIDAVIT FOR A CAPIAS

| | |
|---|---|
| **Defendant:** | Cody, Roderica Renne |
| **Race/Sex:** | B/F |
| **DOB:** | 05/19/1988 |
| **SSN:** | ███████████ |
| **FL. Driver's License:** | C300736886790 |
| **Address:** | 2251 Barden Street #B Fort Myers, FL 33916 |

Office of the State Attorney investigative case # 22-000001SI

Before me this day personally appeared Investigator Robert Nichols, who being by me first duly sworn, deposes and says that he has probable cause to believe and does believe that the laws of the State of Florida have been violated on, about, and between the dates of December 1, 2021 and January 21, 2022, to wit:

**Submitting false voter registration information, a violation of Florida State Statute 104.011(2).**

**Unlawfully possession of the personal identification information of another person, a violation of Florida State Statute 817.568**

### Synopsis:

Government elections in the United States are facing increasing security threats and concerns over election integrity. Free and fair elections are a central feature of our democracy. Legislators have established laws that must be followed and enforced to support this integrity. Part of this process begins with getting our citizens properly registered to vote.

Here in Florida, third-party voter registration organizations, referred to as a 3PVRO, are often used to attempt to get as many eligible voters to the polls as possible during an election. These organizations must be Registered with State of Florida Division of Elections and are generally described as an organization that collects voter registration applications and serves as a fiduciary to the applicant.

This investigation will show that six canvassers, specifically Roderica Cody, employed by Hard Knocks Strategies LLC, a 3PVRO submitted twenty-nine fraudulent voter applications to the Lee County Office of the Supervisor of Elections. For the purposes of this capias, Ms. Cody is only being charged related to the application concerning ██████████████.

### Background of Hard Knocks Strategies LLC:

Robert Nichols, an Investigator for the office of the State Attorney of the 20th Judicial Circuit of Florida, was contacted by Maybety Bonachea, the Director of Voter Registration for the Office of the Supervisor of Elections in Fort Myers, Lee County, Florida. Mrs. Bonachea advised her

App. 0480

office has identified several suspicious Voter Registration Applications that have been submitted by a third-party organization, that appear to have been completed and signed by the same group of people based on their handwriting

Beginning on November 10, 2021, the Lee County Elections Office has received over 1200 Voter Registration Applications from "Hard Knocks Strategies LLC", registration number 3P19-53. The person who came to Office of the Supervisor of Elections to submit the applications was identified as Dillion Douglas Stafford, a white male with a date of birth of October 18, 1992. Mr. Stafford has been identified as a former supervisor and worked for Hard Knocks Strategies LLC. Concerned about the possible fraudulent applications, Mrs. Bonachea began to scrutinize all the application submitted by Mr. Stafford, and believed she identified approximately twenty-nine that were fraudulent.

Investigator Nichols was also contacted by Marsha Carpenter from the Voter Registration for the Office of the Supervisor of Elections in Punta Gorda, Charlotte County, Florida. Mrs. Carpenter advised her office has identified twenty-nine suspicious Voter Registration Applications that have been mailed to their office by Hard Knocks Strategies LLC, that appear to have been completed and signed by the same person based on their handwriting. Mrs. Carpenter advised her office has contacted several of these applicants and they have confirmed they are unaware of and did not sign these applications, verifying the fraud. This report only focuses on the Lee County crimes, but it goes to show that the problem is occurring in other parts of the 20th Judicial Circuit and that Hard Knocks Strategies LLC in the common denominator.

According to the home page on the web-site for Hard Knocks Strategies LLC, the company is described as:

*"From history-making Gubernatorial upsets, record-breaking Senate races, and ground-breaking ballot initiatives, to the leading grassroots advocacy groups, nonprofits and coalitions fighting for Democratic values across the state and country, Hard Knocks Strategies is the go-to integrated strategy firm in Florida for reaching, persuading and mobilizing communities of color.*

*Headquartered in the center of Democratic stronghold Broward County, we are rooted in the communities we work with and are uniquely placed to identify, engage and motivate low-propensity voters. We specialize in campaigns in FL, GA and TX, and our team has decades of experience across the most successful field, digital, comms and political outreach operations in the country.*

*Hard Knocks Strategies is one of the few firms in Florida with direct ties to the community. We believe in recruiting and developing leaders directly from the grassroots communities we work with, leaving a legacy of long-lasting community empowerment".*

In addition, under the *Careers Section* of the website, the position of a *Canvasser* is described as:

*"This position is responsible for engaging in generating highly qualified leads by engaging in door-to-door canvassing. While doing so it is the responsibility of the canvasser to record accurate data regarding the information of prospective customers, and the targeted market area".*

## Twenty-nine Lee County suspicious applications:

Investigator Nichols and Mrs. Bonachea reviewed each of the twenty-nine Lee County suspicious applications. There are twelve different sections that must be filled in, to include the status of one's citizenship, full name, date of birth, the last four digits of their social security

App. 0481

number, and a signature. Many of the applications were found to be incomplete and hard to read. Investigator Nichols agrees that many of the applications have the same handwriting, but not from the same person. Of the twenty-nine applications, it appears some of the handwriting can be identified as being prepared by the same subject, but there are different subjects that prepared portions of these applications. Based on the handwriting, it appears that there are possibly six subjects who have filled out these groups of suspicious Lee County applications.

Investigator Nichols researched the suspicious applications and attempted to identify each of the individual applicants. Many of the applications were illegible, hard to read and lacked important descriptors. For the ones that could be read, a computer background check determined that some of the last four digits of the social security numbers were often wrong, and some of the dates of births or even the spelling of the names was incorrect. Several of these applicants were determined to be homeless and were unable to be located. On January 3, 2022, having completed a mostly unsuccessful computer search, Investigator Nichols attempted to locate these applicants at their residences.

The following Lee County Voter Registration Applicants have been located and they confirmed they did not complete the applications in question and are a victim of fraud. The remaining suspicious applicants could not be located.



*I located* _____ *at her residence, she has never seen this application before and that is not her signature. This is a case of fraud.* The investigation showed the canvasser was identified as **Eugene Florence.**



*I located* _____ *at his residence, he has never seen this application before and that is not his signature. This is a case of fraud.* The investigation showed the canvasser was identified as **Eugene Florence.**



SSN. _____

█████████████████████ *This is the address listed on his application.  I confirmed he does not live at this address, its an apartment building and the Property Manager does not know him.*

█████████████████████ *This is the address listed on his DAVID and I confirmed he does live here.  I located* ███████ *in Health Park Hospital, he advised he did not fill out this application and that is not his signature.  He is the victim of fraud.  The investigation showed the canvasser was identified as* **Antonio Thomas.**



█████████ *no longer lives here, I gave the resident my number and asked to have Mr. Young to call me.* █████████ *called me, he lives at* █████████████████████

*The information on his application is correct, but he did not fill out an application and knows nothing about it.  My attempts to get a formal interview with* █████████ *have been unsuccessful, he appears to be avoiding me.  This is a case of fraud.  The investigation shows the canvasser was identified as* **Tyrell Henderson.**



Suspicious misspelled signature

*I spoke with her on the phone, she is already a registered voter.  She did not take part in the application dated 11/06/2021, someone fraudulently submitted the application with mostly incorrect or ½ information.  On 01/06/2022 I met with* █████████ *she signed an affidavit she did not fill out this application.  This is a case of fraud.  The investigation shows the canvasser was identified as* **Roderica Cody.**



App. 0483

Suspicious signature. *I located* ███████ *at her house, this is not her signature, does not know anything about this application. This is a case of Fraud, but the identity of the canvasser is unknown.*

### Interview of Dillion Stafford:

On 01/10/2022, Investigator Nichols obtained a sworn statement from Dillion Stafford at the Office of the State Attorney. He explained that he was a field organizer/officer supervisor for Hard Knocks Strategies LLC in the Fort Myers Office. His job was to hire and supervise the canvassers who solicit and record data regarding the personal information of prospective voters, in a targeted market area, for the purpose of getting them registered to vote. These canvassers received $18.00 an hour for their efforts.

He advised that Hard Knocks Strategies LLC was hired by the Florida Rights and Restoration Coalition (FRRC). The organization's goals are to restore the voting rights of Floridians with past criminal convictions. Both organizations claim to be advocacy groups that fight for Democratic values.

Mr. Stafford was hired by Shaynna White, but the Fort Myers office was set up by Spencer Bowman. Mrs. White and Mr. Bowman conducted the training for Mr. Stafford to teach him how to run the office. Mr. Stafford called himself a "glorified paper collector", and advised he was instructed to hire just about anyone who walked into the office seeking a job. When his canvassers met with potential voters out in the street, if they were convicted felons but have yet to pay off their court fines, they were instructed to call the FRRC who would pay off their court costs on their behalf.

At the end of each day, the canvassers would bring their applications to Mr. Stafford at the Fort Myers Office, and he would electronically submit them to the Hard Knocks Strategies LLC's Quality Control Office to be reviewed. Everything he submitted was returned and he was told to deliver them to the Office of the Supervisor of Elections. When he questioned suspicious applications, pointing out that the handwriting was the same, he was told by Quality Control to let the Supervisor of Elections determine if it is valid or fraudulent.

Mr. Stafford advised that the Florida Rights and Restoration Collation set a goal with Hard Knocks Strategies LLC of obtaining 40,00 new registered voters in Florida. In Lee County, there were only 50-60 applications being submitted each day, far below the rest of the state. Mr. Stafford was told to have eleven canvassers out on the street each day, and to hire *anyone* that was seeking a job. He instructed each of his employees to not file any fraudulent forms as it will be a criminal violation and a felony of the 3rd degree. He further advised that the canvassers were not paid incentives or bonuses for the number of applications that were submitted. But Mr. Stafford did advise that Hard Knocks Strategies LLC instructed him to have his employees call him every hour to report the number of applications they had obtained. If that number was not satisfactory, Mr. Stafford was instructed to send them home or to terminate them.

Mr. Stafford was shown the twenty-nine suspected fraudulent applications and he was able to identify the canvasser who submitted most of the applications. Mr. Stafford supplied a flash drive that he copied from his personal computer that contained these records. Mr. Stafford identified the six canvassers who submitted the fraudulent applications as Myrick Shackleford,

Antonio Thomas, Tyrell Henderson, Eugene Florence, Alta' Shae Lawrence, and Roderica Cody.

While convicted felons who have served their sentences and paid their debts to society should be given a chance, it should be noted that it appears that Hard Knocks Strategies LLC conducts no or limited background checks on their canvassers who are asked to handle sensitive information   For example, Eugene Florence at the time of his collection of applications was a fifteen-time convicted felon.  At the time of collection of the suspicious documents, Mr. Florence was out on bond on two cases in Lee County (the date of the event in the second arrest was before he had bonded on the first arrest, which is why his bond could not be legally revoked).  In those cases, Mr. Florence ultimately plead as a Habitual Felony Offender and is currently serving a five-year prison sentence.

Ms. Cody as well, had been convicted of Battery two or more times along with petit theft.

On February 2, 2022, at approximately 10:20 am, Investigator Nichols and Investigator Robert Lawrence located Myrick Shackleford at his residence located at 2418 Midway Avenue in Fort Myers.  Mr. Shackleford agreed to give a sworn statement and confirmed he was employed by Hard Knocks Strategies LLC for a short time in late 2021.  After a short discussion, Mr. Shackleford acknowledged that during his two weeks of employment, he submitted approximately fourteen applications.  He advised some of the applications he submitted were valid, having met with members of the public and properly obtained their information and signatures   But he advised on the rest, he was given the personal information belonging to members of the public by his cousin, Antonio Thomas.  Mr. Shackleford used this information to fraudulently fill out the applications, and then he personally signed them using the victim's name.  He further advised that in addition to Mr. Thomas, another friend was also present and did the same thing, his name was Tyrell Henderson.  Mr. Shackleford advised he gave his paperwork to Mr. Stafford when he was done at the end of his workday.

It was apparent that Mr. Shackleford, along with his neighborhood friends, were not part of an organized criminal conspiracy to corrupt the election process.  They were not instructed by their employer, Hard Knocks Strategies LLC, to fraudulently fill out these applications and submit them to their supervisor.  These friends took it upon themselves, to decide that they were not going to go out onto the hot streets and properly obtain these applications.  Instead, they were going to use the personal identity information of others supplied by Antonio Thomas to sit in their air-conditioned homes and fraudulent fill out and later submit the applications to their supervisor, Dillion Stafford.

Investigator Nichols has researched the Florida Statutes and guidelines for these Third-Party Voter Registration Organizations.  An on-line training guide does state that these organizations must promptly deliver all completed, incomplete and voided voter registration application to the Office of the Supervisor of Elections within 14 days.

Investigator Nichols believes Hard Knocks Strategies LLC, the corporation, has submitted at least fifty-eight fraudulent voter registration applications to The Supervisor of Elections in Lee and Charlotte Counties.  Investigator Nichols sent a subpoena to Hard Knocks Strategies LLC seeking to confirm the identities of the canvassers who fraudulently submitted the applications.  With the assistance of Attorney David Geller, who represents the company, Investigator Nichols

App. 0485

received confirmation of the identities of the canvassers who filled out the fraudulent applications from Lee County. Attorney Geller also identified the canvasser from Charlotte County, who is suspected of filling out those fraudulent applications.

In regard to Lee County, probable cause has been established showing the following canvassers submitted fraudulent voter registration applications. This evidence is supported from the files obtained from Dillon Stafford, subpoena verification directly from Attorney Geller and Hard Knocks Strategies LLC, along with the admission from co-defendant Myrick Shackleford.

- Antonio Thomas willfully submitted at least four false voter registration applications, committing a felony of the third degree  These victims are ████████████████████ ██████████████████████

- Eugene Florence willfully submitted at least six false voter registration applications, committing a felony of the third degree  These victims are█████████████████████ ████████████████████████

- Roderica Cody willfully submitted at least three false voter registration applications, committing a felony of the third degree  These victims are██████████████████ ██████████████████████

Investigator Nichols requests a Capias be issued charging Roderica Cody with submitting false voter registration information, a violation of Florida State Statute 104.011(2) and the unlawful possession of the personal identification information of another person, a violation of Florida State Statute 817.568.

I hereby swear and affirm that the above information did occur in Lee and Charlotte Counties, part of the Twentieth Judicial Circuit in Florida and is true and correct to the best of my knowledge and belief.

/s/ R. Nichols
Investigator Robert Nichols #1401
OFFICE OF THE STATE ATTORNEY
20th Judicial Circuit of Florida

Subscribed to and sworn before me on this the 26th day of January 2023, by Bettyann Cefole who is personally known to me

Florida Notary
OFFICE OF THE STATE ATTORNEY
20th Judicial Circuit

BETTYANN CEFOLE
Commission # GG 957675
Expires March 10, 2024
Bonded Thru Troy Fain Insurance 800-385-7019

App. 0486

**RODERICA RENEE CODY**





**WAHID VIZCAINO GELLER**

Khurrum B. Wahid, Esq.
Carmen M. Vizcaino, Esq.
David A. Geller, Esq.
Est. 2004

| MIAMI | ATTORNEYS AT LAW | FT. LAUDERDALE |

April 10, 2023

Brad McVay
Office of the General Counsel
Florida Department of State
500 South Bronough Street, Suite 100
Tallahassee, FL 32399

> RE:   Hard Knocks Strategies, LLC Payments
> DOS-3PVRO-23-01
> DOS-3PVRO-23-02

Dear Mr. McVay:

Enclosed are two separate checks. One is for $32,400.00 (check No. 1098) to resolve the November 29, 2022 fine letter. The second check is for $2,000.00 (check No. 1097) to resolve the September 29, 2022 fine letter. Please confirm upon receipt.

**HARD KNOCKS RESERVES ALL RIGHTS AND NOTHING IN THIS LETTER IS TO BE DEEMED A WAIVER OR ADMISSION. THE PAYMENT OF THE FINES ARE NOT TO BE DEEMED AN ADMISSION BY HARD KNOCKS STRATEGIES, LLC.**

Sincerely,

*/s/ David Geller*
David Geller, Esq.


