# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF BRANCHES
AND YOUTH UNITS OF THE NAACP

      VS                         USDC NO.  4:23-cv-00215-MW-MAF
                                       USCA NO. _____

CORD BYRD et al

## TRANSMITTAL OF NOTICE OF APPEAL

      The following documents are hereby transmitted to the Clerk, U. S. Court of Appeals. The Certified copy of the appeal notice, docket entries, judgment/opinion/order appealed from are enclosed.

First Appeal Notice.
Judge/Magistrate Judge appealed from: Mark E. Walker
Other: N/A

Please acknowledge receipt on the enclosed copy of this transmittal to: TALLAHASSEE DIVISION

                                 JESSICA J. LYUBLANOVITS,
                                 CLERK OF COURT

                                 By: Ronnie Barker
                                 Deputy Clerk
                                 111 North Adams Street
July 12, 2023                      Tallahassee, Florida 32301

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

     *Plaintiffs*,

     v.               Case No. 4:23-cv-215-MW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

     *Defendants*.

_____/

## NOTICE OF APPEAL

Defendant Secretary of State Cord Byrd and Defendant Attorney General Ashley Moody appeal to the U.S. Court of Appeals for the Eleventh Circuit the preliminary-injunction order entered on July 3, 2023. Doc.101.

1

Dated: July 11, 2023

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

/s/ Michael Beato
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Joshua E. Pratt (FBN 119347)
jpratt@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

*Counsel for Defendant Secretary Byrd*

Respectfully submitted,

/s/ Stephanie A. Morse
Stephanie A. Morse (FBN 68713)
stephanie.morse@myfloridalegal.com
Noah T. Sjostrom (FBN 1039142)
noah.sjostrom@myfloridalegal.com
OFFICE OF THE ATTORNEY GENERAL
PL-01 The Capitol
Tallahassee, FL 32399-1050

*Counsel for Defendant Attorney General Moody*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 11, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

<u>/s/ Michael Beato</u>
Michael Beato

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE
OF BRANCHES AND YOUTH UNITS
OF THE NAACP, et al.,

    *Plaintiffs*,

v.                                     **Case Nos.: 4:23cv215-MW/MAF**
                                           **4:23cv218-MW/MAF**

CORD BYRD, in his official capacity
as Florida Secretary of State, et al.,

    *Defendants*.

_____/

## PRELIMINARY INJUNCTION[1]

This case arises from Florida's latest assault on the right to vote. Plaintiffs move to preliminarily enjoin two amendments to section 97.0575, Florida Statutes. One new provision bars noncitizens from registering citizens to vote, thus discriminating based on alienage, one of the most questionable classifications in equal protection jurisprudence. The other exposes individuals working for third-

---

[1] This Court is issuing a truncated order with respect to two of the three motions before this Court based on the parties' evidence demonstrating that they intended to conduct voter registration work on the Fourth of July but for the challenged provisions. Given that the Plaintiffs in Case No.: 4:23cv216 raised some overlapping claims against the same challenged provisions, but under different theories, in addition to claims against two other amended statutes not at issue in these cases, this Court will address their motion by separate order so as not to delay granting relief that is warranted in Case Nos.: 4:23cv215 and 4:23cv218.

party voter registration organizations to felony prosecutions for retaining voter information without telling them to whom the prohibition applies, what they can retain, and when they can retain it.

Florida may, of course, regulate elections, including the voter registration process. Here, however, the challenged provisions exemplify something Florida has struggled with in recent years; namely, governing within the bounds set by the United States Constitution. When state government power threatens to spread beyond constitutional bounds and reduce individual rights to ashes, the federal judiciary stands as a firewall.[2] The Free State of Florida is simply not free to exceed the bounds of the United States Constitution.

For the reasons that follow, Plaintiffs are entitled to a preliminary injunction.

---

[2] The meaning of "firewall" here— "a wall or partition designed to inhibit or prevent the spread of fire"—has featured in legal documents in the United States since the Early Republic. *Firewall*, def. 2, *Oxford English Dictionary* (3d ed. 2015); *see, e.g.*, 1797 N.Y. Laws 99 (requiring that "the exterior walls of [certain] dwelling houses, stores and other buildings . . . shall be made, erected and constructed either of stone or brick or of timber faced with brick, with party or fire walls rising twelve inches above the roof, and shall be covered . . . with . . . safe materials against fire, and not with boards or shingles . . . ."). In world literature, however, "firewall" tends to denote a wall *made of* fire, or "an unbroken line of flames forming a barrier." *Firewall*, def. 1, *Oxford English Dictionary* (3d ed. 2015). For example, the thirteenth-century Old Norse *Saga of the Völsungs* recounts that the legendary Germanic hero Sigurd (or Siegfried) passed through a wall of flame to seek the hand of Brynhild (or Brunhilda) on Gunnar's behalf. *Cf. Django Unchained* (2012) (recounting, in a conversation between Django and Dr. King Schultz, how Siegfried walks through "a circle of hellfire" to rescue Brunhilda). Both definitions have shaped more recent, figurative definitions of "firewall," including that in the computer science context.

I

These cases involve multiple constitutional challenges to newly enacted changes to section 97.0575, Florida's statute regulating third-party voter registration organizations (3PVROs).[3] These organizations offer a convenient alternative for Florida citizens to complete and submit voter registration applications so that they can participate in our democratic system. Based on the evidence they submitted in support of their motions, Plaintiffs' organizations are driven to serve their communities, connect with Floridians—particularly some of the most marginalized citizens in our state—about the importance of voting, and properly register as many new voters as possible. Now, Plaintiffs assert, their jobs, operations, and missions will be disrupted, if not frustrated entirely, because of the challenged provisions. Accordingly, Plaintiffs in both cases filed these actions almost immediately after the challenged provisions were signed into law. Plaintiffs have now moved for preliminary injunctive relief to prevent Defendants from enforcing these provisions once they take effect on July 1, 2023.

---

[3] In Case No.: 4:23cv215, Plaintiffs include several 3PVROs, including the Florida State Conference of Branches and Youth Units of the NAACP (Florida NAACP), and individuals who work for two of the Plaintiff 3PVROs. For purposes of this Order, this Court will refer to these Plaintiffs as the "Florida NAACP Plaintiffs." In Case No.: 4:23cv218, Plaintiffs also include different 3PVROs, including the Hispanic Federation, and individuals who work for other 3PVROs. This Court will refer to these Plaintiffs as the "Hispanic Federation Plaintiffs."

The Hispanic Federation Plaintiffs assert in their motion, ECF No. 32 in Case No.: 4:23cv218, that the new "citizenship requirement" for collecting or handling voter registration applications on behalf of 3PVROs violates the First and Fourteenth Amendments for multiple reasons. *See* § 97.0575(1)(f), Florida Statutes (2023). Likewise, the Florida NAACP Plaintiffs assert in their motion, ECF No. 55 in Case No.: 4:23cv215, that the citizenship requirement violates the Constitution for some of the same reasons, in addition to other constitutional infirmities. As the record evidence demonstrates, Plaintiffs in both cases rely heavily on noncitizens[4] to assist or lead voter registration efforts, including collecting or handling voter registration applications on behalf of the 3PVROs with which they work or volunteer. In addition, several individual Plaintiffs are themselves noncitizens and will be prohibited from continuing their voter registration work because of the citizenship requirement.

---

[4] Because this challenged provision includes a classification for all "noncitizens," this Court uses the same language here. However, this Court recognizes that the individual Plaintiffs in these cases are legally permitted to work in the United States, and that the 3PVROs in these two cases who employ noncitizens to work as canvassers employ only those who are legally permitted to work in the United States. *See, e.g.*, ECF No. 54-5 ¶ 17 in Case No.: 4:23cv215 ("UnidosUS conducts background checks on its canvassers and only hires canvassers who are U.S. citizens or legal permanent residents in the United States."); ECF No. 54-10 ¶¶ 15–16 in Case No.: 4:23cv215 (noting that between sixty and seventy of employed canvassers are noncitizens; stating that "Alianza conducts background checks on canvassers and only hires canvassers who are legally able to work in the United States."); ECF No. 32-1 ¶ 23 in Case No.: 4:23cv218 ("Many of Hispanic Federation's canvassers are non-citizens. Canvassers are citizens of Venezuela, the Dominican Republic, Colombia, or Mexico, but all our employees are authorized to work in the United States."); ECF No. 32-2 ¶ 23 in Case No.: 4:23cv218 ("The majority of Poder Latinx's canvassers are non-citizens. Many of our canvassers are citizens of Venezuela or Colombia, but all of our employees are authorized to work in the United States.").

The Florida NAACP Plaintiffs also assert that a new "information retention ban" violates the First and Fourteenth Amendments for multiple reasons. This provision makes it a third-degree felony for someone collecting voter registration applications on behalf of a 3PVRO to copy a voter's application or retain "a voter's personal information" for "any reason other than to provide such application or information to the [3PVRO] in compliance with [the] section." § 97.0575(7), Fla. Stat. (2023). The Florida NAACP Plaintiffs argue that this provision violates their First Amendment speech and association rights because it "severely limits 3PVROs' ability to communicate a pro-voting message by eliminating the most organic way to obtain and retain voters' contact information." ECF No. 55-1 at 45. Further, the NAACP Plaintiffs argue that the information retention ban is overbroad in violation of the First Amendment and impermissibly vague in violation of the Fourteenth Amendment.

On the parties' request, this Court consolidated these preliminary injunction motions for purposes of briefing and scheduling a hearing. This Court held a hearing on the motions on June 28, 2023, after which this Court took the motions under advisement. This Order follows.[5]

---

[5] As noted *supra*, note 1, this Court will address the third motion before this Court in Case No.: 4:23cv216 by separate order.

II

At the outset, this Court must address Defendants' abstention arguments. Specifically, Defendants assert that this Court should (A) abstain from hearing these cases under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); or (B) defer ruling on these cases until after September 30, 2023—when, in the Defendants' view, the Plaintiffs will be on the hook for statutory violations. For the following reasons, this Court will do neither.

A

First, Defendants' *Burford* argument. Defendants assert that *Burford* abstention is warranted because the State of Florida "is in the process of rulemaking," which "has the potential to resolve many of the issues—such as vagueness and overbreadth" and "streamline" the remaining issues. ECF No. 92 at 15 in Case No.: 4:23cv215. Defendants insist that "[f]ederal courts should abstain from deciding cases where doing so furthers the 'paramount interests of another sovereign' and the 'principles of comity and federalism.' " *Id.* (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)). "If ever a case called for abstention." Defendants claim, "this is it." *Id.*

The Florida NAACP Plaintiffs raise four arguments against *Burford* abstention. First, the Florida NAACP Plaintiffs contend that "[a]bstention is improper when a party alleges that certain [federal constitutional] rights are

6

threatened." ECF No. 94 at 4 in Case No.: 4:23cv215 (quoting *League of Women Voters of Fla., Inc. v. Detzner*, 354 F. Supp. 3d 1280, 1283 (N.D. Fla. 2018)). Second, they argue that "[c]ourts have long recognized that abstention is particularly inappropriate in an overbreadth or vagueness case grounded upon the First Amendment." ECF No. 94 at 5 (quoting *Hobbs v. Thompson*, 448 F.2d 456, 462 (5th Cir. 1971)).[6] Third, "Defendants' promised rulemaking will not inform judicial review of the statute" because, as the Florida NAACP Plaintiffs note, "Florida law prohibits courts from "deferr[ing] to an administrative agency's interpretation of [a] statute"; they "must instead interpret such statute or rule de novo." ECF No. 94 at 6 (quoting Fla. Const. art. V, § 21). Fourth, the Florida NAACP Plaintiffs insist that Defendants' proposed rulemaking "will neither address nor alleviate the statute's facial discrimination against noncitizens . . . or its restriction on noncitizens' ability to make and enforce employment contracts . . . ." ECF No. 94 at 6. The Hispanic Federation Plaintiffs raise similar arguments. *See* ECF No. 62 at 6–9 in Case No.: 4:23cv218.

"Under the '*Burford* abstention' doctrine, a federal court can decline to adjudicate—and can dismiss—a case that is otherwise within its jurisdiction, but only in a very particular, and 'narrow,' set of circumstances." *Deal v. Tugalo Gas*

---

[6] This Court notes that in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

*Co., Inc.*, 991 F.3d 1313, 1326 (11th Cir. 2021). The Supreme Court explained the

parameters of *Burford* abstention as follows.

> Where timely and adequate state-court review is available, a federal
> court sitting in equity must decline to interfere with the proceedings or
> orders of state administrative agencies: (1) when there are "difficult
> questions of state law bearing on policy problems of substantial public
> import whose importance transcends the result in the case then at bar";
> or (2) where the "exercise of federal review of the question in a case
> and in similar cases would be disruptive of state efforts to establish a
> coherent policy with respect to a matter of substantial public concern."
> *Colorado River Water Conservation Dist. v. United States, supra,* 424
> U.S., at 814, 96 S.Ct., at 1245.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361

(1989). "Any way you slice it, *Burford* is 'an extraordinary and narrow exception,'

to a federal court's 'virtually unflagging obligation' to exercise jurisdiction . . . ."

*Deal*, 991 F.3d at 1327 (internal citations omitted). The decision to abstain under

*Burford* rests in the sound discretion of the district court. *See id.*

This Court declines Defendants' invitation to shirk its "virtually unflagging

obligation" to hear these cases for three reasons. First, as Plaintiffs note, Defendants

make no showing as to how this Court's resolution of some of Plaintiffs' claims—

in particular, their equal protection challenge to the citizenship requirement—would

in any way *interfere* with an "ongoing administrative proceeding or action." *See*

*Deal*, 991 F.3d at 1326. In other words, Defendants have not explained how they

plan to "regulate away" the alleged suspect classification on the face of section

97.0575(1)(f)'s citizenship requirement.

8

Second, even for the claims that *are* implicated in Defendants' proposed rulemaking, *Burford* abstention is inappropriate because neither (1) difficult questions of state law in an area of substantial public import, nor (2) any disruption to the State of Florida's attempt to achieve uniform regulations in an area of substantial public concern, outweighs the importance of this Court resolving Plaintiffs' federal constitutional claims.

This Court recognizes the public importance of regulating 3PVROs. Even so, these cases do not present difficult questions of state law bearing on public policy problems whose importance transcends any result in these cases. The importance of the Department of State's eventual interpretation and application of the challenged provisions does not overcome Plaintiffs' interest in this Court's prompt ruling on their federal constitutional claims—claims which concern, among other things, their rights to be free from invidious discrimination and to reasonable notice of what actions may result in their staff's, members', and volunteers' criminal prosecution. The Eleventh Circuit has ruled similarly in past cases challenging Florida's election laws. *Cf. Siegel v. LePore*, 234 F.3d 1163, 1173 (11th Cir. 2000) (finding *Burford* abstention inappropriate where candidates for the offices of President and Vice President of the United States challenged the State of Florida's manual election recount procedures).

Nor is abstention warranted in these cases to avoid disrupting state efforts to

establish a coherent policy with respect to a matter of substantial public concern. As the Eleventh Circuit explained, a "central purpose furthered by *Burford* abstention is to protect complex state administrative processes from undue federal interference." *Siegel*, 234 F.3d at 1173. And here, like in *Siegel*, the constitutional claims at issue do "not threaten to undermine all or a substantial part" of Florida's regulatory scheme. Rather, Plaintiffs' claims "target certain discrete" provisions "set forth in a particular state statute." *See id.* Plaintiffs' discrete challenges to one of Florida's laws regulating 3PVROs does not threaten to undermine all—or even a substantial part—of the state's regulatory scheme.

Third, the specific circumstances of these cases make abstention inappropriate. The federal constitutional rights at issue are vital, and Plaintiffs' potential injuries are serious. Moreover, as Plaintiffs note, any delay to permit Defendants to regulate away any constitutional concerns may well be barred by the Florida Constitution. Specifically, article V, section 21 of the Florida Constitution mandates that "a state court or an officer hearing an administrative action pursuant to general law may not defer to an administrative agency's interpretation of such statute or rule, and must instead interpret such statute or rule de novo." Finally, Defendants have identified no legal principle supporting their notion that a state agency can cure an otherwise unconstitutional statute and that a federal court, as a result, should abstain from ruling on a federal constitutional challenge to the statute's

10

text.

To sum up, Defendants urge this Court to dismiss these cases under *Burford* and allow state courts to eventually decide Plaintiffs' claims with the benefit of a rulemaking to which state courts can afford *no* deference—all the while allowing Plaintiffs to suffer ongoing irreparable harm, lose their livelihoods, and risk felony prosecutions. This turns comity into comedy. This Court declines to abandon its "virtually unflagging obligation" to exercise jurisdiction, *see Deal*, 991 F.3d at 1327. *Burford* abstention is not appropriate here.

B

Next, Defendants request that this Court defer ruling on the motions for preliminary injunction until September 30, 2023. This Court declines to exercise its discretion to do so for many of the same reasons it declines to abstain under *Burford*—namely, the importance of the federal constitutional rights at issue and the unlikelihood that further rulemaking can or will resolve the issues here. Additionally, as the Florida NAACP Plaintiffs note, *see* ECF No. 94 at 7 in Case No.: 4:23cv215, section 97.0575(12) arguably allows for retroactive punishments for any violations of the section after July 1, 2023—not September 30, 2023, as Defendants claim.[7]

---

[7] Defendants invoke *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) in support of their argument that this Court should defer ruling on Plaintiffs' motions for preliminary injunction. At the hearing, Defendants asserted that they do not interpret section

\* \* \*

For the reasons set out above, this Court declines to abstain from addressing Plaintiffs' federal constitutional claims under *Burford* or to defer ruling until after September 30, 2023. Having addressed Defendants' arguments in favor of delay, this Court turns to the merits of Plaintiffs' motions.

III

A district court may grant a preliminary injunction if the movant shows: "(1) it has a substantial likelihood of success on the merits;" (2) it will suffer irreparable injury "unless the injunction issues; (3) the threatened injury to the movant

---

97.0575(12) to impose any requirements on 3PVROs until September 30, 2023. Tr. at 99. Defendants believe it would "create[] a *Pennhurst* issue" if this Court were to grant the motions for preliminary injunction now, as if section 97.0575 imposed liabilities on Plaintiffs on the statute's effective date of July 1, 2023. Tr. at 100. As best as this Court can discern, Defendants believe *Pennhurst* calls for deferral here because an injunction "would enjoin a state official from doing something that he is not doing based on what [Plaintiffs] say is the appropriate interpretation of state law . . . ." Tr. at 10.

Defendants' *Pennhurst* argument fails for several reasons. First, *Pennhurst*'s holding concerns the Eleventh Amendment's bar on federal courts' jurisdiction over state law claims. *Pennhurst*, 465 U.S. at 106. What *Pennhurst* unequivocally *does not* prevent is exactly what Plaintiffs are doing here—seeking prospective relief for a violation of federal constitutional law against a state official in their official capacity under *Ex parte Young. See id.* at 102. Second, to the extent Defendants call upon "the spirit" of *Pennhurst*—presumably, general notions of federalism and comity—where state officials promise not to violate individuals' rights for a few months, this Court is unpersuaded. Section 97.0575(12) allows Defendants to punish Plaintiffs for conduct that occurs on July 1, 2023. Regardless, Plaintiffs begin to suffer irreparable harm starting on July 1, 2023. The challenged provisions go into effect on that date, and Plaintiffs must begin to order their lives and organizational activities—including hiring, firing, and retraining employees and volunteers—to avoid impending fines and felony prosecutions. Indeed, failure to comply with the law's requirements within ninety days of notice from the Department of State results in *automatic* cancellation of the organizations' registrations, an imminent injury that is affecting Plaintiffs *now*.

