# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| HISPANIC FEDERATION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CORD BYRD, in his official capacity as Florida Secretary of State, *et al.*, <br><br> *Defendants*. | Case No. 4:23-cv-218-MW-MAF |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION
### FOR LEAVE TO PROCEED UNDER PSEUDONYM

## PRELIMINARY STATEMENT

Plaintiff A. Doe seeks to proceed under a pseudonym to protect herself against threats of retaliation, harassment, and intimidation by the state of Florida, which has targeted both recent immigrants and those who dissent against Florida's legislative assault on voter engagement.  Defendants do not argue (*see* ECF Nos. 69 & 70) that granting A. Doe's motion to proceed pseudonymously in public filings would interfere with their ability to litigate their case or the public's understanding of the core constitutional questions at issue.  Indeed, Defendants acknowledge that courts must balance the risks to a plaintiff seeking anonymity with any potential harm to Defendants.  Their analysis fails, because the balancing test that courts use to routinely grant pseudonymity weighs strongly in favor of A. Doe.

Defendants' opposition fails in two ways.  First, it fails to allege any harm to themselves or to the public if A. Doe's identity is protected in public filings.  Nor could it.  Defendants will be able to conduct discovery on A. Doe so long as her identity and personal information is protected; the Court and public will be able to evaluate plaintiffs' claims against the government without knowing A. Doe's name.  Second, Defendants analyze each relevant factor in isolation, minimizing the harm A. Doe faces from exposure and suggesting that pseudonymous filings are permitted only in cases involving intimate bodily privacy.  Both parts of this approach are wrong.  Failing to evaluate harm to the government or the public does not comport

1

with decades of legal precedent. Courts do not limit pseudonymous status to matters of intimate harm. In fact, they regularly protect immigrants and others in labor matters, constitutional challenges, and other types of cases. Defendants' position, if accepted, would undermine vulnerable litigants' ability to seek the courts' protection in cases that implicate their rights.

## ARGUMENT

### I. The balance of factors requires Defendants to make some showing of harm should A. Doe remain pseudonymous, and they have not.

The balancing analysis developed by courts strongly favors the granting of pseudonyms in cases where, as here, Plaintiffs challenge governmental activity through claims that are purely legal in nature and where they face harm if exposed as litigants. *See, e.g.*, *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir. 1992); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *see also Sealed Plaintiff v. Sealed Defendant No. 1*, 537 F.3d 185, 190 (2d Cir. 2008); *Lozano v. City of Hazleton*, 620 F.3d 170, 195 (3d Cir. 2010), *vacated and remanded on other grounds*, 563 U.S. 1030 (2011). Courts do not view each factor in isolation, but rather evaluate a range of factors. *Doe v. Jindal*, 851 F. Supp. 2d 995 (E.D. La. 2012) (using pseudonyms in equal protection challenge to placement on sex offender registry). Here, Defendants concede a crucial factor in the balancing test—that Plaintiffs challenge government action, see ECF No. 69 at 4, ECF No. 70 at 2–3—and make no effort to

2

allege prejudice to their litigation positions or to the public. This is fatal to their opposition.

In particular, Defendants don't articulate any harm to their litigation position or loss to the public if A. Doe's identity is protected. Their position, if accepted, would deter potential litigants from vindicating meritorious constitutional claims in the courts, an unacceptable result that would harm the public interest. *See Lozano*, 620 F.3d at 195 (noting harm to public if parties were deterred from bringing cases "clarifying constitutional rights" at the price of being publicly identified).

First, Defendants nowhere suggest that their ability to litigate this case hinges on A. Doe's public exposure or that dissemination of her identity is necessary or even helpful in defending the suit. Nor can they. Proceeding under a pseudonym will not prevent Defendants from seeking discovery or deposing A. Doe, nor will they be harmed in any way if, during proceedings leading up to trial, they continue to refer to her as "A. Doe" in public filings.

