**DECLARATION OF ANDREW DARLINGTON
IN SUPPORT OF SUMMARY JUDGMENT MOTIONS**

I, Andrew Darlington, consistent with 28 U.S.C. § 1746, hereby state:

**<u>Background</u>**

1.      I am over 18 years of age, am competent to testify, and declare the following facts based on my own personal knowledge.

2.      I have served as the Director of the Office of Election Crimes and Security since March 2023.

3.      I hereby incorporate by reference my prior declaration in this matter, attached hereto.

4.      Below, I provide additional statements regarding state interests promoted by Senate Bill 7050 ("SB 7050"), Florida's most recent set of revisions to the Florida Election Code, which was codified as chapter 2023-120, Laws of Florida ("2023 Law").

**<u>State Interests</u>**

5.      The 2023 Law promotes the State's interests in safeguarding election integrity, preventing voter fraud, and promoting uniformity, efficiency, and confidence in the election system as a whole. The 2023 Law reflects the State's continuing efforts to protect the right to vote by ensuring that 3PVROs are abiding by their fiduciary duties under Florida law, and ensuring that vote-by-mail ballots are not fraudulently obtained. When 3PVROs conduct themselves in a criminal or fraudulent manner, or otherwise in disregard of their fiduciary duties, their actions may disenfranchise voters by delaying or preventing timely voter registration. Non-citizens are more likely to leave the jurisdiction (and their actions may otherwise be difficult to investigate) thereby frustrating the voter registration process. Moreover, when non-family members or non-legal

guardians submit requests for vote-by-mail ballots on behalf of voters, there is an increased risk that voter-by-mail ballots will be fraudulently requested.

6.      In furtherance of those interests, the 2023 Law amended, among other things: (1) section 97.0575(1)(e), Florida Statutes ("**Felon Restriction**"); (2) section 97.0575(1)(f), Florida Statutes ("**Citizen Restriction**"); and (3) section 101.62(1)(a), Florida Statutes ("**Mail-In Ballot Request Restriction**"). Each of these provisions furthers important State interests.

1. Felon Restriction

7.      Under the Felon Restriction, 3PVROs must "affirm[] that each person collecting or handling voter registration applications on behalf of the [3PVRO] has not been convicted of a felony violation of the Election Code" or "a felony violation of an offense specified in" section "98.0751(2)(c)" (murder), section "98.0751(2)(b)" (sexual offenses), section "825.103" (exploitation of an elderly person or disabled adult), chapter "817" (fraudulent practices), chapter "831" (forgery and counterfeiting), or chapter "837" (perjury). Fla. Stat. § 97.0575(1)(e).

8.      The felonies enumerated in the Felon Restriction involve seriously flouting the Election Code, taking advantage of vulnerable populations, committing extremely violent offenses (which do not result in the automatic restoration of voting rights under Amendment 4), and veracity issues.

9.      An individual who collects and handles a completed voter-registration application acts as a fiduciary for the applicant. This is a position of trust, and the Florida Legislature has determined that this position of trust should only be occupied by those who have not committed Election-Code felonies or serious or trust-related felonies. *See* Fla. Stat. § 97.0575(1)(e). Applications entrusted to 3PVROs also include applicants' personal information that should be used only for purposes of registration but could easily be misused before submission to an election

official. The risk of misuse is even more pronounced when completed voter registration applications are entrusted to felons who have already shown their disrespect for election laws, vulnerable populations, bodily integrity, life, and veracity.

10.     Keeping the above classes of convicted felons from collecting or handling completed voter-registration applications thus furthers the State's interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system.

### 2. Citizen Restriction

11.     Under the Citizen Restriction, 3PVROs must "affirm[] that each person collecting or handling voter registration applications on behalf of the [3PVRO] is a citizen of the United States of America." Fla. Stat. § 97.0575(1)(f).

12.     As stated above, an individual who collects and handles a completed voter-registration application acts as a fiduciary for the applicant. The Florida Legislature determined that only those individuals who are U.S. citizens can occupy that position of trust. *See* Fla. Stat. § 97.0575(1)(f).

