## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

HISPANIC FEDERATION, *et al.*,

                *Plaintiffs*,

v.

CORD BYRD, in his official capacity
as Secretary of State of Florida, *et al.*,

                *Defendants*.

Case No. 4:23-cv-00218-MW-MAF

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT ON COUNT VI

## **Table of Contents**

Page

INTRODUCTION ......................................................................................1

STATEMENT OF FACTS .........................................................................2

LEGAL STANDARD ................................................................................5

ARGUMENT .............................................................................................5

I.   Material issues of fact remain in dispute as to Plaintiffs' Section 1981 claims. ...............................................................................................6

II.  The Non-Citizen Ban conflicts with Section 1981.........................9

    A.   Section 1981 preempts the Non-Citizen Ban. .......................9

    B.   Section 1981 contains no "public-law" or "elections" exception. .......12

    C.   Plaintiffs do not invite this Court to conclude that Section 1981 prohibits any state law that "touch[es] on alienage and employment." ....................................................................15

CONCLUSION.........................................................................................17

LOCAL RULE 7.1(F) CERTIFICATE ...................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Tyson Foods, Inc.*,
   121 F.3d 642 (11th Cir. 1997) ................................................................5

*Ambach v. Norwick*,
   441 U.S. 68 (1979) .............................................................................16

*Anderson v. Conboy*,
   156 F.3d 167 (2d Cir. 1998) ................................................11, 13, 16

*Arizona v. United States*,
   567 U.S. 387 (2013) .............................................................................11

*Bostock v. Clayton Cnty.*,
   140 S. Ct. 1731 (2020) .........................................................................14

*Connecticut Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) .............................................................................14

*Deide v. Day*,
   No. 23-cv-3954, 2023 WL 3842694 (S.D.N.Y. June 6, 2013) .................6, 7, 13

*Duane v. GEICO*,
   37 F.3d 1036 (4th Cir. 1994) ......................................................12, 16

*Ferrill v. Parker Grp., Inc.*,
   168 F.3d 468 (11th Cir. 1999) ............................................6, 7, 8, 16

*Fitzpatrick v. City of Atlanta*,
   2 F.3d 1112 (11th Cir. 1993) ...............................................................5

*Fla. State Conf. of NAACP v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) .........................................................11

*Foley v. Connelie*,
   435 U.S. 291 (1978) .............................................................................16

*Graham v. Richardson*,
   403 U.S. 365 (1971) .......................................................................7, 12

*Jackson v. Bellsouth Telecomms.*,
    372 F.3d 1250 (11th Cir. 2004) ............................................................7

*Lozano v. City of Hazelton*,
    724 F.3d 297 (3d Cir. 2013) ...............................................................13

*Rine v. Imagists, Inc.*,
    590 F.3d 1215 (11th Cir. 2009) ...........................................................9

*Rodriguez v. Procter & Gamble Co.*,
    465 F. Supp. 3d 1301 (S.D. Fla 2020)......................................7, 16, 17

*Shotz v. City of Plantation*,
    344 F.3d 1161 (11th Cir. 2003) ...........................................................5

*Takahashi v. Fish & Game Comm'n*,
    334 U.S. 410 (1948)................................................................7, 10, 11

*United States v. Fisher*,
    289 F.3d 1329 (11th Cir. 2002) .........................................................14

**Statutes**

8 U.S.C. § 41 .........................................................................................11

42 U.S.C. § 1981 ...........................................................................*passim*

Fla. Stat. § 97.0575(1)(f) …………………………………………………...7

Civil Rights Act of 1866, ch. 31 § 1, 14 Stat. 27..............................10, 11

Voting Rights Act of 1870, ch. 114, § 16, 16 Stat. 140, 144.......10, 11, 13

**Other Authorities**

A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF
    LEGAL TEXTS 93 (1st ed. 2012) .........................................................12

Cong. Globe 41st Cong., 2d Sess. 1536 (1870).....................................11

Fed. R. Civ. P. 56 ................................................................................2, 5

## **INTRODUCTION**

Since 1870, 42 U.S.C. § 1981 has protected the right of **all** people in the United States to contract free from impairment "under color of State law." The text, context, and history of Section 1981 confirm the point: non-citizens in the United States, like Plaintiffs Herrera-Lucha, Martínez, and Pico, have the right to contract with private sector entities free from state-alienage discrimination.

