**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al., | |
| *Plaintiffs*, | |
| v. | Consolidated Case No. 4:23-cv-215-MW/MAF |
| CORD BYRD, in his official capacity as Secretary of State of Florida, et al., | |
| *Defendants*. | |

**LWVFL PLAINTIFFS' RESPONSES AND OBJECTIONS TO
FLORIDA SECRETARY OF STATE'S FIRST SET OF REQUESTS FOR ADMISSION
TO ORGANIZATIONAL PLAINTIFFS**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiffs League of Women Voters of Florida, Inc. and League of Women Voters of Florida Education Fund (collectively, "LWVFL Plaintiffs") hereby respond and object to Defendant Florida Secretary of State's First Set of Requests for Admission to Organizational Plaintiffs ("RFAs" or "Requests").

## GENERAL STATEMENT

In preparing these responses, LWVFL Plaintiffs have relied upon the information presently available to them; LWVFL will supplement these responses based on any further information or documents discovered during this phase of the litigation and produce any such documents to the extent required under the Rules. LWVFL Plaintiffs reserve the right to make subsequent revisions or amendment to their objections or answers based upon information, evidence, documents, facts, or other things that hereafter may be discovered, or the relevance of which may hereafter be discovered; and introduce or rely upon additional or subsequently acquired or discovered writings, evidence, and information in any proceedings or at any trial held hereafter.

Further, any response by LWVFL Plaintiffs to a particular Request is not intended, and shall not be construed, as an admission of the existence of any fact, assertion, or other matter expressed or implied in the Request. LWVFL Plaintiffs' objection to, or failure to object to, any particular Request is not, and shall not be construed as, an admission that responsive information exists. Moreover, LWVFL Plaintiffs' decision to answer any specific Request, notwithstanding its objectionable nature or its related definitions or instructions, also should not be construed as an admission to the relevancy or materiality of the material requested, or an agreement that future similar Requests will be treated in a similar manner. With these answers and objections, LWVFL Plaintiffs do not in any way waive, or intend to waive, the right to object on any and all grounds to (a) the evidentiary use of information contained herein, or (b) discovery requests relating to these objections and answers.

## GENERAL OBJECTIONS

1. LWVFL Plaintiffs object to the Requests to the extent they impose obligations, seek answers, or use instructions or definitions other than those permitted under the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Northern District of Florida, any Order of this Court, and any prior agreement of the parties.

2. LWVFL Plaintiffs object to each and every one of the Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, exemption, immunity, principle, doctrine, or rule of confidentiality. If any protected information or material is disclosed, such disclosure is not intentional and shall not be deemed a waiver of any privilege or protection.

3. To the extent any Request requires the disclosure of documents containing confidential or sensitive private information implicating the privacy interests of LWVFL Plaintiffs'

officers, employees, agents, or members, LWVFL Plaintiffs will only provide such information subject to the protective order agreed upon by the parties.

4. LWVFL Plaintiffs object to each and every one of the Requests to the extent they seek information already in the possession, custody, or control of the Defendants, or information that is publicly available or otherwise equally available to the Defendants.

5. LWVFL Plaintiffs object to each and every one of the Requests to the extent they seek information not in Plaintiffs' possession, custody, or control. LWVFL Plaintiffs further object to the Requests as overly broad and unduly burdensome to the extent that they impose an obligation to survey third parties.

6. LWVFL Plaintiffs object to the Requests to the extent that they seek answers or information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to any party's claim or defense.

7. LWVFL Plaintiffs object to the Requests insofar as they seek information that is unreasonably cumulative or duplicative of other Interrogatories or Requests for Production.

8. LWVFL Plaintiffs object to each and every one of the Requests to the extent that they are unclear, ambiguous, overly broad, unduly burdensome, and/or not proportional to the needs of the case.

9. LWVFL Plaintiffs object to each and every one of the Requests to the extent that they assume facts that do not exist or are incorrect.

10. By answering these Requests, LWVFL Plaintiffs do not concede the relevance or materiality of any of the information requested, nor of the subject matter to which any particular Request refers. Rather, these responses are made expressly subject to, and without in any way waiving or intending to waive any question or objection as to the

competency, relevance, privilege, or admissibility as evidence, of any of the matters referred to in these responses.

