IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HISPANIC FEDERATION, et al.,

    *Plaintiffs*,

v.                                          Case. No. 4:23-cv-218-MW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

    *Defendants*.

_____/

## THE SECRETARY'S RESPONSE TO
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Secretary of State Cord Byrd responds to Plaintiffs' summary-judgment motion. Exhibits in the following memorandum are contained in Doc.133. Page numbers in docket citations refer to the upper-right, blue page numbers, not the center-middle, black page numbers.

**Introduction**

The Secretary agrees with Plaintiffs: the Equal Protection Clause challenge to the Citizen Restriction should be decided at summary judgment. Material facts aren't in dispute, and the issue is a legal one. But the Secretary parts ways with Plaintiffs in two respects. *First*, while the challenge should be decided at summary judgment, the Secretary urges this Court to wait until the Eleventh Circuit decides his preliminary-injunction appeal. Waiting a few extra weeks for an appellate opinion will lead to a more efficient resolution of this issue. And *second*, should this Court decide not to wait, summary judgment should be nevertheless granted *in the Secretary's favor*. Plaintiffs' facial challenge fails as a matter of law, and the restriction satisfies even strict scrutiny and falls under the political-function exception to the Equal Protection Clause.

**Argument**

**I.     This Court should wait until the Eleventh Circuit resolves the pending appeal.**

As a prudential matter, this Court should wait until the Eleventh Circuit resolves the Secretary's preliminary-injunction appeal before resolving the Equal Protection Clause challenge to the Citizen Restriction. The appellate court heard oral arguments on January 25, 2024, and during oral arguments, Doc.133-1 at 62, as well as in a motion to expedite, 23-12308 (Oct. 10, 2023), counsel asked the court to expeditiously resolve the appeal, noting the April 2024 trial and the upcoming presidential election.

Waiting would be beneficial. Instead of resolving the issue, then reviewing the appellate decision, then considering a motion for reconsideration, then considering a response (and with leave, a reply) to the motion for reconsideration, and reacting to the parties' potentially changed legal (or maybe factual) positions based on the appellate decision, this Court should simply wait until the Eleventh Circuit renders an opinion and then order the parties to file a brief that responds to the opinion. This would be a more efficient resolution of this issue—which the Secretary agrees should be decided at summary judgment, before trial.

## II. In the alternative, this Court should grant summary judgment in the Secretary's favor.

If this Court decides to resolve the Equal Protection Clause challenge to the Citizen Restriction now, as opposed to later, it should invoke its authority under Rule 56(f)(1) and grant summary judgment in favor of the Secretary. *See Storm Damage Sols., LLC v. Indian Harbor Ins. Co.*, No. 3:21cv901-TKW-HTC, 2022 U.S. Dist. LEXIS 239535, at *5 (N.D. Fla. Sep. 27, 2022) (explaining that a court may grant summary judgment in favor of a non-movant under Rule 56(f)(1) if warranted by the facts and the law). Material facts aren't in dispute, and the Secretary is entitled to judgment as a matter of law.

Instead of largely repeating the arguments made in his response in opposition to Plaintiffs' preliminary-injunction motion, Doc.60, and in his appellate briefs, Doc.133-

3

2, Doc.133-3, the Secretary incorporates and adopts those arguments here. He now clarifies and adds to those arguments.

**A.** Plaintiffs continue to raise a facial challenge to the Citizen Restriction. Doc.126-1 at 28; Doc.79 at 43. Thus they "must establish that no set of circumstances exists under which" the Citizen Restriction "would be valid" under *United States v. Salerno*, 481 U.S. 739, 745 (1987). Put differently, Plaintiffs must show that the restriction "is unconstitutional in all of its applications." *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 22-11787, slip op. at 25 (11th Cir. Jan. 10, 2024). They can't. *See, e.g.*, Doc.133-2 at 28-30.

