UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HISPANIC FEDERATION, *et al.*,

    *Plaintiffs*,

v.

CORD BYRD, in his official capacity
as Secretary of State of Florida, *et al.*,

    *Defendants*.

Case No. 4:23-cv-00218-MW-MAF

**PLAINTIFFS' MOTION TO LIMIT EVIDENCE REGARDING INDIVIDUAL PLAINTIFFS' IMMIGRATION HISTORIES TO CURRENT OR PENDING IMMIGRATION STATUS AND TO PRECLUDE EVIDENCE OF ELIGIBILITY FOR IMMIGRATION BENEFITS**

Pursuant to Federal Rules of Evidence 401, 402, and 403, Plaintiffs respectfully move the Court *in limine* to preclude Defendants from introducing evidence or testimony regarding individual Plaintiffs' immigration history that is irrelevant to the State's interest in SB 7050 and/or whose marginal relevance is outweighed by waste of time, improper confusion, and unfair prejudice.

While individual Plaintiffs' current immigration status as non-citizens is relevant to demonstrate standing, the bases for their eligibility for current or future immigration applications has no probative value in this case and will serve only to waste time, or worse, chill individual plaintiffs and others from participating in this case. Further, as demonstrated by extensive deposition questioning on these topics,

Defendants' lack of familiarity with the Immigration and Nationality Act and the process for obtaining myriad immigration benefits will serve to confuse the issues, harass the witnesses, and waste time.

Once Plaintiffs have established the fact that they are non-citizens who were and are authorized to work during relevant time periods, Defendants should be precluded from presenting any evidence or eliciting any testimony from individual Plaintiffs regarding irrelevant topics, such as the underlying basis for which they were granted current or past immigration status, and the basis or eligibility for other forms of immigration benefits for which they have applied or plan to apply in the future.

## ARGUMENT

Evidence is relevant and generally admissible if (a) it has "any tendency to make a fact more or less probable than it would be without the evidence," and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. The Court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. That is, evidence may be excluded when it is "distracting" from the "central

2

obligation to decide the issue . . . ." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 813 (11th Cir. 2020).

I. **Evidence Regarding Individual Plaintiffs' Eligibility for Current or Pending Immigration Status Is Not Relevant to Standing or to Any Claim.**

The text of SB7050's citizenship requirement makes no distinction among non-citizens based on the type of status or work authorization they have received or applied for under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.* ("INA"). Because the Non-Citizen Ban classifies and targets non-citizens as an undifferentiated group, for purposes of demonstrating standing or the merits of Plaintiffs' claims, there is no probative value in eliciting testimony regarding the basis under which each Plaintiff obtained current immigration status, much less the basis on which she obtained such status.

Individual Plaintiffs Veronica Herrera-Lucha, Norka Martínez, and Elizabeth Pico are non-citizens whose voter registration work with 3PVROs has been directly targeted by SB 7050. Their status as non-citizens is of course relevant to their standing to bring their claims, and all three have provided incontrovertible documentary and testimonial evidence of their status now and during relevant periods of employment: Ms. Herrera-Lucha is a Lawful Permanent Resident ("LPR"), and Ms. Martínez and Ms. Pico have Temporary Protected Status ("TPS") and pending applications for political asylum, a long-term status.

3

In contrast, evidence related to the grounds under which they applied for these statuses, what statuses they have held years ago, or what eligibility they claim for pending or future immigration status, has no relevance to their standing or to the merits of any claim in this case. Yet during deposition, Defendants spent extended time probing the underlying bases for each Plaintiff's current or pending status. *See* Exhibit 1, Excerpts of Veronica Herrera-Lucha Deposition.[1]

For example, counsel asked Ms. Herrera-Lucha when she received her "green card" (Ex. 1 at 17:11); under "which eligibility criteria did [she] receive [her] green card" (*id*. at 17:19-20); whether she received her "green card through family, employment, or some other status" (*id*. at 18:8-9); whether and when she must "renew" her "green card" (*id*. at 19:18-20:9); whether and how long ago she had applied for citizenship (*id*. at 20:11-24); and why her husband had filled out her application for citizenship (*id*. at 21:4-15). Further, counsel used this line of questioning to imply, wrongly, that Ms. Herrera-Lucha, despite having submitted an application for citizenship, does not want to do so: "But you didn't want to apply for citizenship, correct?" (*id*. at 21:21-22). Her past status was also probed:

> **Q: Before you received your green card, did you ever have any other type of authorization to be in the United States?**
> A: Can you repeat the question a little more clearly, please?

---

[1] Because Exhibit 1 contains only relevant excerpts, this motion cites to the page label inside the top right margin border of each page of the transcript (rather than ECF pagination) to describe the cited page ranges, so as to avoid confusion if other portions of the transcript are subsequently admitted into evidence.

