IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**HISPANIC FEDERATION, et al.,**

   *Plaintiffs*,

v.    Case No.: 4:23cv218-MW/MAF

**CORD BYRD, in his official capacity
as Florida Secretary of State, et al.,**

   *Defendants*.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This Court has considered, without hearing, Defendant Byrd's motion for summary judgment with respect to Plaintiffs' challenges to the "Citizenship Requirement," section 97.0575(1)(f), Fla. Stat. (2023), under 42 U.S.C. § 1981, ECF No. 123, Plaintiffs' response in opposition, ECF No. 130, and Defendant's reply, ECF No. 132. For the reasons set out below, Defendant is entitled to summary judgment with respect to Plaintiffs' Section 1981 claim.

Plaintiffs assert the new "Citizenship Requirement" for individuals who collect or handle voter registration applications on behalf of 3PVROs is preempted by Section 1981. *See* ECF No. 1 ¶ 127 ("The Law is also preempted by a core federal rights statute, 42 U.S.C. § 1981."). This Court has already preliminarily enjoined enforcement of the Citizenship Requirement on Equal Protection grounds, but

Plaintiffs also assert that the provision conflicts with federal law granting the substantive right to make and enforce contracts to all persons, and thus, is preempted pursuant to the Supremacy Clause of the Constitution. Defendant Byrd does not dispute any material facts that Plaintiffs have proffered in support of their preemption claim. ECF No. 132 at 2. Instead, Defendant Byrd asserts Plaintiffs' preemption claim is legally insufficient as an improper vehicle to invalidate a State election regulation. Upon review, this Court agrees that Defendant Byrd is entitled to judgment as a matter of law on this claim.

I

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, Defendant Byrd does not dispute Plaintiffs' facts in support of their preemption claim. Instead, the dispute involves a purely legal question—whether Section 1981 preempts the Citizenship Requirement. Accordingly, this Court may "resolve purely legal questions" at this stage. *Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1314 (S.D. Fla. 2020) (citation omitted).

II

With respect to the preemption claim, Defendant argues that Section 1981 has never been used to invalidate federal, state, or local statutes, regulations or ordinances, and thus, is an improper basis upon which to challenge the Citizenship Requirement. In response, Plaintiffs point to two cases, both from district courts outside of the Eleventh Circuit, that have addressed substantive Section 1981 claims challenging local ordinances. *See* ECF No. 130 at 17–18 (citing *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477 (M.D. Pa. 2007) and *Deide v. Day*, No. 23-cv-3954(NSR), 2023 WL 3842694, at *18–19 (S.D.N.Y. June 6, 2023)).

In *Lozano*, the plaintiffs challenged a local ordinance that directly prohibited the employment and harboring of undocumented aliens within the City of Hazelton, Pennsylvania. The district court held that the provision of the ordinance that forbid undocumented immigrants from entering into leases violated Section 1981's protection of the right to make and enforce contracts. *See* 496 F. Supp. 2d at 548. In addition, although the district court held that other provisions of federal law preempted the challenged ordinance, the plaintiffs in *Lozano* apparently did not argue (and the court did not hold) that Section 1981 preempted the challenged ordinance.

In *Deide*, the district court addressed a similar restriction—namely, two counties' emergency executive orders that prevented migrants and asylum seekers

3

from relocating into their counties by barring local hotels or motels from making their rooms available to those individuals pursuant to contracts they made with New York City. The district court held that the plaintiffs in *Deide* were substantially likely to succeed on their Section 1981 claims because the emergency executive orders at issue "each seek to impair the contracts made between New York City and the local hotels/motels" who had agreed to provide rooms to migrants and asylum seekers. *See* 2023 WL 3842694 at *19. Indeed, the executive emergency orders at issue in *Deide* specifically prohibited local businesses from making contracts to provide housing to migrants or asylum seekers. *Id*. Thus, plaintiffs could demonstrate that they were intentionally discriminated against on the basis of their alienage (as third-party beneficiaries) in the making or enforcement of contracts. *Id*. at 18–20. But, again, this court did not hold that Section 1981 *preempted* the emergency executive orders at issue—instead, the court enjoined enforcement of those orders, in part, because they violated Section 1981's discrimination prohibition.

Here, Plaintiffs have not sued their employers for intentional discrimination in the making or enforcement of their employment contracts. That is, unlike in *Lozano* and *Deide*, Plaintiffs have not pursued substantive discrimination claims under Section 1981. Instead, they point to these cases recognizing the availability of substantive discrimination claims to invalidate local ordinances as authority for the proposition that the availability of a substantive claim of discrimination equates to

4

grounds for federal preemption. But these cases do not extend so far. Thus, the question before this Court is whether Plaintiffs have identified any grounds upon which this Court should find Section 1981 preempts section 97.0575(1)(f)'s prohibition on non-citizens collecting or handling voter registration applications. Plaintiffs argue that the Citizenship Requirement is both field preempted and conflict preempted by Section 1981. This Court will address each contention in turn.

