IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**HISPANIC FEDERATION, et al.,**

    *Plaintiffs*,

v.                                      Case No.: 4:23cv218-MW/MAF

**CORD BYRD, et al.,**

    *Defendants*.
_____/

## FINAL ORDER ON MERITS

By prior Order, this Court granted partial summary judgment in Plaintiffs' favor against Defendant Byrd with respect to Count V of Plaintiff's Complaint—Plaintiffs' Equal Protection claim challenging the Citizenship Requirement. ECF No. 149. Out of an abundance of caution, this Court denied partial summary judgment with respect to the same claim against Defendant Moody as there appeared to be disputed issues of material fact concerning Defendant Moody's role in enforcing the challenged provision that precluded this Court from ruling in Plaintiffs' favor. *Id*. at 6. This case proceeded to a bench trial on April 1, 2024, during which Plaintiffs introduced evidence in support of their standing to challenge Defendants' enforcement of the Citizenship Requirement and a slew of additional theories for why the Citizenship Requirement violates the Constitution. Plaintiffs argue that, in addition to facially discriminating against noncitizens in violation of

the Equal Protection Clause, the Citizenship Requirement (a) is unconstitutionally overbroad and vague in violation of the First and Fourteenth Amendments, (b) unconstitutionally burdens their First and Fourteenth Amendment rights in connection with the right to vote, and (c) violates their First Amendment rights to free speech and association. *See generally* ECF No. 188.

I

Plaintiffs ask this Court to consider and rule on the merits of each of these alternative constitutional theories to present a complete record for appeal.[1] *Id*. at 54 (citing *New York v. United States Dep't of Com.*, 351 F. Supp. 3d 502, 517 (S.D.N.Y. 2019), *aff'd in part sub nom. Dep't of Com. v. New York*, 139 So. Ct. 2551 (2019)). But "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Williamson v. Brevard Cnty.*, 928 F.3d 1296, 1316 (11th Cir. 2019) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 US. 439, 445 (1988)).

Here, this Court has already determined that the provision facially discriminates against noncitizens in violation of the Equal Protection Clause of the

---

[1] This Court recognizes that its prior order granting a preliminary injunction, which concludes that Plaintiffs are substantially likely to succeed on the merits of their claim that the Citizenship Requirement violates the Fourteenth Amendment, is currently on appeal. *See* ECF No. 71. Although Plaintiffs have encouraged this Court to rule on all their alternative theories for why the Citizenship Requirement is unconstitutional, neither side has presented any argument for why this Court should refrain from entering judgment at this juncture notwithstanding the pending appeal, *see* ECF Nos. 193 and 194, nor does this Court see any reason to refrain from doing so.

Fourteenth Amendment. *See* ECF No. 149; *see also* ECF No. 68. Having found the challenged provision facially unconstitutional on Equal Protection grounds, this Court need not interrogate Plaintiffs' alternative constitutional theories for challenging the Citizenship Requirement. *See League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 948 (11th Cir. 2023) ("We have already held that the second phrase in the challenged clause is unconstitutionally vague, so we need not reach the question of overbreadth as to the second phrase."); *Williamson*, 928 F.3d at 1316 (declining to reach alternative constitutional claims challenging county policy after concluding that the challenged policy "violates the principle of denominational neutrality found at the heart of the Establishment Clause"); *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 695 (6th Cir. 2015) ("Because we find that the ballot-retention statute is facially unconstitutional under the Equal Protection Clause, we need not decide whether it also violates the First Amendment.").

This Court need only determine whether Plaintiffs proved they have standing to challenge Attorney General Moody's enforcement of the Citizenship Requirement before fashioning an appropriate remedy for the Equal Protection violation. Accordingly, this Court turns to the parties' arguments and evidence with respect to whether Plaintiffs have standing to challenge Defendant Moody's enforcement of the constitutionally infirm Citizenship Requirement.

3

II

As to Plaintiffs' standing, this Court previously found that Plaintiffs established, as a matter of law, that their individual members, like Ms. Herrera-Lucha and Ms. Martínez, have suffered concrete and particularized injuries in that they can no longer work as paid canvassers, or they have had the terms of their employment substantially changed to avoid running afoul of the Citizenship Requirement. *See* ECF No. 149 at 4. At trial, Defendant Moody did not contest that Plaintiffs have demonstrated cognizable injuries-in-fact under the Citizenship Requirement. Instead, Defendant Moody contends that Plaintiffs failed to prove that their injuries are traceable to Defendant Moody or redressable by an injunction against her. *See* ECF No. 194 at 2–7. However, this argument misconstrues Florida law and misapplies federal standing jurisprudence to the record before this Court. Upon review of the record and the parties' arguments, and for the reasons summarized below, this Court concludes that Plaintiffs have standing to proceed against Defendant Moody with respect to their Equal Protection challenge to the Citizenship Requirement.