**/enclosures – checks No. 1098 and 1097**

# RECEIVED

APR 1 1 2023

Office of the General Counsel

App. 0488

## 3PVRO Fines

I. **Fine Letters (2021-2016)**
   A. **2021**
      a. Concord Management, Ltd – 5/17/2021
   B. **2020**
      a. The Voter Participation Center – 9/28/2020
      b. Real Women Radio Foundation – 9/28/2020
      c. Organize Florida Education Fund – 10/8/2020
      d. The Florida Democratic Party – 10/9/2020
      e. Florida Immigrant Coalition, Inc – 12/15/2020
      f. Florida Rights Restoration Coalition, Inc – 12/15/2020
      g. Rebekah Williams – 12/21/2020
      h. Republican Party of Florida – 12/21/2021
   C. **2019**
      a. FieldWorks – 4/16/2019
      b. First Coast Leadership Foundation – 4/16/2019
      c. Florida Conservation Voters Education Fund – 4/16/2019
      d. UnidosUS – 4/16/2019
      e. Concord Management, Ltd – 10/16/2019
      f. HeadCount – 10/16/2019
      g. The Florida Democratic Party – 11/27/2019
      h. New Florida Majority – 11/27/2019
      i. The Florida Democratic Party – 12/9/2019
   D. **2018**
      a. Florida Democratic Party – 1/10/2018
      b. Chomp the Vote – 4/5/2018
      c. Clay County Democratic Executive Committee – 4/5/2018
      d. Florida Democratic Party – 4/5/2018
      e. Miami Dade College – 4/5/2018
      f. Citrus County Democratic Executive Committee – 8/6/2018
      g. Florida Democratic Party – 8/6/2018
      h. Miami Dade College – 8/6/2018
      i. Retreat at Valencia Apartments – 8/6/2018
      j. Concord Management LTD – 9/6/2018
      k. First Coast Leadership Foundation – 9/6/2018
      l. Florida Democratic Party – 9/6/2018
      m. Headcount – 9/6/2018
      n. Mi Familia Vota – 9/6/2018
      o. Florida Democratic Party – 9/18/2018
      p. Boynton Beach Community High School – 9/21/2018
      q. NexGen America – 9/21/2018
      r. Orange County Voters League, Inc. – 9/21/2018
      s. Palmer Trinity School ACLU Club – 9/21/2018
      t. Republican Party of Florida – 9/21/2018
      u. Sofia Andrade – 9/21/2018
      v. Organize Florida Education Fund – 10/1/2018
      w. NexGen America – 10/17/2018
      x. Headcount – 10/30/2018
      y. Count My Vote Florida – 11/15/2018
   E. **2017**
      a. Mr. Bradley Harper – 1/4/2017

b.  College of Central Florida – 1/4/2017
c.  Mr. Emmanuel Morel – 1/4/2017
d.  North Carolina League Conservation Voters – 1/4/2017
e.  The Voter Participation Center – 1/4/2017
f.  Arab American Community Center – 2/6/2017
g.  Community Voters Project – 2/6/2017
h.  Fellowship House – 2/6/2017
i.  Florida Institute for Reform and Empowerment – 2/6/2017
j.  Indian River County NAACP Branch #5151 – 2/6/2017
k.  Michael W. Davey Campaign – 2/6/2017
l.  NAACP Branch #5121 – 2/6/2017
m.  National Council of La Raza/Democracia USA – 2/6/2017
n.  Chriss Gallaway/Dawn Waggoner (Fieldworks) – 5/23/2017
o.  Mr. Michael Fitzpatrick (Sustainable Cities Initiative PAC) – 5/23/2017
p.  Jacksonville Branch NAACP – 6/28/2017

**F.  2016**

a.  Chris Gallaway/Dawn Waggoner (Fieldworks) – 1/8/2016
b.  Heartland Health Care Center – Jacksonville – 1/8/2016
c.  Mr. Lee Malis – 1/15/2016
d.  Leon "Rusty" Johnson – 2/4/2016
e.  Ms. Viktoriya Kozlova – 2/4/2016
f.  Working Man Tattoo – 3/4/2016
g.  Dharma Hookah Lounge LLC – 3/28/2016
h.  Operation GOTMFV – 3/28/2016
i.  Delta Sigma Theta Sorority – Glades Alumnae Chapter – 3/31/2016
j.  Florida Democratic Party – 4/8/2016
k.  Team Rocket – 6/14/2016
l.  Mr. Delano Allen – 6/15/2016
m.  Mr. Bobby Powell, Jr. – 6/15/2016
n.  Organize Now, Inc. – 6/15/2016
o.  Barbara C. Bernadin – 6/16/2016
p.  Asian Americans Advancing Justice – Atlanta – 6/30/2016
q.  HeadCount – 6/30/2016
r.  Julia Rose Pratt – 6/30/2016
s.  Republican Party of Florida – 6/30/2016
t.  Mr. Thomas L. Knapp – 8/15/2016
u.  Cynthia Fernandez – 8/22/2016
v.  Mr. Darren Coffield – 8/22/2016
w.  The Foundation Academy – 8/22/2016
x.  The Voter Participation Center – 8/22/2016
y.  Chris Gallaway/Dawn Waggoner (Fieldworks) – 9/6/2016
z.  HeadCount – 9/6/2016
aa.  King Jesus International Ministry – 9/6/2016
bb.  Miami Country Day School – 9/6/2016
cc.  NAACP Upper Pinellas County Branch – 9/6/2016
dd.  Vision Word Church – 9/6/2016
ee.  Concord Management, Limited – 11/15/2016
ff.  GRSG Company – 11/15/2016

**II.  First Florida, Inc. Criminal Referral and Investigation**
**III.  Organize Florida Education Fun – Referral to Prosecutors**
**IV.  3PVRO Fraud Complaints and Referrals to Law Enforcement**
**V.  New Florida Majority Education Fund: Referral, Fraud Complaints, and Investigation**



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

May 17, 2021

Concord Management, Ltd.
c/o Marsha Williams
2605 Maitland Center Parkway
Suite A
Maitland, Florida 32751

Re:  Violations of Third Party Voter Registration Law

Dear Ms. Williams:

The Department of State has received information from the Orange County Supervisor of Elections indicating that Concord Management, Ltd., which is registered as a third-party voter registration organization under ID number 3P-12-247, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine.  § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C.  For each application that is delivered later than 10 days from collection, the fine is $50.  Rule 1S-2.042(4)(d), F.A.C.  For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.  Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  Fines are capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat.

Records received from the Supervisor of Elections reflect that 1 voter registration application was delivered more than ten days after it was collected. The application was collected on December 22, 2020, but not delivered until January 30, 2021. Therefore, the Department is imposing a **$50.00 fine** pursuant to section 97.0575(3), Florida Statutes.

The Department notes that the application was not submitted in accordance with applicable regulations in that the date of collection was not included on the back of the application. It is the responsibility of each third-party voter registration organization to ensure that the date of collection and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"). As noted above, in the absence of the date of collection being printed on the back of the application, the date of collection is presumed to be the applicant's signature date. Here, the applicant signed on December 22, 2020, hence December 22, 2020, being the presumed date of collection.

You may either remit payment of this **$50.00** fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

Florida Department of State
Division of Elections
500 South Bronough Street, Suite 316
Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen O'Brien
Assistant General Counsel

Enclosure

cc:  Orange County Supervisor of Elections (w/o enclosures)

App. 0492



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

September 28 2020

Real Women Radio Foundation
c/o Nicole Dixon, Registered Agent
945 W. Michigan Ave., Suite 6C
Pensacola, Florida 32505

      Re:  Violation of Voter Registration Law

Dear Ms. Dixon:

     The Department of State has received information from the Escambia County Supervisor of Elections indicating that Real Women Radio Foundation, a registered third-party voter registration organization, has violated Florida law.

     Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

     The information the Department received indicates that Real Women Radio Foundation, using registration number 3P19-91, collected 31 voter registration applications on December 28, 2019, but failed to deliver those applications within 10 days.  Therefore, Real Women Radio Foundation would be liable for a fine in the amount of $1,000.00 under section 97.0575(3), Florida Statutes.

     However, please consider this letter as a warning. We are in receipt of the letter dated January 9, 2020, from your organization's Quality Control Manager, Annie J. Lawrence, M.S., indicating a good faith error in calculation of days resulting in the applications being delivered one day late, along with representation of full intent to comply with all applicable laws. If Real Women Radio Foundation again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action

**Office of the General Counsel**
R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399
850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com

App. 0495

against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen E. O'Brien
Assistant General Counsel
Florida Department of State

Enclosures

cc: Escambia County Supervisor of Elections (*via email w/out enclosures*)



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

September 28, 2020

The Voter Participation Center
c/o Registered Agent:
Dona L. Priebe, Corporation Service Company
1201 Hays Street, Suite 200
Tallahassee, FL 32301

      Re:  Violations of Voter Registration Law

Dear Ms. Priebe:

      The Department of State has received information indicating that the Voter Participation Center, which is registered as a third-party voter registration organization under ID number 3P-11-39, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C.  Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.

      As discussed further below, records received from your organization indicate that 129 voter registration applications were delivered to the Division of Elections more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. Further, 20 of those applications were collected prior to book-closing for the March 17, 2020 Presidential Preference Primary, but delivered after book-closing. 54 of those applications were collected prior to book-

closing for the August 18, 2020 Primary Election, but delivered after book closing. An additional 73 applications were undated but, based on the envelopes from the voters to the Voter Participation Center (VPC), appeared to also be untimely delivered. But for the statutory maximum fines per calendar year, the fines for all the violations would have been over $10,000.00.

The methods of collection of your organization have created a somewhat unique scenario in which, despite being provided an envelope to mail the completed application to their supervisor of elections office, many voters misunderstand and return their voter registration application to the VPC's return address on the mailing – a P.O. Box in Tallahassee – where the applications have then sat for weeks or months, missing the book closing deadline in many instances. Under section 97.0575(6), Fla. Stat. "The date on which an applicant signs a voter registration application is presumed to be the date on which the third-party voter registration organization received or collected the voter registration application."

Per the letters dated April 13, 2020, May 5, 2020, and August 10, 2020, from Jennifer Carrier and Beth VerSteeg, we understand that when the batches of applications eventually arrived at the VPC's Washington D.C. address on April 11, 2020, May 2, 2020, and August 7, 2020, respectively, the applications were promptly mailed to the Division of Elections between two and four days after receipt in Washington D.C. However, it is apparent from the circumstances admitted in the letters, as well as the signature and postmark dates of the voters returning the applications to VPC, that the applications were actually collected in VPC's Tallahassee P.O. Box, over which VPC has custody and control, much earlier than the receipt dates in Washington D.C. Although VPC prints the date received in Washington D.C. as the collection date on the back of the applications, this is not the actual date collected. Absent the actual date of collection to VPC's custody and control in Tallahassee, the date on which the applicant signs the application is presumed to be the collection date.

We understand, as stated in the aforementioned letters, that VPC doesn't believe it is seeking to collect any voter registration applications in Florida and that receipt from voters is unsolicited. However, it is apparent that the mode in which the materials are presented to the voter, with a direction to return the application, and bearing a prominent Tallahassee return address (notwithstanding that there is also enclosed a return envelope to the supervisor of elections), leads many voters to believe the proper course is to in fact return the application to VPC's address in Tallahassee. This is not a new occurrence. *See*, for example, the enclosed email from Ms. Carrier dated April 21, 2016, and the letter from Ms. VerSteeg dated August 18, 2016, as well as the warning letters from the Department of State due to untimely delivery dated August 22, 2016, and January 4, 2017. As such, because these same modes and methods have continued, it can no longer be asserted that collection is completely unplanned or unanticipated. Until the method is changed in some way, harm to voters who easily misunderstand the return mailing procedure is likely to recur.

The specific dates of collection and delivery of the 129 dated applications are set forth in the enclosed spreadsheet, with applications that missed book-closing specifically noted. Copies of the applications themselves are also attached. For the 129 untimely applications, including 74 that missed book-closing, the Department is imposing the maximum **$1,000.00** fine for violations committed during calendar year 2020 pursuant to section 97.0575(3), Florida Statutes.

App. 0498

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

*Colleen E. O'Brien*

Colleen E. O'Brien
Assistant General Counsel, Florida Department of State

Enclosures

cc:
Bradley R. McVay
General Counsel, Florida Department of State

App. 0499

| | |
|---|---|
| **From:** | Carrier, Jennifer <JCarrier@blankrome.com> |
| **Sent:** | Monday, April 13, 2020 5:58 PM |
| **To:** | Matthews, Maria I.; Brown, Toshia |
| **Cc:** | Carrier, Jennifer |
| **Subject:** | Mailbox Issues -- VR Applications |
| **Attachments:** | VPC -- Florida VR Return Letter April 2020 BV.pdf |

EMAIL RECEIVED FROM EXTERNAL SOURCE

The attachments/links in this message have been scanned by Proofpoint.

Hi Director Matthews and Ms. Brown –

I hope you are both well! VPC's office in DC just received a large package of mail from its UPS box in Florida. The UPS store messed up and was not sending the mail bi-weekly (and more often around deadlines), and so a few months' worth of voter registration applications were included. These were NOT applications solicited by VPC – VPC includes return envelopes that are addressed directly to the county officials. However, on occasion people ignore or lose those and send the applications to VPC directly. Attached is the letter you'll receive tomorrow along with the forms. I really apologize for this and we are doing everything possible to ensure the UPS store follows the instructions in the future.

Please let me know if you have any questions.

Jen

**Jennifer L. Carrier | BLANKROME**
1825 Eye Street NW | Washington, DC 20006
Phone: 202.420.3034 | Fax: 202.420.2201 | Email: JCarrier@blankrome.com

*********************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*********************************************************************************

**Morley, Tiffany M.**

| | |
|---|---|
| **From:** | Carrier, Jennifer <JCarrier@blankrome.com> |
| **Sent:** | Thursday, April 21, 2016 7:49 PM |
| **To:** | Morley, Tiffany M. |
| **Cc:** | Matthews, Maria I.; Brown, Toshia; Thomas, Scott; Carrier, Jennifer |
| **Subject:** | VPC and Inadvertent Receipt Issue |

Ms. Morley—

Thank you for the email sent to VPC today regarding the returned voter registration applications.

I'm sorry for any confusion. The date of VPC's inadvertent receipt of the 8 applications referenced in your email was 4/18/2016. VPC staff had incorrectly put the date they sent them to your office (the 20th). In the future, VPC will be sure to write on the back of each individual application the date the application was received by VPC, along with VPC's ID#. And as usual, they will send them to you promptly after receipt.

**It should be noted that VPC is not seeking to collect any voter registration applications in Florida. They include postage-paid return envelopes with their mailings that go directly to relevant Florida election officials.**

It should also be noted that VPC does not currently operate as a 3PVRO in Florida, as they do not seek to collect any voter registration applications. They have registered as a 3PVRO in case they decide at some point in the future to also collect applications. **Currently, the receipt of voter applications by VPC is unplanned and completely unsolicited.** The relevant law and your summary document make it clear that "[a]ny organization that only distributes, but does not collect voter registrations, is not a 3PVRO and need not comply with 3PVRO requirements." However, as discussed above, VPC will be sure to write on the back each individual application the date the application was received by VPC, along with VPC's ID#.

Please let me know if you have any further questions or concerns, or if there is someone at the General Counsel's office to discuss this matter with further. Again, sorry for the confusion this has caused and I hope this process is smoother going forward.

Jen Carrier

**Jennifer L. Carrier | Blank Rome LLP**
1825 Eye Street NW | Washington, DC 20006
Phone: 202.420.3034 | Fax: 202.420.2201 | Email: JCarrier@blankrome.com

*************************************************************************************
**************

This message and any attachments may contain confidential or privileged information and are only for the use

1

of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



# THE★VOTER★PARTICIPATION★CENTER★

1707 L St., NW, Suite 300    Office: (202) 659-9570
Washington, DC 20036    Fax: (202) 659-9585

8/18/2016

**Division of Elections**
**Florida Department of State**
**500 S Bronough Street**
**Room 316, R.A. Gray Building**
**Tallahassee, FL 32399-0250**

**Attn Sir/Madam:**

The enclosed **3** voter registration form(s) were received at our office in Washington, DC on **8/18/2016** and promptly mailed to your office **today, 8/18/2016**. VPC's Florida ID Number is: **3P11-39**. VPC's ID Number, along with date of receipt, is written on the back of each application.

It should be noted that VPC is not seeking to collect any voter registration applications in Florida. VPC includes postage-paid return envelopes with the mailings that are addressed directly to relevant Florida election officials. Any receipt of voter applications by VPC is unplanned and unsolicited.

If you have any questions, please contact Jennifer Carrier, outside legal counsel, (202) 420-3034, jcarrier@blankrome.com.

Sincerely,

Elizabeth Ver Steeg
Production Assistant
The Voter Participation Center



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

August 22, 2016

The Voter Participation Center
c/o Dona L. Priebe
1201 Hays Street, Suite 200
Tallahassee, Florida 32301-2608

Re: Violations of Voter Registration Law

Dear Ms. Priebe:

As a third-party voter registration organization, The Voter Participation Center must comply with the regulatory requirements governing such organizations. We have information indicating that activities conducted by your organization may have violated the law.

This information indicates that The Voter Participation Center, using third-party voter registration identification number 3P11-39, received 15 voter registration applications on April 11 and April 18, 2016. However, these applications were not submitted in accordance with the law, in that the date of receipt and your third-party voter registration identification number were not included on the back of many of the applications.

It is the responsibility of each third-party voter registration organization to ensure that the date of receipt and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(b), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"); Rule 1S-2.042(4)(c) (requiring each third-party voter registration organization to "ensure that its assigned organization identification number is recorded on the bottom portion of the reverse side of any voter registration application . . . in a manner that does not obscure any other entry").

Your counsel states in an email to the Division of Elections that The Voter Participation Center was not acting as a third-party voter registration organization in this situation because at least some

**Office of the General Counsel**
**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399-0250**
**850.245.6536 • 850.245.6127 (Fax)  DOS.MyFlorida.com**

App. 0505

The Voter Participation Center
August 22, 2016
Page 2 of 2

of the applications were received by The Voter Participation Center "inadvertently." However, Florida law generally defines "third-party registration organization" as "any person, entity, or organization soliciting *or collecting* voter registration applications." *See* § 97.021(38), Fla. Stat. (emphasis supplied). The Voter Participation Center is currently registered with the Division as a third-party voter registration organization, and it correctly included its official third-party registration organization number on several of the applications. Moreover, The Voter Participation Center did not return the applications to the would-be applicants; rather, The Voter Participation Center accepted the applications and immediately returned them to the Division of Elections. Accordingly, it appears The Voter Participation Center was indeed acting as a third-party voter registration organization and therefore is subject to the applicable governing laws and rules.