12

outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at 1176. Although a "preliminary injunction is an extraordinary and drastic remedy," it should be granted if "the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). No one factor, however, is controlling; this Court must consider the factors jointly, and a strong showing on one factor may compensate for a weaker showing on another. *See Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ., & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979). Finally, "[a]lthough the initial burden of persuasion is on the moving party, the ultimate burden is on the party who would have the burden at trial." *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) (citing *Edenfield v. Fane*, 507 U.S. 761, 770 (1993)).

This Court begins with whether Plaintiffs have shown a substantial likelihood of success on the merits. This Court addresses this factor first because, typically, if a plaintiff cannot "establish a likelihood of success on the merits," this Court "need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). And because standing is always "an indispensable part of the plaintiff's case,"

this Court begins its merits analysis with standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

A

The "affirmative burden of showing a likelihood of success on the merits . . . necessarily includes a likelihood of the court's reaching the merits, which in turn depends on a likelihood that [a] plaintiff has standing." *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring and dissenting). Any evaluation of Plaintiffs' claims, thus, necessitates an inquiry into Plaintiffs' ability to bring such claims.

Over time, the Supreme Court has developed a three-part test for determining when standing exists. Under that test, a plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) can likely be redressed by a favorable ruling. *See Lujan*, 504 U.S. at 560–61. And "where a plaintiff moves for a preliminary injunction, the district court . . . should normally evaluate standing 'under the heightened standard for evaluating a motion for summary judgment.' " *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). Thus, "a plaintiff cannot 'rest on such mere allegations [as would be appropriate at the pleading stage], but must set forth by affidavit or other evidence

14

specific facts, which for purposes of the summary judgment motion will be taken to be true.' " *Cacchillo*, 638 F.3d at 404 (some alteration in original) (quoting *Lujan*, 504 U.S. at 561).

Plaintiffs fall into two categories: individuals and organizations. This Court will address each category's standing, in turn, with respect to each of the challenged provisions. This Court starts with the individual Plaintiffs' standing to challenge the citizenship requirement.

1

As to the citizenship requirement, both the Florida NAACP Plaintiffs and the Hispanic Federation Plaintiffs consist of (1) individuals who are noncitizens and, thus, injured directly by the citizenship requirement and (2) 3PVROs asserting organizational and associational injuries, among other theories of standing. This Court first addresses the individual Plaintiffs' standing.

The Florida NAACP Plaintiffs include Esperanza Sánchez, an individual, who submitted a sworn declaration attesting to her asserted injuries. ECF No. 54-8 in Case No.: 4:23cv215. This Court has reviewed Ms. Sánchez's declaration and finds it credible.

Ms. Sánchez asserts she is originally from Colombia but is now a permanent resident of the United States. ECF No. 54-8 ¶¶ 6, 10 in Case No.: 4:23cv215. She is currently studying to take the citizenship exam, *id*., and works for Plaintiff

UnidosUS to supervise a team of fifteen canvassers, *id*. ¶¶ 2–3. Ms. Sánchez's team helps people register to vote. *Id*. ¶ 3. Her employer, UnidosUS, is a registered 3PVRO in the State of Florida. ECF No. 54-5 ¶ 10 in Case No.: 4:23cv215.[8]

As an organizer, Ms. Sánchez makes sure that everyone on her team knows the requirements for voter registration organizations in Florida and that they follow the law. ECF No. 54-8 ¶ 17 in Case No.: 4:23cv215. As part of her duties, Ms. Sánchez distributes voter registration applications to her canvassing team and picks them up after they are finished canvassing. *Id*. ¶¶ 3, 14. Additionally, she ensures that the applications her team receives from voters are complete and that they are returned to the correct county offices on time. *Id*. ¶ 8.

According to Ms. Sánchez, were it not for the citizenship requirement, she would continue her work as an organizer in 2023 and 2024. *Id*. ¶ 7. Ms. Sánchez asserts she will not be able to collect voter registration applications or otherwise participate in voter registration due to possible fines imposed on her employer, Plaintiff UnidosUS. *Id*. In addition, she asserts that over eighty percent of her canvassing team are also noncitizens. *Id*. ¶ 9. She is concerned about losing her job as an organizer for UnidosUS, as the law restricts her ability to register voters, and

---

[8] This Court has also considered Jared Nordlund's declaration, ECF No. 54-5 in Case No.: 4:23cv215, and finds it credible. Mr. Nordlund is the Florida State Advocacy Director for Plaintiff UnidosUS, "a nonprofit organization and one of the nation's largest Latino civil rights and advocacy organizations." *Id*. ¶ 2.

she is concerned that UnidosUS will not be able to carry out its voter registration efforts as effectively without the help of their noncitizen canvassers. *Id*. ¶¶ 18–19.

Similarly, the Hispanic Federation Plaintiffs include another individual noncitizen, Veronica Herrera-Lucha, who submitted a sworn declaration attesting to her asserted injuries. ECF No. 32-3 in Case No.: 4:23cv218. This Court has also reviewed Ms. Herrera-Lucha's declaration and finds it credible.[9]

Ms. Herrera-Lucha is a lawful permanent resident and has lived in Florida since 2016. *Id*. ¶ 2. She obtained a law degree in El Salvador and a Masters in International Law in Spain. *Id*. ¶ 4. She is currently employed as the Florida State Field Director for Mi Vecino, Inc., a 3PVRO, and is responsible for overseeing the organization's voter registration activities. *Id*. ¶¶ 8–10. Ms. Herrera-Lucha is paid a salary of $55,000 per year for this work and supports four family members with it. *Id*. ¶ 11. Her work is important to her as a way to serve her community, raise

---

[9] At the hearing, Defendants did not object to the Hispanic Federation Plaintiffs supplementing the record with certified translations of their individual Plaintiffs' declarations, including Ms. Herrera-Lucha's declaration. Tr. at 109 ("[T]o the extent that the translations are materially the same and there's an attestation, we do not object."). This Court gave the Hispanic Federation Plaintiffs until noon on Friday, June 30, 2023, to supplement the record with the certified declarations and gave Defendants until 5:00 p.m. on Friday, June 30, 2023, to file any objections to them. *Id*. at 110. The Hispanic Federation Plaintiffs timely filed duplicates of their translated declarations, including Ms. Herrera-Lucha's declaration, along with a certification as to their translations. ECF No. 66-1 in Case No.: 4:23cv218. Defendants did not file any objections to the certified translations. This Court has also reviewed the certified translation, *id*., and finds it to be both credible and substantially the same as the original translation of the declaration.

awareness about Spanish-speaking candidates, and increase the number of eligible voters originally from Puerto Rico and Haiti. *Id*. ¶ 25.

Ms. Herrera-Lucha's work has her canvassing throughout the year. *Id*. ¶ 12. For instance, in July 2023, she is scheduled to participate in Independence Day events and right-to-vote celebrations in Osceola, Orange, and Polk Counties. *Id*. During voter registration events, Ms. Herrera-Lucha asserts that she always interacts with multiple individuals and collects voter registration forms. *Id*. ¶ 13. Before the citizenship requirement was enacted, she had planned to continue conducting voter registration activities in the future, with the goal of engaging with as many community members as possible and expanding Mi Vecino, Inc.'s voter registration work. *Id*. ¶¶ 15–17. However, she believes the citizenship requirement will prohibit her from collecting or handling voter registration applications on behalf of Mi Vecino, Inc. *Id*. ¶ 18. She fears the citizenship requirement will impact her ability to continue to earn a steady income in the field of voter registration and will frustrate her career trajectory and professional development by prohibiting her from doing the voter registration work that she loves. *Id*. ¶¶ 19–21.

Ms. Sánchez's and Ms. Herrera-Lucha's declarations demonstrate that both individuals face concrete, particularized, actual, and imminent injuries. Simply put, effective July 1, 2023, these individuals can no longer collect or handle voter registration applications on behalf of the 3PVROs for which they currently work

because they are noncitizens. The provision facially discriminates against these Plaintiffs because they are noncitizens, forces them to halt their efforts to communicate with would-be voters and properly register as many applicants as possible for fear of incurring devastating liability for their employers, and directly interferes with their employment. These concrete injuries are sufficient for purposes of challenging the citizenship requirement under each theory they raise in their motions.

These injuries, namely the disruption to their employment, their livelihoods, and their mission to register voters on behalf of the organizations they work for, are also fairly traceable to the Defendants in both of these motions. Section 97.0575 itself authorizes the Defendant Secretary of State to investigate alleged violations of the statute and refer them to the Attorney General for prosecution. § 97.0575(8), Fla. Stat. (2023) ("If the Secretary of State reasonably believes that a person has committed a violation of this section, the secretary may refer the matter to the Attorney General for enforcement."). On top of this, 3PVROs that fail to comply with the citizenship requirement within ninety days of the Department of State providing notice of the requirements of the law "shall automatically result in the cancellation of the [3PVRO's] registration." *Id.* § 97.0575(12).

Relatedly, the Defendant Attorney General is specifically authorized to "institute a civil action for a violation of" the citizenship requirement. *Id.* §

19

97.0575(8). "An action for relief may include a permanent or temporary injunction, a restraining order, or any other appropriate order." *Id*. Were it not for the $50,000 penalty for each noncitizen who violates the citizenship requirement and Defendants' authority to penalize 3PVROs for such violations, the individual Plaintiffs would continue collecting or handling voter registration applications on behalf of the 3PVROs for which they work.

Finally, Plaintiffs have also demonstrated why an order enjoining these Defendants from enforcing the citizenship requirement is substantially likely to redress their injuries. Removing the threat of enforcement—the risk of a $50,000 fine, automatic cancellation of the 3PVROs' registrations, and further civil enforcement by the Attorney General—would directly redress Plaintiffs' injuries. In other words, they could continue the voter registration work that they have been hired to do, without fear of Defendants penalizing their organizations with devastating fines, automatic cancellation of their registrations, and other civil enforcement actions.

"At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Thus, if there is one plaintiff in each case who demonstrates standing "to assert these rights as his own," this Court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Vill. of*

20

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977). With respect to the citizenship requirement, this Court concludes that at least one individual Plaintiff from each case has standing for purposes of pursuing preliminary injunctive relief against each Defendant. Consequently, the Florida NAACP Plaintiffs and the Hispanic Federation Plaintiffs have established standing to seek an order enjoining Defendants from enforcing the citizenship requirement.[10]

This Court now turns to the Florida NAACP Plaintiffs' standing to challenge enforcement of the information retention ban.

2

With respect to the Florida NAACP Plaintiffs' challenge to section 97.0575(7)'s information retention ban, only the organizational plaintiffs raise these claims. Accordingly, this Court first addresses whether they have demonstrated organizational standing to challenge this provision.

---

[10] By focusing the analysis in this Order on the individual Plaintiffs' standing to challenge the citizenship requirement, this Court in no way suggests that the remaining Plaintiffs have failed to establish standing for purposes of a preliminary injunction. On the contrary, this Court is satisfied that most, if not all, of the Florida NAACP Plaintiffs and the Hispanic Federation Plaintiffs have standing to pursue preliminary injunctive relief with respect to the citizenship requirement. Both groups of Plaintiffs have submitted lengthy briefs addressing the contours of their standing in this regard, along with multiple declarations that set out with precision the imminent injuries they face based on the challenged provision. Nonetheless, given the need for expediency at this juncture, this Order focuses on the individual plaintiffs discussed above. Satisfied that these Plaintiffs have standing to challenge the citizenship requirement, this Court need not address the remaining Plaintiffs in this Order. *See Arlington Heights*, 429 U.S. at 264 & n.9.

"To establish standing, an organization, like an individual, must prove that it either suffers actual present harm or faces a threat of imminent harm." *City of S. Miami v. Governor*, 65 F.4th 631, 638 (11th Cir. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Organizational standing allows an organization to assert claims based on injuries to the organization itself. *See Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079 (N.D. Fla. 2004) ("An organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes.") (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Organizations can establish standing by demonstrating a direct injury to the organization or an injury based on a diversion-of-resources theory. For standing based on a diversion of resources, "[a]n organization suffers actual harm 'if the defendant's illegal acts impair [the organization's] ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts.' " *City of S. Miami*, 65 F.4th at 638 (alteration in original) (quoting *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)). The Florida NAACP Plaintiffs assert that they have suffered both a direct organizational injury and a diversion-of-resources injury.

This Court, however, need not address their diversion-of-resource theory because the record is clear that the Florida NAACP Plaintiffs have directly suffered

a concrete, particularized, actual, and imminent injury.[11] Take, for example, Marcos Vilar's declaration on behalf of Alianza for Progress and Alianza Center (the "Alianza organizations"), which this Court has reviewed and finds credible. As Florida-registered 3PVROs, the Alianza organizations carry out their mission of increasing civic engagement by registering voters. ECF No. 54-10 ¶¶ 3, 4, 7 in Case No.: 4:23cv215. When the Alianza organizations register voters, they ordinarily retain their contact information and "engage with these voters in the future, to encourage them to get out to vote, and to make sure they have all necessary voting information." *Id.* ¶ 12. But now that section 97.0575(7) threatens their staff, members, and volunteers *with felony prosecutions* if they copy or retain a voter's personal information, the Alianza organizations will no longer be able to carry out their mission of increasing political participation by contacting voters they have registered. The information retention ban directly impedes the Alianza

---

[11] Although this Court need not address it, this Court also concludes that the Florida NAACP Plaintiffs have established an injury under a diversion-of-resources theory as well. Specifically, these organizations demonstrate that they will divert resources to mitigate the risk that *their own staff, members, and volunteers* will face felony prosecutions for carrying out the organizations' practice of retaining voter information so that they can later encourage them to vote in the future. The Florida NCAAP Plaintiffs' "diversion of personnel and time" to counteract section 97.0575(7)'s "negation of the organizations' efforts" to fulfill their purpose is exactly the type of cognizable diversion-or-resources injury. *See Browning*, 522 F.3d at 1166.

organizations'—as well as the other Florida NAACP Plaintiffs'—ability to accomplish their missions.[12]

This injury is imminent. Starting on July 1, 2023, section 97.0575 takes effect and starts a ninety-day clock for 3PVROs to reorder their operations to comply with, among other requirements, the information retention ban. And although section 97.0575(12) contemplates a ninety-day window for 3PVROs to comply with the section's new requirements, it does not mention a similar grace period for *individuals* facing a felony conviction for violating the information retention ban. It is no answer to say that the Florida NAACP Plaintiffs' injury—the impairment of their ability to reengage voters after registration—occurs only when they seek to reengage them. Given the singular opportunity the Florida NAACP Plaintiffs have to retain a voter's information upon registration, their injury is realized when they forego that opportunity to retain a voter's information.

This injury is neither speculative nor self-inflicted. For standing purposes, the Florida NAACP Plaintiffs have shown that two phrases in the challenged provision—"personal information" and "in compliance with this section"—are at

---

[12] While Defendants may posit that the Florida NAACP Plaintiffs can still conduct general voter outreach. But these organizations have demonstrated that the *targeted* voter outreach made possible by retaining a voter's contact information is central to their purpose of increasing civic engagement. Even if the Florida NAACP Plaintiffs can conduct similarly targeted outreach through more burdensome measures, like using the voter rolls at a local Supervisor of Elections Office to look up voters' contact information by name, they have still suffered an injury. The fact that a statute leaves open a more burdensome avenue of communication does not relieve its burden on the targeted group. *See Meyer v. Grant*, 486 U.S. 414, 424 (1988).

least arguably vague. *See Harrell v. The Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010). And despite Defendants' insistence that their own interpretation of section 97.0575(7) and the Florida Department of State's proposed rulemaking permit the sort of information retention that Florida NAACP Plaintiffs' staff, members, and volunteers have conducted in the past, these promises offer little solace to individuals facing a felony prosecution for violating the statute. Defendants have made no showing that their interpretation or rulemaking would save an individual from being formally charged under section 97.0575(7).[13]

The Florida NAACP Plaintiffs make clear that before the challenged provision was passed, they had a practice of retaining information from the voters they register and that, but for the information retention ban, they would continue to do so. These organizations have also demonstrated that the alleged vagueness of section 97.0575(7) leaves them to guess at whether their staff, members, or volunteers will be criminally prosecuted for continuing to retain information to reengage voters as part of their organizations' get-out-the-vote mission. And Defendants make clear they intend to enforce this provision against these organizations' individual staff, members, and volunteers—an inference permitted by

---

[13] As this Court noted on the record, the Florida NAACP Plaintiffs' injury comes from not only the risk that their staff, members, and volunteers could be convicted of a felony, but also from the *threat* of their arrest and felony prosecution. *See* Tr. at 91. Defendants conceded this point at the hearing, acknowledging that when someone "is subject to arrest, that's a pretty big deal." *Id.*

their defense of this provision, *see Harrell*, 608 F.3d at 1257, and evidenced by their stated intent to start the deadline for compliance as soon as possible, *see* ECF No. 92 at 12 in Case No.: 4:23cv215. This Court concludes that these organizations have established a substantial likelihood of success in proving a cognizable injury sufficient for standing to challenge section 97.0575(7) as vague.[14]

For the same reasons that Ms. Sánchez's and Ms. Herrera-Lucha's injuries are fairly traceable to Defendants and redressable with an injunction from this Court, these organizations meet those standing requirements as well. The challenged statute authorizes the Defendant Secretary of State to investigate alleged violations of section 97.0575(7) and refer them to the Defendant Attorney General for felony prosecution. § 97.0575(7)–(8), Fla. Stat. (2023). Removing the threat of Defendants' investigation and felony prosecution would directly redress these organizations' injuries—namely, their inability to retain voter information to reengage them in the future. Accordingly, the Florida NAACP Plaintiffs have established standing to pursue preliminary injunctive relief with respect to their void-for-vagueness claim.

B

This Court now turns to the substance of Plaintiffs' claims. The Hispanic

---

[14] Because this Court only reaches the merits of the Florida NAACP Plaintiffs' vagueness challenge, it need not determine whether they have standing to bring their First Amendment challenges at this juncture. To be sure, though, this Court does not suggest that the Florida NAACP Plaintiffs have failed to establish standing for their First Amendment claims.

Federation Plaintiffs challenge the citizenship requirement. The Florida NAACP Plaintiffs challenge both the citizenship requirement and the information retention ban. Both groups of Plaintiffs raise overlapping claims with respect to these provisions. This Court will address the claims asserted with respect to each challenged provision, starting with the citizenship requirement.

1

This Court starts with Plaintiffs' challenges to the citizenship requirement. Effective July 1, 2023, section 97.0575(1)(f) requires 3PVROs to provide to the Department of State's Division of Elections an affirmation stating that each person collecting or handling voter registration applications on behalf of that organization is a United States citizen. They must provide this affirmation in the required format *before* engaging in any voter registration activities. § 97.0575(1), Fla. Stat. (2023). Third-party voter registration organizations will be liable for a $50,000 fine for each noncitizen who collects or handles voter registration applications on behalf of that organization. *Id*. § 97.0575(1)(f). The Florida NAACP Plaintiffs and the Hispanic Federation Plaintiffs assert this provision amounts to a facially discriminatory law in violation of the Equal Protection Clause of the Fourteenth Amendment, as it impermissibly discriminates based on alienage.