Second, Defendants make no argument that knowledge of A. Doe's identity as a litigant challenging unconstitutional state action furthers the public's interest. *See generally* ECF Nos. 69, 70. Nor can they. Granting A. Doe, the right to proceed under a pseudonym would not prevent anyone from accessing information available online about the case or the organizational plaintiffs who have brought suit. All exposure would do is subject A. Doe, who, while here lawfully under Temporary

Protected Status, is among the classes of immigrants who the state of Florida has actively targeted through legislation. *See, e.g.*, Kaitlyn Schwanemann, Legal advocacy groups sue Gov. DeSantis, challenging new immigration laws, NBC Miami, July 12, 2023, https://www.nbcmiami.com/news/politics/legal-advocacy-groups-sue-gov-desantis-challenging-new-immigration-laws/3070220/.[1]

Given that the Court has already found that Plaintiffs are likely to prevail on the merits on their claim, it is unconstitutional to penalize non-citizen voter registration workers like A. Doe. The public's interest has also been served by her ability to pursue the litigation anonymously, and the public will have lost nothing

---

[1]   *See also* Andrew Atterbury & Gary Fineout, DeSantis readies more migrant flights as he intensifies fight with Biden, Politico, May 10, 2023, https://www.politico.com/news/2023/05/10/desantis-migrant-flights-00096216 (noting that the administration flew nearly 50 mostly Venezuelan migrants to Martha's Vineyard in September and that the state has authorized more flights of migrants); Andrea Castillo, DeSantis' treatment of migrants divides Miami's Venezuelan community, the nation's largest, Los Angeles Times, June 30, 2023, https://www.latimes.com/politics/story/2023-06-30/miami-venezuelans-desantis-treatment-migrants (reporting:

> Samuel Vilchez Santiago, Florida director for the American Business Immigration Coalition, views SB 1718 as a measure to advance DeSantis' presidential ambitions while creating a crisis for Floridians. Though the law shouldn't apply to most recently arrived Venezuelans, who have temporary authorization to remain in the country through Temporary Protected Status, parole or pending asylum petitions, Vilchez Santiago said the bill was designed to be vague. He said he worries it will lead to racial profiling as sheriffs across the state who aren't extensively trained on immigration law attempt to enforce it. "At the end of the day what they want to accomplish is send a narrative that creates this idea that Florida is not a welcoming place and people shouldn't come here," he said of DeSantis' administration. "But our economy depends on people coming.");

Christian Paz, Florida's new immigration law previews a DeSantis presidency, Vox, July 2, 2023, https://www.vox.com/politics/23779772/desantis-undocumented-immigrants-florida-immigration-law-border-biden (Noting the climate of fear in migrant communities over vagueness and ambiguities in SB 1718).

from not knowing the name of an individual who should be able to continue her employment without becoming a target. Indeed, Defendants acknowledge that the purely legal nature of a challenge to government activity is a factor in determining whether to permit pseudonyms. *See* ECF No. 69 at 3–4; *see also* ECF No. 70 at 2–3. But they wrongly state that Plaintiffs' motion must be denied because it is "based on this factor alone." *Id*. This mischaracterizes A. Doe's motion, which set forth all the factors[2] favoring pseudonymity, including the public's interest in clarification of constitutional questions and the harm faced by A. Doe if exposed as a litigant.

II. **The balance of factors strongly favors permitting plaintiffs who bring constitutional claims against the government and who face harm if exposed as litigants to proceed under pseudonyms.**

Having failed to allege any prejudice to themselves or the public, Defendants proceed to misapply the balancing test put forth in Eleventh Circuit case law, *see generally* ECF No. 69; *see also* ECF No. 70, which emphasizes a "totality of circumstances" analysis in evaluating requests for pseudonymity. *Doe v. Neverson*, 820 F. App'x 984, 986 (11th Cir. 2020); *Frank*, 951 F.2d at 324. Instead, Defendants analyze each factor in isolation, minimizing the risks to Plaintiff Doe at each step.