13.     With non-citizens, there is an issue of whether collected and handled applications will be submitted to election officials on time. Non-citizens include illegal aliens, who are actively breaking the law and are subject to deportation at any time. Even those here on a temporary basis, such as those on student visas, pose similar risks; the temporary visitors might leave the country (or the State) without first delivering the completed voter registration applications in their custody. For resident aliens, the Florida Legislature made the determination that only U.S. citizens—those who can vote—can conduct the most critical aspect of the voter-registration process: ensuring that a completed application gets properly submitted on time. *See id.* In other words, citizens have the

most direct stake in the results of elections, and the Florida Legislature determined that they should be entrusted with that position. *See id.*

14.     The Citizen Restriction safeguards election integrity and prevents voter fraud by prohibiting ineligible-to-vote non-citizens from collecting and handling voter registration applications for (and from serving as fiduciaries to) citizen-only applicants. It promotes voter confidence by reasonably ensuring that applicants' voter registration applications are not collected or handled by such persons. It also ensures that voter registration applications are delivered in a timely manner and any untimely deliveries are properly investigated without a non-citizen leaving the State. Putting the applications in the hands of those with illegal or temporary status, who may leave the country voluntarily or involuntarily any day and without warning, increases the odds of a registration application being delivered after the statutory deadlines—after the date by which a voter must get on the rolls to cast a ballot in the next election. Though all legal non-citizens are welcome in Florida, they can't vote, serve on a jury, or hold public office. These factors militate against them serving as fiduciaries for citizens seeking to register to vote.

15.     Keeping non-U.S. Citizens from collecting or handling completed voter-registration applications thus furthers the State's interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system.

### 3. Mail-In Ballot Request Restriction

16.     Under the Mail-In Ballot Request Restriction, a supervisor of elections "shall accept a request for a vote-by-mail ballot only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian." Fla. Stat. § 101.62(1)(a). Among other things, a person making a request for a vote-by-mail ballot on behalf of a voter must

disclose "[t]he requestor's relationship to the voter." § 101.62(1)(b). The term "immediate family"

means "[t]he voter's spouse, parent, child, grandparent, grandchild, or sibling, or the parent, child,

grandparent, grandchild, or sibling of the voter's spouse." Fla. Stat. § 101.62(1)(d)(1).

17.     The Legislature was justified in concluding that there is a greater risk of *non-family members and non-legal guardians of voters* fraudulently requesting vote-by-mail ballots on behalf of voters than there is of *family members and legal guardians of voters* fraudulently requesting vote-by-mail ballots on behalf of voters.

18.     Logic bears this out. A voter's immediate family and a voter's legal guardian are reasonably expected to have the best interest of the voter in mind. The familial and legal bonds between a voter and his or her immediate family or legal guardian tend to promote trust and communication. A voter's immediate family and a voter's legal guardian thus tend to be the persons whom a voter has the most trust in and regular communication with. In general, because of the closeness of familial and guardianship bonds, a voter's immediate family and a voter's legal guardian are expected to be more trustworthy and responsive to the voter's needs than others who serve in non-familial, non-guardianship roles.

19.     The Mail-In Ballot Request Restriction's limitation of the category of persons who are eligible to submit a request for a vote-by-mail ballot on behalf of a voter to a voter's immediate family and a voter's legal guardian advances the State's interests. Safeguarding election integrity is promoted because every fraudulent vote that is cast both disenfranchises the voter and adds a vote to the total vote count that does not belong. Preventing voter fraud is promoted by reducing the risk that a fraudulent vote-by-mail ballot request will be made by non-family members and non-legal guardians of voters—persons who the Legislature concluded may be less trustworthy than family members and legal guardians of voters. Ensuring vote-by-mail-ballot requests are

timely processed is promoted by limiting vote-by-mail-ballot requests to a voter's immediate family or legal guardian—persons who may be more responsive to voters' needs than non-family members and non-legal guardians of voters. And promoting confidence in the election system as a whole is furthered by reducing the possibility that voters' votes might be cancelled out by fraudulently requested vote-by-mail ballots.

20.     Keeping non-family members and non-legal guardians from submitting requests for vote-by-mail ballots on behalf of voters thus furthers the State's interests in safeguarding election integrity, preventing voter fraud, ensuring vote-by-mail ballot requests are timely processed, and promoting confidence in the election system.

I say nothing further.

On January 18, 2024, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct.

/s/ Andrew Darlington
Andrew Darlington

**DECLARATION OF ANDREW DARLINGTON
IN SUPPORT OF RESPONSE IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

I, Andrew Darlington, consistent with 28 U.S.C. § 1746, hereby state:

**Background**

1.      I am over 18 years of age, am competent to testify, and declare the following facts based on my own personal knowledge.

2.      I have served as the Director of the Office of Election Crimes and Security since March 2023. As Director, my role includes, but is not limited to, overseeing the Office's: (a) receiving and reviewing of notices and reports generated by concerned citizens, government officials, or other Florida agency partners regarding alleged occurrences of election law violations by third-party voter registration organizations or their agents ("3PVROs"); (b) initiating independent inquiries and conducting preliminary investigations into allegations of election law violations by 3PVROs; (c) assessing fines for election law violations by 3PVROs; and (d) referring complaints regarding 3PVROs to other agencies for further criminal investigation or prosecution.

3.      Prior to becoming Director, I served as an Assistant General Counsel in the Florida Department of State where I handled election-related matters. Before that, I served as a prosecutor, worked in several federal and state agencies, served as a civil litigator in several law firms, and was an infantry officer in the United States Marine Corps where I served twice in Afghanistan.