Defendants' summary judgment arguments to the contrary defy Section 1981's plain text and history. Their argument that Section 1981 does not preempt the Non-Citizen Ban ignores the fundamental and irreconcilable conflict between the text of those two laws. And Defendants' contention that, "§ 1981 has also never been used to invalidate federal, state, or local statutes, regulations, or ordinances" (ECF 123 at 2), ignores extensive precedent that interprets Section 1981 to do just that.

Instead of following the statute's plain text and governing precedent, Defendants ask this Court to be the very first to narrow the scope of Section 1981 to exclude all "cases involving State election laws." ECF 123 at 8. But Defendants provide no support—not in the statutory text, the legislative history, or the case law—for carving out election-related restrictions. There is no basis to dismember the right to contract in the manner Defendants urge. In sum, Defendants have failed to demonstrate that they are entitled to judgment as a matter of law.

Defendants also fail to account for the record in this case, which contains issues of material fact that indicate the Non-Citizen Ban violates Section 1981: these

material facts include each individual plaintiff's ability to remain employed in their original 3PVRO roles, which has already been affected by their employer's steps to comply with the Non-Citizen Ban. This Court should therefore deny Defendants' Motion and allow Plaintiffs to prove their Section 1981 claims at trial.

## STATEMENT OF FACTS

Plaintiffs incorporate by reference the Statement of Facts from their Memorandum in Support of Motion for Partial Summary Judgment (ECF 126-1) and attached Exhibits (ECF 125). In addition to those Facts, pursuant to Rule 56(c), additional facts supporting Plaintiffs' Section 1981 claim are below.

\*   \*   \*

Verónica Herrera-Lucha, Norka Martínez, and Elizabeth Pico ("Individual Plaintiffs") all had employment contracts with 3PVROs before the Non-Citizen Ban took effect. ECF 125-18 (Herrera-Lucha Dep.) at 69:16–17, 89:4–6; ECF 125-17 (Pico Dep.) at 19:7–13; ECF 125-16 (Martínez Dep.) at 25:5–16; ECF 66-2 (Martínez Decl.) ¶ 19. The Non-Citizen Ban has impaired each Individual Plaintiff's ability to fulfill their contractual duties. All Individual Plaintiffs either changed their roles or ended their employment with 3PVROs because of the Non-Citizen Ban. *See generally* ECF 126-1 at 20–22.

Ms. Herrera-Lucha is Mi Vecino's Florida State Field Director. ECF 125-18 at 89:4–6; ECF 66-1 (Herrera-Lucha Decl.) ¶ 10. Before the Non-Citizen Ban, she picked up voter registration forms from the election supervisors in the different

counties where Mi Vecino registered voters. ECF 125-18 at 76:25–78:8. Ms. Herrera-Lucha would handle those forms before dispersing them to the field directors, who handed them out to individual canvassers. *Id.* When canvassers returned with completed forms, Ms. Herrera-Lucha reviewed them before handing them back to election supervisors in each county. *Id.* Both collecting and handling voter registration forms were necessary responsibilities of her role. *Id.* at 76:19–23.

Ms. Pico also works at Mi Vecino, ECF 125-17 at 13:2–6, and contracted with Mi Vecino as a canvasser. ECF 66-3 (Pico Decl.) ¶ 14. As a canvasser, Ms. Pico helped voters register or update their registration. ECF 125-17 at 15:19–24. She never registered anyone directly, but instead presented the voter registration forms to voters who would fill them out. *Id.* at 15:10–17. In that role, Ms. Pico also reviewed voter registration forms other canvassers returned to make sure they complied with Florida law. *Id.* at 19:7–13.

Because Mi Vecino ceased collecting and handling voter registration applications in the wake of the passage of the Non-Citizen Ban, neither Ms. Herrera-Lucha nor Ms. Pico have continued assisting with voter registration, fundamentally changing the nature of their employment. ECF 125-17 at 17:25–18:2; ECF 125-18 at 71:8–15. For example, because the Non-Citizen Ban ended Ms. Pico's ability to perform quality assurance control relating to voter registration applications, she now does canvassing unrelated to voter registration at Mi Vecino. ECF 125-17 at 18:3–6, 28:10–30:22, 31:2–5.