11. LWVFL Plaintiffs expressly reserve:

    a.  the right to object, on grounds of competency, relevance, materiality, privilege, or any other applicable ground, to the use of Responses provided to these Requests or the subject matter thereof, in any subsequent filing, proceeding, or hearing in this or any other action;

    b.  the right to object on any ground to any additional requests or other discovery proceedings involving or relating to the subject matter of these Requests; and

    c.  the right to amend, withdraw, or supplement Plaintiffs' Responses should further investigation or discovery disclose additional information.

**SPECIFIC RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION TO ORGANIZATIONAL PLAINTIFFS**

In addition to the foregoing general objections, LWVFL Plaintiffs assert the following specific responses and objections to each Request for Admission:

1.    Admit that your members can pick up physical voter registration applications at a Florida Supervisor of Elections office.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a member to do, and deny to the extent this is not possible for our members with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers. Third-party voter registration organizations, such

as LWVFL, make voter registration more accessible for these groups who cannot access these physical locations where voter registration forms are held.

2.      Admit that the persons whose voter registration applications you collect or handle can pick up physical voter registration applications at a Florida Supervisor of Elections office.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a person to do, and deny to the extent this is not possible for people with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers. Third-party voter registration organizations, such as LWVFL, make voter registration more accessible for these groups who cannot access these physical locations where voter registration forms are held.

3.      Admit that your members can pick up physical voter registration applications at the Florida Department of Highway Safety and Motor Vehicles.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a member to do, and deny to the extent this is not possible for our members with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers. Third-party voter registration organizations, such

as LWVFL, make voter registration more accessible for these groups who cannot access these physical locations where voter registration forms are held.

4.     Admit that the persons whose voter registration applications you collect or handle can pick up physical voter registration applications at the Florida Department of Highway Safety and Motor Vehicles.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a person to do, and deny to the extent this is not possible for people with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

5.     Admit that your members can pick up physical voter registration applications at a Florida public library.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a member to do, and deny to the extent this is not possible for our members with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

6.      Admit that the persons whose voter registration applications you collect or handle can pick up physical voter registration applications at a Florida public library.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a person to do, and deny to the extent this is not possible for people with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

7.      Admit that your members can pick up physical voter registration applications at other Florida government offices.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a member to do, deny to the extent this is not possible for our members with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

8.      Admit that the persons whose voter registration applications you collect or handle can pick up physical voter registration applications at other Florida government offices.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject

to this objection, admit to the extent this is possible for a person to do, and deny to the extent this is not possible for people with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

9.   Admit that your members can register to vote in Florida by submitting voter registration applications through the U.S. mail.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a member to do, and deny to the extent this is not possible for our members with physical disabilities, health conditions, transportation barriers, or other barriers.

10.   Admit that the persons whose voter registration applications you collect or handle can register to vote in Florida by submitting voter registration applications through the U.S. mail.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a person to do, and deny to the extent this is not possible for people with physical disabilities, health conditions, transportation barriers, or other barriers.

11.     Admit that your members can register to vote in Florida by submitting voter registration applications online through Florida's voter registration website registertovoteflorida.gov.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a member to do, and deny to the extent this is not possible for our members with physical disabilities, health conditions, or technology barriers.

12.     Admit that the persons whose voter registration applications you collect or handle can register to vote in Florida by submitting voter registration applications online through Florida's voter registration website registertovoteflorida.gov.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a person to do, and deny to the extent this is not possible for people with physical disabilities, health conditions, or technology barriers.

13.     Admit that your members can register to vote in Florida by submitting voter registration applications at a Florida Supervisor of Elections office.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a member to do, and deny to the extent this

is not possible for our members with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

14.     Admit that the persons whose voter registration applications you collect or handle can register to vote in Florida by submitting voter registration applications at a Florida Supervisor of Elections office.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a person to do, and deny to the extent this is not possible for people with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

15.     Admit that your members can register to vote in Florida by submitting voter registration applications at the Florida Department of Highway Safety and Motor Vehicles.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a member to do, and deny to the extent this is not possible for our members with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

16.     Admit that the persons whose voter registration applications you collect or handle can register to vote in Florida by submitting voter registration applications at the Florida Department of Highway Safety and Motor Vehicles.