True, the restriction applies to all categories of noncitizens: legal residents, temporary residents, and illegal aliens. But in order to prevail on their *facial* challenge, Plaintiffs must show—putting aside permanent residents—that the restriction is *facially* unconstitutional as to temporary residents and illegal aliens. In other words, Plaintiffs must show it's categorically unconstitutional for a State to prohibit both temporary residents and illegal aliens from collecting and handling a potential voter's voter-registration form, a document that contains the potential voter's name, address, part of his social security number, driver's license number, and date of birth. Because they can't, Doc.60 at 26-28, Plaintiffs must admit that the Citizen Restriction is constitutional—at the very least—in some circumstances.

Although not mentioned in their summary-judgment motion, Plaintiffs can't rely on *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231 (11th Cir. 2022). *See also*

Doc.133-3 at 9-11 (providing additional arguments as to why *Club Madonna* doesn't help Plaintiffs). In that case, the Eleventh Circuit stated that "*Salerno* is correctly understood not as a separate test applicable to facial challenges, but a description of the outcome of a facial challenge in which a statute fails to satisfy the appropriate constitutional framework." 42 F.4th at 1256 (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1123 (10th Cir. 2012)). The court relied heavily on *Doe v. City of Albuquerque*, a case that rejected the argument that, in deciding a facial challenge, a court "must simply determine whether it can imagine possible hypothetical situations in which the ban could possibly be constitutionally applied." 667 F.3d at 1123.

That's not what we have here. Instead of conjuring hypothetical situations, a court must consider "only applications of the" law at issue "in which it actually authorizes or prohibits conduct." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). Here, the Citizen Restriction applies to temporary residents and illegal aliens—not just permanent residents. It's not a hypothetical situation; it's a direct application of the law. Plaintiffs must thus explain how the restriction is unconstitutional in all these applications. That makes sense: in opting against an as-applied challenge, and in seeking broad facial relief, Plaintiffs must explain how the Citizen Restriction is unconstitutional as to *all* classes of aliens.

**B.** Regardless, even strict scrutiny is satisfied. In their motion, Plaintiffs state that there are three justifications for the Citizen Restriction based on the legislative record (limiting certain democratic activities to citizens, ensuring timely voter-registration form

5

submissions, protecting sensitive information), Doc.126-1 at 9-13, and several from the Department of State (safeguarding election integrity, preventing voter fraud, ensuring a timely submission of voter registration applications, and promoting uniformity and fairness in the electoral process, and ensuring voter confidence), Doc.126-1 at 13-16. To the extent that those justifications diverge, say Plaintiffs, only the justifications supported by the legislative record can be considered, and not the "post hoc" rationales, say Plaintiffs, provided by the department. Doc.126-1 at 30. Not so.

The Department of State's justifications are supported by the legislative record. Plaintiffs aren't right in saying that legislative justifications for a law are only those justifications mentioned in a legislative transcript. Even *Village of Arlington Heights v. Metropolitan Housing Development Corporation* recognizes that governmental justifications aren't limited to what's said on the legislative record. *E.g.*, 429 U.S. 252, 265 (1977). But putting that aside, legislators, on the record, explained that SB7050, including the Citizen Restriction, was justified by safeguarding election integrity, preventing fraud, ensuring timely submissions of voter-registration forms, promoting uniformity and fairness, promoting voter confidence, and protecting sensitive information.[1]

---

[1] *E.g.*, Doc.133-4 26:2-3 ("safeguarding voter confidence"); 26:7-11 ("This bill strengthens requirements for third-party voter registration organizations to protect individuals who entrust their personal information and voter registration applications to them."); 34:22 – 35:4 (explaining that in 2022 alone, over 3,000 voter-registration forms were untimely submitted by 3PVROs); 61:6-10 ("we are legislating to protect the voter, and that's the sole purpose of all the provisions within this and the guiding light behind all the third-party voter registration organization provisions"); Doc.133-5 3:13-24 ("You are having folks that are handling, collecting . . . registration information . . .

6

Those are compelling governmental interests. A State has a compelling governmental interest in preventing election-related fraud and in promoting confidence in "our electoral processes." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). So too with maintaining fair election processes. *Green v. Mortham*, 155 F.3d 1332, 1335 (11th Cir. 1998).