4

> **Q: Yes. I understood you to say that you received your green card around the time that you got married, which was around the same time that you came to the United States. Did you ever have -- let me see -- a visa to be in the United States before you got your green card, or was your green card the first legal authorization that you had to be in the United States?**

*Id*. at 22:15-23:3.

This line of questioning will not make facts related to individual Plaintiffs' standing "more or less probable," Fed. R. Evid. 401(a), and otherwise has no bearing on the merits. The answers are of no "consequence in determining the action." Fed. R. Evid. 401(b). All that individual Plaintiffs need to demonstrate standing is that they are non-citizens whose employment at 3PVROs is affected by SB 7050. The particulars of their status have no bearing on whether SB 7050 violates their rights under the Fourteenth Amendment or Section 1981, because SB 7050's classification applies to all non-citizens regardless of what immigration status they hold. Eliciting such evidence and testimony should be precluded under Fed. R. Evid. 402.

II. **Any Probative Value of Evidence of Detailed Immigration History is Outweighed by Its Potential to Waste Time, Confuse the Issues, Harass Witnesses, or Chill Litigants from Vindicating Their Rights**.

Even if evidence of Plaintiffs' eligibility for various immigration statuses had some marginal probative value, it would be outweighed by the potential to waste time, confuse the issues, harass witnesses, or chill litigants from pursuing meritorious claims. Rule 403 counsels against permitting Defendants to elicit such evidence at trial.

*First*, as excerpts from Ms. Herrera-Lucha's deposition transcript show, questions about matters related to immigration applications take extensive time to make clear, particularly when translation of legal terms is involved:

> **Q: Under which eligibility criteria did you receive your green card?**
> Interpreter: Apologies, the interpreter is trying to find the correct word for "eligibility."
> A: I don't understand the question.

Ex. 1 at 17:18-24. Further, the opacity of the citizenship application process, and Defendants' apparent unfamiliarity with it, will lead to repetitive, potentially harassing questioning:

> **Q:** **Have you ever applied for U.S. citizenship?**
> A: Yes, it's in process.
> **Q:** **When did you apply for U.S. citizenship?**
> A: I don't remember the exact date. [….]
> **Q:** **Can you give me an estimate of when you may have applied for U.S. citizenship?**
> MR. RUIZ: Objection to form.
> A: I don't remember. It was my husband who took care of the application, the applying process.
> **Q:** **So you didn't apply for citizenship, your husband did it for you?**
> MR. RUIZ: Objections on grounds of relevance. I advise my client to answer.
> A: My husband filled out the application.
> **Q:** **Why didn't you fill out the application?**
> MR. RUIZ: Same objection to relevance and to form.
> A: Because the immigration laws establish that someone else could prepare it.
> **Q:** **Do you want to become a U.S. citizen?**

    MR. RUIZ:· Objection as to grounds of relevance. You may answer.
    A: Some day, yes.
    **Q: But you didn't want to apply for citizenship, correct?**
    A: Objection….misstates the deponent's testimony.

*Id*. at 20:11-22:25. Defendants similarly spent considerable time probing whether Ms. Herrera-Lucha had disclosed her citizenship status to voters she helped register. *Id.* at 43:5-46:7.

  It will take substantial time at trial to clarify misunderstandings, like Defendants' mistaken assumption here, that obtaining a spouse's assistance to prepare a complex citizenship application is the equivalent of not applying at all. The time consumed to conduct similar clarifying testimony for three different individual Plaintiffs, each with her own, particularized immigration history, outweighs any probative value such testimony may have.

  *Second*, and relatedly, questions that use or misuse specific immigration terms will cause confusion and muddy the trial record. Such confusion will be exacerbated by Defendants' casual use, throughout this litigation, of terminology not clearly defined in the Immigration and Nationality Act ("INA"), 8 U.S.C. §§1101 *et seq*. For example, in their Opposition to Plaintiffs' Motion for Summary Judgment, Defendants refer to "all categories of noncitizens: legal residents, temporary residents, and illegal aliens." ECF No. 136 at 7. These three "categories" are not found in the definitions section of the INA, 8 U.S.C. § 1101, and they do not map

neatly onto individual Plaintiffs' actual immigration posture. For example, Ms. Martínez and Ms. Pico, who have lived in Florida since 2017, have a status called "temporary protected status," or "TPS," 8 U.S.C. §1254a, but they have applied for asylum, a status that provides long-term protection. 8 U.S.C. §1158.