As to field preemption, Plaintiffs allege that "Congress occupied the field regarding the right of non-citizens to make and enforce contracts." ECF No. 79 ¶ 130. In support of this allegation, Plaintiffs point only to the Supreme Court's decision in *Takahashi v. Fish and Game Comm'n*, 334 U.S. 410 (1948). However, *Takahashi* stood for a different principle—not that Congress has sought to occupy the field of regulating the right of non-citizens to make an enforce contracts, but instead that the federal government has broad power over the "admission, naturalization and residence of aliens in the United States or the several states." *Takahashi*, 334 U.S. at 419. Moreover, *Takahashi* presented an Equal Protection claim, not a Section 1981 claim, and offers little in the way of support for Plaintiffs' field preemption argument.

To demonstrate field preemption, Plaintiffs must show that Congress has decided "to foreclose any state regulation in the area, even if it is parallel to federal standards." *Arizona v. United States*, 567 U.S. 387, 401 (2012). "The intent to

5

displace state law altogether can be inferred from a framework of regulation 'so pervasive that Congress left no room for the States to supplement it.' " *id*. (citation omitted), "or where there is a 'federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " *Id*. But here, the Supreme Court has long held that the right to make and enforce contracts—particularly employment contracts—is qualified by certain exceptions. *See e.g.*, *Ambach v. Norwick*, 441 U.S. 68, 72–75 (1979) (noting that the Supreme Court "has recognized a greater degree of latitude for the States when aliens were sought to be excluded from public employment," and that the modern "governmental functions" exception continued to permit exclusion from employment in certain public jobs).

In addition, states have long been permitted to enforce their own civil rights protections that parallel federal standards, *see Arizona*, 567 U.S. at 401 ("Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards."), and enact election regulations, *see Burdick v. Takushi*, 504 U.S. 428, 433 (1992), which undermines Plaintiffs' claim that Congress has chosen to occupy the entire field of regulating non-citizens' civil right to make and enforce contracts. Given these exceptions, and Plaintiffs' failure to identify any case holding that Congress sought to occupy the field of contract formation with non-citizens, Plaintiffs fail to demonstrate that the Citizenship

Requirement is field preempted.

As to conflict preemption, Defendant asserts Plaintiffs have not even properly pleaded this theory in their complaint. But, assuming *arguendo* that this theory is properly before me, Plaintiffs again fail to demonstrate a viable claim. "Conflict preemption occurs either when it is physically impossible to comply with both the federal and the state laws or when the state law stands as an obstacle to the objective of the federal law." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008). Without question, the Citizenship Requirement does not expressly prohibit the formation or enforcement of private employment contracts with noncitizens. Instead, the challenged provision is a limitation on who can collect or handle voter registration applications on behalf of 3PVROs (a limitation that this Court has already preliminarily enjoined as unconstitutional under the Fourteenth Amendment). But Plaintiffs assert that because they have been hired by 3PVROs for the express purpose of collecting and handling voter registration applications, the Citizenship Requirement has impaired their employment contracts and, as a result, conflicts with Section 1981's protection of their right to make and enforce contracts.

Plaintiffs have not alleged a claim for impairment of contract under the Contracts Clause, nor a substantive claim for violation of their rights under Section 1981. Instead, they seek to expand the scope of Section 1981's reach to preempt a state election regulation that only indirectly touches on the terms of their

7

employment contracts with 3PVROs. But Plaintiffs have offered no authority to suggest that Section 1981 applies so broadly to preempt state laws or that any court has applied the principles of conflict preemption in this way to address the indirect impairment of employment contracts by state election laws.

Boiled down, Plaintiffs' view appears to be that because a state law could implicate a federal right protected by a federal statute, the federal statute necessarily preempts the state law. However, Plaintiffs cite no case supporting this level of abstraction in applying the federal preemption doctrine, and this Court concludes that this is not the proper application of conflict preemption principles.

Accordingly, there are no genuine disputes of material fact, and this Court agrees that Defendant Byrd is entitled to summary judgment with respect to Plaintiffs' preemption claim under Section 1981. Accordingly, Defendant's motion, ECF No. 123, is **GRANTED**. This Court does *not* direct entry of partial judgment pursuant to Rule 54(b), but instead, this Court will dismiss this claim when this Court enters final judgment at the conclusion of this case.

**SO ORDERED on February 27, 2024.**

s/Mark E. Walker_____<br>
**Chief United States District Judge**