Given that this Court has already found that Plaintiffs established a cognizable injury-in-fact at the summary-judgment stage, this Court limits its standing analysis to traceability and redressability. With respect to traceability, Plaintiffs must show a "causal connection between the injury and the conduct complained of—the injury

has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[A]s with any party that is dragged into court," a plaintiff must show how each defendant's "action or inaction caused the plaintiff's alleged injury." *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1312 (11th Cir. 2020) (citing *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265–66 (11th Cir. 2011)). Ultimately, "[t]o establish traceability . . . in a lawsuit seeking to enjoin a government official from enforcing the law, a plaintiff must show 'that the official has the authority to enforce the particular provision being challenged . . . .' " *Dream Defenders v. Governor of the State of Florida*, 57 F.4th 879, 888–89 (11th Cir. 2023) (quoting *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021)).

Here, the record is clear that individuals like Ms. Herrera-Lucha and Ms. Martínez either can no longer work as paid canvassers or have had the terms of their employment substantially changed for fear of running afoul of the Citizenship Requirement. And Defendant Moody has the authority to enforce the Citizenship Requirement. Specifically, section 97.0575(8), Florida Statutes, provides:

> If the Secretary of State reasonably believes that a person has committed a violation of this section, the secretary may refer the matter to the Attorney General for enforcement. The Attorney General may institute a civil action for a violation of this section or to prevent a violation of this section. An action for relief may include a permanent or temporary injunction, a restraining order, or any other appropriate

order.

§ 97.0575(8), Fla. Stat.

The Attorney General asserts this enforcement authority is expressly limited by the first sentence of this provision, which allows the Secretary of State to refer suspected violations of section 97.0575 to the Attorney General for enforcement. Plaintiffs' evidence at trial confirms this is how the Statewide Prosecutor interprets this provision, *see* ECF No. 178 at 147, and that the Office of the Attorney General has stipulated that it interprets this provision to require a referral from the Secretary of State *before* it can initiate any civil enforcement under section 97.0575. But the Plaintiffs argue that nothing in the statute prevents the Attorney General from independently pursuing enforcement against suspected or anticipated violations absent a referral from the Secretary of State—the first sentence of this provision simply authorizes the Secretary to refer suspected violations as he deems fit, while the following sentence authorizes the Attorney General to pursue enforcement through civil actions as she deems fit. For that matter, it appears the parties agree that neither the current Attorney General, nor any future Attorney General, are bound by the Attorney General's current interpretation. In short, the parties' dispute over standing boils down to whether the Attorney General's proffered interpretation of this provision effectively insulates her office from suit unless and until the Secretary of State refers a suspected violation of Florida law to her office.

6

Considering the record before this Court and the parties' disagreement, which involves a question of law rather than fact, this Court agrees with Plaintiffs that section 97.0575(8) does not limit the Attorney General's enforcement authority solely to enforcement of suspected violations that the Secretary of State refers to her. To interpret this provision as *requiring* a referral *before* the Attorney General is authorized to institute a civil enforcement action against suspected violators of the Citizenship Provision—as the Attorney General does—requires this Court to rewrite the provision to expressly condition the Attorney General's authority to enforce the Citizenship Requirement upon a referral from the Secretary. But the plain text of the statute requires no such referral before "[t]he Attorney General may institute a civil action for a violation of this section or to prevent a violation of this section." § 97.0575(8), Fla. Stat.

This Court is unpersuaded by Defendant Moody's suggestion that her interpretation is the only reasonable reading of the statute in light of the "Harmonious-reading canon" and the "Whole-Text canon." ECF No. 194 at 3–5. These "canons are meant to help [courts] carry out our primary task: discerning the text's ordinary public meaning." *Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022). But when "a wooden application of the canons would supplant rather than supply ordinary meaning . . . . [courts] remain obligated to the *text*—not to what the canons might suggest about the text." *Id*. (emphasis added). This Court's "obligation

7

is to the text and not the canons *per se* . . . ." *Id*. at 1321–22. Moreover, by artificially limiting her enforcement authority to post-violation referrals, the Attorney General's interpretation appears to nullify the statutory text that authorizes the Attorney General to commence a civil enforcement action "to *prevent* a violation of this section." *See* § 97.0575(8), Fla. Stat. (emphasis added).