Please consider this letter as a warning. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. For your convenience, I have enclosed a copy of a third-party voter registration organization guidelines sheet. If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Jordan Jones
Assistant General Counsel

Enclosure

cc:   Jennifer L. Carrier, Esq.
      1825 Eye Street Northwest
      Washington, D.C. 20006



# FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

January 4, 2017

The Voter Participation Center
c/o Dona L. Priebe
1201 Hays Street, Suite 200
Tallahassee, Florida 32301-2608

Re: Violations of Voter Registration Law

Dear Ms. Priebe:

The Department of State has received information indicating that the Voter Participation Center, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or by the book closing deadline, whichever is earlier, or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered after the 10-day period, the statute provides a fine of $50; and for each application that is delivered after book closing, the statute provides for a fine of $100, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

The information received indicates that the Voter Participation Center, using registration number 3P11-39, collected 22 voter registration applications between April and August 2016, but failed to deliver 13 of those applications by the book closing deadline. Five other applications were delivered outside the 10-day period. *See* Rule 1S-2.042(4)(d), F.A.C. (indicating that the date of delivery is considered to be the actual date of delivery or the postmark date).[1] Therefore, the Voter

---

[1] In addition to submitting the applications untimely, your organization failed to print the date the applications were received and the identification number of your third-party organization on the back of some of the applications. In the future, please be sure to comply with the

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

The Voter Participation Center
January 4, 2017
Page 2 of 2

Participation Center is liable for a fine in the amount of $1,000 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning. If the Voter Participation Center again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials. Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

requirements of section 97.0575, Florida Statutes, and Rule 1S-2.042, Florida Administrative Code.

| Voter Last Name | Date voter signed application | Date delivered (mailing to DOE) | Untimely delivered? | Book-closing missed? | Fine |
|---|---|---|---|---|---|
| Best | 1/19/2020 | 4/13/2020 | yes | yes | $100 |
| Harris | 1/28/2020 | 4/13/2020 | yes | yes | $100 |
| Cazzola | 1/30/2020 | 4/13/2020 | yes | yes | $100 |
| Billoch | 1/31/2020 | 4/13/2020 | yes | yes | $100 |
| Alvarez | 2/3/2020 | 4/13/2020 | yes | yes | $100 |
| Santana | 2/4/2020 | 4/13/2020 | yes | yes | $100 |
| Lightbown | 2/10/2020 | 4/13/2020 | yes | yes | $100 |
| Levy | 2/10/2020 | 4/13/2020 | yes | yes | $100 |
| Hall Brown Scialoia | 2/10/2020 | 4/13/2020 | yes | yes | $100 |
| Floyd | 2/10/20 (or 2/16) | 4/13/2020 | yes | yes | $100 |
| Serna | 2/11/2020 | 4/13/2020 | yes | yes | $100 |
| Floyd | 2/11/2020 | 4/13/2020 | yes | yes | $100 |
| Unclear | 2/11/2020 | 4/13/2020 | yes | yes | $100 |
| Vinci | 2/12/2020 | 4/13/2020 | yes | yes | $100 |
| Rojas | 2/14/2020 | 4/13/2020 | yes | yes | $100 |
| Powell | 2/15/2020 | 4/13/2020 | yes | yes | $100 |
| Castro | 2/16/2020 | 4/13/2020 | yes | yes | $100 |
| Elias | 2/16/2020 | 4/13/2020 | yes | yes | $100 |
| Rusz Elias | 2/16/2020 | 4/13/2020 | yes | yes | $100 |
| Unknown | 2/17/2020 | 4/13/2020 | yes | yes | $100 |
| Villegas | 2/19/2020 | 4/13/2020 | yes | no | $50 |
| Brardt | 2/21/2020 | 4/13/2020 | yes | no | $50 |
| Joseph | 2/22/2020 | 4/13/2020 | yes | no | $50 |
| Villaran | 2/22/2020 | 4/13/2020 | yes | no | $50 |
| Razzetti | 3/9/2020 | 4/13/2020 | yes | no | $50 |
| Pierre | 3/9/2020 | 4/13/2020 | yes | no | $50 |
| Fauteux | 3/14/2020 | 4/13/2020 | yes | no | $50 |
| Stafford | 3/16/2020 | 4/13/2020 | yes | no | $50 |
| Boggs | 3/17/2020 | 4/13/2020 | yes | no | $50 |
| Buckley | 2/24/2020 | 5/5/2020 | yes | no | $50 |
| Isaac | 3/1/2020 | 5/5/2020 | yes | no | $50 |
| Ordonez | 3/3/2020 | 5/5/2020 | yes | no | $50 |
| Davis | 3/4/2020 | 5/5/2020 | yes | no | $50 |
| Douglas | 3/5/2020 | 5/5/2020 | yes | no | $50 |
| Burke | 3/8/2020 | 5/5/2020 | yes | no | $50 |
| Nguyen | 3/12/2020 | 5/5/2020 | yes | no | $50 |
| Londono Londono | 3/12/2020 | 5/5/2020 | yes | no | $50 |
| Linek | 3/14/2020 | 5/5/2020 | yes | no | $50 |
| Cabrera Rodriguez | 3/16/2020 | 5/5/2020 | yes | no | $50 |
| Unclear | 3/21/2020 | 5/5/2020 | yes | no | $50 |
| Martin-Bailey | 3/23/2020 | 5/5/2020 | yes | no | $50 |
| Cartagena | 3/25/2020 | 5/5/2020 | yes | no | $50 |
| Rivas | 4/6/2020 | 5/5/2020 | yes | no | $50 |
| O'Connor | 4/8/2020 | 5/5/2020 | yes | no | $50 |

| | | | | | |
|---|---|---|---|---|---|
| Preston | 4/8/2020 | 5/5/2020 | yes | no | $50 |
| Padilla | 4/8/2020 | 5/5/2020 | yes | no | $50 |
| Santiago | 4/8/2020 | 5/5/2020 | yes | no | $50 |
| Santiago | 4/9/2020 | 5/5/2020 | yes | no | $50 |
| Perez Zurita | 4/10/2020 | 5/5/2020 | yes | no | $50 |
| Hall | 4/10/2020 | 5/5/2020 | yes | no | $50 |
| Devine | 4/10/2020 | 5/5/2020 | yes | no | $50 |
| Krause | 4/10/2020 | 5/5/2020 | yes | no | $50 |
| Wagoner | 4/10/2020 | 5/5/2020 | yes | no | $50 |
| Romero Gonzalez | 4/10/2020 | 5/5/2020 | yes | no | $50 |
| Schmidt | 4/10/2020 | 5/5/2020 | yes | no | $50 |
| Young | 4/10/2020 | 5/5/2020 | yes | no | $50 |
| Meneses | 4/13/2020 | 5/5/2020 | yes | no | $50 |
| Ross | 4/14/2020 | 5/5/2020 | yes | no | $50 |
| Alexander | 4/14/2020 | 5/5/2020 | yes | no | $50 |
| Golden | 4/15/2020 | 5/5/2020 | yes | no | $50 |
| Lesser | 4/15/2020 | 5/5/2020 | yes | no | $50 |
| Guido | 4/15/2020 | 5/5/2020 | yes | no | $50 |
| Rivera Portuondo | 4/16/2020 | 5/5/2020 | yes | no | $50 |
| Armus | 4/17/2020 | 5/5/2020 | yes | no | $50 |
| O'Laughlin | 4/17/2020 | 5/5/2020 | yes | no | $50 |
| Hendershot | 4/17/2020 | 5/5/2020 | yes | no | $50 |
| Ruiz | 4/17/2020 | 5/5/2020 | yes | no | $50 |
| Castro | 4/18/2020 | 5/5/2020 | yes | no | $50 |
| Saedi | 4/18/2020 | 5/5/2020 | yes | no | $50 |
| McAnany | 4/19/2020 | 5/5/2020 | yes | no | $50 |
| Bansley | 4/20/2020 | 5/5/2020 | yes | no | $50 |
| Unclear | 4/21/2020 | 5/5/2020 | yes | no | $50 |
| Shain | 4/21/2020 | 5/5/2020 | yes | no | $50 |
| Larimore | 4/23/2020 | 5/5/2020 | yes | no | $50 |
| Bolden | 4/24/2020 | 5/5/2020 | yes | no | $50 |
| Elenskaya | 5/25/2020 | 8/11/2020 | yes | yes | $100 |
| Arguello | 5/29/2020 | 8/11/2020 | yes | yes | $100 |
| Moya | 6/7/2020 | 8/11/2020 | yes | yes | $100 |
| Smith | 6/13/2020 | 8/11/2020 | yes | yes | $100 |
| Boltz | 6/15/2020 | 8/11/2020 | yes | yes | $100 |
| Nicholas | 6/18/2020 | 8/11/2020 | yes | yes | $100 |
| Martinez | 6/19/2020 | 8/11/2020 | yes | yes | $100 |
| Huang | 6/21/2020 | 8/11/2020 | yes | yes | $100 |
| Llorin | 6/22/2020 | 8/11/2020 | yes | yes | $100 |
| Tran | 6/22/2020 | 8/11/2020 | yes | yes | $100 |
| Mubarak | 6/23/2020 | 8/11/2020 | yes | yes | $100 |
| Stoughton | 6/24/2020 | 8/11/2020 | yes | yes | $100 |
| Louis | 6/24/2020 | 8/11/2020 | yes | yes | $100 |
| Guerra Morales | 6/24/2020 | 8/11/2020 | yes | yes | $100 |
| Huynh | 6/24/2020 | 8/11/2020 | yes | yes | $100 |
| Cabban | 6/24/2020 | 8/11/2020 | yes | yes | $100 |

| | | | | | |
|---|---|---|---|---|---|
| Cellini | 6/25/2020 | 8/11/2020 | yes | yes | $100 |
| Applewhite | 6/26/2020 | 8/11/2020 | yes | yes | $100 |
| Tyler | 6/26/2020 | 8/11/2020 | yes | yes | $100 |
| Freeman | 6/26/2020 | 8/11/2020 | yes | yes | $100 |
| Carter | 6/27/2020 | 8/11/2020 | yes | yes | $100 |
| D'Angelo | 6/28/2020 | 8/11/2020 | yes | yes | $100 |
| Atkinson | 6/28/2020 | 8/11/2020 | yes | yes | $100 |
| Deyeva | 7/1/2020 | 8/11/2020 | yes | yes | $100 |
| Shell | 7/2/2020 | 8/11/2020 | yes | yes | $100 |
| Kerniss | 7/3/2020 | 8/11/2020 | yes | yes | $100 |
| McCray | 7/3/2020 | 8/11/2020 | yes | yes | $100 |
| Maher | 7/5/2020 | 8/11/2020 | yes | yes | $100 |
| Demonte | 7/5/2020 | 8/11/2020 | yes | yes | $100 |
| Larose | 7/6/2020 | 8/11/2020 | yes | yes | $100 |
| Unclear | 7/6/2020 | 8/11/2020 | yes | yes | $100 |
| Ocasio | 7/6/2020 | 8/11/2020 | yes | yes | $100 |
| Bannasch | 7/6/2020 | 8/11/2020 | yes | yes | $100 |
| Miller | 7/7/2020 | 8/11/2020 | yes | yes | $100 |
| Sullivan | 7/7/2020 | 8/11/2020 | yes | yes | $100 |
| Glotzer | 7/7/2020 | 8/11/2020 | yes | yes | $100 |
| Nino Patino | 7/7/2020 | 8/11/2020 | yes | yes | $100 |
| Delbuono | 7/7/2020 | 8/11/2020 | yes | yes | $100 |
| Lenoci | 7/8/2020 | 8/11/2020 | yes | yes | $100 |
| Maldonado | 7/9/2020 | 8/11/2020 | yes | yes | $100 |
| Alvarez | 7/9/2020 | 8/11/2020 | yes | yes | $100 |
| Nack | 7/9/2020 | 8/11/2020 | yes | yes | $100 |
| Guillaume Louis-Jeune | 7/10/2020 | 8/11/2020 | yes | yes | $100 |
| Somerville | 7/11/2020 | 8/11/2020 | yes | yes | $100 |
| Newall | 7/13/2020 | 8/11/2020 | yes | yes | $100 |
| Hernandez | 7/13/2020 | 8/11/2020 | yes | yes | $100 |
| Michael | 7/13/2020 | 8/11/2020 | yes | yes | $100 |
| Marshall | 7/13/2020 | 8/11/2020 | yes | yes | $100 |
| Weinstein | 7/13/2020 | 8/11/2020 | yes | yes | $100 |
| Ricotta | 7/13/2020 | 8/11/2020 | yes | yes | $100 |
| Katiraee | 7/14/2020 | 8/11/2020 | yes | yes | $100 |
| Davila | 7/14/2020 | 8/11/2020 | yes | yes | $100 |
| Selvidge | 7/14/2020 | 8/11/2020 | yes | yes | $100 |
| Grupman | 7/16/2020 | 8/11/2020 | yes | yes | $100 |



**voterparticipation**
C E N T E R

4/13/2020

Division of Elections
Florida Department of State
500 S Bronough Street
Room 316, R.A. Gray Building
Tallahassee, FL 32399-0250

Attn Sir/Madam:

The enclosed voter registration forms were received at our office in Washington, DC on **4/11/2020** and promptly mailed to your office **today, 4/13/2020**. VPC's Florida ID Number is: **3P11-39**. VPC's ID Number, along with date of receipt, is written on the back of the applications (even though, as explained below, VPC did not seek to collect these applications).

These forms were unfortunately inadvertently sent by the registrants over the past few months to the incorrect address (VPC's UPS mailbox in Tallahassee instead of their local election official in the provided return envelope). Although the UPS store in Tallahassee is obligated to forward the contents of the mailbox to VPC's DC address twice a week, except during the week before or after a registration or absentee request deadline when it's forwarded daily, the UPS store had not been performing as instructed and VPC just received the contents of the mailbox on Saturday, April 11. The UPS store has been reminded to sweep the mailbox as instructed and forward the contents to VPC immediately.

It should be noted that <u>VPC is not seeking to collect any voter registration applications in Florida</u>. VPC includes postage-paid return envelopes with the mailings that are addressed directly to relevant Florida election officials. Any receipt of voter applications by VPC is <u>unplanned</u> and <u>unsolicited</u>.

If you have any questions, please contact Jennifer Carrier, outside legal counsel, (202) 420-3034, jcarrier@blankrome.com.

Sincerely,

200655.00003/105072043



Beth VerSteeg
Production Manager
The Voter Participation Center



**FedEx**

Express

ORIGIN ID:BZSA        (202) 664-8361
VPC
THE VOTER PARTICIPATION CENTER
1707 L STREET, NW
SUITE 950
WASHINGTON, DC 20036
UNITED STATES US

SHIP DATE: 13APR20
ACTWGT: 0.10 LB
CAD: 7754810/INET4220

BILL SENDER

TO  **FLORIDA DEPARTMENT OF STATE**

**500 S BRONOUGH ST**
**ROOM 316 - RA GRAY BUILDING**
**TALLAHASSEE FL 32399**
(202) 659-9573
INV:                              REF:
PO:                                      DEPT:





**TUE - 14 APR 3:00P**
**STANDARD OVERNIGHT**

TRK#
0201   **7702 2596 2979**

**XH TLHA**

**32399**
FL-US   **TLH**



FedEx Ship Manager - Print Your Label(s)

4/13/2020

RECEIVED
DEPARTMENT OF STATE

◄ Insert shipping
document here.

App. 0514



# FLORIDA DEPARTMENT of STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

October 8, 2020

Organize Florida Education Fund
c/o Rhyane Wagner
254 Ortman Drive
Orlando, Florida 32811

Re:  Violations of Third Party Voter Registration Law

Dear Ryhane Wagner:

The Department of State has received information from the Orange County Supervisor of Elections and the Pinellas County Supervisor of Elections indicating that Organize Florida Education Fund, which is registered as a third-party voter registration organization under ID number 3P18-62, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine.  § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C.  For each application that is delivered later than 10 days from collection, the fine is $50.  Rule 1S-2.042(4)(d), F.A.C.  For each application that is collected before book closing but delivered more than ten days after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.  Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  Fines are capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat.

Records received from the Orange County Supervisor of Elections reflect that 2 voter registration applications were delivered more than ten days after they were collected. One of the applications was signed on April 24, 2019, and the other was signed on April 26, 2019. The applications were not delivered until May 7, 2019. Therefore, the Department is imposing a **$100.00 fine** pursuant to section 97.0575(3), Florida Statutes for violations committed during the **2019 calendar year**.

**Office of the General Counsel**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0515

Even more significant and problematic, the 2 aforementioned applications, in addition to 5 others, appear to have had the dates altered in order to make them appear timely. The application signed by the voter and dated by the collector on April 24, 2019, appears to have been altered to April 30, 2019. The application signed by the voter and dated by the collector on April 26, 2019, appears to have been altered to April 29, 2019. 5 other applications signed by the voters and dated by the collectors on April 27, 2019, appear to have been altered to April 29, 2019, even though those applications would not have been late when turned in on May 7, 2019. We will be referring this matter for investigation of possible violations of Florida and Federal statutes for willful submission of false voter registration information.

In addition to the records received from the Orange County Supervisor of Elections, records received from the Pinellas County Supervisor of Elections reflect that 37 voter registration applications were delivered more than ten days after they were collected. 25 of the applications were collected between January 20, 2020, and January 23, 2020. The applications were not delivered until February 5, 2020. 12 of the applications were collected January 24, 2020, but not delivered until February 6, 2020. Therefore, the Department is imposing the maximum **$1,000.00 fine** pursuant to section 97.0575(3), Florida Statutes for violations committed during the **2020 calendar year**.

In addition to the untimeliness and alteration issues, 2 of the applications submitted to the Orange County Supervisor of Elections Office were not submitted in accordance with applicable regulations in that the dates of receipt were not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the *date of receipt* and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"); Rule 1S-2.042(4)(c) (requiring each third-party voter registration organization to "ensure that its assigned organization identification number is recorded on the bottom portion of the reverse side of any voter registration application…in a manner that does not obscure any other entry"). You are not being fined for these violations, but rather for the aforementioned untimely delivered applications.

You may either remit payment of the **$1,100** fine to the Florida Department of State within 30 days; or, you may respond to this letter **within 30 days** if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

Florida Department of State
Division of Elections
500 South Bronough Street, Suite 316
Tallahassee, FL 32399

App. 0516

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen O'Brien
Assistant General Counsel

Enclosures

cc:     Orange County Supervisor of Elections (*via email and w/o enclosures*)
        Pinellas County Supervisor of Elections (*via email and w/o enclosures*)

App. 0517

**O'Brien, Colleen E.**

| | |
|---|---|
| **From:** | Ferguson, Katrina R. |
| **Sent:** | Thursday, January 21, 2021 10:38 AM |
| **To:** | O'Brien, Colleen E. |
| **Cc:** | Marconnet, Amber |
| **Subject:** | RE: 3PVRO fine checks |

Ok, will do.

Uncertain, if this mean anything, but are you aware 3P18-62 terminated its organization 01/15/21?

*Katrina Ferguson, FCCM*

NVRA and 3PVRO Statewide Coordinator
Director's Office, Division of Elections
Katrina.Ferguson@dos.myflorida.com
(850) 245-6237

**From:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Sent:** Thursday, January 21, 2021 10:35 AM
**To:** Ferguson, Katrina R. <Katrina.Ferguson@dos.myflorida.com>
**Cc:** Marconnet, Amber <Amber.Marconnet@DOS.MyFlorida.com>
**Subject:** RE: 3PVRO fine checks

Here you go. Thanks so much for your help!

As an aside – regarding the 3P18-62 Organize Florida one, if you actually have a complete copy with attachments whenever you are back in the office that you could send me a PDF of, that would be great. The version that was scanned into our records only included the outgoing letter without the attachments.

**COLLEEN E. O'BRIEN**
Assistant General Counsel
**FLORIDA DEPARTMENT OF STATE**
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6519
(f): (850) 245-6127

**From:** Ferguson, Katrina R. <Katrina.Ferguson@dos.myflorida.com>
**Sent:** Thursday, January 21, 2021 10:31 AM
**To:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Cc:** Marconnet, Amber <Amber.Marconnet@DOS.MyFlorida.com>
**Subject:** RE: 3PVRO fine checks

Moring Colleen,

App. 0518

Yes ma'am, if you send me a copy of the letters that would be great.

believe the letters were brought to my desk; however, I'm teleworking.

Thanks.

*Katrina Ferguson, FCCM*
NVRA and 3PVRO Statewide Coordinator
Director's Office, Division of Elections
Katrina.Ferguson@dos.myflorida.com
(850) 245-6237

**From:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Sent:** Thursday, January 21, 2021 9:54 AM
**To:** Ferguson, Katrina R. <Katrina.Ferguson@dos.myflorida.com>
**Cc:** Marconnet, Amber <Amber.Marconnet@DOS.MyFlorida.com>
**Subject:** FW: 3PVRO fine checks

Katrina,

Can you please follow up with the below 2 3PRVO's through their registered agents regarding the fine letters that were sent to them in October of 2020 (*i.e.* – whether they received the letters, sent payment, etc.). You and I have both inquired of finance and been told there is no record of checks received. (That said, there is a chance there is a disconnect somewhere and they were actually received).

I believe Candice would have provided you copies of the fine letters that were sent to them, but if not, just let me know and I can get them to you.

Just let me know if you have any questions.

Thank you!