"It is established, of course, that an alien is entitled to the shelter of the Equal Protection Clause." *Sugarman v. Dougall*, 413 U.S. 634, 641 (1973). "Under the

27

Equal Protection Clause, 'No state shall . . . deny to any person within its jurisdiction the equal protection of the laws.' " *Estrada v. Becker*, 917 F.3d 1298, 1308 (11th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1). And, "[a]s a general matter, a state law that discriminates on the basis of alienage can be sustained only if it can withstand strict judicial scrutiny." *Bernal v. Fainter*, 467 U.S. 216, 219 (1984).

Defendants do not dispute that the citizenship requirement, on its face, discriminates against all noncitizens. In response, however, they argue this Court must look beyond the face of the statute and parse the text into two subgroups to determine the applicable standard of review. Defendants assert that within the noncitizen classification, this Court should apply rational basis review to noncitizens who are here illegally. And as for noncitizens who are here legally—namely, lawful permanent residents, also known as "green card" holders, and lawful temporary residents—Defendants argue that the classification is permissible because it falls within the "political function" exception. This Court will address each argument in turn.

First, this Court rejects Defendants' argument that this Court should subject the challenged provision to varying levels of scrutiny based on subgroups that exist nowhere in the statute. Defendants cite no authority—binding or persuasive—suggesting that this Court should take a scalpel to the statutory text and divide a sub-

28

classification of "illegal aliens" from separate sub-classifications of lawful residents when the Florida Legislature declined to be so precise.

To be sure, this Court understands why Defendants insist this Court should ignore the statute's plain language so that, perhaps, some aspect of the classification at issue might survive judicial review. When a state discriminates against "undocumented aliens"—or noncitizens who are here illegally—and the classification at issue burdens no fundamental rights, rational basis review applies. *See Estrada*, 917 F.3d at 1308–10. For example, in *Estrada*, the Eleventh Circuit held that rational basis review applied to an equal protection challenge to Georgia's policy that prevented any person who was "not lawfully in the United States" from attending specific state schools within Georgia's university system. *Id*. at 1301. But when the classification on its face applies to *all* noncitizens, *regardless* of their documentation or immigration status, the classification is subject to strict scrutiny. *See, e.g.*, *Sugarman*, 413 U.S. at 642, 646 (applying "close scrutiny" and holding that state statute "which denies *all* aliens the right to hold positions in New York's classified competitive civil service" violated the Fourteenth Amendment's equal protection guarantee (emphasis added)); *Bernal*, 467 U.S. at 227–28 (applying strict scrutiny to Texas statutory requirement that prevented *all* noncitizens from becoming notaries public). Here, the Florida Legislature means what it says—*all* noncitizens, not just illegal aliens, are subject to this provision. Accordingly, this

29

Court agrees with Plaintiffs that *Bernal* provides the appropriate analytical framework with respect to their challenge to Florida's ban on *all* noncitizens from collecting or handling voter registration applications on behalf of 3PVROs. That is, absent some other exception, this Court must apply strict scrutiny to the classification to determine if it violates the Equal Protection Clause.

Second, Defendants assert that an exception to strict scrutiny applies here—namely, the "political function" exception. Both sides agree that *Bernal* provides the test this Court must use to determine whether the "political function" exception applies in this case. They disagree, however, as to its application.

In *Bernal*, the Supreme Court articulated a two-pronged test to determine a "political function" exception. "To determine whether a restriction based on alienage fits within the narrow political-function exception," this Court must first examine "the specificity of the classification." *Bernal*, 467 U.S. at 221 (citation omitted). "[A] classification that is substantially overinclusive or underinclusive tends to undercut the governmental claim that the classification serves legitimate political ends." *Id.* (citation omitted). "Second, even if the classification is sufficiently tailored," it may be applied "only to persons holding state elective or important nonelective executive, legislative, and judicial positions, those officers who participate directly in the formulation, execution, or review of broad public policy, and hence perform

functions that go to the heart of representative government." *Id*. at 221–22 (internal quotation marks and citation omitted).

As to the first prong, like in *Bernal*, the classification here "does not indiscriminately sweep within its ambit a wide range of offices and occupations but specifies only one particular post with respect to which the State asserts a right to exclude aliens." *Id*. at 222. The citizen requirement is not overinclusive—"it applies narrowly to only one category of persons: those wishing to [collect or handle voter registration applications on behalf of third-party voter registration organizations]." *Id*.

"Less clear is whether [the citizenship requirement] is fatally underinclusive." *Id*. As counsel for the Florida NAACP Plaintiffs argued at the hearing, United States postal workers also collect and handle voter registration applications submitted by mail, and noncitizens are allowed to be postal workers. Moreover, at the hearing, Defendants had no response to the Hispanic Federation Plaintiffs' argument that noncitizens are also permitted to serve on Florida's Elections Commission and work for other state agencies. *See* ECF No. 62 at 15 in Case No.: 4:23cv218.

Instead, Defendants suggest that the law is not underinclusive solely because it discriminates only against those noncitizens who would otherwise "undergo[] the fiduciary duty of handling and collecting completed applications." ECF No. 60 at 28 in Case No.: 4:23cv218. But employees of several state agencies are also responsible

31

for handling completed voter registration applications, and the State of Florida apparently has not decided to exclude all noncitizens from these positions. *See* § 97.053(1), Fla. Stat. (2023) ("Voter registration applications, changes in registration, and requests for a replacement voter information card must be accepted in the office of any supervisor, the [Division of Elections], a driver license office, a voter registration agency, or an armed forces recruitment office when hand delivered by the applicant or a third party during the hours that the office is open or when mailed."); § 448.09, Fla. Stat. (2023) (prohibiting public and private employment only for noncitizens who are not authorized to work under the immigration laws of the United States). Thus, it is a closer call as to whether the citizenship requirement is fatally underinclusive. But that is not the end of the inquiry.

Even assuming, without deciding, that Florida's ban on all noncitizens from collecting or handling voter registration applications is not fatally underinclusive, the law fails the second prong of the "political function" test. That is, the citizenship requirement does not apply only to persons holding state elective or important nonelective executive, legislative, and judicial positions and, thus, participating directly in the formulation, execution, or review of broad public policy. Without dispute, 3PVRO staff, members, and volunteers are not public employees of any branch of state government. Nor do they participate directly in the formulation, execution, or review of broad public policy.

32

The focus of the inquiry for this second prong is "whether a position was such that the officeholder would necessarily exercise broad discretionary power over the formulation or execution of public policies importantly affecting the citizen population—power of the sort that a self-governing community could properly entrust only to full-fledged members of that community." *Bernal*, 467 U.S. at 223–24. Here, Defendants expressly concede that "those who collect and handle completed applications aren't vested with discretion or engage in policy making." ECF No. 60 at 28 in Case No.: 4:23cv218.

In short, Defendants urge this Court to deviate from settled law and construe this exception far more broadly than the Supreme Court has ever permitted. Their request runs counter to the Supreme Court's admonition that "the political-function exception must be *narrowly* construed; otherwise *the exception will swallow the rule* and depreciate the significance that should attach to the designation of a group as a 'discrete and insular' minority for whom heightened judicial solicitude is appropriate." *Bernal*, 467 U.S. at 222 n.7 (emphasis added). Accordingly, the "political function" exception does not apply here. Full stop.

Because the political function exception does not apply here and Defendants come forward with no other applicable exception, this Court must apply strict scrutiny. *Id*. at 227. "To satisfy strict scrutiny, the State must show that [the challenged provision] furthers a compelling state interest by the least restrictive

means practically available." *Id*. Even at the preliminary injunction stage, Defendants carry the burden of proving that the challenged provision satisfies strict scrutiny. *Otto v. City of Boca Raton, Florida*, 981 F.3d 854, 868 (11th Cir. 2020) (applying strict scrutiny in First Amendment challenge to local ordinance and reversing denial of preliminary injunction based, in part, on government's failure to prove ordinance satisfied strict scrutiny).

In their briefs, Defendants do not even attempt to demonstrate how the citizenship requirement satisfies strict scrutiny. At the hearing, Defendants focused on the state's legitimate interest in ensuring voter registration applications are turned in on time and the risk that noncitizens may leave the country before they can turn in such applications on behalf of the 3PVROs for which they work or volunteer. *See* Tr. at 84 ("And timeliness is the bucket under which it falls . . . . Timeliness is a concern for 3PVROs, and timeliness we try to tie to the issues that come with resident alien and illegal alien [sic], someone here on a temporary basis . . . . Timeliness is a broad heading."). But Defendants point to no record evidence indicating that noncitizens, as a class, have such a fleeting presence in this country as to justify a wholesale ban on their collecting or handling voter registration applications. *See Bernal*, 467 U.S. at 2319 ("There is nothing in the record that indicates that resident aliens, as a class, are so incapable of familiarizing themselves with Texas law as to justify the State's absolute and classwide exclusion.").

34

This Court is in no way dismissing the gravity of the problem posed by late-filed voter registration applications. If 3PVROs turn applications over to the appropriate election officials too late, would-be voters who chose to register with those 3PVROs may be precluded from voting in the next election based on the untimely submission of their applications. This is a serious issue. And Defendant Byrd filed evidence demonstrating that untimely submissions occur. *See* ECF No. 60-1 at 93 ¶ 7 in Case No.: 4:23cv218 ("The Office reviewed approximately 3,077 voter registration applications that were collected and submitted untimely by 3PVROs, in violation of section 97.0575, Florida Statutes. The Office assessed statutory fines in the amount of $41,600.00 against those 3PVROs that did not comply with the statutory requirements."). Indeed, several 3PVROs have been fined for turning in late applications this year, including the Republican Party of Duval County (ten late applications, *id*. at 385), the Clay County Democratic Executive Committee (one late application, *id*. at 383), and Plaintiff Alianza Center, Inc. (five late applications, *id*. at 408).

Thus, the State of Florida has identified a problem with respect to untimely submission of voter registration applications. The hard part for Defendants is identifying any connective tissue between the problem and the state's proposed solution—namely, banning *all* noncitizens from collecting or handling voter registration applications on behalf of 3PVROs. At the hearing, Defendants

acknowledged the dearth of evidence connecting noncitizens to late-filed voter registration applications. And their papers don't even attempt to justify the law under strict scrutiny. At the very least, Defendants must be able to marry the solution to the problem. But Defendants have failed to do that here.

Relatedly, the citizenship requirement is also *not* the least restrictive means to tackle the problem of late voter application submissions. Indeed, along with the citizenship requirement, Florida also enacted higher fines for late submissions, while also reducing the amount of time available for 3PVROs to submit such applications ahead of the book closing deadline. *See* § 97.0575(5), Fla. Stat. (2023). With respect to this provision, increasing the penalties for late submissions is at least rationally related to solving the problem of late submissions. It is certainly less restrictive than banning an entire class of people from collecting or handling voter registration applications. In short, Defendants' attempt to justify the citizenship requirement based on "timeliness" is simply not enough to meet strict scrutiny's "stringent requirements." *Bernal*, 467 U.S. at 2319.

The same is true with respect to Defendants' secondary argument in defense of the citizenship requirement. At the hearing, Defendants also sought to justify the classification under the "broad heading" of "voter integrity," based on the state's concern that noncitizens are illegally voting. Tr. at 84–85. But Defendants conceded that banning all noncitizens from collecting or handling voter registration

applications is not a perfect fit to alleviate the state's concern about "voter integrity." *Id*. at 85. Nonetheless, Defendants erroneously asserted this imperfect fit is "good enough" because rational basis review should apply. *Id*. As this Court has already explained at length, the classification at issue is subject to strict scrutiny. Therefore, this Court rejects Defendants' "good enough" approach to justifying discrimination in this case. Defendants must come forward with proof that the provision is the least restrictive means to furthering the state's interest. This they have not done.

"Without a factual underpinning, the State's asserted interest lacks the weight [the Supreme Court has] required of interests properly denominated as compelling." *Bernal*, 467 U.S. at 228. Accordingly, Defendants have not demonstrated that the citizenship requirement furthers a compelling state interest by the least restrictive means practically available.

This Court concludes that Plaintiffs are substantially likely to succeed on their claim that the citizenship requirement violates the Equal Protection Clause of the Fourteenth Amendment. At this juncture, because they are substantially likely to succeed on the merits of their equal protection claim, this Court need not address the merits of the balance of the Florida NAACP Plaintiffs' and Hispanic Federation Plaintiffs' claims as to the citizenship requirement. Next, this Court turns to the merits of Plaintiffs' challenge to the information retention ban.

37

2

This Court now turns to the Florida NAACP Plaintiffs' vagueness challenge to section 97.0575(7), the information retention ban. "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality opinion); *accord Kolender v. Lawson*, 461 U.S. 352, 357 (1983). For the reasons set out below, this Court concludes that section 97.575(7) is unconstitutionally vague because it suffers from the twin evils of (1) failing to provide notice of what is prohibited and (2) authorizing or encouraging arbitrary and discriminatory enforcement.

This Court starts, as it must, by looking at the statute at issue. This Court has a duty to construe statutes as constitutional if it can. *See Boos v. Barry*, 485 U.S. 312, 330 (1988). However, the nature of this Court's duty to narrowly construe a challenged statute varies depending on whether the challenged statute is state or federal law. When a federal law is at issue, this Court has a "duty to avoid constitutional difficulties by [adopting a limiting construction] if such a construction is *fairly possible*." *Boos*, 485 U.S. at 331 (emphasis added). If, on the other hand, a state law is at issue, this Court cannot "adopt a narrowing construction . . . unless

38

such a construction is *reasonable and readily apparent*." *Id.* at 330 (emphasis added); *accord Stenberg v. Carhart*, 530 U.S. 914, 944 (2000). Only a state court can supply the requisite construction to save an otherwise vague state statute. *Gooding v. Wilson*, 405 U.S. 518, 520 (1972).

"The distinction is an important one" because "[w]hen a state statute has unconstitutional applications and has not been given a narrowing construction by the state court that saves it from those applications, federal courts 'must be careful not to encroach upon the domain of a state legislature by rewriting a law to conform it to constitutional requirements.' " *Toghill v. Clarke*, 877 F.3d 547, 556 (4th Cir. 2017) (quoting *Legend Night Club v. Miller*, 637 F.3d 291, 301 (4th Cir. 2011)); *see also Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) ("[A]s a federal court, we must be particularly reluctant to rewrite the terms of a *state* statute.") (emphasis in original); *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 833 (7th Cir. 2014) (explaining that "the 'unless' clause" in "unless such construction is reasonable and readily apparent" is an "important federalism principle [that] should be invoked sparingly and with caution").

So, the question before this Court is not whether there is *any* reading that would render the statute constitutional. Nor is it whether there is a possible, plausible, or simply reasonable reading that would render the statute constitutional. Instead, the question is whether there is a constitutional reading of the statute that is

both *reasonable* and *readily apparent* and, thus, does not require this Court to rewrite the statute. *See Citizens for Responsible Gov. State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1194–95 (10th Cir. 2000) (declining state's invitation to give statute at issue "a construction more restrictive than that provided by [its] plain language") (quoting *Wilson v. Stocker*, 819 F.2d 943, 948 (10th Cir. 1987)).

With that in mind, this Court turns to the text of the challenged provision. Section 97.0575(7) provides:

> If a person collecting voter registration applications on behalf of a third-party voter registration organization copies a voter's application or retains a voter's personal information, such as the voter's Florida driver license number, Florida identification card number, social security number, or signature, for any reason other than to provide such application or information to the third-party voter registration organization in compliance with this section, the person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 97.0575(7), Fla. Stat. (2023) (emphasis added).

To understand what this section prohibits, a person of ordinary intelligence must know three things: (1) to whom does the statute apply; (2) which information falls within its reach; and (3) what is the person prohibited from doing with that information. Knowing the answers to each of these questions is critical to avoiding arrest for a third-degree felony.

Plaintiffs assert that the phrase "personal information" is vague. That is, Plaintiffs argue the statute provides no notice of what information falls within its

reach. ECF No. 55-1 at 51 in Case No.: 4:23cv215. In addition, Plaintiffs assert the phrase "in compliance with this section" likewise renders the statute vague. *Id*. This phrase implicates both (1) to whom the statute applies and (2) what that person is prohibited from doing with the information at issue. Defendants, for their part, argue that the meaning of the phrase "personal information" is clear, and that the Florida Department of State's rulemaking will obviate any vagueness concerns with this term or the phrase "in compliance with this section." ECF No. 92 at 31–32 in Case No.: 4:23cv215.

With respect to Defendants' suggestion that the Department of State can "clarify" the statute, they are mistaken. Rewriting state statutes is the sole province of the state's legislative branch. Likewise, assigning authoritative constructions to a state's statutory text is the sole province of the state's judicial branch. Rewriting the laws it enforces is not within the purview of the executive branch, and Defendants' assurance that the Department of State will fix the problem is a nonstarter.

What the Defendants can do—and what they have attempted to do in this case—is propose a construction of the statute for this Court to consider. Indeed, this Court must "consider any limiting construction" that the "enforcement agency has proffered." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982). But Defendants cannot propose a possible reading of the statute and assert that their construction is authoritative while rejecting Plaintiffs' possible

reading of the statute. Again, absent clarification from the Florida Legislature or an interpretation by Florida's state courts, this Court can only adopt Defendants' proposed construction if it is both reasonable and readily apparent from the face of the statute.

This Court must make clear the question before it. The question is not how the statute *actually applies.* That is to say, this Court is not construing the statute to apply it in a particular, well-defined context. Rather, the question is whether a person of ordinary intelligence can understand what the statute prohibits and to whom it applies. Thus, the canons of construction, while still relevant, take on less significance. And while this is a Court of law—not of grammar—the "ordinary principles of English prose" are not "irrelevant" to the definition's construction. *See Flora v. United States*, 362 U.S. 145, 150 (1960). This is especially true here, where the question is how a person of ordinary intelligence would read the statute.

This Court acknowledges the obvious up front. Clearly, the challenged provision prohibits individuals who engage directly with voters and collect completed applications from the voters from copying those completed applications for their own personal use. Perhaps they plan to contact these voters later to advertise their personal business or solicit donations for their church. But retention of information for such personal reasons, on the face of section 97.0575, is "not in

42

compliance with this section." Another possible reading is that *anyone* who works for a 3PVRO and receives collected applications is prohibited from retaining certain information—and therein lies the rub.

The statute does not necessarily limit its prohibitions only to people who are collecting information directly from voters out in the community. Arguably, the statute applies to all persons who collect voter registration applications on behalf of 3PVROs. This includes the chain of command and the chain of custody within a given 3PVRO, from the canvasser to the field organizer, to the quality control personnel, to the person who finally delivers the completed applications to the appropriate elections officials. At every step in this chain, individuals are collecting voter registration applications on behalf of a 3PVRO, and thus, they are subjecting themselves to the threat of prosecution under this statute.[15] The problem here is that the statute offers no readily apparent construction as to whom it applies. Is it limited solely to folks who are directly engaging with voters and collecting completed applications from them? Or does it apply to anyone further up the chain who would

_____

[15] For example, Plaintiff Esperanza Sánchez attested in her declaration that (1) she supervises a team of 15 canvassers on behalf of UnidosUS, a 3PVRO, (2) she distributes voter registration applications to her canvassing team and picks them up when they are done, and (3) she checks that applications her canvassing team receives from voters are complete and turned into the correct county offices on time. *See* ECF No. 54-8 in Case No.: 4:23cv215. Thus, Ms. Sanchez is not always simply engaging directly with voters to fill out applications and then turning them over to the 3PVRO. Instead, she is acting as an agent of the 3PVRO in various capacities— canvasser, supervisor, quality control, and the final link in the chain of custody prior to delivery to the appropriate elections official.

retain voter information for get-out-the-vote purposes? What about a 3PVRO employee who collects completed applications from volunteers in the community?