---

[2]    *See* ECF No. 33 at 3–4. As a "first step," the court must consider "whether the party seeking anonymity": (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of the utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution. *Id.* (quoting *Chiquita*, 965 F.3d at 1247). Other potentially relevant factors to consider include whether the information disclosed would subject the litigant to social stigma or if that information could lead to harm to the litigant. *See id.* at 988; *Frank*, 951 F.2d at 324.

5

### A. Temporary immigration status is sufficient to warrant pseudonymity in suits against a state that has targeted immigrants and voter activity for enforcement.

Defendants are wrong to contend that Doe's immigration status falls outside of the range of factors used by courts to grant pseudonymous status. The "standard of utmost intimacy," ECF No. 69 at 4–5, ECF No. 70 at 4, is not limited to instances of bodily harm or personal medical information; numerous courts have recognized that immigration status is sufficiently sensitive to warrant use of pseudonyms. *See, e.g.*, *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000) (crediting plaintiffs' immigration status as one of several factors weighing in favor of allowing plaintiffs to proceed anonymously against an employer); *Lozano*, 496 F. Supp. 2d at 490 (plaintiffs "with a more tenuous [immigration] status have an exponentially greater concern over the dangers of participating in a lawsuit that has generated . . . intense sentiment" and granting pseudonymous status in suit against local government); *Int'l Refugee Assistance Project v. Trump*, No. 17-cv-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) (immigration status "sufficiently sensitive and personal in nature to support plaintiffs' use of pseudonyms under appropriate circumstances"); *Lozano*, 496 F. Supp. 2d at 490 (plaintiffs "with a more tenuous [immigration] status have an exponentially greater concern over the dangers of participating in a lawsuit that has generated . . . intense sentiment"; granting pseudonymous status in suit against local government).

Ultimately, while defendants contend that the distinction between individuals with lawful immigration status and individuals with unlawful immigration status is significant as to cut against our argument for pseudonymity, they offer no evidence at all that the distinction in any way lessens the risk of exposure to harm that our client may face from the state, media or the public from their involvement in the case. Nor must A. Doe show that the threat she faces is from federal immigration authorities, who already know her identity. To the contrary, although her status is temporary, she faces risks not from the federal government, but from the state of Florida and supporters of its efforts to target immigrants. Recent immigrants with temporary status, like A. Doe, have been targeted for harassment, state enforcement, and intimidation, including through legislation that has passed, legislation that has been proposed, and increasingly volatile rhetoric from government authorities. *See, e.g.*, *supra* at pp. 4–5.

These risks are even more pronounced because A. Doe seeks to vindicate her First Amendment and Equal Protection rights in the act of registering and assisting voters. The state of Florida has targeted voting, voter registration, and voter engagement for high-profile investigations, fines, and even prosecutions. The state's assurances that it will refrain from harmful or retaliatory conduct towards our client rings hollow and offers is no real protection from prosecution or fines in a state that has made highly visible arrests of individuals who voted in error—even when the

7

state itself assured them that they were entitled to do so.  *See, e.g.*, Lori Rozsa, <u>The first arrests from DeSantis's election police take extensive toll</u>, Wash. Post, May 1, 2023, https://www.washingtonpost.com/nation/2023/04/30/desantis-election-police-arrests-florida/.

### B. Plaintiff need not show risk of physical harm to proceed under a pseudonym.

Contrary to Defendants' contention, ECF No. 69 at 6–7; ECF No. 70 at 4–5, neither the Eleventh Circuit nor any other Court of Appeals has required that an individual seeking to proceed pseudonymously prove "real danger of physical harm."  Courts have instead relied on news articles, declarations, and other relevant evidence that the individual *could* face harm absent pseudonymity.  *See Neverson*, 820 Fed. App'x 984, 988–89 (11th Cir. 2020) (overturning denial of pseudonymity because the trial court "too easily discounted evidence that Ms. Doe would be subject to threats and harassment if she were required to proceed under her real name").  Relying on *Doe v. Stegall*, a First Amendment challenge in Texas, the *Neverson* Court pointed out that pseudonyms are appropriate when individuals "*may* expect extensive harassment . . . if their identities [were] disclosed[.]" *Id.* at 988 (emphasis added).  Courts regularly use information in the public domain such as news reports to permit plaintiffs to proceed pseudonymously.  *Id*.