4.      In my current role as Director, I am familiar with Florida's Election Code. I am also familiar with the claims brought by the Plaintiff in the three federal district court cases challenging various provisions of Senate Bill 7050 ("SB 7050"), Florida's most recent set of revisions to the Florida Election Code, which was codified as chapter 2023-120, Laws of Florida ("2023 Law").

1

5.      A 3PVRO that collects voter registration applications serves as a fiduciary to applicants under Florida law. § 97.0575(3)(a), Fla. Stat. I am providing this declaration to explain some of the ways and instances in which 3PVROs have failed to abide by their fiduciary duties in recent years, and the State's interests in the provisions that the Plaintiff groups are seeking to preliminarily enjoin.

### 3PVRO Complaints

6.      Our Office regularly receives complaints of 3PVROs violating Florida's election laws via a variety of sources, including election fraud complaints (Form DS-DE 34 – Fla. Admin. Code R. 1S-2.025), 3PVRO complaints (Form DS-DE 121 – Fla. Admin Code R. 1S-2.042), and complaints from supervisors of elections or their staff (which are submitted via the previous two forms). *See, e.g.*, Fla. Admin. Code. R. 1S-2.042(8). We investigate complaints and assess civil penalties, refer civil complaints to the Florida Attorney General's Office, or refer criminal complaints to law enforcement, as appropriate.

7.      Florida law requires the Office to submit an annual report to the President of the Senate, the Speaker of the House of Representatives, and the Governor detailing information on investigations of alleged election law violations or election irregularities conducted during the prior calendar year. § 97.022(7), Fla. Stat. The Office submitted its most recent report on January 15, 2023, for the 2022 calendar year—well before the proposed initial legislation for SB 7050 was submitted for consideration to the Florida Senate Committee on Ethics and Elections on March 30, 2023. The report is a statutory requirement and is incorporated by reference as an attachment to this declaration. As evidenced in the report, during 2022, the Office reviewed a large number of complaints involving 3PVROs. A number of these 3PVROs were reported by election officials for failing to timely comply with statutory obligations—most significantly, failing to timely turn in

voter registration applications. The Office reviewed approximately 3,077 voter registration applications that were collected and submitted untimely by 3PVROs, in violation of section 97.0575, Florida Statutes. The Office assessed statutory fines in the amount of $41,600.00 against those 3PVROs that did not comply with the statutory requirements. *See* § 97.0575(3)(a), Fla. Stat.

8.      Incorporated by reference as an attachment to this declaration is a sampling of 3PVRO complaints received, 3PVRO fine letters issued, and 3PVRO referrals made by the Department of State between the years 2016 and 2021. Our Office is concerned with the quantity and types of violations of Florida's election laws by 3PVROs alleged in or evidenced by these documents (especially those that resulted in the assessment of fines, referrals to other agencies for further investigation, and criminal prosecution). The types of violations alleged in or evidenced by these documents include, among other things:

     a.  3PVROs failing to deliver voter registration applications to election officials before the book closing deadline for federal or state elections. (Whenever a new applicant's voter registration application is not delivered by a 3PVRO prior to the book closing deadline, that voter is deprived of the right to vote in the next election.)

     b.  3PVROs failing to deliver voter registration applications to the division or the supervisor of elections in the county in which the applicant resides within 14 days after applications are completed by applicants.

     c.  3PVROs failing to deliver voter registration applications to the correct supervisor of elections in the county in which the applicant resides.

     d.  3PVRO agents charged or alleged with violation of a criminal statute.

9.      Also incorporated by reference as an attachment to this declaration are news articles, a press release, and a letter that discuss various 3PVRO-related issues.

3

**State Interests**

10.     The 2023 Law promotes the State's interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting uniformity, efficiency, and confidence in the election system as a whole. The 2023 Law reflects the State's continuing efforts to protect the right to vote by ensuring that 3PVROs are abiding by their fiduciary duties under Florida law. When 3PVROs conduct themselves in a criminal or fraudulent manner, or otherwise in disregard of their fiduciary duties, their actions may disenfranchise voters by delaying or preventing timely voter registration.