Ms. Martínez also canvassed for Mi Vecino until the Non-Citizen Ban passed. ECF 125-16 at 20:16–20; ECF 66-2 (Martínez Decl.) ¶ 11. Much like Ms. Pico, Ms. Martínez assisted voters with registering to vote or updating their voter registration. ECF 125-16 at 27:18–28:7. At the end of each workday, she returned completed voter registration applications to Mi Vecino's office. *Id.* at 28:13–17. Because her employer stopped doing voter registration work in the wake of the Non-Citizen Ban's passage, Ms. Martínez is no longer employed by Mi Vecino in a paid canvasser position. *Id.* at 32:21–33:3. Ms. Martínez testified that Mi Vecino's preparations to comply with the Non-Citizen Ban kept her "from earning . . . a single dollar . . . for longer than a month." *Id.* at 77:22–78:8. Ms. Martínez also testified that she would return to Mi Vecino if she had the opportunity to do voter registration work there again. *Id.* at 32:21–33:3, 39:16–40:7.

The record facts about Hispanic Federation and Poder Latinx ("Organizational Plaintiffs") further highlight the scope of the harm that the Non-Citizen Ban would wreak by preventing non-citizens from contracting with 3PVROs to engage in voter registration work. Non-citizens comprise approximately 70% of Hispanic Federation's canvassers, ECF 32-1 (Velez Decl.) ¶ 24, and 90% of Poder Latinx's staff. ECF 32-2 (Batista Decl.) ¶ 24. The Non-Citizen Ban would prevent both organizations from employing any of those non-citizens to collect and handle voter registration applications on their behalf. ECF 32-1 ¶¶ 24–25; ECF 125-14 (Wassmer Dep.) at 84:4–9.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Shotz v. City of Plantation*, 344 F.3d 1161, 1166 (11th Cir. 2003). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Allen*, 121 F.3d at 646. "If the party moving for summary judgment fails to discharge [this] initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). Defendants cannot satisfy their burden. Summary judgment on Plaintiffs' Section 1981 challenge to the Non-Citizen Ban is thus improper.

**ARGUMENT**

Defendants' failure to meet their burden of showing an absence of a genuine issue of material fact is evident in their failure to grapple with the factual record and precludes summary judgment on Plaintiffs' Section 1981 claim to the Non-Citizen

Ban. And Defendants' arguments suggesting that Section 1981 does not preempt the Non-Citizen Ban lack support from either precedent or the statute's text. This Court should accordingly deny Defendants' Motion because their arguments fail as a matter of law.

## I.   Material issues of fact remain in dispute as to Plaintiffs' Section 1981 claims.

The Non-Citizen Ban prohibits Individual Plaintiffs from forming employment contracts because of their alienage, in violation of Section 1981. That statute protects, in relevant part: "All persons within the jurisdiction of the United States" with "the same right in every State and Territory to make and enforce contracts[,]" which includes "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). This right to contract explicitly shields against "impairment under color of State law" in addition to "nongovernmental discrimination." *Id.* § 1981(c). The statute contains no exceptions.

To establish a Section 1981 violation of a state law or local ordinance, "each Plaintiff must allege that (1) [s]he is an alien; (2) the Defendants intended to discriminate against h[er] on the basis of alienage; and (3) the discrimination concerned one of Section 1981's enumerated activities." *See Deide v. Day*, No. 23-cv-3954 (NSR), 2023 WL 3842694, at *18 (S.D.N.Y. June 6, 2013); *see also Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). Section 1981 prohibits state-

alienage discrimination "in the making and enforcement of public and private contracts, including employment contracts," *Ferrill*, 168 F.3d at 472, that is "founded on purposeful discrimination," *i.e.*, intentional discrimination. *Id.* The statute applies with equal force to intentionally discriminatory policies crafted by private employers, *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004), and elected officials, *Deide*, 2023 WL 3842694, at *19.[1]

Defendants' Motion omits key record evidence that raises disputes of material fact as to each element of Plaintiffs' Section 1981 claims. First, Plaintiffs Herrera-Lucha, Martínez, and Pico are non-citizens who are lawfully present in the United States. ECF 66-1 ¶ 2; ECF 66-2 ¶¶ 6–7; ECF 66-3 ¶¶ 7–8. And "[i]t is well-settled that Section 1981's protection against [] alienage discrimination extends to lawfully present immigrants." *See Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1315 (S.D. Fla 2020) (citing *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410 (1948); *Wright v. Southland Corp.*, 187 F.3d 1287, 1297 n.12 (11th Cir. 1999)); *see also* ECF 123 at 5.