The League objects to this Request for Admission on the grounds that it calls for speculation and/or inquires of persons, documents, and/or subjects that are not within the League's control. Subject to this objection, admit to the extent this is possible for a person to do, and deny to the extent this is not possible for people with physical disabilities, health conditions, employment hour barriers, transportation barriers, or other barriers.

17.     Admit that you contend that you have standing to challenge section 97.0575(1)(d).

Admit.

18.     Admit that you contend that you have standing to challenge section 97.0575(1)(e).

Admit.

19.     Admit that you contend that you have standing to challenge section 97.0575(1)(f).

Admit.

20.     Admit that you contend that you have standing to challenge section 97.0575(2).

Admit.

21.     Admit that you contend that you have standing to challenge section 97.0575(4).

Admit.

22.     Admit that you contend that you have standing to challenge section 97.0575(5).

Admit.

23.     Admit that you contend that you have standing to challenge section 97.0575(7).

Admit.

24.     Admit that you contend that your challenge to the definition of "collecting or handling" contained in section 97.0575(1)(e)-(f) is not moot due to the promulgation of Florida Administrative Code Rule 1S-2.042. *See* Fla. Admin. Code R. 1S-2.042, https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.042.

Admit.

25.     Admit that you contend that your challenge to the "receipt" requirement contained in section 97.0575(4) is not moot due to the promulgation of Florida Administrative Code Rule 1S-2.042. *See* Fla. Admin. Code R. 1S-2.042, https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.042.

Admit.

26.     Admit that you contend that your challenge to the definition of "voter's personal information" contained in section 97.0575(7) is not moot due to the promulgation of Florida Administrative Code Rule 1S-2.042. *See* Fla. Admin. Code R. 1S-2.042, https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.042.

Admit.

27.     Admit that you contend that your challenge to the definition of "in compliance with this section" contained in section 97.0575(7) is not moot due to the promulgation of Florida Administrative Code Rule 1S-2.042. *See* Fla. Admin. Code R. 1S-2.042, https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.042.

Admit.

28.     Admit that the burdens for you to comply with section 97.0575(1)(d), if any, are minimal.

Deny.

29.     Admit that the burdens for you to comply with section 97.0575(1)(e), if any, are minimal.

Deny. Compliance with section 97.0575(1)(e) requires Plaintiff to investigate its own members and risks a $50,000 fine for each violation of this provision.

30.     Admit that the burdens for you to comply with section 97.0575(1)(f), if any, are minimal.

Deny. Compliance with section 97.0575(1)(e) requires Plaintiff to investigate its own members and risks a $50,000 fine for each violation of this provision.

31.     Admit that the burdens for you to comply with section 97.0575(2), if any, are minimal.

Deny.

32.     Admit that the burdens for you to comply with section 97.0575(4), if any, are minimal.

Deny. Section 97.0575(4) leaves members at risk and conflicts with the voter information provision under section 97.0575(7).

33.     Admit that the burdens for you to comply with section 97.0575(5), if any, are minimal.

Deny. 3PVROs can incur significant fines for any violation of section 97.0575(5).

34.     Admit that the burdens for you to comply with section 97.0575(7), if any, are minimal.

Deny. Section 97.0575(7) places significant administrative burdens on members that impede registration efforts and the effectiveness of the League's activities.

35.     Admit that Florida Administrative Code Rule 1S-2.042 states that you will not be subject to a fine pursuant to section 97.0575(1)(e)-(f), as applicable, for permitting a felon or non-U.S. citizen to handle or collect voter registration applications on your behalf if you have a Form DS-DE 127 signed by the felon or non-U.S. citizen prior to collecting or handling voter registration applications on your behalf. *See* Fla. Admin. Code R. 1S-2.042, https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.042.

Admit.

36.     Admit that the burdens, if any, are minimal for you to ask your prospective employees, volunteers, and other agents who collect or handle voting registration applications on your behalf to sign a Form DS-DE 127 prior to collecting or handling voter registration applications.

Deny.

37.     Admit that the burdens, if any, are minimal for you to retain copies of any Form DS-DE 127 signed by your prospective employees, volunteers, and other agents who collect or handle voting registration applications on your behalf.

Deny.