As for narrow tailoring, a dearth of evidence involving noncitizens and 3PVRO issues doesn't defeat the Citizen Restriction. When it comes to election-related issues, a State need not wait until bad actors act, or an illegal alien fails to timely submit a voter-registration form and disenfranchises a voter. *Brnovich v. DNC*, 141 S. Ct. 2321, 2348 (2021). It's enough that there have been well-documented issues with 3PVROs, including 3PVROs untimely submitting voter-registration forms and misusing information contained on those forms. *See generally* Doc.60-1, 60-2, 60-3. It's enough that noncitizens, as a whole, may not have ties to communities and may pose a flight

---

and I think the legislature has shown that we believe that voters information is sacred . . . [and is] personal information."); Doc.133-10 25:24 – 26:3 (a voter-registration form has "an immense amount of personal information," and a 3PVRO "become[s] a fiduciary and [is] now basically in charge of that person's ability to be registered to vote in elections in this state and our country"); 111:18-24 ("This bill makes it harder for bad actors to be bad actors. . . . They are the ones . . . denying people the right to vote by taking that right [to vote] and not delivering on that fiduciary promise"); Doc.133-6 15:8-16 ("[W]e wanted to make sure you . . . were a legal citizen handling this and you weren't an illegal doing third party voter registration. Again, that data is pretty private and sensitive."); Doc.133-7 7:23 – 8:2 ("We're just simply saying in an abundance of caution for that potential voter's personal information, that at the time they hand over that sacred information, that it goes to a U.S. citizen for collection and handling purposes only.").

7

risk, making it difficult to, among other things, investigate the reasons for an untimely submission of forms or accusations of fraud. That's certainly a consideration in the pretrial-detention context. *See, e.g.*, *Alcazar v. State*, 349 So. 3d 930, 933 (Fla. 3d DCA 2022); Fla. Stat. § 907.041(5)(d). That's relevant here, too.

Plaintiffs point to using higher fines, as opposed to using the Citizen Restriction, as an alternative, least restrictive means of furthering governmental interests. Doc.126-1 at 32. This is an ironic argument, considering that the SB7050 Plaintiffs also identify SB7050's fine provision as an invalid governmental action. 4:23-cv-215, Doc.184 at 51.

Plaintiffs state that noncitizens work at the Department of State, supervisor of elections' offices, and the Department of Highway Safety and Motor Vehicles. Doc.126-1 at 33. Noncitizens can also be notaries, which, according to Plaintiffs, have duties like 3PVRO collectors and handlers. Doc.126-1 at 33 & 35 n.11. But comparing 3PVRO collectors and handlers with notaries and governmental employees isn't a fair comparison.

Not anyone can be a notary, and it's a remarkably highly regulated profession. *See, e.g.*, Fla. Stat. ch. 117. Anyone, however, can be an employee of or volunteer for Hard Knocks. As one of its supervisor-employees stated, "he was instructed to hire just about anyone who walked into the office seeking a job." Doc.133-8 at 14.

Not anyone can be an employee for a governmental agency, either. Background checks and a citizenship screening may be required. *See, e.g.*, Fla. Stat. § 448.09. But any illegal alien can volunteer for Hard Knocks or the League of Women Voters. Hard

Knocks "conducts no or limited background checks on their canvassers who" were "asked to handle sensitive" voter "information." Doc.133-8 at 15. Same with the League. Doc.133-9 at 24. Even SB7050's bill sponsors recognize these distinctions.[2] Thus a fair comparison can't be made here.

As such, the Citizen Restriction survives constitutional scrutiny.

**C.** The restriction also falls under the political-function exception to the Equal Protection Clause. The function's two-part test is met—even though the test isn't exhaustive and merely "focus[es]" the constitutional "inquiry." *Bernal v. Fainter*, 467 U.S. 216, 224 (1984). *See also* Doc.133-2 at 32-36; Doc.133-3 at 11-12. The Citizen Restriction isn't overinclusive. "[I]t applies narrowly to only one category of persons," those who collect and handle voter-registration forms. *Bernal*, 467 U.S. at 222. And as explained above, the restriction isn't underinclusive. Plaintiffs can't properly compare 3PVRO employee and volunteer collectors and handlers with notaries and governmental employees.