Moreover, TPS, which is granted by the Department of Homeland Security to protect individuals from particular countries in crisis from deportation, 8 U.S.C. § 1254a, can be extended for a period of six, twelve, or eighteen months, 8 U.S.C. § 1254a(b)(3)(C), and there is "no limit to the number of extensions" that the Department of Homeland Security can grant. *Saget v. Trump*, 375 F. Supp. 3d 280, 298 (E.D.N.Y. 2019). For example, after an earthquake in Haiti in January, 2010, then-DHS Secretary Napolitano designated Haiti for TPS; this designation was extended multiple times since. *Saget*, 375 F. Supp. 3d at 301-302. The "temporary" label does not reflect the practical reality of long-term TPS recipients. And it is unclear what Defendants mean by "illegal aliens," a term that does not have a consistent application in the INA and is typically used in political rhetoric that often describes a range of both authorized and unauthorized immigrants. Defendants' loose terminology and slippery categories will confuse litigants and cloud the record before the Court.

*Finally*, this line of questioning will intimidate Plaintiffs, and it could dissuade other immigrants from seeking to vindicate their rights. "Unfair prejudice" is more

8

typically an issue in jury trials rather than in bench trials. But numerous courts, when evaluating whether to allow questioning regarding immigration status, have found that such questioning, when of marginal or no relevance to the legal issues, can have a chilling effect on other litigants and prevent the administration of justice. For example, in the Fair Labor Standards Act ("FLSA") context, courts have barred defendants from introducing immigration-related evidence in part because of its impact on future potential litigants:

> [I]ntroducing Plaintiff's immigration status . . ."would surely chill the vindication of rights under the FLSA . . . ." This chilling effect could "effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation." . . . ."[G]iven the nature of the evidence, and given that the immigration issue in the employment context has turned out to be such a hot button issue of late . . . the Court finds that the danger of unfair prejudice—not just prejudice, but unfair prejudice—is indeed high." . . . Accordingly, to the extent that this evidence is admissible under Rule 402, it is excluded under Rule 403.

*Chavez v. Arancedo*, No. 17-20003-CIV-TORRES, 2018 WL 4627302, at *4–5 (S.D. Fla. Sept. 26, 2018) (internal citations omitted). *See also Romero v. Prindle Hill Constr., LLC,* Civ. No. 3:14CV01835(SALM), 2017 WL 3390242, at *3–4 (D. Conn. Aug. 7, 2017) ("Although this case will be tried to the Court, rather than to a jury, and thus the risk of prejudice to <u>this</u> plaintiff is minimal, permitting inquiry into the immigration status of an FLSA plaintiff could have a 'chilling effect' on the pursuit of such actions by others"). The fact that individual Plaintiffs are lawfully

9

present and have authorization to work in the United States does not eliminate the *in terrorem* effect of such questioning.

Individual Plaintiffs' status as non-citizens is highly relevant to their claims. But the details of how, why, and when they applied for such status, or are applying for other forms of status, are not. Questioning witnesses about their eligibility for immigration benefits or citizenship will cause unnecessary confusion and intimidation that cannot be justified by any minimal probative value. Further, it will send a chilling message to immigrants and other potential litigants who may wish in the future to challenge legislation on constitutional or other grounds.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion *in limine* should be granted, and once the fact of Plaintiffs' non-citizen status during relevant time periods is established, all Defendants should be foreclosed from questioning individual Plaintiffs about the bases of their past, current, or future immigration applications.

## LOCAL RULE 7.1(F) CERTIFICATE

This Memorandum contains 2,257 words.

Dated: February 23, 2024                    Respectfully submitted,

*/s/ Megan C. Keenan*
Roberto Cruz (FBN 18436)                    Megan C. Keenan*
Miranda Galindo (FBN 1039848)               Adriel I. Cepeda Derieux*
Delmarie Alicea (FBN 1024650)               **American Civil Liberties**

**LatinoJustice PRLDEF**
4700 Millenia Blvd.
Suite 500
Orlando, FL 32839
(321) 754-1935
rcruz@latinojustice.org
mgalindo@latinojustice.org
dalicea@latinojustice.org

Cesar Z. Ruiz*
**LatinoJustice PRLDEF**
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
cruiz@latinojustice.org

Estee M. Konor*
**Dēmos**
80 Broad Street, 4th Floor
New York, NY 10004
(212) 485-6065
ekonor@demos.org

John A. Freedman*
Jeremy Karpatkin*
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 942-5316
john.freedman@arnoldporter.com
jeremy.karpatkin@arnoldporter.com


* *Admitted Pro Hac Vice*

**Union Foundation**
915 15th Street NW
Washington, DC 20005
(212) 549-2500
acepedaderieux@aclu.org
mkeenan@aclu.org

Julie A. Ebenstein (FBN 91033)
Dayton Campbell-Harris*
Sophia Lin Lakin*
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
jebenstein@aclu.org
dcampbell-harris@aclu.org
slakin@aclu.org

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

*Counsel for Plaintiffs Hispanic Federation, Poder Latinx, Verónica Herrera-Lucha, Norka Martínez, and Elizabeth Pico*

11