Here, the Florida Legislature saw fit to expressly authorize the Secretary of State to refer suspected violations of the Citizenship Requirement to the Attorney General for enforcement. The Florida Legislature also expressly authorized the Attorney General to pursue civil actions to enforce the Citizenship Requirement against suspected violators or to prevent future violations. Had the Florida Legislature saw fit to limit the Attorney General's enforcement authority to *only* those suspected violations that have been referred by the Secretary, it would have said so. But the plain text requires no such referral before the Attorney General may pursue a civil enforcement action.

Nor does this plain reading of the statute's text nullify the Secretary's authority to refer suspected violations to the Attorney General. The Secretary, the State's Chief Elections Officer (who is likely in the best position to learn of suspected violations of the Citizenship Requirement), remains authorized to refer violations to the Attorney General for enforcement by her office, while the Attorney General—an independent constitutional state officer—retains authority to pursue

civil enforcement actions whether or not the suspected violation comes across her desk through referral from the Secretary or from some other source. Accordingly, given the Attorney General's express authority to pursue civil enforcement actions for past violations and to prevent future violations of the Citizenship Requirement, Plaintiffs have demonstrated a causal connection between their injuries and Defendant's conduct. *See Dream Defenders*, 57 F.4th at 888–89.

As both sides agree, traceability and redressability often travel together. Here, given that Plaintiffs' injuries are traceable to the Attorney General because she has authority to pursue civil enforcement actions against suspected violators of the challenged provision, an injunction prohibiting the Attorney General from exercising this enforcement authority would effectively redress Plaintiffs' injuries as it would remove the very real threat of a civil enforcement action. *See Dream Defenders*, 57 F.4th at 889 (holding that to establish traceability and redressability, Plaintiffs must demonstrate "that the official has the authority to enforce the particular provision being challenged, such that the injunction prohibiting enforcement would be effectual" (citation omitted)). In short, Plaintiffs have proved they have standing to proceed against the Attorney General with respect to their Equal Protection claim against the Citizenship Requirement.

Accordingly, Plaintiffs have demonstrated standing as to both the Secretary and the Attorney General, and, as a matter of law, that the Citizenship Requirement

unconstitutionally discriminates against noncitizens on its face. Next, this Court turns to Plaintiffs' requested relief.

III

Plaintiffs seek declaratory and permanent injunctive relief. ECF No. 1 at 43. To obtain a permanent injunction, Plaintiffs "must satisfy a four-factor test." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 159 (2010) (internal quotation marks omitted). Plaintiffs must show (1) that they have "suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1208 (11th Cir. 2021).

Here Plaintiffs have suffered—and continue to suffer—irreparable injuries. Indeed, the individual members in this case have been unconstitutionally discriminated against based on their non-citizenship status. *Smith v. South Dakota*, 781 F. Supp. 2d 879, 887 (D. S.D. 2011). This discrimination has prevented Plaintiffs from registering new voters—a lost opportunity that cannot be remedied with monetary damages. *See League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012) (Hinkle, J.) ("[W]hen a plaintiff loses an opportunity to register a voter, the opportunity is gone forever."). "The public has no interest in

enforcing an unconstitutional" law—especially one that facially discriminates based on alienage. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). On the other side of the ledger sits the individual Plaintiffs' rights to equal protection under the law. There is no comparison. Plaintiffs are entitled to an injunction.

Accordingly,

**IT IS ORDERED**:

1. This Court declares that section 97.0575(1)(f), Florida Statutes (2023), as amended by SB 7050, is unconstitutional.

2. The Clerk shall enter judgment stating:

    This Court hereby **DECLARES** that the Citizenship Requirement described in section 97.0575(1)(f), Florida Statutes (2023), as amended by SB 7050, violates Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution. This Court **GRANTS** Plaintiffs' request for a permanent injunction. Neither Defendant Byrd nor Defendant Moody, nor their successors in office, deputies, officers, employees, agents, nor any person in active participation or concert with Defendants Byrd and Moody shall enforce, nor permit enforcement of, the Citizenship Requirement provision described in section 97.0575(1)(f), Florida Statutes (2023), as amended by SB 7050. Defendants Byrd and Moody, and their successors in office, as well as their deputies, officers, employees, agents, and any other person in active participation and concert with Defendants Byrd and Moody shall take all practicable measures within the scope of their official authority to ensure compliance with the terms of this Order.

3. This Order incorporates all prior rulings in this case on motions to dismiss and motions for summary judgment.

11

4. This Court retains jurisdiction in this case for purposes of determining entitlement to and amount, if any, of attorneys' fees.

5. The Clerk shall close the file.

**SO ORDERED on May 15, 2024.**

<u>*s/Mark E. Walker*</u>
**Chief United States District Judge**