Colleen

COLLEEN E. O'BRIEN
Assistant General Counsel
**FLORIDA DEPARTMENT OF STATE**
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6519
(f): (850) 245-6127

**From:** Warrick, Amy P. <Amy.Warrick@dos.myflorida.com>
**Sent:** Wednesday, January 20, 2021 4:52 PM
**To:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>

2

**Cc:** Ganious, Jennifer D. <Jennifer.Ganious@dos.myflorida.com>
**Subject:** RE: 3PVRO fine checks

Hello Ms. Colleen,

It was so nice to meet you in person.

I was looking again for these checks. We do not show them logged in our check log, and a search of our accounting system (FLAIR) records doesn't turn up a payment either. If you do contact them and could get a check number, that would help us.

I will continue to look for these payments to arrive.

Thanks,

*Amy Warrick*
Revenue Supervisor
Administrative Services – Revenue Section
Florida Department of State
R.A. Gray Building, MS #10
500 S. Bronough St.
Tallahassee, FL 32399-0250
(850)245-6557

**From:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Sent:** Wednesday, December 16, 2020 10:18 AM
**To:** Warrick, Amy P. <Amy.Warrick@dos.myflorida.com>
**Cc:** Ganious, Jennifer D. <Jennifer.Ganious@dos.myflorida.com>
**Subject:** 3PVRO fine checks

Amy,

Thank you for talking with me this morning.

If you could research at your earliest opportunity (not a rush) whether checks from the following organizations have arrived:

Organize Florida Education Fund - $1,100 on or after 10/10/2020
Florida Democratic Party - $1,150 on or after 10/10/2020

Thank you!

Colleen

**COLLEEN E. O'BRIEN**
Assistant General Counsel
**FLORIDA DEPARTMENT OF STATE**
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6519
(f): (850) 245-6127

App. 0520

## O'Brien, Colleen E.

| | |
|---|---|
| **From:** | O'Brien, Colleen E. |
| **Sent:** | Thursday, January 21, 2021 9:54 AM |
| **To:** | Ferguson, Katrina R. |
| **Cc:** | Marconnet, Amber |
| **Subject:** | FW: 3PVRO fine checks |

Katrina,

Can you please follow up with the below 2 3PRVO's through their registered agents regarding the fine letters that were sent to them in October of 2020 (*i.e.* – whether they received the letters, sent payment, etc.). You and I have both inquired of finance and been told there is no record of checks received. (That said, there is a chance there is a disconnect somewhere and they were actually received).

I believe Candice would have provided you copies of the fine letters that were sent to them, but if not, just let me know and I can get them to you.

Just let me know if you have any questions.

Thank you!

Colleen

COLLEEN E. O'BRIEN
Assistant General Counsel
**FLORIDA DEPARTMENT OF STATE**
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6519
(f):  (850) 245-6127

**From:** Warrick, Amy P. <Amy.Warrick@dos.myflorida.com>
**Sent:** Wednesday, January 20, 2021 4:52 PM
**To:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Cc:** Ganious, Jennifer D. <Jennifer.Ganious@dos.myflorida.com>
**Subject:** RE: 3PVRO fine checks

Hello Ms. Colleen,

It was so nice to meet you in person.

I was looking again for these checks.  We do not show them logged in our check log, and a search of our accounting system (FLAIR) records doesn't turn up a payment either.  If you do contact them and could get a check number, that would help us.

I will continue to look for these payments to arrive.

Thanks,

1

*Amy Warrick*
Revenue Supervisor
Administrative Services — Revenue Section
Florida Department of State
R.A. Gray Building, MS #10
500 S. Bronough St.
Tallahassee, FL 32399-0250
(850)245-6557

**From:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Sent:** Wednesday, December 16, 2020 10:18 AM
**To:** Warrick, Amy P. <Amy.Warrick@dos.myflorida.com>
**Cc:** Ganious, Jennifer D. <Jennifer.Ganious@dos.myflorida.com>
**Subject:** 3PVRO fine checks

Amy,

Thank you for talking with me this morning.

If you could research at your earliest opportunity (not a rush) whether checks from the following organizations have arrived:

Organize Florida Education Fund - $1,100 on or after 10/10/2020
Florida Democratic Party - $1,150 on or after 10/10/2020

Thank you!

Colleen

**COLLEEN E. O'BRIEN**
Assistant General Counsel
**FLORIDA DEPARTMENT OF STATE**
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6519
(f): (850) 245-6127

**O'Brien, Colleen E.**

| | |
|---|---|
| From: | Ferguson, Katrina R. |
| Sent: | Friday, January 22, 2021 10:25 AM |
| To: | O'Brien, Colleen E. |
| Cc: | Marconnet, Amber |
| Subject: | RE: 3PVRO fine checks |

Morning Colleen,

To follow-up on the below 3P's, I have left messages and hope to have a response for you by COB today.

Also, is there a process in place to follow-up with the fines after the 30days.  If not, I don't mind assisting in creating one.

Thanks.

*Katrina Ferguson, FCCM*
NVRA and 3PVRO Statewide Coordinator
Director's Office, Division of Elections
Katrina.Ferguson@dos.myflorida.com
(850) 245-6237


**From:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Sent:** Thursday, January 21, 2021 10:35 AM
**To:** Ferguson, Katrina R. <Katrina.Ferguson@dos.myflorida.com>
**Cc:** Marconnet, Amber <Amber.Marconnet@DOS.MyFlorida.com>
**Subject:** RE: 3PVRO fine checks

Here you go. Thanks so much for your help!

As an aside – regarding the 3P18-62 Organize Florida one, if you actually have a complete copy with attachments whenever you are back in the office that you could send me a PDF of, that would be great. The version that was scanned into our records only included the outgoing letter without the attachments.

COLLEEN E. O'BRIEN
Assistant General Counsel
**FLORIDA DEPARTMENT OF STATE**
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6519
f): (850) 245-6127

1

**From:** Ferguson, Katrina R. <Katrina.Ferguson@dos.myflorida.com>
**Sent:** Thursday, January 21, 2021 10:31 AM
**To:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Cc:** Marconnet, Amber <Amber.Marconnet@DOS.MyFlorida.com>
**Subject:** RE: 3PVRO fine checks

Moring Colleen,

Yes ma'am, if you send me a copy of the letters that would be great.

I believe the letters were brought to my desk; however, I'm teleworking.

Thanks.


*Katrina Ferguson, FCCM*
NVRA and 3PVRO Statewide Coordinator
Director's Office, Division of Elections
Katrina.Ferguson@dos.myflorida.com
(850) 245-6237


**From:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Sent:** Thursday, January 21, 2021 9:54 AM
**To:** Ferguson, Katrina R. <Katrina.Ferguson@dos.myflorida.com>
**Cc:** Marconnet, Amber <Amber.Marconnet@DOS.MyFlorida.com>
**Subject:** FW: 3PVRO fine checks

Katrina,

Can you please follow up with the below 2 3PRVO's through their registered agents regarding the fine letters that were sent to them in October of 2020 (*i.e.* – whether they received the letters, sent payment, etc.). You and I have both inquired of finance and been told there is no record of checks received. (That said, there is a chance there is a disconnect somewhere and they were actually received).

I believe Candice would have provided you copies of the fine letters that were sent to them, but if not, just let me know and I can get them to you.

Just let me know if you have any questions.

Thank you!

Colleen

COLLEEN E. O'BRIEN
Assistant General Counsel
FLORIDA DEPARTMENT OF STATE
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250

2

(p): (850) 245-6519
(f): (850) 245-6127

**From:** Warrick, Amy P. <Amy.Warrick@dos.myflorida.com>
**Sent:** Wednesday, January 20, 2021 4:52 PM
**To:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Cc:** Ganious, Jennifer D. <Jennifer.Ganious@dos.myflorida.com>
**Subject:** RE: 3PVRO fine checks

Hello Ms. Colleen,

It was so nice to meet you in person.

I was looking again for these checks. We do not show them logged in our check log, and a search of our accounting system (FLAIR) records doesn't turn up a payment either. If you do contact them and could get a check number, that would help us.

I will continue to look for these payments to arrive.

Thanks,

*Amy Warrick*
Revenue Supervisor
Administrative Services – Revenue Section
Florida Department of State
R.A. Gray Building, MS #10
500 S. Bronough St.
Tallahassee, FL 32399-0250
(850)245-6557

**From:** O'Brien, Colleen E. <Colleen.OBrien@dos.myflorida.com>
**Sent:** Wednesday, December 16, 2020 10:18 AM
**To:** Warrick, Amy P. <Amy.Warrick@dos.myflorida.com>
**Cc:** Ganious, Jennifer D. <Jennifer.Ganious@dos.myflorida.com>
**Subject:** 3PVRO fine checks

Amy,

Thank you for talking with me this morning.

If you could research at your earliest opportunity (not a rush) whether checks from the following organizations have arrived:

Organize Florida Education Fund - $1,100 on or after 10/10/2020
Florida Democratic Party - $1,150 on or after 10/10/2020

Thank you!

Colleen

COLLEEN E. O'BRIEN
Assistant General Counsel

3

**FLORIDA DEPARTMENT OF STATE**
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6519
(f):  (850) 245-6127

App. 0526



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

October 9, 2020

The Florida Democratic Party
c/o Rachel Berger, Registered Agent
201 S. Monroe Street, Suite 301
Tallahassee, Florida 32301

      Re:  Violations of Third Party Voter Registration Law

Dear Ms. Berger:

      The Department of State has received information from the Supervisors of Elections in the following counties indicating that the Florida Democratic Party, which is registered as a third-party voter registration organization under ID number 3P-11-89, has violated Florida law: Highlands, Duval, Orange, Hillsborough, and Brevard.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine.  § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C.  For each application that is delivered later than 10 days from collection, the fine is $50.  Rule 1S-2.042(4)(d), F.A.C.  For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C. The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C.  Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  Fines are capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat.

      Records received from the Highlands County Supervisor of Elections reflect that 1 voter registration application was delivered more than 10 days after it was collected. The application was collected on November 14, 2019, but not delivered until December 3, 2019. The application bears third-party voter registration organization number 3P-11-89. The Department is imposing a **$50.00 fine** for this late-filed applications in calendar year 2019.

App. 0527

Records received from the Orange County Supervisor of Elections reflect that 5 voter registration applications were delivered more than 10 days after they were collected. The applications were collected between November 2, 2019, and December 6, 2019, but not delivered until January 16, 2020. The application bears third-party voter registration organization number 3P-11-89. The Department is imposing a **$250.00 fine** for these late-filed applications in calendar year 2019.

Records received from the Duval County Supervisor of Elections reflect that 10 voter registration applications were delivered more than 10 days after they were collected. 7 applications were collected on September 6, 2019, but not delivered until October 17, 2019. 1 application was collected on September 15, 2019, but not delivered until September 27, 2019. 2 applications were collected on December 6, 2019, and December 8, 2019, but not delivered until December 20, 2019. All applications bear third-party voter registration organization number 3P-11-89. The Department is imposing a **$500.00 fine** for these 10 late-filed applications in calendar year 2019.

Records received from the Hillsborough County Supervisor of Elections reflect that 31 voter registration applications were delivered more than 10 days after they were collected. 1 application was collected on September 28, 2019, but not delivered until October 10, 2019. 13 applications were collected between October 24, 2019, and October 27, 2019, but not delivered until November 7, 2019. 1 application was collected on November 2, 2019, but not delivered until November 21, 2019. 11 applications were collected between November 13, 2019, and November 16, 2019, but not delivered until November 27, 2019. 2 applications were collected on November 19, 2019, but not delivered until December 3, 2019. 2 applications were collected on November 24, 2019, but not delivered until December 6, 2019. 1 application was collected on December 31, 2019, but not delivered until January 15, 2020. All applications bear third-party voter registration organization number 3P-11-89.

The 30 late-filed Hillsborough applications in 2019 would equate to a $1,500.00 fine for calendar year 2019. However, as noted above, fines are capped at $1,000.00 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat. Between the $800.00 in fines imposed for calendar year 2019 noted above, and a $200.00 fine previously imposed by letter dated December 6, 2019, for calendar year 2019, the $1,000.00 cap for fines in 2019 has been met. The Department is imposing a **$50.00 fine** for the 1 late-filed application in calendar year 2020.

Records received from the Brevard County Supervisor of Elections reflect that 6 voter registration applications were delivered more than 10 days after they were collected. 1 application was collected on December 23, 2019, but not delivered until January 21, 2020. 1 application was collected on January 19, 2020, but not delivered until February 10, 2020. 4 applications were collected between January 25, 2020, and January 27, 2020, but not delivered until February 7, 2020. All applications bear third-party voter registration organization number 3P-11-89. The Department is imposing a **$300.00 fine** for these 6 late-filed applications in calendar year 2020.

You may either remit payment of the total fine of **$1,150.00** to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration

App. 0528

application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Division of Elections
> 500 South Bronough Street, Suite 316
> Tallahassee, FL 32399

If The Florida Democratic Party again violates section 97.0575, Florida Statutes, the Department of State may notify you of additional fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen E. O'Brien
Assistant General Counsel

Enclosures

cc:   Highlands County Supervisor of Elections (*via email* w/o enclosures)
      Duval County Supervisor of Elections (*via email* w/o enclosures)
      Orange County Supervisor of Elections (*via email* w/o enclosures)
      Hillsborough County Supervisor of Elections (*via email* w/o enclosures)
      Brevard County Supervisor of Elections (*via email* w/o enclosures)

App. 0529



# FLORIDA DEPARTMENT of STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

December 15, 2020

Florida Immigrant Coalition, Inc.
c/o Tessa Painson, Registered Agent
2800 Biscayne Blvd., Suite 800
Miami, FL 33137

   *Re:  Violation of Third-Party Voter Registration Law*

Dear Ms. Painson:

   The Department of State has received information from the Alachua County Supervisor of Elections indicating that the Florida Immigrant Coalition, which is registered as a third-party voter registration organization under ID number 3P-12-197, has violated Florida law.

   Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat. Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.

   Records received from the Alachua County Supervisor of Elections reflect that twelve voter registration applications were delivered to the supervisor's office bearing no collection date on the bottom portion of the reverse side of the voter registration applications, in violation of rule 1S-2.042(4)(b), Florida Administrative Code. This letter serves as a reminder to please ensure that your organization follows the applicable third-party voter registration regulations in future collection efforts.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen E. O'Brien
Assistant General Counsel
Florida Department of State

Enclosures

cc:  Alachua County Supervisor of Elections (*via email, without enclosures*)



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

December 15, 2020

Florida Rights Restoration Coalition, Inc.
c/o Desmond Meade, Registered Agent
4081 LB McLeod Road, Unit C
Orlando, Florida 32811

    *Re:  Violation of Third-Party Voter Registration Law*

Dear Mr. Meade:

The Department of State has received information from the Alachua County Supervisor of Elections indicating that the Florida Rights Restoration Coalition, Inc., which is registered as a third-party voter registration organization under ID number 3P-18-198, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat. Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.

Records received from the Alachua County Supervisor of Elections reflect that four voter registration applications were delivered to the supervisor's office bearing no collection date on the bottom portion of the reverse side of the voter registration applications, in violation of Rule 1S-2.042(4)(b), Florida Administrative Code. This letter serves as a reminder to please ensure that your organization follows the applicable third-party voter registration regulations by printing the collection date in future collection efforts.

**Office of the General Counsel**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0533

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.   If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen E. O'Brien
Assistant General Counsel

Enclosures

cc:  Alachua County Supervisor of Elections (*via email, without enclosures*)



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

December 21, 2020

Rebekah Williams
4208 Clay Street
Marianna, FL 32448

  Re:  Violations of Voter Registration Law

Dear Ms. Williams:

  The Department of State has received information from the Jackson County Supervisor of Elections indicating that Rebekah Williams, registered as a third-party voter registration organization under ID number 3P-20-78, has violated Florida law.

  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat. For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C. Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.

  Records received from the Jackson County Supervisor of Elections reflect that two voter registration applications were delivered to the supervisor's office more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were collected on October 1, 2020, but not delivered until October 28, 2020. This means that not only were the registrations untimely, but they were also collected prior to book closing (October 6, 2020) and delivered after book closing, prohibiting the voters who thought they were registered from voting in the 2020 General Election. Therefore, the Department is imposing a **$200.00** fine

**Office of the General Counsel**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0535

for violations committed during calendar year 2020 pursuant to section 97.0575(3), Florida Statutes.

Additionally, according to the report of the Supervisor's office, one of the voter registration applications initially lacked a recording of the date collected on the bottom portion of the reverse side of the application as required by Florida Administrative Code Rule 1S-2.042(4)(b). Please ensure that your organization follows the applicable third-party voter registration regulations.

You may either remit payment of the **$200.00 fine** to the Florida Department of State within **30 days**; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen E. O'Brien
Assistant General Counsel


Enclosures

cc: Jackson County Supervisor of Elections (*via email and without enclosures*)



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

December 21, 2020

Republican Party of Florida
c/o Ben Gibson, Registered Agent
215 South Monroe St., Suite 804
Tallahassee, FL 32301

      Re:  Violations of Voter Registration Law

Dear Mr. Gibson:

      The Department of State has received information from the Orange County Supervisors of Elections indicating that the Republican Party of Florida, which is registered as a third-party voter registration organization under ID number 3P-11-93, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat. Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.

      Records received from the Orange County Supervisor of Elections reflect that eight voter registration applications were delivered to the supervisor's office more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were collected between June 12, 2020, and September 5, 2020, but not delivered until October 5, 2020. Therefore, the Department is imposing a **$400.00** fine for violations committed during calendar year 2020 pursuant to section 97.0575(3), Florida Statutes.

You may either remit payment of this **$400.00 fine** to the Florida Department of State **within 30 days**; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen E. O'Brien
Assistant General Counsel

Enclosures

cc:
Orange County Supervisor of Elections (*via email and without enclosures*)



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

April 16, 2019

FieldWorks
c/o Dawn Waggoner
1151 N. Pine Avenue
Oviedo, FL 32765

      Re:  Violations of Third Party Voter Registration Law

Dear Ms. Waggoner:

Fieldworks, which is registered as a third-party voter registration organization under ID number 3P12-266, submitted voter registration applications to the Division of Elections that violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine. § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C. For each application that is delivered later than 10 days from collection, the fine is $50. Rule 1S-2.042(4)(d), F.A.C. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C. The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat. Fines are capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat.

The Division received 66 voter registration applications that were delivered more than ten days after they were collected. Of those, 24 were also collected before book closing but delivered after book closing. All applications were submitted by FieldWorks. Because fines are capped, the Department is imposing a $1,000 fine.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines

"upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance").  The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement.  *See* § 97.0575(4), Fla. Stat.  Payment should be mailed to:

>  Florida Department of State
>  Division of Elections
>  500 South Bronough Street, Suite 316
>  Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel

App. 0542



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

April 16, 2019

First Coast Leadership Foundation
c/o R.L. Gundy
2783 Armsdale Road
Jacksonville, FL 32218

Re: Violations of Third Party Voter Registration Law

Dear Mr. Gundy:

The Department of State has received information from the Duval County Supervisor of Elections indicating that First Coast Leadership Foundation, which is registered as a third-party voter registration organization under identification number 3P18-37, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine. § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C. For each application that is delivered later than 10 days from collection, the fine is $50. Rule 1S-2.042(4)(d), F.A.C. Fines are capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat.

Records received from the Duval County Supervisor of Elections reflects that approximately 26 voter registration applications were delivered by your organization more than ten days after they were collected. The applications were collected on various days between September 4-7, 2018, but were not delivered to the Duval County Supervisor of Elections until September 18, 2018. The applications bear third party voter registration organization number 3P18-37. Because your organization has previously been fined up to the statutory cap, the Department cannot impose any fine. Your organization should be prudent in the future.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

**R.A. Gray Building • 500 South Bronough Street, Suite 100 • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax) • DOS.MyFlorida.com**

App. 0543

Sincerely,

Ashley E. Davis
Deputy General Counsel


Enclosures

cc:   Duval County Supervisor of Elections (w/o enclosures)

**Supervisor of Elections' (SOE) Transmittal Form**
**Third-party Voter Registration Organization (3PVRO) Noncompliance**

| County: | Duval | Total applications: | 26 |
|---|---|---|---|

| Entity/person's name: | The First Coast Leadership Foundation | | |
|---|---|---|---|

| Entity/person registered as 3PVRO: | ☑ Yes   ☐ No | If yes, 3PVRO ID No: | 18-37 |
|---|---|---|---|

| Delivery method: | If mailed, enter postmark date (please provide copy of envelope) | |
|---|---|---|
| | If hand-delivered or no postmark, enter date received by SOE: | September 18, 2018 |

| Name of the person submitting the applications at SOE office (if available): | Jamison Burnes |
|---|---|

**SOE's Explanatory Statement About 3PVRO's Noncompliance**

1. Include reasons cited by 3PVRO for noncompliance or alternatively, if available, attach cover letter or written document(s) from the 3PVRO. Also, complete the entries on page 2 of this form and use continuation pages, as necessary.

2. In those circumstances in which an application with a 3PVRO ID number is returned without a cover letter or without a date-delivered mark reflecting it was collected by a 3PVRO, and the application is received after book closing or 10 days after the voter signed the application, include what efforts the supervisor's office took to contact the applicant/registered voter and confirm whether he or she returned the application to the 3PVRO. See subsection (8)(c), Rule 1S-2.042, F.A.C.

Applications were received by the SOE office after the 10 day requirement period.

| Name of Person Completing Form: | Brenda Byles | Date Submitted: | September 20, 2018 |
|---|---|---|---|

Note: Please submit this form to the Division of Elections only after applications have been processed.

Attach copies of applications with form.

App. 0545

**The attachments enclosed may contain information that is confidential and exempt from public disclosure under Florida Public Records law.**

| Co. D. ID. ... .... | ..... ...  .... justices .. | ..ppli. ... ... ... returned ... ... .... ... | ... ... .... .... justices ... | Date of collection | ..ppli. ... ... ... | ...... .... |
|---|---|---|---|---|---|---|
| 126131763 | Yes | Yes | 09/04/2018 | 09/18/2018 | New registrant | Yes |
| 124769301 | Yes | Yes | 09/06/2018 | 09/18/2018 | Already registered | Yes |
| 124930960 | Yes | Yes | 09/06/2018 | 09/18/2018 | Already registered | Yes |
| 126130680 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 126130696 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 126130714 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 123290265 | Yes | Yes | 09/06/2018 | 09/18/2018 | Already registered | Yes |
| 126130751 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 124378227 | Yes | Yes | 09/06/2018 | 09/18/2018 | Already registered | Yes |
| 126131702 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 126131719 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 125970891 | Yes | Yes | 09/06/2018 | 09/18/2018 | Already registered | Yes |
| 126131733 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 126131751 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 121493294 | Yes | Yes | 09/06/2018 | 09/18/2018 | Already registered | Yes |
| 126131783 | Yes | Yes | 09/06/2018 | 09/18/2018 | New registrant | Yes |
| 124729582 | Yes | Yes | 09/06/2018 | 09/18/2018 | Already registered | Yes |
| 121467339 | Yes | Yes | 09/06/2018 | 09/18/2018 | Already registered | Yes |
| 126131846 | Yes | Yes | 09/07/2018 | 09/18/2018 | New registrant | Yes |
| 126131864 | Yes | Yes | 09/07/2018 | 09/18/2018 | New registrant | Yes |
| 103569590 | Yes | Yes | 09/07/2018 | 09/18/2018 | Already registered | Yes |
| 126131958 | Yes | Yes | 09/07/2018 | 09/18/2018 | New registrant | Yes |
| 103529984 | Yes | Yes | 09/07/2018 | 09/18/2018 | Already registered | Yes |
| 103289115 | Yes | Yes | 09/07/2018 | 09/18/2018 | Already registered | Yes |
| 120297346 | Yes | Yes | 09/07/2018 | 09/18/2018 | Already registered | Yes |
| 126131989 | Yes | Yes | 09/07/2018 | 09/18/2018 | New registrant | Yes |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

(Attach more sheets if necessary)

**Note:** Please submit this form to the Division of Elections only after applications have been processed.

App. 0546



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

April 16, 2019

Florida Conservation Voters Education Fund
c/o Aliki Moncrief, Registered Agent
117 S. Gadsden Street
Tallahassee, FL 32301

    Re:  Violations of Third Party Voter Registration Law

Dear Mr. Moncrief:

    The Department of State has received information from the Leon and Orange County Supervisors of Elections indicating that the Florida Conservation Voters Education Fund, which is registered as a third-party voter registration organization under ID number 3P18-6, has violated Florida law.

    Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine.  § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C.  For each application that is delivered later than 10 days from collection, the fine is $50.  Rule 1S-2.042(4)(d), F.A.C.  For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.  Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  Fines are capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat.

    Records received from the Supervisors of Elections reflect that 95 voter registration applications were delivered more than ten days after they were collected.  Of those, 55 were collected before book closing but delivered after book closing.  Because fines are capped, the Department is imposing a $1,000.00 fine.

**R.A. Gray Building • 500 South Bronough Street, Suite 100 • Tallahassee, Florida  32399**
**850.245.6536 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0547

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 0.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.  Payment should be mailed to:

>Florida Department of State
>Division of Elections
>500 South Bronough Street, Suite 316
>Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel


Enclosures

cc:  Leon County Supervisors of Elections (w/o enclosures)
     Orange County Supervisor of Elections (w/o enclosures)

 **FLORIDA**
**Conservation Voters**
**Education Fund**

1700 N. Monroe St., Ste. 11-28(
Tallahassee, Florida 3230:
(850) 629-465(

<u>**By Hand Delivery**</u>

September 5, 2018

POSTMARK *9/7/18*

SEP 1 0 2018

**ORA CO**

Bill Cowles
Orange County Supervisor of Elections
119 West Kaley Street
Orlando, Florida 32806

Dear Supervisor Cowles:

This year for the first time, Florida Conservation Voters Education Fund (FCVEF), engaged in the voter registration process as a Third Party Voter Registration Organization (3PVRO 18-06). While our Director of Voter Registration and our Central Florida "hub" are located in Orlando, we proudly collected more than 28,000 registrations in Leon, Escambia, Volusia, Seminole and Brevard counties.

Unfortunately, last week we discovered that quality control staff overseeing our Central Florida work had been instructed by their manager – against FCVEF policy and staff training – to hold approximately 90 problematic voter registration forms rather than timely filing them with the appropriate supervisor of elections.

We obtained these forms and have completed an internal audit. The audit revealed that the forms had been collected in between May 5 and August 17, 2018. Quality control staff originally flagged the forms for the following reasons:

- Unchecked responses to items 1 through 3 on the form or other missing information such as a phone number
- Questionable handwriting, suggesting that the canvasser may have filled out the form for the registrant or provided false information
- Other or unknown reasons

The problem forms were collected by 15 canvassers, all of whom have been terminated as FCVEF employees. Upon completing the audit, FCVEF also immediately terminated employment of the manager who directed staff, against our policy and his training, to hold rather than submit the forms.

App. 0549

In addition, FCVEF has ceased voter registration operations in Central Florida for the remainder of this year so that we can reassess our program, management structure, and training protocols.

Florida Conservation Voters Education Fund is dedicated to voter registration for eligible citizens of Florida, and we are very proud of the work that we have done. We deeply regret that, of the 28,000 registration forms we collected, the 90 forms described above were not filed in a timely manner. We take our voter registration responsibilities seriously and I am happy to provide any additional information and answer any questions that you may have. My email address is aliki@fcvedfund.org and my cell phone is (850) 443-7609.

Thank you,

Aliki Moncrief
Executive Director

POSTMARK 9/7/18

SEP 1 0 2018

ORA CO

Encl.



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

April 16, 2019

UnidosUS
c/o Jared Nordlund
748 River Grass Lane
Winter Garden, FL 34787

   Re: Violations of Third Party Voter Registration Law

Dear Mr. Nordlund:

The Department of State has received information from the Miami-Dade County Supervisor of Elections indicating that UnidosUS, which is registered as a third-party voter registration organization under ID number 3P18-41, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine. § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C. For each application that is delivered later than 10 days from collection, the fine is $50. Rule 1S-2.042(4)(d), F.A.C. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C. Fines are capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat.

Records received from the Supervisor of Elections reflect that 5 voter registration applications were delivered more than ten days after they were collected. Of those applications, 3 were also collected before book closing but delivered after book closing. All applications bear third-party voter registration organization number 3P18-41. Therefore, the Department is imposing a $400.00 fine.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based

**R.A. Gray Building • 500 South Bronough Street, Suite 100 • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6125 (Fax) • DOS.MyFlorida.com**

App. 0551

upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Division of Elections
> 500 South Bronough Street, Suite 316
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel

Enclosures

cc: Miami Dade County Supervisor of Elections (w/o enclosures)



**FLORIDA DEPARTMENT *of* STATE**

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

October 16, 2019

Concord Management, Ltd.
c/o Marsha Williams
2605 Maitland Center Parkway
Suite A
Maitland, Florida 32751

      Re:  Violations of Third Party Voter Registration Law

Dear Ms. Williams:

      The Department of State has received information from the Orange County Supervisor of Elections indicating that Concord Management, Ltd., which is registered as a third-party voter registration organization under ID number 3P-12-247, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine.  § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C.  For each application that is delivered later than 10 days from collection, the fine is $50.  Rule 1S-2.042(4)(d), F.A.C.  For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.  Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  Fines are capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat.

      Records received from the Supervisor of Elections reflect that 33 voter registration applications were delivered more than ten days after they were collected. 32 of those applications were collected between January 2, 2019, and March 29, 2019, but not delivered until April 11, 2019. 1 of those applications was collected on March 29, 2019, but not delivered until April 15, 2019. 8 additional applications were undated, as discussed further below. Therefore, the Department is imposing a $1,000.00 fine pursuant to section 97.0575(3), Florida Statutes.

**Office of the General Counsel**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**    App. 0553

In addition to the timeliness issue, all of the applications were not submitted in accordance with applicable regulations, in that the date of receipt and third party voter registration organization identification number were not included on the back of the applications. It is the responsibility of each third-party voter registration organization to ensure that the *date of receipt* and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(B), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"); Rule 1S-2.042(4)(c) (requiring each third-party voter registration organization to "ensure that its assigned organization identification number is recorded on the bottom portion of the reverse side of any voter registration application…in a manner that does not obscure any other entry"). You are not being fined for these violations, but rather for delivering 33 dated voter registration applications more than 10 days after collecting them. As to the additional 8 applications undated by the registrant and not date marked by the organization as required on the back of the applications, it is unclear whether they were submitted timely and they are not being included in the total of untimely applications, but rather are being noted as noncompliant with the aforementioned Rules.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Division of Elections
> 500 South Bronough Street, Suite 316
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

*Colleen E. O'Brien*

Colleen O'Brien
Assistant General Counsel


Enclosures

App. 0554

cc:   Orange County Supervisor of Elections (w/o enclosures)

App. 0555



## FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

October 16, 2019

HeadCount
c/o Shari Katz
104 West 29th Street
11th Floor
New York, NY 10001

      Re:  Violations of Third Party Voter Registration Law

Dear Ms. Katz:

The Department of State received voter registrations in October 2018, indicating that HeadCount, which is registered as a third-party voter registration organization under ID number 3P-12-154, again violated Florida law in 2018.[1]

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine.  § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C.  For each application that is delivered later than 10 days from collection, the fine is $50.  Rule 1S-2.042(4)(d), F.A.C.  For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C.  The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application.  Rule 1S-2.042(4)(b), F.A.C.  Delivered means actual delivery or, if mailed, the date of a clear postmark.  *Id.*  Fines are capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat.

The Department of State received 39 voter registration applications postmarked October 5, 2018, The applications were collected between September 19, 2018 and September 23, 2018, but not delivered until October 5, 2018, more than ten days after they were collected.  *See* Rule 1S-2.042(7)(a) (when a clear postmark is visible, the postmark date serves as the date of delivery). All applications bear third-party voter registration organization number 3P-12-154. Calculation of a

---

[1] Please refer to the violation letter dated October 30, 2018, pertaining to voter registration applications received in July 2018.

**Office of the General Counsel**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0557

fine would be $1,950 based on 39 applications delivered late with each one carrying a fine of $50. However, the maximum fine that can be imposed in a calendar year under section 97.0575(3)(a) is $1,000, and your organization was already fined $1000 for violations that occurred in July 2018. Thus, this additional noncompliance is solely being noted at this time, but may be considered in relation to possible referral to the Office of the Attorney General, as provided for under section 97.0575(4), in the event of future violations by your organization.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law so as to protect applicants who have entrusted their voter registration applications to third-party voter registration organizations such as HeadCount. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen E. O'Brien

Colleen O'Brien
Assistant General Counsel

Enclosures



# FLORIDA DEPARTMENT of STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

November 27, 2019

The Florida Democratic Party
c/o Mark Herron
2618 Centennial Place
Tallahassee, Florida 32308

Re: Violations of Third Party Voter Registration Law

Dear Mr. Herron:

The Department of State has received information from the Osceola, Pinellas, and Orange County Supervisors of Elections indicating that New Florida Majority, which is registered as a third-party voter registration organization under ID number 3P-11-89, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine. § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C. For each application that is delivered later than 10 days from collection, the fine is $50. Rule 1S-2.042(4)(d), F.A.C. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C. The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat. Otherwise, it is the date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* Fines are capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat.

Records received from the Osceola County Supervisor of Elections reflect that 1 voter registration application was delivered more than 10 days after it were collected. The application was collected on July 4, 2018, but not delivered until April 29, 2019. The application bears third-party voter registration organization number 3P-11-89. The Department is imposing a **$50.00 fine** for this late-filed application.

Records received from the Pinellas County Supervisor of Elections reflect that 8 voter registration applications were delivered more than 10 days after they were collected. The applications were

App. 0559

collected on June 21, 2019, but not delivered until July 22, 2019. The applications bear third-party voter registration organization number 3P-11-89. The Pinellas County Supervisor of Elections office indicated that the agent who delivered the late applications, Mark Brandt, explained that he holds monthly meetings with the Florida Democratic Party, during which registration applications are collected in a drop box for submission to the Supervisor of Elections Office. Mr. Brandt indicated that he was unable to attend one of the meetings and he was not informed that applications had been collected in his absence. He discovered the applications in the drop box when preparing for the next meeting and turned them in to the Supervisor of Elections. Because of the communication error and prompt delivery upon discovery, the Department does not impose fines for the 8 untimely filed applications. Please consider this as a warning letter against future violations, which may result in statutory fines or referral to the Attorney General for enforcement or other remedies.

Records received from the Orange County Supervisor of Elections reflect that 3 voter registration applications were delivered more than 10 days after they were collected. The applications were collected on July 18 and 21, 2019, but not delivered until August 2, 2019. The applications bear third-party voter registration organization number 3P-11-89. The Department is imposing a **$150.00 fine** for these 3 late-filed applications.

You may either remit payment of the total fine of **$200.00** to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

>    Florida Department of State
>    Division of Elections
>    500 South Bronough Street, Suite 316
>    Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen E O'Brien

Colleen O'Brien
Assistant General Counsel
Enclosures

cc:   Osceola County Supervisor of Elections (w/o enclosures)
      Pinellas County Supervisor of Elections (w/o enclosures)
      Orange County Supervisor of Elections (w/o enclosures)



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

November 27, 2019

New Florida Majority
c/o Victricia Simmons
1001 SW 75th Ave.
Plantation, Florida 33317

      Re:  Violations of Third Party Voter Registration Law

Dear Ms. Simmons:

The Department of State has received information from the Duval County Supervisor of Elections indicating that New Florida Majority, which is registered as a third-party voter registration organization under ID number 3P-16-64, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine. § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C. For each application that is delivered later than 10 days from collection, the fine is $50. Rule 1S-2.042(4)(d), F.A.C. For each application that is collected before book closing but delivered after book closing, the fine is $100. § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C. The date of collection is "presumed to be" the applicant's signature date. § 97.0575(6), Fla. Stat. Otherwise, it is the date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C. Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.* Fines are capped at $1,000 in the aggregate per calendar year. § 97.0575(3)(a), Fla. Stat.

Records received from the Duval County Supervisor of Elections reflect that 3 voter registration applications were delivered more than ten days after they were collected. The applications were collected on May 5, June 6, and June 12, 2019, but not delivered until June 25, 2019. All 3 applications bear third-party voter registration organization number 3P-16-64. Therefore, the Department is imposing a **$150.00 fine.**

**Office of the General Counsel**
**R.A. Gray Building, Suite 100 • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6536 • 850.245.6127 (Fax) • DOS.MyFlorida.com**

App. 0563

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Division of Elections
> 500 South Bronough Street, Suite 316
> Tallahassee, FL 32399

In addition to the above-noted legal violations, additional records received from the Duval County Supervisor of Elections reflect that 63 voter registration applications were delivered within 10 days of collection but 2 days after book-closing (April 15, 2019) for the 2019, City of Jacksonville General Unitary Election. *See* section 97.055(1)(a), Fla. Stat. (2019) (with limited exceptions, registration books must be closed 29th day before each election). Although these submissions do not give rise to statutory fines under section 97.0575(3)(a)2. because the election was not one for "federal or state office," voters were effected nonetheless. Please be cognizant in future collection efforts of ensuring that municipal election dates and dates of book-closing are observed so as not to negatively impact voters.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen O'Brien
Assistant General Counsel

Enclosures

cc:  Duval County Supervisor of Elections (w/o enclosures)



# FLORIDA DEPARTMENT *of* STATE

**RON DESANTIS**
Governor

**LAUREL M. LEE**
Secretary of State

December 9, 2019

The Florida Democratic Party
c/o Mark Herron
2618 Centennial Place
Tallahassee, Florida 32308

Re:  Violations of Third Party Voter Registration Law

Dear Mr. Herron:

The Department of State has received information from the Osceola, Pinellas, and Orange County Supervisors of Elections indicating that The Florida Democratic Party, which is registered as a third-party voter registration organization under ID number 3P-11-89, has violated Florida law.[1]

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to "promptly deliver[]" those applications to the Division of Elections or a supervisor of elections or be liable for a fine.  § 97.0575, Fla. Stat.; Rule 1S-2.042, F.A.C.  For each application that is delivered later than 10 days from collection, the fine is $50. Rule 1S-2.042(4)(d), F.A.C.  For each application that is collected before book closing but delivered after book closing, the fine is $100.  § 97.0575(3)(a)2., Fla. Stat.; Rule 1S-2.042(4)(d), F.A.C. The date of collection is "presumed to be" the applicant's signature date.  § 97.0575(6), Fla. Stat.  Otherwise, it is the date printed by the organization on the back of the application. Rule 1S-2.042(4)(b), F.A.C.  Delivered means actual delivery or, if mailed, the date of a clear postmark. *Id.*  Fines are capped at $1,000 in the aggregate per calendar year.  § 97.0575(3)(a), Fla. Stat.

Records received from the Osceola County Supervisor of Elections reflect that 1 voter registration application was delivered more than 10 days after it were collected. The application was collected on July 4, 2018, but not delivered until April 29, 2019. The application bears third-party voter registration organization number 3P-11-89. The Department is imposing a **$50.00 fine** for this late-filed application.

---

[1] This correspondence rescinds and replaces the letter sent November 27, 2019, which inadvertently associated the New Florida Majority organization with 3P-11-89 in the introductory paragraph.

App. 0565

Records received from the Pinellas County Supervisor of Elections reflect that 8 voter registration applications were delivered more than 10 days after they were collected. The applications were collected on June 21, 2019, but not delivered until July 22, 2019. The applications bear third-party voter registration organization number 3P-11-89. The Pinellas County Supervisor of Elections office indicated that the agent who delivered the late applications, Mark Brandt, explained that he holds monthly meetings with the Florida Democratic Party, during which registration applications are collected in a drop box for submission to the Supervisor of Elections Office. Mr. Brandt indicated that he was unable to attend one of the meetings and he was not informed that applications had been collected in his absence. He discovered the applications in the drop box when preparing for the next meeting and turned them in to the Supervisor of Elections. Because of the communication error and prompt delivery upon discovery, the Department does not impose fines for the 8 untimely filed applications. Please consider this as a warning letter against future violations, which may result in statutory fines or referral to the Attorney General for enforcement or other remedies.

Records received from the Orange County Supervisor of Elections reflect that 3 voter registration applications were delivered more than 10 days after they were collected. The applications were collected on July 18 and 21, 2019, but not delivered until August 2, 2019. The applications bear third-party voter registration organization number 3P-11-89. The Department is imposing a **$150.00 fine** for these 3 late-filed applications.

You may either remit payment of the total fine of **$200.00** to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat. Payment should be mailed to:

> Florida Department of State
> Division of Elections
> 500 South Bronough Street, Suite 316
> Tallahassee, FL 32399

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Colleen O'Brien
Assistant General Counsel

Enclosures

cc:      Osceola County Supervisor of Elections (w/o enclosures)
            Pinellas County Supervisor of Elections (w/o enclosures)
            Orange County Supervisor of Elections (w/o enclosures)



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

January 10, 2018

Florida Democratic Party
c/o Mark Herron, Esquire
Messer Caparello
2618 Centennial Place
Tallahassee, Florida 32308

      Re:  Violations of Voter Registration Law

Dear Mr. Herron:

      The Department of State has received information indicating that the Florida Democratic Party, using registration number 3P11-89, has violated Florida law.  Florida law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, a $50 fine is imposed, unless a book closing deadline is missed, in which case the fine is is $100.  *See* § 97.0575(3), Fla. Stat.  The maximum fine that can be assessed against an organization for violations committed in a calendar year is $1,000.  *See* § 97.0575(3)(a)(3.), Fla. Stat.

      Our records reflect that three voter registration forms were delivered more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. First, on October 28, 2017, an applicant completed a voter registration form bearing third-party voter registration organization number 3P11-89. This same form was received by the Okaloosa County Supervisor of Elections on November 8, 2017, eleven days after the form was completed. Two more voter registration forms bearing 3P11-89 were completed on November 19, 2017, but delivered to the Sarasota County Supervisor of Elections on November 30, 2017. Accordingly, the Department is imposing a $150.00 fine on your organization.

      You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax) • DOS.MyFlorida.com**

App. 0569

January 10, 2018
Florida Democratic Party
Page **2** of **2**

based upon force majeure or impossibility of performance").  If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement.  *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to meet with my staff to discuss how we can help you avoid future violations, please contact the Bureau of Voter Registration Services at (850) 245-6290, so that we can set up an appointment.

Sincerely,

*Jesse*

Jesse Dyer
Assistant General Counsel

cc:     Okaloosa County Supervisor of Elections
cc:     Sarasota County Supervisor of Elections



**FLORIDA DEPARTMENT *of* STATE**

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

April 5, 2018

Chomp the Vote – UF Student Government
c/o Jacob Faubion
P.O. Box 118505
Gainesville, FL 32611

Re:  Violations of Voter Registration Law

Dear Mr. Faubion:

The Department of State has received information from the Alachua County supervisor of elections indicating that Chomp the Vote, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

The information received from the Alachua County supervisor indicates that Chomp the Vote, using registration number 3P11-41, collected two voter registration applications on August 8, 2017, and November 4, 2016, but failed to deliver those applications until October 13, 2017, outside the ten-day time period.  Therefore, Chomp the Vote is liable for a fine in the amount of $100 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning.  If Chomp the Vote again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399
850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com

App. 0571

Chomp the Vote – UF Student Government
April 5, 2018
Page 2 of 2

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials. Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Jesse Dyer
Assistant General Counsel

Enclosures

cc: Alachua County supervisor of elections

App. 0572



**FLORIDA DEPARTMENT _of_ STATE**

| | |
|---|---|
| **RICK SCOTT**<br>Governor | **KEN DETZNER**<br>Secretary of State |

April 5, 2018

Clay County Democratic Executive Committee
c/o Mr. Bobby Poole
868 Blanding Blvd, #124
PO Box 2367
Orange Park, FL 32065

      Re:  Violation of Voter Registration Law

Dear Mr. Poole:

The Department of State has received information from the Clay County Supervisor of Elections indicating that Clay County Democratic Executive Committee, a registered third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

The information the Department received indicates that Clay County Democratic Executive Committee, using registration number 3P16-265, collected a voter registration application on December 19, 2017, but failed to deliver that application in a timely manner.  Therefore, Clay County Democratic Executive Committee is liable for a fine in the amount of $50 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning.  If Clay County Democratic Executive Committee again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization.  Voter registration efforts are an effective means of encouraging and

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0573

Clay County Democratic Executive Committee
April 5, 2018
Page 2 of 2

facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third-Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations.  It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials.  Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Jesse Dyer
Assistant General Counsel
Florida Department of State

Enclosures

cc:  Clay County supervisor of elections (w/o enclosures)



# FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

April 5, 2018

Florida Democratic Party
c/o Mark Herron, Esquire
Messer Caparello
2618 Centennial Place
Tallahassee, Florida 32308

   Re:  Violations of Voter Registration Law

Dear Mr. Herron:

   The Department of State has received information from supervisors of elections of Okaloosa, Sarasota, and Palm Beach counties, indicating that the Florida Democratic Party, using registration number 3P11-89, has violated Florida law.  Florida law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, a $50 fine is imposed, unless a book closing deadline is missed, in which case the fine is $100.  *See* § 97.0575(3), Fla. Stat.  The maximum fine that can be assessed against an organization for violations committed in a calendar year is $1,000.  *See* § 97.0575(3)(a)(3.), Fla. Stat.

   Our records reflect that four voter registration forms were delivered more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. First, on October 28, 2017, an applicant completed a voter registration form bearing third-party voter registration organization number 3P11-89. This same form was received by the Okaloosa County Supervisor of Elections on November 8, 2017, eleven days after the form was completed. Two more voter registration forms bearing 3P11-89 were completed on November 19, 2017, but delivered to the Sarasota County Supervisor of Elections on November 30, 2017. Finally, on January 24, 2018, an applicant completed a voter registration form bearing third-party voter registration organization number 3P11-89. This same form was received by the Palm Beach Supervisor of Elections on February 10, 2018. Accordingly, the Department is imposing a $200.00 fine on your organization.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0575

April 5, 2018
Florida Democratic Party
Page **2** of **2**

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to meet with my staff to discuss how we can help you avoid future violations, please contact the Bureau of Voter Registration Services at (850) 245-6290, so that we can set up an appointment.

Sincerely,

Jesse Dyer
Assistant General Counsel

cc:    Okaloosa County Supervisor of Elections
cc:    Sarasota County Supervisor of Elections
cc:    Palm Beach County Supervisor of Elections



# FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

April 5, 2018

Miami Dade College
c/o Joshua Young
300 NE 2nd Ave.
Rm. 3410
Miami, FL 33132

     Re:  Violations of Voter Registration Law

Dear Mr. Young:

The Department of State has received information from the Miami-Dade supervisor of elections indicating that Miami Dade College, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

The information received from the Miami-Dade supervisor indicates that Miami Dade College, using registration number 3P14-110, collected one voter registration application on September 22, 2017, but failed to deliver the application within the ten-day time period.  Therefore, Miami Dade College is liable for a fine in the amount of $50 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning.  If Miami Dade College again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0577

Miami Dade College
April 5, 2018
Page 2 of 2

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations.  It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials.  Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Jesse Dyer
Assistant General Counsel


Enclosures

cc:   Miami-Dade supervisor of elections

App. 0578



# FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

August 6, 2018

Citrus County Democratic Executive Committee
c/o Wendy Williams
P.O. Box 74
Lecanto, FL 34460

   Re:  Violations of Voter Registration Law

Dear Ms. Williams:

   The Department of State has received information from the Citrus County supervisor of elections indicating that the Citrus County Democratic Executive Committee, which is registered as a third-party voter registration organization, has not complied with Florida law.

   Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

   Our records reflect that four voter registration forms were delivered to the supervisor of elections more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code.  Specifically, three of the applications were received by your organization on March 28, 2018, and one application on March 27, 2018, but all four were not delivered to the Citrus County supervisor of elections until April 9, 2018.  Therefore, your organization would normally be liable for a $200.00 fine pursuant to section 97.0575(3), Florida Statutes.

   Please consider this letter as a warning.  If Citrus County Democratic Executive Committee again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399
850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com

App. 0579

Citrus County Democratic Executive Committee
August 6, 2018
Page 2 of 2

To assist you, I have enclosed a Third-Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials. Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Jesse Dyer
Assistant General Counsel

Enclosures

cc:  Citrus County Supervisor of Elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

August 6, 2018

Florida Democratic Party
c/o Mark Herron, Esquire
Messer Caparello
2618 Centennial Place
Tallahassee, Florida 32308

Re:  Violations of Voter Registration Law

Dear Mr. Herron:

The Department of State has received information from the Brevard County supervisor of elections indicating that the Florida Democratic Party, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

Our records reflect that four voter registration forms were delivered more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. First, on October 28, 2017, an applicant completed a voter registration form bearing third-party voter registration organization number 3P11-89. This same form was received by the Okaloosa County Supervisor of Elections on November 8, 2017, eleven days after the form was completed.

The information received from the Miami-Dade supervisor indicates that one voter registration application was delivered more than ten days after it was collected, in violation of rule 1S-2.042, Florida Administrative Code. The application indicates that it was completed and signed February 15, 2018, but it was not delivered to the Brevard County Supervisor of Elections until April 5, 2018. There is no indication on the application that the Florida Democratic Party collected the application from the applicant on a date later than the date on which it was signed. *See* §

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

App. 0581

Florida Democratic Party
August 6, 2018
Page 2 of 2

97.0575(6), Fla. Stat. ("The date on which an applicant signs a voter registration application is presumed to be the date on which the third-party voter registration organization received or collected the voter registration application."). Therefore, the Department is imposing a $50.00 fine pursuant to section 97.0575(3), Florida Statutes.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g., § 97.0575(3)(b), Fla. Stat.* (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See § 97.0575(4), Fla. Stat.*

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to meet with my staff to discuss how we can help you avoid future violations, please contact the Bureau of Voter Registration Services at (850) 245-6290, so that we can set up an appointment.

Sincerely,

Jesse Dyer
Assistant General Counsel

Enclosures

cc:  Brevard County Supervisor of Elections

App. 0582



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

August 6, 2018

Miami Dade College
c/o Joshua Young
300 NE 2nd Ave.
Rm. 3410
Miami, FL 33132

Re: Violations of Voter Registration Law

Dear Mr. Young:

The Department of State has received information from the Miami-Dade supervisor of elections indicating that Miami Dade College, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat. Also, the organization is required to print the date the applicant delivered the application to the organization in a conspicuous space on the bottom portion of the reverse side of the voter registration application. Rule 1S-2.042(4)(b), F.A.C. In addition, each organization must ensure that its organization identification number is recorded on the bottom portion of the reverse side of any voter registration application it delivers. Rule 1S-2.042(4)(c), F.A.C.

The information received from the Miami-Dade supervisor indicates that Miami Dade College, Center for Community Involvement, collected three voter registration applications signed March 14, 2018. All three voter registration applications were mailed in an envelope postmarked March 27, 2018, thirteen days after the applications were signed. There is no indication on any of the applications that the applications were collected from the applicants on a date later than the date on which they were signed. *See* § 97.0575(6), Fla. Stat. ("The date on which an applicant signs a voter registration application is presumed to be the date on which the third-party voter registration

Miami Dade College
August 6, 2018
Page 2 of 2

organization received or collected the voter registration application."). Therefore, Miami Dade College would normally be liable for a fine in the amount of $150.00 under section 97.0575(3), Florida Statutes.

Please consider this letter a warning. If Miami Dade College again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials. Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Jesse Dyer
Assistant General Counsel


Enclosures

cc: Miami-Dade supervisor of elections



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

August, 6 2018

Retreat at Valencia Apartments
8413 Valencia Village Ln
Orlando, FL 32875

Re:  Violations of Voter Registration Law

To whom it may concern:

We received information from the Orange County supervisor of elections indicating that Retreat at Valencia Apartments may have violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization and by failing to deliver voter registration applications within the applicable deadlines.  While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

By collecting completed voter registration applications, you were acting as a third-party voter registration organization.  Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law.  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat. Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

Moreover, each third-party voter registration organization that collects voter registration applications must deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0585

Retreat at Valencia Apartments
August 6, 2018
Page 2 of 2

On March 8, 2018, the Orange County supervisor of elections received an envelope bearing your return address, postmarked March 5, 2018, containing ten completed voter registration applications. A number of those applications were signed by the applicants more than ten days before the applications were delivered to the Orange County supervisor of elections. Because applications were delivered to the supervisor of elections outside the 10-day time period, you would normally be liable for a $50.00 fine per late application pursuant to section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning. If you again violate section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General to pursue further remedies against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations. It is your responsibility to be familiar with the requirements in these materials. Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Jesse Dyer
Assistant General Counsel
Florida Department of State

Enclosures

cc: Orange County Supervisor of Elections



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 6, 2018

Concord Management LTD
c/o Marsha Williams
2605 Maitland Center Parkway
Suite A
Maitland, FL 32751

Re:  Violations of Voter Registration Law

Dear Ms. Williams:

The Department of State has received information from the Brevard County Supervisor of Elections indicating that Concord Management LTD, which is registered as a third-party voter registration organization under ID number 3P-12-247, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

Records received from the Brevard County Supervisor of Elections reflect that six voter registration forms were delivered to the Brevard County Supervisor of Elections more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were collected on March 29, 2018, May 8, 2018, May 24, 2018, April 6, 2018, and two on April 26, 2018. All six applications were received by Brevard on June 15, 2018. Therefore, the Department is imposing a $300.00 fine pursuant to section 97.0575(3), Florida Statutes.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the

---

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0587

Concord Management LTD
September 6, 2018
Page 2 of 2

Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

     Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Gary J. Holland
Assistant General Counsel

Enclosures

cc: Brevard County Supervisor of Elections (w/o enclosures)



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 6, 2018

First Coast Leadership Foundation
c/o R.L. Gundy
2049 North Pearl Street
Jacksonville, FL 32206

      Re:  Violations of Voter Registration Law

Dear Mr. Gundy:

      The Department of State has received information from the Duval County supervisor of elections indicating that First Coast Leadership Foundation, which is registered as a third-party voter registration organization under identification number 3P-18-37, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

      Records received from the Duval County Supervisor of Elections reflects that approximately 271 voter registration applications were delivered by your organization more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were completed during the period May 31 through July 12, 2018. The applications were delivered to the Duval County Supervisor of Elections on June 19, 2018 and July 23, 2018. The applications bear third party voter registration organization number 3P-18-37. Therefore, the Department is imposing a $1,000.00 fine pursuant to section 97.0575(3), Florida Statutes.

      You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed.  *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0589

First Coast Leadership Foundation
September 6, 2018
Page 2 of 2

Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Gary J. Holland
Assistant General Counsel

Enclosures

cc:  Duval County Supervisor of Elections (w/o enclosures)

App. 0590



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 6, 2018

Florida Democratic Party
c/o Mark Herron, Esquire
Messer Caparello
2618 Centennial Place
Tallahassee, Florida 32308

      Re:  Violations of Voter Registration Law

Dear Mr. Herron:

      The Department of State has received information from the Sarasota County Supervisor of Elections indicating that the Florida Democratic Party, which is registered as a third-party voter registration organization under ID number 3P-11-89, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

      Records received from the Sarasota County Supervisor of Elections reflect that three voter registration forms were delivered to the Sarasota County Supervisor of Elections more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were completed on July 21, 2018 and delivered on August 2, 2018. All three applications bear third-party voter registration organization number 3P-11-89. Therefore, the Department is imposing a $150.00 fine pursuant to section 97.0575(3), Florida Statutes.

      You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed.  *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0591

Florida Democratic Party
September 6, 2018
Page 2 of 2

Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Gary J. Holland
Assistant General Counsel

Enclosures

cc:  Sarasota County Supervisor of Elections (w/o enclosures)

App. 0592



# FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 6, 2018

Headcount
c/o Shari Katz
200 Leslie Drive
#1102
Hallandale, FL 33009

      Re:  Violations of Voter Registration Law

Dear Ms. Katz:

      The Department of State recently received by mail voter registration applications from Headcount, a registered third-party voter registration organization under identification number 3P-12-154. In collecting and delivering these applications, Headcount failed to comply with applicable law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

      In your case, approximately twenty-six voter registration applications were delivered in the month of July by your organization more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. Therefore, the Department is imposing a $1,000.00 fine pursuant to section 97.0575(3), Florida Statutes.

      Also, some of the applications were not submitted in accordance with applicable regulations, in that the date of receipt and third party voter registration organization identification number were not included on the back of the applications. Please remember it is the responsibility of each third-party voter registration organization to ensure that the *date of receipt* and the organization's identification number are properly recorded on the reverse of each application received.  *See* Rule 1S-2.042(4)(b), F.A.C. (requiring that "[t]he registration agent or the

Headcount
September 6, 2018
Page 2 of 2

organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"); Rule 1S-2.042(4)(c) (requiring each third-party voter registration organization to "ensure that its assigned organization identification number is recorded on the bottom portion of the reverse side of any voter registration application . . . in a manner that does not obscure any other entry"). You are not being fined for these violations, but rather for delivering voter registration applications more than ten days after collecting them.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Gary J. Holland
Assistant General Counsel



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 6, 2018

Mi Familia Vota
c/o Soraya Marquez
5449 S. Semoran Blvd.
Suite 19A
Orlando, FL 32822

      Re: Violations of Voter Registration Law

Dear Ms. Marquez:

As a third-party voter registration organization, Mi Familia Vota must comply with certain regulatory requirements governing such organizations. We have received information from the Orange County supervisor of election's office indicating that activities conducted by your organization may have violated the law.

This information indicates that Mi Familia Vota collected six voter registration applications on July 21 of this year. However, those applications were not submitted in accordance with the law, in that the date of receipt and third party voter registration organization identification number were not included on the back of the applications.

It is the responsibility of each third-party voter registration organization to ensure that the *date of receipt* and the organization's identification number are properly recorded on the reverse of each application received. *See* Rule 1S-2.042(4)(b), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"); Rule 1S-2.042(4)(c) (requiring each third-party voter registration organization to "ensure that its assigned organization identification number is recorded on the bottom portion of the reverse side of any voter registration application . . . in a manner that does not obscure any other entry").

**Office of the General Counsel**
**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399-0250**
**850.245.6536 • 850.245.6127 (Fax)  DOS.MyFlorida.com**

App. 0595

Mi Familia Vota
September 6, 2018
Page 2 of 2


Please consider this letter as a warning.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  For your convenience, I have enclosed a copy of a third-party voter registration organization guidelines sheet.  If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.


Sincerely,

Gary J. Holland
Assistant General Counsel

Enclosures

cc:  Orange County Supervisor of Elections (w/o enclosures)



**FLORIDA DEPARTMENT of STATE**

<b>RICK SCOTT</b><br>Governor <b>KEN DETZNER</b><br>Secretary of State

September 18, 2018

Florida Democratic Party
c/o Mark Herron, Esquire
Messer Caparello
2618 Centennial Place
Tallahassee, Florida 32308

Re: Violations of Voter Registration Law

Dear Mr. Herron:

The Department of State has received information from the Pinellas County Supervisor of Elections indicating that the Florida Democratic Party, which is registered as a third-party voter registration organization under ID number 3P-11-89, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

Records received from the Pinellas County Supervisor of Elections reflect that six voter registration forms were delivered to the Pinellas County Supervisor of Elections more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. Three applications were completed on June 9, 2018 and delivered on June 20, 2018. The agent who delivered the late applications, Lisa Grinnell, explained that she was unable to timely deliver the applications because she was busy. The other three applications were collected on May 25, 2018, and delivered on June 8, 2018. All six applications bear third-party voter registration organization number 3P-11-89. Therefore, the Department is imposing a $300.00 fine pursuant to section 97.0575(3), Florida Statutes.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

App. 0597

Florida Democratic Party
September 18, 2018
Page 2 of 2

should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Gary J. Holland
Assistant General Counsel

Enclosures

cc:  Pinellas County Supervisor of Elections (w/o enclosures)



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 21, 2018

Boynton Beach Community High School
4975 Park Ridge Blvd.
Boynton Beach, FL 33426

Re:  Violations of Voter Registration Law

To whom it may concern:

We received information from the Palm Beach County supervisor of elections indicating that Boynton Beach Community High School may have violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization and by failing to deliver voter registration applications within the applicable deadlines.  While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

By collecting completed voter registration applications, you were acting as a third-party voter registration organization.  Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law.  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat. Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

Moreover, each third-party voter registration organization that collects voter registration applications must deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399
850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com

App. 0599

Boynton Beach Community High School
September 21, 2018
Page 2 of 2

On January 26, 2018, the Palm Beach county supervisor of elections received an envelope bearing your return address and the name "Marmorato", containing eleven completed voter registration applications. A number of those applications were dated by the voters before January 16, 2018. Because applications were delivered to the supervisor of elections outside the 10-day time period, you are liable for a fine of $50.00 per late application pursuant to section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning. If you again violate section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General to pursue further remedies against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations. It is your responsibility to be familiar with the requirements in these materials. Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,



Ashley E. Davis
Deputy General Counsel
Florida Department of State



Enclosures

cc: Palm Beach County Supervisor of Elections (w/o enclosures)



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 21, 2018

NexGen America
c/o Carly Cass
512 Lucerne Ave.
Lake Worth, FL 33460

      Re:  Violations of Voter Registration Law

Dear Ms. Cass:

      The Department of State has received information from the Pinellas County Supervisor of Elections indicating that NexGen America, which is registered as a third-party voter registration organization under ID number 3P-18-23, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

      Records received from the Pinellas County Supervisor of Elections reflect that twenty voter registration applications were delivered to the Pinellas County Supervisor of Elections more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were collected on June 23, 28, 29, and 30, but not received by the Pinellas County Supervisor of Elections until July 10, 2018. Therefore, the Department is imposing a $1000.00 fine pursuant to section 97.0575(3), Florida Statutes.

      Also, four applications your organization collected were received by the Pinellas County Supervisor of Elections after book closing for the 2018 primary election. Normally this would warrant fines too. However, because not more than $1,000.00 in fines can be imposed in one calendar year, no additional fines will be imposed.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

App. 0601

NexGen America
September 21, 2018
Page 2 of 2

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel
Florida Department of State

Enclosures

cc:  Pinellas County Supervisor of Elections



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 21, 2018

Orange County Voters League, Inc.
c/o Jane E. Carey, Esquire
905 West Colonial Drive
Orlando, FL 32804

      Re:  Violations of Voter Registration Law

Dear Ms. Carey:

      The Department of State has received information from the Orange County supervisor of elections indicating that Orange County Voters League, Inc., which is registered as a third-party voter registration organization under identification number 3P-13-18, has not complied with Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

      Our records reflect that one voter registration application was delivered to the Orange County supervisor of elections more than ten days after it was collected, in violation of rule 1S-2.042, Florida Administrative Code. The voter registration application is dated March 19, 2018, and it was delivered to the Orange County SOE on April 26, 2018. Ronald Ball explained to the Orange County SOE office that he found the application while rummaging through items on his desk, and that it must have been lost. Because the application was untimely delivered, your organization would normally be liable for a $50.00 fine pursuant to section 97.0575(3), Florida Statutes.

      Please consider this letter as a warning.  If Orange County Voters League, Inc., again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

App. 0603

Orange County Voters League, Inc.
September 21, 2018
Page 2 of 2

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third-Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials.  Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel
Florida Department of State

Enclosures

cc:  Orange County Supervisor of Elections

App. 0604



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 21, 2018

Palmer Trinity School ACLU Club
8001 SW 184th St.
Cutler Bay, FL 33157

     Re:  Violations of Voter Registration Law

To whom it may concern:

     We received information from the Miami-Dade supervisor of elections indicating that Palmer Trinity School ACLU Club may have violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization and by failing to deliver voter registration applications within the applicable deadlines.  While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

     By collecting completed voter registration applications, you were acting as a third-party voter registration organization.  Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law.  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

     Moreover, each third-party voter registration organization that collects voter registration applications must deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0605

Palmer Trinity School ACLU Club
September 21, 2018
Page 2 of 2

On May 17, 2018, the Miami-Dade supervisor of elections received an envelope bearing your return address, containing fifty-one completed voter registration applications. All fifty-one applications were completed on March 17, 2018, meaning the applications were received by the Miami-Dade supervisor's office more than ten days after they were completed. Because applications were delivered to the supervisor of elections outside the 10-day time period, you would normally be liable for a $50.00 fine per late application pursuant to section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning. If you again violate section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General to pursue further remedies against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations. It is your responsibility to be familiar with the requirements in these materials. Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel
Florida Department of State

Enclosures

cc: Miami-Dade Supervisor of Elections



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 21, 2018

Republican Party of Florida
c/o Ben Gibson
420 E. Jefferson St.
Tallahassee, FL 32301

      Re:  Violations of Voter Registration Law

Dear Mr. Gibson:

      The Department of State has received information from the St. Lucie County and Pinellas County Supervisors of Elections indicating that the Republican Party of Florida, which is registered as a third-party voter registration organization under ID number 3P-11-93, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

      Records received from the St. Lucie Supervisor of Elections reflect that six voter registration applications were delivered to the supervisor's office more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were collected in April and May but not delivered until July 30, 2018, by Ms. Rebecca Isaac, who says she forgot about the forms, and was working for the Republican Party of Florida at the time she collected them. Therefore, the Department is imposing a $300.00 fine pursuant to section 97.0575(3), Florida Statutes.

      Also, on June 25, 2018, your organization delivered a photocopy of a voter registration application to the Pinellas County Supervisor of Elections office. The voter registration application was completed and collected on June 18, 2018. In order to be complete, a voter registration application must contain an original signature; a supervisor cannot process a photocopy of a voter

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax) • DOS.MyFlorida.com**

App. 0607

Republican Party of Florida
September 21, 2018
Page 2 of 2

registration application. § 97.053(5)(a)8., Fla. Stat. Pinellas County reached out to a contact with your organization, Mr. Austin Chew, who explained that the volunteer who collected the application was not aware the application had to contain an original, wet-ink signature. The application was not delivered timely thereafter. You are not being fined for this particular violation because it appears to have resulted from an honest mistake.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel
Florida Department of State

Enclosures

cc:  St. Lucie County Supervisor of Elections
     Pinellas County Supervisor of Elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

September 21, 2018

Sofia Andrade
121 Crandon Blvd.
Key Biscayne, FL 33149

Re:  Violations of Voter Registration Law

Ms. Andrade:

We received information from the Miami-Dade supervisor of elections indicating that you may have violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization and by failing to deliver voter registration applications within the applicable deadlines.  While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

By collecting completed voter registration applications, you were acting as a third-party voter registration organization.  Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law.  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat. Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

Also, it is the responsibility of each third-party voter registration organization to ensure that the *date of receipt* of the voter registration application and the organization's identification number are properly recorded on the reverse of each application received.  *See* Rule 1S-2.042(4)(b), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"); Rule 1S-2.042(4)(c) (requiring each third-party voter registration

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0609

Sofia Andrade
September 21, 2018
Page 2 of 2

organization to "ensure that its assigned organization identification number is recorded on the bottom portion of the reverse side of any voter registration application . . . in a manner that does not obscure any other entry").

On May 3, 2018, the Miami-Dade supervisor of elections received a parcel bearing your name and return address. The parcel contained twenty-one voter registration applications. It does not appear that you or any organization with which you are connected is registered as a third-party voter registration organization. Also, none of the applications reflected the date on which they were collected and/or a third-party voter registration organization identification number.

Please consider this letter as a warning.  If you again violate section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General to pursue further remedies against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations.  It is your responsibility to be familiar with the requirements in these materials.  Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel
Florida Department of State

Enclosures

cc: Miami-Dade Supervisor of Elections



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

October 1, 2018

Organize Florida Education Fund
c/o Rhyane Porter, Registered Agent
254 Ortman Drive
Orlando, FL 32811

      Re:  Violations of Voter Registration Law

Dear Ms. Porter:

      The Department of State has received information from the Hillsborough County Supervisor of Elections indicating that the Organize Florida Education Fund, which is registered as a third-party voter registration organization under ID number 3P18-62, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

      Records received from the Hillsborough Supervisor of Elections reflect that 113 voter registration applications were delivered to the supervisor's office more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were collected on August 10, 2018, but not delivered until August 21 2018, by Mr. Jihad Alexander, who says the organization's office was closed. Therefore, the Department is imposing a $1000.00 fine pursuant to section 97.0575(3), Florida Statutes.

      You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax) • DOS.MyFlorida.com**

App. 0611

Organize Florida Education Fund
October 1, 2018
Page 2 of 2

100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel

Enclosures

cc:  Hillsborough County Supervisors of Elections



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**                                                                                          **KEN DETZNER**
Governor                                                                                                    Secretary of State

October 17, 2018

NexGen America
c/o Carly Cass
111 Sutter St. 10th FL
San Francisco, CA 94104

      Re:  Violations of Voter Registration Law

Dear Ms. Cass:

      The Department of State has received information from the Pinellas County Supervisor of Elections indicating that NexGen America, which is registered as a third-party voter registration organization under ID number 3P-18-23, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

      Records received from the Pinellas County Supervisor of Elections reflect that twenty voter registration applications were delivered to the Pinellas County Supervisor of Elections more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. The applications were collected on June 23, 28, 29, and 30, but not received by the Pinellas County Supervisor of Elections until July 10, 2018. Therefore, the Department is imposing a $1000.00 fine pursuant to section 97.0575(3), Florida Statutes.

      Also, four applications your organization collected were received by the Pinellas County Supervisor of Elections after book closing for the 2018 primary election. Normally this would warrant fines too. However, because not more than $1,000.00 in fines can be imposed in one calendar year, no additional fines will be imposed.

R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399
850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com

App. 0613

NexGen America
October 17, 2018
Page 2 of 2

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ashley E. Davis
Deputy General Counsel
Florida Department of State

Enclosures

cc:   Pinellas County Supervisor of Elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

October 30, 2018

Headcount
c/o Kim Selig
104 W 29ᵗʰ St. 11ᵗʰ Floor
New York, NY 10001

      Re:  Violations of Voter Registration Law

Dear Ms. Selig:

      The Department of State recently received by mail voter registration applications from Headcount, a registered third-party voter registration organization under identification number 3P-12-154. In collecting and delivering these applications, Headcount failed to comply with applicable law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

      In your case, approximately twenty-six voter registration applications were delivered in the month of July by your organization more than ten days after they were collected, in violation of rule 1S-2.042, Florida Administrative Code. Therefore, the Department is imposing a $1,000.00 fine pursuant to section 97.0575(3), Florida Statutes.

      Also, some of the applications were not submitted in accordance with applicable regulations, in that the date of receipt and third party voter registration organization identification number were not included on the back of the applications. Please remember it is the responsibility of each third-party voter registration organization to ensure that the *date of receipt* and the organization's identification number are properly recorded on the reverse of each application received.  *See* Rule 1S-2.042(4)(b), F.A.C. (requiring that "[t]he registration agent or the organization shall print the date that the applicant delivered the application to the registration agent

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

App. 0615

Headcount
October 30, 2018
Page 2 of 2

in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry"); Rule 1S-2.042(4)(c) (requiring each third-party voter registration organization to "ensure that its assigned organization identification number is recorded on the bottom portion of the reverse side of any voter registration application . . . in a manner that does not obscure any other entry"). You are not being fined for these violations, but rather for delivering voter registration applications more than ten days after collecting them.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). Payment should be mailed to the Florida Department of State, Office of the General Counsel, 500 South Bronough Street, Suite 100, Tallahassee, FL 32399. The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Gary J. Holland
Assistant General Counsel



**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

November 15, 2018

Count My Vote Florida
c/o Charles Warren
3250 NE 1st Avenue, Suite 1
Miami, FL 33137

       Re:  Violations of Voter Registration Law

Dear Mr. Warren

The Department of State has received information from the Holmes County Supervisor of Elections indicating that Count My Vote Florida, which is registered as a third-party voter registration organization under ID number 3P18-178, has violated Florida law.

      Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  The law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

      Records received from the Holmes County Supervisor of Elections reflect that six voter registration applications were delivered to the supervisor's office more than ten days after they were collected, in violation of Rule 1S-2.042, Florida Administrative Code. The applications were collected on various dates from September 1, 2018 through September 26, 2018, but not delivered until October 5, 2018.  None of the applications bore the collection date or the ID number of Count My Vote Florida, in violation of Rule 1S-2.042(4)(b) and (c), Florida Administrative Code. Significantly, at least four of the applications were signed (and therefore presumed collected) before Count My Vote Florida even became a registered organization, in violation of section 97.0575(1), Florida Statutes.  *See also* Rule 1S-2.042(3)(a), F.A.C.  The Department is imposing a $300.00 fine pursuant to section 97.0575(3), Florida Statutes.

      You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed.  *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive

the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance").  Payment should be mailed to:

> Florida Department of State
> Division of Elections
> 500 South Bronough Street, Suite 316
> Tallahassee, FL 32399.

The check should be made out to the Florida Department of State. If you fail to remit payment or show cause within 30 days from the date of this letter, the Secretary may refer the matter to the Attorney General for enforcement.  *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with the law.  If you would like to discuss how to help you avoid future violations, please call the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,


Ashley E. Davis
Deputy General Counsel


Enclosures

cc:  Holmes County Supervisor of Elections (w/o enclosures)



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

January 4, 2017

Mr. Bradley Harper
2004 Embassy Drive
West Palm Beach, Florida 33401

      Re:  Violation of Voter Registration Law

Mr. Harper:

We have received information from the Palm Beach County supervisor of elections indicating that you have violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization.  You must register before you collect voter registrations from any person other than your spouse, child, or parent.

On August 1, 2016, a woman who said that she worked for you delivered to the supervisor a completed Florida voter registration application and another incomplete application.  While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law.  By collecting completed voter registration applications, you were acting as a third-party voter registration organization.  Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

Please consider this letter as a warning.  If you again violate section 97.0575, the Department of State may refer the violation to the Attorney General to pursue further remedies against your organization.  Voter registration efforts are an effective means of encouraging and facilitating

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

Mr. Bradley Harper
January 4, 2017
Page 2 of 2

wider participation in the democratic process.   However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations.   It is your responsibility to be familiar with the requirements in these materials.   Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

cc:  Palm Beach County supervisor of elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

January 4, 2017

College of Central Florida
c/o Marjorie McGee
1512 Southeast 43rd Terrace
Ocala, Florida 34471

Re: Violation of Voter Registration Law

Dear Ms. McGee:

The Department of State has received information from the Marion County supervisor of elections indicating that College of Central Florida, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. Moreover, for each application collected by a third-party voter registration organization before book closing but delivered to the Division or a supervisor after book closing, the statute provides for a fine of $100, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

The information received from the Marion County supervisor indicates that College of Central Florida, using registration number 3P12-188, collected a voter registration application before the book closing deadline of August 1, 2016, but failed to deliver that application until after book closing on August 8, 2016 (even given the benefit of the postmark date). Therefore, College of Central Florida is liable for a fine in the amount of $100 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning. If College of Central Florida again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0623

College of Central Florida
January 4, 2017
Page 2 of 2

democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations.  It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials.  Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State


Enclosures

cc:  Marion County supervisor of elections



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

January 4, 2017

Mr. Emmanuel Morel
emorelmedia@gmail.com                          VIA E-MAIL

      Re:  Violation of Voter Registration Law

Mr. Morel:

We have received information from the Palm Beach County supervisor of elections indicating that you have violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization.  You must register before you collect voter registrations from any person other than your spouse, child, or parent.

On August 15, 2016, you delivered to the supervisor three completed Florida voter registration applications.  While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law.  By collecting completed voter registration applications, you were acting as a third-party voter registration organization.  Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

Please consider this letter as a warning.  If you again violate section 97.0575, the Department of State may refer the violation to the Attorney General to pursue further remedies against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0625

Mr. Emmanuel Morel
January 4, 2017
Page 2 of 2

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations.   It is your responsibility to be familiar with the requirements in these materials.   Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

cc:  Palm Beach County supervisor of elections (w/o enclosures)



## FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

January 4, 2017

North Carolina League Conservation Voters
707 Murchison Road
Fayetteville, North Carolina 28301

      Re: Violations of Voter Registration Law

To Whom It May Concern:

We have received information indicating that you have violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization and by failing to deliver voter registration applications within the applicable deadlines. While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

By collecting completed voter registration applications, you were acting as a third-party voter registration organization. Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law. Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

Moreover, each third-party voter registration organization that collects voter registration applications must deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat. Further, for each application collected by a third-party voter registration organization before book closing but delivered to the

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

App. 0627

North Carolina League Conservation Voters
January 4, 2017
Page 2 of 2

Division or a supervisor after book closing, the statute provides for a fine of $100, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

On September 7, 2016, the Florida Division of Elections received an envelope with your return address which contained five completed voter registration applications. Based on the dates on the applications, three of the applications were delivered to the supervisor in an untimely manner, whether because they were delivered outside the 10-day time period or because they were collected before book closing but delivered after book closing (even given the benefit of the postmark date). Therefore, because of the untimeliness of the delivery of those applications, you are liable for a fine in the amount of $200 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning. If you again violate section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General to pursue further remedies against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations. It is your responsibility to be familiar with the requirements in these materials. Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures



# FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

January 4, 2017

The Voter Participation Center
c/o Dona L. Priebe
1201 Hays Street, Suite 200
Tallahassee, Florida 32301-2608

   Re:  Violations of Voter Registration Law

Dear Ms. Priebe:

The Department of State has received information indicating that the Voter Participation Center, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or by the book closing deadline, whichever is earlier, or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered after the 10-day period, the statute provides a fine of $50; and for each application that is delivered after book closing, the statute provides for a fine of $100, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

The information received indicates that the Voter Participation Center, using registration number 3P11-39, collected 22 voter registration applications between April and August 2016, but failed to deliver 13 of those applications by the book closing deadline.  Five other applications were delivered outside the 10-day period.  *See* Rule 1S-2.042(4)(d), F.A.C. (indicating that the date of delivery is considered to be the actual date of delivery or the postmark date).[1]  Therefore, the Voter

---

   [1] In addition to submitting the applications untimely, your organization failed to print the date the applications were received and the identification number of your third-party organization on the back of some of the applications.  In the future, please be sure to comply with the

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

The Voter Participation Center
January 4, 2017
Page 2 of 2


Participation Center is liable for a fine in the amount of $1,000 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning.  If the Voter Participation Center again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations.  It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials.  Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State


Enclosures

---

requirements of section 97.0575, Florida Statutes, and Rule 1S-2.042, Florida Administrative Code.



# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

February 6, 2017

Arab American Community Center
c/o Rasha Mubarak
5219 Timberview Terrace
Orlando, Florida 32819

Re: Violations of Voter Registration Law

Dear Mr. Mubarak:

The Department of State has received information from the Orange County supervisor of elections indicating that Arab American Community Center, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

The information received from the Orange County supervisor indicates that Arab American Community Center, using registration number 3P12-217, collected 51 voter registration applications in June of 2016, but failed to deliver those applications until July 14, 2016, outside the ten-day time period. Therefore, Arab American Community Center is liable for a fine in the amount of $1,000 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning. If Arab American Community Center again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

App. 0631

Arab American Community Center
February 6, 2017
Page 2 of 2

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials. Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

cc: Orange County supervisor of elections

App. 0632



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

February 6, 2017

Community Voters Project
c/o Mark Ferrulo
1010 Central Avenue, Unit 209
St. Petersburg, Florida 33705

      Re: Violations of Voter Registration Law

Dear Mr. Ferrulo:

The Department of State has received information from the supervisors of elections for Pinellas, Palm Beach, and Duval Counties indicating that Community Voters Project, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant. *See* § 97.0575(3)(a), Fla. Stat. Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or by the book closing deadline, whichever is earlier, or be liable for a fine. *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat. For each application that is delivered after the 10-day period, the statute provides a fine of $50; and for each application that is delivered after book closing, the statute provides for a fine of $100, with a total possible fine of $1,000 per year. *See* § 97.0575(3)(a), Fla. Stat.

The information received from the supervisors indicates that Community Voters Project, using registration number 3P14-96, collected seven voter registration applications on August 8, 2016, but failed to deliver those applications until August 22, 2016, outside the ten-day time period. Another eighty-nine applications were collected on or before July 31, 2016, but were not delivered until August 3, 2016, past the book closing deadline. Therefore, Community Voters Project is liable for a fine in the amount of $1,000 under section 97.0575(3), Florida Statutes.[1]

---

    [1] In addition, other applications submitted by Community Voters Project failed to include on the back of the application the date the application was received or the third-party identification number. In the future, please be sure to comply with the requirements of section 97.0575, Florida Statutes, and Rule 1S-2.042, Florida Administrative Code.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

App. 0633

Community Voters Project
February 6, 2017
Page 2 of 2

However, please consider this letter as a warning. If Community Voters Project again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials. Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

cc:     Pinellas County supervisor of elections
        Palm Beach County supervisor of elections
        Duval County supervisor of elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

February 6, 2017

Fellowship House
5711 South Dixie Highway
South Miami, Florida 33143-3694

   Re:  Violation of Voter Registration Law

To Whom It May Concern:

We have received information from the Miami-Dade County supervisor of elections indicating that you have violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization.  You must register before you collect voter registrations from any person other than your spouse, child, or parent.

On August 4, 2016, the supervisor received from you by mail five completed Florida voter registration applications.  While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law.  By collecting completed voter registration applications, you were acting as a third-party voter registration organization.  Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

Please consider this letter as a warning.  If you again violate section 97.0575, the Department of State may refer the violation to the Attorney General to pursue further remedies against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

Fellowship House
February 6, 2017
Page 2 of 2

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations.   It is your responsibility to be familiar with the requirements in these materials.   Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

cc:  Miami-Dade County supervisor of elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

February 6, 2017

Florida Institute for Reform and Empowerment
c/o Timothy Heberlein
3105 West Waters Avenue, Suite 107
Tampa, Florida 33614

      Re:  Violations of Voter Registration Law

Dear Mr. Heberlein:

The Department of State has received information from the Hillsborough County supervisor of elections indicating that Florida Institute for Reform and Empowerment, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

The information received from the Hillsborough County supervisor indicates that Florida Institute for Reform and Empowerment, using registration number 3P16-57, collected 37 voter registration applications on August 2, 2016, but failed to deliver those applications until August 15, 2016, outside the ten-day time period.  Therefore, Florida Institute for Reform and Empowerment is liable for a fine in the amount of $1,000 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning.  If Florida Institute for Reform and Empowerment again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

Florida Institute for Reform and Empowerment
February 6, 2017
Page 2 of 2

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations.  It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials.  Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

cc:  Hillsborough County supervisor of elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

February 6, 2017

Indian River County NAACP Branch #5151
c/o Anthony J. Brown
4159 57th Court
Vero Beach, Florida 32967

Re:  Violations of Voter Registration Law

Dear Mr. Brown:

The Department of State has received information from the Indian River County supervisor of elections indicating that Indian River County NAACP Branch #5151, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

The information received from the Indian River County supervisor indicates that Indian River County NAACP Branch #5151, using registration number 3P15-57, collected two voter registration applications on July 10, 2016, but failed to deliver those applications until July 25, 2016, outside the ten-day time period.  Three other applications were collected on August 18, 2016, but were not delivered until August 30, 2016, also outside the ten-day time period.  Therefore, Indian River County NAACP Branch #5151 is liable for a fine in the amount of $250 under section 97.0575(3), Florida Statutes.[1]

---

[1] In addition, at least one of those applications received by the supervisor failed to include the date the application was received on the back of the application.  In the future, please be sure to comply with the requirements of section 97.0575, Florida Statutes, and Rule 1S-2.042, Florida Administrative Code.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

Indian River County NAACP Branch #5151
February 6, 2017
Page 2 of 2

However, please consider this letter as a warning. If Indian River County NAACP Branch #5151 again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials. Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

cc: Indian River County supervisor of elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

February 6, 2017

Michael W. Davey Campaign
50 Ocean Lane Drive, Apartment 107
Key Biscayne, Florida 33149

      Re:  Violations of Voter Registration Law

To Whom It May Concern:

We have received information from the Miami-Dade County supervisor of elections indicating that the Michael W. Davey Campaign has violated section 97.0575, Florida Statutes, by failing to properly register as a third-party voter registration organization and by failing to deliver voter registration applications within the applicable deadlines.  While it appears your intention was to assist persons in registering to vote, you must do so in conformity with applicable law.

By collecting completed voter registration applications, you were acting as a third-party voter registration organization.   Section 97.021(37), Florida Statutes, defines "third-party voter registration organization" as any person, entity, or organization collecting voter registration applications, unless specifically exempted by Florida law.  Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat. Section 97.0575(1), Florida Statutes, requires third-party voter registration organizations to register with the Division of Elections before engaging in any voter registration activities.

Moreover, each third-party voter registration organization that collects voter registration applications must deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

App. 0641

Michael W. Davey Campaign
February 6, 2017
Page 2 of 2

On August 1, 2016, the Miami-Dade County supervisor of elections received via hand delivery from Ms. Amanda Pinto eight completed voter registration applications.   Seven of the applications were dated by the voters on May 28, 2016.   Therefore, because seven applications were delivered to the supervisor of elections outside the 10-day time period, you are liable for a fine in the amount of $350 under section 97.0575(3), Florida Statutes.

However, please consider this letter as a warning.  If you again violate section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General to pursue further remedies against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed the Florida Third-Party Voter Registration Organization Registration Form, a Division of Elections Fact Sheet, and a copy of the rule that governs third-party voter registration organizations.   It is your responsibility to be familiar with the requirements in these materials.   Additionally, further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations or further questions on how to register, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State


Enclosures

cc: Miami-Dade County Supervisor of Elections (w/o enclosures)



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

February 6, 2017

NAACP Branch #5121
c/o Deloris J. McMillon
2781 Michigan Avenue
Kissimmee, Florida 34744

      Re:  Violations of Voter Registration Law

Dear Ms. McMillon:

The Department of State has received information from the Indian River County supervisor of elections indicating that NAACP Branch #5121, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

The information received from the Indian River County supervisor indicates that NAACP Branch #5121, using registration number 3P16-156, collected seven voter registration applications on August 17, 2016, but failed to deliver those applications until August 30, 2016, outside the ten-day time period.  Therefore, NAACP Branch #5121 is liable for a fine in the amount of $350 under section 97.0575(3), Florida Statutes.[1]

However, please consider this letter as a warning.  If NAACP Branch #5121 again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the

---

[1] In addition, one of the applications failed to include the date the application was received on the back of the application.  In the future, please be sure to comply with the requirements of section 97.0575, Florida Statutes, and Rule 1S-2.042, Florida Administrative Code.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax)  DOS.MyFlorida.com**

NAACP Branch #5121
February 6, 2017
Page 2 of 2

violation to the Attorney General for an enforcement action against your organization. Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with applicable law.

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations. It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials. Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State


Enclosures

cc: Indian River County supervisor of elections



## FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

February 6, 2017

National Council of La Raza/Democracia USA
c/o Jared Nordlund
790 Northwest 107th Avenue, Suite 115
Miami, Florida 33172

     Re:  Violations of Voter Registration Law

Dear Mr. Nordlund:

The Department of State has received information from the Orange County supervisor of elections indicating that National Council of La Raza/Democracia USA, which is registered as a third-party voter registration organization, has violated Florida law.

Under Florida law, a third-party voter registration organization serves as a fiduciary to the applicant.  *See* § 97.0575(3)(a), Fla. Stat.  Therefore, the law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, the statute provides for a fine of $50, with a total possible fine of $1,000 per year.  *See* § 97.0575(3)(a), Fla. Stat.

The information received from the Orange County supervisor indicates that National Council of La Raza/Democracia USA, using registration number 3P11-103, collected 4 voter registration applications on April 27 and April 28, 2016, but failed to deliver those applications until May 12, 2016, outside the ten-day time period.  Therefore, National Council of La Raza/Democracia USA is liable for a fine in the amount of $200 under section 97.0575(3), Florida Statutes.[1]

---

   [1] An additional 74 applications received by the supervisor failed to include the date the application was received on the back of the application.  In the future, please be sure to comply with the requirements of section 97.0575, Florida Statutes, and Rule 1S-2.042, Florida Administrative Code.

**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida  32399**
**850.245.6500 • 850.245.6125 (Fax) DOS.MyFlorida.com**

App. 0645

National Council of La Raza/Democracia USA
February 6, 2017
Page 2 of 2

However, please consider this letter as a warning.  If National Council of La Raza/Democracia USA again violates section 97.0575, the Department of State may notify you of fines imposed by the statute or refer the violation to the Attorney General for an enforcement action against your organization.  Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process.  However, it is imperative that such efforts be undertaken in compliance with applicable law.

Moreover, it appears that someone may have attempted to misdate the fronts of four applications with the date "5/05/16," all in the same handwriting, even though the backs of the applications clearly indicate that the applications were collected on an earlier date.  Please be advised that it is a third-degree felony to alter the voter registration application of any other person without the other person's knowledge and consent.  *See* § 104.012(4), Fla. Stat.

To assist you, I have enclosed a Third Party Voter Registration Fact Sheet from the Division of Elections and a copy of the rule governing third-party voter registration organizations.  It is the responsibility of each third party voter registration organization to be familiar with the requirements in these materials.  Additional informative materials and further assistance can be found at http://dos.myflorida.com/elections/for-voters/voter-registration/third-party-voter-registration-organizations/.

If you have questions about the proper procedures for voter registration applications by third-party voter registration organizations, please contact the Bureau of Voter Registration Services at (850) 245-6290.

Sincerely,

Ken Detzner
Secretary of State

Enclosures

cc:  Orange County supervisor of elections

# FLORIDA DEPARTMENT *of* STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

May 23, 2017

Chris Gallaway
P.O. Box 9897
Washington, D.C. 20016-8897

Dawn Waggoner
1151 North Pine Avenue
Oviedo, Florida 32765

Re:  Violations of Voter Registration Law

Dear Mr. Gallaway and Ms. Waggoner:

The Department of State has received information that Fieldworks, using registration number 3P12-266, has again violated Florida law.  Florida law requires each third-party voter registration organization that collects voter registration applications to deliver the applications to the Division of Elections or a supervisor of elections within ten days or be liable for a fine.  *See* Rule 1S-2.042, F.A.C.; *cf.* § 97.0575, Fla. Stat.  For each application that is delivered untimely, a $50 fine is imposed, unless a book closing deadline is missed, in which case the fine is $100.  *See* § 97.0575(3), Fla. Stat.  The maximum fine that can be imposed in a calendar year against an organization is $1,000.  *See* § 97.0575(3)(a)(3.), Fla. Stat.

Several completed voter registration applications were received from Fieldworks in a manner that appears to have violated the law, as follows:

- Three applications were dated by the applicants either July 27, 2016, or July 31, 2016, but were not sent to the Florida Division of Elections until August 8, 2016 (even given the benefit of the postmark date), beyond the book closing deadline.
- Five applications were dated by the applicants July 26, 2016, but were not sent to the Florida Division of Elections until August 25, 2016 (even given the benefit of the postmark date), beyond the book closing deadline.

Fieldworks
May 23, 2017
Page 2 of 2

- Eight applications were dated by the applicants between August 23, 2016, and August 28, 2016, but were not sent to the Florida Division of Elections until September 8, 2016 (even given the benefit of the postmark date), beyond the ten-day deadline.
- Seven applications were dated by the applicants between August 2, 2016, and August 12, 2016, but were not sent to the Florida Division of Elections until August 25, 2016 (even given the benefit of the postmark date), beyond the ten-day deadline.
- Two applications were dated by the applicants either August 7, 2016, or August 18, 2016, but were not sent to the Florida Division of Elections until August 31, 2016 (even given the benefit of the postmark date), beyond the ten-day deadline.
- Several applications submitted to the Division of Elections failed to include the date the applications were received on the back of the applications, in violation of Rule 1S-2.042, Florida Administrative Code.

The aggregate fine applicable to the above violations would normally total $1,650. However, because the maximum fine that can be imposed for violations occurring within a calendar year is $1,000, and because Fieldworks has already been fined $50 for violations occurring in the 2016 calendar year, the fine imposed as a result of the violations discussed in this letter is only $950. *See* § 97.0575(3)(a)3., Fla. Stat. (setting the maximum fine that can be imposed for violations in one calendar year at $1,000). Please be advised, nonetheless, that the Secretary is authorized to refer these violations to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

You may either remit payment of this fine to the Florida Department of State within 30 days; or, you may respond to this letter within 30 days if you are able to show cause why a fine should not be imposed. *See, e.g.,* § 97.0575(3)(b), Fla. Stat. (stating that the Secretary may waive the fines "upon a showing that the failure to deliver the voter registration application promptly is based upon force majeure or impossibility of performance"). If you fail to remit payment or show cause within 30 days, the Secretary may refer the matter to the Attorney General for enforcement. *See* § 97.0575(4), Fla. Stat.

Voter registration efforts are an effective means of encouraging and facilitating wider participation in the democratic process. However, it is imperative that such efforts be undertaken in compliance with the law. Fieldworks has repeatedly failed to comply with the third-party voter registration law. If you would like to meet with Department of State staff to discuss how we can help you avoid future violations, please contact the Bureau of Voter Registration Services at (850) 245-6290, so that we can set up an appointment.

Sincerely,

Jordan Jones
Assistant General Counsel
Florida Department of State