The statute also contemplates that such persons are permitted to copy voter registration applications or other "personal information" for a specific purpose—"to provide such application or information to the third-party voter registration organization in compliance with this section." *See* § 97.0575(7), Fla. Stat. (2023). Aside from turning the applications over to the 3PVRO for delivery to the appropriate elections official within the time afforded by the statute, there does not appear to be any other way for an individual "to provide such application or information to the [3PVRO] in compliance with this section." That seems consistent with this aspect of the Department of State's proposed gloss:

> Each voter registration application contains a voter's personal information that is not generally available to the public. For purposes of section 97.0575(7), F.S., a person collecting a voter registration application on behalf of a 3PVRO for the reason of providing such application (including the voter's personal information contained therein) to the 3PVRO shall be deemed to be "in compliance with this section" with respect to providing such application to the 3PVRO if the person:
>
> 1. Provides such application to the 3PVRO and
>
> 2. Does not retain such application after providing it to the 3PVRO.

ECF No. 92-1 at 73 in Case No.: 4:23cv215.

This Court reiterates that it must "consider any limiting construction" that the "enforcement agency has proffered." *Flipside*, 455 U.S. 489, 494 n.5. But this Court

is without power to impose a narrowing construction on a state law "unless such a construction is *reasonable and readily apparent*." *Boos*, 485 U.S. at 330 (emphasis added). And while the proposed rule, cited above, attempts to answer the question about what individuals are prohibited from doing with voter information, the Department's additional "clarifications" call this interpretation into serious doubt. As explained below, this only underscores the statute's vagueness.

Section 97.0575(7)'s plain language only applies to individuals, not the 3PVRO as an organization. Thus, it is reasonable to read the statute as prohibiting only individuals who collect such information from copying or retaining that information, except for purposes of providing the information to the 3PVRO. In other words, the plain language of the provision includes no similar prohibition on copying or retaining information for the 3PVRO itself. But this reveals an inherent ambiguity of the statute in the context to which it applies. 3PVROs are, of course, made up of individuals—staff, members, volunteers, etc. And these individuals work together in various ways to collect voter registration applications at various points along the chain of custody until they are finally delivered to the appropriate elections official. *See* ECF No. 54-8 in Case No.: 4:23cv215. Accordingly, the Department of State's proposed definition of "in compliance with" this statute only leads to further ambiguity as it fails to address what individuals working for the 3PVRO may do

with the voter registration applications or voter information once they receive it from those individuals who collected it directly from voters.

Seemingly recognizing this ambiguity, the Department of State has also proposed prohibiting 3PVROs, as organizations, from copying voter registration applications or retaining certain voter information after they have delivered the applications to the appropriate elections official. ECF No. 92-1 at 74 in Case No.: 4:23cv215. But this prohibition is found nowhere in section 97.0575(7), nor is it reasonable or readily apparent that the statute's prohibitions extend so broadly. Indeed, the Department of State's proposed rule serves only to contradict an intuitive reading of the statute; namely, that it applies solely to those individuals who are directly engaging with voters in the community as opposed to the 3PVROs as organizations or those who work for them and collect completed applications from further up the chain of custody.

The vagueness of the challenged provision is only underscored by the Department of State's attempt to redefine what the statute actually applies to— "personal information." In the context of the statute itself, "personal information" is described as including—but not limited to—"the voter's Florida driver license number, Florida identification card number, social security number, or signature." Based on these examples, Defendants argue that "personal information" means "private, non-public information." ECF No. 92 at 31 in Case No. 4:23cv215 (internal

46

quotation marks omitted). Of course, had the Florida Legislature intended to include only "private" or "non-public information," it could have said so directly. Instead, the statute leaves open a broad universe of what could be considered "personal" information and does not, on its face, limit that reach to only "information that is not generally available to the public."

The Department of State's attempt at limiting the universe of information is but one possible interpretation. Nonetheless, even if the Florida Legislature intended for "personal information" to mean "private, non-public information," in this day and age, the possibilities for what constitutes "private" or "non-public" information are both sweeping and shifting. Defendants' suggestion that such information *necessarily excludes* voters' email addresses, telephone numbers, or mailing addresses is not readily apparent from the statute's text. And Defendants' proposed construction begs the question of whether something is private or "not generally available to the public" depends upon the efforts to which someone must go to locate the information. For example, what about home addresses or phone numbers? What about private email addresses? This Court cannot pretend we live in a different era when everyone still had a phonebook with phone numbers and addresses for nearly everyone in town. While someone's home phone number and home address may have been publicly available in the 1990s, a person of ordinary intelligence would have good reason to think such information is "private" nowadays inasmuch as

phonebooks are no longer widely disseminated, if at all. But even if this Court accepts Defendants' proffered construction of "personal information," this only answers one question posed by the statute—that is, to which information the statute applies. Defendants' construction offers no answers for the fundamental questions of to whom the statute applies and when their conduct—retention of information—becomes a felony.

This Court must give meaning to all terms in a statute. *Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238, 1273 (N.D. Fla. 2021). But on its face, section 97.0575(7) offers only a standardless prohibition on retention of voter information—whatever that information may be. This indiscernible standard provides no notice of the conduct prohibited by the section and encourages arbitrary enforcement.

It bears repeating that the Fourteenth Amendment tolerates a lower degree of vagueness for laws, like section 97.0575(7), that impose *criminal liability*. *See Flipside*, 455 U.S. at 498 ("The degree of vagueness that the Constitution tolerates— as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."). Here, under the standard set by the Florida Legislature and proposed by Defendants, a person of ordinary intelligence would not be able to understand when they could copy voters' applications or retain their personal information, if at all. And while a "scienter requirement may mitigate a law's vagueness," *Flipside*, 455 U.S. at 499, the challenged provision lacks even

that. Even more troubling, this indiscernible standard lends itself to arbitrary enforcement. Without a reasonable and readily apparent meaning for what is prohibited and who is subject to that prohibition, section 97.0575(7) fails to provide "any standard by which [the law's enforcers] can judge whether an individual" improperly retained a voter's personal information. *See Morales*, 527 U.S. at 66. In short, the Florida NAACP Plaintiffs' staff, members, and volunteers are left to guess when they may violate section 97.0575(7) and risk arrest and felony prosecution. [16]

Here, the Florida Legislature has drafted a criminal statute that contemplates *some* individuals retaining *some* information for *some* undefined purpose. The penalties for running afoul of these illusory standards include arrest, prosecution, and ultimately a felony conviction. Even Defendants conceded at the hearing that the threat of arrest is "a pretty big deal." Tr. at 91.[17] The statute's text is so devoid

---

[16] "[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Id* at 499. "If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Id.* While this Court recognizes that the question of whether the law does, in fact, interfere with First Amendment rights is a nuanced one, the Florida NAACP Plaintiffs have made a colorable argument that their get-out-the-vote activities are imbued with First Amendment protection and that this provision directly interferes with their corresponding free speech and association rights. But because the challenged provision runs afoul of the Due Process Clause's fair notice requirement for criminal statutes, this Court need not determine if it would likewise violate the more stringent vagueness standard for laws that interfere with First Amendment rights.

[17] At the hearing, Defendants made the dubious argument that their proposed rulemaking would provide a legal defense to avoid conviction. However, it certainly offers no shelter from arrest or prosecution, which, as noted above, Defendants agreed "is a pretty big deal."

of meaning that it cannot possibly give people of ordinary intelligence fair notice of what information they are allowed to retain and for what purposes they may do so. And it is no answer for Defendants to suggest they won't take any action against these Plaintiffs based on the Florida Department of State's "clarification" of the statute. Simply put, neither the Department nor this Court is permitted to rewrite section 97.0575(7) to cure its vagueness.[18] This Court concludes that the Florida NAACP Plaintiffs have established a substantial likelihood of success on the merits of their vagueness challenge to the information retention ban in section 97.0575(7). As such, this Court need not address the merits of the balance of the Florida NAACP Plaintiffs' claims with respect to this statute.

---

[18] Although this Court would appreciate the opportunity to certify this important question of state law construction to the Supreme Court of Florida, it is without authority to do so. *See* Fla. R. App. P. 9.150 (permitting only "the Supreme Court of the United States or a United States court of appeals" to certify a question of law to the Supreme Court of Florida); *see also Dream Defs. v. Gov. of the State of Fla.*, 57 F.4th 879, 890 (11th Cir. 2023) (certifying question of statutory construction to Florida Supreme Court and noting that "certification affords the State's highest court an opportunity to interpret [Florida's amended riot statute] in a way that may obviate the plaintiffs' constitutional concerns"). Thus, clarification from the Florida Supreme Court is unavailable at this juncture. To be sure, though, it is no answer to suggest this Court should abstain from ruling on the Florida NAACP Plaintiffs' vagueness claim until a Florida state court assigns some limiting construction to the challenged provision or the Florida Supreme Court answers a certified question regarding the statute's construction. Voter registration is happening *now*, individuals' rights and liberty are at stake *now*, and the statute's enforcers have yet to finalize their own construction of the statute. Accordingly, this Court must address the issue *now* rather than leave individuals guessing as to whether they will be subject to arrest or felony prosecution until the Florida Legislature amends the statute or the state courts assign some limiting construction to the statute as written.

C

Recall that the remaining preliminary injunction factors are (1) that Plaintiffs will suffer irreparable injury absent an injunction, (2) that the harm not granting an injunction causes to Plaintiffs outweighs the harm an injunction would cause to Defendants, and (3) that the injunction would not be adverse to the public interest. *Siegel*, 234 F.3d at 1176. Here, the remaining preliminary injunction factors are thoroughly intertwined with considerations already discussed regarding the merits of Plaintiffs' claims. On balance, these factors weigh in favor of granting Plaintiffs' motion for preliminary injunction.

First, absent an injunction, Plaintiffs will suffer irreparable injury because their voter registration operations will be substantially interrupted once the challenged provisions take effect. For example, the Organizational Plaintiffs stand to lose the ability to have their noncitizen canvassers—in some instances, the vast majority of their canvassing workforces—continue collecting or handling voter registration applications, thus limiting their ability to register new voters, or immobilizing their voter registration efforts altogether, until they can recruit and hire new employees and volunteers. And the individual Plaintiffs are explicitly banned from collecting or handling voter registration applications, thus extinguishing their opportunities to directly register new voters. "[W]hen a plaintiff loses an opportunity to register a voter, the opportunity is gone forever." *League of Women Voters of Fla.*

51

*v. Browning*, 863 F. Spp. 2d 1155, 1167 (N.D. Fla. 2012) (Hinkle, J.). "If an injunction does not issue now, there will be no way to remedy the plaintiffs' continuing loss through relief granted later in this litigation." *Id.*

Second, weighing Plaintiffs' injuries against Defendants' interest, the scale tips decisively in Plaintiffs' favor. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). That is because the state "has no legitimate interest in enforcing an unconstitutional ordinance." *Id.* Third, and finally, this Court is persuaded that an injunction would not be adverse to the public interest. After all, as noted above, "[t]he public has no interest in enforcing an unconstitutional ordinance." *Id.* at 1272–73.

In sum, because Plaintiffs have carried their burden as to all four of the preliminary injunction factors with respect to their equal protection and vagueness claims, this Court finds that they are entitled to a preliminary injunction with respect to these claims.

IV

This Court next considers whether Plaintiffs must secure a bond in furtherance of the preliminary injunction. Rule 65(c) provides that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). But "it is well-

52

established that 'the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all.' " *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs.*, 425 F. 3d 964, 971 (11th Cir. 2005) (alteration in original) (quoting *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B 1981)). Moreover, "[w]aiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." *Curling v. Raffensperger*, 491 F. Supp. 3d 1289, 1326 n.25 (N.D. Ga. 2020) (quoting *Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009)). Here, considering that the challenged provision's unlawful impact on Plaintiffs' Fourteenth Amendment rights weighs against requiring a bond, this Court waives the bond requirement.

V

Finally, having determined a preliminary injunction is warranted, this Court addresses whether it will stay that injunction pending appeal. Stays pending appeal are governed by a four-part test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Venues Lines Agency*

*v. CVG Industria Venezolana De Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000) (applying the same test). Considering that this test is so similar to that applied when considering a preliminary injunction, courts rarely stay a preliminary injunction pending appeal. That rings true here. Because no exceptional circumstances justify staying this Order pending appeal, *see Brenner*, 999 F. Supp. 2d at 1292 (issuing a rare stay of a preliminary injunction given the public interest in stable marriage laws across the country), this Court refuses to do so. Defendants have every right to appeal, and this Court sees no reason to delay Defendants in seeking an appeal by requiring them to move to stay under Rule 62.

## VI

Tomorrow, Floridians across the state will commemorate our Nation's birthday. They will endure the heat of the Florida summer to celebrate the Fourth of July with family and friends at barbecues and picnics. They will gather with their communities at public parks for music and fireworks. They will cheer and sweat at parades and block parties. And amid these patriotic festivities, some may feel moved, for the first time, to embrace their solemn privilege as citizens by registering to vote.

That's where Plaintiffs come in. Absent the challenged provisions at issue in these cases, individuals like Ms. Herrera-Lucha and 3PVROs like the Florida NAACP and Hispanic Federation would be engaging with their communities and

registering new voters. In doing so, they would embody those democratic ideals that, for nearly two hundred forty-seven years, have made our system the envy of the world.

The importance of the interests at stake in these cases cannot be overstated. As counsel for the Florida NAACP Plaintiffs put it, "the very nature and purpose of the 3PVROs, in this case and generally, is to reach communities and exist in a space that is outside of the government, that is to reach marginalized voters who have traditionally lacked that kind of connection and access to the state government . . . ." Tr. at 104. "These 3PVROs exist precisely to address the voters who do not feel taken care of by the government and who have been marginalized by these traditional means . . . ." *Id*. In a land that professes deliverance of the "tired," the "poor," the "huddled masses yearning to breathe free,"[19] 3PVROs encourage those who join us as citizens to also join in citizenship's highest right and cardinal task: voting. We have "a Republic" only if we "keep it"[20]; our government remains "of," "by," and "for the people"[21] only if the people are heard. And to vote is to lift one's voice and sing in our vast, clamoring chorus of democracy.

---

[19] Emma Lazarus, *The New Colossus*.

[20] Attributed to a conversation between Elizabeth Willing Powel and Benjamin Franklin.

[21] Abraham Lincoln, *Gettysburg Address*.

55

The State of Florida is correct to seek integrity in our electoral system. Sound election laws ensure the people are heard without distortion from negligent and bad-faith actors. Here, however, Florida's solutions for preserving election integrity are too far removed from the problems it has put forward as justifications. It is no answer to assert the Florida Legislature's work here was "good enough." Tr. at 85. Such shoddy tailoring between restriction and government interest presents a dubious fit under rational basis review, and it falls woefully short of satisfying the strict scrutiny this Court must apply. And a provision as vague as the information retention ban, notwithstanding the Secretary of State's *post-hoc* intent to clarify its reach, can serve no end but arbitrary punishment. The United States Constitution demands more than "good enough."

Ms. Herrera-Lucha, a noncitizen who, herself, lacks the right to vote, has spent years registering and encouraging citizens to exercise that solemn right. She may, at least for now, continue to do so and add more voices to the millions of others singing a more perfect Union into existence.

Accordingly,

**IT IS ORDERED:**

1.  The Florida NAACP Plaintiffs' motion for a preliminary injunction, ECF

No. 55 in Case No.: 4:23cv215, is **GRANTED**.[22]

2. Defendant Secretary of State Cord Byrd, in his official capacity, and Defendant Attorney General Ashley Moody, in her official capacity, must take no steps to enforce the following until otherwise ordered:

    a. Section 97.0575(1)(f), Florida Statutes (2023); and

    b. Section 97.0575(7), Florida Statutes (2023).

3. The preliminary injunction binds the above-listed Defendants and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

4. The Hispanic Federation Plaintiffs' motion for a preliminary injunction, ECF No. 32 in Case No.: 4:23cv218, is **GRANTED**.

5. Defendant Secretary of State Cord Byrd, in his official capacity, and Defendant Attorney General Ashley Moody, in her official capacity, must take no steps to enforce the following until otherwise ordered:

    a. Section 97.0575(1)(f), Florida Statutes (2023).

6. The preliminary injunction binds the above-listed Defendants and their

---

[22] As this Court noted above, given that the Florida NAACP Plaintiffs and the Hispanic Federation Plaintiffs are entitled to relief based on their equal protection and vagueness claims, this Court need not address the balance of their asserted constitutional infirmities with respect to the challenged provisions.

officers, agents, servants, employees, and attorneys—and others in active

concert or participation with any of them—who receive actual notice of

this injunction by personal service or otherwise.

**SO ORDERED on July 3, 2023.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**

APPEAL,STAY DISC

# U.S. District Court
## Northern District of Florida (Tallahassee)
## CIVIL DOCKET FOR CASE #: 4:23–cv–00215–MW–MAF

FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP et al v. BYRD et al
Assigned to: CHIEF JUDGE MARK E WALKER
Referred to: MAGISTRATE JUDGE MARTIN A FITZPATRICK
Cause: 42:1983 Civil Rights Act

Date Filed: 05/24/2023
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

| | | |
|---|---|---|
| **FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP** | represented by | **ABHA KHANNA**<br>ELIAS LAW GROUP – WASHINGTON DC<br>250 MASSACHUSETTS AVENUE<br>SUITE 400<br>WASHINGTON, DC 20001<br>202–968–4510<br>Email: akhanna@elias.law<br>*ATTORNEY TO BE NOTICED* |
| | | **LALITHA D MADDURI**<br>ELIAS LAW GROUP – WASHINGTON DC<br>250 MASSACHUSETTS AVENUE<br>SUITE 400<br>WASHINGTON, DC 20001<br>202–968–4593<br>Email: lmadduri@elias.law<br>*ATTORNEY TO BE NOTICED* |
| | | **MAKEBA RUTAHINDURWA**<br>ELIAS LAW GROUP – SEATTLE WA<br>1700 SEVENTH AVENUE<br>SUITE 2100<br>SEATTLE, WA 98101<br>206–656–0179<br>Email: mrutahindurwa@elias.law<br>*ATTORNEY TO BE NOTICED* |
| | | **MELINDA K JOHNSON**<br>ELIAS LAW GROUP – WASHINGTON DC<br>250 MASSACHUSETTS AVENUE<br>SUITE 400<br>WASHINGTON, DC 20001<br>202–968–4510<br>Email: mjohnson@elias.law<br>*ATTORNEY TO BE NOTICED* |
| | | **RENATA MARIE O'DONNELL**<br>ELIAS LAW GROUP – WASHINGTON DC<br>250 MASSACHUSETTS AVENUE<br>SUITE 400<br>WASHINGTON, DC 20001<br>202–968–4510<br>Email: rodonnell@elias.law<br>*ATTORNEY TO BE NOTICED* |
| | | **FREDERICK STANTON WERMUTH** |

KING BLACKWELL ZEHNDER ETC PA
– ORLANDO FL
25 E PINE ST
ORLANDO, FL 32801
407–422–2472
Fax: 407–648–0161
Email: fwermuth@kbzwlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**EQUAL GROUND EDUCATION FUND**
*TERMINATED: 06/09/2023*

represented by **FREDERICK STANTON WERMUTH**
(See above for address)
*TERMINATED: 06/09/2023*
*LEAD ATTORNEY*

**ABHA KHANNA**
(See above for address)
*TERMINATED: 06/09/2023*

**LALITHA D MADDURI**
(See above for address)
*TERMINATED: 06/09/2023*

**MAKEBA RUTAHINDURWA**
(See above for address)
*TERMINATED: 06/09/2023*

**MELINDA K JOHNSON**
(See above for address)
*TERMINATED: 06/09/2023*

**RENATA MARIE O'DONNELL**
(See above for address)
*TERMINATED: 06/09/2023*

**Plaintiff**

**VOTERS OF TOMORROW ACTION, INC.**

represented by **ABHA KHANNA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LALITHA D MADDURI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MAKEBA RUTAHINDURWA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MELINDA K JOHNSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RENATA MARIE O'DONNELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FREDERICK STANTON WERMUTH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DISABILITY RIGHTS FLORIDA**

represented by **ABHA KHANNA**
(See above for address)

*ATTORNEY TO BE NOTICED*

**LALITHA D MADDURI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MAKEBA RUTAHINDURWA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MELINDA K JOHNSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RENATA MARIE O'DONNELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FREDERICK STANTON WERMUTH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALIANZA FOR PROGRESS**                represented by   **ABHA KHANNA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LALITHA D MADDURI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MAKEBA RUTAHINDURWA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MELINDA K JOHNSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RENATA MARIE O'DONNELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FREDERICK STANTON WERMUTH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALIANZA CENTER**                       represented by   **ABHA KHANNA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LALITHA D MADDURI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MAKEBA RUTAHINDURWA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MELINDA K JOHNSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RENATA MARIE O'DONNELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FREDERICK STANTON WERMUTH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**UNIDOSUS**                    represented by   **ABHA KHANNA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LALITHA D MADDURI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MAKEBA RUTAHINDURWA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MELINDA K JOHNSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RENATA MARIE O'DONNELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FREDERICK STANTON WERMUTH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**FLORIDA ALLIANCE FOR**          represented by   **ABHA KHANNA**
**RETIRED AMERICANS**                             (See above for address)
*ATTORNEY TO BE NOTICED*

**LALITHA D MADDURI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MAKEBA RUTAHINDURWA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MELINDA K JOHNSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RENATA MARIE O'DONNELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FREDERICK STANTON WERMUTH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HISPANIC FEDERATION**           represented by   **LALITHA D MADDURI**
*TERMINATED: 06/09/2023*                          (See above for address)
*TERMINATED: 06/09/2023*
*LEAD ATTORNEY*

**Plaintiff**

**PODER LATINX**
*TERMINATED: 06/09/2023*

represented by **LALITHA D MADDURI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**VERONICA HERRERA–LUCHA**
*TERMINATED: 06/09/2023*

represented by **LALITHA D MADDURI**
(See above for address)
*TERMINATED: 06/09/2023*
*LEAD ATTORNEY*

**Plaintiff**

**NORKA MARTINEZ**
*TERMINATED: 06/09/2023*

**Plaintiff**

**A DOE**
*TERMINATED: 06/09/2023*

represented by **LALITHA D MADDURI**
(See above for address)
*TERMINATED: 06/09/2023*
*LEAD ATTORNEY*

**Plaintiff**

**B DOE**
*TERMINATED: 06/09/2023*

represented by **LALITHA D MADDURI**
(See above for address)
*TERMINATED: 06/09/2023*
*LEAD ATTORNEY*

**Plaintiff**

**SANTIAGO MAYER
ARTASANCHEZ**
*TERMINATED: 06/09/2023*

represented by **FREDERICK STANTON WERMUTH**
(See above for address)
*TERMINATED: 06/09/2023*
*LEAD ATTORNEY*

**Plaintiff**

**ESPERANZA SANCHEZ**
*TERMINATED: 06/09/2023*

represented by **FREDERICK STANTON WERMUTH**
(See above for address)
*TERMINATED: 06/09/2023*
*LEAD ATTORNEY*

V.

**Defendant**

**CORD BYRD**
*IN HIS OFFICIAL CAPACITY AS
SECRETARY OF THE STATE OF
FLORIDA*

represented by **ASHLEY E DAVIS**
FLORIDA DEPARTMENT OF STATE
RA GRAY BUILDING
500 SOUTH BRONOUGH STREET
SUITE 100
TALLAHASSEE, FL 32399
850–245–6531
Email: ashley.davis@dos.myflorida.com
*ATTORNEY TO BE NOTICED*

**JOSEPH SCOTT VAN DE BOGART**
FLORIDA DEPARTMENT OF STATE
OFFICE OF GENERAL COUNSEL
500 S BRONOUGH STREET
TALLAHASSEE, FL 32399
850–245–6519

Fax: 850–245–6127
Email: joseph.vandebogart@dos.myflorida.com
*ATTORNEY TO BE NOTICED*

**JOSHUA E PRATT**
HOLTZMAN VOGEL – TALLAHASSEE
FL
119 S MONROE STREET
SUITE 500
TALLAHASSEE, FL 32301
850–566–7610
Email: jpratt@holtzmanvogel.com
*ATTORNEY TO BE NOTICED*

**MICHAEL ROBERT BEATO**
HOLTZMAN VOGEL – TALLAHASSEE
FL
119 S MONROE STREET
SUITE 500
TALLAHASSEE, FL 32301
850–566–7610
Email: mbeato@holtzmanvogel.com
*ATTORNEY TO BE NOTICED*

**MOHAMMAD OMAR JAZIL**
HOLTZMAN VOGEL – TALLAHASSEE
FL
119 S MONROE STREET
SUITE 500
TALLAHASSEE, FL 32301
850–391–0503
Email: mjazil@holtzmanvogel.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**ASHLEY MOODY**                    represented by   **NOAH T SJOSTROM**
*IN HER OFFICIAL CAPACITY AS*                       FLORIDA ATTORNEY GENERAL'S
*FLORIDA ATTORNEY GENERAL*                          OFFICE
                                                    107 W GAINES STREET
                                                    SUITE 401F
                                                    TALLAHASSEE, FL 32309
                                                    850–414–3635
                                                    Email: noah.sjostrom@myfloridalegal.com
                                                    *ATTORNEY TO BE NOTICED*

**STEPHANIE ANNE MORSE**
FLORIDA ATTORNEY GENERAL'S
OFFICE
PL–01 THE CAPITOL
TALLAHASSEE, FL 32399–1050
850–414–3300
Email: stephanie.morse@myfloridalegal.com
*ATTORNEY TO BE NOTICED*

**WILLIAM DAVID CHAPPELL**
STATE OF FLORIDA – OFFICE OF THE
ATTORNEY GENERAL
THE CAPITOL PL–01
107 W GAINES ST
TALLAHASSEE, FL 32399
850–414–3665
Email: william.chappell@myfloridalegal.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**KIM BARTON**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*ALACHUA COUNTY*

represented by **DIANA MASTERS JOHNSON**
ALACHUA COUNTY ATTORNEYS
OFFICE
12 SE 1ST STREET
GAINESVILLE, FL 32601
352–374–5218
Fax: 352–374–5216
Email: dmjohnson@alachuacounty.us
*ATTORNEY TO BE NOTICED*

**ROBERT CHARLES SWAIN**
ALACHUA COUNTY ATTORNEY'S
OFFICE
12 SE FIRST ST
PO BOX 2877
GAINESVILLE, FL 32602
352–374–5218
Email: bswain@alachuacounty.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTOPHER MILTON**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*BAKER COUNTY*

represented by **SUSAN SMITH ERDELYI**
MARKS GRAY PA – JACKSONVILLE
FL
1200 RIVERPLACE BLVD
STE 800
JACKSONVILLE, FL 32207
904–398–0900
Fax: 904–399–8440
Email: serdelyi@marksgray.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARK ANDERSEN**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*BAY COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**AMANDA SEYFANG**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*BRADFORD COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TIM BOBANIC**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*BREVARD COUNTY*

represented by **FRANK MICHAEL MARI**
ROPER PA – ORLANDO FL
2707 E JEFFERSON STREET
ORLANDO, FL 32803
407–897–5150
Email: fmari@roperpa.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOE SCOTT**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*BROWARD COUNTY*

represented by **DEVONA ALICIA REYNOLDS PEREZ**
OFFICE OF THE BROWARD COUNTY
ATTORNEY
115 S ANDREWS AVENUE
SUITE 423
FORT LAUDERDALE, FL 33301

954–357–7600
Fax: 954–357–6968
Email: dreynoldsperez@broward.org
*ATTORNEY TO BE NOTICED*

**JOSEPH K JARONE**
BROWARD COUNTY ATTORNEY
115 S ANDREWS AVENUE
RM 423
FORT LAUDERDALE, FL 33301
954–357–7600
Fax: 954–347–7641
Email: jkjarone@broward.org
*ATTORNEY TO BE NOTICED*

**NATHANIEL ADAM KLITSBERG**
BROWARD COUNTY ATTORNEYS
OFFICE – FORT LAUDERDALE FL
115 S ANDREWS AVE
STE 423
FORT LAUDERDALE, FL 33301
954–357–7600
Fax: 954–357–7641
Email: nklitsberg@broward.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHARON CHASON**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*CALHOUN COUNTY*

represented by  **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LEAH VALENTI**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*CHARLOTTE COUNTY*

represented by  **ANDY V BARDOS**
GRAYROBINSON PA – TALLAHASSEE
FL
301 S BRONOUGH ST STE 600
TALLAHASSEE, FL 32301
850–577–9090
Fax: 850–577–3311
Email: andy.bardos@gray–robinson.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MAUREEN BAIRD**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*CITRUS COUNTY*

represented by  **DALE A SCOTT**
ROPER PA – ORLANDO FL
2707 E JEFFERSON STREET
ORLANDO, FL 32803
407–897–5150
Fax: 407–897–3332
Email: dscott@roperpa.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRIS H CHAMBLESS**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*CLAY COUNTY*

represented by  **JOHN T LAVIA , III**
GARDNER BIST BOWDEN ET AL –
TALLAHASSEE FL
1300 THOMASWOOD DR
TALLAHASSEE, FL 32308
850–385–0070
Fax: 850–385–5416
Email: jlavia@gbwlegal.com

*ATTORNEY TO BE NOTICED*

**Defendant**

**JENNIFER J EDWARDS**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*COLLIER COUNTY*

**Defendant**

**TOMI STINSON BROWN**                    represented by  **SUSAN SMITH ERDELYI**
*IN HER OFFICIAL CAPACITY AS*                              (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                              *ATTORNEY TO BE NOTICED*
*BAY COLUMBIACOUNTY*

**Defendant**

**MARK F NEGLEY**                         represented by  **FRANK MICHAEL MARI**
*IN HIS OFFICIAL CAPACITY AS*                              (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                              *ATTORNEY TO BE NOTICED*
*DESOTO COUNTY*

**Defendant**

**STARLET CANNON**                        represented by  **SUSAN SMITH ERDELYI**
*IN HER OFFICIAL CAPACITY AS*                              (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                              *ATTORNEY TO BE NOTICED*
*DIXIE COUNTY*

**Defendant**

**MIKE HOGAN**                            represented by  **CRAIG DENNIS FEISER**
*IN HIS OFFICIAL CAPACITY AS*                              OFFICE OF GENERAL COUNSEL
*SUPERVISOR OF ELECTIONS FOR*                              117 W DUVAL STREET
*DUVAL COUNTY*                                             SUITE 480
                                                          JACKSONVILLE, FL 32202
                                                          904–255–5052
                                                          Fax: 904–255–5120
                                                          Email: cfeiser@coj.net
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**DAVID H STAFFORD**                      represented by  **CHRISTI JO HANKINS**
*IN HIS OFFICIAL CAPACITY AS*                              ESCAMBIA COUNTY ATTORNEYS
*SUPERVISOR OF ELECTIONS FOR*                              OFFICE – PENSACOLA FL
*ESCAMBIA COUNTY*                                          221 PALAFOX PLACE
                                                          SUITE 430
                                                          PENSACOLA, FL 32502
                                                          850–595–4970
                                                          Email: cjhankins@myescambia.com
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**KAITI LENHART**                         represented by  **FRANK MICHAEL MARI**
*IN HER OFFICIAL CAPACITY AS*                              (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                              *ATTORNEY TO BE NOTICED*
*FLAGLER COUNTY*

**Defendant**

**HEATHER RILEY**                         represented by  **SUSAN SMITH ERDELYI**
*IN HER OFFICIAL CAPACITY AS*                              (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                              *ATTORNEY TO BE NOTICED*
*FRANKLIN COUNTY*

**Defendant**

**SHIRLEY G KNIGHT**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*GADSDEN COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CONNIE SANCHEZ**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*GILCHRIST COUNTY*

represented by **FRANK MICHAEL MARI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALETRIS FARNAM**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*GLADES COUNTY*

represented by **WILLIAM BOLTREK , III**
HENDERSON FRANKLIN STARNES
ETC – FORT MYERS FL
1715 MONROE ST [33901]
PO BOX 280
FORT MYERS, FL 33902
239–344–1299
Email: william.boltrek@henlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN HANLON**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*GULF COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LAURA HUTTO**
*IN HHER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*HAMILTON COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DIANE SMITH**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*HARDEE COUNTY*

represented by **WILLIAM BOLTREK , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BRENDA HOOTS**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*HENDRY COUNTY*

represented by **WILLIAM BOLTREK , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHIRLEY ANDERSON**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*HERNANDO COUNTY*

represented by **KYLE J BENDA**
HERNANDO COUNTY ATTORNEYS
OFFICE
20 N MAIN ST
STE 462
BROOKSVILLE, FL 34601–2850
352–754–4122
Email: kbenda@co.hernando.fl.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**KAREN HEALY**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*HIGHLANDS COUNTY*

represented by **FRANK MICHAEL MARI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CRAIG LATIMER**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*HLLSBOROUGH COUNTY*

represented by **STEPHEN MARK TODD**
OFFICE OF THE COUNTY ATTORNEY
HILLSBOROUGH COUNTY
601 E KENNEDY BLVD
27TH FLOOR
TAMPA, FL 33602
813–272–5670
Fax: 813–272–5758
Email: todds@hillsboroughcounty.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**THERISA MEADOWS**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*HOLMES COUNTY*

represented by **WILLIAM BOLTREK , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LESLIE ROSSWAY SWAN**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*INDIAN RIVER COUNTY County*

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CAROL A DUNAWAY**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*JACKSON COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICHELLE MILLIGAN**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*JEFFERSON COUNTY*

represented by **FRANK MICHAEL MARI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TRAVIS HART**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*LAFAYETTE COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALAN HAYS**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*LAKE COUNTY*

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOMMY DOYLE**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*LEE COUNTY*

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARK S. EARLEY**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*LEON COUNTY*

represented by **MARK HERRON**
MESSER CAPARELLO & SELF PA –
TALLAHASSEE FL
2618 CENTENNIAL PL
TALLAHASSEE, FL 32308
850–222–0720
Fax: 850–224–4359
Email: mherron@lawfla.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**TAMMY JONES**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*LEVY COUNTY*

represented by **WILLIAM BOLTREK , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GRANT CONYERS**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*LIBERTY COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**HEATH DRIGGERS**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*MADISON COUNTY*

represented by **FRANK MICHAEL MARI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICHAEL BENNETT**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*MANATEE COUNTY*

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**WESLEY WILCOX**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*MARION COUNTY*

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**VICKY DAVIS**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*MARTIN COUNTY*

represented by **JOHN T LAVIA , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTINA WHITE**
*IN HER OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*MIAMI DADE COUNTY*

represented by **MICHAEL BENY VALDES**
MIAMI–DADE COUNTY ATTORNEYS
OFFICE
111 NW FIRST STREET
SUITE 2810
MIAMI, FL 33128
305–375–5620
Fax: 305–375–5634
Email: michael.valdes@miamidade.gov
*ATTORNEY TO BE NOTICED*

**SOPHIA MARIE GUZZO**
MIAMI DADE COUNTY ATTORNEY'S
OFFICE

111 NW 1ST STREET
SUITE 2810
MIAMI, FL 33128
305–215–9203
Email: sophia.guzzo@miamidade.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOYCE GRIFFIN**
*IN HER OFFICIAL CAPACITY AS
SUPERVISOR OF ELECTIONS FOR
MONROE COUNTY*

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JANET H ADKINS**
*IN HER OFFICIAL CAPACITY AS
SUPERVISOR OF ELECTIONS FOR
NASSAU COUNTY*

represented by **SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAUL A LUX**
*IN HIS OFFICIAL CAPACITY AS
SUPERVISOR OF ELECTIONS FOR
OKALOOSA COUNTY*

represented by **GREGORY THOMAS STEWART**
NABORS GIBLIN & NICKERSON PA –
TALLAHASSEE FL
1500 MAHAN DR STE 200
TALLAHASSEE, FL 32308
850–224–4070
Fax: 850–224–4073
Email: gstewart@ngn–tally.com
*ATTORNEY TO BE NOTICED*

**MATTHEW REED SHAUD**
NABORS GIBLIN & NICKERSON PA –
TALLAHASSEE FL
1500 MAHAN DR STE 200
TALLAHASSEE, FL 32308
850–224–4070
Fax: 850–224–4073
Email: mshaud@ngnlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MELISSA ARNOLD**
*IN HIS OFFICIAL CAPACITY AS
SUPERVISOR OF ELECTIONS FOR
OKEECHOBEE COUNTY*

represented by **WILLIAM BOLTREK , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BILL COWLES**
*IN HIS OFFICIAL CAPACITY AS
SUPERVISOR OF ELECTIONS FOR
ORANGE COUNTY*

represented by **NICHOLAS ARI SHANNIN**
SHANNIN LAW FIRM PA – ORLANDO
FL
214 EAST LUCERNE CIRCLE
SUITE 200
ORLANDO, FL 32801
407–985–2222
Email: nshannin@shanninlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARY JANE ARRINGTON**
*IN HER OFFICIAL CAPACITY AS
SUPERVISOR OF ELECTIONS FOR*

represented by **JOHN T LAVIA , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

*OSCEOLA COUNTY*

**Defendant**

| | | |
|---|---|---|
| **WENDY SARTORY LINK** | represented by | **DAVID K MARKARIAN** |
| *IN HER OFFICIAL CAPACITY AS* | | THE MARKARIAN GROUP – PALM |
| *SUPERVISOR OF ELECTIONS FOR* | | BEACH GARDENS FL |
| *PALM BEACH COUNTY* | | 2925 PGA BOULEVARD |
| | | SUITE 204 |
| | | PALM BEACH GARDENS, FL 33410 |
| | | 561–626–4700 |
| | | Email: dave@forbusinessandlife.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **JESSICA ROSE GLICKMAN** |
| | | THE MARKARIAN GROUP – PALM |
| | | BEACH GARDENS FL |
| | | 2925 PGA BOULEVARD |
| | | SUITE 204 |
| | | PALM BEACH GARDENS, FL 33410 |
| | | 561–626–4700 |
| | | Fax: 561–627–9479 |
| | | Email: jessica@forbusinessandlife.com |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **BRIAN E CORLEY** | represented by | **ANDY V BARDOS** |
| *IN HIS OFFICIAL CAPACITY AS* | | (See above for address) |
| *SUPERVISOR OF ELECTIONS FOR* | | *ATTORNEY TO BE NOTICED* |
| *PASCO COUNTY* | | |

**Defendant**

| | | |
|---|---|---|
| **JULIE MARCUS** | represented by | **JARED DOUGLAS KAHN** |
| *IN HER OFFICIAL CAPACITY AS* | | PINELLAS COUNTY ATTORNEYS |
| *SUPERVISOR OF ELECTIONS FOR* | | OFFICE |
| *PINEALLS COUNTY* | | 315 COURT STREET |
| | | 6TH FLOOR |
| | | CLEARWATER, FL 33756 |
| | | 813–786–4034 |
| | | Email: jkahn@pinellas.gov |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **LORI EDWARDS** | represented by | **JOHN T LAVIA , III** |
| *IN HER OFFICIAL CAPACITY AS* | | (See above for address) |
| *SUPERVISOR OF ELECTIONS FOR* | | *ATTORNEY TO BE NOTICED* |
| *POLK COUNTY* | | |

**Defendant**

| | | |
|---|---|---|
| **CHARLES OVERTURF** | represented by | **SUSAN SMITH ERDELYI** |
| *IN HIS OFFICIAL CAPACITY AS* | | (See above for address) |
| *SUPERVISOR OF ELECTIONS FOR* | | *ATTORNEY TO BE NOTICED* |
| *PUTNAM COUNTY* | | |

**Defendant**

| | | |
|---|---|---|
| **TAPPIE A VILLANE** | represented by | **SUSAN SMITH ERDELYI** |
| *IN HER OFFICIAL CAPACITY AS* | | (See above for address) |
| *SUPERVISOR OF ELECTIONS FOR* | | *ATTORNEY TO BE NOTICED* |
| *SANTA ROSA COUNTY* | | |

**Defendant**

**RON TURNER**
*IN HIS OFFICIAL CAPACITY AS*
*SUPERVISOR OF ELECTIONS FOR*
*SARASOTA COUNTY*

<u>Defendant</u>

**CHRIS ANDERSON**                   represented by  **ANDY V BARDOS**
*IN HIS OFFICIAL CAPACITY AS*                      (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                      *ATTORNEY TO BE NOTICED*
*SEMINOLE COUNTY*

<u>Defendant</u>

**VICKY OAKES**                      represented by  **SUSAN SMITH ERDELYI**
*IN HER OFFICIAL CAPACITY AS*                       (See above for address)
*SUPERVISOR OF ELECTIONS FOR ST*                    *ATTORNEY TO BE NOTICED*
*JOHN'S COUNTY*

<u>Defendant</u>

**GERTRUDE WALKER**                  represented by  **JOHN T LAVIA , III**
*IN HER OFFICIAL CAPACITY AS*                       (See above for address)
*SUPERVISOR OF ELECTIONS FOR ST*                    *ATTORNEY TO BE NOTICED*
*LUCIE COUNTY*

<u>Defendant</u>

**WILLIAM KEEN**                     represented by  **SUSAN SMITH ERDELYI**
*IN HIS OFFICIAL CAPACITY AS*                       (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                       *ATTORNEY TO BE NOTICED*
*SUMMPTER COUNTY*

<u>Defendant</u>

**JENNIFER MUSGROVE KINSEY**         represented by  **SUSAN SMITH ERDELYI**
*IN HER OFFICIAL CAPACITY AS*                       (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                       *ATTORNEY TO BE NOTICED*
*SUWANEE COUNTY*

<u>Defendant</u>

**DANA SOUTHERLAND**                 represented by  **SUSAN SMITH ERDELYI**
*IN HER OFFICIAL CAPACITY AS*                       (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                       *ATTORNEY TO BE NOTICED*
*TAYLOR COUNTY*

<u>Defendant</u>

**DEBORAH K OSBORNE**                represented by  **SUSAN SMITH ERDELYI**
*IN HER OFFICIAL CAPACITY AS*                       (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                       *ATTORNEY TO BE NOTICED*
*UNION COUNTY*

<u>Defendant</u>

**LISA LEWIS**                       represented by  **SARAH LYNN JONAS**
*IN HER OFFICIAL CAPACITY AS*                       VOLUSIA COUNTY ATTORNEY'S
*SUPERVISOR OF ELECTIONS FOR*                       OFFICE
*VOLUSIA COUNTY*                                    123 W INDIANA AVENUE
                                                    DELAND, FL 32720
                                                    386–736–5950
                                                    Email: sjonas@volusia.org
                                                    *ATTORNEY TO BE NOTICED*

                                                    **WILLIAM KEVIN BLEDSOE**
                                                    COUNTY OF VOLUSIA
                                                    123 WEST INDIANA AVENUE

ROOM 301
DELAND, FL 32720
386–736–5950
Fax: 386–736–5990
Email: kbledsoe@volusia.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOSEPH MORGAN**                     represented by  **SUSAN SMITH ERDELYI**
*IN HIS OFFICIAL CAPACITY AS*                     (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                     *ATTORNEY TO BE NOTICED*
*WAKULLA COUNTY*

**Defendant**

**RYAN MESSER**                     represented by  **SUSAN SMITH ERDELYI**
*IN HIS OFFICIAL CAPACITY AS*                     (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                     *ATTORNEY TO BE NOTICED*
*WALTON COUNTY*

**Defendant**

**CAROL F RUDD**                     represented by  **SUSAN SMITH ERDELYI**
*IN HER OFFICIAL CAPACITY AS*                     (See above for address)
*SUPERVISOR OF ELECTIONS FOR*                     *ATTORNEY TO BE NOTICED*
*WASHINGTON COUNTY County*

**Defendant**

**MELISSA BLAZIER**                     represented by  **ANDY V BARDOS**
*COLLIER COUNTY SURPERVISOR OF*                     (See above for address)
*ELECTIONS*                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/24/2023 | 1 | COMPLAINT *for Declaratory and Injunctive Relief* against All Defendants ( Filing fee $ 402 receipt number AFLNDC–7886210.), filed by UNIDOSUS, EQUAL GROUND EDUCATION FUND, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. (Attachments: # 1 Summons to be Issued to C. Byrd, # 2 Summons to be Issued to A. Moody) (WERMUTH, FREDERICK) (Entered: 05/24/2023) |
| 05/24/2023 | 2 | CIVIL COVER SHEET. (WERMUTH, FREDERICK) (Entered: 05/24/2023) |
| 05/24/2023 | 3 | NOTICE *of Summonses to be Issued* by ALIANZA CENTER, ALIANZA FOR PROGRESS, DISABILITY RIGHTS FLORIDA, EQUAL GROUND EDUCATION FUND, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC. (Attachments: # 1 Summons to be Issued to C. Milton, # 2 Summons to be Issued to M. Andersen, # 3 Summons to be Issued to A. Seyfang, # 4 Summons to be Issued to T. Bobanic, # 5 Summons to be Issued to J. Scott, # 6 Summons to be Issued to S. Chason, # 7 Summons to be Issued to L. Valenti, # 8 Summons to be Issued to M. Baird, # 9 Summons to be Issued to C. Chambless, # 10 Summons to be Issued to J. Edwards, # 11 Summons to be Issued to T. Brown, # 12 Summons to be Issued to M. Negley, # 13 Summons to be Issued to S. Cannon, # 14 Summons to be Issued to M. Hogan, # 15 Summons to be Issued to D. Stafford, # 16 Summons to be Issued to K. Lenhart, # 17 Summons to be Issued to H. Riley, # 18 Summons to be Issued to S. Knight, # 19 Summons to be Issued to C. Sanchez, # 20 Summons to be Issued to A. Farnam, # 21 Summons to be Issued to J. Hanlon, # 22 Summons to be Issued to L. Hutto, # 23 Summons to be Issued to D. Smith, # 24 Summons to be Issued to B. Hoots, # 25 Summons to be Issued to S. Anderson, # 26 Summons to be Issued to K. Healy, # 27 Summons to be Issued to C. Latimer, # 28 Summons to be Issued to T. Meadows, # 29 |

|  |  | Summons to be Issued to L. Swan, # 30 Summons to be Issued to C. Dunaway, # 31 Summons to be Issued to M. Milligan, # 32 Summons to be Issued to T. Hart, # 33 Summons to be Issued to A. Hays, # 34 Summons to be Issued to T. Doyle, # 35 Summons to be Issued to M. Earley, # 36 Summons to be Issued to T. Jones, # 37 Summons to be Issued to G. Conyers, # 38 Summons to be Issued to H. Driggers, # 39 Summons to be Issued to M. Bennett, # 40 Summons to be Issued to W. Wilcox, # 41 Summons to be Issued to V. Davis, # 42 Summons to be Issued to C. White, # 43 Summons to be Issued to J. Griffin, # 44 Summons to be Issued to J. Adkins, # 45 Summons to be Issued to P. Lux, # 46 Summons to be Issued to M. Arnold, # 47 Summons to be Issued to B. Cowles, # 48 Summons to be Issued to M. Arrington, # 49 Summons to be Issued to W. Link, # 50 Summons to be Issued to B. Corley, # 51 Summons to be Issued to J. Marcus, # 52 Summons to be Issued to L. Edwards, # 53 Summons to be Issued to C. Overturf, # 54 Summons to be Issued to T. Villane, # 55 Summons to be Issued to R. Turner, # 56 Summons to be Issued to C. Anderson, # 57 Summons to be Issued to V. Oakes, # 58 Summons to be Issued to G. Walker, # 59 Summons to be Issued to W. Keen, # 60 Summons to be Issued to J. Kinsey, # 61 Summons to be Issued to D. Southerland, # 62 Summons to be Issued to D. Osborne, # 63 Summons to be Issued to L. Lewis, # 64 Summons to be Issued to J. Morgan, # 65 Summons to be Issued to R. Messer, # 66 Summons to be Issued to C. Rudd) (WERMUTH, FREDERICK) (Entered: 05/24/2023) |
| 05/25/2023 | 4 | Corporate Disclosure Statement/Certificate of Interested Persons by ALIANZA CENTER, ALIANZA FOR PROGRESS, DISABILITY RIGHTS FLORIDA, EQUAL GROUND EDUCATION FUND, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (WERMUTH, FREDERICK) (Entered: 05/25/2023) |
| 05/25/2023 | 5 | WAIVER OF SERVICE Returned Executed –**KIM BARTON–Alachua County Supervisor of Elections waiver sent on 5/25/2023, answer due 7/24/2023** CRAIG LATIMER–Hillsborough County Supervisor of Elections waiver sent on 5/25/2023, answer due 7/24/2023**, PAUL A LUX–Okaloosa County Supervisor of Elections waiver sent on 5/25/2023, answer due 7/24/2023** Attachments: # 1 Waiver of Service for C. Latimer (Hillsborough), # 2 Waiver of Service for P. Lux (Okaloosa)) (WERMUTH, FREDERICK) Modified to edit title on 5/26/2023 (rcb). (Entered: 05/25/2023) |
| 05/26/2023 | 6 | Summons Issued as to MARK ANDERSEN, MAUREEN BAIRD, KIM BARTON, TIM BOBANIC, CORD BYRD, CHRIS H CHAMBLESS, SHARON CHASON, JENNIFER J EDWARDS, CHRISTOPHER MILTON, ASHLEY MOODY, JOE SCOTT, AMANDA SEYFANG, LEAH VALENTI. (Attachments: # 1 SUMMONS ISSUED–AMANDA SEYFANG–BRADFORD COUNTY, # 2 SUMMONS ISSUED–TIM BOBANIC–BREVARD COUNTY, # 3 SUMMONS ISSUED–ASHLEY MOODY, # 4 SUMMONS ISSUED–CHRISTOPHER MILTON–BAKER COUNTY, # 5 SUMMONS ISSUED–CORD BYRD–SECRETARY OF THE STATE OF FLORIDA, # 6 CHRIS H CHAMBLESS–CLAY COUNTY, # 7 JENNIFER J EDWARDS–COLLIER COUNTY, # 8 JOE SCOTT–BROWARD COUNTY, # 9 LEAH VALENTI–CHARLOTTE COUNTY, # 10 MAUREEN BAIRD–CITRUS COUNTY, # 11 SHARON CHASON–CALHOUN COUNTY) (rcb) (Entered: 05/26/2023) |
| 05/26/2023 | 7 | Summons Issued as to TOMI STINSON BROWN, STARLET CANNON, ALETRIS FARNAM, MIKE HOGAN, SHIRLEY G KNIGHT, KAITI LENHART, MARK F NEGLEY, HEATHER RILEY, CONNIE SANCHEZ, DAVID H STAFFORD. (Attachments: # 1 MARK F NEGLEY–DESOTO COUNTY, # 2 STARLET CANNON–DIXIE COUNTY, # 3 MIKE HOGAN–DUVAL COUNTY, # 4 DAVID H STAFFORD–ESCAMBIA COUNTY, # 5 KAITI LENHART–FLAGLER COUNTY, # 6 HEATHER RILEY–FRANKLIN COUNTY, # 7 SHIRLEY G KNIGHT–GADSDEN COUNTY, # 8 CONNIE SANCHEZ–GILCHRIST COUNTY, # 9 ALETRIS FARNAM–GLADES COUNTY, # 10 JOHN HANLON–GULF COUNTY, # 11 LAURA HUTTO–HAMILTON COUNTY, # 12DIANE SMITH–HARDEE COUNTY) (rcb) (Entered: 05/26/2023) |
| 05/26/2023 | 8 | Summons Issued as to SHIRLEY ANDERSON, GRANT CONYERS, TOMMY DOYLE, CAROL A DUNAWAY, MARK S. EARLEY, TRAVIS HART, ALAN HAYS, KAREN HEALY, BRENDA HOOTS, TAMMY JONES, CRAIG LATIMER, |

| | | |
|---|---|---|
| | | THERISA MEADOWS, MICHELLE MILLIGAN, LESLIE ROSSWAY SWAN. (Attachments: # 1 SHIRLEY ANDERSON–HERNANDO COUNTY, # 2 KAREN NEALY–HIGHLANDS COUNTY, # 3 THERESA MEADOWS–HOLMES COUNTY, # 4 LESLIE R SWAN–INDIAN RIVER, # 5 CAROL A DUNAWAY–JACKSON COUNTY, # 6 MICHELL MILLIGAN–JEFFERSON COUNTY, # 7 TRAVIS HART–LAFAYETTE COUNTY, # 8 ALAN HAYS–LAKE COUNTY, # 9 TOMMY DOYLE–LEE COUNTY, # 10 MARK EARLEY–LEON COUNTY, # 11 LIBERTY COUNTY–GRANT CONYERS) (rcb) (Entered: 05/26/2023) |
| 05/26/2023 | 9 | WAIVER OF SERVICE Returned Executed by UNIDOSUS, EQUAL GROUND EDUCATION FUND, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. SHIRLEY ANDERSON waiver sent on 5/25/2023, answer due 7/24/2023; MARK S. EARLEY waiver sent on 5/25/2023, answer due 7/24/2023; MIKE HOGAN waiver sent on 5/25/2023, answer due 7/24/2023; JULIE MARCUS waiver sent on 5/26/2023, answer due 7/25/2023. (Attachments: # 1 Waiver of Service for M. Earley (Leon), # 2 Waiver of Service for M. Hogan (Duval), # 3 Waiver of Service for J. Marcus (Pinellas)) (WERMUTH, FREDERICK) (Entered: 05/26/2023) |
| 05/26/2023 | 10 | NOTICE of Appearance by STEPHEN MARK TODD on behalf of CRAIG LATIMER (TODD, STEPHEN) (Entered: 05/26/2023) |
| 05/30/2023 | 11 | WAIVER OF SERVICE Returned Executed by RON TURNER. RON TURNER waiver sent on 5/30/2023, answer due 7/31/2023. (BENTLEY, MORGAN) (Entered: 05/30/2023) |
| 05/30/2023 | 12 | WAIVER OF SERVICE Returned Executed by UNIDOSUS, EQUAL GROUND EDUCATION FUND, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. JOE SCOTT waiver sent on 5/30/2023, answer due 7/31/2023. (WERMUTH, FREDERICK) (Entered: 05/30/2023) |
| 05/31/2023 | 13 | Summons Issued as to JANET H ADKINS, MELISSA ARNOLD, MICHAEL BENNETT, BILL COWLES, VICKY DAVIS, JOYCE GRIFFIN, PAUL A LUX, CHRISTINA WHITE, WESLEY WILCOX. (Attachments: # 1 MICHAEL BENNETT MANATEE COUNTY # 2 WESLEY WILCOX MARION COUNTY, # 3 VICKI DAVIS MARTIN COUNTY, # 4 CHRISTINA WHITE MIAMI DADE COUNTY, # 5 JOYCE GRIFFIN MONROE COUNTY, # 6 JANET ADKINS NASSAU COUNTY, # 7 PAUL A LUX OKALOOSA COUNTY, # 8 MELISSA ARNOLD OKEECHOBEE COUNTY, # 9 BILL COWLES ORANGE COUNTY ) (rcb) (Entered: 05/31/2023) |
| 05/31/2023 | 14 | Summons Issued as to CHRIS ANDERSON, MARY JANE ARRINGTON, BRIAN E CORLEY, LORI EDWARDS, WENDY SARTORY LINK, JULIE MARCUS, VICKY OAKES, CHARLES OVERTURF, RON TURNER, TAPPIE A VILLANE. (Attachments: # 1 WENDY LINK PALM BEACH COUNTY, # 2 BRIAN CORLEY PASCO COUNTY, # 3 JULIE MARCUS PINEALLAS COUNTY, # 4 LORI EDWARDS POLK COUNTY, # 5 CHARLES OVERTURF PUTNAM COUNTY, # 6 TAPPIE VILLANE SANTA ROSA COUNTY, # 7 RON TURNER SARASOTA COUNTY, # 8 CHRISTOPHER ANDERSON SEMINOLE COUNTY, # 9 VICKY OAKES ST JOHNS COUNTY) (rcb) (Entered: 05/31/2023) |
| 05/31/2023 | 15 | Summons Issued as to WILLIAM KEEN, JENNIFER MUSGROVE KINSEY, LISA LEWIS, RYAN MESSER, JOSEPH MORGAN, DEBORAH K OSBORNE, CAROL F RUDD, DANA SOUTHERLAND, GERTRUDE WALKER. (Attachments: # 1 William Keen Sumter County, # 2 Jennifer M. Kinsey Suwannee County, # 3 Dana Southerland Taylor County, # 4 Deborah Osborne Union County, # 5 Lisa Lewis Volusia County, # 6 Joseph R. Morgan Wakulla County, # 7 Ryan Messer Walton County, # 8 Carol Finch Rudd Washington County) (rcb) (Entered: 05/31/2023) |
| 05/31/2023 | 16 | WAIVER OF SERVICE Returned Executed by UNIDOSUS, EQUAL GROUND EDUCATION FUND, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF |

| | | |
|---|---|---|
| | | TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. TIM BOBANIC waiver sent on 5/25/2023, answer due 7/24/2023; BILL COWLES waiver sent on 5/25/2023, answer due 7/24/2023; HEATH DRIGGERS waiver sent on 5/25/2023, answer due 7/24/2023; KAREN HEALY waiver sent on 5/25/2023, answer due 7/24/2023; KAITI LENHART waiver sent on 5/25/2023, answer due 7/24/2023; LISA LEWIS waiver sent on 5/30/2023, answer due 7/31/2023; MICHELLE MILLIGAN waiver sent on 5/25/2023, answer due 7/24/2023; ASHLEY MOODY waiver sent on 5/31/2023, answer due 7/31/2023; MARK F NEGLEY waiver sent on 5/25/2023, answer due 7/24/2023; CONNIE SANCHEZ waiver sent on 5/25/2023, answer due 7/24/2023; DAVID H STAFFORD waiver sent on 5/25/2023, answer due 7/24/2023. (Attachments: # 1 Waiver of Service for T. Bobanic (Brevard), # 2 Waiver of Service for B. Cowles (Orange), # 3 Waiver of Service for H. Driggers (Madison), # 4 Waiver of Service for K. Healy (Highlands), # 5 Waiver of Service for K. Lenhart (Flagler), # 6 Waiver of Service for L. Lewis (Volusia), # 7 Waiver of Service for M. Milligan (Jefferson), # 8 Waiver of Service for M. Negley (DeSoto), # 9 Waiver of Service for C. Sanchez (Gilchrist), # 10 Waiver of Service for D. Stafford (Escambia)) (WERMUTH, FREDERICK) (Entered: 05/31/2023) |
| 06/01/2023 | 17 | NOTICE of Appearance by NATHANIEL ADAM KLITSBERG on behalf of JOE SCOTT (KLITSBERG, NATHANIEL) (Entered: 06/01/2023) |
| 06/01/2023 | 18 | NOTICE of Appearance by DEVONA ALICIA REYNOLDS PEREZ on behalf of JOE SCOTT (REYNOLDS PEREZ, DEVONA) (Entered: 06/01/2023) |
| 06/01/2023 | 19 | NOTICE of Appearance by JARED DOUGLAS KAHN on behalf of JULIE MARCUS (KAHN, JARED) (Entered: 06/01/2023) |
| 06/01/2023 | 20 | NOTICE of Appearance by JOSEPH K JARONE on behalf of JOE SCOTT (JARONE, JOSEPH) (Entered: 06/01/2023) |
| 06/01/2023 | 21 | Corporate Disclosure Statement/Certificate of Interested Persons by JOE SCOTT. (KLITSBERG, NATHANIEL) (Entered: 06/01/2023) |
| 06/01/2023 | 22 | DOCKET ANNOTATION BY COURT: Re 20 Notice of Appearance filed by JOE SCOTT, 19 Notice of Appearance filed by JULIE MARCUS, 10 Notice of Appearance filed by CRAIG LATIMER, 17 Notice of Appearance filed by JOE SCOTT, 18 Notice of Appearance filed by JOE SCOTT **ISO PLACED IN JUDGE WALKER'S REFERRAL TO JUDGE FOLDER** (rcb) (Entered: 06/01/2023) |
| 06/01/2023 | 23 | INITIAL SCHEDULING ORDER. Fed.R.Civ.P. 7.1 Corporate Disclosure Statement Deadline set for 6/15/2023. Rule 26 Meeting Report due by 7/17/2023. Discovery due by 9/29/2023. Status Report due by 7/3/2023. Signed by CHIEF JUDGE MARK E WALKER on 06/01/2023. (rcb) (Entered: 06/01/2023) |
| 06/01/2023 | 24 | NOTICE of Appearance by FRANK MICHAEL MARI on behalf of TIM BOBANIC, HEATH DRIGGERS, KAREN HEALY, KAITI LENHART, MICHELLE MILLIGAN, MARK F NEGLEY, CONNIE SANCHEZ (MARI, FRANK) (Entered: 06/01/2023) |
| 06/01/2023 | 25 | WAIVER OF SERVICE Returned Executed by UNIDOSUS, EQUAL GROUND EDUCATION FUND, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. MELISSA ARNOLD waiver sent on 5/25/2023, answer due 7/24/2023; ALETRIS FARNAM waiver sent on 5/25/2023, answer due 7/24/2023; BRENDA HOOTS waiver sent on 5/25/2023, answer due 7/24/2023; TAMMY JONES waiver sent on 5/25/2023, answer due 7/24/2023; THERISA MEADOWS waiver sent on 5/25/2023, answer due 7/24/2023; DIANE SMITH waiver sent on 5/25/2023, answer due 7/24/2023. (Attachments: # 1 Waiver of Service for A. Farnam (Glades), # 2 Waiver of Service for B. Hoots (Hendry), # 3 Waiver of Service for T. Jones (Levy), # 4 Waiver of Service for T. Meadows (Holmes), # 5 Waiver of Service for D. Smith (Hardee)) (WERMUTH, FREDERICK) (Entered: 06/01/2023) |
| 06/01/2023 | 26 | NOTICE of Appearance by JOSEPH SCOTT VAN DE BOGART on behalf of CORD BYRD (VAN DE BOGART, JOSEPH) (Entered: 06/01/2023) |

| | | |
|---|---|---|
| 06/01/2023 | 27 | NOTICE of Appearance by ASHLEY E DAVIS on behalf of CORD BYRD (DAVIS, ASHLEY) (Entered: 06/01/2023) |
| 06/02/2023 | 28 | NOTICE of Appearance by NOAH T SJOSTROM on behalf of ASHLEY MOODY (SJOSTROM, NOAH) (Entered: 06/02/2023) |
| 06/02/2023 | 29 | MOTION to Appear Pro Hac Vice by Makeba Rutahindurwa.( Filing fee $ 208 receipt number AFLNDC–7901627.) by ALIANZA CENTER, ALIANZA FOR PROGRESS, DISABILITY RIGHTS FLORIDA, EQUAL GROUND EDUCATION FUND, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (RUTAHINDURWA, MAKEBA) (Entered: 06/02/2023) |
| 06/02/2023 | 30 | MOTION to Appear Pro Hac Vice by Melinda Johnson.( Filing fee $ 208 receipt number AFLNDC–7901717.) by ALIANZA CENTER, ALIANZA FOR PROGRESS, DISABILITY RIGHTS FLORIDA, EQUAL GROUND EDUCATION FUND, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (JOHNSON, MELINDA) (Entered: 06/02/2023) |
| 06/02/2023 | 31 | WAIVER OF SERVICE Returned Executed by UNIDOSUS, EQUAL GROUND EDUCATION FUND, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. MAUREEN BAIRD waiver sent on 5/25/2023, answer due 7/24/2023; CORD BYRD waiver sent on 5/25/2023, answer due 7/24/2023. (Attachments: # 1 Waiver of Service for M. Baird (Citrus)) (WERMUTH, FREDERICK) (Entered: 06/02/2023) |
| 06/02/2023 | 32 | NOTICE of Appearance by ANDY V BARDOS on behalf of CHRIS ANDERSON, MICHAEL BENNETT, BRIAN E CORLEY, TOMMY DOYLE, JOYCE GRIFFIN, ALAN HAYS, LESLIE ROSSWAY SWAN, LEAH VALENTI, WESLEY WILCOX, MELISSA BLAZIER (BARDOS, ANDY) (Entered: 06/02/2023) |
| 06/02/2023 | 33 | NOTICE of Appearance by MOHAMMAD OMAR JAZIL on behalf of CORD BYRD (JAZIL, MOHAMMAD) (Entered: 06/02/2023) |
| 06/02/2023 | 34 | NOTICE of Appearance by MICHAEL ROBERT BEATO on behalf of CORD BYRD (BEATO, MICHAEL) (Entered: 06/02/2023) |
| 06/02/2023 | 35 | ORDER ADMITTING MAKEBA RUTAHINDURWA PRO HAC VICE. The 29 motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 06/02/2023. (rcb) (Entered: 06/05/2023) |
| 06/05/2023 | 36 | ORDER ADMITTING MELINDA JOHNSON PRO HAC VICE. The 30 motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 06/2/2023. (rcb) (Entered: 06/05/2023) |
| 06/05/2023 | 37 | MOTION to Appear Pro Hac Vice by Abha Khanna.( Filing fee $ 208 receipt number AFLNDC–7903704.) by ALIANZA CENTER, ALIANZA FOR PROGRESS, DISABILITY RIGHTS FLORIDA, EQUAL GROUND EDUCATION FUND, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (KHANNA, ABHA) (Entered: 06/05/2023) |
| 06/05/2023 | 38 | MOTION to Appear Pro Hac Vice by Renata O'Donnell.( Filing fee $ 208 receipt number AFLNDC–7903724.) by ALIANZA CENTER, ALIANZA FOR PROGRESS, DISABILITY RIGHTS FLORIDA, EQUAL GROUND EDUCATION FUND, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (O'DONNELL, RENATA) (Entered: 06/05/2023) |
| 06/05/2023 | 39 | ORDER ADMITTING ABHA KHANNA PRO HAC VICE. The 37 motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 06/05/2023. (rcb) |

| | | |
|---|---|---|
| | | (Entered: 06/05/2023) |
| 06/05/2023 | 40 | ORDER ADMITTING RENATA ODONNELL PRO HAC VICE. The 38 motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 06/5/2023. (rcb) (Entered: 06/05/2023) |
| 06/05/2023 | 41 | WAIVER OF SERVICE Returned Executed by UNIDOSUS, EQUAL GROUND EDUCATION FUND, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. JANET H ADKINS waiver sent on 5/25/2023, answer due 7/24/2023; MARK ANDERSEN waiver sent on 5/25/2023, answer due 7/24/2023; CHRIS ANDERSON waiver sent on 5/25/2023, answer due 7/24/2023; MICHAEL BENNETT waiver sent on 5/25/2023, answer due 7/24/2023; MELISSA BLAZIER waiver sent on 5/25/2023, answer due 7/24/2023; TOMI STINSON BROWN waiver sent on 5/25/2023, answer due 7/24/2023; STARLET CANNON waiver sent on 5/25/2023, answer due 7/24/2023; SHARON CHASON waiver sent on 5/25/2023, answer due 7/24/2023; GRANT CONYERS waiver sent on 5/25/2023, answer due 7/24/2023; BRIAN E CORLEY waiver sent on 5/25/2023, answer due 7/24/2023; TOMMY DOYLE waiver sent on 5/25/2023, answer due 7/24/2023; CAROL A DUNAWAY waiver sent on 5/25/2023, answer due 7/24/2023; JOYCE GRIFFIN waiver sent on 5/25/2023, answer due 7/24/2023; JOHN HANLON waiver sent on 5/25/2023, answer due 7/24/2023; TRAVIS HART sent on 5/25/2023, answer due 7/24/2023; ALAN HAYS waiver sent on 5/25/2023, answer due 7/24/2023; LAURA HUTTO waiver sent on 5/25/2023, answer due 7/24/2023; WILLIAM KEEN waiver sent on 5/25/2023, answer due 7/24/2023; JENNIFER MUSGROVE KINSEY waiver sent on 5/25/2023, answer due 7/24/2023; SHIRLEY G KNIGHT waiver sent on 5/25/2023, answer due 7/24/2023; RYAN MESSER waiver sent on 5/25/2023, answer due 7/24/2023; CHRISTOPHER MILTON waiver sent on 5/25/2023, answer due 7/24/2023; JOSEPH MORGAN waiver sent on 5/25/2023, answer due 7/24/2023; VICKY OAKES waiver sent on 5/25/2023, answer due 7/24/2023; DEBORAH K OSBORNE waiver sent on 5/25/2023, answer due 7/24/2023; CHARLES OVERTURF waiver sent on 5/25/2023, answer due 7/24/2023; HEATHER RILEY waiver sent on 5/25/2023, answer due 7/24/2023; CAROL F RUDD waiver sent on 5/25/2023, answer due 7/24/2023; AMANDA SEYFANG waiver sent on 5/25/2023, answer due 7/24/2023; DANA SOUTHERLAND waiver sent on 5/25/2023, answer due 7/24/2023; LESLIE ROSSWAY SWAN waiver sent on 5/25/2023, answer due 7/24/2023; LEAH VALENTI waiver sent on 5/25/2023, answer due 7/24/2023; TAPPIE A VILLANE waiver sent on 5/25/2023, answer due 7/24/2023; WESLEY WILCOX waiver sent on 5/25/2023, answer due 7/24/2023. (Attachments: # 1 Waiver of Service for M. Anderson (Bay), # 2 Waiver of Service for C. Anderson (Seminole), # 3 Waiver of Service for M. Bennett (Manatee), # 4 Waiver of Service for M. Blazier (formerly J. Edwards) (Collier), # 5 Waiver of Service for T. Brown (Columbia), # 6 Waiver of Service for S. Cannon (Dixie), # 7 Waiver of Service for S. Chason (Calhoun), # 8 Waiver of Service for G. Conyers (Liberty), # 9 Waiver of Service for B. Corley (Pasco), # 10 Waiver of Service for T. Doyle (Lee), # 11 Waiver of Service for C. Dunaway (Jackson), # 12 Waiver of Service for J. Griffin (Monroe), # 13 Waiver of Service for J. Hanlon (Gulf), # 14 Waiver of Service for T. Hart (Lafayette), # 15 Waiver of Service for A. Hays (Lake), # 16 Waiver of Service for L. Hutto (Hamilton), # 17 Waiver of Service for W. Keen (Sumter), # 18 Waiver of Service for J. Kinsey (Suwannee), # 19 Waiver of Service for S. Knight (Gadsden), # 20 Waiver of Service for R. Messer (Walton), # 21 Waiver of Service for C. Milton (Baker), # 22 Waiver of Service for J. Morgan (Wakulla), # 23 Waiver of Service for V. Oakes (St. Johns), # 24 Waiver of Service for D. Osborne (Union), # 25 Waiver of Service for C. Overturf (Putnam), # 26 Waiver of Service for H. Riley (Franklin), # 27 Waiver of Service for C. Rudd (Washington), # 28 Waiver of Service for A. Seyfang (Bradford), # 29 Waiver of Service for D. Southerland (Taylor), # 30 Waiver of Service for L. Swan (Indian River), # 31 Waiver of Service for L. Valenti (Charlotte), # 32 Waiver of Service for T. Villane (Santa Rosa), # 33 Waiver of Service for W. Wilcox (Marion)) (WERMUTH, FREDERICK) (Entered: 06/05/2023) |
| 06/05/2023 | 42 | NOTICE of Appearance by JOSHUA E PRATT on behalf of CORD BYRD (PRATT, JOSHUA) (Entered: 06/05/2023) |

| 06/06/2023 | 43 | NOTICE of Appearance by STEPHANIE ANNE MORSE on behalf of ASHLEY MOODY (MORSE, STEPHANIE) (Entered: 06/06/2023) |
|---|---|---|
| 06/06/2023 | 44 | NOTICE of Appearance by MARK HERRON on behalf of MARK S. EARLEY (HERRON, MARK) (Entered: 06/06/2023) |
| 06/07/2023 | 45 | MOTION to Appear Pro Hac Vice by Lalitha D. Madduri.( Filing fee $ 208 receipt number AFLNDC–7907794.) by ALIANZA CENTER, ALIANZA FOR PROGRESS, DISABILITY RIGHTS FLORIDA, EQUAL GROUND EDUCATION FUND, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (MADDURI, LALITHA) (Entered: 06/07/2023) |
| 06/07/2023 | 46 | REASSIGNMENT ORDER. The clerk will reassign this case to Chief Judge Walker. Signed by JUDGE ALLEN C WINSOR on 6/7/2023. (atm) (Entered: 06/07/2023) |
| 06/07/2023 |  | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of CHIEF JUDGE MARK E WALKER notified that action is needed Re: 46 REASSIGNMENT ORDER (rcb) (Entered: 06/07/2023) |
| 06/07/2023 | 47 | ORDER ADMITTING LALITHA D. MADDURI PRO HAC VICE. The 45 motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 06/07/2023. (rcb) Modified edit docket text on 6/8/2023 (rcb). (Entered: 06/07/2023) |
| 06/07/2023 | 48 | WAIVER OF SERVICE Returned Executed by UNIDOSUS, EQUAL GROUND EDUCATION FUND, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. WENDY SARTORY LINK waiver sent on 5/25/2023, answer due 7/24/2023. (WERMUTH, FREDERICK) (Entered: 06/07/2023) |
| 06/07/2023 | 49 | ORDER FOR SUPPLEMENTAL BRIEFING. The parties shall confer and file their supplemental briefing on or before Friday, 6/16/2023. Signed by CHIEF JUDGE MARK E WALKER on 06/07/2023. (rcb) (Entered: 06/07/2023) |
| 06/08/2023 | 50 | MOTION for Leave to File Excess Pages *Unopposed Motion of Plaintiffs for Leave to Exceed Word Limit* by ALIANZA CENTER, ALIANZA FOR PROGRESS, DISABILITY RIGHTS FLORIDA, EQUAL GROUND EDUCATION FUND, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (WERMUTH, FREDERICK) (Entered: 06/08/2023) |
| 06/08/2023 | 51 | ORDER GRANTING 50 MOTION TO EXCEED WORD LIMIT. The unopposed motion, ECF No. 50 , is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 06/08/2023. (rcb) (Entered: 06/08/2023) |
| 06/09/2023 | 52 | First AMENDED COMPLAINT *for Declaratory and Injunctive Relief* against All Defendants All Defendants., filed by UNIDOSUS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS, SANTIAGO MAYER ARTASANCHEZ, ESPERANZA SANCHEZ. (WERMUTH, FREDERICK) (Entered: 06/09/2023) |
| 06/09/2023 | 53 | MOTION for Extension of Time to File Answer by CORD BYRD. (JAZIL, MOHAMMAD) (Entered: 06/09/2023) |
| 06/09/2023 | 54 | NOTICE *of Filing Exhibits to the Declaration of Abha Khanna in Support of Plaintiffs' Emergency Motion for Preliminary Injunction* by ALIANZA CENTER, ALIANZA FOR PROGRESS, SANTIAGO MAYER ARTASANCHEZ, DISABILITY RIGHTS FLORIDA, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ESPERANZA SANCHEZ, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14) |

| | | (WERMUTH, FREDERICK) (Entered: 06/09/2023) |
|---|---|---|
| 06/09/2023 | 55 | Emergency MOTION for Preliminary Injunction by ALIANZA CENTER, ALIANZA FOR PROGRESS, SANTIAGO MAYER ARTASANCHEZ, DISABILITY RIGHTS FLORIDA, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ESPERANZA SANCHEZ, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (Attachments: # 1 Memorandum in Support of Emergency Motion for Preliminary Injunction, # 2 Declaration of Abha Khanna in Support of Plaintiffs' Emergency Motion for Preliminary Injunction) (WERMUTH, FREDERICK) (Entered: 06/09/2023) |
| 06/12/2023 | | Set/Reset Deadlines as to 55 Emergency MOTION for Preliminary Injunction . (Internal deadline for referral to judge if response not filed earlier: **6/26/2023**). (rcb) (Entered: 06/12/2023) |
| 06/12/2023 | 56 | ORDER SETTING SCHEDULING CONFERENCE AND OTHER DEADLINES. The Clerk shall set this matter for a telephonic scheduling conference on Wednesday, **6/14/2023 11:00 AM (ET)** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER, along with Case No.: 4:23cv218, which is also set for a telephonic scheduling conference. The parties shall file a proposed briefing schedule with respect to the motion for preliminary injunction by Tuesday, **6/13/2023**. The parties should refer to ECF No. 26 in Case No.: 1:23cv111–MW/HTC as a template for the information to include in their proposed briefing schedule. Signed by CHIEF JUDGE MARK E WALKER on 06/12/2023. (rcb) (Entered: 06/12/2023) |
| 06/12/2023 | 57 | NOTICE OF TELEPHONIC HEARING: Telephonic Scheduling Conference set for **6/14/2023 11:00 AM** before CHIEF JUDGE MARK E WALKER.<br><br>ALL PARTIES are directed to call the AT&T Conference Line (see below)<br><br>Conference Call Information<br><br>You may dial into the conference call up to five minutes before start time. Call in number: **888–684–8852** When prompted for an access code, enter: **3853136#** If you are asked to join as the host, just ignore and wait until you are asked for a security code. When asked for a security code, enter: **4565#** Say your name, when prompted. You are now in the conference call. Remember to mute your phone when you are not speaking. **The Court asks that counsel NOT use cell phones or speaker phones** during the call as the quality of the audio connection is compromised by these devices.<br><br>s/ Victoria Milton McGee<br>Courtroom Deputy Clerk (vkm) (Entered: 06/12/2023) |
| 06/12/2023 | 58 | ORDER GRANTING 53 EXTENSION. Defendant Byrd's motion is GRANTED. Defendant Byrd may file his response to Plaintiffs' complaint on or before the twenty–first day after this Court's ruling on Plaintiffs' emergency motion for preliminary injunction. Signed by CHIEF JUDGE MARK E WALKER on 06/12/2023. (rcb) (Entered: 06/12/2023) |
| 06/12/2023 | 59 | MOTION for Extension of Time to File Answer by ASHLEY MOODY. (SJOSTROM, NOAH) (Entered: 06/12/2023) |
| 06/12/2023 | 60 | ORDER GRANTING 59 EXTENSION. The unopposed motion is GRANTED. Defendant Moody may file her response to Plaintiffs' complaint on or before the twenty–first day after this Court's ruling on Plaintiffs' emergency motion for preliminary injunction. Signed by CHIEF JUDGE MARK E WALKER on 06/12/2023. (rcb) (Entered: 06/12/2023) |
| 06/13/2023 | 61 | NOTICE of Appearance by WILLIAM KEVIN BLEDSOE on behalf of LISA LEWIS (BLEDSOE, WILLIAM) (Entered: 06/13/2023) |
| 06/13/2023 | 62 | NOTICE of Appearance by SARAH LYNN JONAS on behalf of LISA LEWIS (JONAS, SARAH) (Entered: 06/13/2023) |
| 06/13/2023 | 63 | NOTICE of Appearance by CHRISTI JO HANKINS on behalf of DAVID H STAFFORD (HANKINS, CHRISTI) (Entered: 06/13/2023) |

| 06/13/2023 | 64 | NOTICE of Appearance by GREGORY THOMAS STEWART on behalf of PAUL A LUX (STEWART, GREGORY) (Entered: 06/13/2023) |
|---|---|---|
| 06/13/2023 | 65 | NOTICE of Appearance by MATTHEW REED SHAUD on behalf of PAUL A LUX (SHAUD, MATTHEW) (Entered: 06/13/2023) |
| 06/13/2023 | 66 | Corporate Disclosure Statement/Certificate of Interested Persons by PAUL A LUX. (STEWART, GREGORY) (Entered: 06/13/2023) |
| 06/13/2023 | 67 | NOTICE of Appearance by MICHAEL BENY VALDES on behalf of CHRISTINA WHITE (VALDES, MICHAEL) (Entered: 06/13/2023) |
| 06/13/2023 | 68 | NOTICE of Appearance by SUSAN SMITH ERDELYI on behalf of JANET H ADKINS, MARK ANDERSEN, TOMI STINSON BROWN, STARLET CANNON, SHARON CHASON, GRANT CONYERS, CAROL A DUNAWAY, JOHN HANLON, TRAVIS HART, LAURA HUTTO, WILLIAM KEEN, JENNIFER MUSGROVE KINSEY, SHIRLEY G KNIGHT, RYAN MESSER, CHRISTOPHER MILTON, JOSEPH MORGAN, VICKY OAKES, DEBORAH K OSBORNE, CHARLES OVERTURF, HEATHER RILEY, CAROL F RUDD, AMANDA SEYFANG, DANA SOUTHERLAND, TAPPIE A VILLANE (ERDELYI, SUSAN) (Entered: 06/13/2023) |
| 06/13/2023 | 69 | NOTICE of Appearance by WILLIAM BOLTREK, III on behalf of MELISSA ARNOLD, ALETRIS FARNAM, BRENDA HOOTS, TAMMY JONES, THERISA MEADOWS, DIANE SMITH (BOLTREK, WILLIAM) (Entered: 06/13/2023) |
| 06/13/2023 | 70 | NOTICE of Appearance by DIANA MASTERS JOHNSON on behalf of KIM BARTON (JOHNSON, DIANA) (Entered: 06/13/2023) |
| 06/13/2023 | 71 | NOTICE of Appearance by ROBERT CHARLES SWAIN on behalf of KIM BARTON (SWAIN, ROBERT) (Entered: 06/13/2023) |
| 06/13/2023 | 72 | Corporate Disclosure Statement/Certificate of Interested Persons by KIM BARTON. (SWAIN, ROBERT) (Entered: 06/13/2023) |
| 06/13/2023 | 73 | Corporate Disclosure Statement/Certificate of Interested Persons by MARK S. EARLEY identifying Other Affiliate LEON COUNTY – STATE OF FLORIDA for MARK S. EARLEY.. (HERRON, MARK) (Entered: 06/13/2023) |
| 06/13/2023 | 74 | NOTICE of Appearance by DAVID K MARKARIAN on behalf of WENDY SARTORY LINK (MARKARIAN, DAVID) (Entered: 06/13/2023) |
| 06/13/2023 | 75 | NOTICE of Appearance by JESSICA ROSE GLICKMAN on behalf of WENDY SARTORY LINK (GLICKMAN, JESSICA) (Entered: 06/13/2023) |
| 06/13/2023 | 76 | STATUS REPORT *Joint Report on Parties' Meet–and–Confer Regarding Plaintiffs' Motion for a Preliminary Injunction* by ALIANZA CENTER, ALIANZA FOR PROGRESS, SANTIAGO MAYER ARTASANCHEZ, DISABILITY RIGHTS FLORIDA, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ESPERANZA SANCHEZ, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (WERMUTH, FREDERICK) (Entered: 06/13/2023) |
| 06/14/2023 | 77 | NOTICE of Appearance by JOHN T LAVIA, III on behalf of MARY JANE ARRINGTON, CHRIS H CHAMBLESS, VICKY DAVIS, LORI EDWARDS, GERTRUDE WALKER (LAVIA, JOHN) (Entered: 06/14/2023) |
| 06/14/2023 | 78 | Corporate Disclosure Statement/Certificate of Interested Persons by DAVID H STAFFORD. (HANKINS, CHRISTI) (Entered: 06/14/2023) |
| 06/14/2023 | 79 | NOTICE of Appearance by SOPHIA MARIE GUZZO on behalf of CHRISTINA WHITE (GUZZO, SOPHIA) (Entered: 06/14/2023) |
| 06/14/2023 | 80 | ORDER SETTING HEARING ON 55 MOTION FOR PRELIMINARY INJUNCTION AND BRIEFING SCHEDULE. The in–person hearing on Plaintiffs motion for preliminary injunction is set for Wednesday, **6/28/2023 09:00 AM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER. Defendants' response and any declarations in support thereof are due on or before 12:00 p.m. (ET) on Friday, **6/23/2023 12:00 PM** in U.S. Courthouse Tallahassee before CHIEF |

| | | |
|---|---|---|
| | | JUDGE MARK E WALKER (ET) on Monday, **6/26/2023 12:00 PM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER. This Court STAYS the parties' deadline to brief the issue of consolidation. See ECF No. 49 . This Court will issue a new briefing deadline with respect to consolidation after the hearing on June 28. Finally, the deadline for Defendant Supervisors to answer or otherwise respond to Plaintiffs' complaint is extended to on or before the twenty–first day after this Court's ruling on Plaintiffs motion for preliminary injunction. Signed by CHIEF JUDGE MARK E WALKER on 06/14/2023. (rcb) (Entered: 06/14/2023) |
| 06/15/2023 | 81 | Corporate Disclosure Statement/Certificate of Interested Persons by WENDY SARTORY LINK. (GLICKMAN, JESSICA) (Entered: 06/15/2023) |
| 06/15/2023 | 82 | Corporate Disclosure Statement/Certificate of Interested Persons by CRAIG LATIMER. (TODD, STEPHEN) (Entered: 06/15/2023) |
| 06/15/2023 | 83 | AFFIDAVIT of Service for Complaint served on Christina White as Miami–Dade County Supervisor of Elections on 06/01/2023, filed by ALIANZA CENTER, ALIANZA FOR PROGRESS, SANTIAGO MAYER ARTASANCHEZ, DISABILITY RIGHTS FLORIDA, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ESPERANZA SANCHEZ, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (WERMUTH, FREDERICK) (Entered: 06/15/2023) |
| 06/15/2023 | 84 | Corporate Disclosure Statement/Certificate of Interested Persons by JULIE MARCUS. (KAHN, JARED) (Entered: 06/15/2023) |
| 06/15/2023 | 85 | WAIVER OF SERVICE Returned Executed by UNIDOSUS, ESPERANZA SANCHEZ, SANTIAGO MAYER ARTASANCHEZ, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ALIANZA CENTER, VOTERS OF TOMORROW ACTION, INC., FLORIDA ALLIANCE FOR RETIRED AMERICANS, DISABILITY RIGHTS FLORIDA, ALIANZA FOR PROGRESS. MARY JANE ARRINGTON waiver sent on 5/25/2023, answer due 7/24/2023; CHRIS H CHAMBLESS waiver sent on 5/25/2023, answer due 7/24/2023; VICKY DAVIS waiver sent on 5/25/2023, answer due 7/24/2023; LORI EDWARDS waiver sent on 5/25/2023, answer due 7/24/2023; GERTRUDE WALKER waiver sent on 5/25/2023, answer due 7/24/2023. (Attachments: # 1 Waiver of Service for C. Chambless (Clay), # 2 Waiver of Service for V. Davis (Martin), # 3 Waiver of Service for L. Edwards (Polk), # 4 Waiver of Service for G. Walker (St. Lucie)) (WERMUTH, FREDERICK) (Entered: 06/15/2023) |
| 06/15/2023 | 86 | Minute Entry for proceedings held before CHIEF JUDGE MARK E WALKER: Telephonic Scheduling Conference held on 6/15/2023. Parties discuss case status and schedule for 55 , 27 & 32 Motions for Preliminary Injunction. Ruling by Court: Defendants' responses to 55 , 27 & 32 Motions, and any declarations from defendants, due by noon on 6/23/23; Replies and plaintiffs' declarations due by noon on 6/26/23. Word limit for plaintiffs' replies enlarged to 5,000 words. Preliminary injunction hearing set for 9:00 am on 6/28/23. Cases consolidated for the purpose of preliminary injunction hearing only. Deadline for responses re: 7 Motion to Consolidate and 33 Motion to Proceed Under Pseudonym (in 4:23cv218) are stayed and will be reset after preliminary injunction hearing. Supervisors of elections' responses to plaintiffs' 1 Complaint is extended 21 days after ruling on 55 Motion (in 4:23cv215). Clerk to provide call–in number for interested parties to observe preliminary injunction hearing. Order to follow (Court Reporter Megan Hague (USDC–Tallahassee)). (vkm) (Entered: 06/15/2023) |
| 06/16/2023 | | Set Deadline Re: 83 Answer due by **7/31/2023**. (rcb) (Entered: 06/16/2023) |
| 06/16/2023 | 87 | NOTICE OF HEARING RE: 55 Emergency MOTION for Preliminary Injunction: Preliminary Injunction Hearing set for **6/28/2023 09:00 AM** before CHIEF JUDGE MARK E WALKER. United States Courthouse, **Courtroom 5 West,** 111 North Adams St., Tallahassee, Florida 32301.<br><br>NOTE: If you or any party, witness or attorney in this matter has a disability that requires special accommodation, such as, a hearing impairment that requires a sign language interpreter or a wheelchair restriction that requires ramp access, please contact Victoria Milton McGee at 850–521–3510 in the Clerk's Office at least one week prior to the hearing (or as soon as possible) so arrangements can be made. |

| | | |
|---|---|---|
| | | s/ Victoria Milton McGee<br>Courtroom Deputy Clerk (vkm) (Entered: 06/16/2023) |
| 06/16/2023 | 88 | NOTICE of Appearance by NICHOLAS ARI SHANNIN on behalf of BILL COWLES (SHANNIN, NICHOLAS) (Entered: 06/16/2023) |
| 06/16/2023 | 89 | NOTICE of Appearance by KYLE J BENDA on behalf of SHIRLEY ANDERSON (BENDA, KYLE) (Entered: 06/16/2023) |
| 06/16/2023 | 90 | Corporate Disclosure Statement/Certificate of Interested Persons by SHIRLEY ANDERSON. (BENDA, KYLE) (Entered: 06/16/2023) |
| 06/23/2023 | 91 | NOTICE *of Joinder* by ASHLEY MOODY (SJOSTROM, NOAH) (Entered: 06/23/2023) |
| 06/23/2023 | 92 | RESPONSE in Opposition re 55 Emergency MOTION for Preliminary Injunction *and Incorporated Memorandum of Law* filed by CORD BYRD. (Attachments: # 1 Appendix Appendix, Vol. 1 of 3, # 2 Appendix Appendix, Vol. 2 of 3, # 3 Appendix Appendix, Vol. 3 of 3) (JAZIL, MOHAMMAD) (Entered: 06/23/2023) |
| 06/23/2023 | 93 | NOTICE OF LISTEN–ONLY PHONE LINE for 6/28/2023 Preliminary Injunction Hearing:<br><br>INTERESTED PARTIES MAY OBSERVE THIS HEARING BY CALLING THE NUMBER BELOW––THIS HEARING MUST NOT BE BROADCAST BY ANY MEANS.<br><br>PLEASE MUTE YOUR LINE<br><br>Conference Call Information<br><br>You may dial into the conference call up to five minutes before start time. Call in number: **888–684–8852** When prompted for an access code, enter: **8131706#** If you are asked to join as the host, just ignore and wait until you are asked for a security code. When asked for a security code, enter: **0628#** You are now in the conference call. **Remember to mute your phone.**<br><br>**Callers to this line will be able to listen ONLY, not address the Court**.<br><br>s/ Victoria Milton McGee<br>Courtroom Deputy Clerk (vkm) (Entered: 06/23/2023) |
| 06/26/2023 | 94 | REPLY to Response to Motion re 55 Emergency MOTION for Preliminary Injunction *Plaintiffs' Reply in Support of Motion for Preliminary Injunction* filed by ALIANZA CENTER, ALIANZA FOR PROGRESS, SANTIAGO MAYER ARTASANCHEZ, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ESPERANZA SANCHEZ, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (WERMUTH, FREDERICK) (Entered: 06/26/2023) |
| 06/26/2023 | 95 | NOTICE of Appearance by CRAIG DENNIS FEISER on behalf of MIKE HOGAN (FEISER, CRAIG) (Entered: 06/26/2023) |
| 06/27/2023 | 96 | NOTICE of Appearance by DALE A SCOTT on behalf of MAUREEN BAIRD (SCOTT, DALE) (Entered: 06/27/2023) |
| 06/28/2023 | 97 | Minute Entry for proceedings held before CHIEF JUDGE MARK E WALKER: Motion Hearing held on 6/28/2023. Court hears argument regarding Plaintiffs' 55 Motion for Preliminary Injunction. Order to follow (Court Reporter Megan Hague (USDC–Tallahassee). (vkm) (Entered: 06/28/2023) |
| 06/28/2023 | 98 | ORDER SETTING DEADLINES. Consistent with this Courts statements on the record at the conclusion of the hearing on June 28, 2023, the parties shall confer in these three cases and file a notice indicating their positions regarding consolidation of these cases on or before twenty–one days after this Court enters an order ruling on the Plaintiffs' motions for preliminary injunction. In addition, this Court reiterates that Defendants in these three cases shall file their responsive pleadings to the operative |

| | | |
|---|---|---|
| | | complaints on or before twenty– one days after this Court enters an order ruling on the Plaintiffs' motions for preliminary injunction. Likewise, the parties' deadlines for conferring and filing their Rule 26 reports are extended to on or before twenty–one days after this Court enters an order ruling on the Plaintiffs motions for preliminary injunction. In Case No.: 4:23cv218, Defendants response to Plaintiffs motion to proceed anonymously is due on or before July 10, 2023, and Plaintiffs reply, if any, is due on or before July 13, 2023. Finally, without objection from Defendants, Plaintiffs in Case No.: 4:23cv218 may supplement the record with certified translations of their translated declarations on or before 12:00 p.m. (ET) on June 30, 2023. If Defendants need to be heard with respect to the certified translations, they must file a notice with this Court indicating the reason for which they wish to be heard by 5:00 p.m. (ET) on June 30, 2023. Signed by CHIEF JUDGE MARK E WALKER on 06/28/2023. (rcb) (Entered: 06/28/2023) |
| 06/29/2023 | 99 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Preliminary Injunction Proceedings held on 6/28/2023, before Judge Mark E. Walker. Court Reporter/Transcriber Megan A. Hague, Telephone number 850–443–9797.<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>Redaction Request due **7/6/2023**. Release of Transcript Restriction set for **10/4/2023**. (mah) (Entered: 06/29/2023) |
| 06/30/2023 | 100 | STATUS REPORT *First Joint Status Report* by ALIANZA CENTER, ALIANZA FOR PROGRESS, SANTIAGO MAYER ARTASANCHEZ, DISABILITY RIGHTS FLORIDA, FLORIDA ALLIANCE FOR RETIRED AMERICANS, FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, ESPERANZA SANCHEZ, UNIDOSUS, VOTERS OF TOMORROW ACTION, INC.. (WERMUTH, FREDERICK) (Entered: 06/30/2023) |
| 07/03/2023 | | Set Deadline– Status Report due by **8/2/2023**. (rcb) (Entered: 07/03/2023) |
| 07/03/2023 | 101 | PRELIMINARY INJUNCTION. The Florida NAACP Plaintiffs' motion for a preliminary injunction, ECF No. 55 in Case No.: 4:23cv215, is GRANTED. Defendant Secretary of State Cord Byrd, in his official capacity, and Defendant Attorney General Ashley Moody, in her official capacity, must take no steps to enforce the following until otherwise ordered: a. Section 97.0575(1)(f), Florida Statutes (2023); and b. Section 97.0575(7), Florida Statutes (2023). The preliminary injunction binds the above–listed Defendants and their officers, agents, servants, employees, and attorneys–and others in active concert or participation with any of them–who receive actual notice of this injunction by personal service or otherwise. The Hispanic Federation Plaintiffs' motion for a preliminary injunction, ECF No. 32 in Case No.: 4:23cv218, is GRANTED. Defendant Secretary of State Cord Byrd, in his official capacity, and Defendant Attorney General Ashley Moody, in her official capacity, must take no steps to enforce the following until otherwise ordered: a. Section 97.0575(1)(f), Florida Statutes (2023). The preliminary injunction binds the above–listed Defendants and their officers, agents, servants, employees, and attorneys–and others in active concert or participation with any of them–who receive actual notice of this injunction by personal service or otherwise. Signed by CHIEF JUDGE MARK E WALKER on 7/3/2023. (kjw) (Entered: 07/03/2023) |
| 07/11/2023 | 102 | NOTICE OF APPEAL as to 101 Preliminary Injunction,,,,, by CORD BYRD, ASHLEY MOODY. ( Filing fee $505 Receipt Number AFLNDC–7964865.) (Attachments: # 1 Exhibit Doc. 101, Preliminary Injunction, 4:23–cv–215) (JAZIL, MOHAMMAD) (Entered: 07/11/2023) |
| 07/12/2023 | 103 | NOTICE of Appearance by WILLIAM DAVID CHAPPELL on behalf of ASHLEY MOODY (CHAPPELL, WILLIAM) (Entered: 07/12/2023) |