Nor should A. Doe have to suffer actual harm to show the need to shield her identity.  Unlike the hundreds of plaintiffs in *Carrizosa v. Chiquita Brands Int'l, Inc.*,

8

A. Doe is a single individual suing the state of Florida for a discriminatory law which unjustly bars her from engaging in voter registration on the basis of her alienage. *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238 (11th Cir. 2020).  And the state of Florida has a pronounced recent track record of targeting both recent immigrants and those engaged in voter registration efforts.  *See, e.g.*, *supra* at pp. 4–5; *see also* Brandon Larrabee, Suit seeks to block new Florida elections bill, Florida Times Union, June, 04, 2011, https://www.jacksonville.com/story/news/2011/06/04/suit-seeks-block-new-florida-elections-bill/15901331007/ ; *see generally also League of Women Voters of Fla., Inc. v. Lee*, 595 F. Supp. 3d 1042 (N.D. Fla. 2022), *aff'd in part, vacated in part, rev'd in part sub nom*.

Contrary to Defendants' suggestion, the decision by other plaintiffs to come forward, including those with more permanent immigration status, has no bearing on A. Doe's risk.  That others have chosen to identify themselves publicly—in one case, with their employer's support—does not show that they or A. Doe are protected from reprisals.

\* \* \*

A. Doe's decision to vindicate her rights should not be penalized by exposure to amplified publicity from the very Defendants she sues.  A. Doe should be permitted to proceed under a pseudonym because of Defendants' failure to articulate

9

any prejudice to themselves and the public, and because of A. Doe's strong showing that she will suffer grave risks if she is publicly identified.

## CONCLUSION

The Court should grant A. Doe's motion to proceed under a pseudonym in public filings.

## LOCAL RULE 7.1(F) CERTIFICATION

Undersigned counsel, Julie A. Ebenstein, certifies that this reply in support of Plaintiffs' Motion for Leave to Proceed Under Pseudonym contains 2,416 words, excluding the case style and certifications.

Respectfully submitted this 13th day of July, 2023,

                                                 <u>/s/ Julie A. Ebenstein</u>

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

Roberto Cruz (FBN 18436)
**LatinoJustice PRLDEF**
523 West Colonial Drive
Orlando, FL 32804
(321) 754-1935
rcruz@latinojustice.org

Cesar Z. Ruiz*
Fulvia Vargas De-Leon†
Ghita Schwarz†
**LatinoJustice PRLDEF**
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
cruiz@latinojustice.org
fvargasdeleon@latinojustice.org
gschwarz@latinojustice.org

Julie A. Ebenstein (FBN 91033)
Adriel I. Cepeda Derieux*
Megan C. Keenan*
Dayton Campbell-Harris*
Sophia Lin Lakin*
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
jebenstein@aclu.org
acepedaderieux@aclu.org
mkeenan@aclu.org
dcampbell-harris@aclu.org
slakin@aclu.org

Estee M. Konor*
**Dēmos**
80 Broad Street, 4th Floor
New York, NY 10004
(212) 485-6065
ekonor@demos.org

Evan Preminger*
Rayne Ellis*
**Arnold & Porter Kaye Scholer LLP**
250 W. 55th Street
New York, NY 10019
(212) 836-7786
evan.preminger@arnoldporter.com
rayne.ellis@arnoldporter.com

11

John A. Freedman[†]
Jeremy Karpatkin[†]
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 942-5316
john.freedman@arnoldporter.com
jeremy.karpatkin@arnoldporter.com

*Attorneys for Plaintiffs Hispanic Federation, Poder Latinx, Verónica Herrera-Lucha, Norka Martínez, and A. Doe*

*\*Admitted pro hac vice*

[†] *Motion for leave to appear pro hac vice forthcoming*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of July 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Julie A. Ebenstein
Julie A. Ebenstein
Florida Bar No. 91033