11.     In furtherance of those interests, the 2023 Law amended, among other things: (1) section 97.0575(1)(e), Florida Statutes ("**Felon Volunteer Restriction**"); (2) section 97.0575(1)(f), Florida Statutes ("**Non-U.S. Citizen Volunteer Restriction**"); (3) section 97.0575(4), Florida Statutes ("**Receipt Requirement**"); and (4) section 97.0575(7), Florida Statutes ("**Voter Information Retention Restriction**"). Each of these provisions furthers important State interests.[1]

### 1. Felon Volunteer Restriction

12.     Under the Felon Volunteer Restriction, 3PVROs must "affirm[] that each person collecting or handling voter registration applications on behalf of the [3PVRO] has not been convicted of a felony violation of the Election Code" or "a felony violation of an offense specified in" section "98.0751(2)(c)" (murder), section "98.0751(2)(b)" (sexual offenses), section "825.103" (exploitation of an elderly person or disabled adult), chapter "817" (fraudulent

---

[1] Other provisions the 2023 Law amended (but the Plaintiff groups do not seek to preliminarily enjoin) include: (1) section 97.0575(5)(a), Florida Statutes ("**Late/Incorrectly Returned Application Fines Provision**"); (2) section 101.62(1)(a), Florida Statutes ("**Mail-In Ballot Request Restriction**"); and (3) section 97.0575(1)(d), Florida Statutes ("**Re-Registration Requirement**").

practices), chapter "831" (forgery and counterfeiting), or chapter "837" (perjury). § 97.0575(1)(e), Fla. Stat.

13.     An individual who collects and handles a completed voter-registration application acts as a fiduciary for the applicant. § 97.0575(3)(a), Fla. Stat. This is a position of trust and the Florida Legislature has determined that that position of trust should only be occupied by those who have not committed Election-Code felonies or serious or trust-related felonies. *See* § 97.0575(1)(e), Fla. Stat.

14.     It is my understanding that keeping the above classes of convicted felons from collecting or handling completed voter-registration applications furthers the State's interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system as a whole.

2. Non-U.S. Citizen Volunteer Restriction

15.     Under the Non-U.S. Citizen Volunteer Restriction, 3PVROs must "affirm[] that each person collecting or handling voter registration applications on behalf of the [3PVRO] is a citizen of the United States of America." § 97.0575(1)(f), Fla. Stat.

16.     As stated above, an individual who collects and handles a completed voter-registration application acts as a fiduciary for the applicant. The Florida Legislature determined that only those individuals who are U.S. citizens can occupy that position of trust. *See* § 97.0575(1)(f), Fla. Stat.

17.     With non-citizens, there is an issue of whether collected and handled applications will be submitted to election officials on time. Non-citizens include illegal aliens, who are actively breaking the law and are subject to deportation at any time. Even those here on a temporary basis, such as those on student visas, pose similar risks; the temporary visitors might leave the country

(or the State) without first delivering the completed voter registration applications in their custody..

For resident aliens, the Florida Legislature made the determination that only U.S. citizens—those

who can vote—can conduct the most critical aspect of the voter-registration process: ensuring that

a completed application gets properly submitted on time. *See id.* In other words, citizens have the

most direct stake in the results of elections, and the Florida Legislature determined that they should

be entrusted with that position. *See id.*

18.     It is my understanding that keeping non-U.S. Citizens from collecting or handling

completed voter-registration applications furthers the State's interests in safeguarding election

integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and

promoting confidence in the election system as a whole.

### 3. Receipt Requirement

19.     Under the Receipt Requirement, 3PVROs that collect voter-registration

applications must provide a receipt to an applicant upon accepting his or her application. §

97.0575(4), Fla. Stat. The receipt must include the name of the applicant, the date the application

is received, the name of the 3PVRO, the name of the 3PVRO agent, the applicant's political party

affiliation, and the county in which the applicant resides.

20.     The Division of Elections will provide a uniform receipt form by October 1, 2023.

21.     The Receipt Requirement ensures that, if the 3PVRO fails to perform its fiduciary

duty to collect or submit applications, the applicants can contact the 3PVRO about any issues, even

those concerning the specific 3PVRO agents responsible for interacting with applicants. It also

provides applicants with the necessary information to report potential violations of Florida's

election laws by 3PVROs, which will enable election officials to identify issues with specific

3PVRO volunteers. More documentation of crucial aspects of voter registration is better.

22.     The Receipt Requirement thus ensures 3PVRO accountability in upholding their fiduciary duty and the proper administration of the third-party voter registration process.

### 4. Voter Information Retention Restriction

23.     Under the Voter Information Retention Restriction, a 3PVRO agent is prohibited from collecting a voter's application (which includes a voter's personal information) for any reason other than to provide such application to the 3PVRO in compliance with this section. § 97.0575(7), Fla. Stat.

24.     A voter's personal information includes a voter's Florida driver license number, Florida identification card number, social security number, or signature.

25.     The Voter Information Retention Restriction protects the applicant: a 3PVRO agent should not be able to retain a voter's private information that is not generally available to the public.

26.     The Voter Information Retention Restriction thus ensures that a voter's application (including the voter's personal information contained therein) is protected from misuse by a 3PVRO agent.

I say nothing further.

On June 23, 2023, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct.

/s/ Andrew Darlington
_____
Andrew Darlington