Second, the Non-Citizen Ban facially excludes all persons who are not "citizen[s] of the United States" from collecting and handling voter registration

---

[1] *See also Graham v. Richardson*, 403 U.S. 365, 377–78 (1971) ("State laws that restrict the eligibility of aliens for welfare benefits merely because of their alienage conflict with these overriding national policies" including "42 U.S.C. § 1981."); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419–20 (1948) ("The protection of this section has been held to extend to aliens as well as to citizens . . . against state legislation bearing unequally upon them [] because of alienage.").

applications, Fla. Stat. § 97.0575(1)(f), which creates at least a genuine dispute of material fact about the State's intention to discriminate against *all* non-citizens on the basis of alienage. *See Ferrill*, 168 F.3d at 472–73 (disparate treatment "on the basis of" the protected class is sufficient to prove intent, even absent any suggestion of animus); *see also* ECF 125-8 (Tr. of Fla. Senate Session (Apr. 26, 2023)) at 13:17–23 (bill sponsor Senator Burgess describing the Non-Citizen Ban as a "policy call" that "there are certain rights in our country that only citizens get to enjoy").

Third, a genuine dispute of material fact exists regarding whether the Non-Citizen Ban would impair (and, indeed, has already impaired) employment contracts between 3PVROs and non-citizens. Take Ms. Herrera-Lucha and Ms. Pico, for example. As part of her duties with Mi Vecino, Ms. Herrera-Lucha was tasked with picking up voter registration forms, keeping them under her care and supervision before handing them to field directors who disperse the forms among different canvassers. ECF 125-18 at 70:12–18, 76:25–78:8. She also reviewed the completed voter registration forms that canvassers return before handing them to different county election supervisors. *Id.* Ms. Pico works at Mi Vecino as well, where she once performed "quality control" checks, verifying that completed voter registration forms complied with state law. ECF 125-17 at 19:7–13.

Because their employer stopped doing voter registration work after the Non-Citizen Ban passed, Ms. Pico and Ms. Herrera-Lucha can no longer perform these duties. ECF 125-17 at 17:25–18:2, 28:10–30:22, 31:2–5; ECF 125-18 at 71:8–15.

These facts create at least a genuine dispute of fact regarding whether banning non-citizens from "collecting" or "handling" voter registration forms impairs both Plaintiffs' ability to contract with Mi Vecino to perform their jobs.

There is also a triable dispute about whether the Non-Citizen Ban impaired Ms. Martínez's ability to contract with 3PVROs. Ms. Martínez worked for Mi Vecino as a canvasser before the Non-Citizen Ban. ECF 125-16 at 25:5–16. But because her employer stopped doing voter registration work in the wake of the Non-Citizen Ban's passage, Ms. Martínez is no longer employed by Mi Vecino in a paid canvasser position. *Id.* at 32:21–33:3. As a result, she was unemployed for over a month. *Id.* at 77:22–78:8.

But for the Non-Citizen Ban, the three Individual Plaintiffs would remain able to fulfill their original contractual duties with their 3PVRO employers. This evidence creates more than a genuine issue of material fact worth denying Defendants' Motion; it will help establish Plaintiffs' Section 1981 claims at trial.

## II.    The Non-Citizen Ban conflicts with Section 1981.

Defendants' contentions that Section 1981 "is an improper means to invalidate election laws" and that Section 1981 cannot preempt the Non-Citizen Ban, ECF 123 at 5, ignore extensive precedent.

### A.    Section 1981 preempts the Non-Citizen Ban.

Defendants' claim that Section 1981 cannot preempt the Non-Citizen Ban ignores basic precedent about the interactions between state and federal law. Under

the Constitution's "Supremacy Clause, any state law that conflicts with federal law is preempted." *Rine v. Imagists, Inc.*, 590 F.3d 1215, 1224 (11th Cir. 2009) (citing *Gibbons v. Ogden*, 22 U.S. 1 (1824)). Such a "conflict" requires preemption where "compliance with both federal and state regulations is a physical impossibility," or where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal quotation marks and citations omitted)).[2] The Non-Citizen Ban is an obstacle to compliance with Section 1981, such that it is impossible to comply with both federal and state law.

Section 1981 derives from both Section 1 of the Civil Rights Act of 1866, ch. 31 § 1, 14 Stat. 27, ("1866 Act") and Section 16 of the Voting Rights Act of 1870, ch. 114, § 16, 16 Stat. 140, 144, ("1870 Act"), where Congress wrote that "any law of any State in conflict with" Section 1981 "is hereby declared *null and void*." (emphasis added). The 1866 Act was passed pursuant to Section 2 of the Thirteenth Amendment, which had been ratified the year prior to eliminate the "'badges and incidents of slavery. *See Runyon v. McCrary*, 427 U.S. 160, 170–72 (1976) (citing

---

[2] Plaintiffs' Complaint pleaded that the Non-Citizen Ban is "preempted by a core federal civil rights statute, 42 U.S.C. § 1981." ECF 79 ¶ 125. It additionally invokes *Takahashi*, 334 U.S. at 419, for the proposition that "[i]n enacting Section 1981, Congress occupied the field regarding the right of non-citizens to make and enforce contracts." ECF 79 ¶ 130. Defendants' suggestion that this second allegation operates to limit Plaintiffs' arguments solely to field preemption and precludes any argument based on conflict preemption (ECF 123 at 7) overlooks and artificially narrows the distinct, broader allegation pleaded in a separate paragraph.

U.S. Const. amend. XIII). Congress passed the 1870 Act two years after the Fourteenth Amendment was ratified, extending Section 1981's protections to "all persons within the jurisdiction of the United States." 42 U.S.C. § 1981(a). That understanding is backed by statements legislators made in support of the bill. For example, Senator Stewart of Nevada proclaimed the relevant part of the 1870 Act "simply extend[ed] to foreigners, not citizens, the protection of our laws where the State laws deny them the equal civil rights enumerated in the first section [of the 1866 Act]." Cong. Globe 41st Cong., 2d Sess. 1536 (1870).

The 1870 Act's legislative history reveals that the law's purpose was to alleviate the plight of Chinese immigrants in California, who—like Individual Plaintiffs here—"were burdened by state laws restricting their ability to work[.]" *Anderson v. Conboy*, 156 F.3d 167, 173 (2d Cir. 1998). Statements by U.S. Senators indicate that Section 1981 was passed to protect non-citizens "against the local laws" of States. *Id.* at 173–74. Congress clearly acted to occupy the field of non-citizens' rights to make and enforce employment contracts. *See Takahashi*, 334 U.S. at 419 (describing Section 1981, then codified as 8 U.S.C. § 41, as part of a "comprehensive legislative plan for the nation-wide control and regulation of immigration and naturalization").

The Non-Citizen Ban cannot be reconciled with Individual Plaintiffs' Section 1981 right to contract with 3PVROs. It criminalizes 3PVROs for hiring non-citizens. In turn, Section 1981 prohibits private entities from refusing to contract with

11

someone because of their citizenship status. It is therefore "physically impossible to comply with both the federal and the state laws[.]" *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008). The two laws are incompatible. So, the Non-Citizen Ban must "give way." *Arizona v. United States*, 567 U.S. 387, 399 (2012).

Likewise, the Non-Citizen Ban "stands as an obstacle to" the fundamental purpose of Section 1981: by denying non-citizens the right to enter into contracts with 3PVROs to engage in voter registration, the Non-Citizen Ban thwarts Section 1981's effort to provide non-citizens with the same rights to contract as other Floridians. And even if this conflict were not obvious, there are certainly issues of material fact concerning the extent to which the Non-Citizen Ban conflicts with Section 1981. *See supra*, Section I. The Court should therefore deny Defendants' Motion.

**B.     Section 1981 contains no "public-law" or "elections" exception.**

With no citation to authority, Defendants assert that Section 1981 cannot "invalidate election laws" because, "as far as [they] can tell," it "has never been used to invalidate federal, state, or local statutes, regulations, or ordinances." ECF 123 at 5. That contention is flatly inconsistent with extensive case law, which, as it must, has taken the statutory language at its word. *See* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (1st ed. 2012) ("Nothing is to be added to what the text states or reasonably implies . . . .").

To start: "The Supreme Court has established that section 1981 prohibits *at least* public discrimination against aliens." *Duane v. GEICO*, 37 F.3d 1036, 1040 (4th Cir. 1994) (citing *Graham v. Richardson*, 403 U.S. 365, 377 (1971)) (emphasis added). Federal courts have confirmed that "Section 1981 prohibit[s] discrimination by state actors on the basis of alienage," *Anderson*, 156 F.3d at 178, and that Section 1981 does not exempt state or local government actions, *see Duane*, 37 F.3d at 1040 (surveying Section 1981's pedigree reaching back to Reconstruction to resolve whether provision applies to "the making and enforcement of *private* contracts" (emphasis added)).

This all makes sense: indeed, the plain text of the statute confirms that "[t]he rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

Consistent with the statute's language, courts have in fact applied Section 1981 to block statutes or ordinances where necessary—as was Section 1981's original intent. *See supra*, Section II.A (citing *Anderson*, 156 F.3d at 173–74). In *Lozano v. City of Hazelton*, for example, the court applied Section 1981 to enjoin the city from enforcing an ordinance that prohibited undocumented persons from leasing property. 496 F. Supp. 2d 477, 546 (M.D. Pa. 2007), *affirmed in part, reversed on other grounds in part*, 724 F.3d 297 (3d Cir. 2013). Because leases are contracts, and

the ordinance facially discriminated based on citizenship status, the court found the ordinance "in violation of Section 1981." *Id.* at 548.

Similarly, seven months ago, in *Deide v. Day*, the Southern District of New York preliminarily enjoined local county executive orders under Section 1981 for barring non-citizens from contracting with hotels. No. 23-cv-3954 (NSR), 2023 WL 38421694, at *18–19 (S.D.N.Y. June 6, 2023). In sum, courts have recognized Section 1981 prohibits public laws that inhibit non-citizens' ability to contract.

Moreover, Defendants' reading of Section 1981 is incorrect and atextual. The statutory text could not be clearer: "All persons . . . have the same right . . . to make and enforce contracts," which "includes the making, performance, modification, and termination of contracts[.]" 42. U.S.C. §§ 1981(a) & (b). The statute nowhere carves out Defendants' amorphous understanding of "election laws" from its scope[3]—its "plain language is presumed to express congressional intent and [] control [the] court's interpretation." *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002). And because the "statute [is] unambiguous . . . 'judicial inquiry is complete.'" *Conn.*

---

[3] Defendants' brief confusingly asserts that "Section 1981 applies only to business-to-business negotiation cases, employment-discrimination cases, and union-related cases, and not cases involving State election laws" (ECF 123 at 8). But Defendants don't even attempt to explain why or how "cases involving State election laws" are mutually exclusive from the "employment-discrimination cases" in which Defendants *concede* Section 1981 applies. That distinction's nonsensical nature is on full display here, as the Non-Citizen Ban is a state employment law that discriminates on the basis of alienage in prescribing who can contract with 3PVROs to engage in voter registration work.

*Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). "Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020).

Defendants' baseless assertion that "§ 1981 itself is an improper means to invalidate election laws" (ECF 123 at 5) is conspicuously devoid of any citation to any supportive authority in the statutory text, legislative history, or precedent. Defendants offer nothing to support any such limitation on the plain language of Section 1981. There is no reason to believe that Congress intended to limit Section 1981's coverage to only those employment contracts that have nothing to do with elections, and even if it had, the text simply does not permit that construction. "Ours is a society of written laws. Judges are not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations." *Bostock*, 140 S. Ct. at 1754. Defendants invite the Court to participate in such guesswork here. It should decline.

### C.    Plaintiffs do not invite this Court to conclude that Section 1981 prohibits *any* state law that "touch[es] on alienage and employment."

Rather than acknowledge or address the precedent, Defendants accuse Plaintiffs of "seem[ing] to suggest that § 1981 prevents States from passing laws that touch on alienage and employment." ECF 123 at 8. But Plaintiffs' argument does

not rest on any such premise,[4] and the Court need not conclude that Section 1981 "prohibit[s] States from touching alienage and employment" altogether (*id.*) to conclude that Section 1981 restricts States from prohibiting private actors' right to contract with non-citizens expressly because of their alienage, as Florida has done with the Non-Citizen Ban.

Here, Plaintiffs invoke Section 1981 because the Non-Citizen Ban prohibits, based on alienage, certain private sector employment contracts—not because the Ban touches on alienage and employment, generally. The Non-Citizen Ban bars non-citizens from contracting with 3PVROs to "collect" and "handl[e]" voter registration forms. And courts have consistently found such alienage discrimination policies to violate Section 1981. *See, e.g.*, *Anderson*, 156 F.3d at 169 (holding Section 1981 prohibits private alienage discrimination with respect to the right to make and enforce contracts); *Duane*, 37 F.3d at 1043–44 (holding "section 1981 prohibits private discrimination against aliens"); *Rodriguez*, 465 F. Supp. 3d at 1301 (holding that a private employer's policy of categorically excluding all work-authorized undocumented people from employment violated Section 1981). Defendants cite no authority suggesting the statute applies differently here.[5]

---

[4] By way of example: Plaintiffs recognize that existing Eleventh Circuit precedent would foreclose a Section 1981 claim against a facially neutral law that disparately impacts non-citizens, absent proof of discriminatory intent. *Ferrill*, 168 F.3d at 472.

[5] Defendants' invocation of *Foley v. Connelie*, 435 U.S. 291 (1978), and *Ambach v. Norwick*, 441 U.S. 68 (1979), only serves to confuse the issues, not to provide the

## **CONCLUSION**

Plaintiffs respectfully request that this Court deny Defendants' motion for partial summary judgment.

## **LOCAL RULE 7.1(F) CERTIFICATE**

This Memorandum contains 3,752 words.

---

Court with any instruction about the scope of Section 1981. ECF 123 at 8. As an initial matter, as Defendants acknowledge, both of those cases involved Equal Protection Clause challenges, and did not include claims under Section 1981. Other litigants' failure to raise a Section 1981 claim is hardly proof that no such claim *could have* been raised, and it provides no insight into how such a claim would have been resolved in those cases. While a law *can* simultaneously violate both Section 1981 and the Equal Protection Clause, "doctrinal differences in Section 1981 and the Equal Protection Clause" prohibit any assumption about whether the outcome of those two claims would be the same or different in any given case. *Rodriguez*, 465 F. Supp. 3d at 1328.

Dated: February 1, 2024

Respectfully submitted,

*/s/ Megan C. Keenan*
Megan C. Keenan*
Adriel I. Cepeda Derieux*
**American Civil Liberties Union Foundation**
915 15th Street NW
Washington, DC 20005
(212) 549-2500
acepedaderieux@aclu.org
mkeenan@aclu.org

Cesar Z. Ruiz*
**LatinoJustice PRLDEF**
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
cruiz@latinojustice.org

Roberto Cruz (FBN 18436)
Miranda Galindo (FBN 1039848)
**LatinoJustice PRLDEF**
523 West Colonial Drive
Orlando, FL 32804
(321) 754-1935
rcruz@latinojustice.org
mgalindo@latinojustice.org

Julie A. Ebenstein (FBN 91033)
Dayton Campbell-Harris*
Sophia Lin Lakin*
Victoria Ochoa**
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
jebenstein@aclu.org
dcampbell-harris@aclu.org
slakin@aclu.org

Delmarie Alicea (FBN 1024650)
**LatinoJustice PRLDEF**
523 West Colonial Drive
Orlando, FL 32804
(321) 418-6354
dalicea@latinojustice.org

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Estee M. Konor*
**Dēmos**
80 Broad Street, 4th Floor
New York, NY 10004
(212) 485-6065
ekonor@demos.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

John A. Freedman*
Jeremy Karpatkin*
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5316
john.freedman@arnoldporter.com
jeremy.karpatkin@arnoldporter.com

*Admitted Pro Hac Vice*
**Pro Hac Vice forthcoming*

*Counsel for Plaintiffs Hispanic Federation, Poder Latinx, Verónica Herrera-Lucha, Norka Martínez, and Elizabeth Pico*