38.     Admit that you serve as a fiduciary to the applicants whose voter registration applications you collect.

Admit to the extent that Florida law provides that 3PVROs that collect voter registration applications serve as fiduciaries to voter registration applicants.

39.     Admit that you retain copies of voter registration applications after delivering the originals to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides.

Deny.

40.     Admit that the copies of the voter registration applications you retain contain the voter's personal information.

Deny. The League does not currently retain voter's personal information.

41.     Admit that you share copies of the voter registration applications you retain with third parties for purposes other than voter registration.

Deny. The League does not currently retain voter's personal information.

42.     Outside of copies of voter registration applications, admit that you retain voter's personal information in some other format (for example digitally or electronically).

Deny. The League does not currently retain voter's personal information.

43.     Admit that you share voter's personal information with third parties.

Deny. The League does not currently retain voter's personal information.

44.     Admit that you are aware of one or more instances in which your employees, volunteers, or other agents have delivered voter registration applications to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides after the book closing deadline.

Deny.

45.     Admit that you have documents related to one or more instances in which your employees, volunteers, or other agents have delivered voter registration applications to the Division of

Elections or the Supervisor of Elections in the county in which the applicant resides after the book closing deadline.

Deny. LWVFL does not have such documents.

46.     Admit that you have been fined for one or more instances in which your employees, volunteers, or other agents delivered voter registration applications to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides after the book closing deadline.

Deny. During the SB 90 litigation, the League learned of three instances of untimely delivery of voter registration applications in approximately the last ten years. In summer of 2016, the League turned in one form late. In July 2019, the League returned four forms one day late due to a good faith error in calculating the voter registration return deadline. Later in the summer of 2019, the League turned in six forms a few days late due to Hurricane Dorian. The League is not aware of any fine that was imposed for the delay in turning in any of these forms and has no reason to believe that any voter was not properly registered to vote as a result of the delays.

47.     Admit that you are aware of one or more instances in which your employees, volunteers, or other agents have delivered voter registration applications to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides more than 14 days after the application was completed by the applicant.

Admit. During the SB 90 litigation, the League learned of three instances of untimely delivery of voter registration applications in approximately the last ten years. In summer of 2016, the League turned in one form late. In July 2019, the League returned four forms one day late due to a good faith error in calculating the voter registration return deadline. Later in the summer of 2019, the League turned in six forms a few days late due to Hurricane Dorian. The League is not aware of any fine that was imposed for the delay in turning in any of these forms and has no reason to believe that any voter was not properly registered to vote as a result of the delays.

48. Admit that you have documents related to one or more instances in which your employees, volunteers, or other agents have delivered voter registration applications to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides more than 14 days after the application was completed by the applicant.

Deny. During the SB 90 litigation, the League learned of three instances of untimely delivery of voter registration applications in approximately the last ten years. In summer of 2016, the League turned in one form late. In July 2019, the League returned four forms one day late due to a good faith error in calculating the voter registration return deadline. Later in the summer of 2019, the League turned in six forms a few days late due to Hurricane Dorian. The League is not aware of any fine that was imposed for the delay in turning in any of these forms and has no reason to believe that any voter was not properly registered to vote as a result of the delays.

49.     Admit that you have been fined for one or more instances in which your employees, volunteers, or other agents delivered voter registration applications to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides more than 14 days after the application was completed by the applicant.

Deny. During the SB 90 litigation, the League learned of three instances of untimely delivery of voter registration applications in approximately the last ten years. In summer of 2016, the League turned in one form late. In July 2019, the League returned four forms one day late due to a good faith error in calculating the voter registration return deadline. Later in the summer of 2019, the League turned in six forms a few days late due to Hurricane Dorian. The League is not aware of any fine that was imposed for the delay in turning in any of these forms and has no reason to believe that any voter was not properly registered to vote as a result of the delays.

50.     Admit that you are aware of one or more instances in which your employees, volunteers, or other agents have not submitted voter registration applications to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides after the application was completed by the applicant.

Deny. The League is not aware of any such instances.

51.     Admit that you have documents related to one or more instances in which your employees, volunteers, or other agents have not submitted voter registration applications to the

Division of Elections or the Supervisor of Elections in the county in which the applicant resides after the application was completed by the applicant.

Deny. The League is not aware of any such instances.

52.   Admit that you have been fined for one or more instances in which your employees, volunteers, or other agents failed to submit voter registration applications to the Division of Elections or the Supervisor of Elections in the county in which the applicant resides after the application was completed by the applicant.

Deny. The League is not aware of any such instances.

53.   Admit that you are aware of one or more instances in which your employees, volunteers, or other agents committed fraud in the course of collecting or handling voter registrations on your behalf.

Deny. The League is not aware of any such instances.

54.   Admit that you have documents related to one or more instances in which your employees, volunteers, or other agents committed fraud in the course of collecting or handling voter registrations on your behalf.

Deny. The League is not aware of any such instances.

55.     Admit that you are aware of one or more instances in which your employees, volunteers, or other agents turned in a voter registration application late (or not at all) in the course of collecting or handling voter registrations on your behalf.

Admit to the extent that applications were turned in late; otherwise, deny. During the SB 90 litigation, the League learned of three instances of untimely delivery of voter registration applications in approximately the last ten years. In summer of 2016, the League turned in one form late. In July 2019, the League returned four forms one day late due to a good faith error in calculating the voter registration return deadline. Later in the summer of 2019, the League turned in six forms a few days late due to Hurricane Dorian. The League is not aware of any fine that was imposed for the delay in turning in any of these forms and has no reason to believe that any voter was not properly registered to vote as a result of the delays.

56.     Admit that you have documents related to one or more instances in which your employees, volunteers, or other agents turned in a voter registration application late (or not at all) in the course of collecting or handling voter registrations on your behalf.

Deny. During the SB 90 litigation, the League learned of three instances of untimely delivery of voter registration applications in approximately the last ten years. In summer of 2016, the League turned in one form late. In July 2019, the League returned four forms one day late due to a good faith error in calculating the voter registration return deadline. Later in the summer of 2019, the League turned in six forms a few days late due to Hurricane Dorian. The League is not aware of

any fine that was imposed for the delay in turning in any of these forms and has no reason to believe that any voter was not properly registered to vote as a result of the delays.

57.    Admit that you do not provide voter registration training to all of your employees, volunteers, and other agents who collect or handle voter registration applications on your behalf.

Deny.

58.    Admit that you do not have a formal process in place for reporting suspected fraud or other misconduct to a state election official or state attorney related to the collecting or handling of voter registration applications on your behalf.

Admit to the extent that the League does not have a formal process distinct from the official State process. Deny to the extent that the League is aware of and prepared to engage in the official State process to report fraud, misconduct, and/or violations of state election law.

59.    Admit that you do not have a formal process in place for reporting suspected violations of section 97.0575(5) to a state election official or state attorney related to the collecting or handling of voter registration applications on your behalf.

Admit to the extent that the League does not have a formal process distinct from the official State process. Deny to the extent that the League is aware of and prepared to engage in the official State process to report fraud, misconduct, and/or violations of state election law.

60.    Admit that you do not conduct background checks of the criminal history of all your prospective employees, volunteers, and other agents who collect or handle voting registration applications on your behalf.

Admit. LWVFL does not conduct formal background checks of the criminal history of its employees, volunteers, or other agents.

61.    Admit that you do not conduct background checks of the eligibility to work in the United States of all your prospective employees, volunteers, and other agents who collect or handle voting registration applications on your behalf.

Deny. LWVFL complies with federal law in this regard.

62.    Admit that felons collected or handled voter registration applications on your behalf during the 2018 voting cycle in Florida.

Admit that people with felony convictions *may* have collected or handled voter registration applications on our behalf during the 2018 voting cycle in Florida, but the League cannot admit

this with certainty as we do not collect information on the criminal conviction history of our members and volunteers.

63.     Admit that felons collected or handled voter registration applications on your behalf during the 2020 voting cycle in Florida.

Admit that people with felony convictions *may* have collected or handled voter registration applications on our behalf during the 2020 voting cycle in Florida, but the League cannot admit this with certainty as we do not collect information on the criminal conviction history of our members and volunteers.

64.     Admit that felons collected or handled voter registration applications on your behalf during the 2022 voting cycle in Florida.

Admit that people with felony convictions *may* have collected or handled voter registration applications on our behalf during the 2022 voting cycle in Florida, but the League cannot admit this with certainty as we do not collect information on the criminal conviction history of our members and volunteers.

65.     Admit that felons currently collect or handle voter registration applications on your behalf in Florida.

Deny. No LWVFL members or volunteers are currently collecting or handling paper voter registration applications on our behalf because of the chilling effect of SB 7050 on our voter registration activities.

66.   Admit that non-U.S. citizens collected or handled voter registration applications on your behalf during the 2018 voting cycle in Florida.

Admit that non-U.S. citizens *may* have collected or handled voter registration applications on our behalf during the 2018 voting cycle in Florida, but the League cannot admit this with certainty as we do not collect information on the citizenship status of our members and volunteers.

67.   Admit that non-U.S. citizens collected or handled voter registration applications on your behalf during the 2020 voting cycle in Florida.

Admit that non-U.S. citizens *may* have collected or handled voter registration applications on our behalf during the 2020 voting cycle in Florida, but the League cannot admit this with certainty as we do not collect information on the citizenship status of our members and volunteers.

68.   Admit that non-U.S. citizens collected or handled voter registration applications on your behalf during the 2022 voting cycle in Florida.

Admit that non-U.S. citizens *may* have collected or handled voter registration applications on our behalf during the 2022 voting cycle in Florida, but the League cannot admit this with certainty as we do not collect information on the citizenship status of our members and volunteers.

69.     Admit that non-U.S. citizens currently collect or handle voter registration applications on your behalf in Florida.

Deny. No LWVFL members or volunteers are currently collecting or handling paper voter registration applications on our behalf because of the chilling effect of SB 7050 on our voter registration activities.

70.     Admit that you are aware of illegal aliens collecting or handling voter registration applications on your behalf in Florida.

A definition of "illegal aliens" has not been provided, so LWVFL will operate with the understanding that this is referring to undocumented non-U.S. citizens. Deny that the League is *aware* of undocumented non-U.S. citizens collecting or handling voter registration applications on our behalf in Florida because the League does not collect information on the citizenship status of our members and volunteers.

71.     Admit that you have documents related to illegal aliens collecting or handling voter registration applications on your behalf in Florida.

A definition of "illegal aliens" has not been provided, so LWVFL will operate with the understanding that this is referring to undocumented non-U.S. citizens. Deny that the League has any such documents.

72.     Admit that you are aware of non-permanent residents collecting or handling voter registration applications on your behalf in Florida.

Deny that the League is *aware* of non-permanent residents collecting or handling voter registration applications on our behalf in Florida because the League does not collect information on the citizenship status of our members and volunteers.

73.     Admit that you have documents related to non-permanent residents collecting or handling voter registration applications on your behalf in Florida.

Deny that the League has any such documents.

74.     Admit that you are aware of one or more complaints of fraud made against you or your employees, volunteers, or other agents related to voter registration.

Deny. The League is not aware of any such complaints.

75.     Admit that you have documents related to one or more complaints of fraud made against you or your employees, volunteers, or other agents related to voter registration.

Deny. The League is not aware of any such complaints, and therefore, is not aware of such documents.

76.     Admit that you have not taken corrective actions when a valid complaint has been made

against you or your employees, volunteers, or other agents related to voter registration.

Deny. The League is not aware of any such complaints, and therefore, has not taken such corrective

actions.

77.     Admit that you have never reported an employee, volunteer, or other agent to a state

election official or state attorney for issues related to voter registration.

Admit.

78.     Admit that you have never fired or otherwise terminated your relationship with an

employee, volunteer, or other agent for issues related to voter registration.

Admit.

79.     Admit that you are aware of one or more instances where your employees, volunteers, or

other agents failed to deliver a voter registration application within the time required by

law.

The League objects to this Request for Admission on the ground that it is duplicative of Request

for Admission 55. Subject to this objection, admit. During the SB 90 litigation, the League learned

of three instances of untimely delivery of voter registration applications in approximately the last

ten years. In summer of 2016, the League turned in one form late. In July 2019, the League returned four forms one day late due to a good faith error in calculating the voter registration return deadline. Later in the summer of 2019, the League turned in six forms a few days late due to Hurricane Dorian. The League is not aware of any fine that was imposed for the delay in turning in any of these forms and has no reason to believe that any voter was not properly registered to vote as a result of the delays.

80.     Admit that you have documents related to one or more instances where your employees, volunteers, or other agents failed to deliver a voter registration application within the time required by law.

The League objects to this Request for Admission on the grounds that it is duplicative of Request for Admission 56. Subject to this objection, deny. LWVFL is not aware of any such documents.

81.     Admit that you have budgets or other documents that track or otherwise show your expenses in 2018.

A definition of "expenses" was not provided, particularly with regard to the distinction from "expenditures" used in Requests for Admission 85-88. LWVFL is therefore not sure exactly which types of documents Defendant Byrd is requesting. With that lack of clarity noted, LWVFL admits that budget documents were created in 2018 but does not have knowledge of whether those documents are still within LWVFL's possession.

82.   Admit that you have budgets or other documents that track or otherwise show your expenses in 2020.

A definition of "expenses" was not provided, particularly with regard to the distinction from "expenditures" used in Requests for Admission 85-88. LWVFL is therefore not sure exactly which types of documents Defendant Byrd is requesting. With that lack of clarity noted, LWVFL admits that budget documents were created in 2020 but does not have knowledge of whether those documents are still within LWVFL's possession.

83.   Admit that you have budgets or other documents that track or otherwise show your expenses in 2022.

A definition of "expenses" was not provided, particularly with regard to the distinction from "expenditures" used in Requests for Admission 85-88. LWVFL is therefore not sure exactly which types of documents Defendant Byrd is requesting. With that lack of clarity noted, Plaintiff LWVFL admits that it has a 2022-2023 budget. LWVFL has already provided Defendant Byrd with this budget in discovery.

84.   Admit that you have budgets or other documents that track or otherwise show your current expenses.

A definition of "expenses" was not provided, particularly with regard to the distinction from "expenditures" used in Requests for Admission 85-88. LWVFL is therefore not sure exactly which

types of documents Defendant Byrd is requesting. With that lack of clarity noted, Plaintiff LWVFL admits that it has a 2023-2024 budget. LWVFL has already provided Defendant Byrd with this budget in discovery.

85.    Admit that you have budgets or other documents that track or otherwise show your expenditures in 2018.

A definition of "expenditures" was not provided, particularly with regard to the distinction from "expenses" used in Requests for Admission 81-84. LWVFL is therefore not sure exactly which types of documents Defendant Byrd is requesting. With that lack of clarity noted, LWVFL admits that budget documents were created in 2018 but does not have knowledge of whether those documents are still within LWVFL's possession.

86.    Admit that you have budgets or other documents that track or otherwise show your expenditures in 2020.

A definition of "expenditures" was not provided, particularly with regard to the distinction from "expenses" used in Requests for Admission 81-84. LWVFL is therefore not sure exactly which types of documents Defendant Byrd is requesting. With that lack of clarity noted, LWVFL admits that budget documents were created in 2020 but does not have knowledge of whether those documents are still within LWVFL's possession.

87.   Admit that you have budgets or other documents that track or otherwise show your expenditures in 2022.

A definition of "expenditures" was not provided, particularly with regard to the distinction from "expenses" used in Requests for Admission 81-84. LWVFL is therefore not sure exactly which types of documents Defendant Byrd is requesting. With that lack of clarity noted, Plaintiff LWVFL admits that it has a 2022-2023 budget. LWVFL has already provided Defendant Byrd with this budget in discovery.

88.   Admit that you have budgets or other documents that track or otherwise show your current expenditures.

A definition of "expenditures" was not provided, particularly with regard to the distinction from "expenses" used in Requests for Admission 81-84. LWVFL is therefore not sure exactly which types of documents Defendant Byrd is requesting. With that lack of clarity noted, Plaintiff LWVFL admits that it has a 2023-2024 budget. LWVFL has already provided Defendant Byrd with this budget in discovery.

89.   Admit that you have documents that track or otherwise show the employees, staff, or volunteers working for you or on your behalf.

Admit in part. LWVFL has records regarding its paid employees and staff working on its behalf. Deny in part. LWVFL does not have such a record for volunteers "working for [it] or on [its]

behalf." Since no definition of "working on LWVFL's behalf" has been provided, LWVFL is not clear on what this means. Some individuals are members who do not actively volunteer, but attend meetings, and therefore, cannot be said to "work on LWVFL's" behalf.

90.   Admit that you have documents that track or otherwise show which employees, staff, or volunteers worked on projects involving voter registration efforts.

Admit to the extent that the League possesses documents reflecting which individuals passed the League's training quiz and are therefore eligible to work on projects involving voter registration efforts; otherwise, deny that the League has any such documents.

91.   Admit that you have written policies or procedures pertaining to the collecting and handling of voter registration applications.

Deny. LWVFL members or volunteers are not currently collecting or handling paper voter registration applications because of the chilling effect of SB 7050 on our voter registration activities. Therefore, there are no such policies or procedures. Policies or procedures regarding this new process of *not* collecting or handling paper voter registration applications have been provided to Defendant Byrd in response to his discovery requests.

92.   Admit that you have written training materials pertaining to the collecting and handling of voter registration applications.

Deny. LWVFL members or volunteers are not currently collecting or handling paper voter registration applications because of the chilling effect of SB 7050 on our voter registration activities. Therefore, there are no such written training materials. Written training materials regarding this new process of *not* collecting or handling paper voter registration applications have been provided to Defendant Byrd in response to his discovery requests.

93.     Admit that you have documents related to any background checks of potential employees or staff before you hire them.

Deny. LWVFL may contact references given by applicants for employment, but do not conduct formal background checks for employees or staff beyond verifying the identities and employment authorization of employees in compliance with federal law.

94.     Admit that you have documents related to any background checks of volunteers involved in collecting or handling voter registration applications.

Deny. LWVFL does not conduct background checks of its volunteers.

95.     Admit that you have documents related to complaints made against you.

Deny. LWVFL is not aware of any such complaints.

96.    Admit that you have documents related to any investigations you conducted into potential or alleged misconduct by your employees, staff, or volunteers.

Deny. LWVFL is not aware of any such documents because it has not had the need to conduct any such investigations.

97.    Outside of your employees, staff, or volunteers, admit that you utilize a third party or third parties in your collecting, handling, processing, or submitting voter registration applications.

Deny. LWVFL has never utilized any third parties in this manner.

98.    Admit that you have contracts or agreements—whether written or oral, formal or informal—with third parties that pertain to your collecting, handling, processing, or submitting voter registration applications.

Deny. There are no such contracts or agreements with any third parties.

**VERIFICATION OF ANSWERS TO REQUESTS FOR ADMISSION**

I, Cecile Scoon, believe that the foregoing answers are true and correct to the best of my knowledge, information, and belief. I verify as such under penalty of perjury under 28 U.S.C. § 1746.

*Cecile Scoon*

Cecile Scoon
Co-President, League of Women Voters of Florida
Date: January 2, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2024, I served a copy of the foregoing by electronic mail to all counsel of record.

_Chris Lapinig_
Christopher Lapinig

Respectfully submitted this 2nd day of
January, 2024

Chad W. Dunn
Florida Bar No. 0119137
1200 Brickell Avenue, Suite
1950
Miami, FL 33131
Telephone: (305) 783-2190
Facsimile: (305) 783-2268
chad@brazilanddunn.com

**CAMPAIGN LEGAL CENTER**

_Chris Lapinig_
Christopher Lapinig (C.A. Bar No. 322141)*
Danielle Lang (D.C. Bar No. 1500218)
Jonathan Diaz (D.C. Bar No. 1613558)
Brent Ferguson (D.C. Bar No. 1782289)
Ellen Boettcher (D.C. Bar No. 90005525)
Michael Ortega (I.L. Bar No. 6339469)**
Simone Leeper (D.C. Bar No. 1737977)
Alexandra Copper (C.A. Bar No. 335528)*
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
clapinig@campaignlegalcenter.org
eboettcher@campaignlegalcenter.org
mortega@campaignlegalcenter.org
sleeper@campaignlegalcenter.org
acopper@campaignlegalcenter.org

_* Based and licensed to practice in California; practice in the District of Columbia is limited to federal courts, pursuant to D.C. App. Rule 49(c)(3)._

\*\* *Not admitted to the D.C. Bar. Practicing under the supervision of Mark Gaber, member of the D.C. Bar.*