---

[2] Doc.133-6 20:7-16 ("So I think that what we're drawing now is the distinction between an employee who has been vetted and obviously hired, probably gone through different background checks and official channel situations, whereas we're talking about with a third-party voter registration organization, it's just that. It's an organization and it's a volunteer organization, assuming. And so I think there's a distinction there between official employment and being a volunteer for a group."); Doc.133-7 11:11-19 ("What I would say is I think in those specific instances that you referred to, whether at the Department of State or the DMV, et cetera, there's processes, procedures, sometimes background checks. There's clear operating procedures on how you are to comport yourself when handling that sensitive information in contrast with a third-party voter organization.").

9

And collectors' and handlers' duties go to the very heart of representative democracy. At its most basic level, the political-function exception "applies to laws that exclude aliens from positions intimately related to the process of democratic self-government." *Id.* at 220.

> The rationale behind the political-function exception is that within broad boundaries a State may establish its own form of government and limit the right to govern to those who are full-fledged members of the political community. Some public positions are so closely bound up with the formulation and implementation of self-government that the State is permitted to exclude from those positions persons outside the political community, hence persons who have not become part of the process of democratic self-determination.

*Id.* at 221. What's more basic to the process of democratic self-government than ensuring that a voter-registration form is submitted on time, and with form information protected? *Id.* The most major consequence of *failing* to do that is voter disenfranchisement.

Plaintiffs argue that the political-function exception applies only to those with discretionary and policymaking functions. Doc.126-1 at 33-36. But this unduly exacting interpretation of the exception would preclude all ministerial tasks from the exception. That would leave no room for the Department of Homeland Security to mandate that only citizens serve as TSA screeners, as it already does, 49 C.F.R. § 1544.405(c), or for the Department of Defense to decide that the military officer carrying the President's nuclear football must be a citizen. The exception would become so narrow that it would

10

bar the government from passing laws to relegate certain important tasks to citizens even when doing so is critical to public confidence.

In sum, the exception applies.

## Conclusion

The Secretary asks this Court to either (1) delay resolving the Equal Protection Clause challenge to the Citizen Restriction until the Eleventh Circuit resolves his preliminary-injunction appeal or (2) invoke its authority under Rule 26(f)(1) and grant summary judgment in the Secretary's favor.

| | |
|---|---|
| Dated: February 13, 2024 | Respectfully submitted, |
| Bradley R. McVay (FBN 79034)<br>brad.mcvay@dos.myflorida.com<br>Joseph Van de Bogart (FBN 84764)<br>joseph.vandebogart@dos.myflorida.com<br>Ashley Davis (FBN 48032)<br>ashley.davis@dos.myflorida.com<br>FLORIDA DEPARTMENT OF STATE<br>R.A. Gray Building<br>500 S. Bronough St.<br>Tallahassee, FL 32399<br>(850) 245-6536 | */s/ Mohammad O. Jazil*<br>Mohammad O. Jazil (FBN 72556)<br>mjazil@holtzmanvogel.com<br>Joshua E. Pratt (FB 119347)<br>jpratt@holtzmanvogel.com<br>Michael Beato (FBN 1017715)<br>mbeato@holtzmanvogel.com<br>zbennington@holtzmanvogel.com<br>HOLTZMAN VOGEL BARAN<br>TORCHINSKY & JOSEFIAK<br>119 S. Monroe St. Suite 500<br>Tallahassee, FL 32301<br>(850) 270-5938<br><br>John J. Cycon (NYBN 5261912)*<br>HOLTZMAN VOGEL BARAN<br>TORCHINSKY & JOSEFIAK<br>15405 John Marshall Hwy<br>Haymarket, VA 20169<br>Telephone: (212) 701-3402<br>jcycon@holtzmanvogel.com<br><br>*Counsel for Secretary Byrd*<br><br>*Admitted pro hac vice |

## Certificate of Compliance

I certify that the summary-judgment memorandum is 2,498 words, which is under the 8,000-word limit in Local Rule 56.1(C). I also certify that this document complies with the typeface and formatting requirements in Local Rule 5.1.

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil

## Certificate of Service

I certify that on February 13, 2024, this document was uploaded to CM/ECF, which sends the document to all counsel of record.

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil
